# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

**MILLICENT R. BARASCH**, individually
and on behalf of others similarly situated,

     *Plaintiff*,

v.

GPB CAPITAL HOLDINGS, LLC; DAVID
GENTILE; WILLIAM JACOBY;
MINCHUNG KGIL; MANUEL
FREDERICO VIANNA; DOTTY J.
BOLLINGER; MICHAEL FROST; EVAN
MYRIANTHOPOULOS; ABHAYA
SHRESTHA; MICHAEL COHN; STEVEN
FRANGIONI; SCOTT NAUGLE; GPB
HOLDINGS, LP; GPB HOLDINGS II, LP;
GPB AUTOMOTIVE PORTFOLIO, LP;
GPB COLD STORAGE, LP; GPB WASTE
MANAGEMENT FUND, LP; GPB
HOLDINGS III, LP; GPB HOLDINGS
QUALIFIED, LP; GPB NYC
DEVELOPMENT, LP; ASCENDANT
CAPITAL, LLC; ASCENDANT
ALTERNATIVE STRATEGIES, LLC;
AXIOM CAPITAL MANAGEMENT, INC.;
JEFFRY SCHNEIDER; MARK D.
MARTINO; DJ PARTNERS LLC; MR
RANGER, LLC; RSM US LLP (f/k/a
McGLADREY LLP); EISNERAMPER LLP;
GENTILE PISMENY & BRENGEL, LLP;
CROWE, LLP; CROWE GLOBAL; DOE
AUDITORS 1 through 10; PHOENIX
AMERICAN FINANCIAL SERVICES,
INC.; CKFG HOLDING LLC; McANNA,
LP; ROBERT KESSLER; GERALD
FRANCESE; RINA CHERNAYA; and
DIANA CHERNAYA

     *Defendants*

Civil Action No._____

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Millicent R. Barasch through her sons, Jeffrey Barasch and Phillip Barasch in their capacities as powers of attorney and/or trustee of the Millicent Barasch Trust ("Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

### I. NATURE OF ACTION

1.        GPB Capital Holdings, LLC (hereafter "GPB Capital"), led by its CEO David Gentile ("Gentile"), CFO William Jacoby ("Jacoby"), former CFO Minchung Kgil, and its Directors and Partners,[1] ran a Ponzi scheme, by and through a series of limited partnerships— GPB Holdings, LP, GPB Holdings Qualified, LP, GPB Holdings II, LP, GPB Automotive Portfolio, LP, GPB Cold Storage, LP, GPB NYC Development, GPB Waste Management, LP, and GPB Holdings III, LP (hereafter, collectively, "the GPB Funds").  On the surface, the GPB Capital Ponzi scheme was a garden variety Ponzi scheme.  Investors were promised 8% returns guaranteed, and those purported returns were generated not by actual investment returns, but by tapping the capital investments of the next round of investors (or, in some cases, from the capital accounts of the investor itself, cannibalizing a particular investor's own principal).  GPB Capital

---

[1] This includes Defendants Manuel Fredercio Vianna (Managing Partner of GPB Capital), Dotty J. Bollinger (Managing Partner of GPB Capital), Michael Frost (Managing Partner of GPB Capital), Evan Myrianthopoulos (Managing Partner of GPB Capital), Abhaya Shrestha (Managing Partner of GPB Capital), Michael Cohn (Managing Director and Chief Compliance Officer of GPB Capital), Stephen Frangioni (Director of Fund accounting of GPB Capital), and Scott Naugle (Managing Director of Automotive Retail for GPB Capital).  Hereafter, along with Gentile, Jacoby, and Kgil "the GPB Principals."

was able to keep this enterprise afloat for several years, long enough to generate $1.8 billion in investment capital, a significant percentage of which was siphoned into the pockets of GPB Capital's principals.  Plaintiff was one of those individuals who invested in the GPB Capital Ponzi scheme.

2.      Behind the public-facing façade of GPB Capital and the GPB Funds, however, lurked a complex web of entities and individuals who propped up, facilitated, and financially benefitted, from the GPB Capital Ponzi scheme.  Like an onion, every time you peel a layer off of the outer surface, you find another layer underneath, each layer ultimately profiting off of the investors who put their money into the illegal machine of GPB Capital.

3.      The first layer of the onion is Ascendant Capital, LLC and Ascendant Alternative Strategies, LLC (together, "Ascendant") and Axiom Capital Management, Inc.  These entities served as the underwriters for the GPB Funds, and thus responsible for setting up and distributing the GPB Funds shares to investors (thus, hereafter, "the Underwriters"). Undisclosed to potential investors was the fact that the Underwriters and GPB Capital were functionally the same entity, as they were both collectively owned by Jeffry Schneider, the head of Ascendant ("Schneider"), Mark Martino, the head of Axiom Capital Management ("Martino") and Gentile.[2]  This is a flagrant and outrageous conflict of interest, made worse by the fact that both Schneider and Martino have been subject to multiple disciplinary and legal proceedings related to their conduct in the securities space, proceedings that should have disqualified them from serving as the underwriters for the GPB Funds at all.

4.      The second layer of the onion are the entities that facilitated the Ponzi scheme, RSM US LLP ("RSM"), Eisner Amper LLP, Gentile Pismeny & Brengel LLP, Crowe, LLP,

---

[2] Schneider, Martino, Gentile, DJ Partners LLC, and MR Ranger LLC are hereafter collectively "the GPB Owners."

Crowe Global and the Doe Auditors 1 through 10 (hereafter, "the Auditors") who served as the auditor for at least some of the GPB Funds, as well as Phoenix American Financial Services, Inc., who served as the fund administrator ("the Fund Administrator"). These entities "papered over" GPB Capital's malfeasance, issuing documents and audits that were at times blatantly false, and consistently misleading. Without these entities, GPB Capital and its principals would not have been able to keep the scheme afloat, and thus not able to extract proceeds from Plaintiff and other investors.

5. On top of all that, the third layer of the onion is a series of self-dealing transactions that the GPB Funds entered into that provided yet another (illegal) revenue stream for GPB principals and their associates. Plaintiff expects that, when the entirety of GPB Capital's malfeasance comes to light, there will be many of these inside deals. But, for the present, Plaintiff is aware of one of them in detail. GPB Capital, through GPB Automotive Portfolio, LP, over a period of about nine months purchased DJD Holdings, LLC, which owned a series of car dealerships under the umbrella of the Lash Auto Group. DJD Holdings, LLC, in turn, was 85% owned by CKFG Holdings, LLC, and CKFG was in turn owned by Gentile, McAnna, Ltd., Rina Chernaya, Diana Chernaya, Robert Kessler, and Gerald Francese (collectively, with CKFG Holdings, LLC, "CKFG"). Thus, GPB Capital (controlled by Gentile) bought the assets of the conglomerate controlled by Gentile and his associates, funneling money from Plaintiff and investors into the pockets of Gentile and his associate. None of these improper and self-dealing transactions were disclosed.

6. Through this action, Plaintiff and other similarly situated investors seek to encompass the entirety of the onion that is GPB. In doing so, Plaintiff and the class seek to hold

all responsible parties accountable for what at the end of the day is a $1.8 billion fraud on investors.

## II. JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA") codified as 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs.

8.     This Court has personal jurisdiction over each Defendant because each Defendant was involved in the operation, selling, or distribution of the GPB Funds.  The GPB Funds were underwritten by, and thus originated from, Defendant Ascendant, which is located in Austin, Texas.  As such, all Defendants have purposefully availed themselves of the laws of the State of Texas and have established minimum contacts with the State of Texas.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Ascendant, one of the key Defendants, maintains its principal place of business in this district, Defendant Schneider resides in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III. PARTIES

10.     Plaintiff Millicent Barasch is, and was at all times mentioned herein, an individual citizen of the State of Florida, and currently resides in that state.

11.     Defendant GPB Capital Holdings, LLC is a Delaware limited liability company with a principal place of business in New York City. GPB is the general partner of the GPB Funds and was at all relevant times the control person, manager, and majority owner of the GPB Funds. GPB, therefore, effected the GPB Funds' securities offerings. GPB is an investment advisor registered under the Investment Advisers Act of 1940 ("IAA").

12.     Defendant David Gentile is, and was at all times mentioned therein, an individual citizen of the State of New York, and currently resides in that state.  Defendant Gentile is, among other relevant roles, the Chief Executive Officer of GPB Capital Holdings, LLC.

13.     Defendant William Jacoby is, and was at all times mentioned therein, an individual citizen of the State of New York, and currently resides in that state.  Defendant Jacoby is the Chief Financial Officer of GPB Capital Holdings, LLC.

14.     Defendant Minchung Kgil is, and was at all times mentioned therein, an individual citizen of the State of New York, and currently resides in that state.  Defendant Kgil was the Chief Financial Officer of GPB Capital Holdings, LLC.

15.     Defendant Manuel Frederico Vianna is, and was at all times mentioned therein, an individual citizen of the State of New York, and currently resides in that state.  Defendant Vianna was a Managing Partner of GPB Capital Holdings, LLC.

16.     Defendant Dotty Bollinger is, and was at all times mentioned therein, an individual citizen of the State of Tennessee, and currently resides in that state.  Defendant Bollinger was a Managing Partner of GPB Capital Holdings, LLC.

17.     Defendant Michael Frost is, and was at all times mentioned therein, an individual citizen of the State of Texas, and currently resides in that state.  Defendant Frost was a Managing Partner of GPB Capital Holdings, LLC.

18.     Defendant Evan Myrianthopoulos is, and was at all times mentioned therein, an individual citizen of the State of New York, and currently resides in that state.  Defendant Myrianthopoulos is a Managing Partner of GPB Capital Holdings, LLC.

19.     Defendant Abhaya Shrestha is an individual citizen of the State of New York and currently resides in that state.  Prior to 2018, Defendant Shrestha was an individual citizen of the

State of New Jersey.  Defendant Shrestha was a Managing Partner of GPB Capital Holdings, LLC.

20.      Defendant Michael Cohn is, and was at all times mentioned therein, an individual citizen of the State of New York, and currently resides in that state.  Defendant Cohn was a Managing Director and the Chief Compliance Officer of GPB Capital Holdings, LLC.

21.      Defendant Steven Frangioni is, and was at all times mentioned therein, an individual citizen of the State of New York, and currently resides in that state.  Defendant Frangioni was the Director of Fund Accounting of GPB Capital Holdings, LLC.

22.      Defendant Scott Naugle is, and was at all times mentioned therein, an individual citizen of the State of New York, and currently resides in that state.  Defendant Naugle is the Managing Director of Automotive Retail of GPB Capital Holdings, LLC

23.      Defendants GPB Holdings, LP, GPB Holdings II, LP, GPB Holdings III, LP, GPB Holdings Qualified, LP, GPB Automotive Portfolio, LP, GPB Cold Storage, LP, GPB NYC Development, LP, and GPB Waste Management Fund, LP are limited partnerships that were organized under the laws of Delaware for the purpose of investing each of the Funds' cash assets into operating businesses in various industries. GPB was the general partner for each of the Funds.

24.      Defendant Ascendant Capital, LLC is a Texas corporation and has a principal place of business in this district in Austin, Texas.

25.      Defendant Ascendant Alternative Strategies, LLC is a Delaware corporation and has a principal place of business in this district in Austin, Texas.

26.      Defendant Axiom Capital Management, Inc. is a Delaware corporation and has a principal place of business in this district in New York, New York.

27.     Defendant Jeffry Schneider is, and was at all times mentioned therein, an individual citizen of the State of Texas, and currently resides in that state. Defendant Schneider is, among other relevant roles, a former employee of Axiom Capital Management and the CEO of Ascendant Capital, LLC.

28.     Defendant Mark Martino is, and was at all times mentioned therein, an individual citizen of the State of New York, and currently resides in that state. Defendant Martino is, among other relevant roles, the former CEO of Axiom Capital Management and the current CEO of Ascendant Alternative Strategies, LLC.

29.     Defendant DJ Partners, LLC is a Delaware corporation and has a principal place of business in this district in Austin, Texas. On information and belief, DJ Partners owns a substantial interest in Ascendant Alternative Strategies, LLC, and in turn is owned and controlled by Defendants Gentile and Schneider.

30.     Defendant MR Ranger, LLC is a Delaware corporation and has a principal place of business in this district in White Plains, New York. On information and belief, MR Ranger owns a substantial interest in Ascendant Alternative Strategies, LLC, and in turn is owned and controlled by Defendant Martino.

31.     Defendant RSM US LLP, formerly known as McGladrey LLP, is a limited liability partnership with it principal place of business in Chicago, Illinois. On information and belief, Defendant RSM US LLP was the auditor of GPB Capital Holdings and at least the GPB Holdings II Fund.

32.     Defendant EisnerAmper LLP is a limited liability partnership with it principal place of business in New York, New York. On information and belief, Defendant EisnerAmper LLP was the auditor of GPB Capital Holdings and at least some of the GPB Funds.

33.     Defendant Gentile Pismeny & Brengel LLP is a limited liability partnership with it principal place of business in Garden City, New York.  Upon information and belief, Defendant Gentile Pismeny & Brengel LLP was the accounting firm for GPB Capital Holdings and at least some of the GPB Funds.

34.     Defendant Crowe LLP, is a limited liability partnership with it principal place of business in Chicago, Illinois.  Upon information and belief, Defendant Crowe LLP was the auditor of GPB Capital Holdings and at least some of the GPB Funds.

35.     Defendant Crowe Global is an Association organized according to the laws of the nation of Switzerland, and has a principal place of business in New York, New York.  On information and belief, Crowe LLP is a wholly owned subsidiary of Crowe Global.

36.     Defendant Doe Auditors 1 through 10 are the currently unknown additional auditors retained by Defendant GPB Capital to perform audits on the GPB Funds.

37.     Defendant Phoenix American Financial Services, Inc. is a California corporation with its principal place of business in San Rafael, California.

38.     Defendant CKFG Holdings, LLC is a New York corporation and has a principal place of business in this district in New York, New York.

39.     Defendant McAnna, LP is a limited partnership with its principal place of business in Boca Raton, Florida.  On information and belief, Defendant McAnna, LP, owns or controls a substantial interest in CKFG Holdings, LLC.

40.     Defendant Robert Kessler is, and was at all times mentioned therein, an individual citizen of the State of New York, and currently resides in that state.  On information and belief, Defendant Robert Kessler owns or controls a substantial interest in CKFG Holding LLC.

41.     Defendant Gerald Francese is, and was at all times mentioned therein, an individual citizen of the State of Rhode Island, and currently resides in that state.  On information and belief, Defendant Gerald Francese is the registered agent for CKFG Holding LLC.

42.     Defendant Rina Chernaya is, and was at all times mentioned therein, an individual citizen of the State of Florida, and currently resides in that state.  On information and belief, Defendant Rina Chernaya owns or controls a substantial interest in CKFG Holding LLC.

43.     Defendant Diana Chernaya is, and was at all times mentioned therein, an individual citizen of the State of Florida, and currently resides in that state.  On information and belief, Defendant Diana Chernaya owns or controls a substantial interest in CKFG Holding LLC.

## IV. FACTUAL ALLEGATIONS

### The Formation of the GPB Funds, the Role of the Underwriters, and GPB Owners

44.     In or about 2012, Defendant Jeffry Schneider formed Ascendant Capital, LLC, as an Austin-based branch of Defendant Axiom Capital Management, LLC.  The CEO of Axiom at the time of the formation of Ascendant was Defendant Mark Martino.

45.     In or about 2013, Schneider and Ascendant partnered with Defendant David Gentile to form GPB Capital in order to create "an income-producing private equity fund."[3] Defendant William Jacoby served as CFO of GPB Capital.

46.     Under this model, GPB Capital would act as the general partner of a series of Funds that each had specific investment strategies (or, more accurately, purported investment strategies).  Investments in the funds would be made at the direction of the general partner, GPB Capital.

---

[3] See http://www.foundingaustin.com/home/ascendantcap

47.     Investors would buy limited partnerships in one or more of the funds, and would thus be entitled to receive investment proceeds from the funds.

48.     As part of this partnership, Ascendant distributed the limited partnerships investments that would be created by GPB Capital in the GPB Funds. By 2015, in Schneider's own words, Ascendant Capital was "dedicated. . . to structuring funds and raising capital exclusively for GPB."

49.     As the self-described "co-founder" of GPB Capital, Ascendant and Schneider have a clear conflict of interest, as they were acting as the purportedly neutral broker for the GPB Funds limited partnerships, when in fact they were at the same time acting as, at a minimum, an advisor to GPB Capital.  At no time were any of these conflicts of interest disclosed by either GPB or Ascendant to investors or potential investors.

50.     This conflict of interest became more acute in 2017.  At that time, Ascendant Capital became fully independent of Axiom Capital Management, and conducted its distribution and underwriting services by and through Ascendant Alternative Strategies, LLC, as a broker-dealer.  Ascendant Alternative Strategies was owned by Defendant DJ Partners, LLC and MR Ranger, LLC.  DJ Partners was in turn owned by Gentile and Schneider, while MR Ranger was owned by former Axiom CEO Martino.

51.     In other words, the entity that was creating the limited partnerships, the broker-dealer that was distributing those partnerships, and the entity that was managing the money coming in from those limited partnerships were all controlled by the same common group of people, sharing the proceeds of all three phases of the process in common.  As such, Gentile, Schneider and Martino were both the "GPB Owners," as well as the motive force behind the Underwriters for the GPB Funds that made the operation of the Funds possible.

52.     Once again, this blatant conflict of interest was at no time disclosed to investors or potential investors in prospectuses or other documents.

## The GPB Funds Were, and Are, a Ponzi Scheme

53.     From day one, the GPB Funds were a scam.  The business model of the Funds was nonsensical.

54.     The nonsensical nature of GPB Capital's strategy was covered up by blatant and overtly false statements made by GPB Capital, transmitted and amplified by the Underwriters.

55.     At the heart of GPB Capital's deception was a simple claim—the GPB Funds return 8% annually to investors in the limited partnerships, kicking in only three months after an investor buys into the Funds.

56.     Indeed, the GPB Funds did pay 8% consistent annual returns—on paper.  Each investor in the GPB Funds received an annual statement showing an 8% return, on top of their principal investment.

57.     These annual statements were wholly fraudulent.  In actual fact, the GPB Funds were paying these "returns" out of the investment capital of *other investors*, or even out of the investment capital of the *investor himself or herself*.  There were no investment proceeds, and no actual returns, only a set of fake numbers on a piece of paper.

58.     Not surprisingly, the true nature of these "returns" was not disclosed to investors; in fact, GPB Capital and the Funds were saying precisely the opposite.  For example, the GPB Automotive Portfolio LP's Private Placement Memorandum (the equivalent of a prospectus, hereafter "PPM"), stated unambiguously that "we will make distributions based on cash flow we have received from Dealerships."  This was completely false.

59.     Likewise, at the end of 2015, GPB Capital sent a letter to investors in GPB Holdings II LP stating "[w]ith 9 assets generating healthy cash flow to the Fund, GPB continues

to pay all distributions at the stated rate of 8% fully covered from funds from operations." This, once again, was completely untrue, as "distributions" were being made from investor capital.

60.     Indeed, GPB Capital filed documents with the SEC that, in essence, admitted that they were running a Ponzi scheme:

> **No Assurance of Distributions**. Any distributions can be paid out of any available working capital, which includes Investor's invested capital in the Company. Amounts that the Companies distribute to Investors have in the past accordingly included, and may in the future accordingly include, invested capital and have not been, and may not in the future be, entirely comprised of income generated by the Portfolio Companies.

May 1, 2019 Form ADV. This information was not communicated to investors.

## All Parties to the GPB Funds—Except the Investors—Handsomely Profited From the GPB Funds' Ponzi Scheme

61.     While investors were receiving fake "distributions" that cannibalized their own investments, everyone else involved with the GPB Funds were receiving very real, and very substantial, proceeds from the fraudulent operations of the Funds.

62.     GPB Capital and the Underwriters (and, thus, the GPB Owners) realized handsome profits from the exorbitant fee structure of the GPB Funds. For example, the Automotive Portfolio LP's PPM discloses that an investor will be charged due diligence fees (1% of invested capital), placement and marketing support fees (1.75%), wholesaling fees (up to 1.25%), organizational expenses (up to 1.25%), managerial assistance fees (2.0% of capital contributions), acquisition fees (between 1.75% and 2.75% of the price of assets acquired), and partnership expenses. Thus, for every dollar invested in the GPB Funds, at least 7.25 cents are taken off the top, before any of that money is actually invested in any holdings. If the money invested is actually put to work and invested, the price rises to 10 cents or more—before the investors' funds even have the *opportunity* to make any returns.

63.     On top of that, GPB Funds offered extraordinary sales commissions to broker-dealers who marketed the limited partnerships to investors, including Ascendant when it sold the partnerships directly to investors.  Contrary to the standard practice in the industry, these commissions were paid by the investor, not by the issuer of the limited partnerships.  More to the point, they ranged from 7% to as high as 11% of the capital invested—far beyond any similar offering.

64.     Taken together, when an investor signed on the dotted line and put money into the GPB Funds, 20% or more of that money was immediately extracted to pay GPB, the Underwriters, and brokers.  With a book value of over $1.8 billion for the GPB Funds, this represents many hundreds of millions of dollars in fees paid to these parties by investors in the GPB Funds.

65.     On top of all of that, GPB Capital paid itself a 20% commission on any returns the Funds actually realized, in the form of "management and performance fees."

66.     Given this fee structure, it was essentially economically and logically impossible for the GPB Funds to return a real profit to investors.  An investor was, in essence, down 20% or more from day one of the investment in the form of the fees taken out by GPB Capital, the Underwriters, and brokers.  And, if the Fund actually made some returns on its investments, a significant portion was siphoned off to the GPB Principals.

### The GPB Funds Were Unregistered Securities

67.     While all of this was occurring, the GPB Funds were operating, and being sold as, improper unregistered securities.

68.     Under Texas law, securities that are, *inter alia*, not registered on an approved stock exchange are subject to registration requirements, either directly with the Texas Securities

Commissioner or via "coordination" with the SEC. *See* Texas Revised Civil Statutes, art. 581-7(B) (registration by notification) and (C) (registration by coordination).

69.     The GPB Funds were not properly registered with either the Texas Securities Commissioner or with the SEC.

70.     Moreover, the limited partnerships in the GPB Funds were clearly subject to registration. Under Section 12(g) of the Exchange Act, a class of securities with more than $10,000,000 in assets and 2,000 or more equity holders are subject to registration. *See* 15 U.S.C. § 78l(g).

71.     Many if not all of the Funds met the requirement for registration under the Section 12(g) on this basis, and yet failed to register.

## The GPB Funds Engaged In Extensive Self-Dealing, Including Through CKFG Holdings

72.     The outrageous fee structure was not the only manner in which Defendant Gentile enriched himself in operating GPB Capital and the GPB Funds. He also engaged in self-dealing, having GPB Capital purchase entities for the GPB Funds that were owned by Gentile and his associates.

73.     Plaintiff anticipates that discovery in this matter will reveal many connections and insider transaction associated with the GPB Funds. Plaintiff's pre-filing investigation has revealed, however, one such relationship which, Plaintiff suggests, is representative of the inside transactions and relationships connected with the GPB Funds.

74.     Defendant CKFG Holding LLC is an investment vehicle for the Chernaya family. According to Court records, 46.47% of CKFG Holding LLC was owned by Defendant McAnna, Ltd., 23.4% was owned by Defendant Rina Chernaya, 23.4% was owned by Defendant Diana Chernaya, 2.94% was owned by Defendant David Gentile, 2.94% was owned by Defendant Robert Kessler, and 1.18% was owned by Defendant Gerald Francese.

75.     As such, Defendant Gentile was an insider of CKFG Holding LLC, and would personally benefit from any transactions in which CKFG was a party.

76.     In 2012, CFKG Holding LLC was the majority owner of DJD Holdings, LLC and DJD Holdings2, LLC (collectively, "DJD").  DJD in turn was the owner of two car dealerships in New York state, Lash Auto Group ("LAG") d/b/a Volkswagen of White Plains and Lash Auto Group 2 ("LAG2") d/b/a Volkswagen of Oneonta.

77.     On May 13, 2013, GPB Automotive purchased 51% of both DJD entities, at a cost of $3,000,000.  As a part owner of the DJD entities, by and through his ownership stake in CKFG Holding, Gentile was personally enriched by this transaction, along with his business associates.

78.     On February 13, 2014, GPB Automotive purchased the remaining 49% of DJD Holdings, LLC and 44.1% of DJD Holdings2, LLC, for a total price of $2,178,250.  Thus, once again, Gentile and his business associates were personally enriched from the receipt of investor income from the GPB Funds.

79.     At no point were any of these insider transactions disclosed to investors or potential investors.

**The GPB Funds' Ponzi Scheme Was Made Possible By The Fund Administrator, and the Auditors**

80.     None of the activities of GPB Capital and the GPB Funds would have been possible without the assistance of two additional parties—the Fund Administrator, and the Auditors.

81.     The Fund Administrator was also a key component in the operation of the GPB Funds.  According to the Automotive PPMs, the Fund Administrator provided "Full Service Investor Administration" and "Investor Relations," included distributions, redemptions, account

summary documents, commission calculation, and regulatory compliance. On information and belief, the Fund Administrator provided those same services to the other GPB Funds as well.

82.     In keeping with these duties, the Fund Administrator did have, or should have had, access to financial statements and records from the GPB Funds that demonstrated the fee structure of the GPB Funds, as well as payments made to GPB Capital, the Underwriters, and the Broker-Dealers pursuant to that structure.

83.     In addition, the Fund Administrator did have, or should have had, access to financial statements and records from the GPB Funds that demonstrated that GPB Capital was using investment capital to pay annual returns to investors, as opposed to using investment returns.

84.     Instead, the Fund Administrator prepared and distributed account statements that did not reflect any of these facts, and portrayed to investors that their investment principal was intact, and that it was earning annual returns consistent with GPB Capital's representations.

85.     These statements, which the Fund Administrator knew or should of have known were fraudulent, allowed GPB Capital to conceal the nature of its operations, as well as the nature and amount of the proceeds it and other selected entities were receiving, at the expense of the investors.

86.     Finally, the Auditors, did have, or should have had, access to financial statements and records from the GPB Funds that demonstrated that GPB Capital was using investment capital to pay annual returns to investors, as opposed to using investment returns.

87.     Instead, the Auditors prepared and distributed audited financial statements that did not reflect any of these facts, and portrayed to investors and other concerned parties that the

GPB Funds were producing returns consistent with GPB Capital's representations, and that investors stood to receive significant investment returns.

88.     These statements, which the Auditors knew or should of have known were fraudulent, allowed GPB Capital to conceal the nature of its operations, as well as the nature and amount of the proceeds it and other selected entities were receiving, at the expense of the investors.

### All Parties to the GPB Funds—Except the Investors—Acted in Concert in Furtherance of the Ponzi Scheme

89.     As set forth above, many hands found their way into the pocket of the GPB Funds, and thus into the pockets of the investors in the GPB Funds.

90.     While the ways in which they profited off the GPB Funds varied from Defendant to Defendant, all of them knew the score—that the GPB Funds were a Ponzi scheme, designed to enrich everyone involved except the investors.

91.     Armed with this knowledge, each Defendant played their respective parts in order to advance their individual interests at the expense of the investors.  Each part was necessary in order for the GPB Funds Ponzi scheme to operate as it did.

### The Named Plaintiff's Experience

92.     Throughout 2017, Plaintiff Millicent R. Barasch purchased three units of GPB Automotive Portfolio limited partnership, at a purchase price of $150,000.

93.     Throughout 2017, Plaintiff Millicent R. Barasch purchased four and four-tenths units of GPB Holding II limited partnership, at a purchase price of $220,000.

94.     Throughout 2017 and 2018, Plaintiff Millicent R. Barasch purchased over five units of GPB Waste Management limited partnership, at a purchase price of $281,570.40. .

95.     Beginning in January 2017 throughout at least the end of 2018, Plaintiff received account statements from the Fund Administrator regarding her ownership of GPB Holdings II, GPB Automotive, and GPB Waste Management.  The statements show a "total capital invested" amount equaling $651,570.40, and distributions totaling $68,074.96 through the end of 2018.

96.     By the end of 2018, Plaintiff's account statements contained a cryptic disclaimer that had not been previously present.[4]

## V. FRAUD ALLEGATIONS

97.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

98.     Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Defendants.

99.     ***Who***:  Defendants GPB Capital, the GPB Funds, the GPB Principals, and the GPB Owners.

100.     ***What***:  The Defendants, by and through public documents provided to investors and potential investors, stated, *inter alia*:

  a.     That the GPB Funds were providing an 8% annual dividend to investors, when in fact the GPB Funds where generating little or no returns from the investments made by the Funds;

  b.     Omitting to disclose the 8% annual dividends that were reported as returns on investments made by the Funds were, in fact, taken from other investors' capital investments and/or from the investor's own capital contributions;

---

[4] See Ex B., at 7 ("THIS DISTRIBUTION STATEMENT SHOULD NOT BE CONSIDERED A STATEMENT OF THE PARTNERSHIP'S PERFORMANCE.  INVESTMENT INVOLVES SIGNIFICANT RISK AND INVESTORS MAY LOSE SOME OR ALL OF THEIR CONTRIBUTED CAPITAL.")

c. That, when stating that GPB Funds *might* make distributions out of capital investments, that in fact the Funds *had* been making such distributions out of capital investments in the past, and was intending to do so going forward;

d. Via account documents distributed at the direction of Defendants, that investors had been awarded substantial annual dividends on top of capital investment, when in fact the invested capital of those investors had been reduced in order to fund dividends to other investors; and

e. Omitting to disclose that the Underwriters issuing the limited partnerships of the Funds were controlled by the same principals as the Funds themselves, creating a clear conflict of interest.

101. **When**: Starting no later than 2013, and on an ongoing basis through to the present.

102. **Where**: in Private Placement Memoranda, marketing materials, letters to investors, and other similar documents distributed to Plaintiff, Class members, and the public.

103. **How**: Defendants have affirmatively misrepresented, in writing, the nature of, operation of, and state of investments made into the GPB Funds, as set forth above.

104. **Why**: For the purpose of inducing Plaintiff and Class members to purchase the limited partnerships in the GPB Funds, rather than pursuing other investment opportunities. Had Defendants disclosed the truth, Plaintiff and Class members would not have invested in the GPB Funds.

## VI. TOLLING OF STATUTES OF LIMITATIONS

105. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

106. All applicable statutes of limitation are and have been tolled by Defendants GPB Capital, the GPB Funds, and GPB Principals, and the GPB Owners' misrepresentations and fraudulent concealment of the truth about the nature of the GPB Funds as set forth above.

107. Plaintiff and Class members could not, in the exercise of reasonable diligence, have discovered the falsity of Defendants' representations until the revelation of the nature of those relationships via inside sources.

108. Defendants GPB Capital, the GPB Funds, and the GPB Principals, alongside the other Defendants, engaged in an active and affirmative conspiracy to hide the truth of the nature of, operation of, and state of investments made into the GPB Funds.

109. As such, all statutes of limitation are and have been tolled until the filing of this Complaint.

## VII. CLASS ACTION ALLEGATIONS

110. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

111. Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

112. Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> All persons who held shares in any of the GPB Funds from November 5, 2015 to the present.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class. Excluded from the Class are Defendants, any entities in which Defendants have a controlling interest, and Defendants' agents and employees, and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

113.     Plaintiff does not know the exact number of members in the Class, but reasonably believe that Class members number, at a minimum, to be more than 2,000.

114.     Plaintiff and members of the Class have been harmed and/or continue to be harmed by the acts of Defendants.

115.     Plaintiff seeks injunctive and declaratory relief on behalf of himself and all Class members, as well as damages in their individual capacity.

116.     The joinder of all Class members is impracticable due to the number of Class members.

117.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits and inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

118.     Further, the Class can be identified easily through records maintained by Defendant GPB Capital and/or by the GPB Funds and/or the Underwriters.

119.     There are well-defined, nearly identical, common questions of law and fact affecting all parties.

120.     The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

121.     Such common questions of law and fact include, but are not limited to, the following:

      a.     Whether Defendants had as their object to bring in investment proceeds by and through the GPB Funds, and to appropriate those proceeds for their own gain;

b.  Whether Defendants engaged in activities intentionally directed to the purpose of bringing in investment proceeds by and through the GPB Funds, and to appropriate those proceeds for their own gain;

c.  Whether the materials provided by the GPB Funds to investors, including but not limited to Private Placement Memoranda, marketing materials, letters to investors, and other similar documents, contained material misrepresentations and omissions;

d.  Whether the Underwriters, the Auditors, and the Fund Administrator substantially assisted in the fraud conducted by GPB Funds with regard to investors;

e.  Whether GPB Capital, David Gentile, and William Jacoby had fiduciary duties to Plaintiff and Class Members;

f.  Whether GPB Capital, David Gentile, and William Jacoby breached their fiduciary duties to Plaintiff and Class Members;

g.  Whether the GPB Principals, CKFG, the Auditors, and the Fund Administrator substantially assisted in the breaches of fiduciary duty made by GPB Capital, David Gentile, and William Jacoby;

h.  Whether the Auditors and the Fund Administrators owed a duty to the Plaintiff and Class Members;

i.  Whether the Auditors and the Fund Administrators breached their duties to the Plaintiff and Class Members;

j.  Whether GPB Capital and the GPB Funds violated the Texas Securities Act by and through making false material misrepresentations and omissions;

k.  Whether GPB Capital and the GPB Funds violated the Texas Securities Act by and through selling unregistered securities;

l.  Whether CKFG, the Auditors, and the Fund Administrator aided and abetted the violations of the Texas Security Act;

m.  Whether the Underwriters, CKFG, and the GPB Principals were "control persons" with regard to the violations of the Texas Security Act;

122.  The claims of Plaintiff are typical of the claims of the Class they seek to represent.  Plaintiff and other Class members invested in one or more of GPB Funds during the Class Period.

123.  Plaintiff will fairly and adequately represent and protect the interests of the Class.

124.  Plaintiff has no interests which are antagonistic to any member of the Class.

125.  Plaintiff has retained counsel experienced in handling class action claims involving breaches of contract and fiduciary duty, fraud, and securities violations.  Plaintiff's counsel are also experienced in prosecuting the claims of investors against entities that have engaged in malfeasance with respect to investments.

126.  Common issues predominate over any individual issues.  The focus of these claims is on the conduct of GPB Capital, the GPB Funds, and the associated persons and entities, which did not vary as between class members.  Resolution of these common questions will drive the claims of all Class members toward judgment or resolution: they involve a "fatal similarity" for purposes of the claims of all class members.

127.  A class action is the superior method for the fair and efficient adjudication of this controversy.

128. Class-wide relief is essential to resolve the claims regarding all potential investors relating to all responsible parties.

129. Plaintiff therefore seeks certification of the Class pursuant to Rules 23(b)(1)(A), (b)(2), and (b)(3). Plaintiff seeks certification of a Rule 23(b)(1)(A) class. Adjudicating Defendants' liability for the facts and claims alleged here poses a substantial risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants if a class is not certified.

130. Plaintiff seeks certification of an injunctive and declaratory relief class pursuant to Rule 23(b)(2). Defendants have acted on grounds generally applicable to the Class, and the violations complained of herein are substantially likely to continue in the future if an injunction is not entered. Therefore, final injunctive relief and corresponding declaratory relief with respect to the Class as a whole is appropriate.

131. Plaintiff seeks certification of a Rule 23(b)(3) class. As detailed above, common questions regarding Defendants' conduct predominate over any individual issues, and a class action is superior to the alternative of hundreds or thousands of individual cases involving the same core facts and claims.

132. In the alternative, Plaintiff seeks certification of an "issues" class pursuant to Rule 23(c)(4). This class would incorporate, and allow for the adjudication of, all issues the Court adjudges to be common to members of the class and subclass, such as one or more of the common issues identified by Plaintiff in ¶ 121, *supra*.

## VIII. CAUSES OF ACTION

## COUNT 1: (AGAINST ALL DEFENDANTS EXCEPT THE GPB FUNDS)

### Civil Conspiracy

133.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

134.    The GPB Funds were the vehicle through which all other Defendants—GPB Capital, the Underwriters, the Broker-Dealers, the GPB principals, the Fund Administrator, RSM, and the CKFG—perpetuated a complex and multi-faceted scheme to bring in investment income from investors such as Plaintiff and the class members, and then extract the proceeds of those investments for their own gain.

135.    While each of the players or groups of players had their own part in the overall scheme, and their own particularized income streams derived from their part, taken as a whole this amounts to a coordinated effort by all Defendants (by and through the Funds) to defraud Plaintiff and class members.

136.    Under Texas law, a civil conspiracy requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC,* 580 S.W.3d 136, 141 (Tex. 2019).

137.    As set forth in this complaint, more than 100 individuals and entities, named as Defendants in this matter, are involved in some element of the overall scheme.

138.    The object to be accomplished in this case was clear—to bring in investment proceeds under false and misleading circumstances, and to then appropriate those assets for their own benefit at the expense of those investors.

139.    All Defendants had a meeting of the minds in this matter.  They either engaged in operations that were explicitly and intentionally designed to defraud investors, or had full information necessary to know that the purpose of the GPB Funds was to defraud investors and chose nevertheless to participate.

140.    Defendants, individually and collectively, engaged in numerous unlawful, overt acts as set forth in Plaintiff's subsequent causes of action.

141.    Finally, Plaintiff and class members have lost, collectively over $1.8 billion, representing the money invested in the GPB Funds that is currently in the hands of Defendants, or remaining in the funds themselves.

## COUNT 2: (AGAINST DEFENDANTS GPB CAPITAL, THE GPB FUNDS, THE GPB PRINICPALS, AND THE GPB OWNERS)

### Fraud

142.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein, except for the paragraphs in the other Counts, *infra* and *supra*.

143.    GPB Capital, the GPB Funds, the GPB Principals, and the GPB Owners knowingly made false representations and omissions regarding the nature of the limited partnership interests offered for sale, including but not limited to (as alleged herein, *supra*) that the GPB Funds were and would return 8% return on investment proceeds, when in fact those distributions were being made out of the capital contributions of other investors and/or the investor's own capital account.

144.    GPB Capital, the GPB Funds, the GPB Principals, and the GPB Owners knew these representations were false at the time they were made.

145.    Moreover, these false statements or omissions were made by GPB Capital, the GPB Funds, the GPB Principals, and the GPB Owners for the purpose of inducing Plaintiff,

Class Members, and other potential investors to rely on those representations and invest in the GPB Funds.

146.    Plaintiff and Class Members justifiably relied on those representations by GPB Capital, the GPB Funds, the GPB Principals, and the GPB Owners.

147.    As a result, Plaintiff and Class members were injured as a result of the false and misleading statements or omissions, in that their investments in the GPB Funds have lost most or all of their value.

148.    Plaintiff and the Class, therefore, seek damages in an amount to be determined at trial.

## COUNT 3: (AGAINST THE UNDERWRITERS AND THE FUND ADMINISTRATOR)

### Substantially Assisting in the Commission of Fraud

149.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein, except for the paragraphs in the other Counts, *infra* and *supra*.

150.    As set forth in Count Two, GPB Capital, the GPB Funds, the GPB Principals, and the GPB Owners engaged in fraud by knowingly making false representations and omissions regarding the nature and operations of the GPB Funds.

151.    These knowingly false and misleading statements and omissions were transmitted to investors via the Underwriters and the Fund Administrator.  Absent this transmission of the false statements to investors, GPB Capital, the GPB Funds, and the GPB Principals, and the GPB Owners would not have been able to carry out their fraudulent scheme.

152.    Moreover, the Underwriters, and the Fund Administrator knew that the statements by the GPB entities were false.  More specifically, *inter alia*, they knew that it was not possible for the GPB Funds to pay out a consistent 8% return given the fee structure of the Funds (fees that, in part, were being funneled to the Underwriters and the Fund Administrator), and they

knew of the extensive and irreconcilable conflicts of interests that were endemic to the operation and management of the GPB Funds.

153.    As such, the Underwriters and the Fund Administrator provided substantial assistance to the GPB entities in their fraudulent conduct.

154.    As a result of this substantial assistance, Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

## COUNT 4: (AGAINST GPB CAPITAL AND THE GPB PRINICPALS)

### Breach of Fiduciary Duty

155.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

156.    GPB Capital is, and for all relevant times was, the general partner of the GPB Funds, and was a registered investment advisor.  The GPB Principals, individually and collectively, were responsible for carrying out GPB Capital's duties.

157.    As such, GPB Capital and the GPB Principals owed fiduciary duties to the investors who bought limited partnerships in the GPB Funds.  These duties may not be waived or contracted around.

158.    GPB Capital and the GPB Principals breached their fiduciary duties in several respects, set forth in more detail *supra*.  More specifically, *inter alia*, (1) the GPB Funds were operated intentionally as a Ponzi scheme, extracting proceeds from investors for their own gains; (2) GPB Capital had massive and wholly undisclosed conflicts of interests, in the form of the co-ownership relationship between GPB Capital, the GPB Funds, and the Underwriters; and (3) the GPB Funds engaged in self-dealing transactions that directly benefitted Gentile and other insiders at the expense of the Funds and the investors.

159.    But for these breaches of fiduciary duty, Plaintiff and Class members would not have sustained the loss of their investment capital.

160.    As such, Plaintiff and Class members were damaged, and are entitled to damages in an amount to be proven at trial.

## COUNT 5: (AGAINST THE GPB OWNERS, CKFG, THE AUDITORS AND THE FUND ADMINISTRATOR)

### Substantially Assisting in the Breach of Fiduciary Duty

161.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein, except for the paragraphs in the other Counts, *infra* and *supra*.

162.    As set forth in Count Four, GPB Capital and the GPB Principals breached their fiduciary duties to Plaintiff and Class Members.

163.    The GPB Owners, who shared co-ownership of GPB Capital, knew of the conduct by GPB Capital (and, indeed were actively involved in the breaches), profited directly from those breaches, and did nothing to alert relevant parties as to those breaches.

164.    Similarly, CKFG, which shared many of the same interrelationships and were directly involved in the self-dealing fiduciary duty breaches, knew of the conduct of GPB Capital, profited directly from the breaches, and did nothing to alert relevant parties as to those breaches.

165.    Likewise, the Auditors and the Fund Administrator knew of the conduct by GPB Capital, Gentile, and Jacoby, knew of the duties those parties owed to Plaintiff and Class Members, and took active steps to cover up the breaches.  Specifically, the Auditors and the Fund Administrators failed to alert relevant parties as to those breaches, and distributed documents that contained false statements designed to hide the breaches of fiduciary duty by GPB Capital, Gentile, and Jacoby.

166.     As a direct and proximate cause of the substantial assistance provided by these parties, Plaintiff and other Class Members were damaged, and are entitled to damages in an amount to be proven at trial.

## COUNT 6: (AGAINST THE AUDITORS AND THE FUND ADMINISTRATOR)
### Negligence

167.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein, except for the paragraphs in the other Counts, *infra* and *supra*.

168.     The Auditors had a duty to Plaintiff and Class Members to exercise reasonable care in conducting and facilitating the audits that they knew would be provided to Plaintiff and Class Members.

169.     The Auditors breached that duty by providing material incorrect audit documents, in violation of applicable accounting standards and in a negligent manner.

170.     The Fund Administrator had a duty to Plaintiff and Class Members to exercise reasonable care in the preparation of account statements that were distributed to Plaintiff and Class Members.

171.     The Fund Administrator breached that duty by providing material incorrect account statements, in violation of applicable standards in the financial services industry and in a negligent manner.

172.     Defendants negligent and wrongful breaches of its duties owed to Plaintiffs and Class members proximately caused losses, in the form of investment losses that would not have occurred if Defendants had shown due care toward its customers by following applicable rules and standards.

173.     These losses reflect damages to Plaintiff and Class members in an amount to be proven at trial.

PLAINTIFF'S ORIGINAL COMPLAINT                - 31 -

## COUNT 7: (AGAINST GPB CAPITAL AND THE GPB FUNDS)

### Violations of the Texas Security Act

174.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein, except for the paragraphs in the other Counts, *infra* and *supra*.

175.    Texas Revised Civil Statutes, art. 581-33(A)(2) provides that "[a] person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security."

176.    Section (A)(4) makes clear that a "security" includes limited partnership interests of the type offered by the GPB Funds.

177.    As set forth above, GPB Capital and the GPB Funds made numerous false or deliberately misleading statements about the nature of the GPB Funds, including, *inter alia*, (1) the GPB Funds were operated intentionally as a Ponzi scheme, extracting proceeds from investors for their own gains; (2) GPB Capital had massive and wholly undisclosed conflicts of interests, in the form of the co-ownership relationship between GPB Capital, the GPB Funds, and the Underwriters; and (3) the GPB Funds engaged in self-dealing transactions that directly benefitted Gentile and other insiders at the expense of the Funds and the investors.

178.    As such, Plaintiff and the Class Members are entitled to rescission or damages in an amount to be proven at trial.

## COUNT 8: (AGAINST DEFENDANTS THE AUDITORS, CKFG, AND THE FUND ADMINISTRATOR)

### Aiding and Abetting Violations of the Texas Security Act

179.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein, except for the paragraphs in the other Counts, *infra* and *supra*.

180.    Texas Revised Civil Statutes, art. 581-33(F)(2) provides that "[a] person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer."

181.    As set forth in Count Seven, GPB Capital and the GPB Funds violated Texas Revised Civil Statutes, art. 581-33(A)(2), by making numerous and consistent false statements regarding the nature and operation of the GPB Funds.

182.    Defendant CKFG knew of the conduct of GPB Capital, was involved in the improper and self-dealing transactions that were not disclosed to Plaintiff and Class Members, and did nothing to alert relevant parties as to those breaches.

183.    Likewise, the Auditors and the Fund Administrator knew of the conduct by GPB Capital and took active steps to cover up the breaches.  Specifically, the Auditors and the Fund Administrators failed to alert relevant parties as to those breaches, and distributed documents that contained the false statements of GPB Capital and the GPB Funds.

184.    As such, the Auditors and the Fund Administrator are jointly and severally liable for the violations set forth in Count Seven.

## COUNT 9: (AGAINST DEFENDANTS THE GPB PRINCIPALS, THE GPB OWNERS, THE UNDERWRITERS, AND CKFG)

### Control Person Violations of the Texas Security Act

185.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein, except for the paragraphs in the other Counts, *infra* and *supra*.

186.    Texas Revised Civil Statutes, art. 581-33(F)(2) provides that "[a] person who directly or indirectly controls a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer, unless the controlling person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of facts by reason of which the liability is alleged to exist."

187.    As set forth in Count Seven, GPB Capital and the GPB Funds violated Texas Revised Civil Statutes, art. 581-33(A)(2), by making numerous and consistent false statements regarding the nature and operation of the GPB Funds.

188.    The GPB Principals were the day-to-day operators of GPB Capital, and were responsible for carrying out its operations.

189.    The GPB Owners directly control GPB Capital and the GPB Funds through a co-ownership relationship between GPB Capital and the Underwriters.

190.    The Underwriters indirectly control GPB Capital and the GPB Funds via the same co-ownership arrangement via the GPB Principals.

191.    Finally, CKFG indirectly controls GPB Capital and the GPB Funds, as the principals of CKFG and GPB Capital overlap, as David Gentile is a key member of both entities.

192.    As such, the GPB Principals, the GPB Owners, the Underwriters, and CKFG are jointly and severally liable for the violations set forth in Count Seven.

## COUNT 10: (AGAINST GPB CAPITAL AND THE GPB FUNDS)

### Violations of the Texas Security Act

193.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein, except for the paragraphs in the other Counts, *infra* and *supra*.

194.    Texas Revised Civil Statutes, art. 581-33(A)(1) provides that [a] person who offers or sells a security in violation of Section 7 . . . of this Act is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security."

195.    Texas Revised Civil Statutes, art. 581-7(A) states that "[n]o dealer or agent shall sell or offer for sale any securities . . . except those which have been registered . . . and except those which come within the classes enumerated in Section 5 or Section 6 of this Act, until the issuer of such securities or a dealer registered under the provisions of this Act shall have been granted a permit by the Commissioner . . . ."

196.    The limited partnerships offered by the GPB Funds and sold by GPB Capital were not registered pursuant Section 7(A) of the Texas Securities Act.

197.    The limited partnerships offered by the GPB Funds and sold by GPB Capital were not exempt under Section 5 of the Texas Securities Act.

198.    The limited partnerships offered by the GPB Funds and sold by GPB Capital were not exempt under Section 6 of the Texas Securities Act, as they, inter alia, are not listed on an approved national stock exchange.  *See* Texas Revised Civil Statutes, art. 581-6(F).

199.    GPB Capital and the GPB Funds sold these unregistered securities to Plaintiff and Class Members, in violation of Section 7(A).

200.    As such, Plaintiff and the Class Members are entitled to rescission or damages in an amount to be proven at trial.

## COUNT 11: (AGAINST DEFENDANTS THE AUDITORS AND THE FUND ADMINISTRATOR)

### Aiding and Abetting Violations of the Texas Security Act

201.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein, except for the paragraphs in the other Counts, *infra* and *supra*.

202.     Texas Revised Civil Statutes, art. 581-33(F)(2) provides that "[a] person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer."

203.     As set forth in Count Ten, GPB Capital and the GPB Funds violated Texas Revised Civil Statutes, art. 581-7(A), by selling to Plaintiff and Class Members unregistered securities, in the form of the limited partnerships in the GPB Funds.

204.     Defendants the Auditors and the Fund Administrator knew that GPB Capital and the GPB Funds were selling limited partnerships to Plaintiff and Class Members, knew or should have known that these securities were unregistered, and knew or should have known that they were required to be registered under Section 7(A) of the Texas Securities Act.

205.     As such, the Auditors and the Fund Administrator are jointly and severally liable for the violations set forth in Count Ten.

## COUNT 12: (AGAINST DEFENDANTS THE GPB PRINCIPALS, THE GPB OWNERS, THE UNDERWRITERS, AND CKFG)

### Control Person Violations of the Texas Security Act

206.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein, except for the paragraphs in the other Counts, *infra* and *supra*.

207.    Texas Revised Civil Statutes, art. 581-33(F)(2) provides that "[a] person who directly or indirectly controls a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer, unless the controlling person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of facts by reason of which the liability is alleged to exist."

208.    As set forth in Count Ten, GPB Capital and the GPB Funds violated Texas Revised Civil Statutes, art. 581-7(A), by selling to Plaintiff and Class Members unregistered securities, in the form of the limited partnerships in the GPB Funds.

209.    The GPB Principals were the day-to-day operators of GPB Capital, and were responsible for carrying out its operations.

210.    The GPB Owners directly control GPB Capital and the GPB Funds through a co-ownership relationship between GPB Capital and the Underwriters.

211.    The Underwriters indirectly control GPB Capital and the GPB Funds via the same co-ownership arrangement via the GPB Principals.

212.    Finally, CKFG indirectly controls GPB Capital and the GPB Funds, as the principals of CKFG and GPB Capital overlap, as David Gentile is a key member of both entities.

213.    As such, the GPB Principals, the Underwriters, and CKFG are jointly and severally liable for the violations set forth in Count Ten.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A.      For all recoverable compensatory and other damages sustained by Plaintiffs and the Class;

B. For the rescission of all investments made by Plaintiff and Class Members to the GPB Funds, as well as all transactions made by the GPB Funds to other entities in furtherance of the civil conspiracy;

C. An award of attorneys' fees and costs to counsel for Plaintiffs and the Class;

D. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class or Classes and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

E. Such other relief as the Court deems just and proper.


Dated: November 6, 2019   By: s/___*L. Todd Kelly*_____

THE CARLSON LAW FIRM, P.C.
L. Todd Kelly
Email: tkellyefile@carlsonattorneys.com
Texas Bar No. 24035049
11606 North Interstate Highway 35
Austin, Texas 78753
Telephone: (512) 346-5688
Facsimile: (512) 719-4362

MEYER WILSON CO., LPA
David Meyer (*pro hac vice* to be filed)
Email: dmeyer@meyerwilson.com
Matthew R. Wilson (*pro hac vice* to be filed)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* to be filed)
Email: mboyle@meyerwilson.com
Courtney M. Werning (*pro hac vice* to be filed)
Email: cwerning@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

PEIFFER WOLF CARR AND KANE, APLC
Joseph Peiffer (*pro hac vice* to be filed)
Email: jpeiffer@pwcklegal.com
201 St. Charles Avenue, Suite 4314
New Orleans, LA 70170

Telephone: (504) 523-2434
Facsimile: (504) 523-2464

*Attorneys for Plaintiff and the Proposed Class*

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Dated: November 6, 2019

By: *s/  L. Todd Kelly*_____

THE CARLSON LAW FIRM, P.C.
L. Todd Kelly (Texas Bar No. 24035049)
Email:  tkellyefile@carlsonattorneys.com
11606 North Interstate Highway 35
Austin, Texas 78753
Telephone:  (512) 346-5688
Facsimile:  (512) 719-4362

MEYER WILSON CO., LPA
David Meyer (*pro hac vice* to be filed)
Email: dmeyer@meyerwilson.com
Matthew R. Wilson (*pro hac vice* to be filed)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* to be filed)
Email:  mboyle@meyerwilson.com
Courtney M. Werning (*pro hac vice* to be filed)
Email:  cwerning@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

PEIFFER WOLF CARR AND KANE, APLC
Joseph Peiffer (*pro hac vice* to be filed)
Email:  jpeiffer@pwcklegal.com
201 St. Charles Avenue, Suite 4314
New Orleans, LA 70170
Telephone:  (504) 523-2434
Facsimile:  (504) 523-2464

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby Certify that, on this 6th day of November 2019, I electronically filed the

Complaint with the Clerk of Court using the CM/EMF system.

_/s/_ _L. Todd Kelly_____
L. Todd Kelly

JS 44 (Rev. 08/18)

Case 1:19-cv-01050-APA Document 50-1 Filed 11/18/19 Page 43 of 48
Case 1:19-cv-01050-LY Document 50-1 Filed 06/13/19 Page 42 of 45

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MILLICENT R. BARASCH, individually and on behalf of others similarly situated

**DEFENDANTS**

GPB CAPITAL HOLDINGS, LLC et al.

**(b)** County of Residence of First Listed Plaintiff    FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    NY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

L. Todd Kelly, THE CARLSON LAW FIRM, 11606 North interstate Highway 35, Austin TX 78753, (512) 346-5688

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
     Plaintiff

☐ 3   Federal Question
     *(U.S. Government Not a Party)*

☐ 2   U.S. Government
     Defendant

☒ 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - |   of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |   Product Liability | ☐ 690 Other |   28 USC 157 |   3729(a)) |
| ☐ 140 Negotiable Instrument |   Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |   Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|   & Enforcement of Judgment |   Slander |   Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |   Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|   Student Loans | ☐ 340 Marine |   Injury Product | |   New Drug Application | ☐ 470 Racketeer Influenced and |
|   (Excludes Veterans) | ☐ 345 Marine Product |   Liability | | ☐ 840 Trademark |   Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |   Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
|   of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending |   Act | ☐ 862 Black Lung (923) |   Protection Act |
| ☐ 190 Other Contract |   Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |   Property Damage |   Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise |   Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) |   Exchange |
| | ☐ 362 Personal Injury - |   Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| |   Medical Malpractice | |   Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee |   Income Security Act |   or Defendant) |   Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ |   Sentence | |   26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability |   Accommodations | ☐ 530 General | | |   Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | |   Agency Decision |
| |   Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | |   State Statutes |
| |   Other | ☐ 550 Civil Rights |   Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | |   Conditions of | | | |
| | |   Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. s.1332(d)(2)

Brief description of cause:
Conspiracy, Fraud, and violations of Texas Security Act in connection with a Ponzi scheme

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
9,999,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   HON. LEE YEAKEL

DOCKET NUMBER   1:19-cv-01050-LY

DATE
11/06/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ L. Todd Kelly.

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.

Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.

**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## ATTACHMENT TO CIVIL COVER SHEET

*MILLICENT R. BARASCH, individually and on behalf of others similarly situated v. GPB CAPITAL HOLDINGS, LLC, et al.*

**Response to I.(c):** *Attorneys (Firm Name, Address, and Telephone Number)*

MEYER WILSON CO., LPA
David Meyer (*pro hac vice* to be filed)
Email: dmeyer@meyerwilson.com
Matthew R. Wilson (*pro hac vice* to be filed)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* to be filed)
Email: mboyle@meyerwilson.com
Courtney M. Werning (*pro hac vice* to be filed)
Email: cwerning@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

PEIFFER WOLF CARR AND KANE, APLC
Joseph Peiffer (*pro hac vice* to be filed)
Email: jpeiffer@pwcklegal.com
201 St. Charles Avenue, Suite 4314
New Orleans, LA 70170
Telephone: (504) 523-2434
Facsimile: (504) 523-2464

THE CARLSON LAW FIRM, P.C.
L. Todd Kelly (Texas Bar No. 24035049)
Email: tkellyefile@carlsonattorneys.com
11606 North Interstate Highway 35
Austin, Texas 78753
Telephone: (512) 346-5688
Facsimile: (512) 719-4362

*Attorneys for Plaintiff and the Proposed Class*

**Response to I. DEFENDANTS:**

GPB CAPITAL HOLDINGS, LLC; DAVID GENTILE; WILLIAM JACOBY; MINCHUNG KGIL; MANUEL FREDERICO VIANNA; DOTTY J. BOLLINGER; MICHAEL FROST; EVAN MYRIANTHOPOULOS; ABHAYA SHRESTHA; MICHAEL COHN; STEVEN FRANGIONI; SCOTT NAUGLE; GPB HOLDINGS, LP; GPB HOLDINGS II, LP; GPB AUTOMOTIVE PORTFOLIO, LP; GPB COLD STORAGE, LP; GPB WASTE MANAGEMENT FUND, LP; GPB HOLDINGS III, LP; GPB HOLDINGS QUALIFIED, LP; GPB NYC DEVELOPMENT, LP; ASCENDANT CAPITAL, LLC; ASCENDANT ALTERNATIVE STRATEGIES, LLC; AXIOM CAPITAL MANAGEMENT, INC.; JEFFRY SCHNEIDER; MARK D. MARTINO; DJ PARTNERS

LLC; MR RANGER, LLC; RSM US LLP (f/k/a McGLADREY LLP); EISNERAMPER
LLP; GENTILE PISMENY & BRENGEL, LLP; CROWE, LLP; CROWE GLOBAL; DOE
AUDITORS 1 through 10; PHOENIX AMERICAN FINANCIAL SERVICES, INC.; CKFG
HOLDING LLC; McANNA, LP; ROBERT KESSLER; GERALD FRANCESE; RINA
CHERNAYA; and DIANA CHERNAYA

JS 44  (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

MILLICENT R. BARASCH, individually and on behalf of others similarly situated

**DEFENDANTS**

GPB CAPITAL HOLDINGS, LLC et al.

**(b)**  County of Residence of First Listed Plaintiff     FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant     NY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

L. Todd Kelly, THE CARLSON LAW FIRM, 11606 North interstate Highway 35, Austin TX 78753, (512) 346-5688

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 2   U.S. Government
       Defendant

☒ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                               *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 710 Fair Labor Standards | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | **LABOR** | | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       Another District
       *(specify)*

☐ 6   Multidistrict
       Litigation -
       Transfer

☐ 8   Multidistrict
       Litigation -
       Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. s.1332(d)(2)

Brief description of cause:
Conspiracy, Fraud, and violations of Texas Security Act in connection with a Ponzi scheme

## VII.  REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
  UNDER RULE 23, F.R.Cv.P.

DEMAND $
9,999,000.00

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   HON. LEE YEAKEL

DOCKET NUMBER   1:19-cv-01050-LY

DATE
11/06/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ L. Todd Kelly.

**FOR OFFICE USE ONLY**

RECEIPT #               AMOUNT               APPLYING IFP               JUDGE               MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.