**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| KINNIE MA INDIVIDUAL RETIREMENT ACCOUNT, GRACEMARIE BOLAND, DEAN CROOKS, CORRI RENE EDEN, JEFFERY S. GRAMM INDIVIDUAL RETIREMENT ACCOUNT, STACY GREASOR INDIVIDUAL RETIREMENT ACCOUNT, CATHERINE KOMINOS, KAREN LOCH, ROBERT A. STONE LIVING TRUST, SHIRLEY STONE LIVING TRUST, AND VICTOR WADE INDIVIDUAL RETIREMENT ACCOUNT, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br>      v. <br><br> ASCENDANT CAPITAL, LLC, *et al.*, <br><br><br> Defendants. | CIVIL ACTION NO. 1:19-CV-01050-LY |

**GPB DEFENDANTS' MOTION TO DISMISS**
**THE FIRST AMENDED CLASS ACTION COMPLAINT**

## PRELIMINARY STATEMENT

Defendants GPB Capital Holdings, LLC ("GPB Capital") and GPB Automotive Portfolio, LP, GPB Cold Storage, LP, GPB Holdings II, LP, GPB Holdings, LP, GPB Holdings III LP, GPB Holdings Qualified LP, GPB NYC Development, LP, and GPB Waste Management Fund, LP (collectively, the "GPB Funds") (GPB Capital and the GPB Funds are sometimes collectively referred to as the "GPB Defendants") submit this motion to dismiss the putative First Amended Class Action Complaint (the "Complaint") of plaintiffs Kinnie Ma Individual Retirement Account, Gracemarie Boland, Dean Crooks, Corri Rene Eden, Jeffery S. Gramm Individual Retirement Account, Stacy Greasor Individual Retirement Account, Catherine Kominos, Karen Loch, Robert A. Stone Living Trust, Shirley Stone Living Trust, and Victor Wade Individual Retirement Account (collectively, "Plaintiffs"), as against the GPB Defendants.

This is the second attempt of the Plaintiffs to set forth actionable claims against the GPB Defendants. Despite the addition of factual allegations largely taken from alleged "due diligence" reports and pleadings in other matters, the Complaint tracks the original pleadings in alleging that each of the named Plaintiffs and others were defrauded into purchasing a series of limited partnership interests in the GPB Funds through material misstatements and omissions in the private placement memorandum for the GPB Funds. Plaintiffs allege that as a result of these material misrepresentations, they each purchased those limited partnership interests, in the course of which Subscription Agreements were entered into. Based on these allegations the Plaintiffs have asserted claims for fraud and for the sale of unregistered securities under the Texas Securities Act ("TSA"), and for common law fraud and breach of fiduciary duty.

Previously fully submitted to this Court and pending is the defendants' motion to dismiss based on the doctrine of *forum non conveniens*.[1]  As set forth therein, this Court need not review the adequacy of the pleadings in this Complaint as the Subscription Agreements executed by Plaintiffs and other purchasers contain a mandatory forum selection clause applicable to the Complaint, which requires that all claims relating to the subscription and purchase of the limited partnership interests be brought in the state courts of New York.

Even assuming, *arguendo*, that dismissal is not mandated based on the forum selection clause, the causes of action are nonetheless legally deficient and must be dismissed pursuant to Rule 12(b)(6).  The Texas Securities Act claims must be dismissed because the relevant agreements provide for the application of New York law, and Texas statutory claims may not be advanced; Plaintiffs have failed to plead their fraud claims with particularity; and Plaintiffs have impermissibly brought a direct claim for breach of fiduciary duty when such claim can only be maintained derivatively.

## THE PLAINTIFFS' ALLEGATIONS

The facts relevant to this motion are contained in the Complaint, which, for the purposes of this motion are deemed to be true, and the Declaration of Jennifer Bergenfeld ("Bergenfeld Dec.") dated January 31, 2020 (ECF No. 317-1), the Supplemental Declaration of Jennifer Bergenfeld ("Bergenfeld Supp. Dec.") dated May 21, 2020 (ECF No. 484-1), and the Second Supplemental Declaration of Jennifer Bergenfeld ("Second Bergenfeld Supp. Dec.") dated July 30, 2020 in Support of the Motion to Dismiss and the Exhibits annexed thereto.

---

[1] Pursuant to this Court's April 7, 2020 Order (ECF No. 433), the issue of dismissal based on the doctrine of *forum non conveniens* was to be addressed separately from issues as to the substantive sufficiency of the Complaint. The *forum non conveniens* motion has been fully briefed and is before this Court for determination.  This motion deals only with the substantive deficiencies of the pleadings.

This is a putative class action brought by the Plaintiffs against more than 90 defendants, including GPB Capital and the GPB Funds.  According to the Complaint, the claims arise out of the defendants' alleged "improper conduct" in selling limited partnership interests in the GPB Funds.  (Compl. ¶2).  The Plaintiffs claim that GPB Capital, the general partner of each of the GPB Funds, along with Ascendant Capital, LLC ("Ascendant"), acting as primary distribution agent, and their respective principals David Gentile ("Gentile") and Jeffry Schneider ("Schneider"), "knowingly made numerous material misstatements and omitted material facts in their Private Placement Memorandum ('PPM')."  (Compl. ¶3).  Each of the other defendants are alleged to have "sold, and/or materially assisted with the sale" of the limited partnership interests.  Id.  Plaintiffs allege that they purchased limited partnership interest in the GPB Funds, with the earliest alleged purchase of an interest in GPB Holdings, LP taking place in or about March 2015 and the latest purchase in GPB Holdings II, LP, taking place in January 2018. (Compl. ¶¶81-91).

According to the Complaint, the GPB Defendants along with Ascendant, defendant Axiom Capital Management, Inc. ("Axiom"), Gentile and Schneider, and the other defendants acted knowingly because they were aware that "GPB's 'investment strategy' was destined to fail because it included exorbitant, **unprecedented** fees which were not accurately described in its PPMs."  (Compl. ¶4) (emphasis in original).

As alleged, in or about 2013, Schneider, who had formed Ascendant in 2012, approached Gentile with the idea of creating GPB as an "income-producing private equity fund." (Compl. ¶119). Plaintiffs assert that Gentile and Schneider "agreed to split their profits from GPB and Ascendant, but did not disclose this secret deal to investors."  Id.

The Complaint asserts that GPB Capital, Gentile and Schneider went on to market the various GPB Funds through a pattern of misrepresentations and omissions.  Among them, Plaintiffs allege that the PPMs failed to disclose Schneider's role as a co-founder and control person of GPB, Gentile's majority ownership interest in the primary distribution agent and the conflicts of interest that these ownership interests created.  (Compl. ¶¶169, 172-173, 265(b)).  The Complaint also asserts that the GPB Defendants and others marketed a "Destined-to-Fail Business Model," which encompassed the payment of total fees of between 15 to 20%, and which were so large as to make "reasonable returns impossible." (Compl. ¶¶ 132-141).  The Complaint asserts that GPB Capital with Gentile and Schneider "developed a marketing scheme" which created the "appearance" of profitability by distributing an 8% annual dividend even though the investments were not profitable, and that GPB Capital falsely disclosed to investors that it was paying the dividend out of cash flow, which, Plaintiffs claim, was untrue.  (Compl. ¶¶139-142).  The Complaint further asserts that the PPMs and offering materials failed to disclose that Schneider and Ascendant were control persons of GPB Capital, that Schneider and defendant Mark D. Martino were "bad actors" under SEC Rule 506(d), and that no disclosure of this "tainted" background was made. (Compl. ¶¶173-176, 265(c)). The Plaintiffs state that GPB Capital and the GPB Funds misrepresented their "skill and expertise" in managing business they were to acquire (Compl. ¶265(e)), and failed to disclose the serious financial misconduct that was being engaged in.   (Compl. ¶265(f)).  Finally, Plaintiffs assert that GPB Capital and the GPB Funds failed to disclose that the financial statements for the GPB Defendants' two largest

funds, Automotive and Holdings II "should not have been relied on," and that GPB Capital and the GPB Funds "knowingly overstated the value of fund assets."  (Compl. ¶265(g), (h)).[2]

According to the Complaint, by some point in 2016, GPB Capital became aware that based on the number of investors in certain funds, it was required to register those securities with the SEC. (Compl. ¶178).  The Complaint alleges that no shares were ever registered. (Compl. ¶180), and that GPB Capital and the GPB Funds misrepresented their entitlement to an exemption from registration in the PPMs and offering documents. (Compl. ¶265(d)).

## THE CLAIMS ASSERTED

Plaintiffs have asserted 12 causes of action. Count I asserts a claim against GPB Capital and the GPB Funds for fraud under the Texas Securities Act, while Count II asserts a claim for aiding and abetting that alleged fraud and Count III against individual defendants for Control Person liability; Count IV asserts a claim against GPB Capital and the GPB Funds for the sale of unregistered securities under the Texas Securities Act while Count V asserts a claim for aiding and abetting that unregistered sale and Count VI a claim against individual defendants for Control Person liability; Count VII asserts a claim for fraud in connection with the sale of the limited partnership interests against GPB Capital and others, while Count VIII asserts a claim for substantially assisting in that alleged fraud; Count X asserts a claim against GPB Capital and Gentile, for breach of fiduciary duty while Count XI asserts a claim for substantially assisting in the breach of fiduciary duty.  Counts IX and XII are not asserted against any of the GPB Defendants.

---

[2] Paragraphs 205 to 216 of the Complaint are used to summarize the allegations of two other complaints which are unrelated to any Plaintiffs' purchase of their respective limited partnership interest.

## PLAINTIFFS' AGREEMENT TO NEW YORK
## AS THE FORUM FOR LITIGATION AND TO
## THE APPLICATION OF NEW YORK LAW

In connection with each Plaintiffs' purchase of their limited partnership interest in a GPB

Fund, such Plaintiff executed a subscription agreement ("Subscription Agreement") (Bergenfeld

Dec.¶3 and Exhibit B annexed thereto; Bergenfeld Supp. Dec. ¶¶ 3-15 and Exhibits G-S annexed

thereto).  Each of these Subscription Agreements contains both a forum selection clause as well

as a New York choice of law provision.  Paragraph 40(b) of the "Subscription Agreement Terms

and Conditions" provides:

> Venue for any litigation arising out of, under, or in connection with
> this Agreement will lie in the state courts having jurisdiction over
> such matters located in New York County, New York.

(Paragraph 40(b) will hereafter be referred to as the "Forum Selection Clause" or "Clause").

Paragraph 40(a) of that agreement provides that:

> This Agreement will be enforced, governed and construed in all
> aspects in accordance with the laws of the State of New York,
> without regard to that state's conflicts of law provisions.

(Bergenfeld Dec.¶3 and Exhibit B annexed thereto; Bergenfeld Supp. Dec. ¶¶2-15 and Exhibits

G-S annexed thereto).

The Limited Partnership Agreements of the GPB Funds (collectively, the "LPA"),

appended to the Private Placement Memorandum for those funds, provide for the application of

Delaware law to claims arising under that Agreement.  Paragraph 13.3 of the LPAs, each of

which is substantively similar, provides:

> This Agreement and the rights of the parties hereunder shall be
> governed by, interpreted and enforced in accordance with, the
> internal laws (exclusive of the choice of law provisions thereof) of
> the State of Delaware as to all matters, including matters of
> validity, construction, effect, performance and remedies.

(Bergenfeld Dec.¶4 and Exhibit C annexed thereto; Second Bergenfeld Supp. Dec. ¶¶ 3-9 and

Exhibits T-Y annexed thereto).

## ARGUMENT

### I.    THE CLAIMS AGAINST THE GPB DEFENDANTS CAN ONLY BE PURSUED IN THE NEW YORK STATE COURTS

Pursuant to this Court's Order dated April 7, 2020, the GPB Defendants' motion to

dismiss based on the doctrine of *forum non conveniens* has been fully briefed and is now before

this Court for determination.  As detailed in that motion, in entering into the Subscription

Agreements pursuant to which each Plaintiff purchased their limited partnership interest in a

GPB Fund, each Plaintiff agreed that any claim "arising out of, under, or in connection with" that

Agreement, had to be litigated in the New York State Supreme Court.  Such provision mandates

that this Court dismiss these claims against GPB Capital and the GPB Funds.

GPB Defendants repeat and incorporate the arguments contained in their pending motion.

Based on that pending motion, the Complaint must be dismissed.

### II.    THE CLAIMS MUST BE DISMISSED

Should this Court reach the merits of the asserted claims, they must nonetheless be

dismissed as legally insufficient under Federal Rule of Civil Procedure 12(b)(6).

#### A.  New York Law Applies to These Claims

The Texas Supreme Court has held that the contracting parties' choice of law will be

respected "if the particular issue is one which the parties could have resolved by an explicit

provision in their agreement directed to that issue." In re J. D. Edwards World Solutions Co., 87

S.W.3d 546, 549 (Tex. 2002). The parties' choice of law is given effect "even if the particular

issue is one which the parties could not have resolved by an explicit provision in their agreement

directed to that issue," as long as the chosen law has a substantial relationship to the parties or

the underlying transaction. Id.; see also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 258 (5th Cir 2014).[3]

The choice-of-law clause contained in each Subscription Agreement mandates the application of New York law.  That clause provides that all claims arising out of the Subscription Agreement "be enforced, governed and construed in all respects in accordance with the laws of the State of New York without regard to that state's conflicts of law provisions." (Bergenfeld Dec.¶3 and Exhibit B annexed thereto; Bergenfeld Supp. Dec. ¶¶2-15 and Exhibits G-S annexed thereto) (emphasis added). Such clause, and its use of such phrases as "in all respects" and "without regard to that state's conflicts of law provisions" mandate that the choice-of-law clause applies to Plaintiffs' Texas securities law allegations, and each of its other fraud and related claims, all of which arise from the purchase of the limited partnership interests memorialized in the Subscription Agreements. See Crawford Prof'l Drugs, 748 F.3d at 256-59 (enforcing the choice of law clause, which states "[u]nless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions."); AlliantGroup, L.P. v. Mols, No. H-16-3114, 2017 U.S. Dist. LEXIS 12133, at *18-19 (S.D. Tex. Jan. 30, 2017);[4] Harland Clarke Holdings Corp. v. Milken, 997 F. Supp. 2d 561, 588 (W.D. Tex. 2014) (Delaware choice-of-law provision encompassing "[a]ll matters relating to this Agreement or the breach, interpretation,

---

[3] In deciding a motion to dismiss pursuant to Rule 12(b)(6) this Court may consider "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim."  Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir 2003); Schott v. Massengale, No. 18-759-JWD-RLB, 2019 U.S. Dist. LEXIS 166737, at *16-17 (M.D. La. Sep. 27, 2019). Each Plaintiff's purchase of a limited partnership interest in a GPB Fund was effectuated through that Plaintiff's execution of a Subscription Agreement.

[4] In addition, Texas has a strong policy of respecting and enforcing contracting parties' choice of law clauses. McKissock, LLC v. Martin, 267 F. Supp. 3d 841, 849 (W.D. Tex. 2016).

construction, validity, termination and enforcement of this Agreement" held to likely preclude plaintiffs' TSA claims); Haynsworth v. The Corp., 121 F.3d 956, 959-70 (5th Cir. 1997) (a choice-of-law clause which provides that "[t]he rights and obligations of the parties arising out of or relating to the Member's membership of, and/or underwriting of insurance business at, Lloyd's and any other matter referred to in this Undertaking shall be governed by and construed in accordance with the laws of England" held to preclude the assertion of claims under the TSA); Duncan v. Banks, No. SA-15-CV-148-XR, 2015 U.S. Dist. LEXIS 124132, at *13, 21 (W.D. Tex. Sep. 16, 2015) (holding that a choice-of-law clause in an arbitration agreement stating "[t]his Subscription Agreement will be governed by and construed in accordance with the laws of the jurisdiction of formation of the Partnership" applies to plaintiffs' breach of fiduciary duty claim).

Application of New York law is not unfair.  As noted, the named Plaintiffs and members of the putative class reside throughout the United States, and New York contacts with this action predominate.  The Subscription Agreements and PPMs that Plaintiffs claim to have relied on in deciding to invest in GPB Funds originated from New York (as indicated by the address of the Subscription Agreements, and GPB Capital and the GPB Funds are all based in New York). Plaintiffs cannot show that New York has no substantial relationship to the parties or the transaction, that Texas has a more significant relationship, or that Texas has a fundamental policy that would be contravened by applying New York law. See O'Connor v. Cory, No. 3:16-CV-1731-B, 2018 U.S. Dist. LEXIS 180227, at *28 (N.D. Tex. Oct. 19, 2018).[5]

---

[5] The result would be the same even in the absence of the choice-of-law provision in the Subscription Agreement.  Although Plaintiffs have added the word "Texas" to multiple allegations of the Complaint (and added two Plaintiffs who claim to reside in Texas), it is clear that New York, and not Texas, is the state with the predominant connection to the asserted claims. "In deciding choice-of-law issues, Texas courts follow the Restatement (Second) of

"[W]here the parties have chosen the governing body of law, honoring their choice is necessary to ensure uniform interpretation and enforcement of that agreement and to avoid forum shopping." Motorola Credit Corp. v. Uzan, 388 F.3d 39, 51 (2d Cir. 2004). Plaintiffs agreed to the application of New York law. Dismissal based on such provision is appropriate at the motion-to-dismiss stage. See Barnett v. DynCorp Intl., L.L.C., 831 F.3d 296, 301-9 (5th Cir. 2016) (enforcing a Kuwait choice-of-law provision at the motion to dismiss stage, which states this "Contract shall be governed by and interpreted exclusively under the laws of Kuwait and all disputes between the Parties shall be resolved exclusively in Kuwait"); Blakes v. DynCorp Intl., L.L.C., 732 F. App'x 346, 346-347 (5th Cir. 2018) (dismissing plaintiff's putative class action because the parties executed a Foreign Service Employment Agreement which contained a choice of law provision dictating that "any disputes arising from the contract would be governed by Afghan law and would be resolved in an Afghan forum"); Verde v. Stoneridge, Inc., 137 F. Supp.3d 963, 976-78 (E.D. Tex. 2015) (applying Michigan law to named plaintiff and putative class members under the choice of law provision because the class is described as "successors, assigns, customers, and users of [defendant's] products"). See also Energy Coal S.P.A. v. CITGO Petroleum Corp., 836 F.3d 457, 459 (5th Cir. 2016) ("Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry."); Maynard v. PayPal, Inc., No. 3:18-CV-0259-D, 2019 U.S. Dist. LEXIS 130240, at *11 (N.D. Tex. Aug. 5, 2019), citing Cont'l Airlines, Inc. v. Mundo Travel Corp., 412 F.Supp.2d

---

Conflict of Law's 'most significant relationship' test." Swartz v. Textron Ground Support Equip., Civil Action No. 4:19-cv-00540-P, 2020 U.S. Dist. LEXIS 124642, at *5 (N.D. Tex. July 15, 2020). Applying such traditional choice-of-law analysis, New York would be the state whose law would be applicable to these claims.

1059, 1070 (E.D. Cal. 2006) ("a valid choice of law provision selecting another state's law is grounds to dismiss a claim under the forum state's statutes").

### B.  Application of New York Law Mandates Dismissal of the Texas Securities Act Claims

Plaintiffs have asserted claims in Counts I, II, IV and V against the GPB Defendants based on the Texas Securities Act.  Having agreed to the application of New York law, however, the Plaintiffs cannot now forum shop and assert securities law claims based on Texas statutory law. O'Connor, 2018 U.S. Dist. LEXIS 180227.  In O'Connor, the Court considered the defendant's contention that because the parties had entered into a contract which provided for the law to be applied, that "enforcing the parties' choice of Delaware law bars the Plaintiffs from bringing a claim under the Texas Securities Act."  In holding that, having chosen Delaware law the plaintiff had no right to assert Texas Securities Law claims, and the Court held "refusing to apply the parties' chosen law 'would contradict [the forum state's] policy to respect the chosen law of the contracting parties.'" Id. at *32 (internal citation omitted).  The Court went on to state that, "Texas has a strong policy of respecting and enforcing contracting parties choice-of-law clauses, as long as the transaction bears a reasonable relation to that state." Id.; see Harland Clarke Holdings, 997 F.Supp 2d at 589 ("it is the choice-of-law clause . . . that purportedly precludes Plaintiffs from bringing Texas statutory claims"); Young v. ValtX Holdings, Inc., 336 S.W.3d 258, 263 n.6 (Tex. App. 2010) (upholding dismissal of  TSA claims where choice-of-law provision required application of Canadian law).

Full relief is available under New York law.  Plaintiffs may not avoid the contractual terms agreed to and otherwise plead claims under Texas statutory law.

## C.  **Plaintiffs Have Failed to Plead Fraud with Particularity**

In Count VII of the Complaint, the Plaintiffs have asserted a claim for fraud, alleging that the GPB Defendants "made false representations and omissions regarding the limited partnership interests" purchased by the Plaintiffs and members of the putative class. Count VIII asserts a claim for substantial assistance with that fraud.

To state a claim for fraud under New York law, which is applicable to this claim based on the express terms of the Subscription Agreements, Plaintiffs must allege "a misrepresentation or a material omission of fact which was known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or omission, and injury." VisionChina Media Inc. v. S'holder Representative Servs., LLC, 109 A.D.3d 49, 57, 967 N.Y.S.2d 338, 343 (1st Dep't 2013).  Fraud under Texas law is substantially similar.  See e.g. Rivers & Hills Hospitality Group, LLC v. GTB Rest. Texas, LLC, No. A-19-CV-00519-SH, 2020 U.S. Dist. LEXIS 4219, at *8 (W.D. Tex. Jan. 10, 2020).

Pursuant to Rule 9(b), a "heightened level of pleading is imposed for fraud claims," requiring "'a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" Dorsey v. Portfolio Equities, Inc, 540 F.3d 333, 339 (5th Cir. 2008) (internal citation omitted). "Both federal securities claims and state-law fraud claims are subject to the pleading requirements of Rule 9(b)." Id. at 338-339.  See Williams v. WMX Techs., 112 F.3d 175, 177 (5th Cir. 1997) ("Pleading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'") (internal citation omitted).

Plaintiffs' fraud allegations are based on generic statements in "PPMs" and other "Offering Materials" (Compl. ¶264), but they do not identify when a PPM was issued or what "other" document is referenced, and when (and if) such PPM or other document was reviewed by any of the named Plaintiffs, who bought different limited partnership interests over an approximately three year period.  Many of these "statements" relate to contractual obligations. According to Plaintiffs:

1.  "The GPB Defendants  . . .  misrepresented the Funds business objectives and did not disclose that they were destined to fail."

2.  "The GPB Defendants, Gentile and Schneider misrepresent or omitted to disclose their incurable non-waivable conflicts and breaches of fiduciary duty";

3.  The PPMs failed to disclose that Schneider and Ascendant were "control persons";

4.  The PPMs misrepresented that the Funds were entitled to an exemption from registration;

5.  The PPMs misrepresented "the GPB Defendants skill and expertise in managing businesses," and to disclose their prior "poor results";

6.  The PPMs "omitted to disclose that GPB, the Funds, Ascendant and Schneider had engaged in or were aware of serious financial misconduct";

7.  The PPMs "omitted to disclose that" the 2015 and 2016 financial statements of Automotive and Holdings II "contained highly material financial misrepresentations and/or omissions"; and

8.  The PPMs "knowingly overstated the value of fund assets."

(Compl. ¶265).

The fraud-based claims, including the claims for fraud under the TSA, are deficient with respect to the "'the who, what, when, where, and how' of the events at issue," Dorsey, 540 F.3d at 339 (internal citation omitted).[6]  While the Complaint is replete with generalized allegations of

---

[6] "Group pleading," as utilized by the Plaintiffs, who do not identify the makers of specific fraudulent statements and instead speaks in terms of "defendants," does not meet the

misstatements occurring over multiple years, the Complaint fails to identify with the specificity required by Rule 9(b) the particular GPB statements or omissions that Plaintiffs contend induced any of them to purchase a limited partnership interest in a GPB Fund.  For example, while paragraph 265 (as well as paragraph 45) lists the supposed misstatements and omissions in "PPMs and other Offering Materials" (Compl. ¶265), no reference is made to any particular document, when that document was received, who the supposed document was received by, and who was responsible for the preparation or distribution of any particular PPM or other Offering Material.  Many of the documents referenced in the Complaint were issued after many of the named Plaintiffs had purchased their interests and could not have served to induce that particular Plaintiff to act.  It is simply impossible to determine what statements were made and to whom.

In addition to the absence of the required specificity, many of the alleged misstatements, including those relating to the failure to provide financial statements, the source of the distributions, and the operational oversight to be provided, relate to the obligations of the general partners contained in the PPMs and LPAs.  Under New York law, no cause of action for fraud exists where the fraud alleged relates to a breach of contract.  See E. Coast Int'l Tire Grp., Inc. v. N.Y. Tire Factory, Inc., 2020 NY Slip Op 03769, *1 (2d Dep't Jul. 8, 2020) ("'A cause of action to recover damages for fraud will not lie where the only fraud claimed arises from the breach of a contract'") (internal citation omitted).

Similarly, many of the alleged misstatements, particularly those touting GPB Capital's experience and business acumen, are nothing more "puffery," which is not actionable under New York law.  Kelly v. Jefferies Grp., Inc., No. 1:17-cv-2432 (ALC), 2018 U.S. Dist. LEXIS 26090,

---

requirements of Rule 9(b)."  Wu v. Tang, No. 3:10-CV-0218-O, 2011 US Dist LEXIS 4489, at *13-14 (N.D. Tex. Jan. 14, 2011).

at *24 (S.D.N.Y. Feb. 15, 2018) (the Court finding statements that "Defendants recommended [the issuer company] as 'safe, low risk investment which would lead to significant profits for Plaintiff,' that "based on his findings, investing in [the issuer company] would lead to substantial appreciation of his investment contribution[,]'" and that "Defendants represented that [the issuer company] were 'unrivaled experts in creating and selling state-of-the-art technology'," were "immaterial puffery").

With respect to Count VII, the claim is particularly deficient as to the allegations of reliance. "[T]he particularity requirement of Rule 9(b) extends to allegations of reliance," and "[p]laintiffs must 'describe . . . the circumstances of [their] reliance' with particularity.'" Alameda Cnty. Employees' Retirement Ass'n v. BP p.l.c., 2013 U.S. Dist. LEXIS 171459, at *112-113 (S.D. Tex. Dec. 2, 2013) (internal citation omitted). There is not a single allegation that any of the Plaintiffs actually read a PPM or "other Offering Materials," or that any Plaintiff actually relied on any specific misrepresentation. Rather, allegations of reliance are limited to a few boiler-plate assertions: in paragraphs 267 to 269, Plaintiffs allege that the "misrepresentations and omissions were material, indeed crucial" to Plaintiffs' "evaluation of the GPB Funds, and the decision to invest," that the defendants "intended for such investors and Plaintiffs to rely," and that the Plaintiffs were "reasonable in relying upon the misrepresentations and omissions." In paragraph 325 of the Complaint, Plaintiffs similarly state, without any factual basis, that "Plaintiffs and the Class members justifiably relied" on the alleged misstatements and omissions.

Whether viewed under New York or Texas law, the allegations of this Complaint which say nothing more than that Plaintiffs "relied," are insufficient. See, e.g. In re Fyre Festival Litig., 399 F.Supp 3d 203, 216-217 (S.D.N.Y. 2019) ("plaintiffs' statement of reliance is conclusory and

generalized to all alleged misstatements and omissions . . . Because there is no assertion that any plaintiff saw, read, or otherwise noticed Atkins' April 27, 2017 Tweet, there is no allegation that 'there was 'actual reliance' all'"); Schwab v. E*TRADE Fin. Corp., 258 F. Supp. 3d 418, 430 (S.D.N.Y. 2017) (The plaintiff's allegations "fail to show with any sort of particularity that the plaintiff was aware — whether by reading, hearing, or otherwise — of any of the challenged misstatements when he traded with E*TRADE"); Knutson v. Harris, No. 3:17-CV-2618-BK, 2018 U.S. Dist. LEXIS 152409, at *17 (N.D. Tex. Sep. 6, 2018) ("Crucially lacking are any allegations tying Knutson and Barry's decisions to invest in Wireless Power to any of the specific alleged misrepresentations identified in the Second Amended Complaint"); Paselk v. Bayview Loan Servicing, LLC, No. 6:16-cv-77 MHS-JDL, 2016 U.S. Dist. LEXIS 157173, at *18 (E.D. Tex. Aug. 23, 2016).  As the New York Courts have noted, a party who fails to read a document containing the alleged fraudulent statements cannot "establish the essential element of justifiable reliance" and cannot sustain a claim for fraud. Vaughn-Flam v. Ftf Crawlspace Specialists, 2002 N.Y. Slip Op 50509(U), *16 (Sup. Ct. N.Y. Cty. October 10, 2002).

Count VII, alleging fraud, must be dismissed.  Because the existence of an underlying claim for fraud is a prerequisite for a aiding and abetting claim, the claim for substantially assisting in that fraud (Count VIII) must be dismissed as well. See, e.g. Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.), 490 F. Supp. 2d 784, 790 (S.D. Tex. 2007).

### D.  **The Breach of Fiduciary Duty Claim Is Legally Insufficient**

Plaintiffs and the putative class bring Counts X and XI of the Complaint as "limited partners of the Funds." (Compl. ¶ 344). Each of the LPAs, which govern the rights of limited partners, contain a choice of law provision that provides: "This Agreement and the rights of the parties hereunder shall be governed by, interpreted and enforced in accordance with, the internal

laws (exclusive of the choice of law provisions thereof) of the State of Delaware as to all matters, including matters of validity, construction, effect, performance and remedies." LPA ¶ 13.3 (Bergenfeld Dec. ¶ 4 and Exhibit C annexed thereto; Second Bergenfeld Supp. Dec. ¶¶ 3-9 and Exhibits T-Y annexed thereto). Accordingly, this claim is analyzed under Delaware law.

The breach of fiduciary duty claim is based on two components: 1) the failure of GPB Capital and Gentile to disclose their "serious . . . conflicts of interest"; and 2) the failure to disclose "material financial improprieties" involving GPB Capital and the GPB Funds. Neither component is sufficient to state an actionable claim. (Compl. ¶ 345).

The failure of GPB Capital and Gentile to disclose their alleged conflicts of interest, their relationship and alleged ownership in "the lead broker and underwriter that was selling the GPB Funds' securities" is alleged in the context of the offering of the limited partnership interests to the Plaintiffs (Compl. ¶ 345). Such non-disclosure cannot form the basis for a fiduciary duty claim for at the time of the supposed non-disclosures no Plaintiff was yet a limited partner, and, as a result, no fiduciary duty was owed. "It is well established in Delaware that to successfully state a claim for breach of the fiduciary duty of disclosure, the plaintiff must have been owed a fiduciary duty at the time of the alleged breach." Leung v. Schuler, No. 17089, 2000 Del. Ch. LEXIS 41, at *19-20 (Del. Ch. Feb. 29, 2000). See Sanders v. Devine, No. 146791997, Del. Ch. LEXIS 131, at *16 (Del. Ch. Sep. 24, 1997) (where "plaintiff was not a stockholder at the time the prospectus was issued . . . as a matter of law, there can be no liability under any fiduciary duty theories for the disclosures made in connection with the offering").

The second component of this asserted claim is the alleged failure to "disclose the material financial improprieties" involving the GPB Funds and the issuance of inaccurate account statements." (Compl. ¶345). Such claim can only be pursued derivatively.

The Supreme Court of Delaware in Tooley v. Donaldson, Lufkin, & Jenrette, Inc., held that the question of whether a claim is direct or derivative "must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" 845 A.2d 1031, 1033 (Del. 2004) (emphasis in original).

The asserted claim is that GPB Capital and Gentile engaged in mismanagement and misconduct by failing to make accurate disclosure as to financial state of the GPB Funds. Where the duty allegedly breached is to manage the affairs of the corporation, that duty is owed to the corporation and not separately or independently to the stockholders. Dieterich v. Harrer, 857 A.2d 1017, 1027 (Del. Ch. 2004). "A claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders." Kramer v. W. Pac. Indus., Inc., 546 A.2d 348, 353 (Del. 1988). Similarly, claims of self-dealing by management have been deemed to be clearly derivative in nature: "When a director engages in self-dealing or commits waste, he takes from the corporate treasury and any recovery would flow directly back into the corporate treasury. Any benefit to the stockholders would be limited to the indirect effect on their proportional ownership or share of the venture. This is a classic derivative formulation." Thornton v. Bernard Techs., Inc., No. 962-VCN, 2009 Del. Ch. LEXIS 29, at *10-11 (Del. Ch. Feb. 20, 2009).

Plaintiffs have made no effort to assert this claim derivatively and have failed to comply with Del. Ch. Ct. R. 23.1, which mandates that "stockholders must either demand that the board of directors pursue the claim on behalf of the corporation, or allege that making demand on the board would have been futile," and which requires that those alleging demand futility "'must

comply with stringent requirements of factual particularity that differ substantially from . . .

permissive notice pleadings.'" In re Lendingclub Corp. Derivative Litig., 2019 Del. Ch. LEXIS

1347, at *18 (Del. Ch. Oct. 31, 2019) (internal citation omitted). See Inter-Marketing Grp. USA,

Inc. v. Armstrong, No. 2017-0030-TMR, 2019 Del. Ch. LEXIS 40, at *7 (Del. Ch. Jan. 31, 2019)

(applying the same demand requirement in the limited partnership context).

 To the extent that claim asserts a right to receive timely financial statements as a duty

owed directly to each Plaintiff, the failure of GPB Capital to provide such statements still does

not give rise to a direct claim. "There is not, of course, a general fiduciary duty to provide

financial statements. Instead, under the LPAs, the Managers had a contractual duty to provide the

unitholders with such reports. The Plaintiffs have not articulated why the violation of this

contractual right amounted to a breach of fiduciary duty. Thus, this factual allegation does not

state a claim for breach of fiduciary duty." Albert v. Alex Brown Mgmt. Servs., Nos. 762-N,

763-N, 2005 Del. Ch. LEXIS 133, at *11-12. (Del. Ch. Aug. 26, 2005). See Reklam v. Viacom,

Inc., No. 16-285-SLR, 2017 U.S. Dist. LEXIS 25368, at *12 (D. Del. Feb. 23, 2017) ("The

Operating Agreement addresses plaintiff's rights to financial statements and other

information. [Citation omitted]. Plaintiff has not identified any independent duty giving rise to

Kay's fiduciary duty to disclose the information at issue").

 As in Albert, the obligation of GPB Capital to provide financial statements is contractual

and the failure to provide such statements cannot be the basis for a fiduciary duty claim.

 In addition to the above, Section 3.8 of the LPAs provide for an express limitation of

GPB Capital's liability. Under that provision, the General Partner (i.e., GPB Capital) may only

be held liable to the Partnership or any limited partner where the General Partner acted in bad

faith or its conduct constituted "gross negligence, fraud, or willful or wanton misconduct." (Bergenfeld Dec., Ex. C, ¶ 3.8 (a); Second Bergenfeld Supp. Dec., Exs. T-Y, ¶ 3.8 (a)).

Pleading "bad faith" to overcome an exculpation clause is, as the Delaware Supreme Court recently reaffirmed, a "difficult task" and "high hurdle." McElrath v. Kalanick, 224 A.3d 982, 991, 993 (Del 2020). To overcome such a limitation of liability, a plaintiff "must plead with particularity that the directors acted with scienter, meaning they had actual or constructive knowledge that their conduct was legally improper." Id. at 991 (citations and internal quotations omitted). To plead "subjective bad faith," a plaintiff must allege that defendants' conduct was motivated "by an actual intent to do harm," or that there was an "intentional dereliction of duty, a conscious disregard for one's responsibilities." Id. (citation omitted).

Plaintiffs have failed to clear this high bar. While they allege that GPB Capital failed to timely distribute financial statements or timely provide financial information, they do not allege that such failures were done in bad faith or that these failures rise to the level of gross negligence. The absence of such allegations, much less particularized factual allegations of bad faith, is yet a further ground mandating the dismissal of this claim.[7]

Because there is no actionable claim for breach of fiduciary duty, the claims for substantially assisting in that breach (Count XI) must be dismissed as well. See, e.g. Super Starr Int'l, LLC v. Fresh Tex Produce, LLC, 531 S.W.3d 829, 847 (Tex. App. 2017) ("Generally,

---

[7] Even without the limitation of liability provision, to set forth a claim for breach of fiduciary duty based on the issuance of inaccurate financial statements the plaintiff must allege that the distribution of these financial statements was done in "bad faith." "'[a] plaintiff can . . . plead bad faith by alleging with particularity that a director *knowingly* violated a fiduciary duty or failed to act in violation of a *known* duty to act, demonstrating a *conscious* disregard for her duties.'" In re GM Co. Derivative Litig., 2015 Del. Ch. LEXIS 179, at *39-40 (Del. Ch. June 26, 2015) (emphasis in original).

when a breach of fiduciary duty claim fails, so should an aiding and abetting in the breach of fiduciary duty claim, to the extent one exists in Texas").

## III.    ALTERNATIVELY, A STAY SHOULD BE GRANTED

As fully set forth in the pending motion to dismiss based on *forum non conveniens*, this is but one of a number of class actions that have been commenced against GPB Capital and the GPB Funds.  All of these actions involve similar allegations of fraud in connection with the sale of limited partnership interests in the GPB Funds.  All will likely involve substantially similar discovery.  In the event that this Court declines to dismiss based on improper forum, or sustains any of the substantive claims asserted, this action still should not proceed in light of all of the other pending claims that were previously filed.

A court's authority to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Nelson v. Grooms, 307 F.2d 76, 78 (5th Cir. 1962), quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). "[A] trial court may, with propriety, . . . enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd., 2011 U.S. Dist. LEXIS 41148, at *15-16 (S.D.N.Y. Apr. 15, 2011) ("Since the outcome of the ongoing London Arbitration will have a significant bearing on this case, Sealion's motion for a stay is granted") (citations omitted).

The decision to stay "calls for the exercise of judgment which must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254-55. Courts (in the context of parallel federal actions) grant stays "to avoid waste, to avoid trenching the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." Gill v. Ethicon

Inc., 2001 U.S. Dist. LEXIS 24005, at *5-6 (W.D. La Aug. 1, 2001, Docket No. 00-2042), citing West Gulf Maritime Ass'n v. Deep Sea Local, 751 F.2d 721 (5th Cir. 1985).

In In re Countrywide Fin. Corp. Derivative Litig., 542 F.Supp. 2d 1160 (C.D. Cal 2008), the Court stayed a federal class action in favor of a prior pending Delaware state court class action.  There, the putative class of plaintiffs was the same, and the claims were substantially similar.  In applying the Colorado River Doctrine, which permits the staying of a federal action in favor of a parallel state court proceeding, the Court held that "granting the stay would avoid the duplication of efforts and the risk of inconsistent results that could result from piecemeal litigation," Id. at 1169, and concluded that "[o]n balance, the realities of these cases present the requisite 'exceptional circumstances' to merit a Colorado River stay in favor of the Delaware Chancery Court action."  See Rattner v. Bd. of Trustees, 611 F.Supp. 648, 654 (S.D.N.Y. 1985).

The putative class, limited partners in the GPB Funds, are the same as in In re GPB Capital Holdings, LLC Litigation (Index No. 157679/2019) and DeLuca, et al. v. GPB Automotive Portfolio, LP, et al., (U.S. Dist. Ct., S.D.N.Y. Civil Action No.: 19-cv-10498), another class action which is pending in the United States District Court for the Southern District of New York, and Plaintiffs qualify as members of those classes.  The claims are substantially similar and discovery in these actions will be the same.  Should this Court decline to enforce the Forum Selection Clause, it would serve no end to allow multiple similar class actions to proceed. Accordingly, a stay of this action would be appropriate at least until such time as class determinations are made in New York.

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed as against the GBP Defendants in its entirety.

Dated:  New York, New York
        July 30, 2020

**ROSENFELD & KAPLAN, LLP**


By:    _____
Tab K. Rosenfeld (admitted *pro hac vice*)
NY State Bar No. 2216141
Steven M. Kaplan (admitted *pro hac vice*)
NY State Bar No. 1521210
Nicole E. Meyer (admitted *pro hac vice*)
NY State Bar No. 5188479
Rosenfeld & Kaplan, LLP
1180 Avenue of the Americas, Suite 1920
New York, NY 10036
Telephone: (212) 682-1400
Facsimile: (212) 682-1100
tab@rosenfeldlaw.com
steve@rosenfeldlaw.com
nm@rosenfeldlaw.com


**REEVES & BRIGHTWELL LLP**

Beverly Reeves
TX State Bar No. 16716500
Ryan Pierce
TX State Bar No. 24035413
221 W. 6th Street, 10th Floor
Austin, Texas 78701
Telephone: (512) 334-4509
Facsimile: (512) 334-4492
breeves@reevesbrightwell.com
rpierce@reevesbrightwell.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 30, 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have registered for electronic filing, and I hereby certify that the foregoing document was mailed by first class mail to non-CM/ECF participants.

_____
Steven M. Kaplan