## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| KINNIE MA INDIVIDUAL RETIREMENT ACCOUNT, et al., individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>     -v-<br><br>ASCENDANT CAPITAL, LLC, et al.<br><br>     Defendants. | Case No. 1:19-cv-1050-LY |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS
## SECOND AMENDED CLASS ACTION COMPLAINT

Movants[1] file this Rule 12(b)(6) Motion to Dismiss and respectfully request that the Court

dismiss the claims asserted against them by the Investors[2] pursuant to Rules 9(b) and, to the extent

applicable, 8(a) of the Federal Rules of Civil Procedure.  The Second Amended Class Action

---

[1] As used herein, "Movants" shall mean and refer to: Advisory Group Equity Services, LTD.; Aegis Capital Corp.; Aeon Capital, Inc.; American Capital Partners, LLC; Arete Wealth Management LLC; Arkadios Capital; Ausdal Financial Partners, Inc.; BCG Securities, Inc.; Cabot Lodge Securities, LLC; Calton & Associates, Inc.; Capital Investment Group, Inc.; Cascade Financial Management, Inc.; Center Street Securities, Inc.; Coastal Equities, Inc.; Colorado Financial Services Corporation; Concorde Investment Services, LLC; Crown Capital Securities, LP; DAI Securities, LLC; David A. Noyes & Company (n/k/a Sanctuary Wealth Group, LLC); Dawson James Securities, Inc.; Dempsey Lord Smith, LLC; Detalus Securities, LLC; DFPG Investments, LLC; Emerson Equity LLC; FSC Securities Corporation; Geneos Wealth Management, Inc.; Great Point Capital LLC; Hightower Securities, LLC; IBN Financial Services, LLC; Innovation Partners LLC; International Assets Advisory, LLC; Kalos Capital, Inc.; Kingsbury Capital, Inc.; Landolt Securities, Inc.; Lion Street Financial, LLC; Lowell & Company, Inc.; Lucia Securities LLC; Madison Avenue Securities, LLC; McDonald Partners LLC; McNally Financial Services Corporation; Moloney Securities Co., Inc.; Money Concepts Capital Corporation; MSC-BD-LLC LTD; Newbridge Securities Corporation; Orchard Securities, LLC; Purshe Kaplan Sterling Investments, Inc.; Royal Alliance Associates, Inc.; Sagepoint Financial, Inc.; SCF Securities, Inc.; Sentinus Securities LLC n/k/a Sentinus Halo Securities, LLC; Stephen A. Kohn & Associates, LTD; Titan Securities; Triad Advisors LLC; Uhlmann Price Securities, LLC; United Planners Financial Services of America, LLC; Vanderbilt Securities; Vestech Securities, Inc.; Western International Securities; Westpark Capital Inc.; Whitehall Parker Securities; and Woodbury Financial Services, Inc., collectively.

[2] As used herein, the "Investors" shall mean and refer to Kinnie Ma Individual Retirement Account; Dean Crooks; Jeffery S. Gramm Individual Retirement Account; Stacy Greasor Individual Retirement Account; Corri Rene Eden; Catherine Kiminos; Karen Loch; Robert A. Stone Living Trust; Shirley Stone Living Trust; Victor Wade Individual Retirement Account, and Kazue M. Bell, individually and on behalf of all others similarly situated, collectively.

Complaint (the "Complaint") fails to state a claim against Movants upon which relief may be granted and therefore must be dismissed.

## I.
## PRELIMINARY STATEMENT

The Investors' claims all arise, in varying degrees, from GPB Capital Holdings, LLC's ("GPB") creation and operation of the "GPB Funds."[3]  More specifically, the Investors allege that GPB engaged in a large public offering of securities whereby it fraudulently induced investors to buy partnership interests in the GPB Funds (the "Interests").[4]  While the factual accuracy of the Investors' claims remains to be seen, Movants' purported role in any wrongdoing is alleged to be comparatively minor.  The Investors do not assert any claims against Movants, directly.  Instead, they seek to impose secondary liability against Movants—as members of the broadly-defined "Broker Defendants" group—for their role in brokering the sale of the Interests to third parties (as each Investor specifically renounces their claims against the brokers that sold them their respective Interests).[5]

First, the Investors assert that Movants aided and abetted in: (1) violating the Texas Securities Act (Tex. Rev. Civ. Stat. Ann. art. 581-1, *et seq.*) (the "TSA"), (2) committing common law fraud, and (3) breaching fiduciary duties.  Second, the Investors seek the return of certain

---

[3] As alleged by the Investors, the "GPB Funds" include: (1) GPB Holdings, LP; (2) GPB Holdings Qualified, LP; (3) GPB Holdings II, LLC; (4) GPB Automotive Portfolio, LP; (5) GPB Cold Storage, LP; (6) GPB NYC Development, LP; (7) GPB Waste Management, LP; (8) GPB Holdings III, LP; and (9) GPB Automotive Income Fund, Ltd.  *See* Second Am. Compl. at 1–2, 51 ¶¶ 1, 109–110.  Notably, GPB Automotive Income Fund, Ltd. is not a party to this lawsuit despite its being included within the definition of the "GPB Funds."  *See id.*

[4] Movants do not concede the truth of any of the allegations included in the Complaint.  Instead, Movants note that even accepting each of the allegations included in the Complaint as true, the Investors have failed to state a claim upon which relief may be granted.  *See Goldstein v. MCI Worldcom*, 340 F.3d 238, 244 (5th Cir. 2003) (noting that in evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept[] the facts alleged in the plaintiffs' complaint as true . . . .").

[5] *See* Second Am. Compl. at 64–138, 199–200, 202–203, 206–209, 213–14 ¶¶ 132–33, 309–313, 328–34, 348–60, 379–84.

brokerage fees and commissions that Movants (allegedly) received in connection with the offer and sale of the Interests pursuant to the Texas Uniform Fraudulent Transfers Act (Tex. Bus. & Com. Code Ann. § 24.001, *et seq.*) (the "TUFTA"). The claims against Movants should be dismissed for at least seven reasons.

*1. Group pleaded allegations against all "Broker Defendants" fail to state a claim against any of them.* Despite providing one-hundred sixty-eight pages of "Factual Background," the Investors fail to include a single particularized allegation against any of the *sixty-three* named "Broker Defendants."[6] The Investors' impermissible group pleading alone necessitates the dismissal of their claims against Movants. This flaw is particularly pronounced with respect to the TSA and TUFTA claims, however, because the Investors' failure to make individualized allegations precludes them from showing that each Movant was subjectively aware of its role in an alleged TSA violation and/or was "the recipient of funds fraudulently obtained"—both of which are essential elements of the Investors' claims.

*2. The Investors fail to establish that they have standing to assert claims against the "Broker Defendants."* To establish standing, a plaintiff must allege an injury in fact that is fairly traceable to the conduct of a particular defendant. In the class action context, this requires that at least one named plaintiff allege an injury that is traceable to the conduct of each named defendant. As noted above, however, the Investors have failed to make a single particularized allegation against any of the Broker Defendants. Moreover, the Investors have failed to allege—as a group— that they purchased interests in all of the identified GPB Funds.

---

[6] *See id.* at 64–138, ¶¶ 132–33.

Most importantly, however, the Investors have renounced any claim(s) against the specific Broker Defendant(s) that sold them their interest(s) in the GPB Funds—thereby destroying their standing to assert claims against the "Broker Defendants" group.

***3. Lack of privity is fatal to the TSA claims.***  It is well-established that the TSA includes an "express privity provision" that requires privity of sale between plaintiff and defendant.  Here, however, the Investors explicitly renounce any claims that they *could* assert against the brokers that sold them the securities at issue.  Thus, the Investors have not—and cannot—establish privity of sale between the individual Movants and the Investors, and their claims must be dismissed as a matter of law.

***4. Movants did not render "substantial assistance" because they had no duty to disclose.***  The Investors contend that Movants may be held secondarily liable under the TSA based simply on their: (1) doing business with GPB and (2) failing to disclose its purported wrongdoing.  Despite the Investors' claims to the contrary, however, Texas courts have expressly rejected this very theory of liability.  Indeed, Movants had no duty of disclosure to the Investors or the putative class.  Absent a duty to disclose, non-disclosure does not constitute "substantial assistance" as a matter of law.

***5. Neither Texas law nor the TSA applies to this dispute.***  All GBP investors were required to sign a subscription agreement that stated, in relevant part, that all disputes arising from their investment would be governed by "the laws of the State of New York, without regard to that state's conflicts of law provisions."  Thus, the Investors' reliance on Texas law is misplaced.  Even if the choice-of-law provision included in the subscription agreement did not apply, however, Texas choice-of-law principles require the application of New York law.  The Investors have failed to plead sufficient facts to demonstrate that Movants are subject to Texas law—let alone the TSA.

Further, the Investors' claim that Movants aided and abetted an unregistered offering must be dismissed (or narrowed, significantly) because the vast majority of the transactions described in the Complaint are exempt from registration.  Indeed, despite alleging that GPB "raised over $1.8 billion dollars from thousands of investors nationwide," the Investors have only identified three transactions (totaling $300,000) involving Texas residents.[7]   The remainder of the transactions described in the Complaint involved purchases by non-Texas residents.  This is dispositive because, "[t]he offer and sale of securities by an issuer or its selling agent to a non-Texas resident not present in Texas when the offer is made is exempt from the securities registration provisions of the [TSA]."  7 Tex. Admin. Code § 139.7.

*6. The proposed class period violates the TSA and TUFTA statutes of repose.*  Under the TSA, claims may not be brought more than five years after the date of sale.  Similarly, TUFTA claims arising from transfers made "without receiving a reasonably equivalent value" are subject to a four-year statute of repose.  These deadlines apply regardless of when an investor discovered a potential violation.  The Investors define the class period as beginning June 6, 2013, but the Complaint was filed October 25, 2019—over six years after the commencement of the proposed class period.  Accordingly, the class period is impermissibly broad.

*7. Texas does not recognize a cause of action for aiding and abetting the alleged common law violations.*  Finally, the Investors assert two causes of action against Movants that do not exist under Texas law.   The Investors' claims that Movants aided and abetted in the commission of common law fraud and/or breaches of fiduciary duties must be dismissed as a matter of law because there is "no indication that Texas law . . . recognizes a[n independent] cause of action for

---

[7] More specifically, the Investors allege that Plaintiffs Dean Crooks, Victor Wade, and Kazue M. Bell purchased interests in certain of the Funds for $150,000; $50,000; and $100,000, respectively.  *See id.* at 44–46, ¶¶ 88, 94, 97.

aiding and abetting." *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-CV-2498-B, 2015 WL 12723054, at *13 (N.D. Tex. Mar. 12, 2015) (granting motion to dismiss).

Based on the foregoing, and as set forth in further detail below, the Complaint fails to state a claim upon which relief may be granted, and the claims asserted against Movants should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## II.
## LEGAL STANDARDS

Under Rule 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff cannot produce a set of facts that would entitle it to relief. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558, 565–66 (5th Cir. 2002). In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept[] the facts alleged in the plaintiffs' complaint as true and constru[e] their allegations in the light most favorable to them." *Goldstein*, 340 F.3d at 244. A court must not "strain to find inferences favorable to the plaintiff," however, and the "plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal." *Id.*; *see also Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") Thus, a complaint may not survive a motion to dismiss unless it "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Federal Rule of Civil Procedure 9(b) imposes additional requirements when pleading allegations of fraud or mistake. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). More specifically, Rule 9(b) requires a plaintiff to allege—with particularity—the time, place, and content of an alleged

misrepresentation, as well as the identity of the person making the misrepresentation and what they obtained thereby. *Tuchman v. DSC Commc'n. Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). In other words, at a minimum, Rule 9(b) requires a plaintiff to set forth "the who, what, when, where, and how" of its claims. *See Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994). Both alleged violations of the anti-fraud provision of the TSA and breach of fiduciary duty claims are subject to the heightened pleading requirements of Rule 9(b). *See Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-1568-F, 2010 WL 6785484, *5 (N.D. Tex. July 26, 2010); *Bertrand v. White*, No. 1:09-CV-358, 2009 WL 10682257, at *3 (E.D. Tex. July 7, 2009); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 819 (S.D. Tex. 2007) (noting that aiding and abetting claims asserted under the TSA are subject to Rule 9(b)).

State law claims that rely on the same set of alleged facts and circumstances as other claims that are subject to Rule 9(b)—like the Investors' claim that Movants aided and abetted in the selling of unregistered securities—are likewise subject to the heightened pleading standards of Rule 9(b). *See Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N, 2015 WL 13741905, at *6 (N.D. Tex. Feb. 4, 2015) (noting that allegations that an entity sold unregistered securities in violation of the TSA were subject to the heightened pleading requirements of the Rule 9(b)); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

Because the Complaint fails to set forth facts that state a plausible claim for relief, the claims asserted against Movants should be dismissed in accordance with Federal Rule of Civil Procedure 12(b)(6).

# III.
## ARGUMENTS AND AUTHORITIES

**A.**     **All Claims Against Movants Should Be Dismissed Because the Investors Impermissibly Group Defendants in Violation of Rules 9(b) and—to the Extent Applicable—8(a).**

The Investors' claims must be dismissed because the Investors fail to delineate between the conduct that they contend is attributable to the individual Movants and that attributed to a nebulous group of "Broker Defendants."[8]  The Complaint asserts identical claims against *sixty-three* separate broker–dealers and fails to describe a single action taken by any of them, individually.  Instead, the Investors resort to "group pleading"—a tactic that the Fifth Circuit Court of Appeals has soundly rejected.  *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015) ("This court has rejected the group pleading doctrine.").  In the context of private securities litigation, courts routinely find that reliance on group pleading (standing alone) justifies the dismissal of a plaintiff's claims.  *See Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. CIV.A.3:03 CV 2490 N, 2004 WL 3170789, at *1 (N.D. Tex. Nov. 15, 2004) ("[G]eneral allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another cannot meet the requirements of Rule 9(b)."); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) (same); *Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 916 (N.D. Tex. 1998) (same).

Here, the Complaint is replete with examples of impermissible group pleading.  Indeed, the Investors time and again lodge conclusory allegations against the "Broker Defendants" without giving any indication as to which of the *sixty-three* distinct Co-Defendants is the subject of their allegations.[9]  These allegations run afoul of federal pleading requirements and established Fifth

---

[8] *See* Second Am. Compl. at 64–138, ¶¶ 132–33.

[9] *See, e.g.*, *id.* at 1, 4–13, 15–17, 20–30, 32–33, 37, 40–41, 47–48, 50, 62–64, 74, 98, 138–40, 142–43, 149–50, 155, 157–58, 161–68, 178, 188, 192, 194, 196–97, 199–203, 208–209, 213–14, ¶¶ 1, 3, 7–9, 11, 13, 15, 18–20, 23, 27–29,

Circuit precedent prohibiting group pleading.[10]  *See Owens*, 789 F.3d at 537–38.  This alone justifies the dismissal of the Investors' claims.[11]

Further, the Investors' reliance on group pleading serves to nullify the vast majority of the allegations included in the Complaint.  As noted above, the Investors bear a high burden to plead "the who, what, when, where, and how" of their claims.  *See id.* at 535.  This includes an obligation to allege specific instances of wrongful conduct, as well as to attribute that conduct to a particular defendant.  *See id.* at 537–38; *see also Tigue Inv. Co.*, No. CIV.A.3:03 CV 2490 N, 2004 WL 3170789, at *1; *Patel*, 172 F. Supp. 2d at 824.  Therefore, group-pleaded allegations may not be imputed to any particular defendant, and (when faced with a motion to dismiss) a court must disregard any "group-pleaded allegations and discern whether the remaining allegations state a claim for relief as to each defendant."  *See Owens*, 789 F.3d at 535.  Thus, the Investors' group pleading not only justifies the dismissal of their claims, but it also requires the Court to disregard the vast majority of the allegations included in the Complaint.[12]

---

35, 39, 41–46, 51–52, 68, 77–80, 99, 102, 107, 129–30, 31–33, 142, 147, 149–50, 168, 174, 186–87, 192, 194–97, 207–209, 214, 235, 260, 282, 284, 293, 296, 357–61, 384.

[10] While the claims here are subject to the heightened pleading requirements of Rule 9(b), the Investors' impermissible use of group pleading requires dismissal under even the less-stringent requirements of Rule 8(a).  *See Del Castillo v. PMI Holdings N. Am. Inc*, No. 4:14-CV-03435, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016) (finding that dismissal was appropriate because "lumping together multiple defendants without identifying who is responsible for which acts does not satisfy the requirements of Rules 8(a)(2) and 12(b)(6).").

[11] Notably, the Investors are seemingly aware that they may not meet their burden under Rules 8(a) or 9(b) by ascribing actions to the "Broker Defendants," collectively.  For example, the Investors seeks to skirt their pleading obligations by listing the "Broker Defendants," in paragraphs 243, 248, 251, 256, and 258 of the Complaint.  *See* Second Am. Compl. at 180–81, 183–86, ¶¶ 243, 248, 251, 256–58.  Similarly, the Investors seek to attribute identical, non-specific allegations to each of the "Broker Defendants," on pages 64 through 138 of the Complaint.  *See id.* at 64–138, ¶¶ 132–33.  In each instance, the Investors' attempts suffer from the same shortcoming—namely, they fail to "segregate the alleged wrongdoing of one ["Broker Defendant"] from those of another."  *Compare Tigue Inv. Co.*, No. CIV.A.3:03 CV 2490 N, 2004 WL 3170789, at *1, *with Contractors Source, Inc. v. SI Geosolutions*, No. CV H-04-2054, 2005 WL 8164832, at *2 (S.D. Tex. Apr. 5, 2005) (granting motion to dismiss because "listing more than a dozen individuals" fails to comply with the strictures of Rule 9(b)); *see also Del Castillo*, No. 4:14-CV-03435, 2016 WL 3745953, at *13.

[12] At minimum, the Court must disregard and/or strike any references to the "Broker Defendants."  *See, e.g.*, Second Am. Compl. at 1, 4–13, 15–17, 20–30, 32–33, 37, 40–41, 47–48, 50, 62–64, 74, 98, 138–40, 142–43, 149–50, 155, 157–58, 161–68, 178, 188, 192, 194, 196–97, 199–203, 208–209, 213–14, ¶¶ 1, 3, 7–9, 11, 13, 15, 18–20, 23, 27–29, 35, 39, 41–46, 51–52, 68, 77–80, 99, 102, 107, 129–30, 31–33, 142, 147, 149–50, 168, 174, 186–87, 192, 194–97,

**a. Counts 2 and 5: The Claims for Aiding and Abetting Violations of the TSA Should be Dismissed for Failure to Allege the Requisite State of Mind Against any Movant.**

The Investors' impermissible group pleading is not just a technical pleading failure, but it also demonstrates the Investors' inability to properly allege a violation by any Broker Defendant. Counts two and five assert that Movants aided and abetted violations of the TSA (Tex. Rev. Civ. Stat. Ann. art. 581-1, *et seq.*).[13]  To state a valid claim for aiding and abetting under the TSA, the Investors must allege that: (1) a primary violation of the securities laws occurred; (2) the alleged aider had "general awareness" of its role in this violation; (3) the alleged aider rendered "substantial assistance" to this violation; and (4) the alleged aider either (a) intended to deceive plaintiff or (b) acted with reckless disregard for the truth of the representations made by the primary violator.  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 790 (S.D. Tex. 2007); *accord Frank v. Bear Steams & Co.*, 11 S.W.3d 380, 384 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).[14]

The Investors' group-pleaded allegations only further undercut their claims because the failure to make individualized allegations precludes the Investors from showing that each Movant was subjectively aware of its role in an alleged TSA violation.  In *Sterling Trust Co. v. Adderley*, the Texas Supreme Court defined the state of mind necessary to impose aiding and abetting

---

207–209, 214, 235, 260, 282, 284, 293, 296, 357–61, 384.  The Court should also disregard any references to the jointly defined GPB Defendants and/or GPB Funds/Funds. *See, e.g.*, *id.* at 1–42, 44, 47, 49, 51–58, 60–146, 149–58, 160–64, 167–68, 170–80, 182, 188–204, 206, 208–209, 211–15, ¶¶ 1–4, 6–16, 18, 20, 22–25, 27, 29–36, 38–41, 45–50, 52–53, 55–57, 59, 63, 68–69, 72–77, 79, 82–83, 86, 99, 102, 105, 109–111, 116–22, 125–26, 129–30, 132, 135–36, 138–140, 142, 145–50, 152, 154–55, 157–62, 170–77, 179–88, 190–92, 194–95, 197, 201–203, 205–207, 209–10, 212–13, 217, 221–24, 226–28, 230–36, 241, 259, 261, 264, 267, 273–74, 276, 281–86, 288–91, 295–99, 306, 311–13, 318, 320, 324, 326, 329, 331–32, 334, 337–41, 343–46, 349–51, 356–57, 361, 365–67, 369, 371, 373–76, 381–87; *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d at 767 ("A prerequisite for establishing secondary liability for aiding and abetting under the TSA is a primary violation under the statute.").

[13] *See* Second Am. Compl. at 199–200, 202–203, ¶¶ 309–13, 328–34.

[14] *See also* Tex. Rev. Civ. Stat. Ann. art. 581-33(F)(2) ("A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer.").

liability under the TSA.  *See Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 842 (Tex. 2005).

There, the Court concluded that "an alleged aider can only be held liable if it rendered assistance

in the face of a perceived risk that its assistance would facilitate untruthful or illegal activity by

the primary violator."  *Id.* at 842.  To "perceive such a risk, the alleged aider must possess a general

awareness that his role was part of an overall activity that is improper."  *Id.*  The Court further

emphasized that "general awareness" in this context is more-akin to "actual awareness."  *Id.* at 841

n.3.

Thus, to survive Movants' Motion to Dismiss, the Investors bear the burden to demonstrate

that each Movant was subjectively aware of its involvement in "an overall activity that [was]

improper."  *Sterling Trust Co.*, 168 S.W.3d at 842; *see also Days Inn Worldwide, Inc. v. Sonia

Invs.*, No. 3:04-cv-2278-D, 2007 WL 1188028, at *3 (N.D. Tex. Apr. 23, 2007).  The Investors

have not—and cannot—carry this heavy burden.

As noted above, the Investors' claims all arise, in varying degrees, from GPB's creation

and operation of the "GPB Funds."  First, the Investors allege that GPB fraudulently induced them

to buy partnership interests in the various Funds by failing to disclose: (1) that incoming

investments were being used to satisfy pre-existing dividend and/or disbursement obligations;[15]

(2) that new-money investments were not being applied as represented to investors;[16] and (3)

information concerning the holdings, background, and experience of the managers of GPB and/or

the GBP Funds.[17]  Second, the Investors allege that GPB and/or the GPB Funds violated the TSA

by: (1) making an unregistered public offering and (2) failing to register with the U.S. Securities

---

[15] *See, e.g.*, Second Am. Compl. at 20–21, 26, ¶¶ 35(a), (h).

[16] *See, e.g.*, *id.* at 20–21, 24–26, ¶¶ 35(a), (e), (g), (h), (i).

[17] *See, e.g.*, *id.* 21–25, ¶¶ 35(b), (c), (f), (g), (i).

and Exchange Commission in violation of Section 12(g) of the Securities Exchange Act of 1934.[18]
*See* 15 U.S.C.A. § 78l(g) (requiring registration by companies with more than $10,000,000 in assets and shares held by 2,000 or more persons, as determined on the last day of the company's fiscal year).

The Investors allege that Movants "should have known" or could have discovered these (alleged) misrepresentations/offering violations through independent investigation.[19]   More specifically, the Investors allege that Movants "received extensive due diligence reports"[20] that—when compared to other offering materials—should have raised a number of "red flags" regarding GPB's operations and/or the Funds.[21]   As a preliminary matter, Movants' alleged failure to investigate GPB's operations is insufficient to establish secondary liability under the TSA as a matter of law.  *See Sterling Trust Co.*, 168 S.W.3d at 842 ("Imposition of a duty to investigate under the guise of a 'should have known' standard in essence would amount to eliminating scienter as a necessary element in imposing aiding and abetting liability and the substitution of a negligence standard."); *see also Town N. Bank, N.A. v. Shay Fin. Servs., Inc.*, No. 3:11-CV-3125-L, 2014 WL 4851558, at *31–32 (N.D. Tex. Sept. 30, 2014); *Frank*, 11 S.W.3d at 385.

Even so, the vague group allegation that the "[Broker] Defendants[, collectively,] received extensive due diligence reports" fails to demonstrate that each individual Movant was subjectively

---

[18] *See, e.g., id.* at 3, 11, 14–15, 199–200, 202–203, ¶¶ 3, 20, 27(b), 309–13, 328–34.

[19] *See, e.g., id.* at 14–15, ¶ 27(b).

[20] The Investors' pleading deficiencies extend to their assertion that the "due diligence" reports should have revealed GPB's (alleged) wrongdoing.  For example, the Investors fail to set forth the contents of any of the reports, individually.  Despite alleging that the reports were prepared by "five separate firms," the Inventors ask the Court to assume that all of the reports are substantively identical.  *See id.* at 15–16, 28–29, 142–43, 157, ¶¶ 27–28, 42–43, 149, 195.  Further, the Investors' conclusory assertion that the reports were "made available to . . . the Broker Defendants" fails to establish actual awareness as a matter of law.  *See Sterling Trust Co.*, 168 S.W.3d at 842.

[21] Second Am. Compl. at 15–16, 28–29, 142–43, 157, ¶¶ 27–28, 42–43, 149, 195.

aware of its role in an alleged TSA violation.[22]  *See Sterling Trust Co.*, 168 S.W.3d at 842.  This is particularly true because the Investors bear a high burden to plead "the who, what, when, where, and how" of their claims.  *See Owens*, 789 F.3d at 535.  Indeed, courts within the Fifth Circuit have routinely dismissed TSA claims pleaded with far-greater particularity.

For example, in *Billitteri v. Securities America, Inc.*, the U.S. District Court for the Northern District of Texas dismissed a putative class' claim that five "[b]roker [d]efendants" violated the TSA because the class failed to properly describe each individual broker's role in the alleged violation.  *See Billitteri*, No. 09-CV-1568-F, 2010 WL 6785484, at *6–8.  There, the class sought to assert claims against a group of brokers that distributed an allegedly misleading private placement memorandum (the "PPM") that detailed a series of oil and gas ventures (the "Ventures").  *Id.* at *2.  According to the class, the PPM failed to disclose material information regarding the Ventures, including that: (1) "later investors' funds were used to pay returns to earlier investors in the [Ventures]," (2) the "proceeds of the offerings [] were not invested as represented," and (3) the Venture-related entities "engaged in dozens of undocumented or improper inter-company transfers."  *Id.*  Essentially, the putative class—much like the Investors—alleged that the broker defendants sold them interests in a Ponzi scheme.

Unlike the Investors, however, the class in *Billitteri* did not attempt to establish liability based merely upon the broker defendants' (alleged) failure to investigate "red flags" included in the PPM and related offering materials.[23]  Instead, the class asserted that the broker defendants actively participated in drafting the allegedly misleading PPM.  *Id.* at *3, *7 ("[A]ll of the [b]roker [d]efendants participated in the drafting, preparation, approval, due diligence and/or dissemination

---

[22] *Id.*

[23] *Compare*, *Billitteri*, No. 09-CV-1568-F, 2010 WL 6785484, at 2, 6–8, *with* Second Am. Compl. at 15–16, 28–29, 142–43, 157, ¶¶ 27–28, 42–43, 149, 195.

of various materially false and misleading statements contained in the PPMs issued [in connection with the Ventures]").  Even so, the trial court found that the class' group-pleaded allegations failed to state a claim against any of the brokers, individually.  *Id.* at *6 ("Plaintiffs have not identified the conduct of a specific Defendant as required by Rule 9(b).").  The court went on to note that "[i]n order to survive dismissal, [the class] must connect, with greater specificity, the individual [b]roker [d]efendants to their alleged involvement in the making of the allegedly materially false and misleading statements." *Id.* at *8.  Absent such a connection, "a pleading fails to satisfy Rules 8(a)(2), 9(b) and Rule 12(b)(6)."[24]  *Id.*[25]

Here, the Investors' vague assertion that the "[Broker] Defendants[, collectively,] received extensive due diligence reports" fails to demonstrate that each individual Movant was subjectively aware of its involvement in "an overall activity that [was] improper." *See Sterling Trust Co.*, 168 S.W.3d at 842.  As noted by the court in *Billitteri*, such an allegation "fails to satisfy Rules 8(a)(2), 9(b) and Rule 12(b)(6)." *See Billitteri*, No. 09-CV-1568-F, 2010 WL 6785484, at *8.[26]

---

[24] The *Billiteri* court also noted *en arguendo* that "[i]f each [b]roker [d]efendant participated in exactly the same way, and [the class] so alleges, then such is not an inappropriate grouping." *See Billitteri*, No. 09-CV-1568-F, 2010 WL 6785484, at *8.  Should the Investors make a similar argument here, it should be disregarded.  First, it would be inappropriate to infer or impute knowledge to each of the individual Movants without supporting allegations.  *See Iqbal*, 556 U.S. 662 at 678.  Here, the Investors allege that "more than 80 brokers across the country" participated in the GPB offering.  Second Am. Compl. at 10, ¶ 18.  It is exceedingly unlikely that all of these brokers acquired knowledge of GPB's (alleged) wrongdoing: (1) in the same way; (2) at the same time; and/or (3) at the same place.  Such a conclusion would hardly be "plausible on its face"—let alone withstand the application of experience and common sense.  *See Iqbal*, 556 U.S. at 678–79.  Thus, the Investors fail to demonstrate that each individual Movant was subjectively aware of its involvement in "an overall activity that [was] improper" as a matter of law.  *See Sterling Trust Co.*, 168 S.W.3d at 842; *see also Owens*, 789 F.3d at 535 (requiring plaintiffs to plead the "the who, what, when, where, and how" of their claims).

[25] On December 14, 2020, the U. S. District Court for the Southern District of New York granted a motion to dismiss claims asserted by another putative class of investors (the "New York Class") that purchased partnership interests in the GPB Funds.  There, the court found that the New York Class failed to comply with Rule 9(b) because—much like the Investors here—it: (1) relied on conclusory allegations asserted against a "group" of individuals/entities that marketed, sold, and/or promoted the GPB Funds and (2) failed to allege (with particularity) the specific facts that supported the Class' claim against each member of that "group." *See Deluca v. GPB Automotive Portfolio, L.P.*, 19-CV-10498 (LAK), 2020 WL 7343788, at *15 (S.D.N.Y. Dec. 14, 2020).

[26] The Complaint includes several conclusory allegations that Movants were aware of GPB's alleged wrongdoing. *See, e.g.*, Second Am. Compl. at 3, 6, 9–10, 13–15, ¶¶ 3, 9, 15, 18, 23, 27(b).  As noted above, however, the Complaint wholly fails to describe the circumstances through which each individual Movant allegedly obtained this knowledge.

### b.  Count 9: The Investors' TUFTA Claim(s) Should be Dismissed for Failure to Allege the Existence of a Fraudulent Transfer.

The Investors' TUFTA claim(s) must be dismissed because the Investors fail to allege that each of the Movants received a fraudulent transfer.  To state a valid claim under the TUFTA, the Investors must, at minimum, allege that Movants were "the recipient of funds fraudulently obtained."  *See BSG Clearing Sols., N. Am., L.L.C. v. McKay*, No. SA-17-CA-57-FB (HJB), 2017 WL 11207327, at *3 (W.D. Tex. Oct. 4, 2017); *see also* Tex. Bus. & Com. Code Ann. § 24.005(a); *Taylor v. Vaughn*, No. A-15-CV-648-LY-ML, 2016 WL 11588707, at *4 (W.D. Tex. July 25, 2016) ("To void a transfer under TUFTA, the [plaintiff] has the burden to prove the elements as to each fraudulent transfer . . .").

Courts within the Fifth Circuit are divided as to whether TUFTA claims are subject to Federal Rule of Civil Procedure 8(a) or 9(b).  S*ee Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019).  However, at least two courts within the Western District of Texas have opined that TUFTA claims are subject to the heightened pleading requirements of Rule 9(b).  *See Ind. Bell Tel. Co. Inc. v. Lovelady*, No. SA-05-CA-285-RF, 2006 WL 485305, at *1 (W.D. Tex. Jan. 11, 2006); *see also BSG Clearing Sols., N. Am., L.L.C. v. McKay*, No. SA-17-CA-57-FB (HJB), 2017 WL 11207327, at *4 (W.D. Tex. Oct. 4, 2017).

This dispute is not material here because the Investors' TUFTA claim(s) fail to comply with even the less-stringent requirements of Rule 8(a).  The only allegation offered to support the Investors' claim that Movants received fraudulently transferred funds is that "[between June 6,

---

*See Supra*, III.A.a.  Absent such an explanation, the Court cannot infer wrongdoing.  *See Billitteri*, No. 09-CV-1568-F, 2010 WL 6785484, at *8 (quoting *Iqbal*, 556 U.S. 662 at 678) ("[T]he Court cannot "infer more than the mere possibility of misconduct.").  Further, any contention that Movants were "reckless in disregarding" fails to demonstrate that Movants were subjectively aware of GPB's (alleged) wrongdoing as a matter of law.  *Compare* Second Am. Compl. at 15–16, 28–29, 142–43, 157, ¶¶ 27–28, 42–43, 149, 195, *with Town N. Bank, N.A.*, No. 3:11-CV-3125-L, 2014 WL 4851558, at *31–32; *Frank*, 11 S.W.3d at 385; *Sterling Trust Co.*, 168 S.W.3d at 842.

2013 and the present], the Broker Defendants received more than $150 million of fraudulently transferred compensation in connection with their purported sales efforts on behalf of GPB and the [GPB] Funds."[27]  Several courts within this District have granted motions to dismiss based on comparable allegations. *See Ind. Bell Tel. Co. Inc.*, No. SA-05-CA-285-RF, 2006 WL 485305, at *1.

For example, in *BSG Clearing Solutions, North America, L.L.C. v. McKay*, the U.S. District Court for the Western District of Texas dismissed a TUFTA claim because the plaintiff failed to adequately allege that four (group-defined) defendants received fraudulently transferred funds. *See McKay*, No. SA-17-CA-57-FB (HJB), 2017 WL 11207327, at *4.  There, the plaintiff—much like the Investors—sought to undo "[a]ll transfers from [a debtor] to the [d]efendants," but failed to specify which of the four defendants received which of the communally-described assets. *Id.* at *1.  In considering the defendants' motion to dismiss, the court was called to determine whether the plaintiffs' cursory allegations complied with the Federal Rules of Civil Procedure. *See id.* at 2–3.  In so doing, the court noted that even though there was "no controlling Fifth Circuit precedent" that addressed whether TUFTA claims are subject to Rule 8(a) or Rule 9(b), the "[p]laintiffs' amended complaint f[ell] short of stating a TUFTA claim [under either standard]":

> [I]t is clear that [p]laintiffs' amended complaint is insufficient. [p]laintiffs make no allegation against ***any particular asset or transferee of the [debtor]***. It may be that [p]laintiffs believe that the [debtor] transferred assets to [d]efendants, making them transferees under TUFTA . . . . However, while [p]laintiffs allege that [d]efendants transferred [the debtor's] funds, they never allege that [d]efendants themselves received any of these transfers. ***Indeed, the amended complaint includes no allegation of any specific transfer at all.*** Even under the lenient standard of Rule 8(a), the vague and conclusory allegations in the amended complaint are insufficient to allege a TUFTA claim against [d]efendants as the transferees of [the debtor's] assets. *Id.* at 3–4 (emphasis added).

---

[27] Second Am. Compl. at 208, ¶ 358.

Here, the Investors' allegation that "the Broker Defendants received more than $150 million of fraudulently transferred compensation" suffers from many of the same defects found in *McKay*. For example, the Investors fail to allege that "any particular asset" was transferred to any of the Movants. *See id.* Instead, the Investors—much like the plaintiffs in *McKay*—seek to lump thousands of separate transfers together into a one-sentence allegation.[28] In so doing, however, the Investors' wholly fail to state a claim against even one of the Movants.[29] *See id.*; *see also Indiana Bell Tel. Co. Inc.*, No. SA-05-CA-285-RF, 2006 WL 485305, at *2. Therefore, the Investors' TUFTA claims must be dismissed.[30]

---

[28] The Complaint itself demonstrates the large number of transactions the Investors seek to invalidate. The Investors allege that: (1) the Broker Defendants received commissions on a per-sale basis and (2) GPB "raised over $1.8 billion dollars from thousands of investors nationwide for the Funds." *See* Second Am. Compl. at 10, 16, 178, ¶¶ 18, 28, 235. The Investors further allege that "more than 80 brokers . . . across the country" participated in the offering. *Id.* at 10, ¶ 18. Further compounding the issues associated with the Investors' allegations, they allege that "commissions were paid by the investor, not GPB." *Id.* at 142–43, ¶ 149. However, the Complaint only mentions (in passing) eleven of the "thousands of investors." *Compare id.* at 44–46, ¶¶ 87–98, *with id.* at 178, ¶ 252.

[29] The Investors include several references to pre-issuance projections concerning the "estimated" amount of commissions that GPB anticipated paying in connection with a subset of the Fund offerings. *See id.* at 179–80, 182–88, ¶¶ 237–243, 245–48, 250–51, 253–57, 259–60. These passing references, however, suffer from the same defects as the Investors' allegation that "the Broker Defendants received more than $150 million of fraudulently transferred compensation." *Compare id.* at 179–80, 182–88, ¶¶ 237–243, 245–48, 250–51, 253–57, 259–60. Namely, they fail: (1) to establish that commissions were actually paid to Movants, and (2) to describe the "particular asset[s]" that the Investors allege were transferred to the individual Movants. *See McKay*, No. SA-17-CA-57-FB (HJB), 2017 WL 11207327, at *4; *see also Indiana Bell Tel. Co. Inc.*, No. SA-05-CA-285-RF, 2006 WL 485305, at *2.

[30] Several of the entities and individuals alleged to be "primarily responsible" for the wrongdoing described in the Complaint have already filed motions to dismiss the Investors' claims pursuant to Federal Rule of Civil Procedure 12. *See* Docs. 1, 317, 325, 333, 440, 548, 549, 550, 550, and 554. While these motions were rendered moot when the Investors filed their amended Complaints, it is likely that these entities and individuals will re-file comparable motions that once again seek the dismissal of the Investors' claims. If the Court agrees that the Investors have failed to state a claim against these (alleged) primary violators, the Investors' TUFTA claims against Movants must also be dismissed because the Investors fail to demonstrate that they are "creditors." *See* Tex. Bus. & Com. Code Ann. § 24.005(a) (allowing a "creditor" to assert a claim under the TUFTA); *id.* § 24.002(4) (defining a "Creditor" as "a person . . . who has a claim"); *id.* § 24.002(3) (defining "Claim" to mean "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."); Second Am. Compl., at 208, ¶¶ 358–59 (alleging that Investors are Creditors because "the Broker Defendants received more than $150 million of fraudulently transferred compensation in connection with their purported sales efforts on behalf of GPB and the Funds.").

### c. Counts 2, 5, 8, 9, and 12: The Investors Fail to Establish That They Have Standing to Assert Claims Against the Group-Defined "Broker Defendants."

The Investors have also failed to establish that they have standing to assert claims against the group-defined "Broker Defendants," collectively. To establish standing under Article III, Section 2 of the United States Constitution, each of the Investors must show that: (1) they have suffered an "injury in fact"; (2) their injury is fairly traceable to the challenged action of a particular defendant; and (3) it is likely, as opposed to merely speculative, that their injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (holding that the party invoking federal jurisdiction has the burden of establishing standing.). These requirements do not change in the class-action context. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

To establish an "injury in fact," the Investors must show the invasion of a legally protected interest that is: (1) concrete and particularized and (2) actual or imminent, rather than conjectural or hypothetical. *Id.* To satisfy the traceability requirement, the Investors must "allege a distinct and palpable injury . . . , even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

To establish standing in a class action involving multiple defendants, at least one named plaintiff must have a claim directly against each named defendant. *See In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005); *see also Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991); *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 544 (D. Nev. 2004). Thus, the Investors may only maintain an action against a "Broker Defendant" if he or she personally suffered an injury at the hands of that specific broker. *See In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 461. Said another way, "[i]f a plaintiff cannot trace an

injury to a defendant, the plaintiff lacks standing with regard to that defendant." *Franklin*, 388 F. Supp. 2d at 461.

In *In re Franklin Mutual Funds Fee Litigation*, three purported class representatives sued 103 mutual funds issued by Franklin and Templeton Funds—even though they owned individual interests in only three of the funds. *Id.* at 456. The representatives also asserted claims against seven investment advisors, but their pleadings failed to connect these advisors to any particular fund(s). *Id.* 456, 462. The U.S. District Court for the District of New Jersey granted the defendants' motion to dismiss finding that, absent an allegation of a direct claim, the purported class representatives lacked standing to assert claims on behalf of the putative class against the mutual funds and any of the investment advisors connected to those mutual funds. *Id.* 461–62.

Like the plaintiffs in *Franklin*, the Investors have failed to establish any direct claim against any Broker Defendant. The Second Amended Complaint identifies eleven named Investors.[31] They are alleged to have purchased limited partnership interests in five GPB Funds through nine different Broker Dealers.[32] The Second Amended Complaint, however, identifies as defendants nine different GPB Funds sold through sixty-three broker dealers.[33] Accordingly, no named Investor has established a traceable injury arising from the purchase of four of the identified GPB Funds or fifty-four of the Broker Dealers.

Moreover, the Second Amended Complaint has eliminated any potential traceable injury to any of the Broker Dealers by denouncing any direct claim against the broker dealer involved in the individual plaintiffs' purchases. Indeed, the Investors state on two separate occasions that

---

[31] *See* Second Am. Compl. at 44–46, ¶¶ 87–97.

[32] *Id.* ("Each Plaintiff and member of the Class is not asserting claims against the specific Broker Defendant who directly sold the subject Securities to such Plaintiff or that particular Class Member").

[33] *Id.* at 64–138, ¶ 132(a)–(kkk).

"[n]o plaintiff or class member is suing or asserting claims against the Broker who directly sold to them the limited partnership interests which they purchased."[34]   In essence, the Investors are not seeking relief from the Broker Dealer through which they purchased their interest in the GBP Funds, but rather are seeking relief exclusively from the Broker Dealers that did not sell them their interests.  Thus, the Investors fail to assert a direct claim against any of the Broker Defendants—and lack standing to assert a claim against them.

      **B.**       **The Investors Fail to State a Claim for Aiding and Abetting Violations of the TSA.**

            **a.**      **The TSA Claims Against Movants Fail Because There is No Privity of Sale Between Movants and the Investors or the Proposed Class.**

The Investors' claim that Movants aided and abetted violations of the TSA must be dismissed because there is no privity of sale between the individual Movants and the Investors. The TSA includes an express "privity provision" that limits a seller's liability to the "person buying the security from him."  *See* Tex. Rev. Civ. Stat. Ann. art. 581-33A(1) cmt. ("§ 33A(1) [like § 33A(2)] is a privity provision").  Thus, "[p]ersons who did not buy [a] security . . . lack standing to sue the person who offered or sold it."  *Ratner v. Sioux Nat'l Gas Corp.*, 770 F.2d 512, 517 (5th Cir. 1985); *see also Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 741 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Frank*, 11 S.W.3d at 383).  This holds true for both primary and secondary theories of liability.

For example, in *Energytec, Inc. v. Proctor*, the U.S. District Court for the Northern District of Texas dismissed a series of aiding and abetting claims asserted against six "[b]roker [d]efendants" because the plaintiff failed to allege that it purchased a security from the brokers. *See Energytec, Inc. v. Proctor*, 516 F. Supp. 2d 660, 676 (N.D. Tex. 2007).  In so finding, the court

---

[34] *See id.* at 30, 195 ¶¶ 46, 288.

noted that "though Texas law allows for a claim for aiding and abetting securities fraud, the [TSA] limits the remedy to one in privity with the sale of a security." *Id.*

Here, the Investors not only fail to allege that they purchased a security from Movants, but they also explicitly renounce any claims that they *could* assert against the brokers that consummated the transactions at issue. Again, the Investors have renounced any claims that they may have against the individual Broker Dealer(s) that (allegedly) sold the Investors their respective interest(s) in the GPB Funds.[35] Thus, the Investors have not—and cannot—establish privity of sale between the individual Movants and the Investors, and their claims must be dismissed as a matter of law. *See Energytec, Inc.*, 516 F. Supp. 2d at 676.

### b. The Investors' Theory of "Substantial Assistance" Fails as a Matter of Law.

The Investors' claim that Movants aided and abetted violations of the TSA must also be dismissed because the Investors fail to demonstrate that Movants provided "substantial assistance" to an alleged TSA violation. *See Frank*, 11 S.W.3d at 384. Here, the Investors allege that Movants substantially assisted GPB in violating the TSA by: (1) continuing their business relationship with GPB and (2) failing to disclose GPB's alleged wrongdoing to new/existing investors.[36] Once again, however, the Investors fail to carry their burden as a matter of law.

If an alleged aider owes no duty to disclose, its "failure to disclose cannot be considered in determining whether [an] alleged aider rendered substantial assistance in the primary violations of the Securities Act." *Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 721–22 (Tex. App.—

---

[35] *See id.* at 30, 195, ¶¶ 46, 288.

[36] *See id.* at 161–62, ¶ 207 ("Had the Broker Defendants disclosed these falsehoods and stopped selling, the Ponzi scheme would have ended.").

Houston [14th Dist.] 2010, no pet.) (finding no substantial assistance by defendant that allegedly failed to disclose the existence of a Ponzi scheme).

Generally, an entity does not owe third-parties a duty of disclosure absent the existence of a fiduciary, confidential, or other special relationship. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 610 F. Supp. 2d 600, 618 (S.D. Tex. 2009). Here again, the Investors' express disavowal of any claims against the broker that actually sold them their Interest(s) in the GPB Funds is fatal because Movants had no duty of disclosure to the unrelated third parties that were not their customers.[37]

Moreover, the Investors do not allege facts that give rise to a disclosure obligation even with respect to brokers with whom the purchaser(s) were in privity. In Texas, brokers owe their customers a limited fiduciary duty. *See Hand v. Dean Witter Reynolds Inc*., 889 S.W.2d 483, 492 n.5 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The scope of that duty, however, expands and retracts based on the nature of their business relationship. *See Martinez Tapia v. Chase Manhattan Bank*, 149 F.3d 404, 412 (5th Cir. 1998). For example, if a customer maintains a nondiscretionary account with its broker—and thereby retains its ability to control its own investment decisions—the broker's duty is limited to executing the customer's orders. *Id.*; *see also Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 530 (5th Cir. 1987). Under these circumstances, the broker has no duty of disclosure because the customer retains its obligation to make "a reasonably diligent effort to inform [itself] about [its] purchase." *See Martinez Tapia*, 149 F.3d at 412.

---

[37] Movants are not the only entities to have observed this fatal flaw. A competing class has similarly urged the dismissal of Investors' claims for this very reason. *See* Doc. 11, at 5–7.

Here, the Investors have not alleged that Movants managed discretionary fund(s). Instead, the Investors merely allege that the "Broker Defendants" sold limited partnership interests in the GPB Funds by disseminating private placement memoranda.[38] The Investors do not allege that Movants exercised and/or maintained any discretion over the purported class members' accounts and/or Interests in the GPB Funds. Thus, Movants' duties (if any) were limited to executing orders, and Movants did not have a duty of disclosure. *See Martinez Tapia*, 149 F.3d at 412; *Romano*, 834 F.2d at 530.

The Investors' claim that Movants should have known that "GPB failed to register under Section 12(g) of the Securities Exchange Act" is likewise unavailing.[39] Section 12(g) does not create a condition precedent to sale, but instead provides for post-sale reporting.[40] Indeed, an issuer is not required to register qualifying shares until "120 days after the last day of its . . . fiscal year."[41] In this regard, the Investors seek to impose an obligation upon Movants not only to investigate and disclose GPB's dealings, but also to continuously monitor the GPB Funds' post-sale operations and reporting—in some instances, for more than a year.[42] However, a broker's duty to a client holding a nondiscretionary account ends immediately after the broker executes the client's order. *In re Enron Corp. Securities, Derivative & "Erisa" Litigation*, No. CIV.A. H-01-3624, 2003 WL 23305555, at *8. A broker does not owe a duty to monitor the client's account and has no "duty to offer unsolicited information, advice or warnings concerning the customer's

---

[38] *See* Second Am. Compl. at 20, 62–63, ¶¶ 35, 129, 131.

[39] *See id.*

[40] Further, any obligation imposed by Section 12(g) is independent of the TSA. *Compare* Tex. Rev. Civ. Stat. Ann. art. 581-7, *with* 15 U.S.C.A. § 78l(g). Thus—despite the Investors' claims to the contrary—an issuer's failure to comply with Section 12(g) does not give rise to liability under Section 7 of the TSA. *See id.*

[41] *See* 15 U.S.C.A. § 78l(g); *see also* 17 C.F.R. § 240.12g–1.

[42] *Compare* Second Am. Compl. at 165, ¶¶ 209(i), *with* 15 U.S.C.A. § 78l(g); *see also* 17 C.F.R. § 240.12g–1.

investments." *Id.* (quoting *De Kwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1302 (2d Cir. 2002)).

Because the Investors cannot plead any (pertinent or admissible) facts demonstrating that Movants provided "substantial assistance" to an alleged TSA violation, their aiding and abetting claim fails as a matter of law. [43]   *See Navarro*, 316 S.W.3d at 721–22.

### C.    The TSA and TUFTA Claims Against Movants Must be Dismissed Because the Investors have Failed to Demonstrate that Texas Law Applies to this Dispute.

#### a.    Both the Investors' Subscription Agreement and Texas Conflict of Law Principles Require the Application of New York Law.

The Investors' claims that Movants aided and abetted violations of the TSA and/or violated the TUFTA must also be dismissed because Texas law—and by extension, the TSA/TUFTA—does not govern this dispute.

First, investors that purchased partnership interests in the "GPB Funds" were required to sign a subscription agreement (the "Agreement"), which stated that all disputes arising from their investment would be governed by "the laws of the State of New York, without regard to that state's conflicts of law provisions." *See* Ex. A, at 12.[44]   Federal district courts sitting within Texas have

---

[43] As noted above, several of the entities and individuals alleged to be "primarily responsible" for the wrongdoing described in the Complaint already filed motions to dismiss the Investors' claims pursuant to Federal Rule of Civil Procedure 12.  *See* Docs. 1, 317, 325, 333, 440, 548, 549, 550, 550, and 554.  It is likely that these entities and individuals will re-file comparable motions that once again seek the dismissal of the Investors' claims.  If the Court agrees that the Investors have failed to state a claim against these (alleged) primary violators, the claims asserted against Movants must also be dismissed.  *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d at 767 ("A prerequisite for establishing secondary liability for aiding and abetting under the TSA is a primary violation under the statute."); *see also Deluca*, 19-CV-10498 (LAK), 2020 WL 7343788, at *15 (dismissing a series of similar claims asserted by another putative class of investors that purchased partnership interests in the GPB Funds).

[44] The Court may consider documents attached to the Motion—like the Agreement—"if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims."  *See Energytec, Inc.*, 516 F. Supp. 2d at 670 (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).  The Investors' claims all arise from their purported purchase of partnership interests in the various GPB Funds.  *See* Second Am. Compl. at 3, 192–95, ¶¶ 2, 282–87.  The execution of a subscription agreement was necessary for the Investors and others to complete a sale and is central to the Investors' claims.  *See* Ex. A, at 7 (noting that the Agreement governed the sale of partnership interests).  Further, the Investors' claim that they and the putative class were sold securities through the use of misleading Offering Materials, which is defined in the Complaint as the private placement memorandum and other

---

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**
**SECOND AMENDED CLASS ACTION COMPLAINT – Page 24**

routinely enforced similar choice-of-law provisions. *See e.g.*, *Hunt Bldg. Co., Ltd. v. John Hancock Life Ins. Co. (U.S.A.)*, No. EP-11-CV-00295-DCG, 2012 WL 12867446, at *11 (W.D. Tex. Dec. 19, 2012) (applying New York law because "[i]n contract cases where the parties have agreed to an enforceable choice-of-law clause, Texas law generally gives effect to the parties' choice-of-law provisions.").[45]  Thus, the Investors' have already agreed that the blue-sky laws of New York—not Texas—apply to their claims.[46]

Even if the choice-of-law provision included in the Agreement did not apply, however, Texas choice-of-law principles would still require the application of New York law.  "Where the parties have not agreed by contract which law should apply, Texas courts apply the law of the state with the most significant relationship to the particular substantive issue." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504 at 519 (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)).  To determine which state has the "most significant relationship" to a dispute based on allegations of fraud or misrepresentation, Texas courts apply the test set forth in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148.  *Id.*

In so doing, a court may consider: "(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations; (b) the place where the plaintiff received the representations; (c) the place where the defendant made the representations; (d) the domicile, residence, nationality, place of incorporation and place of business of the parties; (e) the place

---

communications.  *See* Second Am. Compl. at 3, 192–95, ¶¶ 2, 282–87.  This definition certainly encompasses the Agreement.

[45] While Texas law does not apply to the substantive matters at issue in this lawsuit, it does guide the Court's analysis regarding the application of choice-of-law principles.  *See Hunt Bldg. Co., Ltd.*, No. EP-11-CV-00295-DCG, 2012 WL 12867446, at *11 ("When deciding matters of state law, a federal court sitting in diversity jurisdiction must follow the choice-of-law rules prevailing in the state in which it sits."); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) ("To determine the applicable law, a federal court sitting in diversity applies the choice of law rules of the forum.").

[46] *Compare Hunt Bldg. Co., Ltd.*, No. EP-11-CV-00295-DCG, 2012 WL 12867446, at *11, *with* Ex. A, at 12.

where a tangible thing which is the subject of the transaction between the parties was situated at the time; and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant." *Id.* at 520. Further, "[i]f any two of the contacts apart from the defendant's domicile, state of incorporation, or place of business, are located wholly in a single state, that state will usually be the state of applicable law with respect to most issues." *Id.* (citations omitted). "In a conflict-of-laws analysis for a fraud-based claim, the principal focus is on where the conduct occurred." *Id.* (citing *Greenberg Traurig of New York, PC v. Moody*, 161 S.W.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).

Under this rubric, the application of Texas law is clearly inappropriate. Many of the allegations that form the basis of the Investors' claims took place outside of Texas. For example, only seven of the nearly 100 defendants named in this lawsuit are citizens of or have their principal place of business in Texas.[47] Similarly, the vast majority of GPB's investors—as well as the broker-dealers that facilitated the Investors' purchases—are citizens of states other than Texas. Indeed, despite alleging that GPB raised "over 1.8 billion" from investors, the Investors have only identified three transactions (totaling $300,000) that involved Texas residents.[48] The remainder of the transactions described in the Complaint involved alleged purchases by non-Texas residents.[49]

Several federal district courts have granted motions to dismiss based on similar allegations. *See, e.g.*, *Enron*, 761 F. Supp. 2d at 574–75 (dismissing TSA claim where the plaintiffs were "residents of New York, their alleged relationship with [the defendant] was centered in New York,

---

[47] *See* Second Am. Compl. at 46–138, ¶¶ 99–133.

[48] The Investors allege that Plaintiffs Dean Crooks, Victor Wade, and Kazue M. Bell purchased interests in certain of the Funds for $150,000; $50,000; and $100,000, respectively. *See id.* at 44–46, ¶¶ 88, 94, 97.

[49] *See id.* at 44–46, ¶¶ 87–98.

they received [the defendant's] alleged misrepresentations in New York, they relied on [the defendants] in New York, and they suffered injury in New York."); *see also Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Because the Investors have failed to demonstrate that Texas law applies to their claims— let alone that the TSA or TUFTA apply—the Investors' claims must be dismissed.

### b. The Investors' Claim that Movants Aided and Abetted an Unregistered Offering Fails Because the Majority of the Pleaded Transaction were Exempt from Registration.

Even if the TSA applied to this dispute, the Investors' claim that Movants aided and abetted an unregistered offering must be dismissed (or narrowed, significantly) because the vast majority of the transactions described in the Complaint are exempt from registration. Indeed, despite alleging that GPB raised "over $1.8 billion" from investors, the Investors have only identified three transactions (totaling $300,000) that involved Texas residents.[50] The remainder of the transactions described in the Complaint involved alleged purchases by non-Texas residents.[51] However, "[t]he offer and sale of securities by an issuer or its selling agent to a non-Texas resident not present in Texas when the offer is made is exempt from the securities registration provisions of the [TSA]." 7 Tex. Admin. Code § 139.7 (emphasis added).

Indeed, applying the TSA's registration requirements to these extra-territorial transactions would create severe due process and federalism concerns. As the Texas Supreme Court noted in *Citizens Insurance Company of America v. Daccach*, "[a]lthough the Constitution imposes 'modest restrictions' on the application of a forum state's substantive law to conduct that occurs, at least in part, outside of the state, to constitutionally select a forum state's law to apply to a class

---

[50] *See id.* at 44–46, ¶¶ 88, 94, 97.

[51] *See id.* at 44–46, ¶¶ 87–98.

action, the state must have '***a significant contact or significant aggregation of contacts***' to the claims asserted by each member of the plaintiff class." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 446–47 (Tex. 2007) (emphasis added). When compared to the alleged $1.8 billion in extra-territorial transactions, three Texas-based transactions totaling $300,000 hardly constitute "significant contact" under any standard. Further, only seven of the nearly 100 defendants named in this lawsuit are citizens of or have their principal place of business in Texas.[52] *Cf. id.* at 447. The imposition of the TSA's registration requirements to this case would be contrary to the laws and policies of numerous other states that have a greater claim to this dispute. *See Daccach*, 217 S.W.3d at 446 (citing *Yadlosky v. Grant Thornton L.L.P.*, 197 F.R.D. 292, 301 (E.D. Mich. 2000) (noting that the "application of Michigan law to all of the 2811 investors would be contrary to the policies of other state 'blue-sky' laws")).

Because the vast majority of the transactions described in the Complaint are exempt from registration in Texas (and have no substantial connection to Texas), the Investors' claim that Movants violated the TSA by aiding and abetting an unregistered public offering must be dismissed or narrowed, significantly. *See id.*; *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d at 767 ("A prerequisite for establishing secondary liability for aiding and abetting under the TSA is a primary violation under the statute.").

### D.    The Proposed Class Period is Impermissibly Broad and Violates the TSA and TUFTA Statutes of Repose.

The Investors' proposed class period must be restricted because it violates the TSA and TUFTA statutes of repose. Both the TSA and the TUFTA are subject to "an absolute statute of repose." *Official Stanford Inv'rs Comm.*, No. 3:12-CV-4641-N, 2015 WL 13741905, at *4; *accord*

---

[52] *See id.* at 46–138, ¶¶ 99–133.

*Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013). "Unlike the limitations periods, which do not run until after the discovery of the facts constituting a violation, [] repose periods begin to run the moment the violation (or sale) occurs, regardless of the claimant's discovery." *Escalon v. World Grp. Sec., Inc.*, No. 5:07-CV-214-C, 2008 WL 5572823, at *3 (N.D. Tex. Nov. 14, 2008).

Under the TSA, claims based on the sale of unregistered securities may not be brought more than three years after the subject-securities were sold. *See* Tex. Rev. Civ. Stat. Ann. art. 581-33(H)(1)(a). Similarly, claims based on sales of securities through untruth or omission may not be brought more than five years after the date of sale. *See id.* 581-33(H)(2)(a), (b). Under the TUFTA, claims arising from transfers made "without receiving a reasonably equivalent value" are subject to a four-year statute of repose. *See* Tex. Bus. & Com. Code Ann. § 24.010(a)(2); *id.* § 24.005(a)(2).

Here, the Investors assert claims on behalf of a purported class that "purchased or otherwise acquired [limited partnership interests] in one or more of the GPB Funds between June 6, 2013 through the present" (the "Class Period").[53] However, the Investors filed their Complaint on October 25, 2019, more than six years and four months after the beginning of the Class Period. Thus, the Investors' proposed Class Period is impermissibly broad and violates both the TSA and TUFTA's statutes of repose. The Investors cannot assert any TSA claims that accrued before: (1) October 26, 2016 for alleged violations of Section 33A(1) and (2) October 26, 2014 for alleged violations of Section 33A(2).[54] Similarly, the Investors may not assert any TUFTA claims arising from transfers (allegedly) made "without receiving a reasonably equivalent value" that accrued before October 26, 2015.

---

[53] *Id.* at 195, ¶ 288.

[54] *Compare id.*, *with* Tex. Rev. Civ. Stat. Ann. art. 581-33(H)(1), (2).

**E.    Counts 8 and 11: The Investors' Claims that Movants Aided and Abetted in the Commission of Common Law Fraud and/or Breaches of Fiduciary Duties Should be Dismissed Because Those Claims Do Not Exist Under Texas Law.**

Counts eight and eleven assert that Movants aided and abetted[55] in the commission of common law fraud and/or breaches of fiduciary duties.[56]  Those claims do not exist under Texas law.  *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018) (holding that a district court "exceeded its circumscribed institutional role" by recognizing a cause of action for aiding-and-abetting under Texas law); *McKinney/Pearl Rest. Partners, L.P.*, No. 3:14-CV-2498-B, 2015 WL 12723054, at *13 (granting a Rule 12(b)(6) motion to dismiss aiding and abetting claims because "there is no indication that Texas law has moved toward recognizing a cause of action for aiding and abetting fraud, the Court follows this line of cases in declining to allow such a claim.").[57]

Based on the foregoing, the Court must dismiss the Investors' claim that Movants aided and abetted in the commission of common law fraud and/or breaches of fiduciary duties as a matter of law.

---

[55] While not explicitly denoted as such, the Investors' claims for "substantial[] assist[ance]" should be viewed as aiding and abetting claims.  *Compare W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 n.3 (Tex. App.—Dallas 2014, pet. denied) (analyzing "substantial assistance" as an element of an aiding and abetting claim, but explicitly withholding any opinions regarding the existence of an independent cause of action for aiding and abetting under Texas law), *with* Second Am. Compl. at 206, 213–14 ¶¶ 348–52, 379–84.

[56] *See* Second Am. Compl. at 206, 213–14 ¶¶ 348–52, 379–84.

[57] As noted above, several of the entities and individuals alleged to be "primarily responsible" for the wrongdoing described in the Complaint already filed motions to dismiss the Investors' claims pursuant to Federal Rule of Civil Procedure 12.  *See* Doc. 1, 317, 325, 333, 440, 548, 549, 550, 550, and 554.  If the Court agrees that the Investors have failed to state a claim against these (alleged) primary violators, this provides yet another ground for the dismissal of the Investors' aiding and abetting claims.  There can be no aiding and abetting absent a primary violation.  *See W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d at 921 n.3 (analyzing "substantial assistance" as an element of aiding and abetting claim, but explicitly withholding any opinions regarding the existence of an independent cause of action for aiding and abetting under Texas law); *see also Deluca*, 19-CV-10498 (LAK), 2020 WL 7343788, at *15 (dismissing a series of similar claims asserted by another putative class of investors that purchased partnership interests in the GPB Funds).  Moreover, as noted above, the Investors cannot establish that Movants aided or abetted a primary violation because there are no allegations in the Complaint that demonstrate each Movant was subjectively aware of its role in a primary violation.  *See Supra*, III.A.a., III.B.b.

# IV.
## CONCLUSION

Movants respectfully requests that this Court grant their Motion, dismiss the Kinnie Ma Individual Retirement Account's claims against them, and grant them any further relief to which they may be entitled.

Respectfully Submitted,

KESSLER & COLLINS,
A Professional Corporation

By:  /s/ *Gary S. Kessler*
      GARY S. KESSLER
      State Bar No. 11358200
      gsk@kesslercollins.com
      BRYON ROMINE
      State Bar No. 15262650
      blr@kesslercollins.com
      DANIEL P. CALLAHAN
      State Bar No. 03648700
      dpc@kesslercollins.com
      STEPHEN J. HUSCHKA
      State Bar No. 24097861
      shuschka@kesslercollins.com

2100 Ross Avenue, Suite 750
Dallas, Texas 75201
214.379.0722 [Telephone]
214.373.4714 [Facsimile]

**ATTORNEYS FOR DEFENDANTS EMERSON EQUITY LLC; LOWELL & COMPANY, INC.; MCNALLY FINANCIAL SERVICES CORPORATION; MSC-BD-LLC LTD; SCF SECURITIES, INC.; STEPHEN A. KOHN & ASSOCIATES, LTD; and TITAN SECURITIES**

**AKERMAN LLP**

/s/ *C. Bryce Benson*
C. Bryce Benson
Texas Bar Number: 24031736
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone:  (214) 720-4300
Facsimile:   (214) 981-9339
E-mail: Bryce.benson@akerman.com

**ATTORNEYS FOR MONEY CONCEPTS CAPITAL CORPORATION AND SENTINUS SECURITIES LLC N/K/A SENTINUS HALO SECURITIES, LLC**

*Admitted Pro Hac Vice:*

/s/ *Abe Lampart*
Abe Lampart
abe@lampartlaw.com
LAW OFFICES OF ABE LAMPART, P.C.
456 Montgomery Street, Suite 1300
San Francisco, California  94104
Telephone: 415.274.0999
Cell: 415.609.4006
Facsimile: 415.274.2563

**ATTORNEY FOR WHITEHALL PARKER SECURITIES**

/s/ *Matthew D. Turner*
Matthew D. Turner
MO BAR 48031
Armstrong Teasdale LLP
3405 West Truman Boulevard, Suite 210
Jefferson City, MO 65109
Tel: 573-634-7146 (direct)
Fax: 573-636-8457
mturner@armstrongteasdale.com

/s/ *James G. Ruiz*
James G. Ruiz
State Bar No. 17385860
WINSTEAD PC
401 Congress Ave., Suite 2100
Austin, Texas 78701
52-370-2818- telephone
512-370-2850- fax
jruiz@winstead.com

**ATTORNEYS FOR DEFENDANT MOLONEY SECURITIES CO., INC.**

*/s/ Gary Ewell*
Gary Ewell
gewell@ebbklaw.com
David Blanke
dblanke@ebbklaw.com
Alithea Sullivan
asullivan@ebbklaw.com
EWELL BROWN BLANKE & KNIGHT LLP
111 Congress Avenue, Suite 2800
Austin, Texas  78701
Telephone: 512.770.4000

**ATTORNEYS FOR ARKADIOS CAPITAL, AUSDAL FINANCIAL PARTNERS, INC., CROWN CAPITAL SECURITIES, LP, GENEOS WEALTH MANAGEMENT, INC., ORCHARD SECURITIES, LLC, DFPG INVESTMENTS, LLC, FSC SECURITIES CORPORATION, ROYAL ALLIANCE ASSOCIATES, INC., SAGEPOINT FINANCIAL, INC., WOODBURY FINANCIAL SERVICES, INC., WESTERN INTERNATIONAL SECURITIES, AEGIS CAPITAL CORP., AMERICAN CAPITAL PARTNERS, LLC, WHITEHALL PARKER SECURITIES, DAVID A. NOYES & COMPANY (N/K/A SANCTUARY WEALTH GROUP, LLC), TRIAD ADVISORS LLC, INNOVATION PARTNERS LLC, AEON CAPITAL, INC., LANDOLT SECURITIES, INC., AND KINGSBURY CAPITAL, INC.**

*Admitted Pro Hac Vice:*
*/s/ Dave Koropp*
Dave Koropp (lead counsel)
dkoropp@foxswibel.com
Steven L. Vanderporten
svanderporten@foxswibel.com
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, Illinois 60606
312-224-1200 (main)
312-224-1201 (fax)

**ATTORNEYS FOR DAVID A. NOYES & COMPANY (N/K/A SANCTUARY WEALTH GROUP, LLC)**

**K&L GATES LLP**

By:___*/s/ Stephen Topetzes*___
       Stephen Topetzes
       *Pro Hac Vice*
       stephen.topetzes@klgates.com

1601 K Street, NW
Washington, D.C. 20006-1600
(202) 778-9328 Telephone
(202) 778-9100 Facsimile

       Michael DeMarco
       *Pro Hac Vice*
       michael.demarco@klgates.com
       John Gavin
       *Pro Hac Vice*
       john.gavin@klgates.com

State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111-2950
(617) 261-3100 Telephone
(617) 261-3175 Facsimile

       Jonathan R. Dotson
       Texas State Bar No. 24036495
       jon.dotson@klgates.com

2801 Via Fortuna, Suite 350
Austin, Texas 78746
(512) 482-6889 Telephone
(512) 482-6859 Facsimile

**ATTORNEYS FOR DEFENDANT HIGHTOWER SECURITIES, LLC**

**KELLY HART & HALLMAN LLP**

*/s/ J. Stephen Ravel*

    STEVEN J. RAVEL
    Texas State Bar No. 16584975

303 Colorado Street, Suite 2000
Austin, TX  78701
512-495-6429
512-495-6464 (fax)
steve.ravel@khh.com

**KAUFMAN DOLOWICH & VOLUCK LLP**

*/s/ Nancy L. Hendrickson*

    NANCY L. HENDRICKSON
    Pro hac vice
    Illinois State Bar No. 6207710

135 S. LaSalle Street, Suite 2100
Chicago, IL  60603
312- 863-3662
312-759-0402 (fax)
nhendrickson@kdvlaw.com

**ATTORNEYS FOR GREAT POINT CAPITAL LLC, NEWBRIDGE SECURITIES CORPORATION, AND WESTPARK CAPITAL INC.**

**WINSTEAD PC**

/s/ James G. Ruiz
    JAMES G. RUIZ
    Texas State Bar No. 17385860

401 Congress Ave., Suite 2100
Austin, Texas 78701
512-370-2818
jruiz@winstead.com

**KAUFMAN DOLOWICH & VOLUCK LLP**

/s/ Nancy L. Hendrickson
    NANCY L. HENDRICKSON
    Pro hac vice
    Illinois State Bar No. 6207710

135 S. LaSalle Street, Suite 2100
Chicago, IL  60603
312- 863-3662
312-759-0402 (fax)
nhendrickson@kdvlaw.com

**ATTORNEYS FOR ARETE WEALTH MANAGEMENT LLC**

**LEWIS S. FISCHBEIN, P.C.**

By:    /s/ Lewis S. Fischbein
    Lewis S. Fischbein
    NY Attorney Registration No. 1474691
    USDC, SDNY Bar Code LF3349
    *Admitted Pro Hac Vice by the Western*
    *District of Texas, Austin Division*
    *Admitted to the Western District of Texas*
2727 Henry Hudson Parkway, Suite 609
Riverdale, New York 10463
(914) 772-7491
lfischbein@wsmblaw.com

**COUNSEL FOR DEFENDANTS PURSHE KAPLAN STERLING INVESTMENTS, INC. AND CABOT LODGE SECURITIES, LLC**

*Admitted Pro Hac Vice:*

*/s/ Edward S. Zusman*
Edward S. Zusman
ezusman@mzclaw.com
Kevin Eng
keng@mzclaw.com
Tanya Urbach
turbach@mzclaw.com
MARKUN ZUSMAN FRENIERE & COMPTON LLP
465 California Street, Suite 401
San Francisco, California  94104
Telephone: 415.438.4449
Facsimile: 415.434.4505

**ATTORNEYS FOR FSC SECURITIES CORPORATION, ROYAL ALLIANCE ASSOCIATES, INC., SAGEPOINT FINANCIAL, INC., TRIAD ADVISORS LLC, WOODBURY FINANCIAL SERVICES, INC., AND WESTERN INTERNATIONAL SECURITIES**

**WINSTEAD PC**

/s/ James G. Ruiz
James G. Ruiz
State Bar No. 17385860
jruiz@winstead.com
401 Congress Ave., Suite 2100
Austin, Texas 78701
512-370-2818- telephone

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

/s/ John P. Quinn
Pro Hac Vice
Pennsylvania State Bar No. 85239
2000 Market Street, Suite 2300
Philadelphia, PA, 19103
215-575-2883
205-575-0856 (fax)
jpquinn@mdwcg.com

/s/ Samuel E. Cohen
Pro Hac Vice
Pennsylvania State Bar No. 78996
2000 Market Street, Suite 2300
Philadelphia, PA, 19103
215-575-2883
205-575-0856 (fax)
secohen@mdwcg.com

**ATTORNEYS FOR CENTER STREET SECURITIES, INC., CONCORDE INVESTMENT SERVICES, LLC, COLORADO FINANCIAL SERVICES CORPORATION, UHLMANN PRICE SECURITIES, LLC, IBN FINANCIAL SERVICES, LLC, LEWIS FINANCIAL GROUP N/K/A DAI SECURITIES, LLC AND VESTECH SECURITIES, INC.**

**NORTON ROSE FULBRIGHT US LLP**

/s/ *Peter Andrew Stokes*
Texas State Bar No. 24028017
98 San Jacinto Blvd, Suite 1100
Austin, TX 78701
512-474-5201
512-536-4598 (fax)
peter.stokes@nortonrosefulbright.com

**ATTORNEYS FOR INTERNATIONAL ASSETS ADVISORY, LLC, MADISON AVENUE SECURITIES, LLC, VANDERBILT SECURITIES, CALTON & ASSOCIATES, INC., KALOS CAPITAL, INC., COASTAL EQUITIES, INC., MCDONALD PARTNERS LLC, ADVISORY GROUP EQUITY SERVICES, LTD. AND LUCIA SECURITIES LLC**

/s/ *Gary M. Saretsky*
Saretsky Hart Michaels + Gould PC
995 South Eton Street
Birmingham, MI 48009
248-502-3300
248-502-3301 (fax)
gsaretsky@saretsky.com

/s/ *Janine M. Lucas*
Saretsky Hart Michaels + Gould PC
995 South Eton Street
Birmingham, MI 48009
248-502-3300
248-502-3301 (fax)
jlucas@saretsky.com

/s/ *Jonathan M. Sterling*
Saretsky Hart Michaels + Gould PC
995 South Eton Street
Birmingham, MI 48009
248-502-3300
248-502-3301 (fax)
jsterling@saretsky.com

**ATTORNEYS FOR ARKADIOS CAPITAL, AUSDAL FINANCIAL PARTNERS, INC., CROWN CAPITAL SECURITIES, LP, GENEOS WEALTH MANAGEMENT, INC., ORCHARD SECURITIES, LLC, AND DFPG INVESTMENTS, LLC**

**SCHIFF HARDIN LLP**

By:  /s/ *Kayvan B. Sadeghi*
      Kayvan B. Sadeghi
      1185 Avenue of the Americas
      Suite 3000
      New York, NY 10103
      Tel: (212) 745-5000
      Fax: (212) 753-5044
      ksadeghi@schiffhardin.com

**ATTORNEYS FOR DAWSON JAMES SECURITIES, INC.**


*Admitted Pro Hac Vice:*

/s/ *Sameer Rastogi*
Sameer Rastogi
srastogi@srf.law
Michael Ference
mference@srf.law
SICHENZIA ROSS FERENCE LLP
1185 Avenue of the Americas, 37th Floor
New York, New York  10036
Telephone:  (212) 930-9700
Facsimile:  (212) 930-9725

**ATTORNEYS FOR AEGIS CAPITAL CORP. AND AMERICAN CAPITAL PARTNERS, LLC**

By:   /s/ Andrea Ann Ortiz
Andrea Ann Ortiz
Texas Bar No. 24105908
*Admitted in the WDTX*
aortiz@moundcotton.com

MOUND COTTON WOLLAN
& GREENGRASS LLP
3 Greenway Plaza, Suite 1300
Houston, Texas 77046
(281) 572-8350

-and-

Barry R. Temkin
Attorney-in-Charge
New York Bar No. 1848068
*Admitted Pro Hac Vice*
btemkin@moundcotton.com

MOUND COTTON WOLLAN
& GREENGRASS LLP
One New York Plaza
New York, NY 10004
Tel. (212) 804-4200

**COUNSEL FOR DEFENDANT UNITED PLANNERS FINANCIAL SERVICES OF AMERICA, LLC**


*Admitted Pro Hac Vice:*

/s/ Martin Siegel
Martin Siegel (lead counsel)
msiegel@wbny.com
WARSHAW BURSTEIN LLP
575 Lexington Avenue
New York, New York  10022
212-984-7741 (direct)
212-972-9150 (facsimile)

**ATTORNEYS FOR AEON CAPITAL, INC.**

/s/ *Martin S. Schexnayder*
WINGET|SPADAFORA|SCHWARTZBERG|LLP
State Bar No. 177745610
Federal Bar No. 15146
2 Riverway, Suite 725
Houston, Texas  77056
713-343-9200
713-343-9201 (fax)
schexnayder.m@wssllp.com

**ATTORNEYS FOR DEFENDANTS LION STREET FINANCIAL, LLC AND BCG SECURITIES, INC.**


By:    /s/ *James G. Ruiz*
       James G. Ruiz
       State Bar No. 17385860
       WINSTEAD PC
       401 Congress Ave., Suite 2100
       Austin, Texas 78701
       512-370-2818- telephone
       512-370-2850- fax
       jruiz@winstead.com

**ATTORNEYS FOR DEFENDANT CAPITAL INVESTMENT GROUP, INC.; CASCADE FINANCIAL MANAGEMENT, INC.; DEMPSEY LORD SMITH, LLC; AND DETALUS SECURITIES, LLC**



<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on December 21, 2020 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.


/s/ *Stephen J. Huschka*
STEPHEN J. HUSCHKA