IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KINNIE MA INDIVIDUAL RETIREMENT ACCOUNT, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED, | § § § § § | |
| PLAINTIFF, | § § | |
| V. | § § | CAUSE NO. 1:19-CV-1050-LY |
| ASCENDANT CAPITAL, LLC, ET AL., | § § § | |
| DEFENDANTS. | § | |

## ORDER ON MOTION TO DISMISS (DOC. 683)

Plaintiffs Kinnie Ma Individual Retirement Account, Dean Crooks, Jeffery S. Gramm Individual Retirement Account, Stacy Greasor Individual Retirement Account, Corri Rene Eden, Catherine Kominos, Karen Loch, Victor Wade Individual Retirement Account, Robert A. Stone Living Trust, Shirley Stone Living Trust, and Kazue M. Bell (collectively, "Plaintiffs") allege they are victims of a $1.8 billion "Ponzi scheme." Plaintiffs' Second Amended Complaint filed November 9, 2020, brings a class-action lawsuit against over 90 Defendants on 13 counts: violations of the Texas Securities Act, including aiding-and-abetting violations, control-person violations, fraud, and substantially assisting in the commission of fraud, fraudulent transfer under the Texas Uniform Fraudulent Transfer Act, breach of fiduciary duty, substantially assisting in the breach of fiduciary duty, and negligence. Plaintiffs pray for compensatory and equitable relief.

Fifty-one of the 62 "Broker Defendants" named by Plaintiffs jointly move to dismiss pursuant to the doctrine of *forum non conveniens*, including Advisory Group Equity Services, Ltd., Aegis Capital Corporation, Aeon Capital Inc., American Capital Partners, LLC, Arete Wealth Management,

LLC, Arkadios Capital, Ausdal Financial Partners, Inc., Cabot Lodge Securities LLC, Calton & Associates, Inc., Capital Investment Group, Inc., Cascade Financial Management, Inc., Coastal Equities, Inc., Colorado Financial Service Corporation, Concorde Investment Services, LLC, Crown Capital Securities, LP, David A. Noyes & Company, Dawson James Securities, Inc., Dempsey Lord Smith, LLC, Detalus Securities, LLC, DFPG Investments, Inc., FSC Securities Corporation, Geneos Wealth Management, Inc., Great Point Capital LLC, HighTower Securities, LLC, IBN Financial Services, Inc., Innovation Partners LLC, International Assets Advisory, LLC, Kalos Capital, Inc., Kingsbury Capital, Inc., Landolt Securities, Inc., Lewis Financial Group n/k/a DAI Securities, LLC, Lucia Securities, LLC, Madison Avenue Securities, LLC, McDonald Partners LLC, Moloney Securities Co., Inc., Money Concepts Capital Corporation, MSC-BD, LLC, Newbridge Securities Corporation, Orchard Securities, LLC, Purshe Kaplan Sterling Investments, Inc., Royal Alliance Associates, Inc., SagePoint Financial, Inc., Sentinus Securities n/k/a Sentinus-Halo Securities, LLC, Triad Advisors LLC, Uhlmann Price Securities, LLC, United Planners' Financial Services of America, LP, Vanderbilt Securities, LLC, Vestech Securities, Inc., Western International Securities, Inc., WestPark Capital Inc., Whitehall-Parker Securities, Inc., and Woodbury Financial Services, Inc. (collectively, the "Moving Defendants").[1] (Doc. 683.) Plaintiffs respond in an "omnibus" opposition that the court has also reviewed in rendering this order. (Doc. 724.)

---

[1] The following 11 Broker Defendants did not join the motion: BCG Securities, Inc., Bradley Wealth Management, LLC, Center Street Securities, Inc., Dinosaur Financial Group, LLC, Emerson Equity LLC, Lion Street Financial, LLC, Lowell & Company, Inc., McNally Financial Services Corporation, SCF Securities, Inc., Stephen A. Kohn & Associates, Ltd., and Titan Securities. All, however, have responded to Plaintiffs' Second Amended Complaint.

2

## LEGAL STANDARD

The court draws all facts from Plaintiffs' Second Amended Complaint. Attachments to a complaint are "a part of the pleading for all purposes." FED. R. Civ. P. 10(c). When evaluating whether to dismiss a complaint, a well-known "tenet [is] that a court must accept as true all of the factual allegations contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But this tenet "is inapplicable to legal conclusions." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

## FACTUAL BACKGROUND

In their Second Amended Complaint, Plaintiffs allege GPB Capital Holdings, LLC ("GPB Capital") partnered with Ascendant Capital, LLC (formerly an Austin-based branch of Axiom Capital Management, Inc.) and Ascendant Alternative Strategies, LLC to perpetrate a nearly $2 billion Ponzi scheme. Specifically, GPB Capital sponsored a series of individual "funds," which include Defendants GPB Holdings, LP; GPB Holdings II, LP; GPB Holdings III, LP; GPB Holdings Qualified, LP; GPB Automotive Portfolio, LP; GPB Cold Storage, LP; GPB NYC Development; and GPB Waste Management, LP (collectively, the "GPB Funds"). GPB Capital is the general manager of the GPB Funds, but Ascendant Capital was "secretly acting as the general partner" of the GPB Funds as well.

Investors such as Plaintiffs purchase interests in the GPB Funds as limited partners. Investors are promised dividends of 8% or more *per annum* from "operating profits" and an expected net internal rate of return of 15%. Such promises were allegedly made in private-placement memoranda, Forms D, and other communications disseminated to investors. For example, several materials "repeatedly described this 8% return as 'fully covered from funds from operations' or from 'steady

cash flows.'" However, in reality, "GPB was operating a Ponzi scheme in which it was paying investors money from their own (or other later investors') accounts and describing such payments as investment returns."

Plaintiffs take issue with undisclosed self-dealing and conflicts of interest among GPB Capital, Ascendant Capital, Ascendant Alternative Strategies, Axiom Capital Management, the GPB Funds, and principals David Gentile, Jeffry Schneider, Mark Martino, DJ Partners, and MR Ranger who "*commonly owned* the entire revenue stream from organizing, managing, and operating the various limited partnership interests, *and* from brokering, selling and underwriting them." This arguably "created the most glaring conflict of interest that can exist in the securities business: the brokers offering the [limited partnership interests in the GPB Funds] and purportedly providing independent, objective advice were also secretly sharing in the massive fees earned by GPB Capital in connection with operating the limited partnerships themselves. The nature of this revenue sharing and co-control relationship was never fully disclosed as required under both Texas [and federal securities laws] . . . which the [GPB] Funds were subject."

Additionally, Plaintiffs state that all parties to the GPB Funds, but the investors, profited handsomely from the alleged Ponzi scheme. For instance, "[f]ees paid out of investor funds included at least 8–11% paid to brokers who sold the Securities (an unprecedented amount), and an additional 5% to 9% paid to GPB [Capital] and its (undisclosed) affiliates on a regular and continuous basis." Taken together, Plaintiffs allege that "16% to 20% of the gross capital investment of limited partners" was being extracted in the form of fees, leaving only 80% to 84% available for investment. "This fee structure made reasonable investment returns impossible."

4

Lastly, Plaintiffs allege this misconduct was enabled not only by the GPB Funds' administrator Phoenix American Financial Services, but also by over 60 broker dealers, including Advisory Group Equity Services, Ltd., Aegis Capital Corporation, Aeon Capital Inc., American Capital Partners, LLC, Arete Wealth Management, LLC, Arkadios Capital, Ausdal Financial Partners, Inc., BCG Securities, Inc., Bradley Wealth Management, LLC, Cabot Lodge Securities LLC, Calton & Associates, Inc., Capital Investment Group, Inc., Cascade Financial Management, Inc., Center Street Securities, Inc., Coastal Equities, Inc., Colorado Financial Service Corporation, Concorde Investment Services, LLC, Crown Capital Securities, LP, David A. Noyes & Company, Dawson James Securities, Inc., Dempsey Lord Smith, LLC, Detalus Securities, LLC, DFPG Investments, Inc., Dinosaur Financial Group, LLC, Emerson Equity LLC, FSC Securities Corporation, Geneos Wealth Management, Inc., Great Point Capital LLC, HighTower Securities, LLC, IBN Financial Services, Inc., Innovation Partners LLC, International Assets Advisory, LLC, Kalos Capital, Inc., Kingsbury Capital, Inc., Landolt Securities, Inc., Lewis Financial Group n/k/a DAI Securities, LLC, Lion Street Financial, LLC, Lowell & Company, Inc., Lucia Securities, LLC, Madison Avenue Securities, LLC, McDonald Partners LLC, McNally Financial Services Corporation, Moloney Securities Co., Inc., Money Concepts Capital Corporation, MSC-BD, LLC, Newbridge Securities Corporation, Orchard Securities, LLC, Purshe Kaplan Sterling Investments, Inc., Royal Alliance Associates, Inc., SagePoint Financial, Inc., SCF Securities, Inc., Sentinus Securities n/k/a Sentinus-Halo Securities, LLC, Stephen A. Kohn & Associates, Ltd., Titan Securities, Triad Advisors LLC, Uhlmann Price Securities, LLC, United Planners' Financial Services of America, LP, Vanderbilt Securities, LLC, Vestech Securities, Inc., Western Int'l Securities, Inc., WestPark Capital Inc., Whitehall-Parker Securities, Inc., and Woodbury Financial Services, Inc.

(collectively, the "Broker Defendants"); RSM US LLP, Crowe LLP, CohnReznick LLP, Margolin Winer & Evens LLP, EisnerAmper LLP, and Withum Smith+Brown PC (collectively, the "Auditor Defendants"); and Deloitte Transactions and Business Analytics LLP and Morrison, Brown, Argiz & Ferra LLC (collectively, the "Valuation Defendants").

Phoenix American Financial Services agreed to perform functions for limited partners such as Plaintiffs, including calculating investment net-asset values, processing distributions, informing investors of the current state of their investments, and serving as paymaster for the GPB Funds. If it "had not provided investors with false monthly statements containing the purported value of their holdings, the scheme would have failed. The statements were false and misleading because they failed to reduce the respective investors' capital account value by the up to 11% paid 'off the top' (in broker commissions) before investor funds were paid over to GPB [Capital]. Thus, the investors' statements were inflated by at least 11% and materially misrepresented the value of [Plaintiffs'] investments."

The Auditor Defendants "prepared false and misleading audits[;] reviewed, approved and authorized the dissemination of false and misleading financial statements for the [GPB] Funds[;] and allowed their names and reputations to be used for salesmanship and marketing" of the limited partnership interests in the GPB Funds. For example, "GPB [Capital] has acknowledged that GPB Holdings II, LP's assets were overstated in the audit that RSM prepared by more than 25%, or hundreds of millions of dollars . . . . Similarly, in June 2019, GPB [Capital] acknowledged that GPB Automotive Portfolio, LP's assets were overstated by 39% and that GPB [Capital]'s five remaining [GPB] Funds had declined between 25% to 73% in value." Audit opinions from RSM and Crowe have since been withdrawn.

The Valuation Defendants "provided inflated valuations of GPB's assets. Such valuations were necessary because most if not all of the assets held by such [GPB] Funds were not publicly traded and had no reported market value."

The Broker Defendants "were, in effect, bribed. They were paid grossly excessive commissions (approximately 11%)—more than double the industry average—to look the other way and to perpetuate the scheme by failing to disclose that their clients' investments were being used to pay other investors' distributions, and by failing to disclose the numerous red flags of which they were aware." The Broker Defendants allegedly were aware of the following red flags: that the limited-partnership interests were sold to Plaintiffs through "unregistered public offerings;" GPB Capital "was required to but failed to register under 12(g) of the Securities Exchange Act and to prepare and distribute quarterly and annual financial documents to investors;" the unregistered public offerings contained "excessive compensation, lack of track record, prior poor performance, inter-company conflicts of interest, and commingling of assets among ostensibly separate GPB Funds;" "Schneider and Martino were undisclosed 'bad actors' under Rule 506[;] and that GPB [Capital], therefore, was required to register the [unregistered public offerings] under the Securities Act . . . . [M]uch of this red-flag information was provided to the Broker Defendants directly through the [due diligence reports from third parties] which were hidden from the investors."

## ANALYSIS

The Moving Defendants argue that the Plaintiffs' claims must be pursued in New York State Court, because the forum-selection clause in subscription agreements they signed provides that "[v]enue for or any litigation arising out of, under, or in connection with this Agreement will lie in the state courts having jurisdiction over such matters located in New York County."

The doctrine of *forum non conveniens* allows a court to dismiss a case when another court, including a state court, should preside over the case. *Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Ordinarily, this doctrine involves balancing relevant private and public interests. *Id.* at 62. However, if there is a mandatory forum-selection clause, the private-interest factors are deemed to weigh in favor of the preselected forum, and the plaintiff bears the burden of establishing that transfer to the preselected forum is unwarranted. *Id.* at 63–64; *see also Weber v. PACT Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016) (recognizing "a sharp distinction between mandatory and permissive" forum-selection clauses).

The forum-selection clause is not a mandatory one; it is merely permissive. A forum-selection clause is only mandatory "if it contains clear language specifying that litigation must occur in the specified forum—and language merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar) is insufficient to make a[ forum-selection clause] mandatory." *Weber*, 811 F.3d 758 at 768. Likewise here, the forum-selection clause provides that venue "will lie" in New York state courts; in other words, that New York state courts "shall have jurisdiction." *See id.* But the forum-selection clause plainly does not state that venue "must lie" or "will only lie" or "will be brought" in New York state courts. *See id.*; *accord Caldas & Sons v. Willingham*, 17 F.3d 123, 128 (5th Cir. 1994) (holding forum-selection clause stating California courts "shall have jurisdiction" was permissive). The court therefore need not, and will not, exercise its discretion to dismiss the Plaintiffs' action.

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss (Doc. 683) is **DENIED**.

SIGNED this 25th day of August, 2021.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE