# EXHIBIT 3

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KINNIE MA IRA, JEFFERY S. GRAMM IRA; STACY GREASOR IRA; VICTOR WADE IRA; KAZUE BELL; DEAN CROOKS, CORRI RENE EDEN; CATHERINE KOMINOS; KAREN LOCH; ROBERT A. STONE LIVING TRUST; SHIRLEY STONE LIVING TRUST; THE STANLEY S. AND MILLICENT R. BARASCH LIVING TRUST; AND LORETTA DEHAY, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br>  v.<br><br>ASCENDANT CAPITAL, LLC, *et al.*,<br><br>     Defendants. | CIVIL ACTION NO. 1:19-cv-01050-LY |

**JOINT DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

We, Timothy DeJong, Richard Stone, Peter Linden, Daniel Berger, and Catherine Pratsinakis, hereby declare and state the following:

1. We make this declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement with Plaintiffs including Kinnie Ma IRA, Jeffery S. Gramm IRA, Stacy Greasor IRA, Victor Wade IRA, Kazue Bell, Dean Crooks, Corri Rene Eden, Catherine Kominos, Karen Loch, Robert A. Stone Living Trust, Shirley Stone Living Trust, Stanley S. and Millicent R. Barasch Living Trust, Loretta Dehay, Barbara DeLuca, Drew R. Naylor, Peggy Rollo, Peter Beddia, Michael Oles, Robert Ricci, and James Staples, as Trustee of the 616 Moved Trust, individually and on behalf of all others similarly situated (collectively the "Plaintiffs" or "Settlement Class Representatives"), and Defendants Crowe LLP, Withum Smith+Brown, PC, Margolin Winer & Evens LLP, CohnReznick LLP, and RSM US LLP (the "Settling Defendants"

Exhibit 3
Page 1 of 264

or "Auditor Defendants" and collectively with Plaintiffs, "Parties").

2.    A true and correct copy of the Stipulation and Agreement of Settlement, dated December 3, 2024, between Plaintiffs and Settling Defendants (the "Settlement" or "Settlement Agreement") is attached hereto as **Exhibit 1**. Unless otherwise defined, capitalized terms appearing in this Declaration shall be defined as provided for in the Settlement Agreement.

3.    We are over the age of eighteen, are competent to make this declaration, and have personal knowledge of the following.

4.    I, Timothy S. DeJong, am an attorney at Stoll Stoll Berne Lokting & Shlachter, P.C. I am counsel for Plaintiffs in the in the above-captioned case and have been admitted *pro hac vice*. I am also a member of the bars of the States of Oregon and Washington.

5.    I, Richard L. Stone, am an attorney at the Law Offices of Richard L. Stone, PLLC. I am counsel for Plaintiffs in the in the above-captioned case and have been admitted *pro hac vice*. I am also a member of the bar of the State of New York.

6.    I, Peter S. Linden, am an attorney at Kaplan Fox & Kilsheimer LLP. I am counsel for Plaintiffs in the in the above-captioned case and have been admitted *pro hac vice*. I am also a member of the bars of the State of New York and the District of Columbia.

7.    I, Daniel L. Berger, am an attorney at Grant & Eisenhofer, P.A. I am counsel for Plaintiffs in the *DeLuca* Action. I am a member of the bar of the State of New York.

8.    I, Catherine Pratsinakis, am an attorney at Dilworth Paxson LLP. I am counsel for Plaintiffs in the *DeLuca* Action and have been admitted *pro hac vice* in that matter. I am a member of the bars of Delaware, Pennsylvania and New Jersey.

### KINNIE MA INDIVIDUAL RET. ACCT., ET AL. V. ASCENDANT CAP., LLC, ET AL.

9.    The matter *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Cap., LLC, et al.*,

2

Exhibit 3
Page 2 of 264

No. 1:19-cv-01050-LY (W.D. Tex.) was filed on October 25, 2019 as a putative class action.

10.     The matter *Barasch, et al. v. GPB Cap. Holdings, LLC, et al.*, No. 1:19-cv-01079-LY (W.D. Tex.) was filed on November 6, 2019 as a putative class action.

11.     In addition to suing GPB Capital, Ascendant and their affiliates, as well as the Auditor Defendants, Plaintiffs sued numerous additional parties alleging that they provided substantial assistance to the scheme. The *Kinnie Ma* Plaintiffs and the *Barasch* Plaintiffs defeated 19 motions to dismiss, respectively, pursuant to the Court's Orders of August 25, 2021.

12.     The Barasch and Ma Actions were consolidated on June 1, 2022, and one month later, the Plaintiffs filed an amended consolidated complaint.

13.     Following Plaintiffs' surviving motions to dismiss, Plaintiffs' Counsel engaged in class and written merits discovery throughout spring and summer of 2023 with Auditor Defendants and others, receiving millions of pages of discovery.

14.     Plaintiffs' Counsel served expert reports and defended or conducted 17 depositions of plaintiffs and experts, relevant to class certification.

15.     This Action was stayed immediately prior to Plaintiffs' moving for class certification,   pending final resolution of the criminal proceedings against Defendants David Gentile and Jeffry Schneider, which concluded on August 1, 2024 with guilty verdicts for each of the defendants.  The sentencing hearings are scheduled to take place on March 6 and March 27, 2025.

### *DELUCA, ET AL. V. GPB HOLDINGS, LP, ET AL.*

16.     In *DeLuca, et al. v. GPB Holdings, LP, et al.*, No. 1:19-CV-10498-LAK-JW (S.D.N.Y.), Plaintiffs' Counsel partook in a robust investigation, including a pre-suit books and records investigation that started in May 2018. The case was subsequently filed as a putative class

Exhibit 3
Page 3 of 264

action in the Southern District of New York on November 12, 2019.

17.     Counsel for DeLuca Plaintiffs received over 5.5 million documents from GPB Defendants.  Upon review of these documents, the DeLuca Plaintiffs were concerned about the actions of the Auditor Defendants in their audits of the GPB Funds. The DeLuca Plaintiffs used the subpoena process to obtain auditor work papers and other materials, which allowed the DeLuca Plaintiffs to amend their complaint to add particularized allegations regarding accounting fraud and aiding and abetting accounting fraud against the Auditor Defendants.

18.     Following this extensive document production and complaint amendment, DeLuca Plaintiffs agreed to stay the action as to all parties pending the criminal proceeding against three GPB insiders.

19.     After the criminal proceedings faced ongoing delays, the DeLuca Plaintiffs moved to lift the stay as to the Auditor Defendants. The court granted the DeLuca Plaintiffs' motion, lifting the stay as to the Auditor Defendants and allowing the case to proceed with fact discovery and class certification. Ultimately, the Auditor Defendants produced nearly 80,000 documents to the DeLuca Plaintiffs.

20.     The DeLuca Plaintiffs were approximately one month shy of completing document discovery and commencing depositions when the parties agreed to stay the action and mediate the claims.

### <u>MEDIATION, NEGOTIATIONS, AND EXPERTS' INVOLVEMENT</u>

21.     Plaintiffs' Counsel took part in a two-day mediation on June 13 and 14, 2024, with the Auditor Defendants under the guidance of the Honorable Layn Phillips, resulting in a settlement in principle in the DeLuca and Ma Actions.

Exhibit 3
Page 4 of 264

22. Following the mediation, the Parties continued to engage in arm's-length settlement negotiations, which included drafts of settlement papers and exhibits, some of which are referenced herein.

23. The Parties executed the Stipulation and Agreement of Settlement on December 3, 2024, after months of extensive, arms' length negotiations.

24. Plaintiffs' Counsel engaged experts at multiple stages in the litigation process, including with class certification and damages issues prior to settlement and creating a plan of allocation post-settlement.

25. Considering the obstacles the Settlement Class faces in obtaining a judgment at trial, we believe the proposed Settlement to be fair, reasonable, adequate, and in the best interests of the Settlement Class. We also believe the Settlement was the product of serious, informed, non-collusive negotiations. Accordingly, we recommend the proposed Settlement to Settlement Class Members.

**EXHIBITS**

1. **Exhibit 1** is a true and correct copy of the Settlement Agreement and the exhibits thereto, including:

   a. **Exhibit A:** [Proposed] Proof of Claim and Release Form,

   b. **Exhibit B:** [Proposed] Final Settlement Approval and Bar Order,

   c. **Exhibit C:** [Proposed] Final Judgment and Order of Dismissal,

   d. **Exhibit D:** [Proposed] Detailed Notice of (I) Pendency of Class Actions and Proposed Settlement with Certain Defendants; (II) Final Approval Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses,

   e. **Exhibit E:** [Proposed] Notice of Dismissal,

f.  **Exhibit F:** [Proposed] Plan of Allocation,

g.  **Exhibit G:** [Proposed] Preliminarily Approval Order, and

h.  **Exhibit H:** [Proposed] Summary Notice.

2.      Plaintiffs' Counsel have extensive experience handling large-scale, financial fraud and class action litigation. A copy of Stoll Stoll Berne Lokting & Shlachter, P.C's current firm resume detailing the firm's experience in these areas is attached hereto as **Exhibit 2**. A copy of the Law Offices of Richard L. Stone, PLLC's current firm resume detailing the firm's experience in these areas is attached hereto as **Exhibit 3**. A copy of Kaplan Fox & Kilsheimer LLP's current firm resume detailing the firm's experience in these areas is attached hereto as **Exhibit 4**. A copy of Grant & Eisenhofer, P.A.'s current firm resume detailing the firm's experience in these areas is attached hereto as **Exhibit 5**. A copy of Dilworth Paxson LLP's current firm resume detailing the firm's experience in these areas is attached hereto as **Exhibit 6**.

We declare under penalty of perjury that the foregoing is true and correct.

Executed on December __, 2024.

/s/_____
Timothy S. DeJong

/s/_____
Peter S. Linden

/s/_____
Richard L. Stone

/s/_____
Daniel L. Berger

/s/_____
Catherine Pratsinakis

6

Exhibit 3
Page 6 of 264

# EXHIBIT 1

Exhibit 3
Page 7 of 264

KINNIE MA INDIVIDUAL RETIREMENT ACCOUNT, *et al.*,

      *Plaintiffs*,

    v.

ASCENDANT CAPITAL, LLC, *et al.*,

      *Defendants*.

---

BARBARA DELUCA, *et al*.,

      *Plaintiffs*,

    v.

GPB HOLDINGS, LP, *et al.*,

      *Defendants*.

Case No. 1:19-CV-1050-RP (W.D. Tex.)

Case No. 1:19-cv-10498-LAK-JW (S.D.N.Y)

**STIPULATION AND**
**<u>AGREEMENT OF SETTLEMENT</u>**

This Stipulation and Agreement of Settlement (the "Stipulation"), dated as of December 3, 2024, is made and entered into by and among: (a) (i) Plaintiffs in the consolidated action pending in the Western District of Texas captioned *Kinnie Ma Individual Retirement Account, et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP (W.D. Tex.) (the "*Kinnie Ma* Plaintiffs") and (ii) Plaintiffs in the action pending in the Southern District of New York captioned *DeLuca, et al. v. GPB Holdings, LP, et al.*, No. 1:19-CV-10498-LAK-JW (S.D.N.Y.) (the "*DeLuca* Plaintiffs"), in each case on behalf of themselves and the Settlement Class defined herein (collectively, "Plaintiffs"); and (b) Defendants CohnReznick LLP; Crowe LLP; Margolin, Winer & Evens LLP; RSM US LLP; and WithumSmith+Brown, PC (collectively, the "Settling Defendants"). The parties are hereinafter collectively referred to as the "Parties."

PAGE 1 – STIPULATION AND AGREEMENT OF SETTLEMENT

## RECITALS

(a)      On October 25, 2019, the putative class action captioned *Kinnie Ma Individual Retirement Account., et al. v. Ascendant Capital, LLC*, *et al.*, No. 1:19-CV-1050-RP was filed, as later amended, against the Settling Defendants and others, and later consolidated with *Barasch v. GPB Capital Holdings, LLC, et al.*, No. 1:19-cv-01079-RP, in the United States District Court for the Western District of Texas (collectively, the "*Kinnie Ma* Action");

(b)      On November 12, 2019, the putative class action captioned *DeLuca, et al. v. GPB Holdings, LP, et al.*, No. 1:19-cv-10498-LAK-JW was filed in the United States District Court for the Southern District of New York and later amended to include as defendants all of the Settling Defendants, except WithumSmith+Brown, PC (the "*DeLuca* Action" and, together with the *Kinnie Ma* Action, the "Actions");

(c)      On June 13 and 14, 2024, the Parties participated in a mediation conducted by Retired United States District Judge Layn Phillips, and through that mediation the Parties reached an agreement to resolve the claims in the Actions against the Settling Defendants;

(d)      The Parties wish to settle all claims that have been brought or could have been brought against the Settling Defendants in the Actions;

(e)      The Settlement Class Representatives[1] believe that their claims against the Settling Defendants have substantial merit but have agreed to settle the Actions with respect to the Settling Defendants to avoid further risk of litigation;

---

[1] Any capitalized terms used but not defined in these Recitals shall have the meanings assigned to them in Section I of this Stipulation.

PAGE 2 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 9 of 264          Exhibit 1
Page 2 of 126

(f)    The Settlement Class Representatives and Settlement Class Counsel believe that the Settlement Amount is fair, adequate, and in the best interests of the Settlement Class Members (which include the Settlement Class Representatives), and that it is reasonable to pursue Court approval of the Stipulation based upon the terms and procedures outlined herein;

(g)    The Settling Defendants deny that they have committed any wrongdoing or that they are liable to the Settlement Class Members but have agreed to settle the Actions with respect to the Settling Defendants to avoid further costs and the risk of litigation; and

(h)    There has been no admission or finding of facts or liability by or against any of the Parties, and nothing herein should be construed as such.

**NOW, THEREFORE,** in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is hereby agreed by and among the Parties that, subject to the approval of the Court in the *Kinnie Ma* Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, the claims in the Actions, as between each of the Settlement Class Representatives and the other Settlement Class Members who are not Settlement Class Opt-Outs, on the one hand, and the Settling Defendants, on the other hand, be forever resolved, settled, compromised, and dismissed with prejudice on the following terms and conditions:

## I.    DEFINITIONS

1.    Capitalized terms not defined elsewhere in this Stipulation shall have the following meanings:

(a)    "**Administration of the Settlement**" means providing the Notice to the Settlement Class Members; assisting with providing the CAFA Notice to appropriate State and Federal officials, as set forth in 28 U.S.C. § 1715(b); and allocating and distributing the Net Settlement Fund; and may also include such

PAGE 3 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 10 of 264          Exhibit 1
Page 3 of 126

activities as the determination, calculation, processing, or payment of claims to the Net Settlement Fund; the review and approval or rejection of Claim Forms; processing and implementing the Plan of Allocation; and the determination, payment, or withholding of Taxes or any loss incurred in connection therewith.

(b)     "**Authorized Claimant**" means a Settlement Class Member who (i) is not a Settlement Class Opt-Out; (ii) submitted a complete, timely, and valid Claim Form; and (iii) suffered a Net Loss.

(c)     "**CAFA Notice**" means the notices required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).

(d)     "**Claims Administrator**" means Epiq Class Action & Claims Solutions, Inc., designated by Settlement Class Counsel to administer the Settlement, subject to the approval of the Court, or such other administrator who is approved by the Court to perform Administration of the Settlement activities.

(e)     "**Claim Form**" means the Proof of Claim and Release Form substantially in the form attached hereto as Exhibit A, that a Settlement Class Member, who is not a Settlement Class Opt-Out, must complete and submit to qualify as an Authorized Claimant.

(f)     "**Class Period**" means January 1, 2013 through December 31, 2018, inclusive.

(g)     "**Court**" means the United States District Court for the Western District of Texas.

(h)     "**Defendants**" means Advisory Group Equity Services, Ltd; Aegis Capital Corp.; Aeon Capital Inc.; American Capital Partners, LLC; Arete Wealth Management, LLC; Arkadios Capital; Ascendant Alternative Strategies, LLC; Ascendant Capital, LLC; Ausdal Financial Partners, Inc.; Austin Lake Technologies, LLC;

PAGE 4 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 11 of 264         Exhibit 1
Page 4 of 126

Axiom Capital Management, Inc.; B. RileyFinancial, Inc.; B. RileyPrincipal Merger Corp. III; BCG Securities Inc.; Dotty J. Bollinger; Bradley Wealth Management LLC; CKGF Holding LLC; Cabot Lodge Securities LLC; Calton & Associates, Inc.; Capital Investment Group, Inc.; Cascade Financial Management, Inc.; Center Street Securities, Inc.; Rina Chernaya; Coastal Equities, Inc.; CohnReznick LLP; Colorado Financial Service Corporation; Concorde Investment Services, LLC; Crowe, LLP; Crown Capital Securities, LP; DFPG Investments, Inc.; DJ Partners LLC; David A. Noyes & Company; Dawson James Securities, Inc.; Deloitte Transactions and Business Analytics LLP; Dempsey Lord Smith, LLC; Detalus Securities, LLC; EisnerAmper LLP; Emerson Equity LLC; FSC Securities Corporation; Gerald Francese; Michael Frost; GPB Automotive Portfolio, LP; GPB Capital Holdings, LLC; GPB Cold Storage, LP; GPB Holdings II, LP; GPB Holdings III, LP; GPB Holdings Qualified, LP; GPB Holdings, LP; GPB Managed IT Fund; GPB NYC Development, LP; GPB Waste Management, LP a/k/a Armada Waste Management LP; Geneos Wealth Management, Inc.; David Gentile; Gentile Pismeny & Brengel LLP n/k/a Gentile Brengel & Lin, LLP; Great Point Capital LLC; HighTower Advisors, LLC; HighTower Securities, LLC; Highline Management, Inc.; IBN Financial Services, Inc.; Innovation Partners LLC; International Assets Advisory, LLC; Kalos Capital, Inc.; Robert Kessler; Minchung Kgil; Kingsbury Capital, Inc.; Landolt Securities, Inc.; Lewis Financial Group n/k/a DAI Securities, LLC; Lion Street Financial LLC; Lowell & Company, Inc.; Lucia Securities LLC; MR Ranger LLC; MSC-BD, LLC; Madison Avenue Securities, LLC; Margolin Winer &

PAGE 5 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3

Page 12 of 264          Exhibit 1

Page 5 of 126

Evens LLP; Mark D Martino; McAnna, LP; McDonald Partners LLC; McNally Financial Services Corporation; Moloney Securities Co., Inc.; Money Concepts Capital Corp.; Morrison, Brown, Argiz & Ferra, LLC; Evan Myrianthopoulos; National Holdings Corporation; National Securities Corporation; Scott Naugle; Newbridge Securities Corporation; Orchard Securities, LLC: Phoenix American Financial Services, Inc.; Purshe Kaplan Sterling Investments, Inc.; RSM US LLP f/k/a McGladrey LLP; Royal Alliance Associates, Inc.; SCF Securities, Inc.; SagePoint Financial, Inc.; Jeffry Schneider; Sentinus Securities LLC n/k/a Sentinus-Halo Securities, LLC; Stephen A. Kohn & Associates, Ltd.; Titan Securities; Triad Advisors, LLC; Uhlmann Price Securities, LLC; United Planners' Financial Services of America, LP; Vanderbilt Securities, LLC; Vestech Securities, Inc.; WestPark Capital Inc.; Western International Securities, Inc.; Whitehall-Parker Securities, Inc.; Withum Smith+Brown, PC; and Woodbury Financial Services, Inc.

(i)   "**Effective Date**" means the date upon which the Settlement in the Actions shall become effective and final, as set forth in Paragraph 34.

(j)   "**Escrow Account**" means the separate interest-bearing Qualified Settlement Fund ("QSF"), to be held by the Escrow Agent, which shall be held in an escrow account at a federally insured banking institution designated by Settlement Class Counsel, into which the Settlement Amount is to be deposited and invested for the benefit of Authorized Claimants.  The Escrow Account shall be administered consistent with the terms of this Settlement and shall be subject to the supervision of Settlement Class Counsel.

(k)   "**Escrow Agent**" means Huntington National Bank (a federally insured banking institution) or such other federally insured banking institution approved by the Court to serve as agent for the Escrow Account.

(l)   "**Fee and Expense Application**" means an application filed by Settlement Class Counsel for an award from the Gross Settlement Fund of (i) attorneys' fees, not to exceed one-third of the Settlement Amount, plus any interest, beginning thirty (30) days from entry of the Preliminary Approval Order, at the same rate that funds in the Escrow Account have earned during such period; (ii) reimbursement of out-of-pocket expenses incurred in prosecuting the Actions, plus any interest, beginning thirty (30) days from entry of the Preliminary Approval Order, at the same rate funds in the Escrow Account have earned during such period; and (iii) service awards to the Settlement Class Representatives on account of their contribution to the litigation and the results achieved in this Settlement.

(m)   "**Final**", with respect to a court order, means the latest of (i) the date after which the time for noticing any request for rehearing, request for reconsideration, or appeal has expired, without any such request or appeal having been filed; (ii) if a motion for rehearing or reconsideration has been filed, the date after which such motion has been denied or adjudicated with affirmance of the order, and the time for appeal has expired, without any appeal having been filed; and (iii) if an appeal has been filed, the date after which the order has been affirmed and the time for seeking rehearing or reconsideration on appeal or petitioning for writ of certiorari has expired, without any request or petition having been filed; (iv) if a motion for rehearing or reconsideration on appeal has been filed, the date after which the

PAGE 7 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3

Page 14 of 264        Exhibit 1

Page 7 of 126

motion has been denied or adjudicated with an affirmance of the order and the time for petitioning for writ of certiorari has expired, without any petition having been filed; and (v) if a petition for writ of certiorari has been filed, the date after which the writ has been denied or, if the writ is granted, the order has been affirmed.

(n)    "**Finality**" means the state of being Final.

(o)    "**Final Approval Hearing**" means a hearing held by the Court to determine whether to enter the Final Settlement Approval and Bar Order.

(p)    "**Final Approval Motion**" means a motion and accompanying memorandum of law, as well as any other papers in support thereof, to be filed by Settlement Class Counsel on behalf of the Settlement Class Representatives in the *Kinnie Ma* Action, responding to any objections to the Settlement, seeking entry of the Final Settlement Approval and Bar Order, and seeking entry of a Final Judgment that is a separate document from the Final Settlement Approval and Bar Order.

(q)    "**Final Settlement Approval and Bar Order**" means an order, entered by the Court, substantially in the form of Exhibit B hereto, that (i) finally approves the Settlement as fair, reasonable, and adequate, and contains findings of fact and conclusions of law, including consideration of the factors set forth in Federal Rule of Civil Procedure 23(e)(2)(A)–(D), to support approval of the Settlement and bar order; (ii) certifies the Settlement Class for purposes of settlement only under Federal Rule of Civil Procedure 23; (iii) orders the releases by the Releasing Parties of the Settling Defendants from the Released Claims; and (iv) releases, discharges, and enjoins any claims by any Person against any of the Settling

Defendants arising out of or related to the claims or allegations that have been or could have been asserted by Plaintiffs or any other Settlement Class Member in the Actions or claiming any liability to any Plaintiff or any other Settlement Class Member.

(r)     "**Final Judgment**" means the entry of a final judgment pursuant to Federal Rule of Civil Procedure 54(b) in the *Kinnie Ma* Action, substantially in the form of Exhibit C hereto, that dismisses all claims against the Settling Defendants with prejudice and without costs, and denies as moot any pending motions between the *Kinnie Ma* Plaintiffs and the Settling Defendants.

(s)     "**GPB Capital**" means GPB Capital Holdings, LLC, the general partner of each of the GPB Funds, and each of its predecessors, successors, subsidiaries, and affiliates.

(t)     "**GPB Funds**" means GPB Holdings, LP; GPB Holdings Qualified, LP; GPB Automotive Portfolio, LP; GPB Holdings II, LP; GPB Waste Management, LP (also known as Armada Waste Management LP); GPB Cold Storage, LP; GPB NYC Development, LP; GPB Holdings III, LP; and each of their predecessors, successors, subsidiaries, and affiliates.

(u)     "**Gross Settlement Fund**" means the Settlement Amount and all earnings and interest accrued with respect to the Settlement Amount (if any) while it is held in the Escrow Account.

(v)     "**Net Loss**" means the total principal amount that a Settlement Class Member invested in any GPB Funds during the Class Period, minus any prior amounts received by that Settlement Class Member on account of his or her investment(s)

PAGE 9 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 16 of 264        Exhibit 1
Page 9 of 126

(including any amounts previously received as redemptions, dividends, or from any other source as a result of any actual or threatened litigation or arbitration concerning the GPB Funds). Settlement Class Members who have received amounts (through redemptions, dividends, sales, or any other sources) greater than the total principal amount that the Settlement Class Member invested in any GPB Funds have not suffered a Net Loss and will not receive any payment from the Net Settlement Fund or otherwise in connection with this Settlement.

(w)   "**Net Settlement Fund**" means the balance of the Gross Settlement Fund available to be distributed to Authorized Claimants, after subtracting the amounts paid or owing in connection with the Settlement, as set forth in this Stipulation, including amounts for the payment of (1) any and all Taxes, as defined herein; (2) any and all costs of Administration of the Settlement, including all fees and costs paid or owing to the Settlement Administrator; (3) any and all costs of maintaining the Escrow Account, including all fees and costs paid or owing to the Escrow Agent; (4) any and all attorneys fees' and costs awarded by the Court to Plaintiffs' Counsel in the Actions; and (5) any service awards awarded by the Court to the Settlement Class Representatives.

(x)   "**Notice**" means the Detailed Notice of (I) Pendency of Class Actions and Proposed Settlement with Certain Defendants; (II) Final Approval Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses" substantially in the form of Exhibit D hereto, which is to be sent to the Settlement Class Members following entry by the Court of the Preliminary Approval Order.

(y)     "**Notice of Dismissal**" means a notice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) and substantially in the form of Exhibit E hereto, to be filed by the *DeLuca* Plaintiffs in the *DeLuca* Action, dismissing with prejudice and without costs all claims against CohnReznick LLP; Crowe LLP; Margolin, Winer & Evens LLP; and RSM US LLP.

(z)     "**Person**" means any natural person, entity, governmental authority, agency or quasi-governmental person or entity, worldwide and of any type, including, without limitation, any individual, partnership, corporation, limited liability company, estate, trust, committee, fiduciary, association, proprietorship, organization, or business, regardless of location, residence, or nationality.

(aa)    "**Plaintiffs' Counsel**" means Stoll Stoll Berne Lokting & Shlachter, P.C.; Kaplan Fox & Kilsheimer LLP; Law Offices of Richard L. Stone, PLLC; Grant & Eisenhofer P.A.; and Dilworth Paxson LLP.

(bb)    "**Plan of Allocation**" means the plan, as approved by the Court, substantially in the form of Exhibit F hereto, to distribute the Net Settlement Fund to each Authorized Claimant.

(cc)    "**Preliminary Approval Motion**" means a motion and accompanying memorandum of law, as well as any other papers in support thereof, to be filed by the Settlement Class Counsel on behalf of the Settlement Class Representatives in the *Kinnie Ma* Action, seeking preliminary approval of the Settlement; the entry of findings that the Court will likely be able to certify the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) for purposes of the Settlement only; appointment of Plaintiffs as Settlement Class Representatives

for purposes of Settlement only; appointment of Settlement Class Counsel as counsel for the Settlement Class for purposes of Settlement only; approval of the form and manner of distribution of the Notice to the Settlement Class Members; setting of a date and time for the Final Approval Hearing; setting of a method and deadline for objections to the Settlement; and setting of a method and deadline for Settlement Class Members to exclude themselves from the Settlement Class, in each case by and through entry of the Preliminary Approval Order.

(dd)    "**Preliminary Approval Order**" means the order, entered by the Court, substantially in the form of Exhibit G hereto, that (i) provides preliminary approval of the Settlement; (ii) makes findings pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) that the Court will likely be able to certify the Settlement Class for purposes of the Settlement only; (iii) appoints Plaintiffs as Settlement Class Representatives for purposes of Settlement only; (iv) appoints Settlement Class Counsel as counsel for the Settlement Class for purposes of Settlement only; (v) directs notice, pursuant to Federal Rule of Procedure 23(e), to the Settlement Class Members; (vi) approves the form and manner of distribution of the Notice; (vii) sets a date and time for the Final Approval Hearing; (viii) sets a method and deadline for objections to the Settlement; (ix) sets a method and deadline for Settlement Class Members to exclude themselves from the Settlement Class; and (x) makes preliminary findings of fact and conclusions of law to support the relief set forth therein.

(ee)    "**Released Claims**" means, to the fullest extent that the law permits their release, all past, present, and future claims against any and all of the Released Parties of

PAGE 12 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 19 of 264        Exhibit 1
Page 12 of 126

any nature whatsoever in any way relating, arising from, or based upon either of the Actions, the allegations made or that could have been made in either of the Actions, the GPB Funds or GPB Capital, any investment in the GPB Funds, or any work performed by any Settling Defendant for or relating to any of the GPB Funds or GPB Capital including, without limitation, all claims, suits, actions, allegations, damages (including, without limitation, compensatory, punitive, exemplary, rescissory, direct, consequential or special damages, restitution, and disgorgement), liabilities, causes of action, complaints, lawsuits, responsibilities, demands, rights, debts, penalties, costs, expenses, fees, injunctive relief, attorney's fees, expert or consulting fees, prejudgment interest, indemnities, duties, losses, and obligations of any kind, known or unknown, foreseen or unforeseen, whether apparent or concealed, asserted or unasserted, existing or contingent, direct or indirect, anticipated or unanticipated, asserted or that could have been asserted by, on behalf of, for the benefit of, or in the name of any Settlement Class Members who are not Settlement Class Opt-Outs, whether legal, contractual, rescissory, statutory, or equitable in nature, whether arising under federal, state, common, or foreign law, that now exist or have ever existed from the beginning of time until the date of this Stipulation.

(ff)  "**Released Parties**" means (i) each of the Settling Defendants; (ii) the predecessors, successors, assigns, direct or indirect parents, direct or indirect subsidiaries, and affiliates of each of the Settling Defendants (including, without limitation, current or former member firms or correspondent firms within the same network as a Settling Defendant, all entities that manage the network in

PAGE 13 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3

Page 20 of 264          Exhibit 1

Page 13 of 126

which any Settling Defendant is a member, and Baker Tilly US, LLP and Baker

Tilly Advisory Group, LP ); and (iii) each of the foregoing's current and former

partners, limited partners, general partners, officers, directors, employees, legal

and equitable owners, trustees, shareholders, members, managers, principals,

agents, attorneys, legal representatives, affiliated persons or entities, predecessors,

successors, assigns, direct or indirect parents, direct or indirect subsidiaries,

affiliates, beneficiaries, assigns, heirs, executors, administrators, lenders,

indemnitors, and insurers.

(gg)   "**Releasing Parties**" means (1) all Settlement Class Members (including the

Settlement Class Representatives) except for the Settlement Class Opt-Outs and

(2) each of such Settlement Class Members' agents, representatives, attorneys,

heirs, administrators, executors, beneficiaries, assigns, transferees, predecessors

and successors in interest, and any other Person claiming by, through, on behalf

of, or for the benefit of any of them.

(hh)   "**Settling Defendants' Released Claims**" means all claims and causes of action

of every nature and description, whether known or unknown, whether arising

under federal, state, common, or foreign law, that arise out of or relate in any way

to the institution or prosecution of the claims asserted in the Actions against the

Settling Defendants.

(ii)   "**Settlement**" means the settlement set forth in this Stipulation to be proposed for

approval by the Court.

(jj)   "**Settlement Amount**" means forty-six million United States dollars

($46,000,000).  The Settlement Amount will be non-recapture, meaning that it is

PAGE 14 – STIPULATION AND AGREEMENT OF SETTLEMENT   Exhibit 3

not a claims-made settlement and, provided there is no Termination Event as defined in Paragraph 38, there will be no reversion of the Settlement Amount to the Settling Defendants of any amounts not claimed or distributed pursuant to the Plan of Allocation.  For avoidance of doubt, nothing in this definition impacts the right of the Settling Defendants to the return of the Gross Settlement Fund in the event of a Termination Event pursuant to the provisions of Paragraph 38.

(kk)    "**Settlement Class**" means a class to be certified for purposes of this Settlement consisting of all Persons who, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of GPB Holdings, LP; GPB Holdings Qualified, LP; GPB Automotive Portfolio, LP; GPB Holdings II, LP; GPB Waste Management, LP (also known as Armada Waste Management LP); GPB Cold Storage, LP; GPB NYC Development, LP; GPB Holdings III, LP; and each of their predecessors, successors, subsidiaries, and affiliates (collectively, the "GPB Funds") during the period of January 1, 2013 through December 31, 2018 (the "Class Period") and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (except for certain individuals and entities that have been excluded from the Settlement Class as follows). The Settlement Class does not include: (a) Defendants in the Actions or their affiliates; (b) present or former executive directors or officers of GPB Capital Holdings, LLC, the GPB Funds, Ascendant Capital, LLC, Ascendant Alternative Strategies, LLC, or Axiom Capital Management, Inc.; (c) the legal representatives, heirs, successors-in-interest, or assigns of any Person within subsection (a) or (b) of this Paragraph; (d) members of the immediate family of any natural Person within

subsection (a) or (b) of this Paragraph; (e) any entity in which any Person within subsection (a) or (b) of this Paragraph has, or had during the Class Period, a controlling interest; and (f) any affiliate of GPB Capital Holdings, LLC. For purposes of this definition, "immediate family" means a natural Person's parent, sibling, spouse, or child.

(ll)    "**Settlement Class Counsel**" means Timothy S. DeJong of Stoll Stoll Berne Lokting & Shlachter, P.C.; Daniel L. Berger of Grant & Eisenhofer P.A.; Catherine Pratsinakis of Dilworth Paxson LLP, Peter S. Linden of Kaplan Fox & Kilsheimer LLP; and Richard L. Stone of the Law Offices of Richard L. Stone, PLLC;.

(mm)    "**Settlement Class Member**" means any Person who falls within the definition of the Settlement Class.

(nn)    "**Settlement Class Opt-Out**" means any Settlement Class Member who has completed the required procedures set forth in the Preliminary Approval Order and the Notice to exclude themselves from the Settlement Class.

(oo)    "**Settlement Class Representatives**" means each and all of Kinnie Ma IRA; Jeffery S. Gramm IRA; Stacy Greasor IRA; Victor Wade IRA; Kazue Bell; Dean Crooks; Corri Rene Eden; Catherine Kominos; Karen Loch; Robert A. Stone Living Trust; Shirley Stone Living Trust; Stanley S. and Millicent R. Barasch Living Trust; Loretta Dehay; Barbara DeLuca; Drew R. Naylor; Peggy Rollo; Peter Beddia; Michael Oles; Robert (Bob) Ricci; and James Staples, as Trustee of the 616 Moved Trust.

(pp)    "**Settling Defendants**" means CohnReznick LLP; Crowe LLP (f/k/a Crowe Horwath LLP); Margolin, Winer & Evens LLP; RSM US LLP; and WithumSmith+Brown, PC.

(qq)    **"Summary Notice"** means the notice, substantially in the form of Exhibit H hereto, which the Claims Administrator will publish in Investor's Business Daily and release over the PR Newswire following entry by the Court of the Preliminary Approval Order.

## II.    CERTIFICATION OF THE SETTLEMENT CLASS

2.    The Settling Defendants shall, subject to and following their review of the Preliminary Approval Motion, provide their consent to the Preliminary Approval Motion, including its requests for certification of the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) for purposes of the Settlement only, appointment of Plaintiffs as Settlement Class Representatives for purposes of Settlement only, and appointment of Settlement Class Counsel as counsel for the Settlement Class for purposes of Settlement only; and the Preliminary Approval Motion shall reflect their consent.

## III.    THE SETTLEMENT AMOUNT AND THE SETTLEMENT FUND

3.    The Parties enter into this Stipulation in order to avoid the expense and risk of further litigation. Neither this Stipulation nor the fact of the Settlement constitutes an admission or acknowledgment of liability or wrongdoing on the part of any of the Settling Defendants, each of which expressly denies any liability or wrongdoing.

4.    In connection with the execution of this Stipulation, Settlement Class Counsel shall, subject to and following review by the Settling Defendants, execute a confidential escrow agreement (the "**Escrow Agreement**") with the Escrow Agent to establish the Escrow Account using conventional escrow terms provided by the Escrow Agent. The Escrow Agreement shall

PAGE 17 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3

Page 24 of 264        Exhibit 1

Page 17 of 126

contain terms protecting the confidentiality of the amount of each Settling Defendant's share of the Settlement Amount.  Together with its delivery of the executed copy of this Stipulation, Settlement Class Counsel shall provide to each Settling Defendant (i) a copy of the executed Escrow Agreement and any other documents establishing and governing the Escrow Account; and (ii) a completed and executed wire instruction form, containing the Escrow Account information and wire transfer instructions for wiring the Settlement Amount to the Escrow Account.

5.      Each Settling Defendant shall pay or cause to be paid its share of the Settlement Amount into the Escrow Account no later than thirty (30) calendar days after the entry of the Preliminary Approval Order.  Each Settling Defendant's share of the Settlement Amount shall be and remain confidential.  Settlement Class Counsel shall make themselves available to counsel for the Settling Defendants to confirm telephonically the account information and wire transfer instructions for the Escrow Account in the wire instruction form.  The payment of the Settlement Amount is in full satisfaction of the Released Claims, including all claims for attorneys' fees, costs, and expenses.  The Settling Defendants' monetary liability is fixed under this Stipulation. In no event shall the total amount of monetary consideration paid by the Settling Defendants under this Stipulation exceed the Settlement Amount.  The Settling Defendants shall have no obligation to pay the Settlement Class Representatives, Settlement Class Counsel, any member of the Settlement Class, counsel for any Plaintiff in the Actions, or anyone else any other monetary consideration.

6.      Each Settling Defendant shall fund its confidential share of the Settlement Amount in the amount specified by a confidential agreement among the Settling Defendants (the "Confidential Allocation Agreement"), the terms of which shall not be disclosed to the

PAGE 18 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 25 of 264       Exhibit 1
Page 18 of 126

Settlement Class Representatives, Settlement Class Counsel, or to any other Person.  Each Settling Defendant is responsible only for its share of the Settlement Amount, and shall have no joint or several responsibility or liability for the payment of remaining portions of the Settlement Amount.  In no event shall the total amount of monetary consideration paid by each Settling Defendant under this Stipulation exceed such Settling Defendant's share of the Settlement Amount specified in the Confidential Allocation Agreement; however, for the avoidance of doubt, Settling Defendants failure to make a total combined payment of forty-six million United States dollars ($46,000,000) renders this Stipulation null and void.

7.    The Escrow Agreement shall require the Escrow Agent to maintain the Settlement Amount in the Escrow Account consistent with the terms of this Stipulation, under the exclusive supervision of Settlement Class Counsel and subject to the oversight of the Court.  The Escrow Agreement shall require the Escrow Agent to invest the Settlement Amount exclusively in: instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or money market funds invested solely in such investments.  The Escrow Agreement shall require that the Escrow Agent reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments.  In all events, the Settling Defendants shall have no responsibility or liability whatsoever with respect to any investment of any funds in the Escrow Account or any investment losses or other losses of funds in the Escrow Account.

8.    All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the exclusive jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Final Settlement Approval and Bar Order and/or further order(s) of the Court.

9.      After the Settlement Amount has been paid into the Escrow Account in accordance with Paragraph 5, the Parties agree to treat the Escrow Account as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, Settlement Class Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such election shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Settlement Class Counsel to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for such elections for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to occur.  In all events, the Settling Defendants shall have no responsibility or liability whatsoever with respect to any filings or elections made under this Paragraph.

10.     For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be Settlement Class Counsel or their successors, who shall timely and properly file, or cause to be filed, all informational and other tax returns necessary or advisable with respect to the interest earned on the funds deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described above) shall be consistent with this subparagraph, and Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B, and in all events shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned on the funds deposited in the Escrow Account shall be paid out of such funds as provided in Paragraphs 11, 12, 14, and 15.  In all events, the Settling Defendants shall have no responsibility or liability

whatsoever with respect to any filings or elections made under this Paragraph.

11.      Taxes on the income of the Settlement Amount and expenses and costs incurred in connection with the taxation of the Settlement Amount (including, without limitation, interest, penalties, and the fees and expenses of tax attorneys and accountants) (collectively "Taxes") shall be paid solely out of the Escrow Account.  In all events, the Settling Defendants shall have no responsibility or liability whatsoever for the Taxes or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority.

12.      Taxes shall be treated as, and considered to be, a cost of Administration of the Settlement and shall be timely paid, or caused to be paid, by Settlement Class Counsel out of the Escrow Account without prior order from the Court, and Settlement Class Counsel shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2($l$)(2)).  The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

13.      The Escrow Agreement shall forbid the Escrow Agent from disbursing any funds from the Escrow Account except as provided in this Stipulation (including Paragraph 15) or by an order of the Court, or by the written and signed authorization of Settlement Class Counsel and each of the Settling Defendants.  Once each Settling Defendant has deposited its confidential share of the Settlement Amount into the Escrow Account, in the event of any unauthorized disbursement or other loss of funds from the Escrow Account, whether resulting from mistake, inadvertence, wrongful conduct of any Person, or any other cause, such Settling Defendant shall have no further liability to pay its share of the Settlement Amount and shall remain entitled to the

PAGE 21 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 28 of 264      Exhibit 1
Page 21 of 126

release of all Released Claims, the entry of the bar order, and all other relief and consideration provided to the Settling Defendants under this Stipulation, notwithstanding such unauthorized disbursement or loss of funds from the Escrow Account.

14.     The Gross Settlement Fund shall be used only for the following purposes: (i) to compensate the Authorized Claimants, as approved by the Court; (ii) to pay any and all Taxes; (iii) to pay the reasonable costs of Administration of the Settlement, as approved by the Court; (iv) to pay attorneys' fees and reimburse expenses, as awarded by the Court; and (v) to pay service awards to Plaintiffs, as awarded by the Court.

15.     No money may be paid out of the Gross Settlement Fund before the Effective Date of the Settlement, except as follows: (i) Taxes may be paid out of the Gross Settlement Fund, as they come due and owing; (ii) up to three-hundred thousand United States dollars ($300,000) for the costs of Notice and other reasonable costs of Administration of the Settlement may be paid out of the Gross Settlement Fund, as they come due and owing; (iii) attorneys' fees and expenses awarded by the Court, as more fully set forth in and subject to the provisions in Section VII; and (iv) in the event of a Termination Event, the Gross Settlement Fund, less the deductions specified in Paragraph 38 herein, shall be returned to the Settling Defendants, in accordance with the provisions of Paragraph 38 herein.

## IV.   RELEASES AND COVENANT NOT TO SUE

16.     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Actions as against the Settling Defendants.

17.     Upon the Effective Date, and without any further action, each of the Releasing Parties fully, finally, and forever releases, covenants not to sue, and discharges each of the Released Parties from any and all Released Claims and shall forever be barred and enjoined from commencing, instituting, prosecuting, maintaining, or seeking monetary or other relief respecting

PAGE 22 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 29 of 264       Exhibit 1
Page 22 of 126

any and all of the Released Claims.  The Released Parties may plead this Stipulation as a complete defense to any Released Claims brought in contravention hereof.

18.    Upon the Effective Date, and without any further action, each Settling Defendant, on behalf of itself, and its heirs, executors, trustees, administrators, predecessors, successors, and assigns, for good and valuable consideration the receipt and adequacy of which is hereby acknowledged, shall fully, finally, and forever release, covenant not to sue, and discharge any and all Settling Defendants' Released Claims against each and every one of the Settlement Class Members (other than the Settlement Class Opt-Outs) and shall forever be barred and enjoined from commencing, instituting, prosecuting, maintaining or seeking monetary or other relief respecting any and all of the Settling Defendants' Released Claims against any and all of the Settlement Class Members (other than the Settlement Class Opt-Outs).

19.    For clarity, the releases set forth in Paragraphs 17 and 18 shall not apply to any claims that arise out of any breaches of the obligations of this Stipulation.  Moreover, nothing in this Stipulation shall be construed to constitute a release by any Plaintiff or Settlement Class Member of any claims they have against any specifically named Defendant in the Actions other than the Settling Defendants.

20.    The releases in Paragraphs 17 and 18 include an express, informed, knowing, and voluntary waiver and relinquishment of any and all Released Claims and Settling Defendants' Released Claims to the fullest extent permitted by law, including claims that are unknown and unsuspected.  The Settling Defendants and the Settlement Class Members (other than the Settlement Class Opt-Outs) acknowledge that they may have sustained damages, losses, costs, or expenses that are presently unknown and unsuspected and that such damages, losses, costs, or expenses as may have been sustained may give rise to additional damages, losses, costs, or

PAGE 23 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3

Page 30 of 264        Exhibit 1

Page 23 of 126

expenses in the future.  The Settling Defendants and the Settlement Class Members (other than the Settlement Class Opt-Outs) further acknowledge that they have negotiated this Stipulation taking into account presently unsuspected and unknown claims, counterclaims, causes of action, damages, losses, costs, and expenses, and they voluntarily and with full knowledge of their significance, expressly waive and relinquish any and all rights they may have under any state or federal statute, rule or common law principle, in law or equity, relating to limitations on general releases.  Specifically, each of the Settling Defendants and the Settlement Class Members (other than the Settlement Class Opt-Outs) expressly waives any rights it may have under California Civil Code § 1542 (or any other similar law in any jurisdiction) which provides that:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

21.     The Settlement Class Representatives and other Settlement Class Members represent and warrant that they are the owner of the Released Claims that they are releasing under this Stipulation and that they have not, in whole or in part, assigned, encumbered, sold, pledged as a security, or in any manner transferred or compromised any Released Claims.  The Settlement Class Representatives and other Settlement Class Members further represent and warrant that they do not know of, and have not filed or asserted, any claim or potential claim against any of the Settling Defendants that is not being released pursuant to the Stipulation.

22.     As a condition of this Stipulation and of the Settlement, the Final Settlement and Bar Order shall contain a bar order, substantially in the form of the bar order set forth in Exhibit B hereto, that bars all past, present, and future claims against any of the Released Parties by any Person of any nature whatsoever in any way arising out of or related to the claims or allegations

PAGE 24 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 31 of 264          Exhibit 1
Page 24 of 126

that have been or could have been asserted by Plaintiffs or any Settlement Class Member in either of the Actions or claiming any liability to any Plaintiff or any Settlement Class Member, including, without limitation, all claims, suits, actions, allegations, damages (including, without limitation, compensatory, punitive, exemplary, rescissory, direct, consequential or special damages, restitution, and disgorgement), liabilities, causes of action, complaints, lawsuits, responsibilities, demands, rights, debts, penalties, costs, expenses, fees, injunctive relief, attorney's fees, expert or consulting fees, prejudgment interest, indemnities, duties, losses, and obligations of any kind, known or unknown, foreseen or unforeseen, whether or apparent or concealed, asserted or unasserted, existing or contingent, direct or indirect, anticipated or unanticipated, asserted or that could have been asserted by, on behalf of, for the benefit of, or in the name of any Settlement Class Member, whether legal, contractual, rescissory, statutory, or equitable in nature, whether arising under federal, state, common, or foreign law, that now exist or have ever existed from the beginning of time until the date of this Stipulation.

23.     As a condition of the Stipulation and this Settlement, the Final Approval and Bar Order shall also provide that any final verdict or judgment on any claims under Texas law obtained by or on behalf of any Settlement Class Member, excluding Settlement Class Opt-Outs, against any Person subject to the bar order described in Paragraph 22 shall be reduced by the Settlement Amount or the portion thereof attributable to such Settlement Class Member (that is, *pro tanto* or dollar-for-dollar).

## V.     ADMINISTRATION OF THE SETTLEMENT

24.     The Claims Administrator shall provide the Notice to the Settlement Class Members in accordance with the terms of the Preliminary Approval Order and be responsible for Administration of the Settlement, under Settlement Class Counsel's supervision and subject to the exclusive jurisdiction of the Court.

PAGE 25 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 32 of 264        Exhibit 1
Page 25 of 126

25.     Upon request, the Claims Administrator shall provide information to the Settling Defendants' counsel to assist in their preparation of the CAFA Notice but shall otherwise keep all Settlement Class Member information confidential and secure.

26.     Other than with respect to the CAFA Notice, the Settling Defendants shall have no role in, or responsibility for, the Administration of the Settlement.  In all events, the Settling Defendants shall have no responsibility or liability whatsoever to any Person, including, but not limited to, Plaintiffs, the Settlement Class Representatives, Settlement Class Counsel, or Settlement Class Members, with respect to the Administration of the Settlement.

27.     Except as provided in the Stipulation, all reasonable costs of Administration of the Settlement, including the fees and expenses of the Claims Administrator, shall be paid from the Gross Settlement Fund.  In the event of a Termination Event, prior to the return to Settling Defendants of the Gross Settlement Fund from the Escrow Account, Settlement Class Counsel shall first be reimbursed from the Gross Settlement Fund for the actual costs of Administration of Settlement incurred as of the date of termination, in an amount up to three-hundred thousand United States dollars ($300,000).

28.     Except as provided in Paragraph 27, the Settling Defendants will not have any responsibility for, involvement in, or liability for the payment of any monies from the Gross Settlement Fund in connection with the Administration of the Settlement.

## VI.     COURT APPROVAL OF SETTLEMENT

29.     This Stipulation and the Settlement, including payment of the Settlement Amount, are expressly contingent on the Court's entry of the Final Settlement Approval and Bar Order, substantially in the form of Exhibit B and containing the releases and bar order described in this Stipulation, and such order becoming Final; the Court's entry of the Final Judgment, substantially in the form of Exhibit C and dismissing all claims against the Settling Defendants

PAGE 26 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3

Page 33 of 264          Exhibit 1

Page 26 of 126

with prejudice, and such judgment becoming Final; the entry in the *DeLuca* Action of the Notice of Dismissal, substantially in the form of Exhibit E; and the Effective Date coming to pass.

**A.     Stay and Dismissal of the *DeLuca* Action**

30.     The Court in the *DeLuca* Action entered an order on June 24, 2024 providing that the *DeLuca* Action is stayed pending further notice of the Court.  Upon entry of the Preliminary Approval Order, the *DeLuca* Plaintiffs shall request that the *DeLuca* Court continue the stay of the *DeLuca* Action as against the Settling Defendants who are party to the *DeLuca* Action through and until the filing of the Notice of Dismissal.

31.     Within three (3) business days of the Final Judgment becoming Final, the *DeLuca* Plaintiffs shall seek to dismiss the *DeLuca* Action in its entirety and will file the Notice of Dismissal.

**B.     Preliminary Approval of the Settlement**

32.     Within twenty-one (21) calendar days following execution of this Stipulation, Settlement Class Counsel shall file the Preliminary Approval Motion with the Court.

**C.     Final Approval of Settlement, Entry of Bar Order, and Entry of Final Judgment**

33.     At the time provided for in the Preliminary Approval Order, Settlement Class Counsel shall file the Final Approval Motion with the Court.  Provided that the Settling Defendants have not exercised their rights to withdraw or terminate as set forth in Paragraphs 35 and 37 herein, the Settling Defendants shall provide their consent to the Final Approval Motion and the motion shall reflect their consent.

**D.     Effective Date of Settlement, Waiver, and Rights to Termination**

34.     The Effective Date of Settlement shall be the date when all the following have occurred:

PAGE 27 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3

Page 34 of 264          Exhibit 1

Page 27 of 126

(a)   the Court has entered the Preliminary Approval Order in the Action, substantially in the form of Exhibit G hereto;

(b)   the entire Settlement Amount has been deposited into the Escrow Account;

(c)   the Court has entered the Final Settlement Approval and Bar Order in the Action, substantially in the form of Exhibit B hereto;

(d)   the Court has entered the Final Judgment, as a separate document from the Final Settlement Approval and Bar Order and substantially in the form of Exhibit C hereto;

(e)   the Final Settlement Approval and Bar Order has become Final;

(f)   the Final Judgment has become Final; and

(g)   the *DeLuca* Plaintiffs have filed the Notice of Dismissal in the *DeLuca* Action.

35.   Any Party shall have the right to terminate the Settlement and the Stipulation by providing written notice of its election to do so to all other Parties within thirty (30) calendar days of (a) the Court's decision not to enter the Preliminary Approval Order; (b) the Court's entry of a Preliminary Approval Order that differs in any material respect from the form of Exhibit G hereto; (c) the Court's decision not to enter the Final Settlement Approval and Bar Order or the Final Judgment; (d) the Court's entry of a Final Settlement Approval and Bar Order that differs in any material respect from the form of Exhibit B hereto, including, without limitation, because it alters the terms of the release or the bar order set forth in Exhibit B; (e) the Court's entry of a Final Judgment that differs in any material respect from the form of Exhibit C hereto; (f) the modification, vacatur, or reversal of the Final Settlement Approval and Bar Order or Final Judgment in any material respect by the United States Court of Appeals or the United States Supreme Court; or (g) the failure of any of the events described in subparagraphs (a)–(g)

of Paragraph 34.

36.     The Parties acknowledge that Settlement Class Members have the right and ability to exclude themselves from the Settlement Class prior to the Final Approval Hearing, pursuant to the procedures set forth in the Preliminary Approval Order and the Notice. The Claims Administrator shall provide copies of any request for exclusion to Settlement Class Counsel and counsel for each of Settling Defendants via electronic mail as such requests are received (and no later than two (2) business days from receipt).  No later than ten (10) calendar days after the postmark  deadline for requests for exclusion, Settlement Class Counsel shall provide counsel for each of Settling Defendants via electronic mail a complete and final list of each Person that has submitted a request for exclusion, along with the number of units that each such Person purchased in any of the GPB Funds.

37.     The Settling Defendants collectively shall have the right and option to withdraw from the Settlement in the event that valid exclusions from the Settlement Class exceed a specified threshold.  The specified threshold and the withdraw option are contained in the Confidential Supplemental Agreement between the Parties, which shall not be filed with the Court unless the Court so orders, and which shall not be disclosed to Settlement Class Members or any Person other than the Settlement Class Representatives.  Notwithstanding the foregoing, the contents of the Confidential Supplemental Agreement may be disclosed to the Court if so requested by the Court or if a dispute arises among the Parties concerning the Confidential Supplemental Agreement's interpretation or application. The Parties will keep the terms of the Confidential Supplemental Agreement confidential, subject to any exceptions set out therein and unless compelled to disclose them by the Court.  In the event valid exclusions from the Settlement Class exceed the threshold specified in the Confidential Supplemental Agreement, not

later than ten (10) calendar days after receipt of the complete and final list of each Person that has submitted a request for exclusion, along with the amount(s) that each such Person invested in any of the GPB Funds, the Settling Defendants shall notify Settlement Class Counsel whether the Settling Defendants elect to withdraw from the Settlement.  For the avoidance of any doubt, in order to withdraw from the Settlement in the event that valid exclusions from the Settlement Class exceed a specified threshold, Settling Defendants must do so collectively and in writing signed by each Settling Defendant and their counsel.

38.     A "Termination Event" has occurred if (i) the Effective Date does not occur; (ii) any Party terminates the Stipulation or Settlement pursuant to Paragraph 35; (iii) the Settling Defendants withdraw from the Settlement pursuant to Paragraph 37; (iv) the Court terminates the Settlement or modifies it in any material respect; (v) the Settlement fails to become effective for any other reason.  In the event of a Termination Event:

(a)     the Parties shall be deemed to have reverted to their respective status in the Actions as of the date and time immediately prior to the execution of this Stipulation and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Stipulation and any related orders had not been entered;

(b)     within seven (7) business days of the Termination Event, Plaintiffs' Counsel in the Action shall return to the Escrow Account all attorneys' fees and expenses distributed from the Gross Settlement Fund;

(c)     within ten (10) business days of the Termination Event, Settlement Class Counsel shall direct the Escrow Agent to return the Gross Settlement Fund (less the actual costs of Administration of Settlement incurred as of the date of termination, in an amount up to three-hundred thousand United States dollars ($300,000), as

provided for in Paragraphs 15 and 27) to the Settling Defendants, including all amounts returned to the Escrow Account by Plaintiffs' Counsel pursuant to subsection (b). In connection with such return of the Gross Settlement Fund, within seven (7) business days of the Termination Event, the Settling Defendants shall notify the Escrow Agent in writing of the percentage share of the distribution of the Gross Settlement Fund to which each Settling Defendant is entitled, and the Escrow Agent shall distribute the Gross Settlement Fund to each Settling Defendant in accordance with such percentages. The Escrow Agent shall maintain the confidentiality of the percentage shares and, except (a) as required by applicable laws or regulations or (b) for the purposes of making Escrow Account statements and other account information available to Class Counsel (as that term is defined in the Escrow Agreement) in the ordinary course of business, shall not disclose this information to any Person, including to Settlement Class Counsel, the Settlement Class Representatives, or any Settlement Class Member.

## VII.    ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

39.    Settlement Class Counsel, on behalf of all Plaintiffs' Counsel in the Actions, will file with the Court the Fee and Expense Application. All attorneys' fees, expenses, and service awards shall be paid exclusively from the Gross Settlement Fund. The Settling Defendants shall take no position with respect to the Fee and Expense Application, other than to advocate that the Fee and Expense Application comply with the procedures and terms set forth in this Stipulation.

40.    The Settlement is not contingent on the Court's award of any attorneys' fees, expenses, or service awards. The Fee and Expense Application shall be considered separately from the Settlement and any decision by the Court concerning attorneys' fees, or expenses, or service awards shall not affect the validity or Finality of the Settlement.

41.    Any attorneys' fees awarded and reimbursement of expenses awarded by the Court shall be paid to Settlement Class Counsel within three (3) business days of entry of the Final Judgment, notwithstanding the pendency of any appeal, but subject to the Settling Defendants' right of return set forth in Paragraph 38.  Settlement Class Counsel shall be responsible for allocating the attorneys' fees and expenses awarded by the Court among all Plaintiffs' Counsel in the Actions, and the Settling Defendants shall have no responsibility or liability whatsoever to any Person, including, but not limited to, Settlement Class Counsel or Plaintiffs' Counsel, with respect to this allocation or the distribution of the award from the Escrow Account.  Any service awards awarded by the Court shall be paid to the Settlement Class Representatives within three (3) business days of the Effective Date.  Settlement Class Counsel shall be responsible for directing the Escrow Agent with respect to distribution of such awards to the Settlement Class Representatives, and the Settling Defendants shall have no responsibility or liability whatsoever to any Person, including, but not limited to, the Settlement Representatives, with respect to this allocation or the distribution of the service awards from the Escrow Account.

## VIII.    COOPERATION IN IMPLEMENTATION OF STIPULATION

42.    The Parties agree that implementation of this Stipulation will require the execution of additional, mutually agreed upon documents, including documents that will need to be filed and/or entered in the Actions.  Moreover, as reflected herein, the Stipulation itself contains contingencies, including court approvals, that must be met before the terms of the Settlement become effective.  The Parties agree to work together and use reasonable efforts to attempt to execute the documents necessary to implement this Stipulation and satisfy the contingencies contained in this Stipulation within a reasonable time frame.

43.    Counsel for all Parties agree to recommend approval of the Stipulation by the Court and to undertake their best efforts and cooperate fully with one another in seeking

PAGE 32 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3

Page 39 of 264          Exhibit 1

Page 32 of 126

approval of the Settlement, entry of the Preliminary Approval Order, entry of the Final Settlement Approval and Bar Order, and entry of the Final Judgment, and filing of the Notice of Dismissal; and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain entry of the Preliminary Approval Order, the Final Settlement Approval and Bar Order, and the Final Judgment, and to file the Notice of Dismissal. All Parties agree to take all reasonable actions necessary to effectuate the performance of, and uphold the validity and enforceability of, this Stipulation, subject to their rights of termination under Paragraph 35 and the Settling Defendants' right of withdrawal under Paragraph 37. Each of the Parties also agrees to cooperate with one another in responding to objections or oppositions to this Settlement or regarding said motions, with each Party bearing its own costs and attorneys' fees.

44.    Each Party shall bear its own costs and attorneys' fees in connection with implementing this Stipulation, including in connection with obtaining entry of the Preliminary Approval Order, the Final Settlement Approval and Bar Order, and the Final Judgment, and with filing the Notice of Dismissal. For avoidance of doubt, Settlement Class Counsel shall be responsible for filing the Preliminary Approval Motion, the Final Approval Motion, and the Notice of Dismissal.

45.    To the extent permitted by the Court, Settlement Class Counsel agrees to take reasonable steps to prevent the Settling Defendants from having to incur incremental litigation expenses.

## IX.    MISCELLANEOUS PROVISIONS

46.    <u>Recitals</u>. The Recitals set forth are incorporated herein by reference.

47.    <u>Headings</u>. All headings in this Stipulation are included solely for convenient reference, are not intended to be full and accurate descriptions of the contents of this Stipulation,

PAGE 33 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3

Page 40 of 264        Exhibit 1

Page 33 of 126

and shall not affect the meaning or interpretation of this Stipulation.

48.    Confidentiality.  Other than disclosures required by law and as necessary for obtaining Court approval of the Settlement and entry of the Preliminary Approval Order, Final Settlement Approval and Bar Order, and Final Judgment, and making other filings in the Actions necessary to effectuate the Settlement, neither the Parties nor their counsel shall make, or direct or encourage the making by any other Person, any public comment regarding the claims against the Settling Defendants or the Settlement, other than to indicate that the Parties have reached a mutually acceptable resolution of the Actions with respect to Settling Defendants by way of a mediated settlement.

49.    Third-Party Beneficiaries.  Each of the Released Parties who is not a Party shall be a third-party beneficiary of this Stipulation.  No other Person shall be a third-party beneficiary to this Stipulation.

50.    No Oral Modification.  This Stipulation may not be amended, modified, or revoked except by means of a supplemental writing that is signed by each Party.

51.     No Waiver.  Nothing in this Stipulation or in the negotiation or proceedings related hereto is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege, joint-defense privilege, or work product immunity.  Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by such other Party.  No waiver, express or implied, by any Party of any breach or default in the performance by the other Party of its obligations under this Stipulation shall be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

52.     Binding on Successors.  This Stipulation is binding on and shall inure to the benefit of the Parties and their respective successors and legal representatives, including executors, administrators, and heirs.

53.     Parties to Bear Own Fees and Costs.  Each Party shall bear its own costs for the negotiation of this Stipulation and the legal work required by this Stipulation.

54.     Governing Law and Venue.  This Stipulation has been executed under and shall be construed in accordance with the laws of the State of Texas and federal statutory and common law regarding class actions.  If there is any litigation or other proceeding to enforce or interpret any provision of this Stipulation, jurisdiction and venue shall be exclusively in the United States District Court for the Western District of Texas.  These choice of law and venue provisions apply only to the Stipulation and the Settlement.  Nothing in this Paragraph shall affect the law applicable to the Actions or any other action or any choice of law analysis in the Actions or any

other action.  Further, no Person shall use this Paragraph in any way to draw any inferences or otherwise advocate regarding choice of law or venue in the Actions or any other action.

55.    Construction.  The rule of construction that an agreement is to be construed against the drafting Party is not to be applied in interpreting this Stipulation.  The Parties acknowledge that they have each read this Stipulation, that they understand its meaning and intent, and that this Stipulation has been executed voluntarily.

56.    Entire Agreement; Integration.  This Stipulation, the Confidential Allocation Agreement, and the Confidential Supplemental Agreement Regarding Requests for Exclusion constitute the full and complete expression of the Parties' agreement with regard to the Settlement.  This Stipulation and these agreements supersede any prior agreements, promises, negotiations, representations, inducements, settlements, compromises, or understandings, written or oral, among the Parties concerning resolution of the Actions.

57.    Counterparts.  This Stipulation may be executed in one or more counterparts, each of which is to be deemed an original.  All counterparts may be consolidated into one agreement, binding on all the Parties.

58.    Rule 11.  The Parties intend this Stipulation and Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs or the other Settlement Class Members against the Settling Defendants with respect to the Released Claims. No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of the Actions, and any arguments in support of, assertions, or requests for sanctions are hereby withdrawn.  The Parties agree that the Settlement Amount and the other terms of the Stipulation were negotiated at arm's length and in good faith by the Parties, including through a mediation process supervised and

conducted by Retired United States District Judge Layn Phillips, and that the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

59.     Notices.  All notices required by this Stipulation shall be in writing and delivered by e-mail to each of the counsel for Plaintiffs and the Settling Defendants who are registered to receive ECF e-mail notices in either of the Actions, at the e-mails listed on the ECF docket in the Actions.

60.     Representation Regarding Authority to Execute Stipulation.  This Stipulation is being executed by counsel of record for the Parties in the Actions, each of whom represents and warrants that he or she has the authority from his or her clients to enter into this Stipulation, which has full force and effect as a binding obligation of such clients.

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**

By:     _____
        Timothy S. DeJong
        209 SW Oak Street, Suite 500
        Portland, OR 97204
        Telephone: (503) 227-1600

**KAPLAN FOX & KILSHEIMER LLP**

By:     _____
        Peter S. Linden
        800 Third Ave., 38th Floor
        New York, NY 10022
        Telephone: (212) 687-1980

PAGE 37 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3

Page 44 of 264          Exhibit 1
                        Page 37 of 126

conducted by Retired United States District Judge Layn Phillips, and that the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

59.     Notices.  All notices required by this Stipulation shall be in writing and delivered by e-mail to each of the counsel for Plaintiffs and the Settling Defendants who are registered to receive ECF e-mail notices in either of the Actions, at the e-mails listed on the ECF docket in the Actions.

60.     Representation Regarding Authority to Execute Stipulation.  This Stipulation is being executed by counsel of record for the Parties in the Actions, each of whom represents and warrants that he or she has the authority from his or her clients to enter into this Stipulation, which has full force and effect as a binding obligation of such clients.

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**

By:     _____
        Timothy S. DeJong
        209 SW Oak Street, Suite 500
        Portland, OR 97204
        Telephone: (503) 227-1600

**KAPLAN FOX & KILSHEIMER LLP**

By:     _____
        Peter S. Linden
        800 Third Ave., 38th Floor
        New York, NY 10022
        Telephone: (212) 687-1980

PAGE 37 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 45 of 264      Exhibit 1
                    Page 38 of 126

**LAW OFFICES OF RICHARD L. STONE, PLLC**

By: _____
Richard L. Stone
11 East 44th Street, Suite 1900
New York, NY 10017
Telephone: (561) 358-4800

**GRANT & EISENHOFER P.A.**

By: _____
Daniel L. Berger
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500

-    and    -

**DILWORTH PAXSON LLP**

By: _____
Catherine Pratsinakis
Dilworth Paxson LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103-7391
Telephone: (215) 575-7000

*Proposed Counsel for the Putative Settlement Class and Counsel for Plaintiffs*

**Defendant CohnReznick LLP**

By: _____
James Bernard
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000

**Defendant Crowe LLP**

By: _____
Kevin M. McDonough
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

PAGE 38 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 46 of 264        Exhibit 1
Page 39 of 126

**LAW OFFICES OF RICHARD L. STONE, PLLC**

By:
_____
Richard L. Stone
11 East 44th Street, Suite 1900
New York, NY 10017
Telephone: (561) 358-4800

**GRANT & EISENHOFER P.A.**

By:
_____
Daniel L. Berger
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500

-   and   -

**DILWORTH PAXSON LLP**

By:
_____
Catherine Pratsinakis
Dilworth Paxson LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103-7391
Telephone: (215) 575-7000

*Proposed Counsel for the Putative Settlement Class and Counsel for Plaintiffs*

**Defendant CohnReznick LLP**

By:
_____
James Bernard
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000

**Defendant Crowe LLP**

By:
_____
Kevin M. McDonough
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

PAGE 38 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 47 of 264          Exhibit 1
                        Page 40 of 126

**LAW OFFICES OF RICHARD L. STONE, PLLC**


By: _____
       Richard L. Stone
       11 East 44th Street, Suite 1900
       New York, NY 10017
       Telephone: (561) 358-4800

**GRANT & EISENHOFER P.A.**


By: _____
       Daniel L. Berger
       485 Lexington Avenue
       New York, NY 10017
       Telephone: (646) 722-8500

     -   and   -

**DILWORTH PAXSON LLP**


By: _____
       Catherine Pratsinakis
       Dilworth Paxson LLP
       1650 Market Street, Suite 1200
       Philadelphia, PA 19103-7391
       Telephone: (215) 575-7000


*Proposed Counsel for the Putative Settlement Class and Counsel for Plaintiffs*


**Defendant CohnReznick LLP**


By: _____
       James Bernard
       HOGAN LOVELLS US LLP
       390 Madison Avenue
       New York, NY 10017
       Telephone: (212) 918-3000


**Defendant Crowe LLP**


By: _____
       Kevin M. McDonough
       LATHAM & WATKINS LLP
       1271 Avenue of the Americas
       New York, NY 10020
       Telephone: (212) 906-1200

**LAW OFFICES OF RICHARD L. STONE, PLLC**

By: _____
Richard L. Stone
11 East 44th Street, Suite 1900
New York, NY 10017
Telephone: (561) 358-4800

**GRANT & EISENHOFER P.A.**

By: _____
Daniel L. Berger
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500

\-    and    -

**DILWORTH PAXSON LLP**

By: _____
Catherine Pratsinakis
Dilworth Paxson LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103-7391
Telephone: (215) 575-7000

*Proposed Counsel for the Putative Settlement Class and Counsel for Plaintiffs*

**Defendant CohnReznick LLP**

By: _____
James Bernard
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000

**Defendant Crowe LLP**

By: _____
Kevin M. McDonough
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

PAGE 38 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 49 of 264          Exhibit 1
Page 42 of 126

**LAW OFFICES OF RICHARD L. STONE, PLLC**

By:  _____
     Richard L. Stone
     11 East 44th Street, Suite 1900
     New York, NY 10017
     Telephone: (561) 358-4800

**GRANT & EISENHOFER P.A.**

By:  _____
     Daniel L. Berger
     485 Lexington Avenue
     New York, NY 10017
     Telephone: (646) 722-8500

     -   and   -

**DILWORTH PAXSON LLP**

By:  _____
     Catherine Pratsinakis
     Dilworth Paxson LLP
     1650 Market Street, Suite 1200
     Philadelphia, PA 19103-7391
     Telephone: (215) 575-7000

*Proposed Counsel for the Putative Settlement Class and Counsel for Plaintiffs*

**Defendant CohnReznick LLP**

By:  _____
     James Bernard
     HOGAN LOVELLS US LLP
     390 Madison Avenue
     New York, NY 10017
     Telephone: (212) 918-3000

**Defendant Crowe LLP**

By:  _____
     Kevin M. McDonough
     LATHAM & WATKINS LLP
     1271 Avenue of the Americas
     New York, NY 10020
     Telephone: (212) 906-1200

PAGE 38 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 50 of 264        Exhibit 1
                       Page 43 of 126

**Defendant Margolin, Winer & Evens LLP**

By: ___*Daniel E. Gorman*___

Daniel Gorman
TROUTMAN PEPPER HAMILTON SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000

**Defendant RSM US LLP**

By: ___Katherine M. Turner___

Katherine M. Turner
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000

**Defendant WithumSmith+Brown, PC**

By: _____

Peter Larkin
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
150 E 42nd Street
New York, NY 10017
Telephone: (212) 490-3000

PAGE 39 – STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit 3
Page 51 of 264          Exhibit 1
Page 44 of 126

**Defendant Margolin, Winer & Evens LLP**


By:     _____
        Daniel Gorman
        TROUTMAN PEPPER HAMILTON SANDERS LLP
        875 Third Avenue
        New York, NY 10022
        Telephone: (212) 704-6000


**Defendant RSM US LLP**


By:     _____
        Katherine M. Turner
        WILLIAMS & CONNOLLY LLP
        680 Maine Avenue SW
        Washington, DC 20024
        Telephone: (202) 434-5000

**Defendant WithumSmith+Brown, PC**


By:     _____
        Peter Larkin
        WILSON, ELSER, MOSKOWITZ,
        EDELMAN & DICKER, LLP
        150 E 42nd Street
        New York, NY 10017
        Telephone: (212) 490-3000


PAGE 39 – STIPULATION AND AGREEMENT OF SETTLEMENT     Exhibit 3

# EXHIBIT A

Exhibit 3
Page 53 of 264        Exhibit 1
Page 46 of 126

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KINNIE MA INDIVIDUAL RETIREMENT ACCOUNT, *et al.*, v. ASCENDANT CAPITAL, LLC, *et al.* | Case No. 1:19-CV-1050-RP |
| BARBARA DELUCA, *et al.* v. GPB HOLDINGS, LP, *et al.* | Case No. 1:19-cv-10498-LAK-JW |

**PROOF OF CLAIM AND RELEASE FORM**

## I. GENERAL INSTRUCTIONS

1.      To be eligible to recover as a member of the Settlement Class based on your claims in the above-referenced Actions, you must complete and sign this Proof of Claim and Release form ("Claim Form"). If you fail to submit a timely Claim Form, your claim may be rejected and you may receive no recovery from the Net Settlement Fund created in connection with the proposed Settlement. Submission of this Claim Form, however, does not assure you will share in the proceeds of the Settlement.

2.      **To be eligible to receive a share of the Net Settlement Fund, You MUST submit this claim form online at www.GPBSecuritiesSettlement.com no later than _____, 2025 or, if mailed, postmarked no later than _____, 2025 and sent to: GPB Securities Settlement, P.O. Box 2916, Portland, OR 97208-2916.**

3.      Please completely read and understand the *Detailed Notice of (I) Pendency of Class Actions and Proposed Settlement with Certain Defendants; (II) Final Approval Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses* (the "Notice") accompanying this Claim Form. The Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, the Plan of Allocation, and the way the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court.[1] By signing and submitting this Claim Form, you are certifying that you have read and understand the Notice, including the terms of the releases described therein and herein.

4.      This Claim Form is directed to all Persons who purchased or otherwise acquired limited partnership units in any GPB Funds between January 1, 2013 through December 31, 2018, inclusive, as well as any Persons who are transferees of such limited partnership units (the "Settlement Class"). The "GPB Funds" are: (i) GPB Holdings, LP; (ii) GPB Holdings Qualified, LP; (iii) GPB Automotive Portfolio, LP; (iv) GPB Holdings II, LP; (v) GPB Waste Management, LP (also known as Armada Waste Management LP); (vi) GPB Cold Storage, LP; (vii) GPB NYC Development, LP; (viii) GPB Holdings III, LP; and each of their predecessors, successors, subsidiaries, and affiliates.

5.      If you are a member of the Settlement Class and you do not wish to participate in the Settlement, you must timely request exclusion following the procedures in the Notice or you will be bound by the terms of all judgments and orders entered in the Actions as against Settling Defendants, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A CLAIM FORM OR RECEIVE A PAYMENT. You will also forfeit any right to future class recovery (if any) against any non-settling Defendants.

6.      Submission of this Claim Form does not guarantee that you will be eligible to receive a payment from the Settlement. The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation as the Court approves.

## II. CLAIMANT INFORMATION

7.      Use **Part I** entitled "Claimant Information" to confirm or identify the names and contact information of the owner(s) of limited partnership units in any GPB Funds. The Claim Form must be filed by the actual owner(s) or legal representative ("Claimant"). All joint owners must also sign the Claim Form. Separate Claim Forms should be submitted for each person, legal entity, or separately managed account (*e.g.*, an individual should not combine his or her IRA transactions with transactions made solely in his individual name).

8 .      Executors, administrators, trustees, and all other legal representatives must complete and sign this Claim Form on behalf of the person or entity they represent, provide proof of authority, and identify their title or representative capacity. Social Security or Taxpayer Identification numbers will be used to verify the claim.

## III. PURCHASES, SALES, REDEMPTIONS, DISTRIBUTIONS AND OTHER RECOVERIES

9.      Use **Part II** to confirm and/or provide information about your purchases, sales, redemptions, distributions, or other

---

[1] Please refer to the Stipulation and Agreement of Settlement, dated December 3, 2024, for all defined terms used in this Claim Form (indicated by initial capital letters), and available at www.GPBSecuritiesSettlement.com.

-1-

Exhibit 3
Page 54 of 264        Exhibit 1
Page 47 of 126

recoveries you may have received in connection with limited partnership units of GPB Funds. Please include documentation with your Claim Form, if required. The Claims Administrator may request additional documentation to verify information on your Claim Form. Failure to respond could result in delays and/or the rejection of your claim.

10.    If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after any appeals are resolved, and after the completion of all claims processing, which takes time to complete fully and fairly. Please be patient. As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. If the prorated payment to an Authorized Claimant is less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

11.    If you have questions concerning the Claim Form or require another copy, call the Claims Administrator at (888)550-9942, Monday through Friday between 9:00 a.m. to 5:00 p.m. ET, or go online at www.GPBSecuritiesSettlement.com.

12.    Use **Part III** to acknowledge that by submitting a signed Claim Form, you are swearing to the truth of the statements contained therein and the genuineness of the documents submitted, under penalties of perjury. Making a false statement or submitting forged or fraudulent documentation will result in the rejection of your claim and may subject you to civil liability or criminal prosecution. You also acknowledge that by signing and submitting the Claim Form, you have read and understood that terms of the release of claims and make certain certifications. PLEASE READ PART III CAREFULLY.

13.    **Submit your Claim Form to the Claims Administrator by the deadline.** Failure to submit your Claim Form by the deadline may result in the rejection of your claim and preclude you from being eligible to receive a payment from the Settlement. **Do not submit your Claim Form to the Court, Class Counsel, Defendants' Counsel, or any Parties to the Action.**

## PART I – CLAIMANT INFORMATION

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you <u>MUST</u> notify the Claims Administrator. Complete names of all persons and entities must be provided.

Beneficial Owner's First Name        MI    Beneficial Owner's Last Name

Joint Beneficial Owner's First Name (if applicable)    MI    Joint Beneficial Owner's Last Name

Entity Name (if not an individual)

Representative or Custodian Name (if applicable and different from Beneficial Owner(s) listed above)

Address 1 (street name and number)

Address 2 (apartment, unit, or box number)

City                                State/Province    Zip Code

Foreign Country (only if not USA)

Last four digits of SSN or TIN

Telephone Number (home)                    Telephone Number (work)

Unitholder Account Number

Email Address

Claimant Account Type:
☐ Individual        ☐ Partnership        ☐ UGMA Custodian    ☐ IRA
☐ Corporation    ☐ Estate            ☐ Trust            ☐ Other _____ (please specify)

-2-                        Exhibit 3

## PART II–TRANSACTIONS AND RECOVERIES IN GPB UNITS

Please review the information provided below about purchases you made in GPB Fund unit(s) and any recovery(ies) you have received to date, including from any sale, redemption, distribution, receivership distribution, or other source.

**CHECK HERE ☐ IF THE INFORMATION BELOW IS COMPLETE AND ACCURATE <u>AND</u> REMEMBER TO SIGN THE CLAIM FORM IN PART III BELOW.**

---

**1. PURCHASES**

Below is a list of your purchases or acquisitions of limited partnership units of GPB Funds from January 1, 2013 through December 31, 2018, and the Total Principal Amount Paid, based on GPB records. If you believe this information is incorrect or incomplete, please provide (a) details in the space below and (b) supporting documentation.

| Date of Purchase (Month/Day/Year) | GPB Fund Name | Number of Units | Total Principal Amount Paid |
|---|---|---|---|
| / / | | | $ |
| / / | | | $ |
| / / | | | $ |

**2. SALES AND/OR REDEMPTIONS**

Below is a list of your sales and/or redemptions of units in GPB Funds from January 1, 2013 through December 31, 2018, based on GPB records. If you believe the information is incorrect or incomplete, please provide (a) details in the space below and (b) supporting documentation.

| Date of Sale (Month/Day/Year) | GPB Fund Name | Number of Units | Total Sales and/or Redemption Proceeds |
|---|---|---|---|
| / / | | | $ |
| / / | | | $ |
| / / | | | $ |

**3. DISTRIBUTIONS**

Below is a list of the Total Distributions you received from January 1, 2013 though the present, by GPB Fund, based on GPB records. If you believe the information is incorrect, please provide (a) details in the space below and (b) supporting documentation.

| GPB Fund Name | Total Distributions (per Purchase) |
|---|---|
| | $ |
| | $ |
| | $ |

**4. PRIOR RECOVERIES**

Please identify all prior recoveries, if any, that you received in connection with your investment in GPB Funds by: (a) source of the recovery(ies) (*i.e.*, litigation, arbitration, GPB receivership distribution, settlement, judgment, award, or otherwise) and (b) Total Amount of Prior Recovery(ies).

| Source of Recovery(ies) | Total Amount of Prior Recovery(ies) |
|---|---|
| | $ |

| | $ |
|---|---|

**IF YOU REQUIRE ADDITIONAL SPACE FOR THE SCHEDULE ABOVE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT. PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY NUMBER OR TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE.**

## PART III–SUBMISSION TO JURISDICTION OF COURT, RELEASE OF CLAIMS, CERTIFICATIONS, ACKNOWLEDGMENTS, AND SIGNATURE

**PLEASE READ THE RELEASE AND CERTIFICATION CAREFULLY AND SIGN THE CLAIM FORM. YOU <u>MUST</u> SIGN THIS CLAIM FORM TO BE ELIGIBLE FOR PAYMENT.**

14. By signing and submitting this Claim Form, the Claimant(s) or the person(s) acting on behalf of the Claimant(s) certify(ies) that: (a) I (We) submit this Claim Form under the terms of the Plan of Allocation described in the accompanying Notice and available for review at www.GPBSecuritiesSettlement.com; (b) I (We) submit to the jurisdiction of the United States District Court for the Western District of Texas - Austin Division (the "Court") with respect to my (our) claim as a member of the Settlement Class and for purposes of enforcing the releases set forth herein; and (c) I (We) further acknowledge that, once the Settlement reaches its Effective Date, I (we) will be bound by and subject to the terms of all judgments and orders entered in connection with the Settlement in the Action with respect to Settling Defendants, including the releases set forth therein.

15. By signing and submitting this Claim Form, I (we) hereby acknowledge that, pursuant to the terms in the Settlement Agreement, without further action by anyone, upon the Effective Date of the Settlement, I (we), on behalf of myself (ourselves) and my (our) (the claimant(s)') respective agents, representatives, attorneys, heirs, administrators, executors, beneficiaries, assigns, predecessors, and successors in interest, and any other Person claiming by, through, on behalf of, or for the benefit of any of them, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever released, covenanted not to sue, and discharged any and all Released Claims against (i) each of the Settling Defendants; (ii) the predecessors, successors, assigns, direct or indirect parents, direct or indirect subsidiaries, and affiliates of each of the Settling Defendants (including, without limitation, current or former member firms or correspondent firms within the same network as a Settling Defendant, all entities that manage the network in which any Settling Defendant is a member, and Baker Tilly US, LLP and Baker Tilly Advisory Group, LP); and (iii) each of the foregoing's current and former partners, limited partners, general partners, officers, directors, employees, legal and equitable owners, trustees, shareholders, members, managers, principals, agents, attorneys, legal representatives, affiliated persons or entities, predecessors, successors, assigns, direct or indirect parents, direct or indirect subsidiaries, affiliates, beneficiaries, assigns, heirs, executors, administrators, lenders, indemnitors, and insurers, and shall forever be barred and enjoined from commencing, instituting, prosecuting, maintaining, or seeking monetary or other relief respecting any and all of the Released Claims.

16. By signing and submitting this Claim Form, I (we) further certify and agree under penalty of perjury that:
   a. I (We) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement Agreement and the terms of the Plan of Allocation;
   b. I am (We are) a Settlement Class Member(s), as defined in the Notice, and I am (we are) not excluded by definition from the Settlement Class as set forth in the Notice;
   c. I (We) did <u>not</u> submit a request for exclusion from the Settlement Class and the *Kinnie Ma* Action;
   d. I (We) own(ed) units in the GPB Funds identified in the Claim Form during the Class Period and have not assigned the claim against any of the Settling Defendants;
   e. in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the claimant(s);
   f. other than as may be disclosed herein, I (we) have not submitted any other claim covering the same purchases of units in GPB Funds from 2013 – 2018 and know of no other person having done so on my (our) behalf;
   g. I (We) agree to furnish additional information and documentation with respect to this Claim Form as may be required by the Claims Administrator, Settlement Counsel, or the Court; and
   h. I (We) waive the right to trial by jury, to the extent it exists, and agree to the determination by the Court of the validity or amount of this claim, and waive any right of appeal or review with respect to such determination;
   i. I (We) will be bound by and subject to the terms of any judgment(s) that may be entered with respect to the Actions as related to the Settling Defendants; and I (We) certify that I am (we are) NOT subject to backup tax withholding. (If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the prior sentence).

I (We) declare under the penalty of perjury under the laws of the United States of America that the foregoing representations and information reflected on this Claim Form are true, correct, and complete, and that any documents submitted

herewith are true and correct copies of what they purport to be.

**\*\*REMEMBER TO SIGN THE CLAIM FORM ON THE NEXT PAGE\*\***

Executed this ☐☐ day of ☐☐☐☐☐☐☐☐☐ , 2025

_____
Signature of Claimant

_____
Print name of Claimant

_____
Signature of Joint Claimant, if any

_____
Print name of Joint Claimant

_____
Signature of Person signing for Claimant

_____
Print name of Person signing for Claimant

_____
Capacity of Person signing for Claimant,
if other than an individual (*e.g.*, executor,
trustee, administrator, power of attorney)

## REMINDER CHECKLIST

1. Remember to sign the Claim Form.

2. Do not highlight the Claim Form or your supporting documents.

3. Attach only copies of documentation as these will not be returned.

4. Keep a copy of your Claim Form for your records.

5. You must submit this Claim Form online at www.GPBSecuritiesSettlement.com **no later than** _____**, 2025** or, if by mail, postmarked **no later than** _____**, 2025** and sent to: GPB Securities Settlement, P.O. Box 2916, Portland, OR 97208-2916.

6. The Claims Administrator will acknowledge receipt of your online Claim Form immediately online. If you decided to mail your Claim Form, you will receive a postcard confirmation in the mail within 60 days of your submission. Your mailed claim is not deemed filed until you receive an acknowledgement by postcard. If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator at (888)550-9942, Monday through Friday between 9:00 a.m. to 5:00 p.m. ET.

7. If you move after submitting this Claim Form, please notify the Claims Administrator of the change in your address, otherwise you may not receive additional notices or payment.

8. Do not call the Court or the Settling Defendants with questions regarding your claim. If you have any questions or concerns regarding your claim, call the Claims Administrator at (888)550-9942, Monday through Friday between 9:00 a.m. to 5:00 p.m. ET, or visit www.GPBSecuritiesSettlement.com.

# EXHIBIT B

Exhibit 3
Page 60 of 264          Exhibit 1
Page 53 of 126

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KINNIE MA INDIVIDUAL RETIREMENT
ACCOUNT, *et al.*,

        *Plaintiffs*,

    v.

ASCENDANT CAPITAL, LLC, *et al.*,

        *Defendants*.

Case No. 1:19-CV-1050-RP

## [PROPOSED] FINAL SETTLEMENT APPROVAL AND BAR ORDER

WHEREAS, the above-captioned proposed class action (the "*Kinnie Ma* Action" or "this Action") is pending before this Court, with Timothy S. DeJong of Stoll Stoll Berne Lokting & Shlachter P.C.; Peter S. Linden of Kaplan Fox & Kilsheimer LLP; and Richard L. Stone of the Law Offices of Richard L. Stone, PLLC having been appointed co-lead counsel for Plaintiffs ("*Kinnie Ma* Counsel");

WHEREAS, a related proposed class action is pending in the United States District Court for the Southern District of New York, captioned *Deluca, et al. v. GPB Holdings, LP et al.*, No. 1:19-cv-10498-LAK (the "*DeLuca* Action") (collectively, with the *Kinnie Ma* Action, the "Actions"), with Daniel L. Berger of Grant & Eisenhofer P.A. and Catherine Pratsinakis of Dilworth Paxson LLP having been appointed as co-lead counsel for Plaintiffs ("*DeLuca* Counsel");

WHEREAS, Plaintiffs in the *Kinnie Ma* Action (Kinnie Ma IRA, Jeffery S. Gramm IRA, Stacy Greasor IRA, Victor Wade IRA, Kazue Bell, Dean Crooks, Corri Rene Eden, Catherine Kominos, Karen Loch, Robert A. Stone Living Trust, Shirley Stone Living Trust, Stanley S. and Millicent R. Barasch Living Trust, and Loretta Dehay (collectively the "*Kinnie Ma* Plaintiffs"))

1

and Plaintiffs in the *DeLuca* Action (Barbara DeLuca, Drew R. Naylor, Peggy Rollo, Peter Beddia, Michael Oles, Robert Ricci, and James Staples, as Trustee of the 616 Moved Trust (collectively the "*DeLuca* Plaintiffs")), individually and on behalf of all others similarly situated (collectively "Plaintiffs"), have determined to settle with prejudice all claims asserted in the Actions against Defendants CohnReznick LLP, Crowe LLP, Margolin Winer & Evens LLP, RSM US LLP, and WithumSmith+Brown, PC, (the "Settling Defendants") on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated December 3, 2024 (the "Stipulation"), subject to the approval of the Court (the "Settlement");

WHEREAS, the Stipulation provides that the Settlement shall be submitted to this Court for approval and that the *DeLuca* Plaintiffs and those Settling Defendants who are party to the *DeLuca* Action shall seek to maintain the stay currently in place in the *DeLuca* Action through and until the filing of a Notice of Dismissal in the *DeLuca* Action;

WHEREAS, unless otherwise defined in this Final Settlement Approval and Bar Order ("Final Approval Order"), the capitalized terms herein shall have the same meaning as they have in the Stipulation;

WHEREAS, by Order dated _____, 202__ (the "Preliminary Approval Order"), this Court: (a) found, solely for purposes of the Settlement and pursuant to Rule 23(e)(1)(B), that it (i) would likely be able to approve the Settlement under Rule 23(e)(2) as being fair, reasonable, and adequate, and (ii) would likely be able to certify the Settlement Class for purposes of the Settlement only because the requirements of Rule 23(a) and 23(b)(3) have been or likely would be satisfied; (b) ordered that notice of the proposed Settlement and Final Approval Hearing be provided to Settlement Class Members; (c) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class, or to

object to the proposed Settlement; and (d) scheduled the Final Approval Hearing to consider final approval of the Settlement and entry of the Bar Order;

WHEREAS, due and adequate notice of the proposed Settlement Approval and Bar Order has been given to the Settlement Class Members;

WHEREAS, the Court conducted a Final Approval Hearing on _____, 202_ to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class and should therefore be approved; (b) whether a judgment should be entered dismissing the Action with prejudice against the Settling Defendants; and (c) whether the proposed Bar Order should be entered; and

WHEREAS, the Court having reviewed and considered: (a) the *Kinnie Ma* Plaintiffs' *Motion for Final Approval of the Settlement*, and the papers filed and arguments made in connection therewith; (b) the Stipulation and the Exhibits attached thereto; (c) all proceedings held herein in connection with the Settlement; (d) all objections to the Settlement submitted to the Court within the deadline provided by the Notice; and (e) the record in the Action, and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.    **Jurisdiction.**  The Court has jurisdiction over matters relating to the Settlement, including, without limitation, the administration, interpretation, effectuation, and/or enforcement of the Settlement, the Stipulation, and this Final Approval Order.

2.    **Incorporation of Settlement Documents.**  This Final Approval Order incorporates and makes a part hereof: (a) the Stipulation filed with the Court on December 3, 2024, and all Exhibits attached thereto, including the Proof of Claim and Release Form, Notice and the Summary Notice filed with the Court on December 3, 2024.

3.    **Certification of Class for Settlement Purposes.**  The Court hereby certifies for the purposes of the Settlement only, the following Settlement Class, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure:

> All Persons (as defined in the Stipulation) who, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of GPB Holdings, LP; GPB Holdings Qualified, LP; GPB Automotive Portfolio, LP; GPB Holdings II, LP; GPB Waste Management, LP (also known as Armada Waste Management LP); GPB Cold Storage, LP; GPB NYC Development, LP; GPB Holdings III, LP; and each of their predecessors, successors, subsidiaries, and affiliates (collectively, the "GPB Funds") during the period of January 1, 2013 through December 31, 2018 (the "Class Period") and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (except for certain individuals and entities that have been excluded from the Settlement Class that are described as follows).  The Settlement Class does not include: (a) Defendants in the Actions or their affiliates; (b) present or former executive directors or officers of GPB Capital Holdings, LLC, the GPB Funds, Ascendant Capital, LLC, Ascendant Alternative Strategies, LLC, or Axiom Capital Management, Inc.; (c) the legal representatives, heirs, successors-in-interest, or assigns of any Person within subsection (a) or (b) of this Paragraph; (d) members of the immediate family of any natural Person within subsection (a) or (b) of this Paragraph; (e) any entity in which any Person within subsection (a) or (b) of this Paragraph has, or had during the Class Period, a controlling interest; and (f) any affiliate of GPB Capital Holdings, LLC.  For purposes of this definition, "immediate family" means a natural Person's parent, sibling, spouse, or child.

4.    **Class Certification Class Findings.**  For purposes of the Settlement only, the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met, as follows: (a) the members of the Settlement Class are so numerous that their joinder would be impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of Plaintiffs in the Action are typical of the claims of the Settlement Class; (d) Plaintiffs and Settlement Class Counsel have and will fairly and adequately represent

and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the Action for purposes of the proposed Settlement.  These findings are made solely for the purposes of the Settlement, and are without prejudice to, or waiver of, the right of any non-Settling Defendants to contest certification of any other class proposed in this Action.  Further, the Court's finding in this Final Approval Order shall have no effect on any motion to certify any class in this Action, the *DeLuca* Action, or any other action, and no Person may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class.

5.      **Adequacy of Representation.**  Pursuant to Rule 23(e)(2)(A) of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby appoints Plaintiffs as Settlement Class Representatives for the Settlement Class.  For purposes of Settlement only, the Court finds that the claims of the Settlement Class Representatives are typical of the claims of the Settlement Class Members and that Plaintiffs have fairly and adequately represented the Settlement Class pursuant to Federal Rule of Civil Procedure Rule 23(a).  The Court hereby appoints Timothy S. DeJong of Stoll Stoll Berne Lokting & Shlachter, P.C.; Daniel L. Berger of Grant & Eisenhofer P.A.; Catherine Pratsinakis of Dilworth Paxson LLP, Peter S. Linden of Kaplan Fox & Kilsheimer LLP; and Richard L. Stone of the Law Offices of Richard L. Stone, PLLC;  as Settlement Class Counsel.  The Court finds that Settlement Class Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Actions and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rule of Civil Procedure 23(g).

Exhibit 3

Page 65 of 264          Exhibit 1

Page 58 of 126

6. **Notice.** The Court finds that the dissemination of the Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of this Action; (ii) the effect of the proposed Settlement (including the releases and Bar Order to be provided thereunder); (iii) the Fee and Expense Application; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or the Fee and Expense Application; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement and Bar Order; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable laws and rules. The Court further finds that the notice requirements set forth in the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, have been satisfied.

7. **Opportunity to Object.** A full and fair opportunity was accorded to all Settlement Class Members to be heard with respect to the Settlement and proposed Bar Order. A full and fair opportunity was also accorded to the non-Settling Defendants to be heard with respect to the Settlement and proposed Bar Order.

8. **Objections.** The Court has considered each of the objections to the Settlement submitted pursuant to Rule 23(e)(5) of the Federal Rules of Civil Procedure. The Court finds and concludes that each of the objections is without merit, and those objections are hereby overruled.]

Exhibit 3
Page 66 of 264        Exhibit 1
                      Page 59 of 126

9.      **Final Settlement Approval and Dismissal of Claims.**  Pursuant to, and in accordance with, Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the Settlement Amount, the releases provided for therein, and the dismissal with prejudice of the claims asserted against Settling Defendants in the Actions), and finds that the Settlement is, in all respects, fair, reasonable, and adequate.  Specifically, the Court finds that (a) the Settlement Class Representatives and Settlement Class Counsel have adequately represented the Settlement Class; (b) the Settlement was negotiated by the Parties at arm's length; (c) the relief provided for the Settlement Class under the Settlement is fair, reasonable, and adequate, taking into account the costs, risks, and delay of trial and appeal, the proposed means of distributing the Net Settlement Fund to the Settlement Class, and the proposed attorneys' fee and expense award; and (d) the Settlement treats members of the Settlement Class equitably relative to each other.  The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

10.     **Execution of the Settlement.**  To the extent they have not already done so, Settlement Class Representatives, the other Settlement Class Members, and Settling Defendants are hereby directed to perform the terms of the Stipulation.  Without further order of the Court and in accordance with the provisions of the Stipulation concerning modification and amendment, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

11.     **Dismissal of Claims.**  All the claims asserted against Settling Defendants in this Action by *Kinnie Ma* Plaintiffs and the other Settlement Class Members are hereby dismissed

7

Exhibit 3
Page 67 of 264        Exhibit 1
Page 60 of 126

with prejudice.  The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

12.    **Binding Effect.**  The terms of the Stipulation and of this Final Approval Order shall be forever binding on Settling Defendants, Settlement Class Representatives, and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns, including any and all releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.  [The persons and entities listed on Exhibit 1 hereto are hereby found to be Settlement Class Opt-Outs and are therefore excluded from the Settlement Class pursuant to request and are not bound by the terms of the Stipulation or this Final Approval Order. Such Settlement Class Opt-Outs will receive no payment from this Settlement, have forfeited any right to future class recovery (if any) against any non-settling Defendants, and will not participate in proceedings in the *Kinnie Ma* Action or be legally bound by any of the Court's orders or judgments in the *Kinnie Ma* Action.  However, such Settlement Class Opt-Outs will retain any individual rights they may still have with respect to Settling Defendants and other non-settling Defendants related to matters alleged in the Actions.

13.    **Releases.**  The releases and covenants not to sue set forth in Section IV of the Stipulation, together with the definitions contained in Section I of the Stipulation relating thereto, are expressly incorporated herein in all respects.  The releases are effective as of the Effective Date.  Accordingly, this Court orders that:

(a)    Without further action by anyone, and subject to Paragraph 14 below,

upon the Effective Date, each of the Releasing Parties fully, finally, and

forever releases, covenants not to sue, and discharges each of the Released Parties from any and all Released Claims held by, on behalf of, for the benefit of, or in the name of any Settlement Class Member who is not a Settlement Class Opt-Out and shall forever be barred and enjoined from commencing, instituting, prosecuting, maintaining, or seeking monetary or other relief respecting any and all of the Released Claims. The Released Parties may plead this Stipulation as a complete defense to any Released Claims brought in contravention hereof. For the avoidance of doubt, all claims against non-Settling Defendants in the Actions are expressly reserved.

(b)     Without further action by anyone, and subject to Paragraph 14 below, upon the Effective Date, each Settling Defendant, on behalf of itself, and its heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall fully, finally, and forever release, covenant not to sue, and discharge any and all Settling Defendants' Released Claims against each and every one of the Settlement Class Members (other than the Settlement Class Opt-Outs) and shall forever be barred and enjoined from commencing, instituting, prosecuting, maintaining or seeking monetary or other relief respecting any and all of the Settling Defendants' Released Claims against any and all of the Settlement Class Members (other than the Settlement Class Opt-Outs).

Exhibit 3
Page 69 of 264        Exhibit 1
                          Page 62 of 126

14.    Notwithstanding Paragraphs 13(a)–(b) above, nothing in this Final Approval Order shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Final Approval Order.

15.    **Bar Order.**  Upon the Effective Date, any and all past, present, and future claims against any of the Released Parties by any Person of any nature whatsoever in any way arising out of or related to the claims or allegations that have been or could have been asserted by Plaintiffs or any Settlement Class Member (other than the Settlement Class Opt-Outs) in either of the Actions or claiming any liability to any Plaintiff or any Settlement Class Member (other than the Settlement Class Opt-Outs), including, without limitation, all claims, suits, actions, allegations, damages (including, without limitation, compensatory, punitive, exemplary, rescissory, direct, consequential or special damages, restitution, and disgorgement), liabilities, causes of action, complaints, lawsuits, responsibilities, demands, rights, debts, penalties, costs, expenses, fees, injunctive relief, attorneys' fees, expert or consulting fees, prejudgment interest, indemnities, duties, losses, and obligations of any kind, known or unknown, foreseen or unforeseen, whether apparent or concealed, asserted or unasserted, existing or contingent, direct or indirect, anticipated or unanticipated, asserted or that could have been asserted by, on behalf of, for the benefit of, or in the name of the Settlement Class Members (other than the Settlement Class Opt-Outs), whether legal, contractual, rescissory, statutory, or equitable in nature, whether arising under federal, state, common, or foreign law, that now exist or have ever existed from the beginning of time until the date of the Stipulation, are permanently barred, extinguished, and discharged to the fullest extent permitted by law (together, with the order in Paragraph 16 below, the "Bar Order").  The scope and preclusive effect of this Bar Order shall be as broad as permissible under federal and state law, provided, however, that the Bar Order shall not release

10

Exhibit 3
Page 70 of 264       Exhibit 1
                     Page 63 of 126

or alter the contractual rights, if any, under the terms of any written agreement between or among the Settling Defendants, and shall not preclude either (i) Settling Defendants from seeking to enforce any rights they may have under any applicable insurance policies, or (ii) any right of indemnification or contribution that individual Settling Defendants may have under contract.

16.    **Bar of Contribution and Indemnification Claims.**  Without in any way limiting the order set forth in Paragraph 15, the non-Settling Defendants and any future defendants in the Actions, and all officers, partners, agents, servants, employees, attorneys, successors, assigns, and insurers of any of the foregoing, and all in active concert with any of the foregoing, are forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any claim for contribution or indemnity against any of the Released Parties.

17.    **Judgment Reduction.**  In the event that any Settlement Class Member or anybody acting on a Settlement Class Member's behalf obtains any final verdict or judgment in the Actions against any individual or entity subject to the Bar Order provided for herein, to the extent permitted by law that judgment shall be reduced *pro tanto* (*i.e.*, dollar-for-dollar) by the Settlement Amount if the judgment is awarded on a class-wide basis, or the portion thereof attributable to such Settlement Class Member if the judgment is awarded on an individual basis.

18.    **Rule 11 Findings.** The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Actions.

19.    **No Admissions.**  Neither this Final Approval Order, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation described therein (or any other plan of allocation that may be approved by the Court); nor the negotiations leading to

11

Exhibit 3
Page 71 of 264        Exhibit 1
Page 64 of 126

the Settlement or the execution of the Stipulation; nor any proceedings taken pursuant to or in connection with the Stipulation and/or the approval of the Settlement (including any arguments proffered in connection therewith):

     (a)     shall be offered against any of the Settling Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Settling Defendants with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that has been or could have been asserted or the deficiency of any defense that has been or could have been asserted in the Actions or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Settling Defendants;

     (b)     shall be offered against any of the Settlement Class Members, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Settlement Class Members that any of their claims are without merit, that any of the Settling Defendants had meritorious defenses, or that damages recoverable under the complaints in the Actions would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind;

     (c)     shall be in any way referred to for any other reason as against any of the Plaintiffs or the Settling Defendants, in any civil, criminal, arbitration, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

12

(d)      shall be construed against any of the Parties as an admission, concession,

or presumption that the consideration to be given hereunder represents the

amount which could be or would have been recovered at trial;

provided, however, that the Parties and their respective counsel may refer to this Final Approval

Order and the Stipulation to effectuate the protections from liability granted hereunder and

thereunder or otherwise to enforce the terms of the Settlement.

20.    **Retention of Jurisdiction.**  Without affecting the finality of this Final Approval

Order or the Final Judgment in any way, this Court retains continuing and exclusive jurisdiction

over: (a) the Parties for purposes of the administration, interpretation, implementation, and

enforcement of the Settlement and the Stipulation; (b) the disposition of the Settlement Fund; (c)

the Fee and Expense Application; (d) any motion to approve the Plan of Allocation; (e) any

motion for entry of an order directing distribution to Settlement Class Members; and (e) the

Settlement Class Members for all matters relating to this Action.

21.    **Plan of Allocation.**  The Court finds that the Plan of Allocation is rationally based

on legitimate considerations and treats Settlement Class Members (including the Settlement

Class Representatives) fairly and equally.  The Court hereby finds that the proposed Plan of

Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Authorized

Claimants and directs that Settlement Class Counsel and the Claims Administrator implement the

Plan of Allocation.

22.    **Fee and Expense Award.**  A separate order shall be entered regarding approval of

the Fee and Expense Application.  Such order shall in no way affect or delay the finality of this

Final Approval Order and shall not affect or delay the Effective Date of the Settlement.

13

Exhibit 3
Page 73 of 264        Exhibit 1
Page 66 of 126

23.     **Modification of the Stipulation.**  Without further approval from the Court, Settlement Class Representatives and Settling Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto, in accordance with the provisions of the Stipulation concerning modification and amendment, to effectuate the Settlement that: (a) are not materially inconsistent with this Final Approval Order and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Settlement Class Representatives and Settling Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

24.     **Termination of Settlement.**  If the Effective Date of the Settlement fails to occur, this Final Approval Order shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Final Approval Order shall be without prejudice to the rights of Settlement Class Representatives, the other Settlement Class Members, and Settling Defendants, and the Parties shall revert to their respective positions in the Actions immediately prior to their agreement in principle to settle on June 14, 2024, as provided in the Stipulation.

25.     **Entry of Settlement Approval and Bar Order.**  There is no just reason to delay the entry of this Final Approval Order approving the Settlement and imposing the Bar Order.

SO ORDERED this _____day of _____20___

_____
The Honorable Robert Pitman
United States District Judge

14

Exhibit 3
Page 74 of 264          Exhibit 1
                    Page 67 of 126

# EXHIBIT C

Exhibit 3
Page 75 of 264        Exhibit 1
Page 68 of 126

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| KINNIE MA INDIVIDUAL RETIREMENT ACCOUNT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ASCENDANT CAPITAL, LLC, *et al.*, <br><br> Defendants. | Case No. 1:19-CV-1050-RP <br><br> **[PROPOSED] JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)** |

WHEREAS, this matter came before the Court for hearing on

_____, 2025, regarding Plaintiffs' Motion for Final Approval

("Motion") of the Stipulation and Agreement of Settlement, dated December 3, 2024 (the

"Stipulation"), between Plaintiffs[1] in this action and a related action, *DeLuca, et al. v. GPB*

*Holdings, LP*, *et al.*, No. 1:19-CV-10498-LAK-JW (S.D.N.Y.) (the "*DeLuca* Action"),

individually and on behalf of all others similarly situated, and certain Defendants in those

actions, namely, CohnReznick LLP, Crowe LLP, Margolin Winer & Evens LLP, RSM US LLP,

and WithumSmith+Brown, PC (the "Settling Defendants"), reflecting a settlement between

Plaintiffs and Settling Defendants (the "Settlement");

WHEREAS, having considered the Motion, the exhibits and declarations attached

thereto, and all other filings and argument related to the Motion, the Court finally approved the

---

[1] "Plaintiffs" are the Plaintiffs in this action (Kinnie Ma IRA, Jeffery S. Gramm IRA, Stacy Greasor IRA, Victor Wade IRA, Kazue Bell, Dean Crooks, Corri Rene Eden, Catherine Kominos, Karen Loch, Robert A. Stone Living Trust, Shirley Stone Living Trust, Stanley S. and Millicent R. Barasch Living Trust, Loretta Dehay) and the Plaintiffs in the *DeLuca* Action (Barbara DeLuca, Drew R. Naylor, Peggy Rollo, Peter Beddia, Michael Oles, Robert Ricci, and James Staples, as Trustee of the 616 Moved Trust).

1

Exhibit 3
Page 76 of 264        Exhibit 1
Page 69 of 126

Settlement for the reasons set forth in the accompanying Order finally approving the Settlement

("Final Approval Order");

NOW, THEREFORE, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure

and consistent with the terms of this Court's Final Approval Order, **IT IS HEREBY**

**ORDERED, ADJUDGED, and DECREED**:

1. **Defined Terms.** Unless otherwise noted, capitalized terms herein shall have the same meaning accorded to them in the Final Approval Order and the Stipulation.

2. **Final Approval.** All provisions and findings of the Final Approval Order, which the Court entered on _____, 202_ are **APPROVED** and are expressly incorporated herein.

3. **Dismissal of Claims Against Settling Defendants.** All claims against Settling Defendants asserted in this Action are hereby dismissed with prejudice according to the terms of the Stipulation and the Final Approval Order, without fees or costs to any of the Plaintiffs, the Settlement Class, or the Settling Defendants, except as otherwise provided in the Final Approval Order or the Court's order addressing Plaintiffs' motion for an award of attorneys' fees, expenses, and service awards.

4. **Entry of Final Judgment.** The Court finds that it is in the best interests of the Settlement Class Members that the Settlement proceeds be disbursed as soon as possible, and because the Settlement resolves all claims as to the Settling Defendants, the Court expressly finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay, and orders that Judgment as provided herein be entered as to fewer than all parties, namely the Settling Defendants, and fewer than all claims in the action, namely all claims asserted against the Settling Defendants.

2

Exhibit 3
Page 77 of 264         Exhibit 1
                   Page 70 of 126

Accordingly, the Clerk of the Court is expressly directed to immediately enter this

Judgment pursuant to Fed. R. Civ. P. 54(b).

SO ORDERED this _____day of _____20___

_____
The Honorable Robert Pitman
United States District Judge

# EXHIBIT D

Exhibit 3
Page 79 of 264        Exhibit 1
Page 72 of 126

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| KINNIE MA INDIVIDUAL RETIREMENT ACCOUNT, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ASCENDANT CAPITAL, LLC, *et al.*,<br><br>*Defendants*. | Case No. 1:19-CV-1050-RP |
| BARBARA DELUCA, *et al*.,<br><br>*Plaintiffs*,<br><br>v.<br><br>GPB HOLDINGS, LP, *et al.*,<br><br>*Defendants*. | Case No. 1:19-cv-10498-LAK-JW |

**DETAILED NOTICE OF (I) PENDENCY OF CLASS ACTIONS**
**AND PROPOSED SETTLEMENT WITH CERTAIN DEFENDANTS; (II) FINAL**
**APPROVAL HEARING; AND (III) MOTION FOR**
**ATTORNEYS' FEES AND LITIGATION EXPENSES**

TO:    All Persons who, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of the GPB Funds during the Class Period (January 1, 2013 through December 31, 2018, inclusive) and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (except for certain individuals and entities that have been excluded from the Settlement Class, as described in response to Question 6 below).

        "GPB Funds" are: (i) GPB Holdings, LP; (ii) GPB Holdings Qualified, LP; (iii) GPB Automotive Portfolio, LP; (iv) GPB Holdings II, LP; (v) GPB Waste Management, LP (also known as Armada Waste Management LP); (vi) GPB Cold Storage, LP; (vii) GPB NYC Development, LP; and/or (viii) GPB Holdings III, LP; and each of their predecessors, successors, subsidiaries, and affiliates.

*If you are receiving this Notice about the Settlement, you have been identified as a potential member of the Settlement Class and may be eligible to receive a settlement payment.*

*A Court has authorized this Notice. You are __not__ being sued. This is __not__ a solicitation from a lawyer. Please read this notice carefully and in its entirety. Your rights may be affected by*

*proceedings in the Actions.*

*IF YOU ARE A SETTLEMENT CLASS MEMBER, YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT WITH CERTAIN DEFENDANTS DESCRIBED IN THIS NOTICE.*

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS ACTION. IF YOU ARE A MEMBER OF THE CLASS, YOUR LEGAL RIGHTS WILL BE AFFECTED WHETHER OR NOT YOU ACT. PLEASE NOTE THAT IF YOU ARE A SETTLEMENT CLASS MEMBER, YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT DESCRIBED IN THIS NOTICE. TO CLAIM YOUR SHARE OF THE SETTLEMENT PROCEEDS, YOU MUST SUBMIT A VALID CLAIM FORM **POSTMARKED (IF MAILED) OR RECEIVED (IF SUBMITTED ONLINE) ON OR BEFORE _____, 2025**.

The purpose of this Notice is to inform you of the pendency of two putative class action lawsuits concerning your investment in the GPB Funds, and the class settlement of those lawsuits with certain Defendants. One class action is pending in the United States District Court for the Western District of Texas, Austin Division (the "Court"), known as *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP; and the other class action is pending in the United States District Court for the Southern District of New York, known as *DeLuca, et al. v. GPB Holdings, LP, et al.*, No. 1:19-CV-10498-LAK (together, the "Actions").

The named Plaintiffs in the Actions (the "Settlement Class Representatives"), on behalf of themselves and the Settlement Class defined herein, and Defendants CohnReznick LLP; Crowe LLP; Margolin, Winer & Evens LLP; RSM US LLP; and WithumSmith+Brown, PC (the "Settling Defendants") agreed to fully and finally resolve all claims raised against them in the Actions in consideration of Settling Defendants' combined payment of Forty-Six Million United States Dollars ($46,000,000) in cash. Plaintiffs in the Actions asserted claims against other Defendants who are not part of this proposed Settlement. If approved, this Settlement will resolve claims against the Settling Defendants only. Claims against certain other Defendants may continue in accordance with the schedule and other terms directed by the Court.

On DATE, the Court will hold a hearing (the "Final Approval Hearing") to consider the fairness, reasonableness, and adequacy of the Settlement as well as Settlement Class Counsel's request for attorneys' fees and expenses and service awards for the Settlement Class Representatives. This Notice describes what steps you may take in relation to the Settlement and the Actions.[1]

This Notice is not intended to be, and should not be construed as, an expression of any opinion by the Court with respect to the truth of the allegations in the Actions as to any of the Settling Defendants or the merits of the claims or defenses asserted by or against the Settling Defendants in

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the parties' Stipulation and Agreement of Settlement, dated December 3, 2024 (the "Settlement Agreement"), which is available for review at www.GPBSecuritiesSettlement.com.

Exhibit 3
Page 81 of 264          Exhibit 1
                        Page 74 of 126

the Actions.  This Notice is solely to advise you of the proposed partial Settlement of the Actions and your rights in connection therewith.

You are included in the proposed "Settlement Class" if you, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of the GPB Funds between January 1, 2013 through December 31, 2018, inclusive, and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (subject to certain exclusions described in response to Question 6 below).

Members of the Settlement Class with a Net Loss will be eligible to receive a *pro rata* (meaning proportional) portion of the Net Settlement Fund, but the exact amount is not yet known. More information on how this amount will be calculated is contained in this Notice. To claim your share of the settlement proceeds, you must submit a valid Claim Form postmarked (if mailed) or received (if submitted online) on or before _____, 2025.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM** | **All Settlement Class Members must submit a claim by _____, 2025 to be eligible to receive a settlement payment.** |
| | If the Court ultimately approves the Settlement, you will be eligible to receive a payment if you submitted a timely, complete Claim Form and the Claims Administrator determines that you suffered a "Net Loss" resulting from your investment in any GPB Funds. The amount of your payment will be a proportional or "pro rata" share of the Net Settlement Fund based on your Net Loss resulting from your investment in any GPB Fund(s). Net Loss and calculation of settlement payments are explained in more detail in response to Question 9 below. |
| | Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Claims Administrator") has been appointed as the "Claims Administrator" responsible for administering the Settlement. After you submit your timely Claim Form, Epiq will determine each claimant's Net Loss as set forth in the Plan of Allocation using information provided and/or verified by claimants during the claims process. |
| | If your Claim Form is deemed deficient or rejected, you will have an opportunity to contest and/or cure the basis for the deficiencies or rejection by providing additional information and supporting documents. |
| | Once all disputes are resolved, Epiq will finalize the Net Loss amounts and calculate each claimant's individual settlement |

Exhibit 3
Page 82 of 264        Exhibit 1
Page 75 of 126

| | |
|---|---|
| | payment and share of the Net Settlement Fund as described in the in response to Question 9 below. |
| **DO NOTHING** | If you do nothing, you will not receive a settlement payment, and you will be bound by the Court's orders and judgments and give up any right to sue the Settling Defendants for claims in any way related to the claims asserted against them in these Actions. |
| **EXCLUDE YOURSELF (OPT OUT)** | If you exclude yourself from the Settlement Class, you will receive no settlement payment and will have no right to object to the Settlement. You will not participate in proceedings in the *Kinnie Ma* Action or be legally bound by any of the Court's orders or judgments in the *Kinnie Ma* Action and you will also forfeit any right to future class recovery (if any) against any non-settling Defendants. You will retain only any individual rights you may still have against the Settling Defendants and other non-settling Defendants related to the matters alleged in the Actions. **If you wish to exclude yourself (opt out) from the Settlement Class, you must submit a request for exclusion postmarked on or before _____, 2025 and follow the instructions in the response to Question 17 of this Notice.** |
| **OBJECT** | Write to the Court about why you do not like the Settlement and/or the request for attorneys' fees and expenses. You will still be a Settlement Class Member. **Objections must be *received* by the Court and counsel on or before _____, 2025. If you submit a written objection, you may (but do not have to) attend the Final Approval Hearing.** |
| **FINAL APPROVAL HEARING ON _____, 2025** | Ask to speak in Court about the fairness of the Settlement. **Requests to speak at the Final Approval Hearing must be *received* by the Court and counsel on or before _____, 2025.** |

## STATEMENT OF CERTAIN KEY TERMS

### Statement of Settlement Amount

A $46,000,000 settlement fund has been established pending approval by the Court (the "Settlement Amount"). If the Settlement Amount is approved by the Court, anyone who purchased or acquired an interest in any GPB Fund during the Class Period (as defined below), or who subsequently become a transferee of such partnership units (subject to certain exclusions described in response to Question 6 below), submits a valid Claim Form by _____, 2025, has suffered

4

Exhibit 3
Page 83 of 264         Exhibit 1
Page 76 of 126

a Net Loss, and does not opt out from the Settlement Class, will be a member of the Settlement Class eligible to receive a payment out of the Net Settlement Fund.

**Statement of Potential Outcome of Case**

The Parties disagree on both liability and damages and do not agree on the amount of damages that would be recoverable even if the Settlement Class prevailed on each claim alleged. Settling Defendants have denied and continue to deny that they violated any laws or engaged in any wrongdoing. Settling Defendants deny that they are liable to the Settlement Class and deny that the Settlement Class has suffered any damages.  The issues on which the Parties disagree are many, but include whether Settling Defendants engaged in conduct that would give rise to any liability to the Settlement Class for the claims alleged in the Actions related to the GPB Funds and whether Settling Defendants have valid defenses to any such claims.

**Statement of Attorneys' Fees and Expenses Sought**

Since inception of these Actions, the attorneys working on behalf of Plaintiffs ("Settlement Class Counsel") have expended considerable time and effort in the prosecution of the Actions on a wholly contingent basis and have further advanced the expenses of the Actions in the expectation that if they were successful in obtaining a recovery for the Settlement Class, they would be paid from such recovery.  Consistent therewith, Settlement Class Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount. Settlement Class Counsel will also apply for payment or reimbursement of reasonable costs and expenses incurred in prosecuting the Actions, including the costs associated with hiring Epiq to administer the Settlement.

Additionally, Settlement Class Counsel will request a Service Award for the Settlement Class Representatives, to be paid from the Settlement Fund for helping to bring and settle the case. The Settlement Class Representatives will seek no more than $10,000 each as an incentive award, but the Court may award less than this amount.

**Reasons for the Settlement**

Settlement Class Representatives' principal reason for entering into the Settlement is that it provides substantial benefits to the Settlement Class *now*, without further risk or the delays inherent in continued litigation.  The cash benefit under the Settlement must be considered against the significant risk that a smaller recovery—or, indeed, no recovery at all—might be achieved after contested motions, trial, and likely appeals, a process that could last several years into the future. For the Settling Defendants, who have denied and continue to deny all allegations, liability, fault, or wrongdoing whatsoever, the principal reason for entering into the Settlement is to eliminate the uncertainty, risk, costs, and distraction inherent in any litigation, especially in complex cases such as the Actions.

**Further Information**

For further information regarding the Actions, this Notice, or the Settlement Agreement, please contact Epiq at (888) 550-9942, Monday through Friday between 9:00 a.m. to 5:00 p.m. ET, or visit www.GPBSecuritiesSettlement.com. You may also contact Settlement Class Counsel:

Exhibit 3

Page 84 of 264          Exhibit 1

Page 77 of 126

**STOLL STOLL BERNE**
**LOKTING & SHLACHTER P.C.**
Timothy S. DeJong
209 SW Oak Street, Suite 500
Portland, OR 97204
Tel: (503) 227-1600
Fax: (503) 227-6840
Email: tdejong@stollberne.com

**GRANT & EISENHOFER P.A.**
Daniel L. Berger
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com

**DILWORTH PAXSON LLP**
Catherine Pratsinakis
1650 Market Street, Suite 1200
Philadelphia, PA 19103-7391
Tel: (215) 575-7000
Email: cpratsinakis@dilworthlaw.com

**KAPLAN FOX & KILSHEIMER LLP**
Peter S. Linden
800 Third Avenue, 38th Floor
New York, New York 10022
Tel.: (212) 687-1980
Fax: (212)687-7714
Email: plinden@kaplanfox.com

**LAW OFFICE OF RICHARD L. STONE PLLC**
Richard L. Stone
11 East 44th Street, Suite 1900
New York, New York 10017
Tel.: (561) 358-4800
Email: rstoneesq@rstoneesq.com

**Do Not Call the Court, the Clerk's Office, or Defendants with Questions About the Settlement.**

**BACKGROUND INFORMATION**

| 1. | Why was this Notice issued and why did I get it? |
|---|---|

6

Exhibit 3
Page 85 of 264          Exhibit 1
                       Page 78 of 126

This Notice was sent to you pursuant to an Order of a U.S. District Court because you or someone in your family or an account for which you serve as custodian may have purchased or otherwise acquired limited partnership units in any of the GPB Funds between January 1, 2013 through December 31, 2018, inclusive (the "Class Period"), or subsequently may have become a transferee of such limited partnership units (subject to certain exclusions described in the response to Question 6 below).

This Notice explains the Actions, Settlement, and Settlement Class Members' legal rights in connection with the Settlement, what benefits are available, who is eligible for them, and how to get them.

The Settlement Class Representatives brought their putative class action lawsuits against certain Defendants. The Settling Defendants are CohnReznick LLP; Crowe LLP; Margolin, Winer & Evens LLP; RSM US LLP; and WithumSmith+Brown, PC.

The Settlement contemplates the resolution of all claims against only the Settling Defendants in two proposed class actions lawsuits: *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP (the "*Kinnie Ma* Action"), pending in the United States District Court for the Western District of Texas and *Deluca, et al. v. GPB Holdings, LP, et al.*, No. 1:19-cv-10498-LAK (the "*DeLuca* Action"), pending in the United States District Court for the Southern District of New York.

The Settling Parties have asked the United States District Court for the Western District of Texas, Austin Division, to review the fairness and reasonableness of the terms of the Settlement, Plan of Allocation, and Settlement Class Counsels' request for attorneys' fees and reimbursement of expenses and service awards to the Settlement Class Representatives.

## 2.    What is a Class Action?

In a class action, one or more people called the class representatives sue on behalf of a group or a "class" of people who have similar claims. In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the class.

This Settlement involves two proposed class action lawsuits brought by the Settlement Class Representatives (1) Kinnie Ma IRA; Jeffery S. Gramm IRA; Stacy Greasor IRA; Victor Wade IRA; Kazue Bell; Dean Crooks; Corri Rene Eden; Catherine Kominos; Karen Loch; Robert A. Stone Living Trust; Shirley Stone Living Trust; Jeffrey Barasch; and Loretta Dehay ("*Kinnie Ma* Plaintiffs"); and (2) Barbara DeLuca; Drew R. Naylor; Peggy Rollo; Peter Beddia; Michael Oles; Robert (Bob) Ricci; and James Staples, as Trustee of the 616 Moved Trust ("*DeLuca* Plaintiffs").

## 3.    What is this lawsuit about?

Exhibit 3
Page 86 of 264          Exhibit 1
Page 79 of 126

The Settlement Class Representatives alleged that the Settling Defendants committed negligence, fraud, and/or aided and abetted fraud or a breach of fiduciary duty by issuing false audit opinions and allowing the dissemination of materially false and misleading financial statements and marketing materials that concealed related party transactions and the true financial condition of the GPB Funds. Plaintiffs in the *Kinnie Ma* Action also alleged violations of the Texas Securities Act related to the sale of unregistered securities.

### 4.    Why is there a Settlement?

The Settling Defendants deny that they violated any laws or engaged in any wrongdoing. The Court has not determined who is right. Rather, the Parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

The Court has not decided in favor of Plaintiffs or the Settling Defendants. Instead, both sides agreed to the Settlement to avoid the uncertainties and expenses associated with further litigation, and the Settlement Class Representatives agreed to the Settlement in order to ensure that the Settlement Class Members receive compensation. Settlement Class Representatives and Settlement Class Counsel believe that the claims asserted against Settling Defendants have merit. They recognize, however, the significant expense and length of the continued proceedings that would be necessary to pursue their claims against Settling Defendants through the completion of discovery, certification of the class, summary judgment, trial, and appeals, as well as the substantial risks they would face in establishing liability and damages.

Settling Defendants have argued, and would continue to argue, that they did not violate any laws or engage in any wrongdoing. Overcoming these arguments would have presented significant challenges to Plaintiffs. In light of these risks, the amount of the Settlement, and the immediacy of recovery to the Settlement Class, Settlement Class Representatives and Settlement Class Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Settlement Class Representatives and Settlement Class Counsel believe that the Settlement provides a favorable result for the Settlement Class, namely $46,000,000 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Actions would produce smaller, or no, recoveries after full discovery, a class certification motion, summary judgment, trial, and appeals, possibly years in the future. Settling Defendants are entering into the Settlement solely to eliminate the uncertainty, burden, and expense of further protracted litigations in two separate jurisdictions. Each Settling Defendant denies any wrongdoing and denies that Settlement Class Representatives have asserted any valid claims as to any of them, and expressly denies any and all allegations of fault, liability, wrongdoing, or damages whatsoever.

### 5.    How do I know if I am in the Settlement Class?

The **Settlement Class** is defined as: all Persons who, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of the GPB Funds during the Class Period (January 1, 2013 through December 31, 2018, inclusive) and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (subject to certain exclusions described immediately below).

Exhibit 3
Page 87 of 264          Exhibit 1
Page 80 of 126

The Settlement Class does not include: (a) Defendants named in the *DeLuca* and *Kinnie Ma* Actions or their affiliates; (b) present or former executive directors or officers of GPB Capital Holdings, LLC, the GPB Funds, Ascendant Capital, LLC, Ascendant Alternative Strategies, LLC, and/or Axiom Capital Management, Inc.; (c) the legal representatives, heirs, successors-in-interest, or assigns of any Person within subsection (a) or (b) of this Paragraph; (d) members of the immediate family of any natural Person within subsection (a) or (b) of this Paragraph; (e) any entity in which any Person within subsection (a) or (b) of this Paragraph has, or had during the Class Period, a controlling interest; and (f) any affiliate of GPB Capital Holdings, LLC. For purposes of this definition, "immediate family" means a natural Person's parent, sibling, spouse, or child.

Receipt of this Notice means that you have been identified as a potential member of the Settlement Class. If you do not believe that is correct, please contact Epiq at (888) 550-9942, between 9:00 a.m. to 5:00 p.m. ET.

| **6.** | **What are the exceptions to being included?** |

You are not a Class Member if you submit a valid, timely request for exclusion from the Settlement Class or if you are any of the following: (a) Defendants named in the *DeLuca* and *Kinnie Ma* Actions or their affiliates; (b) present or former executive directors or, officers , or members of GPB Capital Holdings, LLC, the GPB Funds, Ascendant Capital, LLC, and/or Ascendant Alternative Strategies, LLC, and/or Axiom Capital Management, Inc.; (c) the legal representatives, heirs, successors-in-interest, or assigns of any Person within subsection (a) or (b) of this Paragraph; (d) members of the immediate family of any natural Person within subsection (a) or (b) of this Paragraph; (e) any entity in which any Person within subsection (a) or (b) of this Paragraph has, or had during the Class Period, a controlling interest; and (f) any affiliate of GPB Capital Holdings, LLC. For purposes of this definition, "immediate family" means a natural Person's parent, sibling, spouse, or child.

| **7.** | **I'm still not sure if I am included.** |

If you are still not sure whether you are included, you may ask for help, which will be provided to you at no cost. You may call Epiq at (888) 550-9942 between 9:00 a.m. to 5:00 p.m. ET or Settlement Class Counsel at the contact information provided above, or you may fill out and submit your Claim Form enclosed with this Notice package, to see if you qualify.

## THE SETTLEMENT BENEFITS

| **8.** | **What does the Settlement provide?** |

The Settling Defendants have agreed to collectively pay $46,000,000 in cash to be distributed, subject to deduction for any taxes, notice and administration costs, attorneys' fees, litigation expenses, service awards, and any other costs and fees approved by the Court. The remaining amount will be distributed on a proportional or "pro rata" basis to Settlement Class Members who

9

Exhibit 3
Page 88 of 264          Exhibit 1
Page 81 of 126

submit a valid Claim Form and have suffered a Net Loss as set forth in response to Question 9 below.

In exchange, all claims asserted against the Settling Defendants in the Actions will be released, and the Actions will be dismissed with prejudice as to the Settling Defendants.

Additional discussion of the settlement benefits can be found in the Settlement Agreement available at www.GPBSecuritiesSettlement.com.

| 9. | How will the Settlement be allocated? |
|----|---------------------------------------|

The Settlement calls for payment of $46,000,000 into a common fund for the benefit of Settlement Class Members. All funds remaining after deduction for all Court-approved charges, fees, and/or expenses will be paid to the Settlement Class ("Net Settlement Fund").

Each claimant who is eligible for payment, does not exclude themselves from the Settlement Class, and files a valid and timely Claim Form will receive their share of the Net Settlement Fund. A claimant's individual settlement payment will be calculated pursuant to the Plan of Allocation and will be paid on a proportional, or "pro rata" basis, based on each claimant's "Net Loss" as a percentage of all eligible claimants' aggregate Net Losses.

"Net Loss" means the total principal amount that an individual class member invested in any GPB Fund during the Class Period, minus any prior amounts received by that claimant on account of his or her investment(s) (including any amounts previously received as redemptions, dividends, or from any other source as a result of any actual or threatened litigation or arbitration concerning the GPB Funds). Claimants who have received amounts (through redemptions, dividends, sales, or any other sources) greater than the total principal amount that claimant invested in any GPB Fund have not suffered a Net Loss and will not receive any payment from the Net Settlement Fund or otherwise in connection with this Settlement. The calculation of a Net Loss is not intended to be an estimate of, nor does it indicate, the amount that a claimant might have been able to recover after a trial. Nor is the calculation of a Net Loss an estimate of the amount that will be paid to a claimant from the Net Settlement Fund.

The Court has appointed Epiq as the "Claims Administrator" responsible for administering the Settlement. Epiq will determine each claimant's Net Loss as set forth in the Plan of Allocation using information provided and/or verified by claimants during the claims process. Epiq will then use its Net Loss calculation to determine each claimant's share of the Net Settlement Fund.

If your Claim Form is deemed deficient or rejected, you will have an opportunity to contest and/or cure the basis for the deficiencies or rejection by providing additional information and supporting documents. If anything remains in dispute thereafter you will have the opportunity to seek relief from the Court as described below.

It is not possible to determine how much any individual claimant may receive from the Net Settlement Fund at this time.

Payment pursuant to the Plan of Allocation set forth above shall be conclusive against all Class Members. No person shall have any claim against the Settlement Class Representatives, Settlement Class Counsel, Settling Defendants, the Claims Administrator or other person designated by Settlement Class Counsel or Settling Defendants and/or the other released parties and/or their counsel based on distributions made substantially in accordance with the Settlement, the Plan of Allocation, or further orders of the Court. Any Settlement Class Member who fails to complete and submit a valid and timely Claim Form shall be barred from participating in distributions from the Net Settlement Fund (unless otherwise ordered by the Court), but otherwise shall be bound by all of the terms of the Settlement, including the terms of any judgment entered and the releases given. The Plan of Allocation is separate from the Settlement and any decision by the Court regarding the Plan of Allocation will not affect the finality of approval of the Settlement.

For more information, see the Plan of Allocation at www.GPBSecuritiesSettlement.com.

## HOW TO GET BENEFITS

### 10.    What do I need to do to get my payment?

If the Court grants final approval of the Settlement, then you must submit a Claim Form to be eligible to receive a payment. A Claim Form is enclosed with this Notice, or it may be downloaded at www.GPBSecuritiesSettlement.com. Read the instructions carefully, fill out the Claim Form, include any required documentation, sign it, and **submit it online at www.GPBSecuritiesSettlement.com by _____, 202__ or mail it so that it is postmarked by _____, 202_** to the following address: **GPB Securities Settlement, P.O. Box 2916, Portland, OR 97208-2916.**

Epiq has been appointed as the "Claims Administrator" responsible for administering the Settlement. After you submit your timely Claim Form, Epiq will determine each claimant's Net Loss as set forth in the Plan of Allocation using information provided and/or verified by claimants during the claims process.

If your Claim Form is deemed deficient or rejected, you will have an opportunity to contest and/or cure the basis for the deficiencies or rejection by providing additional information and supporting documents.

Once all disputes are resolved, Epiq will finalize the Net Loss amounts and calculate each claimant's individual settlement payment and share of the Net Settlement Fund as described in the prior paragraph.

Please visit www.GPBSecuritiesSettlement.com for more information about how payments will be processed and transmitted.

### 11.    When will I get my payment?

11

Exhibit 3
Page 90 of 264          Exhibit 1
Page 83 of 126

As of the date of this Notice, the Court has preliminarily approved the Settlement Agreement and the Settlement set forth therein and found that the Settlement has resulted from arms-length bargaining between the parties and as such may be submitted to the Settlement Class for consideration pursuant to Rule 23(e)(1)(B)(i) of the Federal Rules of Civil Procedure.

**The Court will hold a Final Approval Hearing on _____, 2025 at ____.m. CT**, to decide whether to approve the Settlement. Even if the Court approves the Settlement, there might be appeals. It is always uncertain whether appeals can be resolved, and if so, how long it would take to resolve them. It also takes time for all the Claim Forms to be processed. Please be patient. Barring appeals, Authorized Claimants will receive their payment after the Settlement has been finally approved.

More information is available at www.GPBSecuritiesSettlement.com.

## PARTICIPATING IN THE SETTLEMENT

**12.    What am I giving up if I stay in the Class?**

If the Settlement becomes final and you do not exclude yourself, you will give up your right to sue Settling Defendants and certain related released parties, described below, for the claims this Settlement resolves. That means you and your respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, cannot sue, continue to sue, or be part of any other lawsuit against the "Released Parties" (as defined below) about "Released Claims" (as defined below) in this case. It also means that you will be bound by all of the Court's orders concerning the Settling Defendants.

"Released Parties" means (i) each of the Settling Defendants; (ii) the predecessors, successors, assigns, direct or indirect parents, direct or indirect subsidiaries, and affiliates of each of the Settling Defendants (including, without limitation, current or former member firms or correspondent firms within the same network as a Settling Defendant, all entities that manage the network in which any Settling Defendant is a member, and Baker Tilly US, LLP and Baker Tilly Advisory Group, LP); and (iii) each of the foregoing's current and former partners, limited partners, general partners, officers, directors, employees, legal and equitable owners, trustees, shareholders, members, managers, principals, agents, attorneys, legal representatives, affiliated persons or entities, predecessors, successors, assigns, direct or indirect parents, direct or indirect subsidiaries, affiliates, beneficiaries, assigns, heirs, executors, administrators, lenders, indemnitors, and insurers.

"Released Claims" means, to the fullest extent that the law permits their release, all past, present, and future claims against any and all of the Released Parties of any nature whatsoever in any way relating, arising from, or based upon either of the Actions, the allegations made or that could have been made in either of the Actions, the GPB Funds or GPB Capital Holdings, LLC, any investment in the GPB Funds, or any work performed by any Settling Defendant for or relating to any of the GPB Funds or GPB Capital Holdings, LLC, including, without limitation, all claims, suits, actions, allegations, damages (including, without limitation, compensatory, punitive, exemplary, rescissory, direct, consequential or special damages, restitution, and disgorgement), liabilities,

12

Exhibit 3
Page 91 of 264          Exhibit 1
Page 84 of 126

causes of action, complaints, lawsuits, responsibilities, demands, rights, debts, penalties, costs, expenses, fees, injunctive relief, attorneys' fees, expert or consulting fees, prejudgment interest, indemnities, duties, losses, and obligations of any kind, known or unknown, foreseen or unforeseen, whether -apparent or concealed, asserted or unasserted, existing or contingent, direct or indirect, anticipated or unanticipated, asserted or that could have been asserted by, on behalf of, for the benefit of, or in the name of any Settlement Class Members who are not Settlement Class Opt-Outs, whether legal, contractual, rescissory, statutory, or equitable in nature, whether arising under federal, state, common, or foreign law, that now exist or have ever existed from the beginning of time until the date of the Settlement Agreement.

The Settlement Agreement, available at www.GPBSecuritiesSettlement.com, also describes the specific claims you are giving up against the Settling Defendants, so read it carefully. If you have any questions you can talk to the lawyers listed in this Notice for free or you can, of course, talk to your own lawyer if you have questions about what this means.

| 13. | What happens if I do nothing at all? |
|---|---|

If you do not do anything, you will not receive any money from this Settlement. In addition, unless you exclude yourself, you will be a member of the Settlement Class, which means that you give up your right to ever be part of any other lawsuit against the Settling Defendants about the legal claims being resolved by this Settlement and you will be bound by the Court's judgments and orders with respect to the Settling Defendants, as set forth in the response to Question 12.

## THE LAWYERS REPRESENTING YOU

| 14. | Do I have a lawyer in the case? |
|---|---|

The Court has appointed Timothy S. DeJong of Stoll Stoll Berne Lokting & Shlachter P.C., LLP, Daniel L. Berger of Grant & Eisenhofer P.A., Catherine Pratsinakis of Dilworth Paxson LLP, Peter S. Linden of Kaplan Fox & Kilsheimer LLP, and Richard L. Stone of the Law Offices of Richard L. Stone PLLC, to be the lead attorneys representing the Settlement Class. They are called "Settlement Class Counsel." They believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class. These lawyers will apply to Court for payment out of the Settlement Fund; you will not otherwise be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

| 15. | How will Settlement Class Counsel and the Class Representatives be paid? |
|---|---|

Settlement Class Counsel have expended considerable time and effort in the prosecution of their respective Actions on a wholly contingent basis and have advanced the expenses of the Actions in the expectation that if they were successful in obtaining a recovery for the Settlement Class, they would be paid from such recovery.

Exhibit 3
Page 92 of 264          Exhibit 1
Page 85 of 126

Settlement Class Counsels' attorneys' fees, costs, and expenses will be paid from the Settlement Amount in an amount determined and awarded by the Court. Settlement Class Counsel will seek no more than thirty percent (30%) of the Settlement Amount. They will also apply for payment or reimbursement of reasonable costs and expenses incurred in prosecuting the Actions,  a service award for each of the Settlement Class Representatives, not to exceed $10,000 each, and the costs of the Settlement administration, including costs to be paid to Epiq.

**16.    Can I make an appearance in this action?**

Yes. Any Class Member may make an appearance in the *Kinnie Ma* Action through their own counsel, at their own expense.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

**17.    How do I exclude myself from the Settlement?**

If you do not want to participate in this Settlement and would prefer instead to keep any right you may have to sue Settling Defendants on your own concerning the claims being released by the Settlement, then you must take steps to remove yourself from the Settlement Class.  This is called excluding yourself—or is sometimes referred to as "opting out."

If you ask to be excluded from the Settlement Class, you will not receive any payment from the Settlement and you cannot object to the Settlement. If you exclude yourself from the Settlement Class, you will not participate in proceedings in the *Kinnie Ma* Action or be legally bound by any of the Court's orders or judgments in the *Kinnie Ma* Action, and you will also forfeit any right to future class recovery (if any) against any non-settling Defendants.  However, you will retain any individual rights you may still have with respect to Settlement Defendants and other non-settling Defendants related to matters alleged in the Actions. Please also note that there will be no future recoveries in the *DeLuca* Action as Plaintiffs will seek to dismiss that Action in its entirety if and when this Settlement becomes Final.

To exclude yourself from the Settlement Class, you must mail or otherwise deliver a letter (or request for exclusion) stating that you want to be excluded from the Settlement and *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP. If you exclude yourself, you should not submit a Claim Form to ask for any money. Your letter or request for exclusion must also include your name, your address, your signature, the name and number of this case, and a statement that you wish to be excluded. You must mail or deliver your exclusion request so that it is postmarked no later than _____, 20___, to:

**EXCLUSIONS**
GPB Securities Settlement
P.O. Box 2916
Portland, OR 97208-2916

Your exclusion request must comply with these requirements in order to be valid and effective.

Exhibit 3
Page 93 of 264              Exhibit 1
                           Page 86 of 126

The Settlement Class Counsel or the Claims Administrator may, at their discretion, request from any Person requesting exclusion documentation sufficient to prove his, her, their, or its purchases in limited partnership units in GPB Funds.

## 18.    If I do not exclude myself, can I sue the Settling Defendants for the same thing later?

No. Unless you exclude yourself, you give up any rights you may potentially have to sue the Settling Defendants or the other Released Parties in connection with the Released Claims. If you have a pending lawsuit against any Settling Defendant or other Released Party, speak to your lawyer in that case immediately. You must exclude yourself from the Settlement Class in this Action to continue your own lawsuit. Remember, the exclusion postmark deadline is _____, 202__.

## 19.    If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, or opt out, from the Settlement Class, you will receive no payment or benefits under this Settlement or take part in future recoveries, if any, in the *Kinnie Ma* Action.

## OBJECTING TO THE SETTLEMENT

## 20.    How do I object to the Settlement?

If you are a Settlement Class Member who has not opted out of the Settlement Class, you may object to the Settlement or any part you disagree with. This means you may provide the Court with reasons why you think the Court should not approve the Settlement and the Court will consider your views. You may object to any aspect of the proposed Settlement, including the proposed Plan of Allocation, Settlement Class Counsels' application for fees and expenses, and/or any request for service awards payable to the Settlement Class Representatives. You may also offer comments on any of the foregoing without lodging a formal objection.

To object, you must submit a signed writing that states that you wish to object to the proposed Settlement in *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP. Any objections should be filed with the Court and must: (a) identify the case name and docket number: *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP; (b) state the name, address, and telephone number of the person or entity objecting; (c) state whether the objector is represented by counsel and, if so, the name, address, and telephone number of the objector's counsel; (d) state with specificity the grounds for the objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention and whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; (e) include documents sufficient to prove membership in the Settlement Class; and (f) be signed by the objector.

If you want to appear and speak at the Final Approval Hearing to object to the Settlement, with or

Exhibit 3
Page 94 of 264        Exhibit 1
Page 87 of 126

without a lawyer, you must state so in your submission.

Your objection must be filed with the Court <u>and</u> mailed or delivered to each of the following addresses such that it is *received* **no later than** _____, **20__:**

| Court | Settlement Class Counsel | Settling Defendant's Counsel To Be Notified |
|---|---|---|
| The Hon. Robert Pitman Courtroom 4 501 West 5th Street, Suite 5300 Austin, TX 78701 | STOLL STOLL BERNE LOKTING & SHLACHTER P.C. Timothy S. DeJong 209 SW Oak Street, Suite 500 Portland, OR 97204  DILWORTH PAXSON LLP Catherine Pratsinakis 1650 Market Street, Suite 1200 Philadelphia, PA 19103-7391 | LATHAM & WATKINS LLP Kevin M. McDonough 1271 Avenue of the Americas New York, NY 10020 *Counsel for Crowe LLP*  WILLIAMS & CONNOLLY LLP Katherine M. Turner 680 Maine Avenue SW Washington, DC 20024 *Counsel for RSM US LLP* |

**21.    What's the difference between objecting and excluding myself from the Settlement?**

Objecting simply means telling the Court that you do not like something about the Settlement. You can object **only** if you stay in the Settlement Class.

Excluding yourself from the Settlement Class is telling the Court that you do not want to be paid and do not want to release any claims you think you may have against the Settling Defendants or the other Released Parties. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE FINAL APPROVAL HEARING

**22.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold the Final Approval Hearing on _____, 2025 at __.m. CT, in the Western District of Texas, Austin Division, Courtroom 4 at 501 West 5th Street, Austin, TX 78701.

At the Final Approval Hearing, the Court will consider whether the terms of the proposed Settlement are fair, reasonable, and adequate. If there are objections, the Court will consider them, even if you do not ask to speak at the hearing. The Court will listen to people who have asked to speak at the hearing. The Court will also consider whether, for purposes of the proposed Settlement only, the *Kinnie Ma* Action should be certified as a class action on behalf of the Settlement Class, the Plaintiffs should be certified as Class Representatives for the Settlement Class, and the Settlement Class Counsel should be appointed. The Court will consider Settlement Class Counsel's

Exhibit 3
Page 95 of 264              Exhibit 1
Page 88 of 126

motion for attorneys' fees and expenses, any other charges to be paid out of the Settlement such as notice and administration costs, and any service awards to be paid to the Settlement Class Representatives.

The Court will also consider whether the proposed Plan of Allocation of settlement proceeds is fair, reasonable, and adequate and therefore should be approved. After the Final Approval Hearing, the Court will decide whether to approve the Settlement and the Plan of Allocation. We do not know how long these decisions will take. You should be aware that the Court may change the date and time of the Final Approval Hearing without another notice being sent to Settlement Class Members. **Any updates regarding the date or time of the Final Approval Hearing or concerning whether the Settlement Hearing will be held by phone or video, will be posted on www.GPBSecuritiesSettlement.com**. Please review that website or contact Settlement Class Counsel if you plan to attend the Final Approval Hearing.

### 23.    Do I have to come to the hearing?

No. Settlement Class Counsel will answer any questions the Court may have. You are welcome, however, to attend the hearing at your own expense. If you send an objection or comment, you do not have to come to Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also retain another lawyer to attend, but it is not required.  Settlement Class Members do not need to appear at the hearing.

### 24.    May I speak at the hearing?

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your letter or brief objecting to the Settlement a statement saying that it is your "Notice of Intent to Appear at the Final Approval Hearing of *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP." It must include your name, address, telephone number, and signature, as well as the name and address of your lawyer, if one is appearing for you.

Your notice of intention to appear must be *received* **no later than** _____, **2025**, and must be sent to the Clerk of Court, Settlement Class Counsel, and Counsel for certain Settling Defendants, at the addresses listed above in response to Question 20.

You cannot speak at the hearing if you exclude yourself from the Settlement Class.

### GETTING MORE INFORMATION

### 25.    Are there more details about the Settlement?

**This Notice summarizes the proposed Settlement but does not contain all of the details included in the Settlement.**

Exhibit 3
Page 96 of 264          Exhibit 1
Page 89 of 126

You can get a copy of the Settlement Agreement at www.GPBSecuritiesSettlement.com or by contacting the Claims Administrator or Settlement Class Counsel as set forth in this Notice. You can also get a copy of the Settlement Agreement from the Clerk's Office at the United States District Court for the Western District of Texas, Austin Division, during regular business hours.

**26.    Where do I get more information?**

For more information, including a copy of the Summary Notice, the Settlement Agreement, the Plan of Allocation, and Settlement Class Counsel's fee application, or to submit a claim online or print out a hard copy claim form to file by mail, visit www.GPBSecuritiesSettlement.com. If you have further questions, you may call Epiq at (888) 550-9942, between 9:00 a.m. to 5:00 p.m. ET or contact Settlement Class Counsel. Before doing so, however, please read this Notice carefully as many of your questions are likely answered herein.

Documents related to the Actions may also be inspected at the Office of the Clerk of the United States District Court for the Western District of Texas, Austin Division and the Office of the Clerk of the United States District Court for the Southern District of New York, during regular business hours.  For a fee, all papers filed in these Actions are available at www.pacer.gov.

**DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE**

**BY ORDER OF THE COURT**
**UNITED STATES DISTRICT COURT**
**Western District of Texas- Austin Division**

# EXHIBIT E

Exhibit 3
Page 98 of 264        Exhibit 1
Page 91 of 126

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| BARBARA DELUCA, DREW R. NAYLOR, PEGGY ROLLO, PETER BEDDIA, MICHAEL OLES, ROBERT (BOB) RICCI, and JAMES STAPLES, as Trustee of the 616 MOVED TRUST, on behalf of themselves and other similarly situated limited partners, <br><br> *Plaintiffs*, <br><br> v. <br><br> GPB HOLDINGS, LP, *et al.*, <br><br> *Defendants*. | Case No. 1:19-cv-10498-LAK-JW <br><br><br> **NOTICE OF DISMISSAL WITH <u>PREJUDICE</u>** |

Pursuant to F.R.C.P. 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure and the Final Settlement Approval and Bar Order, dated _____, entered in the action pending in the United States District Court for the Western District of Texas captioned *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP (ECF No. ____), Plaintiffs Barbara Deluca, Drew R. Naylor, Peggy Rollo, Peter Beddia, Michael Oles, Robert (Bob) Ricci, and James Staples, as Trustee of the 616 Moved Trust, by and through their undersigned counsel, hereby give notice of the dismissal of the above-captioned action *with prejudice* as against as against Defendants Crowe LLP; Margolin, Winer & Evens LLP; RSM US LLP; and CohnReznick LLP.

Exhibit 3<br>Page 99 of 264          Exhibit 1<br>Page 92 of 126

Dated:  December 6, 2024                    Respectfully submitted,

                                            GRANT & EISENHOFER P.A.

                                            By:

                                            Daniel L. Berger
                                            Caitlin M. Moyna
                                            485 Lexington Ave. 29th Fl.
                                            New York, New York 10017
                                            Tel: (646) 722-8501
                                            dberger@gelaw.com
                                            cmoyna@gelaw.com

                                            OF COUNSEL:
                                            Catherine Pratsinakis (Admitted *PHV*)
                                            DILWORTH PAXSON LLP
                                            1650 Market Street, Suite 1200
                                            Philadelphia, PA 19103-7391
                                            Tel: (215) 575-7013
                                            cpratsinakis@dilworthlaw.com

                                            *Attorneys for Plaintiffs and Settlement
                                            Class Counsel*

Exhibit 3
Page 100 of 264                    Exhibit 1
                          Page 93 of 126

# EXHIBIT F

Exhibit 3
Page 101 of 264        Exhibit 1
Page 94 of 126

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KINNIE MA IRA, JEFFERY S. GRAMM IRA; STACY GREASOR IRA; VICTOR WADE IRA; KAZUE BELL; DEAN CROOKS, CORRI RENE EDEN; CATHERINE KOMINOS; KAREN LOCH; ROBERT A. STONE LIVING TRUST; SHIRLEY STONE LIVING TRUST; THE STANLEY S. AND MILLICENT R. BARASCH LIVING TRUST; AND LORETTA DEHAY, individually and on behalf of all others similarly situated, *Plaintiffs*, v. ASCENDANT CAPITAL, LLC, *et al.*, *Defendants*. | Case No. 1:19-cv-01050-RP |

## PROPOSED PLAN OF ALLOCATION

1.     The Settlement Amount[1] of $46 million and any interest earned thereon is the "Gross Settlement Fund."  The Gross Settlement Fund, less (1) any and all Taxes, (2) any and all costs of Administration of the Settlement, including all fees and costs paid or owing to the Settlement Administrator; (3) any and all costs of maintaining the Escrow Account, including all fees and costs paid or owing to the Escrow Agent; (4) any and all attorneys fees' and costs paid to Plaintiffs' Counsel in the Actions, as awarded by the Court; and (5) any service awards to the Settlement Class Representatives, as awarded by the Court (the "Net Settlement Fund") shall be distributed to Settlement Class Members who submit timely and valid Claim Forms to the Claims Administrator[2] ("Authorized Claimants").

2.     The Proposed Plan of Allocation (the "Plan of Allocation" or "Plan") set forth below is the plan for the distribution of the Net Settlement Fund that is being proposed by the putative Settlement Class Representatives and Settlement Class Counsel to the Court for approval. The Court may approve this Plan of Allocation or modify it without additional notice to the

---

[1] All capitalized terms used in this Plan of Allocation that are not otherwise defined herein shall have the meanings provided in the Parties' Stipulation and Agreement of Settlement, dated December 3, 2024 ("Settlement Agreement"), which is available at www.GPBSecuritiesSettlement.com.

[2] The Claims Administrator is Epiq and can be contacted by telephone at (888) 550-9942 Monday through Friday between 9:00 am to 5:00 pm ET.

1

Exhibit 3
Page 102 of 264        Exhibit 1
Page 95 of 126

Settlement Class. Any order modifying the Plan of Allocation will be posted on the Settlement website at www.GPBSecuritiesSettlement.com.

3.    The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses. The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial. Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making pro rata allocations of the Net Settlement Fund.

4.    Based on the formula set forth below, the "Net Loss" shall be calculated by the Claims Administrator based on an Authorized Claimant's aggregate amount of investments in a GPB Fund(s) made during the Settlement Class Period, as listed in the Claim Form and for which adequate documentation is provided or exists.

5.    Each Authorized Claimant who is eligible for payment will receive their share of the Net Settlement Fund. An Authorized Claimant's individual settlement payment will be calculated pursuant to the Plan of Allocation and will be paid on a proportional, or "pro rata", basis based on each Authorized Claimant's "Net Loss" as a percentage of all Authorized Claimants' aggregate Net Losses.

6.    "Net Loss" means the total principal amount that a claimant invested in any GPB Fund(s) during the Class Period, minus any prior amounts received by that claimant on account of his or her investment(s) (including any amounts previously received as redemptions or from sales ("Total Sales/Redemption Proceeds"), dividends or distributions received from GPB ("Total Distribution Amounts"), or the sum of gross distributions received from the GPB Funds' appointed monitor or receiver, and/or from any other source as a result of any actual or threatened litigation or arbitration concerning the GPB Funds ("Total Other Recoveries").

7.    Claimants who have received amounts (through Total Sales/Redemption Proceeds, Total Distribution Amounts, and Total Other Recoveries) greater than the total principal amount that claimant invested in any GPB Fund(s) have not suffered a Net Loss and will not receive any payment from the Net Settlement Fund or otherwise in connection with this Settlement.

8.    It is not possible to determine how much any individual Authorized Claimant may receive from the Net Settlement Fund at this time.

9.    For purposes of determining whether a claimant had a Net Loss with respect to his, her, or its overall transactions in any GPB Funds during the Class Period, the Claims Administrator shall determine the difference between (i) the Total Principal Amount Paid and (ii) the sum of Total Sales/Redemption Proceeds received, Total Distribution Amounts received, and Total Other Recoveries (collectively, the "Total Recovery"). If the claimant's Total Principal Amount Paid minus the Total Recovery is a positive number, that number will be the claimant's Net Loss on the

Exhibit 3
Page 103 of 264        Exhibit 1
Page 96 of 126

investment(s); if the number is a negative number or zero, that number will be the claimant's Net Gain on the investment(s).

10.    Net Losses will be calculated across all GPB Fund investments on an aggregated basis. A Net Loss in one GPB Fund investment could be offset by a Net Gain in a different GPB Fund investment.

11.    Settlement Class Counsel created the above Plan of Allocation in consultation with a damages expert who has reviewed this Plan of Allocation and has concluded that it is fair, reasonable, and just.

12.    Determination of Distribution Amount: The Net Settlement Fund will be distributed to Authorized Claimants on a pro rata basis based on the relative size of their Net Losses. Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's total Net Losses divided by the total Net Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

13.    If any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant. Any Distribution Amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose Distribution Amounts are $10.00 or greater.

14.    After the initial distribution of the Net Settlement Fund, the Claims Administrator shall make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the fund at least nine (9) months after the initial distribution, if Settlement Class Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator shall conduct a re-distribution of the funds remaining, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions to Authorized Claimants, who have cashed their prior checks and who would receive at least $10.00 in such additional re-distributions, may occur thereafter if Settlement Class Counsel, in consultation with the Claims Administrator, determine that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective.

15.    When it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to nonsectarian, not-for-profit organization(s), to be recommended by Settlement Class Counsel and approved by the Court.

16.    Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, shall be conclusive against all Settlement Class Members. No person shall have any claim against Settlement Class Representatives, Settlement Class Counsel, Settlement Class Counsel's consulting damages expert, Settling Defendants, Settling Defendants'

Exhibit 3
Page 104 of 264        Exhibit 1
Page 97 of 126

Counsel, or any of the other Released Parties, or the Claims Administrator or other agent designated by Settlement Class Counsel arising from distributions made substantially in accordance with the Stipulation, the Plan of Allocation approved by the Court, or further Orders of the Court.

17.     Settlement Class Representatives, Settling Defendants and their respective counsel, and all other Released Parties, shall have no responsibility or liability whatsoever for the investment or distribution of the Gross Settlement Fund, the Net Settlement Fund, the Plan of Allocation, the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

4

Exhibit 3
Page 105 of 264          Exhibit 1
Page 98 of 126

# EXHIBIT G

Exhibit 3
Page 106 of 264         Exhibit 1
Page 99 of 126

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| KINNIE MA IRA, JEFFERY S. GRAMM IRA; STACY GREASOR IRA; VICTOR WADE IRA; KAZUE BELL; DEAN CROOKS, CORRI RENE EDEN; CATHERINE KOMINOS; KAREN LOCH; ROBERT A. STONE LIVING TRUST; SHIRLEY STONE LIVING TRUST; THE STANLEY S. AND MILLICENT R. BARASCH LIVING TRUST; AND LORETTA DEHAY, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-01050-RP |
| *Plaintiffs*, v. | |
| ASCENDANT CAPITAL, LLC, *et al.*, | |
| *Defendants*. | |

**[PROPOSED] ORDER PRELIMINARILY
APPROVING CLASS ACTION SETTLEMENT**

WHEREAS, the above-captioned proposed class action (the "*Kinnie Ma* Action" or "this Action") is pending before this Court, with Timothy S. DeJong of Stoll Stoll Berne Lokting & Schlachter, P.C., Peter S. Linden of Kaplan Fox & Kilsheimer LLP, and Richard L. Stone of the Law Offices of Richard L. Stone, PLLC, having been appointed co-lead counsel for Plaintiffs ("*Kinnie Ma* Counsel");

WHEREAS, a related proposed class action is pending in the United States District Court for the Southern District of New York, captioned *Deluca, et al. v. GPB Holdings, LP, et al.*, No. 1:19-cv-10498-LAK (the "*DeLuca* Action") (collectively, with the *Kinnie Ma* Action, the "Actions"), with Daniel L. Berger of Grant & Eisenhofer P.A. and Catherine Pratsinakis of

1

Exhibit 3
Page 107 of 264     Exhibit 1
Page 100 of 126

Dilworth Paxson LLP having been appointed as co-lead counsel for Plaintiffs ("*DeLuca* Counsel*");

WHEREAS, Plaintiffs in the *Kinnie Ma* Action (Kinnie Ma IRA, Jeffery S. Gramm IRA, Stacy Greasor IRA, Victor Wade IRA, Kazue Bell, Dean Crooks, Corri Rene Eden, Catherine Kominos, Karen Loch, Robert A. Stone Living Trust, Shirley Stone Living Trust, Stanley S. and Millicent R. Barasch Living Trust, and Loretta Dehay (collectively the "*Kinnie Ma* Plaintiffs")) and Plaintiffs in the *DeLuca* Action (Barbara DeLuca, Drew R. Naylor, Peggy Rollo, Peter Beddia, Michael Oles, Robert Ricci, and James Staples, as Trustee of the 616 Moved Trust (collectively the "*DeLuca* Plaintiffs")), individually and on behalf of all others similarly situated (collectively "Plaintiffs"), have determined to settle with prejudice all claims asserted in the Actions against Defendants CohnReznick LLP, Crowe LLP, Margolin Winer & Evens LLP, RSM US LLP, and WithumSmith+Brown, PC, (the "Settling Defendants") on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated December 3, 2024 (the "Stipulation"), subject to the approval of the Court (the "Settlement");

WHEREAS, the Stipulation provides that the Settlement shall be submitted to this Court for approval and that the *DeLuca* Plaintiffs and those Settling Defendants who are parties to the *DeLuca* Action shall seek to maintain the stay currently in place in the *DeLuca* Action through and until the filing of a Notice of Dismissal in the *DeLuca* Action;

WHEREAS, the *Kinnie Ma* Plaintiffs have filed a Preliminary Approval Motion, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, seeking entry of an order preliminarily approving the Settlement in accordance with the Stipulation; making findings that the Court will likely be able to certify a settlement class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) for purposes of the Settlement only; appointing Plaintiffs as

2

Exhibit 3
Page 108 of 264          Exhibit 1
Page 101 of 126

Settlement Class Representatives for purposes of Settlement only; appointing *Kinnie Ma* Counsel and *DeLuca* Counsel as Settlement Class Counsel for the settlement class for purposes of Settlement only; approving the form and manner of distribution of the Notice to the Settlement Class Members (as defined in the Stipulation); setting of a date and time for the Final Approval Hearing; setting of a method and deadline for objections to the Settlement; and setting of a method and deadline for Settlement Class Members to exclude themselves from the Settlement Class (the "Preliminary Approval Motion");

WHEREAS, the Court has read and considered: (a) the Preliminarily Approval Motion and the papers filed and arguments made in connection therewith; and (b) the Stipulation and the Exhibits attached thereto; and

WHEREAS, unless otherwise defined in this Order, the capitalized terms herein shall have the same meaning as they have in the Stipulation;

NOW THEREFORE, IT IS HEREBY ORDERED:

1.        **Proposed Certification of Class for Settlement Purposes.** The Parties have proposed certification of the following Settlement Class, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedures and solely for purposes of Settlement, consisting of:

> All Persons (as defined in the Stipulation) who, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of GPB Holdings, LP; GPB Holdings Qualified, LP; GPB Automotive Portfolio, LP; GPB Holdings II, LP; GPB Waste Management, LP (also known as Armada Waste Management LP); GPB Cold Storage, LP; GPB NYC Development, LP; GPB Holdings III, LP; and each of their predecessors, successors, subsidiaries, and affiliates (collectively, the "GPB Funds") during the period of January 1, 2013 through December 31, 2018 (the "Class Period") and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (except for certain individuals and entities that have been excluded from the Settlement Class as follows). The Settlement Class does not include: (a) Defendants in the Actions or their affiliates; (b) present

3

Exhibit 3
Page 109 of 264            Exhibit 1
Page 102 of 126

or former executive directors or officers of GPB Capital Holdings, LLC, the GPB Funds, Ascendant Capital, LLC, Ascendant Alternative Strategies, LLC or Axiom Capital Management, Inc.; (c) the legal representatives, heirs, successors-in-interest, or assigns of any Person within subsection (a) or (b) of this Paragraph; (d) members of the immediate family of any natural Person within subsection (a) or (b) of this Paragraph; (e) any entity in which any Person within subsection (a) or (b) of this Paragraph has, or had during the Class Period, a controlling interest; and (f) any affiliate of GPB Capital Holdings, LLC.   For purposes of this definition, "immediate family" means a natural Person's parent, sibling, spouse, or child.

Each Person within the scope of the Settlement Class is a "Settlement Class Member."

2.      **Class Findings.** Solely for purposes of the Settlement, the Court preliminarily finds, pursuant to Rule 23(e)(1)(B)(ii) of the Federal Rules of Civil Procedure, that it will likely be able to certify the Settlement Class for purposes of the proposed Settlement because the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) have been or likely will be satisfied, as follows: (a) the members of the Settlement Class are so numerous that their joinder would be impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of Plaintiffs in the action are typical of the claims of the Settlement Class; (d) Plaintiffs and Settlement Class Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the action for purposes of the proposed Settlement.  These preliminary findings are made solely for the purposes of the Settlement, and are without prejudice to, or waiver of, the right of any non-Settling Defendants to contest certification of any other class proposed in this Action.  Further, the Court's preliminary finding in this Order shall have no effect on any motion to certify any class in this Action, and no Person may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class.

4

Exhibit 3
Page 110 of 264           Exhibit 1
                Page 103 of 126

3.      The Court also finds, pursuant to Rule 23(e)(2)(A)of the Federal Rules of Civil Procedure, that, for purposes of the proposed Settlement, it will likely be able to appoint Plaintiffs as Settlement Class Representatives for the Settlement Class and appoint *Kinnie Ma* Counsel and *DeLuca* Counsel as Settlement Class Counsel for the certified Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

4.      **Settlement Class Counsel.** The Court hereby appoints Timothy S. DeJong of Stoll Stoll Berne Lokting & Schlachter, P.C., Daniel L. Berger of Grant & Eisenhofer P.A., Catherine Pratsinakis of Dilworth Paxson LLP, Peter S. Linden of Kaplan Fox & Kilsheimer LLP, and Richard L. Stone of the Law Offices of Richard L. Stone, PLLC, as Settlement Class Counsel for purposes of effectuating the Stipulation and this Settlement.

5.      **Substitution of Plaintiff.** Pursuant to Fed. R. Civ. P. 25, Jeffery Barasch, as transferee, is substituted as a party for the Stanley S. and Millicent R. Barasch Living Trust.

6.      **Preliminary Approval of the Settlement.** The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation, and finds, pursuant to Rule 23(e)(1)(B)(i) of the Federal Rules of Civil Procedure, that it will likely be able to finally approve the Settlement under Rule 23(e)(2) as being fair, reasonable, and adequate to the Settlement Class, subject to further consideration at the Final Approval Hearing to be conducted as described below.

7.      **Final Approval Hearing**. The Court will hold a Final Approval Hearing on _____, 2025, at __:__ _.m. Central Time, in person in Courtroom 4 of the United States Courthouse, 501 West 5th Street, Austin, TX 78701, for the following purposes: (a) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class, and should be finally

5

Exhibit 3
Page 111 of 264          Exhibit 1
Page 104 of 126

approved by the Court; (b) to determine whether a judgment substantially in the form attached as Exhibit C to the Stipulation should be entered dismissing the Action with prejudice against Defendants; (c) to determine whether the Settlement Class should be certified for purposes of the Settlement; (d) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (e) to determine whether the application for attorneys' fees, reimbursement of expenses, and issuance of service awards to the Settlement Class Representatives (the "Fee and Expense Application") should be approved; and (f) to consider any other matters that may properly be brought before the Court in connection with the Settlement.   Notice of the Settlement and the Final Approval Hearing shall be given to Settlement Class Members as set forth in Paragraph 9 of this Order.

8. **Changes in Time, Date, or Format of Final Approval Hearing.** The Court may adjourn the Final Approval Hearing without further notice to the Settlement Class and may approve the proposed Settlement with such modifications as the Plaintiffs and the Settling Defendants may agree to, if appropriate, without further notice to the Settlement Class.   The Court may decide to hold the Final Approval Hearing by telephone or video conference without further notice to the Settlement Class. Any Settlement Class Member (or such Member's counsel) who wishes to appear at the Final Approval Hearing should consult the Court's docket and/or the Settlement website for any change in date, time, or format of the hearing.

9. **Retention of the Claims Administrator and Manner of Giving Notice.** Plaintiffs are hereby authorized to retain Epiq Class Action & Claims Solutions, Inc. (the "Claims Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of claims as more fully set forth below. Notice of

Exhibit 3
Page 112 of 264         Exhibit 1
                    Page 105 of 126

the Settlement and the Final Approval Hearing shall be given by Settlement Class Counsel as follows:

(a) within ten (10) business days of the date of entry of this Order, Settlement Class Counsel shall provide or cause to be provided to the Claims Administrator in electronic format a list (consisting of names, mailing addresses, and e-mail addresses) of the Persons who purchased or otherwise acquired limited partnership interests in the GPB Funds during the Class Period, as well as any subsequent transferees of such limited partnership units (except for certain individuals and entities that have been excluded from the Settlement Class as described in Paragraph 1, above);

(b) not later than twenty (20) business days after the date of entry of this Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Notice and the Proof of Claim and Release Form (the "Claim Form"), substantially in the forms attached to the Stipulation as Exhibits D and A, respectively (the "Notice Packet"), to be mailed by first-class mail to Settlement Class Members at the addresses set forth in the list provided pursuant to subparagraph (a);

(c)  contemporaneously with the mailing of the Notice Packet, the Claims Administrator shall post copies of the Notice, Claim Form and other important case documents, on a website developed for the Settlement, from which the Notice and Claim Form can be downloaded;

(d) not later than ten (10) business days after the Notice Date, the Claims Administrator shall cause the Summary Notice, substantially in the form attached hereto as Exhibit H of the Stipulation, to be published once in Investor's Business Daily and transmitted once over PR Newswire;

7

Exhibit 3<br>
Page 113 of 264          Exhibit 1<br>
Page 106 of 126

(e) If a Notice Packet is rendered undeliverable after the Claims Administrator makes a reasonable effort to locate an updated address, the Claims Administrator will e-mail the Notice Packet to the Settlement Class Member, if the Claims Administrator is in possession of an e-mail address; and

(f) not later than seven (7) calendar days prior to the Final Approval Hearing, Settlement Class Counsel shall serve on counsel of record in this Action and file with the Court proof, by affidavit or declaration, of such mailing and publication.

10.    **Approval of Form and Content of Notice.** The Court (a) approves, as to form and content, the Notice and the Summary Notice, attached to the Stipulation as Exhibits D and H, respectively, and (b) finds that the mailing and distribution of the Notice and the publication of the Summary Notice in the manner and form set forth in Paragraph 9 of this Order (i) are designed to accomplish the best notice practicable under the circumstances; (ii) constitute notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this Action; the effect of the proposed Settlement (including the releases and bar order to be provided thereunder); the Fee and Expense Application; their right to object to the Settlement, the Plan of Allocation and/or Fee and Expense Application; their right to exclude themselves from the Settlement Class; and their right to appear at the Final Approval Hearing; (iii) constitutes due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4, as amended, and all other applicable laws and rules.  The date and time of the Final Approval Hearing shall be included in the Notice and Summary Notice before they are mailed and published, respectively.

Exhibit 3
Page 114 of 264                    Exhibit 1
                          Page 107 of 126

11.      **CAFA Notice.**  As provided in the Stipulation, the Settling Defendants shall serve

the notices required under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), no later

than ten (10) calendar days following the filing of the Stipulation with the Court.  Settling

Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA

notice. No later than seven (7) calendar days before the Final Approval Hearing, each Settling

Defendant shall cause to be served on counsel of record in this Action and filed with the Court

proof, by affidavit or declaration, regarding compliance with 28 U.S.C. § 1715(b).

12.      **The Claims Process and Claims Administrator's Responsibilities.**  In order to

be eligible to receive a distribution from the Net Settlement Fund, in the event the Settlement is

effectuated in accordance with the terms and conditions set forth in the Stipulation, each

Settlement Class Member shall take the following actions and be subject to the following

conditions:

(a)      a properly executed Claim Form, substantially in the form attached as

Exhibit A to the Stipulation, must be submitted to the Claims Administrator, at the

address indicated, no later than ten (10) calendar days before the Final Approval Hearing

("Claims Filing Deadline").  The Claims Filing Deadline may be further extended by

Court order or by Settlement Class Counsel in their discretion.  Each Claim Form shall be

deemed to have been submitted when submitted online or, if mailed, when postmarked (if

properly addressed and mailed by first-class or overnight mail, postage prepaid).  Any

Claim Form submitted in any other manner shall be deemed to have been submitted when

it was actually received at the address designated in the Claim Form.  Any Settlement

Class Member who is not a Settlement Class Opt-Out and who nevertheless does not

timely submit a Claim Form within the time provided for shall be barred from sharing in

9

Exhibit 3
Page 115 of 264          Exhibit 1
                Page 108 of 126

the distribution of the Net Settlement Fund, unless otherwise ordered by the Court or allowed by Settlement Class Counsel, but shall remain bound by all determinations and judgments in this Action concerning the Settlement, as provided by Paragraph 15 of this Order.

(b)    the Claim Form submitted by each Settlement Class Member must satisfy the following conditions, unless otherwise allowed pursuant to the Stipulation: (i) it must be properly completed, signed, and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (ii) it must be accompanied by supporting documentation, if required, that is deemed adequate by the Claims Administrator and/or Settlement Class Counsel; (iii) if the person executing the Claim Form is acting in a representative capacity, a certification of his or her current authority to act on behalf of the Settlement Class Member must be included in the Claim Form; and (iv) the Claim Form must be accurate, complete, and signed under penalty of perjury.

(c)    As part of the Claim Form, each Settlement Class Member shall submit to the jurisdiction of the Court with respect to the claim submitted.

(d)    The Claims Administrator shall prepopulate the Claim Forms to the extent a Settlement Class Member's contact information and investment data has been provided by Defendant GPB Capital Holdings, LLC.

(e)    The Claims Administrator shall make available a dedicated toll-free telephone line with live agent support.

(f)    The Claims Administrator will make available a dedicated settlement website at www.GPBSecuritiesSettlement.com which will provide general information about the Settlement, important deadlines, links to copies of the Notice, Claim Form, and

10

Exhibit 3
Page 116 of 264          Exhibit 1
Page 109 of 126

other important case documents, and the ability to register an account and submit a claim online.

(g)  The Claims Administrator shall process and determine the validity of the claims on a rolling basis upon receipt of the Claim Forms.  If the Claims Administrator determines that a claim is deficient or that there are grounds to reject the claim, including that the Settlement Class Member has no Net Loss, the Claims Administrator will provide the Settlement Class Member written notice of the deficiency and/or basis for rejection of the claim, by letter sent to the address of record by first class mail.  The Settlement Class Member will have thirty (30) days from the date of the notice to contest and/or cure the grounds for the deficiency or rejection by providing additional information and supporting documentation to the Claims Administrator by mail or electronically at www.GPBSecuritiesSettlement.com.

(h)  The Claims Administrator shall email a reminder notice to all Settlement Class Members for whom an email address has been provided and for whom no Claim Form has been received no more than fifteen (15) calendar days before the Claims Filing Deadline and no fewer than five (5) calendar days before the Claims Filing Deadline.  If there is no email address on file or if the email is rendered undeliverable, the Claims Administrator will mail a reminder notice to the address on record for those Settlement Class Members for whom no Claim Form has been received at least ten (10) calendar days before the Claims Filing Deadline.

13.  **Exclusion from the Settlement Class.** Any Settlement Class Member who wishes to be excluded from the Settlement Class must request exclusion in writing within the time and in the manner set forth in the Notice, which shall provide that: any such request for

11

Exhibit 3
Page 117 of 264          Exhibit 1
Page 110 of 126

exclusion from the Settlement Class must be postmarked no later than twenty-five (25) calendar days prior to the Final Approval Hearing, to: **GPB Securities Settlement, EXCLUSIONS, P.O. Box 2916, Portland, OR 97208-2916;** and (b) (i) state the name, address, and telephone number of the Person requesting exclusion, and in the case of entities, the name, address, and telephone number of the appropriate contact person; (ii) state that such Person "requests exclusion from the Settlement Class in *Kinnie Ma IRA, et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-cv-01050 (W.D. Tex.)"; (iii) be signed by the Person requesting exclusion or an authorized representative; and (iv) include documents sufficient to prove membership in the Settlement Class, including the limited partnership units in the GPB Funds that the excluding Settlement Class Member purchased or acquired during the Class Period. A request for exclusion shall not be effective unless it provides all the required information and is received within the time stated above or is otherwise accepted by the Court.  Settlement Class Counsel is authorized to request from any Person requesting exclusion additional transaction information or documentation sufficient to prove ownership of limited partnership interests in the GPB Funds.

14.    **Effects of Exclusion.** Any Person that timely and validly requests exclusion in compliance with Paragraph 13 and is excluded from the Settlement Class shall be a Settlement Class Opt-Out, as defined in the Stipulation; and shall not receive any payment out of the Net Settlement Fund, shall have no right to object to the Settlement, shall forfeit any right to future class recovery (if any) against any non-settling Defendants, shall not participate in proceedings in the *Kinnie Ma* Action or be legally bound by any of the Court's orders or judgments in the *Kinnie Ma* Action.  However, such Settlement Class Opt-Out(s) will retain any individual rights they may still have with respect to Settling Defendants and other non-settling Defendants related to matters alleged in the Actions.

Exhibit 3
Page 118 of 264            Exhibit 1
Page 111 of 126

15.     **Effects of Remaining in the Settlement Class.** Any Settlement Class Member that does not timely and validly request exclusion from the Settlement Class in the manner stated in this Order: (a) shall be deemed to have waived the right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of the Stipulation and Settlement and all proceedings, determinations, orders, and judgments in the Actions with regard to the Settling Defendants, including, but not limited to, the Final Judgment and the releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining, or prosecuting any of the Released Claims against any of the Settling Defendants, as more fully described in the Stipulation and Notice.

16.     **Appearance and Objections at the Final Approval Hearing.** Any Settlement Class Member that does not request exclusion from the Settlement Class may enter an appearance in this Action at their own expense, individually or through counsel of choice, by filing such appearance with the Clerk of Court, such that it is received no later than twenty-one (21) calendar days prior to the Final Approval Hearing, or as the Court may otherwise direct. Any Settlement Class Member who does not enter an appearance will be represented at the Final Approval Hearing by Settlement Class Counsel.

17.     **Objections to the Settlement.** Any Settlement Class Member that does not request exclusion from the Settlement Class may file a written objection to the proposed Settlement, the proposed Plan of Allocation, and/or the Fee and Expense Application and appear and show cause why the proposed Settlement, the proposed Plan of Allocation, and/or the Fee and Expense Application should not be approved; provided, however, that no Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the

13

Exhibit 3
Page 119 of 264          Exhibit 1
Page 112 of 126

proposed Settlement, the proposed Plan of Allocation, and/or the Fee and Expense Application unless that Person's written objection is filed with the Court no later than twenty-one (21) calendar days prior to the Final Approval Hearing.

18.   **Form and Content of Objections.** Any objections, filings, and other submissions by any objecting Settlement Class Member: (a) must identify the case name and docket number, *Kinnie Ma IRA, et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-cv-01050 (W.D. Tex.); (b) must state the name, address, and telephone number of the objecting Settlement Class Member and must be signed by that Settlement Class Member or its authorized representative; (c) must state whether the objecting Settlement Class Member is represented by counsel and, if so, the name, address, and telephone number of counsel; (d) must state with specificity the grounds for the objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention and whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; and (e) must include documents sufficient to prove membership in the Settlement Class, including the limited partnership interest in the GPB Funds that the objecting Settlement Class Member purchased or acquired during the Class Period. In addition, objectors who enter an appearance and desire to present evidence at the Final Approval Hearing in support of their objection must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the Final Approval Hearing.  Objectors shall be allowed to present argument and evidence solely at the discretion of the Court.

19.   All objections and entries of appearance must be filed with the Court <u>and</u> mailed or delivered to each of the following recipients at the addresses below such that it is received no later than twenty-one (21) calendar days prior to the Final Approval Hearing:

14

Exhibit 3
Page 120 of 264          Exhibit 1
Page 113 of 126

| Court | Settlement Class Counsel | Settling Defendants' Counsel To Be Notified |
|---|---|---|
| The Hon. Robert Pitman Courtroom 4 501 West 5th Street, Suite 5300 Austin, TX 78701 | STOLL STOLL BERNE LOKTING & SHLACHTER P.C. Timothy S. DeJong 209 SW Oak Street, Suite 500 Portland, OR 97204<br><br>DILWORTH PAXSON LLP Catherine Pratsinakis 1650 Market Street, Suite 1200 Philadelphia, PA 19103-7391 | LATHAM & WATKINS LLP Kevin M. McDonough 1271 Avenue of the Americas New York, NY 10020 *Counsel for Crowe LLP*<br><br>WILLIAMS & CONNOLLY LLP Katherine M. Turner 680 Maine Avenue SW Washington, DC 20024 *Counsel for RSM US LLP* |

20.     **Waiver of Objections.**  Any Settlement Class Member that does not make an objection in the manner provided herein shall be deemed to have waived the right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and the Fee and Expense Application, and shall be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement, the Plan of Allocation, or the Fee and Expense Application, or from otherwise being heard concerning the Settlement, the Plan of Allocation, or the Fee and Expense Application in this or any other proceeding.

21.     **Lifting of the Stay.**  The Court hereby lifts the stay of proceedings in this Action for the limited purpose of carrying out or enforcing the terms and conditions of the Stipulation. All other claims, and parties other than the *Kinnie Ma* Plaintiffs and the Settling Defendants, remain subject to the previously imposed stay.

22.     **Settlement Administration Fees and Expenses.** All reasonable costs incurred in identifying members of the Settlement Class and notifying them of the Settlement as well as in administering the Settlement shall be paid as set forth in the Stipulation without further order of the Court.

23.     **Settlement Fund.**  All funds in the Escrow Account at Huntington National Bank (which the Court approves as the Escrow Agent) shall be deemed and considered to be *in*

15

Exhibit 3 Page 121 of 264                 Exhibit 1 Page 114 of 126

*custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

24.    **Taxes.**  Settlement Class Counsel are authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Gross Settlement Fund, to pay from the Gross Settlement Fund any Taxes owed with respect to the Gross Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

25.    **Termination of Settlement.** If the Settlement is terminated as provided in the Stipulation, the Settling Defendants withdraw from the Settlement, the Settlement is not approved, or the Effective Date of the Settlement otherwise fails to occur, this Order shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation.  In such event, this Order shall be without prejudice to the rights of Settlement Class Representatives, the other Settlement Class Members, and Settling Defendants, and those Parties shall revert to their respective positions in this Action immediately prior to reaching their agreement in principle to settle on June 14, 2024, as provided in the Stipulation.

26.    **Use of this Order.** Neither this Order nor the Stipulation (whether or not approved by the Court), including the Exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court); nor the negotiations leading to the execution of the Stipulation; nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith): (a) shall be offered against any of the Settling Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or

16

Exhibit 3
Page 122 of 264          Exhibit 1
Page 115 of 126

admission by any of the Settling Defendants with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in the Actions or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Settling Defendants; (b) shall be offered against any of the Plaintiffs, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs that any of their claims are without merit, that any of the Settling Defendants had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind; (c) shall be in any way referred to for any other reason as against any of the Plaintiffs or the Settling Defendants, in any civil, criminal, arbitration, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or (d) shall be construed against any of the releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered at trial; provided, however, that if the Stipulation is approved by the Court, the Parties and the releasees and their respective counsel may refer to it to effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

17

Exhibit 3
Page 123 of 264          Exhibit 1
Page 116 of 126

27.    **Supporting Papers.** Settlement Class Representatives shall file and serve the opening papers in support of the proposed Settlement, the proposed Plan of Allocation, and the Fee and Expense Application no later than thirty-five (35) calendar days prior to the Final Approval Hearing; and reply papers, if any, shall be filed and served no later than seven (7) calendar days prior to the Settlement Hearing.


SO ORDERED this _____ day of _____ 202_.


_____
The Honorable Robert Pitman
United States District Judge

18

Exhibit 3
Page 124 of 264                Exhibit 1
Page 117 of 126

# EXHIBIT H

Exhibit 3
Page 125 of 264        Exhibit 1
Page 118 of 126

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KINNIE MA INDIVIDUAL RETIREMENT ACCOUNT, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ASCENDANT CAPITAL, LLC, *et al.*,<br><br>*Defendants*. | Case No. 1:19-CV-1050-RP |
| BARBARA DELUCA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GPB HOLDINGS, LP, *et al.*,<br><br>*Defendants*. | Case No. 1:19-cv-10498-LAK-JW |

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTIONS
AND PROPOSED SETTLEMENT WITH CERTAIN DEFENDANTS;
(II) FINAL APPROVAL HEARING; AND (III) MOTION FOR
ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TO:**     All Persons who, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of the GPB Funds during the Class Period (January 1, 2013 through December 31, 2018, inclusive) and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (except for certain individuals and entities that have been excluded from the Settlement Class, as described below).[1]

"GPB Funds" are: (i) GPB Holdings, LP; (ii) GPB Holdings Qualified, LP; (iii) GPB Automotive Portfolio, LP; (iv) GPB Holdings II, LP; (v) GPB Waste Management, LP (also known as Armada Waste Management LP); (vi) GPB Cold Storage, LP; (vii) GPB NYC Development, LP; and/or (viii) GPB Holdings III, LP; and each of their predecessors, successors, subsidiaries, and affiliates.

---

[1] All capitalized terms used in this Summary Notice that are not otherwise defined herein shall have the meanings provided in the parties' Stipulation and Agreement of Settlement, dated December 3, 2024 ("Settlement Agreement"), which is available at www.GPBSecuritiesSettlement.com.

1

Exhibit 3<br>Page 126 of 264          Exhibit 1<br>Page 119 of 126

**Why Am I Receiving This Notice?** If you hold an interest in a GPB Fund, you may be entitled to a payment from a proposed settlement with certain Defendants in a putative class action lawsuit pending in the United States District Court for the Western District of Texas, Austin Division, known as *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP, which is related to a separate putative class action lawsuit pending in the United States District Court for the Southern District of New York, known as *DeLuca, et al. v. GPB Holdings, LP, et al.*, No. 1:19-CV-10498-LAK (the "Actions").

If you are a Settlement Class Member, in order to share in the distribution of the Net Settlement Fund, you must submit a Claim Form online at www.GPBSecuritiesSettlement.com (submitted no later than _____, 2025) or by mail (postmarked no later than _____, 2025) to this address: GPB Securities Settlement, P.O. Box 2916, Portland, OR 97208-2916.  A copy of the Detailed Notice of (I) Pendency of Class Actions and Proposed Settlement with Certain Defendants; (II) Final Approval Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") and Claim Form are available for download at www.GPBSecuritiesSettlement.com.

You will be bound by any judgment rendered in the Action unless you request to be excluded, in the manner and form explained in the Notice referred to above.

A hearing will be held on _____, 2025 at _:_____ __.m. CT, before the Honorable Robert L. Pitman, United States District Judge (the "Court"), in person at the United States Courthouse, Courtroom 4, 501 West 5th Street, Austin, TX 78701 ("Settlement Hearing"), to determine whether a proposed settlement of the claims (the "Settlement") asserted against Defendants CohnReznick LLP; Crowe LLP; Margolin, Winer & Evens LLP; RSM US LLP; and WithumSmith+Brown, PC (collectively "Settling Defendants"),

Exhibit 3
Page 127 of 264        Exhibit 1
Page 120 of 126

for the combined sum of Forty-Six Million United States dollars ($46,000,000) in cash (the "Settlement Amount"), should be approved by the Court as fair, reasonable, and adequate. Plaintiffs in the Actions have asserted claims against other Defendants who are not part of this proposed Settlement. If approved, this Settlement will resolve claims against the Settling Defendants only. Claims against other Defendants in the Actions will continue in accordance with the schedule and other terms directed by the Court.

The Settling Defendants deny all the allegations and deny that have committed any wrongdoing. The Court did not decide in favor of the Plaintiffs in either of the Actions (collectively "Settlement Class Representatives") or the Settling Defendants. Instead, counsel for the Settlement Class Representatives ("Settlement Class Counsel") and the Settling Defendants, with the assistance of experienced mediators, have negotiated a Settlement that they believe is in the best interests of their respective clients and the Settlement Class. The terms of the proposed Settlement are set forth in the Parties' Stipulation and Agreement of Settlement dated December 3, 2024 (the "Settlement Agreement"), which is available for review at www.GPBSecuritiesSettlement.com.

**What Will Happen at the Hearing?** At the Settlement Hearing, the Court will determine whether, for purposes of the proposed Settlement only, the claims asserted in the *Kinnie Ma* Action against the Settling Defendants should be certified as a class action, thus creating a "Settlement Class"; whether Plaintiffs should be appointed as the representatives for the Settlement Class; and whether the proposed "Plan of Allocation" of settlement proceeds is fair, reasonable, and adequate, and therefore should be approved. The Court will also consider Settlement Class Counsel's request for payment of reasonable attorneys' fees (not to exceed 30% of the Settlement Amount) and reimbursement of litigation expenses, both to be paid out of the Settlement Amount, as well as

whether the Settlement Class Representatives should receive awards (not to exceed $10,000 each) for their time and effort in representing the Settlement Class.

If the Settlement is approved, all claims asserted in the Actions against the Settling Defendants, would be dismissed with prejudice. That dismissal will prevent members of the Settlement Class ("Class Members") from ever being part of any other lawsuit against the Settling Defendants (and parties related to them) in any way related to the legal claims being resolved by and through this Settlement.  Claims asserted in the Actions against Defendants other than the Settling Defendants may continue separate and apart from this Settlement, or as provided by order of the Court.

**How Do I Know If I Am Part of the Settlement?**  The "Settlement Class" consists of all Persons who, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of the GPB Funds between January 1, 2013 through December 31, 2018, inclusive (the "Class Period"), and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (except for certain individuals and entities that have been excluded from the Settlement Class, as described immediately below).  If you meet these criteria, your rights may be affected by the Actions and this Settlement.

The Settlement Class does not include: (a) Defendants named in the *DeLuca* and *Kinnie Ma* Actions or their affiliates; (b) present or former executive directors or officers of GPB Capital Holdings, LLC, the GPB Funds, Ascendant Capital, LLC, Ascendant Alternative Strategies, LLC, and/or Axiom Capital Management, Inc.; (c) the legal representatives, heirs, successors-in-interest, or assigns of any Person within subsection (a) or (b) of this Paragraph; (d) members of the immediate family of any natural Person within subsection (a) or (b) of this Paragraph; (e) any

4

Exhibit 3

Page 129 of 264        Exhibit 1

Page 122 of 126

entity in which any Person within subsection (a) or (b) of this Paragraph has, or had during the Class Period, a controlling interest; and (f) any affiliate of GPB Capital Holdings, LLC.

**What Does the Settlement Provide?**  The Settlement provides for forty-six million United States dollars ($46,000,000) to be paid pursuant to the Settlement Agreement. This amount is subject to deductions for any taxes, notice and administration costs, attorneys' fees, litigation expenses, incentive awards, and any other costs and fees as may be approved by the Court ("Net Settlement Fund").

If the Court ultimately approves the Settlement, you will be eligible to receive a payment if you submitted a timely, complete Claim Form and the Claims Administrator determines that you suffered a "Net Loss" resulting from your investment in any GPB Fund(s).  The amount of your payment will be a proportional or "pro rata" share of the Net Settlement Fund based on your Net Loss resulting from your investment in any GPB Fund(s).

For purposes of this calculation, "Net Loss" means the total principal amount that an individual Class Member invested in any GPB Fund(s) during the Class Period, minus any prior amounts received by that Class Member on account of his or her investment(s) (including any amounts previously received as redemptions, dividends, or from any other source including, but not limited to, as a result of any actual or threatened litigation or arbitration concerning the GPB Funds).  Class Members who have received amounts (through redemptions, dividends, or any other sources) greater than the total principal amount that Class Member invested in any GPB Fund(s) have not suffered a Net Loss and will not receive any payment from the Net Settlement Fund or otherwise in connection with this Settlement.

**How Do I Get a Payment?**  To be eligible to receive a settlement payment, Class Members must submit a claim by _____, 2025.  If the Court ultimately approves the

5

Exhibit 3

Page 130 of 264            Exhibit 1

Page 123 of 126

Settlement, you will be eligible to receive a payment if you submitted a timely, complete Claim Form and the Claims Administrator determines that you suffered a "Net Loss" resulting from your investment in any GPB Funds. The amount of your payment will be a proportional or "pro rata" share of the Net Settlement Fund based on your Net Loss resulting from your investment in any GPB Fund(s).  Net Loss and calculation of settlement payments are explained in more detail in the Plan of Allocation, available for download at www.GPBSecuritiesSettlement.com.

Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Claims Administrator") has been appointed as the "Claims Administrator" responsible for administering the Settlement.  After you submit your timely Claim Form, Epiq will determine each claimant's Net Loss as set forth in the Plan of Allocation using information provided and/or verified by claimants during the claims process.

If your Claim Form is deemed deficient or rejected, you will have an opportunity to contest and/or cure the basis for the deficiencies or rejection by providing additional information and supporting documents.

Once all disputes are resolved, Epiq will finalize the Net Loss amounts and calculate each claimant's individual settlement payment and share of the Net Settlement Fund as described in the Plan of Allocation, available for download at www.GPBSecuritiesSettlement.com.

**What Are My Other Rights and Options?**  You will be bound by any judgment rendered in the *Kinnie Ma* Action concerning the Settlement and/or the Settling Defendants (including the releases of all known and unknown claims provided in the Settlement) unless you request to be excluded from the proposed Settlement Class.

Unless you exclude yourself, you will remain in the Settlement Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against the Settling Defendants in

Exhibit 3
Page 131 of 264        Exhibit 1
Page 124 of 126

any way related to the issues that have been asserted in the Actions or that could have been asserted in the Actions or the GPB Funds. All of the Court's orders will apply to you and legally bind you and you will release the Settling Defendants and related parties from the released claims, including any and all known and unknown claims and causes of action of every nature and description, whether arising under federal, state, statutory, regulatory, common, foreign, or other law, that arise in any way from or relate to the Actions. If you do not want a payment from the Settlement, but you want to keep any right you may have to sue or continue to sue the Settling Defendants and related parties on your own about the legal claims released by the Settlement, you must exclude yourself from the Settlement Class.

The proposed Settlement does not impact your rights against other, non-settling Defendants in the Actions. The claims against non-settling Defendants will proceed in the *Kinnie Ma* Action.

If you wish to exclude yourself from the Settlement Class, you must submit a request for exclusion postmarked no later than _____, 2025 and follow the instructions set forth in the Notice. If you exclude yourself from the Settlement Class, you will receive no settlement payment and will have no right to object to the Settlement. You will also forfeit any right to take part in future class recovery (if any) against any non-settling Defendants and will not participate in proceedings in the *Kinnie Ma* Action or be legally bound by any of the Court's orders or judgments in the *Kinnie Ma* Action. However, you will retain any individual rights you may still have with respect to the Settling Defendants or other non-settling Defendants related to the matters alleged in the Actions.

If you are a Settlement Class Member (and have not excluded yourself from the Settlement Class), you can object to the Settlement, the Plan of Allocation, or Settlement Class Counsel's

Exhibit 3
Page 132 of 264          Exhibit 1
                        Page 125 of 126

request for an award of attorneys' fees, charges, and expenses in representing the Settlement Class. You may also ask the Court for permission to speak at the Settlement Hearing. Any objection to any aspect of the Settlement or any of the matters to be addressed at the Settlement Hearing must be filed with the Clerk of the Court for the Western District of Texas and received by designated Settlement Class Counsel and the Settling Defendants' Counsel no later than, _____, 2025, in accordance with the instructions set forth in the Notice.

**How Do I Get More Information?**  For more information, including a copy of the Notice, the Settlement Agreement, the Plan of Allocation, and Settlement Class Counsel's fee and expense application, or to submit a claim online or print out a hard copy claim form to file by mail, visit www.GPBSecuritiesSettlement.com.  You could also call Epiq at (888) 550-9942, Monday through Friday between 9:00 a.m. to 5:00 p.m. ET.

**DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE**

**BY ORDER OF THE COURT**
**UNITED STATES DISTRICT COURT**
**Western District of Texas – Austin Division**

Exhibit 3
Page 133 of 264        Exhibit 1
Page 126 of 126

# EXHIBIT 2

Exhibit 3
Page 134 of 264

# Stoll Berne

### ABOUT STOLL BERNE

Since its inception in 1978, Stoll Berne has achieved extraordinary results for its clients in class actions and other types of investor, consumer and business litigation. The firm regularly represents clients in federal and state courts and has earned a reputation as a leading plaintiffs' class action firm in Oregon and elsewhere. The firm has represented investors in numerous securities fraud class actions, consumers in consumer protection class actions and antitrust cases, and employees in class actions involving wage and hour claims. The firm also has represented clients in class actions involving wildfires, environmental claims, and health care issues.

The firm has a national securities litigation practice and has represented clients, in most cases serving as lead or co-lead counsel, in many class action securities cases including the following notable cases:

- *In re Nike Securities Litigation* (D. Or. current) (liaison counsel)

- *In re CenturyLink Securities Litigation* (D. Minn. 2021) (co-lead counsel, $55 million recovery)

- *Ciuffitelli v. Deloitte & Touche LLP, et al.* (D. Or. 2016) (co-lead counsel) ($234.6 million recovery)

- *In re JPMorgan Chase & Co. Securities Litigation* (S.D.N.Y. 2012) (co-lead counsel) ($150 million recovery)

- *Louisiana Municipal Employees' Retirement System v. Bank of New York Mellon Corp.* (S.D.N.Y. 2011) (co-lead counsel) ($180 million recovery)

Stoll Berne's attorneys are experienced class action trial lawyers and complex litigation attorneys. Most recently, Stoll Berne obtained a jury verdict against PacifiCorp, including findings of gross negligence and an award of punitive damages, after a two-month trial in Multnomah County Circuit Court in the first wildfire class action trial in history. The class action is projected to result in the recovery of billions of dollars for affected Oregonians. Stoll Berne has recovered $850 million on behalf of the State of Oregon and the City of Seattle for damages from PCB contamination caused by Monsanto.

Stoll Berne has substantial securities class action litigation experience and has recovered hundreds of millions of dollars in settlements on behalf of investors in securities class actions. Stoll Berne recovered $234.6 million—approximately 90% of investors' out-of-pocket losses—for investors in Aequitas, which is believed to be the largest recovery in a securities case in Oregon history.

Stoll Berne has represented plaintiffs in many other types of class actions, including *Reynolds v. Hartford* (D. Or.) ($85 million settlement as lead counsel in a nationwide Fair Credit Reporting Act class action); *Arnett v. Bank of America* (D. Or.) ($31 million settlement relating to force-placed flood insurance); *In Re: Farmers Insurance Exchange Claims Representatives' Overtime Pay Litig.* (D. Or.) (FLSA multi-district class action, member of Steering Committee and co-trial counsel in liability phase of 1439 A cases)*; Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.* (D. Or.) ($11.3 million settlement as lead counsel on behalf of healthcare providers in a breach of contract class action against the largest PPO in the country).

Lawyers at the firm are active in the community and have held leadership positions with the Federal Bar Association, Oregon Trial Lawyers Association, Multnomah Bar Association, and Oregon State Bar. Stoll

# Stoll Berne

Berne attorneys have been consistently recognized by their peers in numerous professional listings, including *Chambers USA: America's Leading Lawyers*, *The Best Lawyers in America*, *Benchmark Litigation Guide*, and *Oregon Super Lawyers*.

**CASE TEAM**

**Timothy DeJong:**  Tim is a trial lawyer with more than 30 years of experience emphasizing complex business, securities, intellectual property and utility-caused wildfire disputes. He received his law degree, Order of the Coif, in 1991 from the University of Oregon School of Law.  Tim has been recognized by *Benchmark Litigation, Chambers USA, Oregon Super Lawyers* (Top 50 Oregon)*, The Best Lawyers in America* (Lawyer of the Year in Portland for Litigation-Patent 2021) and *The Portland Business Journal* recognized him as among the "Best of the Bar" in the field of intellectual property. Before joining Stoll Berne, Tim clerked for the Honorable Robert E. Jones (District of Oregon). Tim has been lead or co-lead counsel in numerous securities and other class action cases.  Tim led the firm's Aequitas securities litigation.  Tim was also a key member of the firm's PacifiCorp wildfires trial team.

**Steve Larson:** Steve is a trial lawyer with expertise in class actions, environmental clean-up litigation, antitrust litigation, securities litigation, corporate disputes, intellectual property disputes, unfair competition claims, and disputes involving family wealth. Steve regularly represents individuals and businesses in federal and state court and has obtained class-wide recovery in multiple class actions.

**Elizabeth Kinsman:** Elizabeth's practice focuses on complex litigation matters, including tort claims for the environmental harms caused by toxic substances, business and contract disputes, class actions, and securities fraud. Elizabeth was an integral part of the trial team pursuing claims on behalf of the State of Oregon against Monsanto Company for PCB contamination, which rendered a nearly-$700 million settlement for the State (the largest environmental settlement in Oregon history). Elizabeth is currently litigating claims for PCB contamination against Monsanto for the State of Maryland, and also represents the State of Oregon in a case against several companies (including 3M and DuPont) for environmental contamination from PFAS. Prior to joining Stoll Berne, Elizabeth served as a law clerk for the Honorable Judge David W. Christel (U.S. District Court, Western District of Washington) as well as a judicial extern to the Honorable Jolie A. Russo (U.S. District Court of Oregon).

# EXHIBIT 3

Exhibit 3
Page 137 of 264

## RICHARD LEE STONE

3600 Gardens Parkway, Ste 1702B · Palm Beach Gardens, FL 33410 · (561) 358-4800
rstoneesq@rstoneesq.com

| EXPERIENCE | |
|---|---|
| 2008-Present | **Law Offices of Richard L Stone PLLC,** Palm Beach Gardens, FL. Lead Counsel in *SmileDirectClub* fraud litigation. Lead Counsel in *Stanford Securities* Litigation. Lead Counsel in *Madoff* Litigation vs. *Picower Estate*. Co-lead Counsel in *GPB Capital* approx. $2 Billion Ponzi Scheme Litigation in Austin, Texas. |
| 2008-Present | **Palm Beach Investment Research Group ("PBIRG")**, Palm Beach, FL. President of Florida's largest peer to peer Family Office Investment Group. |
| 1997-2010 | **Kirby McInerney, LLP**, New York, N.Y. Lead Counsel on several major consumer and securities class actions including: *Adelphia Communications Class Action*, *Bennett Funding Litigation*, *In Re Amazon.com*, *In Re Laidlaw Bondholders*, *In Re Manhattan Fund Securities Litigation*. |
| 2000-2006 | **Receiver/New Age Financial Services/New Times Securities Services, Inc.** Appointed by the Securities and Exchange Commission to act as receiver for a $100 million dollar Ponzi Scheme |
| 1988-1997 | **Cadwalader, Wickersham & Taft, LLP**, New York, N.Y. *Partner, Corporate Department; Market Regulation and Financial Institutions Practice Groups* <br> · Advised broker-dealers and other financial institutions concerning various regulatory matters. <br> · Assisted the Litigation Department by coordinating strategies and providing advice in litigation matters pertaining to the federal securities laws, and SRO matters. <br> · Represented and counseled clients in proceedings and arbitrations before the SEC and various SROs. |
| 1983-1984 | **Honorable Charles P. Sifton, District Judge**, E.D.N.Y. *Law Clerk* |

**EDUCATION**

| | |
|---|---|
| | **Columbia University School of Law** <br> *J.D.:* *1983* <br> *Editor, Columbia Law Review* <br> *Honors:* Harlan Fiske Stone Scholar |
| | **Columbia University Business School** - (Non-Matriculating) <br> *Finance, Investment Banking and Accounting* |
| | **Colgate University** <br> *B.A.: 1981* <br> ***Magna Cum Laude***, ***Phi Beta Kappa*** |

Exhibit 3
Page 138 of 264              Exhibit 3
Page 1 of 2

## PUBLICATIONS

|  | |
|---|---|
|  | **Right For The Wrong Reason:   What the Supreme Court Should Have Reasoned in Troice**    13 Fla. St. U. Bus. Rev. 131 (2014) |
|  | **Are Customer Class Actions Against Broker- Dealers Dead?**<br>   *Securities Regulation and Law Report* Vol. 36, No. 2 January 12, 2004.<br>   reprinted in: *Class Action Litigation* Vol. 5, No. 2 January 23, 2004 |
|  | **Avoiding the Inevitable:   The Continuing Viability of State Law Claims in the Face of Primary Jurisdiction and Preemption Challenges Under the Federal Securities Laws**    1995 *Colum. Bus. L. Rev.* 525 |
|  | **Not Just a Private Club:   Self-Regulatory Organizations as State Actors When Enforcing Federal Law**    1995 *Colum. Bus. L. Rev.* 453 |
|  | **Order Flow Cases: Primary Jurisdiction, Preemption and the Securities Laws**<br>   *New York Law Journal*, May 9, 1995 |
|  | **Statute of Limitations On Actions Brought by SEC**<br>   *New York Law Journal*, October 24, 1994<br>   reprinted in: 20 *RICO Law Reporter* 915 (November 1994) |
|  | **Double Jeopardy Issues in the Financial Sector**<br>   *New York Law Journal*, August 3, 1994<br>   reprinted in: 20 *RICO Law Reporter* 1139 (December 1994) |
|  | **Note, The Case Against a Right to Defense Witness Immunity**<br>   83 *Colum. L. Rev.* 139 (1983) |

## TEACHING EXPERIENCE

| | |
|---|---|
| 2020 - 2024 | **Florida Atlantic University** - Adjunct Professor – (a) Not-for-Profit Law and Ethics; (b) Business Law |
| Nov 2019 | **Tsinghua University**, Beijing, China – Summary of American Corporate Law Course |
| 2008-2013 | **Nova Southeastern School of Law** - Adjunct Professor - Broker-Dealer Law |
| 2005-2008 | **Florida State University School of Law** - Adjunct Professor teaching Financial Services Law |

## CIVIC ACTIVITES

| | |
|---|---|
| 2002- Present | **Florida Atlantic University Foundation** - Board Member/ Investment Committee |
| 2017-present | **Quantum Foundation -** Investment Allocation Committee |
| 2005-Present | **Junior Achievement of the Palm Beaches -** Board of Trustees/Secretary/Treasurer |
| 2015-2016 | **Community Foundation for Palm Beach and Martin Counties**<br>Allocation Committee |
| 2008-2016 | Founder of **Supporters of The Pre-law Magnet** (not-for-profit, designed to support and teach pre-law programs at local high schools.) - Volunteer Economics teacher at Palm Beach Lakes High School. |

Exhibit 3<br>Page 139 of 264        Exhibit 3<br>Page 2 of 2

# EXHIBIT 4

Exhibit 3
Page 140 of 264



# KAPLAN FOX & KILSHEIMER LLP

# FIRM PROFILE

800 Third Avenue,
38th Floor
New York, NY 10022
Tel.: 212.687.1980
Fax: 212.687.7714

1999 Harrison Street,
Suite 1560
Oakland, CA 94612
Tel.: 415.772.4700
Fax: 415.772.4707

12400 Wilshire Boulevard,
Suite 910
Los Angeles, CA
90025
Tel.:
310.575.8604
Fax: 310.444.1913

681 Prestwick Lane
Wheeling, IL 60090
Tel.: 847.831.1585
Fax.: 847.831.1580

160 Morris Street
Morristown, NJ 07960
Tel.: 973.656.0222
Fax: 973.401.1114

# History of Kaplan Fox & Kilsheimer LLP

Leo Kaplan and James Kilsheimer founded "Kaplan & Kilsheimer" in 1954, making the firm one of the most established litigation practices in the country. James Kilsheimer was a celebrated federal prosecutor in the late 1940s and early 1950s in New York who not only successfully tried some of the highest profile cases in the country, but also handled the U.S. Attorney's Office's criminal appeals to the Second Circuit.

Now known as "Kaplan Fox & Kilsheimer LLP," the early commitment to high-stakes litigation continues to define the firm to the present day. In 2009, Portfolio Media's *Law360* ranked Kaplan Fox's securities litigation practice as one of the top 5 in the country (plaintiff side), and again in July 2014, the Legal 500 ranked Kaplan Fox as one of the top eight plaintiff's firms for securities litigation. In March 2013, the *National Law Journal* included Kaplan Fox on its list of the top 10 "hot" litigation boutiques, a list that includes both plaintiff and defense firms. In 2014, 2015 and 2016, more than half of the firm's partners – including attorneys on both coasts – were rated "Super Lawyers."

The firm has three primary litigation practice areas (antitrust, securities, and consumer protection), and the firm is a leader in all three. To date, we have recovered more than **$5 billion** for our clients and classes. In addition, the firm has expanded its consumer protection practice to include data privacy litigation, and few other firms can match Kaplan Fox's recent leadership in this rapidly emerging field. The following describes Kaplan Fox's major practice areas, its most significant recoveries and its attorneys.



Exhibit 3
Page 142 of 264    Exhibit 4
Page 2 of 48

## Securities Litigation

Over the past 35 years, Kaplan Fox has been a leader in prosecuting corporate and securities fraud, ranging from cases concerning accounting fraud to those involving complicated and complex financial instruments. Since the passage of the Private Securities Litigation Reform Act in 1995, Kaplan Fox has emerged as one of the foremost securities litigation firms representing institutional investors of all sizes, including many of the world's largest public pension funds.

Kaplan Fox's selection by Portfolio Media's Law360 as one of the five top securities litigation firms (plaintiff side) for 2009 was based, in part, on the representation of public pension funds in high profile and complex securities class actions, including ***In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation***; ***In re Bank of America Corp. Securities, ERISA & Derivative Litigation***; ***In re Fannie Mae Securities Litigation***; and ***In re Ambac Financial Group, Inc. Securities Litigation***.  Some of the firm's most significant securities recoveries include:

**In re Bank of America Corp. Securities, Derivative, and ERISA Litig.**,
MDL No. 2058 (S.D.N.Y.) ($2.425 billion recovered)

**In re Sequenom, Inc. Securities Litigation**,
No. 09-cv-921 (S.D. Cal.) ($70 million recovered)

**In re Fannie Mae 2008 Securities Litigation,**
No. 08-cv-7831 (PAC) (S.D.N.Y.) ($170 million recovered)

**In re Merrill Lynch & Co., Inc. Securities Litigation**,
Master File No. 07-CV-9633 (JSR) (S.D.N.Y.) ($475 million recovered)

**Barry Van Roden**, *et al.* **v. Genzyme Corp.**, *et al.*,
No. 03-CV-4014-LLS (S.D.N.Y.) ($64 million recovered)

**In re Elan Corporation Securities Litigation**,
No. 02-CV-0865-RMB (S.D.N.Y.) ($75 million recovered)



Exhibit 3
Page 143 of 264        Exhibit 4
Page 2 of 48

**In re MicroStrategy Securities Litigation**,
No. CV-00-473-A (E.D. Va.) ($155 million recovered)

**AOL Time Warner Cases I & II (Opt-out)**
Nos. 4322 & 4325 (Cal. Superior Court, LA County) ($140 million recovered)

**In re 3Com Securities Litigation**,
No. C-97-21083-EAI (N.D. Cal.) ($259 million recovered)

# Antitrust Litigation

Kaplan Fox has been at the forefront of significant private antitrust actions, and we have been appointed by courts as lead counsel or members of an executive committee for plaintiffs in some of the largest antitrust cases throughout the United States. This commitment to leadership in the antitrust field goes back to at least 1967, when firm co-founder Leo Kaplan was appointed by the Southern District of New York to oversee the distribution of all ASCAP royalties under the 1950 antitrust consent decree in ***United States v. American Society of Composers, Authors and Publishers***, No. 41-CV-1395 (S.D.N.Y.), a role he held for 28 years until his death in 1995. To this day, ASCAP awards the "Leo Kaplan Award" to an outstanding young composer in honor of Leo's 28 years of service to ASCAP.

Members of the firm have also argued before the U.S. Courts of Appeals some of the most significant decisions in the antitrust field in recent years. For example, Robert Kaplan argued the appeal in ***In re Flat Glass Antitrust Litigation***, 385 F.3d 350 (3d Cir. 2004), and Greg Arenson argued the appeal in ***In re High Fructose Corn Syrup Antitrust Litigation***, 295 F.3d 651 (7th Cir. 2002). In a relatively recent survey of defense counsel, in-house attorneys, and individuals involved in the civil justice reform movement, both were named among the 75 best plaintiffs' lawyers in the country based on their expertise and influence.


**KAPLAN FOX**

Exhibit 3
Page 144 of 264    Exhibit 4
Page 3 of 48

Over the years, Kaplan Fox has recovered over **$2 billion** for our clients in antitrust cases.  Some of the larger antitrust recoveries include:

**In re Air Cargo Shipping Services Antitrust Litigation**,
MDL 1775 (E.D.N.Y.) (settled during trial preparation, for total settlement of more than $1.25 billion)

**In re Plastics Additives Antitrust Litigation,**
03-CV-1898 (E.D. Pa.) ($46.8 million recovered)

**In re Neurontin Antitrust Litigation**,
MDL No. 1479, Master File No. 02-1390 (D.N.J.) ($190 million recovered)

**In re High Fructose Corn Syrup Antitrust Litigation,**
MDL No. 1087, Master File No. 95-1477 (C.D. Ill.) ($531 million recovered)

**In re Medical X-Ray Film Antitrust Litigation,**
CV 93-5904 (E.D.N.Y.) ($39.6 million recovered)

**In re Brand Name Prescription Drugs Antitrust Litigation,**
MDL 997 (N.D. Ill.) ($720 plus million recovered)

**In re Infant Formula Antitrust Litigation,**
MDL 878 (N.D. Fla.) ($126 million recovered)

**In re Flat Glass Antitrust Litigation,**
MDL 1200 (W.D. Pa.) ($122 plus million recovered)

**In re Hydrogen Peroxide Antitrust Litigation,**
MDL 1682 (E.D. Pa.) ($97 million recovered)

## Consumer Protection and Data Privacy Litigation

The consumer protection practice is headquartered in Kaplan Fox's Bay Area office, which opened in 2000, and is led by Laurence King, an experienced trial lawyer and former prosecutor.  Mr. King has also served as a Vice-Chair, and then Co-Chair, of the American Association for Justice's Class Action Litigation Group.

Mr. King and our other effective and experienced consumer protection litigators regularly champion the interests of consumers under a variety of state and federal



Exhibit 3
Page 145 of 264     Exhibit 4
Page 5 of 48

consumer protection laws. Most frequently, these cases are brought as class actions, though under certain circumstances an individual action may be appropriate.

Kaplan Fox's consumer protection attorneys have represented victims of a broad array of misconduct in the manufacturing, testing, marketing, and sale of a variety of products and services and have regularly been appointed as lead or co-lead counsel or as a member of a committee of plaintiffs' counsel in consumer protection actions by courts throughout the nation.  Among our significant achievements are highly recognized cases including ***In re: Apple Inc. Device Performance Litig.***, No. 5:18-MD-2827-EJD (N.D. Cal.) (a global consumer protection and computer intrusion class action in which a $310 million class settlement was achieved); ***In re Baycol Products Litigation***, MDL 1431-MJD/JGL (D. Minn.) (victims recovered more than $350 million); ***In re Providian Financial Corp. Credit Card Terms Litigation***, MDL No. 1301-WY (E.D. Pa.) ($105 million recovered); ***In re Thomas and Friends Wooden Railway Toys Litig.***, No. 07-cv-3514 (N.D. Ill.) ($30 million settlement obtained for purchasers of recalled "Thomas Train" toys painted with lead paint); ***In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation***, No. 4:09-md-2086 (W.D. Mo.) (settlements obtained where consumers will receive substantially in excess of actual damages and significant injunctive relief); ***Berry v. Mega Brands Inc***., No. 08-CV-1750 (D.N.J.) (class-wide settlement obtained where consumers will receive full refunds for defective products), and ***David Wolf, et al. v. Red Bull GmBH, et al.***, No. 1:13-cv-08008 (S.D.N.Y.) ($13 million settlement fund obtained for purchasers of Red Bull energy drink); and ***Schneider v. Chipotle Mexican Grill, Inc.****,* No.16-cv-02200 (N.D. Cal.) (a Non-GMO class action with a settlement approval of $6.5 million).



Exhibit 3
Page 146 of 264    Exhibit 4
Page 5 of 48

Data privacy is a fairly new area of law and broadly encompasses two scenarios. In a data breach case, a defendant has lawful custody of data but fails to safeguard it or use it in an appropriate manner.  In a tracking case, the defendant intercepts or otherwise gathers digital data to which it is not entitled in the first place.

Kaplan Fox is an emerging leader in both types of data privacy litigation.  For example, Mr. King filed and successfully prosecuted one of very first online data breach cases, **_Syran v. LexisNexis Group_**, No. 05-cv-0909 (S.D. Cal.), and was court-appointed liaison counsel in a recently successfully concluded data breach case against LinkedIn. *See **In re: LinkedIn User Privacy Litigation***, No. 12-cv-3088-EJD (N.D. Cal.).  The firm also settled a data privacy case against Universal Property & Casualty Insurance Company related to the public exposure of sensitive customer data. *See **Rodriguez v. Universal Property & Cas. Ins. Co.***, No. 16-cv-60442-JK (S.D. Fla.).

In the past five years alone, we have led or otherwise had court-appointed roles in at least 10 national digital privacy class actions, including high-profile cases against defendants Google, Yahoo, and LinkedIn; two insurance companies; and one data analytics company.  Other recent data privacy cases include **_In re Horizon Healthcare Services, Inc. Data Breach Litigation_**, No. 13-cv-07418-CCC-MF (D.N.J.) where Kaplan Fox represents a group of individuals in a class action asserting willful and negligent violations of the Fair Credit Reporting Act, as well as violations of state law, based on Horizon's failure to adequately protect the Plaintiffs' personal information. Kaplan Fox represents a group of seven credit unions and has been appointed by the court as a member of the Steering Committee for the Financial Institution plaintiffs in a data breach class action against The Home Depot, Inc. *See **In re: The Home Depot, Inc., Customer Data Security Breach Litigation**,* 1:14-md-02583-TWT (N.D. Ga.). Kaplan Fox was also


KAPLAN FOX

Exhibit 3
Page 147 of 264          Exhibit 4
Page 6 of 48

appointed co-lead class counsel for plaintiffs in **_Doe v. Caremark, LLC_, 2:18 -cv-00488 -EAS-CMV (S.D. Oh**.), a class action concerning allegations of the violation of medical privacy of approximately 4,500 class members. The Court approved a $4.4 million settlement of the action on January 30, 2020. Kaplan Fox and firm Partner Joel Strauss were also recently appointed to the Plaintiffs' Steering Committee in **_In Re: HealthEC LLC Data Breach Litig. ,_** 2:24 -cv-26-JKS-ESK (D.N.J.).

The firm is also an industry leader in the even newer field of email and internet tracking litigation.  Kaplan Fox was appointed Co-Lead Class Counsel in a digital privacy class action against Yahoo!, Inc., related to Yahoo's alleged practice of scanning emails for content, which was recently settled.  *See **_In re: Yahoo Mail Litigation_***, 5:13-cv-04980-LHK (N.D. Cal.).  Other cases include **_In re: Google Inc. Cookie Placement Consumer Privacy Litig._**, 12-MD-2358-SLR (D. Del.) (Kaplan Fox appointed to plaintiffs' steering committee).



Exhibit 3
Page 148 of 264          Exhibit 4
                    Page 8 of 48

## ATTORNEY BIOGRAPHIES

**PARTNERS**

**ROBERT N. KAPLAN** is widely recognized as a leading plaintiff's litigator and has led the prosecution of numerous class actions and shareholder derivative actions, recovering billions of dollars for the victims of corporate wrongdoing. He was recently listed by defense and corporate counsel as one of the top 75 plaintiffs' attorneys in the United States for all disciplines and has also been ranked as one of the top attorneys in the United States for securities litigation by Legal 500 in each of the last three years. Mr. Kaplan was recognized as Super Lawyer in the New York Metro Area. He was lead counsel for CalPERS in *AOL Time Warner Cases I & II* (Ca. Sup. Ct., L.A. Cty.), and was a lead in *In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, *In re Escala Securities Litigation* and *In re Bank of America Corp. Securities Litigation*, in which a settlement in the amount of $2.425 billion and corporate governance changes was approved by the Court.

In the antitrust arena, Mr. Kaplan earned a reputation as a leading litigator. He is a lead counsel in *In re Air Cargo Antitrust Litigation* (more than $1.25 billion in settlements) and was recently appointed by Courts as lead counsel in the *DIPF Antitrust Litigation*, *In re Cast Iron Soil Pipe and Fittings Antitrust Litigation*, and *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*.

He also represents clients in private antitrust actions, including: *Affiliated Foods, Inc., Associated Grocers of New England, Inc., URM Stores, Inc., Western Family Foods, Inc., and Associated Food Stores, Inc.* in individual cases against *Tri-Union Seafoods, LLC, d/b/a Chicken of the Sea, King Oscar, Inc., Bumble Bee Foods, LLC f/k/a Bumble Bee Seafoods, LLC, and StarKist Co.*, No. 15-cv-4312, No. 15-cv-3815, No. 15-cv-4187, No. 15-cv-4667 (N.D. Cal.).

He previously served, as lead counsel or member of the Executive Committee in numerous plaintiff treble damage actions including *In re Neurontin Antitrust Litigation*, MDL No. 1479, Master File No. 02-1390 (D.N.J.) ($190 million recovered); *In re High Fructose Corn Syrup Antitrust Litigation*, MDL No.1087, Master File No. 95-1477 (C.D. Ill) ($531 million recovered); *In re Brand Name Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.) ($720 plus million recovered); *In re Infant Formula Antitrust Litigation*, MDL

 **KAPLAN FOX**

Exhibit 3
Page 149 of 264      Exhibit 4
Page 8 of 48

878 (N.D. Fla.)($126 million recovered); *In re Flat Glass Antitrust Litigation*, MDL 1200 (W.O. Pa.) ($122 plus million recovered) (Mr. Kaplan successfully argued an appeal before the U.S. Court of Appeals for the Third Circuit, which issued a ground-breaking and often-cited summary judgment opinion. *In re Flat Glass Antitrust Litigation*, 385 F.3d 350 (3d ar. 2004); *In re Hydrogen Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.)($97 million recovered); *In re Plastics Additives Antitrust Litigation*, 03-CV-1898 (E.D.Pa.) ($46.8 million recovered); *In re Medical X-Ray Film Antitrust Litigation*, CV 93-5904 (E.D.N.Y.) ($39.6 million recovered); and *In re NBR Antitrust Litigation*, MDL 1684 (E.D. Pa.) ($34.3 million recovered).

Mr. Kaplan has represented financial institutions across the country in data breach cases against Home Depot and was a member of the Plaintiffs' Steering Committee. He is currently representing a group of individuals in a class against Horizon Healthcare Services alleging willful and negligent violations of the Fair Credit Reporting Act, as well as violations of state law, based on Horizon's failure to adequately protect the Plaintiffs' personal information.

Mr. Kaplan honed his litigation skills as a trial attorney with the Antitrust Division of the U.S. Department of Justice. There, he gained significant experience litigating both civil and criminal actions. He also served as law clerk to the Hon. Sylvester J. Ryan, then chief judge of the U.S. District Court for the Southern District of New York and served as an acting judge of the City Court for the City of Rye, N.Y.

In addition to his litigation practice, he has also been active in bar and legal committees. For more than fifteen years, he has been a member of what is now known as the Eastern District of New York's Courts Committee on Civil Litigation.

Mr. Kaplan has also been actively involved in the Federal Bar Council, an organization of judges and attorneys in the Second circuit and is a member of the Program and Winter Planning Committees.

Recently, Mr. Kaplan was invited by the United States Judicial Center and participated in a multi-day seminar for federal judges about complex litigation.

In addition, Mr. Kaplan has served as a member of the Trade Regulation and Federal Courts Committees of the Association of the Bar of the City of New York.



Exhibit 3
Page 150 of 264    Exhibit 4
Page 10 of 48

Mr. Kaplan's published articles include: "Complaint and Discovery In Securities Cases," Trial, April 1987; "Franchise Statutes and Rules," Westchester Bar Topics, Winter 1983; "Roots Under Attack: Alexander v. Haley and Courlander v. Haley," Communications and the Law, July 1979.

Mr. Kaplan sits on the boards of several organizations, including the Columbia Law School Board of Visitors, Board of Directors of the Carver Center in Port Chester, N.Y., Member of the Dana Farber Visiting Committee, Thoracic Oncology in Boston, MA, and Member of Board of Trustees for the Rye Historical Society.

**Education:**

- B.A., Williams College
- J.D., Columbia University Law School

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York
- U.S. Supreme Court
- U.S. Courts of Appeals for the Second, Third, Seventh, Ninth, Tenth and Eleventh Circuits
- U.S. District Courts for the Southern, Eastern, and Northern Districts of New York, the Central District of Illinois, and the District of Arizona

**Professional Affiliations:**

- Committee to Support the Antitrust Laws (past President)
- National Association of Securities and Commercial Law Attorneys (past President)
- Advisory Group of the U.S. District Court for the Eastern District of New York
- American Bar Association
- Association of Trial Lawyers of America (Past Chairman, Commercial Litigation Section, 1985-86)
- Association of the Bar of the City of New York (served on the Trade Regulation Committee; Committee on Federal Courts)

Mr. Kaplan can be reached by email at: RKaplan@kaplanfox.com



Exhibit 3
Page 151 of 264    Exhibit 4
Page 10 of 48

**FREDERIC S. FOX** first associated with Kaplan Fox in 1984 and became a partner of the firm in 1991.  For over 30 years, Mr. Fox has concentrated his practice in class action and individual securities litigation. He also prosecutes consumer protection and antitrust litigation.

He has been a lead counsel in many major securities class action cases, including as a senior member of the litigation and trial team in *In re Bank of America Corp., Securities, Derivative, and ERISA Litigation*, No. 09-md-020508-PKC (S.D.N.Y.) , a complex multi-district litigation that settled for $2.425 billion plus significant corporate governance reforms, and stands as one of the largest securities class action settlements in history.  In *In re Bank of America*, the firm represented Ohio PERS and STRS Ohio. Mr. Fox counsels the firm's many public pension fund clients on seeking redress in foreign jurisdictions or bringing an individual action in the U.S. to adequately protect and recover lost assets in cases involving foreign securities.  For example, Mr. Fox settled claims in an opt-out action on behalf of Ohio PERS arising out of the fraud at Petrobras in Brazil. Other significant cases in which Mr. Fox served as lead counsel include *In re Merrill Lynch & Co., Inc., Sec., Derivative & ERISA Litig.* (S.D.N.Y.)  (primary attorney responsible for negotiating the $475 million settlement) and *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-7831 (S.D.N.Y.) ($170 million settlement).

The cases Mr. Fox is currently handling or recently handled include: *In re Vale S.A. Sec. Litig.*, No. 19-cv-00526 (S.D.N.Y.), a securities class action, as court appointed lead counsel for the court-appointed lead plaintiff, CAAT Pension Plan, arising out of the January 2019 collapse of a tailings dam and Vale's false and misleading statements about the safety of its dams and commitment to the health and safety of its workers; *Arkansas Teacher Retirement Sys. v. Allianz Global Investors US LLC*, No. 20-cv-5615 (S.D.N.Y.), an individual action, that alleged negligence and breach of contractual and fiduciary duties arising from misconduct and gross mismanagement of three investment funds, which reached a favorable recovery for ATRS in 2022; and *State Teachers Retirement System of Ohio v. Charles River Labs. Int'l Inc.*, Case No. 23-cv-11132 (D. Mass.), a securities class action, as court appointed lead counsel for the court-appointed lead plaintiff, STRS Ohio, involving allegations that during the Class Period Charles River made false and misleading statements and omitted material facts with respect to its importation of non-


**KAPLAN FOX**

Exhibit 3
Page 152 of 264     Exhibit 4
Page 12 of 48

human primates.  In these cases, Mr. Fox and the firm are counsel on behalf of public pension fund clients.

Mr. Fox has also handled derivative cases seeking corporate governance reform and other shareholder litigation on behalf of public pension funds asserting state law and foreign causes of action.  Mr. Fox currently represents CalSTRS and the Firemen's Retirement System of St. Louis in a derivative action in Delaware arising out of Facebook's many years of improper data sharing with third parties, *Karen Sbriglio, Firemen's Retirement System of St. Louis and California State Teachers' Retirement System, derivatively on behalf of Nominal Defendant Facebook, Inc. vs. Mark Zuckerberg, et al.*, Case Number: 2018-0307-JRS (Del. Ch.).

Over the past decade, Mr. Fox has prosecuted a wide variety of consumer protection cases, including as co-lead in *In re: Apple Inc. Device Performance Litig.*, No. 5:18-MD-2827-EJD (N.D. Cal.), a global consumer protection and computer intrusion class action arising out of Apple's December 2017 admission that it had been secretly throttling iPhone performance for almost a year.  Another notable case includes the non-GMO class action of *Schneider v. Chipotle Mexican Grill, Inc.*, No.16-cv-02200 (N.D. Cal.) and *In re: Yahoo! Mail Litigation*, No. 13-cv-04980-LHK (N.D. Cal.).  He served on the Plaintiffs' Steering Committee in the *Baycol Products Litigation* where there were more than $350 million in settlements.

Within the area of consumer protection, Mr. Fox is also active in the firm's growing data privacy and cyberlaw practice.   Mr. Fox and the firm have had court-appointed roles in national class actions against defendants Facebook, Google, Yahoo, and LinkedIn, as well as two insurance companies and one data analytics company. He served as co-lead counsel for plaintiffs in this digital privacy class action, challenging Yahoo's practice of "scanning" incoming and outgoing emails for content, to target advertising more effectively.  On August 25, 2016, Judge Lucy Koh granted final approval of an innovative settlement in which Yahoo agreed to change its email delivery architecture to comply with California privacy law.  See *In re Yahoo Mail Litig.*, 2016 WL 4474612, *10 (N.D. Cal., Aug. 26, 2016).

Mr. Fox is listed in the current editions of New York Super Lawyers and is recognized in Benchmark Litigation as a New York "Litigation Star."  He is also a frequent


**KAPLAN FOX**

Exhibit 3
Page 153 of 264        Exhibit 4
                       Page 12 of 48

speaker and panelist in both the U.S. and abroad on a variety of topics including securities litigation and corporate governance.

Mr. Fox is the author of "Current Issues and Strategies in Discovery in Securities Litigation," ATLA, 1989 Reference Material; "Securities Litigation: Updates and Strategies," ATLA, 1990 Reference Material; and "Contributory Trademark Infringement: The Legal Standard after Inwood Laboratories, Inc. v. Ives Laboratories," University of Bridgeport Law Review, Vol. 4, No. 2.

During law school, Mr. Fox was the notes and comments editor of the University of Bridgeport Law Review.

**Education:**

- B.A., Queens College (1981)
- J.D., Bridgeport School of Law (1984)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (1985)
- Bar of the District of Columbia (2013)
- U.S. Supreme Court
- U.S. Courts of Appeals for the First, Second, Fourth, Sixth and Eleventh Circuits
- U.S. District Courts for the Southern and Eastern Districts of New York, and the District of Columbia

**Professional Affiliations:**

- Federal Bar Council
- American Bar Association
- Association of the Bar of the City of New York
- District of Columbia Bar Association
- The Council of Institutional Investors - Markets Advisory Council Member (2022)
- Association of Trial Lawyers of America (Chairman, Commercial Law Section, 1991-92)

Mr. Fox can be reached by email at: FFox@kaplanfox.com



Exhibit 3
Page 154 of 264     Exhibit 4
Page 13 of 48

**GREGORY K. ARENSON** is principally a plaintiffs' antitrust lawyer with among other things, expertise in economics. He has worked with economic experts in, among others, *In re Air Cargo Shipping Servs. Antitrust Litig.*, Master File No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014), *adopted in its entirety*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82 (D. Conn. 2009); *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007); *In re Carbon Black Antitrust Litig.*, No. Civ. A. 03-10191-DPW, MDL No. 1543, 2005 WL 102966 (D. Mass. Jan. 18, 2005); *In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79 (E.D. Pa. 2003); *Bearings Cases*, Case No. 12-00501, and *Wire Harness Cases*, Case No. 12-00101, part of *In re Automotive Parts Antitrust Litig.*, E.D. Mich., Master File No. 12-md-02311; *Affiliated Foods, Inc., et al. v. Tri-Union Seafoods, LLC d/b/a Chicken of the Sea Int'l, et al.*, part of *In re Packaged Seafood Prods. Antitrust Litig.*, S.D. Cal., Case No. 15-MD-2670 JLS (MDD); *In re Domestic Airline Travel Antitrust Litig.*, D.D.C., MDL Docket No. 2656, Misc. No. 15-1404 (CKK); *In re Dental Supplies Antitrust Litig.*, E.D.N.Y., Case No. 16-cv-696 (BMC)(GRB); *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*, D.N.J., Civ. No. 12-711 (AET)(LHG); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, E.D. Tenn., No. 1:14-md-2508; and *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, E.D. La., MDL No. 2328. He also argued the appeals in *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002), and *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2009). He has been ranked as a Super Lawyer for several years. Among other matters, he argued the appeals in *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002), and *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2009). He has been ranked as a Super Lawyer for several years.

Mr. Arenson has been a partner in Kaplan Fox & Kilsheimer LLP since 1993. Prior to joining Kaplan Fox, he was a partner with Proskauer Rose LLP. Earlier in his career, he was a partner with Schwartz Klink & Schreiber and an associate with Rudnick & Wolfe (now DLA Piper).

Mr. Arenson is active in the New York State Bar Association. He has been a member of the House of Delegates for most of the last decade and has been a member


**KAPLAN FOX**

Exhibit 3
Page 155 of 264        Exhibit 4
Page 15 of 48

of the Executive Committee of the New York State Bar Association since June 2022. He has been Vice Chair and a member of the Executive Committee of the Sections Caucus and a member of the New York State Bar Association Continuing Legal Education Committee. He was Chair of the Commercial and Federal Litigation Section from June 2013 through May 2014. He has been Co-Chair of the New York State Bar Association Task Force on the State of Our Courthouses, whose report was adopted by the House of Delegates on June 20, 2009; a member of the New York State Bar Association Special Committee on Standards for Pleadings in Federal Litigation, whose report was adopted by the House of Delegates on June 19, 2010; and a member of the New York State Bar Association Special Committee on Discovery and Case Management in Federal Litigation, whose report was adopted by the House of Delegates on June 23, 2012.

Mr. Arenson has written frequently on discovery issues and other issues. His published articles include: "Losing the Forest for the Trees: On the Loss of Economic Efficiency and Equity in Federal Price-Fixing Class Actions, 16 *Va L. & Bus. Rev.* 293 (Spring 2022); "Rule 68 Offers of Judgment and Mootness, Especially for Collective or Class Actions," 20 NY LITIGATOR 25 (2015); "Report on Proposed Amendments to Federal Rule of Civil Procedure 45," 17 NY LITIGATOR 21 (2012); "Rule 8 (a)(2) After *Twombly*: Has There Been a Plausible Change?" 14 NY LITIGATOR 23 (2009); "Report on Proposed Federal Rule of Evidence 502," 12 NY LITIGATOR 49 (2007); "Report: Treating the Federal Government Like Any Other Person: Toward a Consistent Application of Rule 45," 12 NY LITIGATOR 35 (2007); "Report of the Commercial and Federal Litigation Section on the Lawsuit Abuse Reduction Act of 2005," 11 NY LITIGATOR 26 (2006); "Report Seeking To Require Party Witnesses Located Out-Of-State Outside 100 Miles To Appear At Trial Is Not A Compelling Request," 11 NY LITIGATOR 41 (2006); "Eliminating a Trap for the Unwary: A Proposed Revision of Federal Rule of Civil Procedure 50," 9 NY LITIGATOR 67 (2004); "Committee Report on Rule 30(b)(6)," 9 NY LITIGATOR 72 (2004); "Who Should Bear the Burden of Producing Electronic Information?" 7 FEDERAL DISCOVERY NEWS, No. 5, at 3 (April 2001); "Work Product vs. Expert Disclosure – No One Wins," 6 FEDERAL DISCOVERY NEWS, No. 9, at 3 (August 2000); "Practice Tip: Reviewing Deposition Transcripts," 6 FEDERAL


**KAPLAN FOX**

Exhibit 3
Page 156 of 264        Exhibit 4
Page 15 of 48

DISCOVERY NEWS, No. 5, at 13 (April 2000); "The Civil Procedure Rules: No More Fishing Expeditions," 5 FEDERAL DISCOVERY NEWS, No. 9, at 3 (August 1999); "The Good, the Bad and the Unnecessary: Comments on the Proposed Changes to the Federal Civil Discovery Rules," 4 NY LITIGATOR 30 (1998); and "The Search for Reliable Expertise: Comments on Proposed Amendments to the Federal Rules of Evidence," 4 NY LITIGATOR 24 (1998). He was co-editor of FEDERAL RULES OF CIVIL PROCEDURE, 1993 AMENDMENTS, A PRACTICAL GUIDE, published by the New York State Bar Association; and a co-author of "Report on the Application of Statutes of Limitation in Federal Litigation," 53 ALBANY LAW REVIEW 3 (1988).

Mr. Arenson serves as a mediator in the U.S. District Court for the Southern District of New York. In addition, he is an active alumnus of the Massachusetts Institute of Technology, having served as a member of the Corporation, a member of the Corporation Development Committee, vice president of the Association of Alumni/ae, and member of the Annual Fund Board (of which he was a past chair), secretary of his class, and 50th reunion gift committee co-chair.

**Education:**

- S.B., Massachusetts Institute of Technology (1971)
- J.D., University of Chicago (1975)

**Bar Affiliations and Court Admissions:**

- Bar of the State of Illinois (1975)
- Bar of the State of New York (1978)
- U.S. Supreme Court
- U.S. Courts of Appeals for the Second, Third and Seventh Circuits
- U.S. District Courts for the Northern and Central Districts of Illinois, Southern and Eastern Districts of New York, and Eastern District of Michigan
- U.S. Tax Court

Mr. Arenson can be reached by email at: GArenson@kaplanfox.com



Exhibit 3
Page 157 of 264          Exhibit 4
Page 17 of 48

**LAURENCE KING** first joined Kaplan Fox as an associate in 1994 and became a partner of the firm in 1998. While Mr. King initially joined the firm in New York, in 2000 he relocated to San Francisco to open the firm's first West Coast office. He is now the West Coast Managing Partner of Kaplan Fox, resident in our Oakland and Los Angeles offices.

Mr. King practices primarily in the areas of consumer protection litigation and securities litigation, with an emphasis on institutional investor representation. He has also practiced in the area of employment litigation. Mr. King has played a substantial role in cases that have resulted in some of the largest recoveries ever obtained by Kaplan Fox, including: *In re Bank of America Corp. Securities, ERISA & Derivative Litig.* (S.D.N.Y.); *In re: Apple Inc. Device Performance Litig.* (N.D. Cal), *In re 3Com Securities Litigation* (N.D. Cal.), *In re Informix Securities Litigation* (N.D. Cal.), *AOL Time Warner Cases I & II* (Ca. Sup. Ct., L.A. Cty.) and *Providian Credit Card Cases* (Ca. Sup. Ct., S.F. Cty.).

An experienced trial lawyer, prior to joining Kaplan Fox Mr. King served as an assistant district attorney under the legendary Robert Morgenthau in the Manhattan (New York County) District Attorney's Office, where he tried numerous felony prosecutions to jury verdict. At Kaplan Fox, he was a member of the trial team for two securities class actions tried to verdict, *In re Biogen Securities Litigation* (D. Mass.) and *In re Health Management Securities Litigation* (E.D.N.Y.). Mr. King has also participated in trial preparation for numerous other cases in which favorable settlements were achieved for our clients on or near the eve of trial.

Mr. King has been selected for inclusion in Northern California *SuperLawyers* each year since 2012. He previously served as Vice-Chair, and then as Co-Chair, of the American Association for Justice's Class Action Litigation Group.

**Education:**

- B.S., Wharton School of the University of Pennsylvania (1985)
- J.D., Fordham University School of Law (1988)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (1989)
- Bar of the State of California (2000)
- U.S. Court of Appeals for the Second and Ninth Circuits


**KAPLAN FOX**

Exhibit 3
Page 158 of 264    Exhibit 4
Page 18 of 48

- ▪ U.S. District Courts for the Southern and Eastern Districts of New York, and the Northern, Central and Southern Districts of California

**Professional Affiliations:**

- ▪ Bar Association of San Francisco
- ▪ American Bar Association
- ▪ American Association for Justice

Mr. King can be reached by email at: LKing@kaplanfox.com


**JOEL B. STRAUSS** first associated with Kaplan Fox in 1992 and became a partner in the firm in 1999. He practices in the area of securities and consumer fraud and data privacy class action litigation. He has been repeatedly selected for inclusion to the New York Super Lawyers list (Securities Litigation) (2007-2010, 2014-2024) and was named to Lawdragon's 500 Leading Plaintiff Financial Lawyers in the U.S. (2019 - 2024).

Prior to law school, Mr. Strauss was a senior auditor at the accounting firm Coopers & Lybrand (n/k/a PricewaterhouseCoopers). Combining his accounting background and legal skills, he has played a critical role in successfully prosecuting numerous securities class actions across the country on behalf of shareholders. Mr. Strauss was one of the lead trial lawyers for the plaintiffs in the first case to go to trial and verdict under the Private Securities Litigation Reform Act of 1995.

Mr. Strauss has been involved in representing the firm's institutional clients in the following securities class actions, among others: *In re Bank of America Corp. Securities, ERISA & Derivative Litig.* (S.D.N.Y.) ($2.425 billion settlement); *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.* (S.D.N.Y.) ($475 million settlement); *In re Prestige Brands Holdings Inc. Securities Litig.* (S.D.N.Y.) ($11 million settlement); *In re Gentiva Securities Litig.* (E.D.N.Y.) ($6.5 million settlement); and *In Re SunPower Securities Litig.* (N.D.Cal) ($19.7 million settlement). He has also served as lead counsel for lead plaintiffs in *In re OCA, Inc. Securities Litig.* (E.D. La.) ($6.5 million settlement); *In re Proquest Company Securities Litig.* (E.D. Mich.) ($20 million settlement) and *In re Rocket Fuel, Inc. Securities Litig.* (N.D.Cal.) ($3.15 million settlement). Mr. Strauss also played an active role for plaintiff investors in *In Re Countrywide Financial Corporation Securities Litig.* (C.D.Cal), which settled for more than $600 million. He is also currently



Exhibit 3
Page 159 of 264    Exhibit 4
Page 18 of 48

actively involved in representing plaintiffs in *In re: FTX Cryptocurrency Exchange Collapse Litig.* (S.D.Fla).

In the consumer protection area, Mr. Strauss served as Chair of Plaintiffs' Non-Party Discovery Committee in the *Baycol Products Litig.*, where there were more than $350 million in settlements. Among other leadership roles he plays in the consumer protection area, Mr. Strauss currently serves as one of Plaintiff's' lead counsel in *Valli, et. al. v. Avis Budget Group, Inc., et. al.* (D.N.J.).

Mr. Strauss is also active in the firm's growing data privacy practice. In July 2017 he moderated a panel on U.S. Data Privacy Laws at a conference in Tel Aviv. And, among other data privacy cases in which he has played an active role, Mr. Strauss served as one of plaintiffs' co-lead counsel in *Doe vs. CVS Healthcare Corp., et. al.,* (S.D. Ohio), a class action concerning allegations of the violation of medical privacy of approximately 4,500 class members. The Court approved a $4.4 million settlement of the action on January 30, 2020. Mr. Strauss was also recently appointed to serve on the Plaintiffs' Steering Committee in *In Re: HealthEC LLC Data Breach Litig.,* (D.N.J.).

Although currently practicing exclusively in the area of law, Mr. Strauss is a licensed Certified Public Accountant in the State of New York.

Mr. Strauss has also been a guest lecturer on the topics of securities litigation, auditors' liability and class actions for seminars sponsored by the Practicing Law Institute, the National Consumer Law Center and the Association of the Bar of the City of New York and is an adjunct instructor in the Political Science department at Yeshiva University.

Since June 2014, Mr. Strauss has served as a member of the New York State Bar Association's Committee on Legal Education and Admission to the Bar.

Among his various communal activities, Mr. Strauss currently serves as Co-President of Friends of Jerusalem College of Technology, is a member of Yeshiva University's General Counsel's Council, a member of the Alumni Advisory Group at the Benjamin N. Cardozo School of Law, a member of Yeshiva University's Industry Advisory Council of the University's Career Strategy and Professional Development Office, and has Chaired the Career Guidance and Placement Committee of Yeshiva University's Undergraduate Alumni Council, and is an Advisory Board Member and Mentor in the Orthodox Union's Impact Accelerator program.



Exhibit 3
Page 160 of 264      Exhibit 4
Page 29 of 48

In March 2001 the New Jersey State Assembly issued a resolution recognizing and commending Mr. Strauss for his extensive community service and leadership. In 2012 Mr. Strauss received The Alumni Partner of the Year Award from Yeshiva University's Career Development Office.

In May 2023, New Jersey Governor Phil Murphy appointed Mr. Strauss to serve on the New Jersey – Israel Commission.

**Education:**

- B.A., Yeshiva University (1986)
- J.D., Benjamin N. Cardozo School of Law (1992)
- HBX|Harvard Business School, Certificate in Entrepreneurship Essentials (2017)
- AICPA - Cybersecurity Fundamentals for Finance and Accounting Professionals Certificate (2018)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New Jersey (1992)
- Bar of the State of New York (1993)
- U.S. Court of Appeals for the First, Second and Third Circuits
- U.S. District Courts for the Southern, Eastern and Western Districts of New York, District of New Jersey, District of Nebraska and District of Colorado

**Professional Affiliations:**

- Association of the Bar of the City of New York
- New York State Bar Association
- American Institute of Certified Public Accountants

Mr. Strauss can be reached by email at: JStrauss@kaplanfox.com

**HAE SUNG NAM** joined Kaplan Fox in 1999 and became a partner of the firm in 2005. firm, Ms. Nam has been representing consumers, employees, and investors in complex class actions and multi-district litigation in districts throughout the country for 25 years.  In addition to securities cases, she also focuses on antitrust litigation.  Currently, Ms. Nam is co-lead counsel in *In re Google Play Consumer Antitrust Litigation*, 20-cv-05761 (N.D. Cal).  She represents consumers in an antitrust litigation concerning

 KAPLAN FOX

Exhibit 3
Page 161 of 264    Exhibit 4
Page 20 of 48

Google's alleged anticompetitive use of contractual and technological barriers to foreclose Android users' ability to utilize app distribution platforms other than Google Play Store.

Ms. Nam has substantial experience prosecuting other antitrust matters on behalf of various classes and opt-outs, including *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, 1:14-md-02542 (S.D.N.Y), *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 1:05-md-01720 (E.D.N.Y), and *In re Flat Glass Antitrust Litigation*, No. 03-cv-2920 (W.D. Pa.).

Ms. Nam has also played integral roles in a number of the firm's notable securities cases, including *In re Bank of America Corp., Securities, Derivative, and ERISA Litigation*, No. 1:09-md-020508-PKC (S.D.N.Y.), *In re Fannie Mae Securities Litigation*, No. 08-cv-7831-PAC (S.D.N.Y.), and *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-411-NRB (S.D.N.Y.).  She has also focused on prosecuting opt-out securities actions on behalf of the firm's public pension fund clients. Ms. Nam was one of the core team members that prosecuted and settled an opt-out action on behalf of Ohio PERS arising out of the fraud at Petrobras in Brazil. She also played a significant role in *AOL Time Warner Cases I & II* and *State Treasurer of the State of Michigan v. Tyco International, Ltd.*, No. 08-cv-1340 (D.N.H.).

Prior to joining the firm, Ms. Nam was an associate with Kronish Lieb Weiner & Hellman LLP, where she trained as a transactional attorney in general corporate securities law and mergers and acquisitions.

Ms. Nam graduated, magna cum laude, with a dual degree in political science and public relations from Syracuse University's Maxwell School and S.I. Newhouse School of Public Communications. Ms. Nam obtained her law degree, with honors, from George Washington University Law School. During law school, Ms. Nam was a member of the George Washington University Law Review.

**Education:**

- B.A., magna cum laude, Syracuse University (1994)
- J.D., with honors, George Washington University Law School (1997)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York



Exhibit 3
Page 162 of 264      Exhibit 4
Page 22 of 48

- U.S. District Courts for the Southern and Eastern Districts of New York.

Ms. Nam can be reached by email at: HNam@kaplanfox.com

**DONALD HALL** first associated with Kaplan Fox in 1998 and became a partner of the firm in 2005.  Mr. Hall has more than 25 years of experience in securities and complex litigation.  He also prosecutes consumer protection and antitrust litigation.  Mr. Hall is actively involved in counseling the firm's institutional clients on seeking redress in foreign jurisdictions or bringing an individual action in the U.S. to adequately protect and recover lost assets involving foreign securities.

Mr. Hall was a member of the trial team prosecuting *In re Bank of America*, which settled for $2.425 billion, the single largest securities class action recovery for violations of Section 14(a) of the Securities and Exchange Act of 1934 ("Exchange Act") and one of the top securities litigation settlements obtained in history.  Mr. Hall also represented public pension fund clients in *In re Eletrobras Secs. Litig.*, No. 15-cv-5754 (S.D.N.Y.), as co-lead counsel representing the Employee Retirement System of City of Providence in a class action against a Brazilian company, and in *Kasper v. AAC Holdings, Inc.*, No. 15-cv-923 (M.D. Tenn.), as co-lead counsel representing ATRS.  Mr. Hall successfully represented institutional investor clients in *In re Merrill Lynch*, which settled for $475 million; *In re Fannie Mae 2008*, which settled for $170 million; *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-cv-411 (S.D.N.Y.) ("In re Ambac"); and *In re Majesco Securities Litigation*, No. 05-cv-3557 (D.N.J.), among others.  Additionally, he was a member of the litigation team in *AOL Time Warner Cases I & II*, an opt-out action brought by institutional investors that settled just weeks before trial, resulting in a recovery of multiples of what would have been obtained had those investors remained members of the class action.

Currently, Mr. Hall is representing institutional clients in the following cases: *In re Vale* as court appointed lead counsel for the court-appointed lead plaintiff, CAAT Pension Plan, arising out of the January 2019 collapse of a tailings dam and Vale's false and misleading statements about the safety of its dams and commitment to the health and safety of its workers; CalSTRS and the Firemen's Retirement System of St. Louis in a derivative action in Delaware arising out of Facebook's many years of improper data



Exhibit 3
Page 163 of 264    Exhibit 4
Page 22 of 48

sharing with third parties, *Karen Sbriglio, Retirement System of St. Louis and California State Teachers' Retirement System, derivatively on behalf of Nominal Defendant Facebook, Inc. vs. Mark Zuckerberg, et al.*, Case Number: 2018-0307-JRS (Del. Ch.); and *State Teachers Retirement System of Ohio v. Charles River Labs. Int'l Inc.*, Case No. 23-cv-11132 (D. Mass.), a securities class action, as court appointed lead counsel for the court-appointed lead plaintiff, STRS Ohio.   Mr. Hall recently represented ATRS in *Arkansas Teacher Retirement Sys. v. Allianz Global Investors US LLC*, No. 20-cv-5615 (S.D.N.Y.), an individual action, alleging negligence and breach of contractual and fiduciary duties arising from misconduct and gross mismanagement of three investment funds.

Mr. Hall has played a key role in some of the Firm's antitrust actions, including *In re Flat Glass Antitrust Litigation*; *In re Compact Disc Antitrust Litigation*; and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.   He is currently part of the litigation team representing consumers in *In re Google Play Consumer Antitrust Litigation,* 20-cv-05761 (N.D. Cal.) concerning Google's alleged anticompetitive use of contractual and technological barriers to foreclose Android users' ability to utilize app distribution platforms other than Google Play Store.

In the consumer protection area, Mr. Hall was co-lead counsel in *In re: Apple Inc. Device Performance Litig.*, No. 5:18-MD-2827-EJD (N.D. Cal.) (a global consumer protection and computer intrusion class action in which a $310 million class settlement was achieved in March 2021).   Mr. Hall is also active in the firm's growing data privacy and cyberlaw practice.   Other notable cases in the area of consumer protection Mr. Hall has prosecuted include the non-GMO class action of *Schneider v. Chipotle Mexican Grill, Inc.,* No.16-cv-02200 (N.D. Cal.) and *In re: Yahoo! Mail Litigation*, No. 5:13-cv-04980-LHK (N.D. Cal.) in which Kaplan Fox served as co-lead counsel for plaintiffs in a digital privacy class action challenging Yahoo's practice of "scanning" incoming and outgoing emails for content, in order to target advertising more effectively.

Mr. Hall graduated from the College of William and Mary in 1995 with a B.A. in Philosophy and obtained his law degree from Fordham University School of Law in 1998. During law school, Mr. Hall was a member of the Fordham Urban Law Journal and a member of the Fordham Moot Court Board. He also participated in the Criminal Defense


**KAPLAN FOX**

Exhibit 3
Page 164 of 264         Exhibit 4
Page 23 of 48

Clinic, representing criminal defendants in federal and New York State courts on a pro-bono basis.

**Education:**

- B.A., College of William and Mary (1995)
- J.D., Fordham University School of Law (1998)

**Bar Affiliations and Court Admissions:**

- Bar of the State of Connecticut
- Bar of the State of New York
- U.S. Supreme Court
- U.S. Courts of Appeals for the First, Second and Eleventh Circuits
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**

- American Bar Association
- Association of Trial Lawyers of America
- New York State Bar Association

Mr. Hall can be reached by email at: DHall@kaplanfox.com

**JEFFREY P. CAMPISI** is involved in representing the firm's institutional and individual clients in securities and shareholder actions, and other complex litigation.

Mr. Campisi currently represents investors in *Christiansen v. Spectrum Pharmaceuticals, Inc., et al.,* 22-cv-10292 (VEC) (S.D.N.Y.), *McGreevy et al., v. Digital Currency Group, Inc., et al.,* 23-cv-82-SRU (D. Conn.), *Rauch v. Vale, S.A., et al.,* 19-cv-00526 (E.D.N.Y.); *Julia Junge and Richard Junge, v. Geron Corp. and John Scarlett*, No. C 20-00547 WHA (N.D. Cal.); and *Gluck v. Hecla Mining Company*, 19-cv-4883 (ALC) (S.D.N.Y.).

In the past, Mr. Campisi has represented Oklahoma Police Pension and Retirement Fund (as liaison counsel) in *Milbeck v. Truecar, Inc. et al.,* 18-cv-2612 (C.D. Cal.) ($28.25 million recovered); the Tennessee Consolidated Retirement System in *In re Fannie Mae 2008 Securities Litigation*, 08cv7831 (S.D.N.Y.) ($170 million recovered); State Teachers' Retirement System of Ohio in *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, 07cv9633 (S.D.N.Y.) ($475 million


**KAPLAN FOX**

Exhibit 3
Page 165 of 264          Exhibit 4
Page 25 of 48

recovered), one of the largest recoveries in a securities class action; the Virginia Retirement System in *In re Escala Group, Inc. Securities Litigation*, 06cv3518 (S.D.N.Y.) ($18 million in cash and stock recovered); the Los Angeles City Employees' Retirement System in *In re Sequenom, Inc. Securities Litigation*, 09cv921 (S.D. Cal.) ($43 million in cash and stock recovered, as of February 4, 2010, and significant corporate governance reforms) and in *In re Gentiva Securities Litigation*, 10cv5064 (E.D.N.Y.) ($6.5 million recovered).

Other cases include *Convey v. Jumia Technologies AG, et al.* Index No. 656021/2019 (N.Y. County Supreme Court) ($3 million recovered); *Schueneman v. Arena Pharms., et al.*, 10cv1959 (S.D. Cal.) ($24 million recovered); K*asper v. AAC Holdings, Inc., et al.*, 15cv923 (M.D. Tenn.) ($25 million recovered); *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W (W.D. Okla.) ($38.5 million recovered); *In re Violin Memory, Inc. Securities Litigation*, 13cv5486 (N.D. Cal.) ($7.5 million recovered); *In re Nevsun Resources Ltd.*, 12cv1845 (S.D.N.Y.) (approximately $6 million settlement); *In re Countrywide Financial Corporation Securities Litigation*, 07cv5295 (C.D. Cal) ($624 million recovered), *In re Proquest Company Securities Litigation*, 06cv10619 (E.D. Mich.) ($20 million recovered), and *Friedman v. Penson Worldwide, Inc.*, 11cv2098 (N.D. Tex.) ($6.5 million recovered).

Mr. Campisi is a graduate of Villanova University School of Law (*summa cum laude*), where he was a member of the Villanova Law Review and the *Order of the Coif*. Mr. Campisi earned a B.A. from Georgetown University (*cum laude*). Mr. Campisi served as a law clerk to the Late Honorable Herbert J. Hutton, United States District Judge for the United States District Court for the Eastern District of Pennsylvania.

**Education:**

- B.A., cum laude, Georgetown University (1996)
- J.D., summa cum laude, Villanova University School of Law (2000)
  Member of Law Review and Order of the Coif

**Bar affiliations and court admissions:**

- Bar of the State of New York
- U.S. Courts of Appeals for the Ninth and Tenth Circuits

Exhibit 3
Page 166 of 264    Exhibit 4
Page 25 of 48



- ▪ U.S. District Courts for the Southern, Eastern, Northern and Western Districts of New York, and Western District of Tennessee

**Professional affiliations:**
- ▪ Federal Bar Council
- ▪ American Association for Justice

Mr. Campisi can be reached by email at: jcampisi@kaplanfox.com

**MELINDA CAMPBELL** has been associated with Kaplan Fox since September 2004 and became a partner of the firm in 2012. She has 20 years of experience in securities and other complex litigation. Mrs. Campbell currently represents the Colleges of Applied Arts and Technology Pension Plan in *In re Vale S.A. Securities Litigation*, No. 19-cv-526 (E.D.N.Y.).

Mrs. Campbell's noteworthy cases include: *In re Bank of America Corp. Securities Litigation*, MDL No. 2058 (S.D.N.Y.); *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-cv-411(NRB) (S.D.N.Y.); *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-7831(PAC) (S.D.N.Y.), *In re Eletrobras Securities Litigation*, No. 15-cv-5754 (S.D.N.Y.) ($14.75 million settlement), and *Ollila v. Babcock & Wilcox Enterprises Inc.*, No. 3:17-cv-109 (W.D.N.C.) ($19.5 million settlement).

Mrs. Campbell obtained her J.D. from the University of Pennsylvania Law School. While attending law school, she successfully represented clients of the Civil Practice Clinic of the University of Pennsylvania Law School and provided pro bono legal services through organizations including the Southern Poverty Law Center.

Mrs. Campbell obtained her undergraduate degree from the University of Missouri (*cum laude*).

Mrs. Campbell is a member of the Federal Courts Committee of the New York County Lawyers Association and served as a panelist in a continuing legal education course offered by the Committee concerning waiver of attorney-client privilege under Federal Rule of Evidence 501.  Additionally, Mrs. Campbell is a member of the New York State Bar Association, the National Association of Women Lawyers, and the New York Women's Bar Association.


KAPLAN FOX

Exhibit 3
Page 167 of 264    Exhibit 4
Page 27 of 48

**Education:**
- B.A., University of Missouri (2000)
- J.D., University of Pennsylvania Law School (2004)

**Bar affiliations and court admissions:**
- Bar of the State of New York (2005)
- U.S. Courts of Appeals for the First, Second and Eleventh Circuits
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional affiliations:**
- American Bar Association
- New York State Bar Association
- New York County Lawyers Association

Mrs. Campbell can be reached by email at: MCampbell@kaplanfox.com

**ELANA KATCHER** has extensive complex antitrust litigation experience drawn from her work on both the plaintiff and defense sides.  Ms. Katcher began her career in antitrust litigation as an associate at Sullivan & Cromwell LLP where she was a member of the trial team defending Microsoft Corporation against a series of private class actions brought in courts around the country, as well as representing other major defendants in bet-the-company litigation.

Since 2007, Ms. Katcher has been instrumental in some of Kaplan Fox's largest cases, including *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775 (E.D.N.Y.), and a successful bellwether trial in *Neurontin Marketing, Sales Practices & Products Liability Litig.*, MDL No. 1629 (D. Mass.). In addition, Ms. Katcher co-drafted a successful opposition to the first Rule 12(b)(6) motion to dismiss in the sprawling Generic Pharmaceutical antitrust actions, *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712 (S.D.N.Y. 2017) (Rakoff, J.), and continues to work on behalf of the Direct Purchaser Plaintiffs in the *Generic Pharmaceutical* antitrust actions now pending before District Judge Cynthia M. Rufe in the Eastern District of Pennsylvania, including as part of the briefing team that recently prevailed against the first tranche of motions to dismiss brought in that litigation.  *See In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-CB-27243, 2018 WL 5003450 (E.D. Pa. Oct. 16, 2018).



Exhibit 3
Page 168 of 264    Exhibit 4
Page 28 of 48

In addition, Ms. Katcher represents significant corporate clients, including clients listed on Nasdaq, in individual antitrust actions in Packaged Seafood in which she has recently co-argued a key motion to dismiss before District Judge Janis L. Sammartino, obtaining a significant victory where the court upheld jurisdiction over two foreign defendants. *See In re Packaged Seafood Prod. Antitrust Litig.,* No. 15-MD-2670 JLS (MDD), 2018 WL 4222506 (S.D. Cal. Sept. 5, 2018).  She is currently part of the co-lead team for the direct purchaser class plaintiffs in *In re Caustic Soda Antitrust Litigation*, 19-cv-00385 (W.D.N.Y.), and is a member of the steering committee representing the indirect reseller plaintiff class in In re Juul Labs, Inc. Antitrust Litigation, 20-cv-02345 (N.D. Cal.).

Prior to Kaplan Fox, she was an associate at Sullivan & Cromwell LLP and King & Spalding LLP, where she participated in the defense of major companies, including at trial and in arbitration.

**Education:**

- B.A. Oberlin College
- J.D., New York University

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**

- New York State Bar Association
- New York City Bar Association

Ms. Katcher can be reached by email at: ekatcher@kaplanfox.com

**MATTHEW P. McCAHILL** was associated with Kaplan Fox from 2003 to 2005, re-joined the firm in May 2013 and became a partner in 2016. He practices in the areas of antitrust and securities litigation, as well as commercial litigation.  From 2006 to early 2013, Mr. McCahill was an associate at Berger & Montague, P.C. in Philadelphia. While focusing on insurance and antitrust class action cases, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) and *Ormond et al. v. Anthem, Inc. et al.*, Case No. 1:05-cv-01908-TWP-TAB (N.D. Ind.) (related to the demutualization of Anthem Insurance, which settled for $90 million in



Exhibit 3
Page 169 of 264    Exhibit 4
Page 28 of 48

2012), he also represented corporations and bankruptcy trustees in commercial litigation involving claims for breach of contract, breach of fiduciary duty and fraudulent conveyance.

Mr. McCahill's practice includes representation of plaintiffs opting out of class actions. He represented large retailers who opted out of the *Payment Card* class to pursue their own antitrust actions against Visa and MasterCard challenging the networks' merchant rules and their interchange (or "swipe") fees. Among the merchants he and the firm represented in that case were E-Z Mart Stores, Inc., Sunoco, LP (formerly known as Susser Holdings Corp., operator of the Stripes® convenience store chain), Jacksons Food Stores, Sheetz, Inc., Kum & Go, L.C., Einstein Noah Restaurant Group, Furniture Row, Inc. and NPC International, Inc. (the world's largest franchisee of Pizza Hut restaurants).

Mr. McCahill is part of the Kaplan Fox team representing large grocery chains and food distributors (including Giant Eagle, Inc., Associated Food Stores, Inc., Affiliated Foods, Inc., Western Family Foods, Inc. and the McLane Company, Inc., among others) in individual actions in *In re Packaged Seafood Products Antitrust Litigation*, MDL No. 2670 (S.D. Cal.), alleging price-fixing and other antitrust violations against Tri-Union Seafoods, LLC (d/b/a Chicken of the Sea), Bumble Bee Foods, LLC, and others. Mr. McCahill currently represents some of the same clients in opt-out antitrust litigation against the nation's largest producers of broiler chickens, in *In re Broiler Chicken Antitrust Litigation*, pending in a federal court in Chicago. He and other Kaplan Fox lawyers also represented the Ohio Public Employees Retirement System in an individual securities fraud action against Brazilian energy conglomerate Petrobras in *In re Petrobras Securities Litigation*, Civ. Action No. 14-cv-9662 (JSR) (S.D.N.Y.).

Mr. McCahill's current and past involvement in class action litigation at Kaplan Fox includes: *In re Cast Iron Soil Pipe Antitrust Litigation*, MDL No. 2508 (E.D. Tenn.), where he represented a proposed class of direct purchasers of cast iron soil pipes and fittings in an antitrust case against the Cast Iron Soil Pipe Institute, Charlotte Pipe & Foundry Co. and McWane, Inc. and its subsidiaries; *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W (W.D. Okla.) (partial settlement of $38 million); *In re Neurontin Antitrust Litigation*, MDL No. 1479 (D.N.J.) (delayed-generic entry action


**KAPLAN FOX**

Exhibit 3
Page 170 of 264    Exhibit 4
Page 29 of 48

brought by direct purchasers of Pfizer's drug Neurontin, which settled for $190 million following nearly 12 years of litigation).

In 2014, 2015 and 2016, Mr. McCahill was named a "New York Metro Super Lawyer – Rising Star" in antitrust litigation and was selected as a "Pennsylvania Super Lawyer – Rising Star" (also in antitrust litigation) in 2012 and 2013 and has each year since 2017 been named a "New York Metro Super Lawyer" in antitrust litigation.  He is a member of the American, Pennsylvania State, New York State and New York City bar associations.  Mr. McCahill's *pro bono* efforts focus primarily on representing Marine Corps veterans in benefits proceedings before the Veterans Administration.

Mr. McCahill is a 2000 graduate of Rutgers College where he received a B.A., *summa cum laude*, in history and was elected to Phi Beta Kappa. He graduated from Fordham Law School in 2003, where he was a member of the *Fordham Urban Law Journal*. He is fluent in French and proficient in Spanish.

**Education:**

- B.A., History, *summa cum laude*, Rutgers College (2000)
- J.D., Fordham Law School (2003)

**Bar Affiliations and Court Admissions:**

- Bars of the State of New York and the Commonwealth of Pennsylvania
- U.S. District Courts for the Southern and Eastern Districts of New York and the Eastern District of Pennsylvania

**Professional Affiliations:**

- American Bar Association
- New York State Bar Association
- Pennsylvania Bar Association
- Association of the Bar of the City of New York

Mr. McCahill can be reached by email at: mmccahill@kaplanfox.com



Exhibit 3
Page 171 of 264        Exhibit 4
Page 30 of 48

**MATTHEW GEORGE** is a complex litigation attorney at Kaplan Fox & Kilsheimer LLP with a practice focused on data privacy, consumer protection, and employment/labor cases. He has significant experience and expertise handling multidistrict litigation and other coordinated proceedings in state and federal courts involving multiple parties and complex discovery issues.

Matthew has a strong track record opposing Silicon Valley's largest companies in lawsuits involving emerging technology and novel legal issues.  He was on Kaplan Fox's lead counsel team in *In re: Apple Device Performance Litigation*, that recovered a settlement of up to $500 million on claims that Apple violated the Computer Fraud and Abuse Act.  In that case he managed third-party discovery of two dozen companies in the U.S. and Asia and first chaired a series of depositions.  He is currently court appointed co-lead counsel in *In re: Robinhood Outage Litigation*, representing investors alleging losses attributable to a series of unprecedented outages of Robinhood's trading app in March of 2020.  He also represents a certified class of patients alleging that failed blood testing startup Theranos and Walgreens unlawfully experimented on them in *In re: Arizona Theranos Incorporated Litigation*. Matthew has also obtained innovative rulings at the trial and appellate levels on claims against Facebook, Adobe, and Yahoo over mishandling of consumers' personal information and data.

Matthew has also advanced initiatives for underrepresented communities both in and out of court.  He was recently co-lead counsel in cases against health care conglomerates CVS/Caremark and Aetna that collectively recovered over $20 million on behalf of Americans living with HIV when their healthcare information was wrongfully exposed.  Matthew has been a longstanding member of BALIF, the Bay Area's (and nation's oldest) LGBTQI+ bar association, where he has volunteered in BALIF's formal mentorship program helping new attorneys enter the profession.  He has also been a member of the Consumer Attorneys of California's Diversity Committee, where he co-sponsored an event inclusive of the Bay Area's minority bar associations.

Matthew has been selected by his peers as a "Rising Star" by Northern California Super Lawyers each year from 2011-2014 and was chosen as a "Super Lawyer" in 2016, the first year he was eligible for the distinction and every year since. He has been a regular


**KAPLAN FOX**

Exhibit 3
Page 172 of 264          Exhibit 4
Page 32 of 48

speaker at industry conventions and seminars on topics ranging from arbitration, expert depositions, and class action settlement strategies.

**Education:**

- B.A., Political Science and Criminal Justice, *magna cum laude*, Chapman University (2002)
- J.D., The University of Michigan Law School (2005)

**Publications and Speaking Engagements:**

- Expert Depositions: Promoting Expertise and Limiting Exposure –Bridgeport Continuing Legal Education "Mastering the Deposition" Seminar (January 2017)
- "How Viable Is the Prospect of Private Enforcement of Privacy Rights In The Age of Big Data? An Overview of Trends and developments In Privacy Class Actions" – Competition, The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Volume 24, No. 1 (Spring 2015)
- Panel Discussion of Sony Pictures Data Breach Cases – CNBC's "Squawk On the Street" (December 2014)
- New and Developing Practice Areas – CAOC 53rd Annual Convention (November 2014)
- Privacy Law Symposium – University of California, Hastings College of the La (April 2014)
- Update On the Target Data Breach Litigation – HarrisMartin Target Data Breach MDL Conference (March 2014)
- Consumer Privacy Law – 8th Annual CAOC Class Action Seminar (February 2014)
- Privacy Litigation and Management: Strategies For Protection and Litigation – Bridgeport Continuing Legal Education Seminar (December 2012)
- Class Action Settlement Strategies and Mechanics – 12th Annual Bridgeport Class Action Litigation & Management Conference (April 2012)
- Developments In the Arbitration of Wage and Hour Disputes – Bridgeport 2010 Wage and Hour Conference (October 2010)

**Bar Affiliations and Court Admissions:**

 **KAPLAN FOX**

Exhibit 3
Page 173 of 264      Exhibit 4
Page 32 of 48

- Bar of the State of California
- U.S. District Courts for the Northern, Central, Southern and Eastern Districts of California, and the District of Colorado
- Ninth Circuit Court of Appeals

**Professional Affiliations:**

- Bay Area Lawyers for Individual Freedom
- Consumer Attorneys of California (Diversity Committee)
- American Bar Association (Labor and Employment Section)

Mr. George can be reached by email at: mgeorge@kaplanfox.com

**PAMELA MAYER** is focused on the investigation, analysis and initiation of securities claims on behalf of the firm's institutional and individual clients utilizing her combined legal and finance background. Prior to joining Kaplan Fox, Ms. Mayer was a securities investigation and litigation attorney for a multinational investment bank directly involved in the defense of securities investigations and litigations involving complex securities, mutual funds, specialist trading issues, initial public offering quiet periods, as well as disclosures and conflicts of interest for investment advisors. Prior to working at Bear Stearns, Ms. Mayer was the General Counsel and Vice President Business Development of Interactive Video Technologies, Inc.

Ms. Mayer also has substantial litigation experience in the area of intellectual property.

**Education:**

- B.S., The University of Rochester
- J.D., The George Washington University
- M.B.A., Finance, The University of Michigan

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**

- New York State Bar Association

Ms. Mayer can be reached by email at: pmayer@kaplanfox.com



Exhibit 3
Page 174 of 264    Exhibit 4
Page 33 of 48

**AARON L. SCHWARTZ** joined Kaplan Fox in 2017 and became partner in 2024. He has broad experience in class action, opt-out, and other complex litigation with particularized focus on antitrust, consumer protection, and securities matters.

Mr. Schwartz has served on court-appointed lead counsel teams in several notable actions, including *In re Google Play Consumer Antitrust Litig.*, 20-cv-05761 (N.D. Cal.) (ongoing consumer action alleging unlawful monopolization of the Google Play Store), *In re Vale S.A. Sec. Litig.*, 19-cv-526 (E.D.N.Y.) (ongoing securities action alleging misstatements and omissions to investors related to dam safety), and *In re Apple Inc. Device Perform. Litig.*, 18-md-2827 (N.D. Cal.) (consumer action alleging unlawful iPhone throttling that settled in March 2021 for $310 million).

Mr. Schwartz has also served as counsel to public pension funds and institutional investor clients in matters concerning corporate mismanagement and breach of fiduciary duties. For example, he represented ATRS in *Ark. Teacher Ret. Sys. v. Allianz Global Inv. US LLC*, 20-cv-5615 (S.D.N.Y.), which concerned alleged misconduct and gross mismanagement of three investment funds. Mr. Schwartz also currently represents CalSTRS and the Firemen's Retirement System of St. Louis in a derivative action arising out of Facebook's many years of allegedly improper data sharing practices. *See In re Facebook, Inc. Deriv. Litig.*, 2018-0307-JRS (Del. Ch.)

Prior to joining the firm, Mr. Schwartz served as a Deputy Attorney General in the Pennsylvania Office of Attorney General, Antitrust Section (2014-2017), where he successfully enjoined anticompetitive corporate mergers and prosecuted product-hopping schemes, market allocation schemes, and other unfair trade practices. Notable matters included *FTC v. Penn State Hershey Medical Center* and *U.S. v. Aetna Inc.*

Mr. Schwartz graduated from the University of Wisconsin with dual degrees in history and political science. During law school, Mr. Schwartz was a senior editor for the Penn State Journal of Law and International Affairs and a member of the Moot Court Board.

**Education:**

- B.A., University of Wisconsin—Madison (2009)
- J.D., The Pennsylvania State University—The Dickinson School of Law (2014)

Exhibit 3
Page 175 of 264    Exhibit 4
Page 34 of 48



**Bar Affiliations and Court Admissions:**

- Bar of the Commonwealth of Pennsylvania
- Bar of the State of New York
- U.S. Court of Appeals for the Third Circuit
- U.S. District Courts for the Eastern, Middle, and Western Districts of Pennsylvania; and U.S. District Courts for the Eastern and Southern Districts of New York

**Professional Affiliations:**

- Pennsylvania Bar Association
- American Bar Association

**Publications:**

- *Effective Merger Enforcement: Is it Time for a Retrospective Study on Cross-Market Provider Transactions*, A.B.A., Section of Antitrust Law, 8 State Enforcement Committee Newsletter 4, 10 (Spring 2017).

Mr. Schwartz can be reached by email at: aschwartz@kaplanfox.com

**JASON A. URIS** has been associated with Kaplan Fox since May 2013 and became partner in 2024. He represents the firm's institutional and individual clients in class action, opt-out, and other complex litigation, with a particular focus on securities and antitrust actions.

Mr. Uris currently represents investors in several cases, including *Mehedi v. View Inc., et al.* (N.D. Cal.); *Julia Junge and Richard Junge, v. Geron Corp. and John Scarlett* (N.D. Cal.); *Gluck v. Hecla Mining Company* (S.D.N.Y.); *Stadium Capital LLC v. Co-Diagnostics, Inc., et al.* (S.D.N.Y.); and *McGreevy et al., v. Digital Currency Group, Inc., et al.* (D. Conn.). Mr. Uris also currently represents CalSTRS and the Firemen's Retirement System of St. Louis in *In re Facebook, Inc. Deriv. Litig.*, 2018-0307-JRS (Del. Ch.), a derivative action arising out of Facebook's many years of allegedly improper data sharing practices.

Mr. Uris was also a member of the teams that litigated the following cases: *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* (S.D.N.Y.) ($31 million settlement); *Milbeck v. Truecar, Inc., et al.* ($28.25 million settlement); *Kasper v. AAC*



Exhibit 3
Page 176 of 264   Exhibit 4
Page 35 of 48

*Holdings, Inc., et al.* (M.D. Tenn.) ($25 million settlement); *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W (W.D. Okla.) (partial settlement of $38 million); *In re Cast Iron Soil Pipe Antitrust Litigation*, MDL No. 2508 (E.D. Tenn.) ($30 million settlement); and *In re: CSO Hedge Fund Litigation* ($13.5 million settlement).

In 2022 and 2023, Mr. Uris was named a "Rising Star" by Thomson Reuters' *Super Lawyers.*

**Education:**

- B.A., *cum laude*, Boston University (2011)
- J.D., Fordham University School of Law (2014)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (2015)
- U.S. District Courts for the Southern, Eastern, Northern and Western Districts of New York

**Professional Affiliations:**

- New York State Bar Association

Mr. Uris can be reached by email at: juris@kaplanfox.com


**OF COUNSEL**


**GARY L. SPECKS** practices primarily in the area of complex antitrust litigation. He has represented plaintiffs and class representatives at all levels of litigation, including appeals to the U.S. Courts of Appeals and the U.S. Supreme Court.  In addition, Mr. Specks has represented clients in complex federal securities litigation, fraud litigation, civil RICO litigation, and a variety of commercial litigation matters.  Mr. Specks is a resident in the firm's Chicago office.

During 1983, Mr. Specks served as special assistant attorney general on antitrust matters to Hon. Neil F. Hartigan, then Attorney General of the State of Illinois.

**Education:**

- B.A., Northwestern University (1972)
- J.D., DePaul University College of Law (1975)

**Bar Affiliations and Court Admissions:**



Exhibit 3
Page 177 of 264     Exhibit 4
Page 37 of 48

- Bar of the State of Illinois (1975)
- U.S. Courts of Appeals for the Third, Fifth, Seventh, Ninth and Tenth Circuits
- U.S. District Court for the Northern District of Illinois, including Trial Bar

**Professional Affiliations:**

- American Bar Association
- Illinois Bar Association
- Chicago Bar Association

Mr. Specks can be reached by email at: GSpecks@kaplanfox.com


**W. MARK MCNAIR** has been associated with Kaplan Fox since 2003. He practices in the area of securities litigation. Mr. McNair is actively involved in maintaining and establishing the Firm's relationship with institutional investors and is active in the Firm's Portfolio Monitoring and Case Evaluation Program for the Firm's numerous institutional investors. Mr. McNair is a frequent attendee and speaker at various events for institutional investors.

Mr. McNair is a frequent speaker at various institutional events, including the National Conference of Public Employee Retirement Systems and the Government Finance Office Association.

Prior to entering into private practice, Mr. McNair was an Assistant General Counsel at the Municipal Securities Rulemaking Board where he dealt in a wide range of issues related to the trading and regulation of municipal securities. Previously, he was an attorney in the Division of Market Regulation at the Securities and Exchange Commission. At the Commission his work focused on the regulation of the options markets and derivative products.

**Education:**

- B.A. with honors, University of Texas at Austin (1972)
- J.D. University of Texas at Austin (1975)
- L.L.M. (Securities) Georgetown University (1989)

**Bar Affiliations and Court Admissions:**

- Bar of the State of Texas (1975)
- Bar of the State of Maryland (1995)



Exhibit 3
Page 178 of 264    Exhibit 4
Page 38 of 48

- Bar of the State of Pennsylvania (1995)
- Bar of the District of Columbia (2008)
- U.S. Courts of Appeals for the Third, Fifth, Seventh, Ninth and Tenth Circuits
- U.S. District Court for the Northern District of Illinois, including Trial Bar

Mr. McNair can be reached at MMcnair@kaplanfox.com

**WILLIAM J. PINILIS** practices in the areas of commercial, consumer and securities class action litigation.

He has been associated with Kaplan Fox since 1999 and is resident in the firm's New Jersey office.

In addition to his work at the firm, Mr. Pinilis has served as an adjunct professor at Seton Hall School of Law since 1995 and is a lecturer for the New Jersey Institute for Continuing Legal Education. He has lectured on consumer fraud litigation and regularly teaches the mandatory continuing legal education course Civil Trial Preparation.

In 2021, Mr. Pinilis was appointed as Municipal Court Judge for Morristown, New Jersey.

Mr. Pinilis is the author of "Work-Product Privilege Doctrine Clarified," *New Jersey Lawyer*, Aug. 2, 1999; "Consumer Fraud Act Permits Private Enforcement," *New Jersey Law Journal*, Aug. 23, 1993; "Lawyer-Politicians Should Be Sanctioned for Jeering Judges," *New Jersey Law Journal*, July 1, 1996; "No Complaint, No Memo – No Whistle-Blower Suit," *New Jersey Law Journal*, Sept. 16, 1996; and "The *Lampf* Decision: An appropriate Period of Limitations?" *New Jersey Trial Lawyer*, May 1992.

**Education:**
- B.A., Hobart College (1989)
- J.D., Benjamin Cardozo School of Law (1992)

**Bar Affiliations and Court Admissions:**
- Bar of the State of New Jersey (1992)
- Bar of the State of New York (1993)
- U.S. District Courts for the District of New Jersey, and the Southern and Eastern Districts of New York



Exhibit 3
Page 179 of 264        Exhibit 4
Page 38 of 48

**Professional Affiliations:**

- Morris County Bar Association
- New Jersey Bar Association
- Graduate, Brennan Inn of Court

Mr. Pinilis can be reached by email at: WPinilis@kaplanfox.com

**JUSTIN B. FARAR** joined Kaplan Fox in March 2008.   practices in the area of securities litigation and antitrust litigation with a special emphasis on institutional investor involvement. He is located in the Los Angeles office. Prior to working at Kaplan Fox, Mr. Farar was a litigation associate at O'Melveny & Myers, LLP and clerked for the Honorable Kim McLane Wardlaw on the Ninth Circuit Court of Appeals. Mr. Farar also currently serves as a Commissioner to the Los Angeles Convention and Exhibition Authority.

Mr. Farar is also an adjunct professor at the University of Southern California Gould Law School teaching a course on class actions.

**Education:**

- J.D., order of the coif, University of Southern California Law School (2000)
- B.A., with honors, University of California, San Diego

**Bar Affiliations and Court Admissions:**

- Bar of the State of California (2000)
- U.S. Court of Appeals for the Ninth Circuit (2000)
- U.S. District Court for the Central of California (2000)

**Awards:**

- The American Society of Composers, Authors and Publishers' Nathan Burkan Award Winner, 2000 for article titled "Is the Fair Use Defense Outdated?"

Mr. Farar can be reached by email at: JFarar@kaplanfox.com

**PETER S. LINDEN** joined Kaplan Fox in August 2021. Mr. Linden's practice concentrates on securities, commercial, and healthcare fraud litigation. His clients include public pension funds and other institutional investors, individuals, businesses, and governmental entities. Prior to joining Kaplan Fox, Mr. Linden was a partner at another national securities law firm, where he spent over 30 years, including almost ten years as



**KAPLAN FOX**

Exhibit 3
Page 180 of 264      Exhibit 4
Page 39 of 48

one of that firm's managing partners. During his career, Mr. Linden has obtained numerous outstanding recoveries, totaling in excess of a billion dollars.

In the area of securities litigation, Mr. Linden has played a leading role in numerous successful class actions, including the following examples. He represented plaintiffs, as lead counsel, in *In re Citigroup Inc Securities Litig.*, 07 Civ. 9901 (S.D.N.Y.), a class action arising out of Citigroup's alleged misrepresentations regarding their exposure to losses associated with numerous collateralized debt obligations. This case settled for $590 million -- at the time, the largest CDO-related settlement ever, as well as the largest settlement of a fraud-only action. In *In re BISYS Securities Litig.*, 04 Civ. 3840 (S.D.N.Y.), Mr. Linden's representation of a municipal pension fund as co-lead counsel in a securities class action alleging accounting improprieties resulted in a $65 million recovery. In *In re Laidlaw Bondholder Litig.*, No. 3-00-2518-17 (D.S.C.), Mr. Linden represented, as lead counsel, two major insurance companies and a bondholder class in a securities class action resulting in a $42.875 million recovery. Finally, he represented several large municipal bond issuers in confidential FINRA arbitrations against large, institutional banks. The claims alleged various misrepresentations and breaches of statutory and fiduciary duties by the underwriters of auction rate securities. Currently, Mr. Linden represents plaintiffs in *Kinnie MA IRA, et al. v. Ascendant Capital, LLC, et al.*, No. 19-cv-01050-RP (W.D.Tex.), a proposed class action in which the Court has appointed Kaplan Fox as Plaintiffs' Co-Lead Class Counsel. The action alleges that GPB Capital Holdings, LLC and Ascendant Capital engaged in a scheme to improperly sell over $1.8 billion of limited partnership interests to thousands of investors.

Mr. Linden has handled many notable actions in the consumer protection area as well. He served as Chairman of the Plaintiffs' Steering Committee in *In re MCI Non-Subscriber Litig.*, MDL No. 1275 (S.D. Ill.), a consumer class action resulting in an approximately $90 million recovery for the class. In *Carnegie v. Household International, Inc., et al.*, No. 98 C 2178 (N.D. Ill.) he and his firm served as co-lead counsel in a class action against H&R Block and Household Bank (as successor to Beneficial National Bank) for the benefit of taxpayers who had obtained Refund Anticipation Loans ("RALs"). The case alleged that H&R Block and Beneficial National Bank made misrepresentations and charged people undisclosed fees on RALs. After years of litigation and appeals, the


**KAPLAN FOX**

Exhibit 3
Page 181 of 264        Exhibit 4
                       Page 40 of 48

case resulted in a settlement of $39 million in cash. In *In re IDT Corp. Calling Card Terms Litig.*, No. 207 CV 01076  (D.N.J.), Mr. Linden served as lead counsel in a class action litigation against certain related prepaid calling card providers, alleging that they failed to inform consumers sufficiently about the applicable rates and charges for such calling cards, and thereby violated various state consumer protection acts and other laws.  The case resulted in a settlement of up to $20 million in Refund PINs (representing free domestic telephone minutes), $2 million in charitable donations, and additional relief consisting of enhanced disclosures of calling card charges.

Within the area of consumer protection, Mr. Linden is also involved in the firm's growing data privacy and cyberlaw practice. Mr. Linden is currently representing plaintiffs in two data privacy class actions: *In Re: HealthEC LLC Data Breach Litig.*, No. 2:24 -cv-26-JKS-ESK (D.N.J.); and *Negron v. Ascension Health,* No. 4:24-CV-669-JAR (E.D.Mo).

In the healthcare arena, Mr. Linden represented the State of Michigan in *Bill Schuette, Attorney General of The State of Michigan, ex rel The State of Michigan v. McKesson Corporation, et al.*, No. 11-629-CZ (Ingham Cty. Cir. Ct.), a lawsuit arising out of a scheme to increase the Average Wholesale Prices of hundreds of brand name drugs causing the submission of false claims to the Michigan Medicaid program, and the overpayment of Medicaid pharmacy claims. The court determined that the State had successfully pled a cause for money damages under its Medicaid False Claims Act.

Mr. Linden's advocacy also has resulted in many notable decisions, including: *Epstein v. MCA, Inc.*, finding a private right of action, and granting partial summary judgment, under Section 14(d)(7) of the Securities Exchange Act; and *In re eBay, Inc. Shareholders Litig.*, finding that investment banking advisors could be held liable for aiding and abetting insiders' acceptance of IPO allocations through "spinning."

Mr. Linden has been selected by Super Lawyers for securities litigation. His past work has also resulted in recognition in Law360 and the National Law Journal's "Plaintiffs' Hot List."

Prior to going into private practice, Mr. Linden worked as an Assistant District Attorney in the Kings County District Attorney's Office for over six years and gained significant trial and appellate experience. He ultimately served as a supervising attorney of that Office's Economic Crimes Bureau.



Exhibit 3
Page 182 of 264          Exhibit 4
Page 42 of 48

**Education:**

- B.A., State University of New York at Stony Brook (1980), Pi Sigma Alpha Honor Society
- J.D., Boston University School of Law (1984)

**Court Admissions and Bar Affiliations:**

- New York State Bar
- United States District Court for the Southern District of New York
- United States District Court for the Eastern District of New York
- United States District Court for the Eastern District of Michigan
- United States District Court for the Eastern District of Wisconsin
- United States Courts of Appeals for the Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth and the District of Columbia Circuits

**Professional affiliations:**

- New York State Bar Association
- Association of the Bar of the City of New York
- Michigan Association of Public Employee Retirement Systems (MAPERS)
- Dean's Advisory Board, Boston University School of Law
- Advisory Board, Boston University School of Law Small & Mid-Size Firm Apprenticeship Program (SMAP)

Mr. Linden can be reached by email at: plinden@kaplanfox.com

## <u>ASSOCIATES</u>

**BLAIR REED** joined Kaplan Fox as an associate in January 2022. Blair's practice focuses on consumer class actions, employment cases, data privacy claims, and business litigation. She has extensive experience handling coordinated proceedings and complex discovery issues in both federal and state courts.

Blair has represented consumers in cases involving unfair business practices and consumer fraud, breaches of warranty, invasions of privacy, data breaches, and wiretapping. Prior to joining Kaplan Fox, she was involved in numerous successful recoveries for consumers including *Moore v. Kimberly-Clark Worldwide, Inc.*, which


KAPLAN FOX

Exhibit 3
Page 183 of 264    Exhibit 4
Page 42 of 48

resulted in a nationwide settlement valued at over $11 million for purchasers of allegedly defective tampons.  Additionally, in 2019, Blair participated on the trial team in *Perez v. Rash Curtis & Associates*, where the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.

Blair received her Juris Doctor from University of San Francisco School of Law in 2017, where she was a Dean's Scholar and member of the University of San Francisco Law Review.  Blair also attended University of San Francisco for her undergraduate degree where she played on the NCAA Division I Women's Tennis Team.

**Education:**

- Bar of the State of California (2017)
- J.D., University of San Francisco School of Law (2017)
  - Dean's Scholar
  - USF Law Review
- B.A. in Advertising and Communications, University of San Francisco (2013)

**Bar Affiliations and Court Admissions:**

- Bar of the State of California (2017)
- U.S. District Courts for the Northern, Central, Southern and Eastern Districts of California
- Ninth Circuit Court of Appeals

Ms. Reed can be reached by email at: BReed@kaplanfox.com

**BRANDON FOX** practices primarily in the areas of securities, consumer protection and data privacy litigation.

Mr. Fox is currently involved in several litigations, including *John Scarlett* (N.D. Cal.); *Steven B. Christiansen v. Spectrum Pharmaceuticals, Inc.* (S.D.N.Y.); and *In re Vale S.A. Securities Litigation* (E.D.N.Y).

Mr. Fox was also a member of the teams that litigated the following cases: *In re Apple Inc. Device Performance Litigation, Julia Junge and Richard Junge v. Geron Corp.,* and *In re Allianz Global Investor U.S. LLC Litigation*.

Prior to joining the firm, Brandon worked for about two years as a paralegal at a global defense firm in New York.


**KAPLAN FOX**

Exhibit 3
Page 184 of 264          Exhibit 4
Page 43 of 48

**Education:**

- J.D., Benjamin N. Cardozo School of Law (2019)
- B.S. in Political Science, University of Southern California (2014)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (2023)
- U.S. District Court for the Southern District of New York

Mr. Fox can be reached by email at: BFox@kaplanfox.com

**WALTER HOWE** is an associate attorney in the firm's San Francisco Bay Area office. He works on matters involving antitrust, securities, consumer protection, data privacy, and employment.

**Education:**

- J.D., University of the Pacific McGeorge School of Law (2019)
  - o Research Editor on the Journal of National Security Law & Policy
- M.A., *honors*, University of Saint Andrews in Scotland (2002)

**Bar Affiliations and Court Admissions:**

- Bar of the State of California (2006)
- U.S. District Courts for the Northern, Central, Southern and Eastern Districts of California

Mr. Howe can be reached by email at: WHowe@kaplanfox.com

**CARIHANNA MORRISON** practices in the areas of antitrust, securities, consumer protection, and data privacy litigation.

Ms. Morrison is currently involved in several litigations, including *In re Facebook, Inc. Deriv. Litig.*, 2018-0307 (Del. Ch.); *In re Vale S.A. Securities Litigation*, 19-cv-526 (E.D.N.Y.); *In re Google Play Consumer Antitrust Litigation,* 20-cv-05761 (N.D. Cal.); *Dinosaur Financial Group LLC et al. v. S&P Global Inc. et al.*, 22-cv-1860 (S.D.N.Y.) and *In re Cattle and Beef Antitrust Litigation*, 22-md-3031 (D.Minn.).

**Education:**

- J.D., St. John's University School of Law (2022)
- M.A., Teachers College, Columbia University (2017)



KAPLAN FOX

Exhibit 3
Page 185 of 264    Exhibit 4
Page 45 of 48

- B.A., *cum laude,* Mount Holyoke College (2016)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (2024)
- U.S. District Court for the Southern District of New York (pending)

Ms. Morrison can be reached by email at: CMorrison@kaplanfox.com

**CLARISSA (CLARI) OLIVARES** joined Kaplan Fox in their Oakland office as an associate in January 2024. Clari's practice focuses on data privacy and consumer class actions, including data breach cases and data security and privacy matters involving the SCA, BIPA, and other federal and state privacy and wiretap statutes.

Prior to joining Kaplan Fox, Clari worked in corporate defense, honing litigation skills they now bring to bear on behalf of their clients at Kaplan Fox. Clari is a graduate of the U.C. Berkeley School of Law, where they were on the board of the Womxn of Color Collective and a submissions editor for the La Raza Law Journal. During this time, Clari also had the privilege of externing for Justice Tracie L. Brown, Presiding Justice of Division Four of the First District Court of Appeal in San Francisco, California.

**Education:**

- Seattle University: B.A. in English Literature; Minor in Int'l. Economic Development (2017)
- U.C. Berkeley School of Law: J.D. (2020)

**Bar Affiliations & Court Admissions:**

- California State Bar
- U.S. District Court for the Northern District of California

Ms. Olivares can be reached by email at: COlivares@kaplanfox.com

**CHANG HAHN** joined Kaplan Fox as an Associate in 2024 and is a resident of its New York office. The focus of her practice is securities, antitrust and consumer protection litigation. Chang also currently serves on the Technology, Cyber and Privacy Law Committee at the New York City Bar Association and on the Diversity, Equity and Inclusion Committee at the New York State Bar Association. Prior to joining the firm, Chang worked at Winston & Strawn LLP and Bathaee Dunne LLP.

 **KAPLAN FOX**

Exhibit 3
Page 186 of 264      Exhibit 4
Page 45 of 48

While attending NYU Law School, Chang served on the executive boards of Moot Court, Asian Pacific American Student Law Association, Suspension Representation Project, Christian Legal Fellowship, and OUTLaw. She also interned with the New York County Defender Services for over a year and interned for a term with the New York Attorney General's Office, Bureau of Internet & Technology. Simultaneously, she was a research assistant for Professor Oscar Chase, the New York City Bar Association's Animal Law Committee, Professor Meg Satterthwaite, and Professor Zalman Rothschild.

Prior to law school, Chang graduated *magna cum laude* from UCLA with a major in Political Science and a minor in Labor & Employment Studies admitted to the Bars of the State of New York and Eastern District of Texas.

**Education:**
- New York University School of Law (2021)
- UCLA (2013)

**Bar Affiliations & Admissions:**
- New York State
- United States District Court for the Eastern District of Texas

Ms. Hahn can be reached by email at: CHahn@kaplanfox.com

**MATTHEW (MATT) LINDENMUTH** joined Kaplan Fox in 2024 as an Associate in its New York office.  He practices in the areas of securities, antitrust, consumer protection, and data privacy litigation. Prior to joining the firm, he was an Assistant District Attorney with the Manhattan District Attorney's Office.

While attending Villanova Law, Matt was a member of the National Trial Team, Black Law Students Association, and Corporate Law Society. He also served as a Teaching Assistant for Professor David Caudill and as a 1L Student Mentor. Additionally, Matt represented indigent clients in the city of Philadelphia as a Student Attorney through the Villanova Civil Justice Clinic. Prior to law school, Matt graduated from Villanova University with a major in Political Science and a minor in Public Administration.

Matt is admitted to the Bars of the State of New York and State of New Jersey.

**Education:**
- Villanova University Charles Widger School of Law (2020)


**KAPLAN FOX**

Exhibit 3
Page 187 of 264    Exhibit 4
Page 46 of 48

- Villanova University (2017)

**Bar Affiliations and Admissions:**

- State of New York
- State of New Jersey

Mr. Lindenmuth can be reached by email at MLindenmuth@kaplanfox.com



Exhibit 3
Page 188 of 264          Exhibit 4
Page 47 of 48

# EXHIBIT 5

Exhibit 3
Page 189 of 264

## Grant & Eisenhofer

**FIRM BIOGRAPHY**

Grant & Eisenhofer P.A. ("G&E") concentrates on federal securities and corporate governance litigation and other complex class litigation.  With approximately 80 attorneys, G&E primarily represents domestic and foreign institutional investors, both public and private, who have been damaged by corporate fraud, greed and mismanagement.  The Firm was named to The National Law Journal's "Plaintiffs' Hot List" for more than a decade and is listed as one of America's Leading Business Law Firms by Chambers & Partners, who reported that G&E "commanded respect for its representation of institutional investors in shareholder and derivative actions, and in federal securities fraud litigation."  Based in Delaware, New York, Chicago and San Francisco, G&E routinely represents clients in federal and state courts throughout the country.  G&E's clients include the California Public Employees' Retirement System, New York State Common Retirement Fund, Ohio Public Employees' Retirement System, State of Wisconsin Investment Board, Teachers' Retirement System of Louisiana, PIMCO, Trust Company of the West, The Capital Guardian Group and many other public and private U.S. and international institutions.

G&E was founded in 1997 by Jay W. Eisenhofer and Stuart M. Grant, former litigators in the Wilmington office of the nationally prominent firm of Skadden, Arps, Slate, Meagher & Flom LLP.  Over the years, the Firm's principals have gained national reputations in securities and corporate litigation.  In fact, G&E was the first law firm in the country to argue the provisions of the Private Securities Litigation Reform Act ("PSLRA") allowing an institutional investor to be appointed as lead plaintiff in a securities class action.  The Firm has gone on to build a national and international reputation as a leader in securities litigation.  In both class action and "opt-out" cases, G&E has attracted widespread recognition for protecting investors' rights and recovering their damages.  RiskMetrics Group has twice recognized G&E for securing the highest average investor recovery in securities class actions.

**G&E has served as lead counsel in many of the largest securities class action recoveries, including:**

> $3.2 billion settlement from Tyco International Ltd. and related defendants
> $486 million settlement from Pfizer
> $448 million settlement in Global Crossing Ltd. securities litigation
> $422 million total class recovery for investors in the stock and bonds of Refco
> $400 million recovery from Marsh & McLennan
> $325 million from Delphi Corp.
> $303 million settlement from General Motors
> $300 million settlement from DaimlerChrysler Corporation
> $300 million recovery from Oxford Health Plans
> $276 million judgment & settlement for Safety-Kleen bond investors

G&E has also achieved landmark results in corporate governance litigation, including:

> *In re UnitedHealth Group Inc. Shareholder Derivative Litigation*: G&E
> represented the Ohio Public Employees Retirement System, State
> Teachers Retirement System of Ohio, and Connecticut Retirement Plans
> and Trust Funds as lead plaintiffs in a derivative and class action suit in

-1-

Exhibit 3
Page 190 of 264          Exhibit 5
Page 1 of 65

**Grant & Eisenhofer**

which G&E successfully challenged $1.2 billion in back-dated options granted to William McGuire, then-CEO of health care provider UnitedHealth Group ("UHG"). This was among the first – and most egregious – examples of options backdating. G&E's case against UHG produced a settlement of $922 million, the largest settlement in the history of derivative litigation in any jurisdiction.

*In re Digex, Inc. Shareholders Litigation* – G&E initiated litigation alleging that the directors and majority stockholder of Digex, Inc. breached fiduciary duties to the company and its public shareholders by permitting the majority shareholder to usurp a corporate opportunity that belonged to Digex. G&E's efforts in this litigation resulted in an unprecedented settlement of $420 million, one of the largest settlements in the history of the Delaware Chancery Court.

*Caremark / CVS Merger* - G&E represented two institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as the board's decision to reject a competing proposal from a different suitor. Through the litigation, Caremark's board was forced to renegotiate the terms of the merger agreement with CVS. The settlement ensured statutory rights of Caremark shareholders, providing an additional $3.19 billion in cash consideration.

*Teachers' Retirement System of Louisiana v. Greenberg, et al. and American International Group, Inc.*: In what was, at the time, the largest settlement of shareholder derivative litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a lawsuit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets.

*AFSCME v. AIG* – This historic federal appeals court ruling in favor of G&E's client established the right, under the then-existing proxy rules, for shareholders to place the names of director candidates nominated by shareholders on corporate proxy materials – reversing over 20 years of adverse rulings from the SEC's Division of Corporate Finance and achieving what had long been considered the "holy grail" for investor activists. Although the SEC took nearly immediate action to reverse the decision, the ruling renewed and intensified the dialogue regarding proxy access before the SEC, ultimately resulting in a new rule currently being considered by the SEC that, if implemented, will make proxy access mandatory for every publicly traded corporation.

**G|E Grant & Eisenhofer**

> *Unisuper Ltd. v. News Corp., et al.* – G&E forced News Corp. to rescind the extension of its poison pill on the grounds that it was obtained without proper shareholder approval.
>
> *Teachers' Retirement System of Louisiana v. HealthSouth* – G&E negotiated a settlement which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby shareholders would nominate their replacements.
>
> *Carmody v. Toll Brothers* – This action initiated by G&E resulted in the seminal ruling that "dead-hand" poison pills are illegal.

In addition, the Firm's lawyers are often called upon to testify on behalf of institutional investors before the SEC and various judicial commissions, and they frequently write and speak on securities and corporate governance issues. G&E managing director Jay Eisenhofer and principal Michael Barry are co-authors of the *Shareholder Activism Handbook*, and in 2008, Jay Eisenhofer was named by *Directorship Magazine* as one of the "100 Most Influential People in Corporate Governance and the Boardroom."

G&E is proud of its success in fighting for institutional investors in courts and other forums across the country and throughout the world.

# G E
## Grant & Eisenhofer

**G&E's ATTORNEYS**

**Jay W. Eisenhofer**

Jay Eisenhofer, co-founder and managing principal of Grant & Eisenhofer P.A., has been counsel in more multi-hundred million dollar cases than any other securities litigator, including the $3.2 billion settlement in the Tyco case, the $922 million UnitedHealth Group settlement, the $486 million settlement with Pfizer, the $450 million settlement in the Global Crossing case,  a $400 million settlement with Marsh & McLennan, a $303 million settlement with General Motors and a $300 million settlement with DaimlerChrysler. Internationally, Mr. Eisenhofer has organized cases on behalf of investors leading to substantial recoveries, including the $1.5 billion settlement with Fortis in the Netherlands, the $1 billion recovery against Royal Bank of Scotland in the United Kingdom, and the historic $450 million pan-European settlement in the Royal Dutch Shell case in the Netherlands. Mr. Eisenhofer was also the lead attorney in the seminal cases of *American Federation of State, County & Municipal Employees, Employees Pension Plan v. American International Group, Inc.*, where the U.S. Court of Appeals required shareholder proxy access reversing years of SEC no-action letters, and *Carmody v. Toll Brothers*, wherein the Delaware Court of Chancery first ruled that so-called "dead-hand" poison pills violated Delaware law.

Mr. Eisenhofer has served as litigation counsel to many public and private institutional investors, including, among others, Amalgamated Bank, APG Asset Management, California Public Employees Retirement System, California State Teachers Retirement System, Colorado Public Employees Retirement Association, the Florida State Board of Administration, John Hancock, Louisiana State Employees Retirement System, New York City Retirement Funds, Inc., and Service Employees International Union.

Mr. Eisenhofer is consistently ranked as a leading securities and corporate governance litigator and he has been named by Lawdragon to its annual list of the top 500 lawyers in America for several consecutive years. He is also recognized by Benchmark Litigation as one of the Top 100 Trial Lawyers. *The National Law Journal* has selected Grant & Eisenhofer to its "Plaintiffs' Hot List" as one of the top plaintiffs' law firms in the country since the List's inception, earning the firm a place in *The National Law Journal's* "Plaintiffs' Hot List Hall Of Fame" in 2008, as well as to its list of "Elite Trial Lawyers: The 50 Leading Plaintiffs Firms in America" since commencement of the list. The firm has been selected as a "Most Feared Plaintiffs Firm" by *Law360* as "one of the most high-profile shareholder and whistleblower advocates in the country, securing record-high cash settlements." *U.S. News & World Report* has also repeatedly named Grant & Eisenhofer to its list of "Best Law Firms" in the fields of Securities Litigation, Commercial Litigation, and Corporate Law. Mr. Eisenhofer is rated AV by Martindale-Hubbell.

Mr. Eisenhofer has written and lectured widely on securities fraud and insurance coverage litigation, business and employment torts, directors' and officers' liability coverage, and the Delaware law of shareholder rights and directorial responsibilities. Among the publications he has authored: "The Shareholders Activism Handbook" Aspen Publishers; "Proxy Access Takes Center Stage – The Second Circuit's Decision in *AFSCME Employees Pension Plan v. American International Group, Inc.*" *Bloomberg Law Reports*, Vol. 1, No. 5; "Investor Litigation in the U.S. - The System is Working" *Securities Reform Act Litigation Reporter*, Vol. 22, #5; "*In re Walt Disney Co. Deriv. Litig.* and the Duty of Good Faith Under Delaware Corporate Law" *Bank*

*& Corporate Governance Law Reporter*, Vol. 37, #1; "Institutional Investors As Trend-Setters In Post-PSLRA Securities Litigation" *Practising Law Institute*; "*In re Cox Communications, Inc.*: A Suggested Step in the Wrong Direction," *Bank and Corporate Governance Law Reporter,* Vol. 35, #1; "Does Corporate Governance Matter to Investment Returns?" *Corporate Accountability Report*, Vol. 3, No. 37; "Loss Causation in Light of Dura: Who is Getting it Wrong?" *Securities Reform Act Litigation Reporter*, Vol. 20, #1; "Giving Substance to the Right to Vote: An Initiative to Amend Delaware Law to Require a Majority Vote in Director Elections," *Corporate Governance Advisor*, Vol. 13, #1; "An Invaluable Tool in Corporate Reform: Pension Fund Leadership Improves Securities Litigation Process," *Pensions & Investments*; and "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*. Mr. Eisenhofer has also authored a number of articles on illiquid and rogue hedge funds, including "Time for Hedge Funds to Become Accountable to Fiduciary Investors," *Pensions & Investments*; and "Hedge Funds of the Living Dead," *New York Times Dealbook*.

Mr. Eisenhofer serves as a member of the NYU Law School Advisory Board for the Center on Civil Justice. He is a graduate of the University of Pittsburgh, and a 1986 *magna cum laude* graduate of Villanova University School of Law, Order of the Coif. He was a law clerk to the Honorable Vincent A. Cirillo, President Judge of the Pennsylvania Superior Court and thereafter joined the Wilmington office of Skadden Arps Slate Meagher & Flom. Mr. Eisenhofer was a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming Grant & Eisenhofer P.A. in 1997.

### Jeff A. Almeida

Jeff Almeida is a principal at Grant & Eisenhofer practicing in the areas of Delaware corporate litigation and both domestic and international securities litigation.

Mr. Almeida has a wide breadth of complex commercial litigation experience, with over 22 years of practice. He has primarily represented domestic and foreign institutional investors in prominent securities fraud class actions and opt-out cases, including *In re JPMorgan Chase & Co. Securities Litigation (London Whale)* (S.D.N.Y.); *In re Medtronic Securities Litigation* (D. Minn.); *In re Refco Inc. Securities Litigation* (S.D.N.Y.); *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (D.N.J.); *In re Bank of America/Merrill Lynch Securities Litigation* (S.D.N.Y.); *In re Pfizer Inc. Securities Litigation* (S.D.N.Y.); *In re Global Cash Access Holdings Securities Litigation* (D. Nev.); and *In re Career Education Corp. Securities Litigation* (S.D. Ill.).  In addition, Mr. Almeida has played prominent roles in international securities cases involving RBS (U.K.), Volkswagen (Germany), and Danske Bank (Denmark).

Mr. Almeida has also been actively engaged in derivative, class, and appraisal litigation in the Delaware Court of Chancery, including the matters *In re Tyson Foods, Inc. Consolidated Shareholder Litigation*, which resulted in historic rulings clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans; *Louisiana Municipal Police Employees' Retirement System v. Crawford* (*Caremark*), a well-publicized derivative action challenging the terms of the Caremark and CVS merger that resulted in a $3.2 billion settlement; and *In re Genentech Inc. Shareholder Litigation*, where he successfully represented Genentech minority stockholders in controlling stockholder Roche's attempt to squeeze out the minority to seize full control of Genentech.

Exhibit 3
Page 194 of 264        Exhibit 5
-5-                                        Page 5 of 65

Grant & Eisenhofer currently leverages Mr. Almeida's broad experience and success in stockholder litigation to manage the firm's investigation and development of new cases. In this role, Mr. Almeida conducts in-depth investigations into dozens of potential securities fraud claims, and other derivative and corporate governance matters, in order to develop the legal theories that support Grant & Eisenhofer's litigation efforts.

Prior to joining Grant & Eisenhofer in August 2004, Mr. Almeida was affiliated for six years as an attorney with a major Philadelphia defense firm, where he practiced in the areas of complex commercial litigation and class action defense.

Mr. Almeida is a 1994 graduate of Trinity College in Hartford, Connecticut, where he captained the varsity basketball team and achieved election to Phi Beta Kappa, and a 1997 graduate of William and Mary Law School in Williamsburg, Virginia. Mr. Almeida is admitted to practice in Delaware, Pennsylvania, and New Jersey, along with several federal courts.

## Edward J. Aucoin

Edward Aucoin is a principal at Grant & Eisenhofer, where his primary area of practice is representing families and children in birth injury and birth trauma litigation. Prior to joining G&E, Mr. Aucoin worked at several medical negligence defense firms in the Chicago area, focusing on medical malpractice and professional liability as well as commercial litigation. He also was a senior trial attorney at a national insurance company.

Mr. Aucoin has successfully litigated hundreds of cases and has served as first and second chair trial attorney. He has handled every aspect of medical negligence cases, from pleadings and discovery to experts and trial. Mr. Aucoin has litigated birth injury cases in Illinois, Louisiana, Wisconsin, Missouri, Florida, Georgia, South Carolina, North Carolina, Texas, Mississippi, Kentucky, Maryland, New York, North Dakota, South Dakota, Arkansas, Nevada, Michigan, Ohio and Indiana.

In 2023, Mr. Aucoin was selected as one of the "Top 100 - Civil Plaintiff" by the National Trial Lawyers for the second year in a row. Mr. Aucoin previously served as co-chair of the American Association for Justice Medical Negligence Information Exchange Group and is currently a Co-editor of the Journal for the American Association for Justice Birth Trauma Litigation Group. He previously authored an article for that Journal, titled *Helping to Improve Your Client's Life Outside the Courtroom*, which focused on governmental and private programs in education, nutrition, finance, health insurance, and housing that are available to persons with disabilities.

Mr. Aucoin received his J.D. from Loyola University New Orleans School of Law and his B.A. in Broadcast Journalism and Political Science from Loyola University of New Orleans. He is licensed in Illinois, Louisiana and North Carolina, and is admitted to numerous Federal District Courts in the United States.

## Michael J. Barry

Michael Barry is a principal at Grant & Eisenhofer focusing on corporate governance and securities litigation. For over thirteen years, he has represented institutional investors in litigation relating to securities fraud, corporate fiduciary responsibilities, shareholder proposals under SEC

**G|E** Grant & Eisenhofer

Rule 14a-8, and corporate governance generally.  As a foremost practitioner in these areas, Mr. Barry has been significantly involved in groundbreaking class action recoveries, corporate governance reforms and shareholders rights litigation.

He has been instrumental in landmark corporate governance cases, including *AFSCME v. AIG*, which recognized shareholders' right to introduce proxy access proposals; *Bebchuk v. CA, Inc.,* which allowed shareholders to introduce proposals restricting a board's ability to enact poison pills; and *CA, Inc. v. AFSCME*, a historic decision of the Delaware Supreme Court regarding the authority of shareholders to adopt corporate bylaws. His casework includes the Genentech Shareholder Litigation, resulting in an increase of $3 billion in value for shareholders arising from a corporate merger; a $922 million settlement in the UnitedHealth Group derivative litigation, resolving one of the most egregious examples of options backdating; an $89.4 million recovery for stockholders of Del Monte Foods Co. in a case that exposed significant conflicts of interest in staple financing in corporate mergers; and a $153.75 million recovery in a derivative action on behalf of Freeport-McMoRan Corporation shareholders, which included, for the first time in derivative litigation, a provision that the entire cash portion of the recovery—$147.5 million—be distributed to shareholders in the form of a special dividend.

Mr. Barry has spoken widely on corporate governance and related matters. In addition to having served as a guest lecturer at Harvard Law School, he speaks at numerous conferences each year. Mr. Barry has authored several published writings, including the *Shareholder Activism Handbook*, a comprehensive guide for shareholders regarding their legal rights as owners of corporations, which he co-authored. In 2015, Mr. Barry was selected to the Markets Advisory Council for the Council of Institutional Investors.

Prior to joining Grant & Eisenhofer, Mr. Barry practiced at a large Philadelphia-based firm, where he defended the Supreme Court of Pennsylvania, the Pennsylvania Senate and Pennsylvania state court judges in a variety of trial and appellate matters. He is a 1990 graduate of Carnegie Mellon University and graduated *summa cum laude* in 1993 from the University of Pittsburgh School of Law, where he was an Executive Editor of the *University of Pittsburgh Law Review* and a member of the Order of the Coif.

**Daniel L. Berger**

Daniel Berger is a principal at Grant & Eisenhofer. Prior to joining the firm, Mr. Berger had been a partner at two major plaintiffs' class action firms in New York, where he litigated complex securities and discrimination class actions for twenty-two years.

Mr. Berger's experience includes trying three 10b-5 securities class actions to jury verdicts, which are among very few such cases ever tried, as well as conducting trials in Delaware Chancery Court and other state courts. Mr. Berger  served as principal lead counsel in many of the largest securities class action  cases in history, achieving successful recoveries for classes of investors in *In re JPMorgan Chase & Co. Securities Litigation* ($150 million);  *In re Merck Vytorin/Zetia Securities Litigation* ($215 million); *In re Cendant Corp. Securities Litigation* ($3.3 billion); *In re Lucent Technologies, Inc. Securities Litigation* ($675 million); *In re Bristol-Myers Squibb Securities Litigation* ($300 million); *In re Daimler Chrysler A.G. Securities Litigation* ($300 million); *In re Conseco, Inc. Securities Litigation* ($120 million); *In re Symbol*

-7-

Exhibit 3
Page 196 of 264        Exhibit 5
Page 7 of 65

**Grant & Eisenhofer**

*Technologies Securities Litigation* ($139 million); and *In re OM Group Securities Litigation* ($92 million).

Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott,* 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.,* 919 F.2d 290 (5th Cir. 1990.) In addition, Mr. Berger was lead class counsel in many important discrimination class actions, in particular *Roberts v. Texaco, Inc.*, where he represented African-American employees of Texaco and achieved the then largest settlement ($175 million) of a race discrimination class action.

Mr. Berger is a member of the faculty of Columbia University School of Law, where he is a Lecturer in Law.  He also serves on the Board of Visitors of the Law School. Previously, Mr. Berger was a member of the Board of Managers of Haverford College from 2000-2003.  He is a member of the Board of Directors (and was Board co-Chair) of the GO Project, a not-for profit organization that provides academic support for New York City public school students. He also serves on the Board of the Madison Square Park Conservancy, a public-private partnership that operates and preserves one of New York City's great parks.

Mr. Berger is a 1976 graduate of Haverford College, and graduated in 1979 from Columbia University School of Law.

**Robert G. Eisler**

Robert Eisler is a principal at Grant & Eisenhofer and leads the firm's antitrust practice. Mr. Eisler has been involved in many significant antitrust class action cases over the course of his career. He is experienced in numerous industries, including pharmaceuticals, paper products, construction materials, industrial chemicals, processed foods, securities, and consumer goods.

Mr. Eisler is currently serving as co-lead counsel in several cases, *including In re Seroquel Antitrust Litigation*, *In re London Silver Fixing, Ltd. Antitrust Litigation* and *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*. He has served as lead or co-lead counsel in many other significant antitrust cases, including *In re Buspirone Antitrust Litigation* (which led to a $90 million settlement in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job"), *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, *In re Flat Glass Antitrust Litigation*, and *In re Municipal Derivatives Antitrust Litigation*.

Mr. Eisler has played major roles in a number of other significant antitrust cases, including *In re Polyurethane Foam Antitrust Litigation*, *In re Blue Cross/Blue Shield Antitrust Litigation*, *In re Containerboard Antitrust Litigation* and *In re Linerboard Antitrust Litigation*.  He also has significant experience litigating antitrust matters in the UK and the Netherlands including cases concerning cartels in a number of industries, such as air cargo services, air passenger services, automotive glass, medium and heavy trucks and pharmaceuticals, among others.

In addition to his antitrust work, Mr. Eisler has extensive experience in securities, derivative, complex commercial and class action litigation at the trial and appellate levels. He has been involved in numerous securities and derivative litigation matters on behalf of public pension funds, municipalities, mutual fund companies and individual investors in state and federal courts.

**GE** Grant & Eisenhofer

Mr. Eisler graduated from LaSalle University in 1986, and in 1989, from Villanova University School of Law.

**Adam J. Gomez**

Adam Gomez is a principal at Grant & Eisenhofer where he focuses on complex class action and mass tort litigation, as well as environmental litigation. Prior to joining G&E, Mr. Gomez was an associate at a national defense litigation firm where he defended clients in catastrophic personal injury, products liability, professional liability, and civil rights litigation.

Mr. Gomez currently serves as the Chair of Discovery in the *In re East Palestine Train Derailment* litigation, which resulted in a record-setting $600 million settlement arising out of the derailment of Norfolk Southern Train 32N in East Palestine, Ohio, on February 3, 2023.  In addition to leading discovery in that matter, Mr. Gomez also served as part of the settlement negotiation team and was primarily responsible for the administration and distribution of settlement funds to the Class.  Mr. Gomez is currently the Chair of the Discovery Committee and Co-Lead Trial Counsel in the *Gilead Tenofovir* Cases, California Judicial Council Coordinated Proceeding (JCCP) No. 5043, representing members of the HIV community injured by Gilead Sciences, Inc.'s negligent design of tenofovir-based antiretroviral medications.  Mr. Gomez also actively serves as Co-Liaison Counsel in the *Mead Johnson Products Cases*, California Judicial Council Coordinated Proceeding (JCCP) No. 5257, relating to injuries suffered by pre-term infants as a result of ingesting defective baby formula products.  In the past, Mr. Gomez served as Chair of the Insurance Committee and a member of the settlement negotiation team representing residents and businesses harmed by the catastrophic gas explosions in Merrimack Valley of Massachusetts caused by the negligence of Columbia Gas and NiSource, which resulted in an historic $143 million settlement. Mr. Gomez has represented victims of the Paradise, California Camp Fire—the deadliest in the state's history—where plaintiffs allege that fires were sparked by aging, unsafe electrical infrastructure maintained by Pacific Gas & Electric.

Mr. Gomez earned his J.D. from Temple University James E. Beasley School of Law in 2013, where he was a Beasley Scholar and received awards for excellence in Constitutional Law and Outstanding Oral Advocacy in the Integrated Trial Advocacy Program. He received his B.A. in Government from Wesleyan University in 2010 where he served as Chair of the Student Judicial Board and President of Delta Kappa Epsilon.

Mr. Gomez is a member of the American Association for Justice where he serves on the Legal Affairs Committee, Hispanic Bar Association of Pennsylvania and Philadelphia Trial Lawyers Association.  He was selected for inclusion in the 2018 list of "Rising Stars" in Pennsylvania *Super Lawyers*. Mr. Gomez was also selected to the Lawdragon 500 Leading Plaintiff Consumers Lawyers Guide for the past three years.

**Elizabeth (Beth) Graham**

Elizabeth ("Beth") Graham is a principal at Grant & Eisenhofer. She leads the firm's complex and mass tort litigation practice and serves as a member of the firm's Executive Committee. Ms.

Grant & Eisenhofer

Graham has spent most of her career as a plaintiffs' lawyer advocating for the rights of individuals, families and small businesses harmed by large corporations.

Ms. Graham's expertise spans the practice areas of mass tort, consumer fraud, product liability, environmental, business torts, and sexual assault and retaliation claims. She has served as Lead Counsel in multi-million dollar cases, has acted as a member of various Plaintiffs' Executive Committees in complex actions, and has prior experience as national defense coordination counsel in product liability and environmental litigation.

Ms. Graham is actively representing thousands of injured victims in various cases against corporations, including pharmaceutical companies, medical device manufacturers, public utility and tech companies. As lead class counsel, Ms. Graham reached a $600 million settlement in the *In re East Palestine Train Derailment* cases on behalf of individuals harmed by the Norfolk Southern train derailment and explosion in East Palestine, Ohio, which released a cloud of toxic vinyl chloride into the surrounding area. The settlement, which has received preliminary approval from the Court, provides for payment to residents and businesses in East Palestine and the affected surrounding communities.

Ms. Graham is Liaison Counsel, a member of the Executive Committee, Chair of the Law & Briefing Committee, and was a lead negotiator in the *In re Essure Product Cases* (JCCP 4887) settlement, which provided $1.6 billion in overall compensation to injured women. She was also Co-Lead class counsel in the *In re Columbia Gas Explosion Cases* (Mass. Sup. Ct.) where she was a principal negotiator of the recent $143 million class action settlement.

Ms. Graham also currently serves in leadership as Liaison Counsel in California's *Gilead Tenofovir Cases and Coordinated Actions,* JCCP No. 5043, representing thousands of people harmed by certain HIV drugs manufactured by California biotech giant Gilead Sciences.  Ms. Graham is a PSC member in *In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation* (MDL No. 2775), where she was also appointed to the Settlement Committee by the court.  She served as Co-Lead on the Plaintiffs' Executive Committee and as Chair of the Law & Briefing Committee in *In re Zofran (Ondansetron) Products Liability Litigation* (MDL No. 2657). She also previously has served on the Plaintiffs' Steering Committee in *In re Power Morcellator Products Liability Litigation* (MDL No. 2652); as a member of the Plaintiffs' Steering Committee in *In re Stryker LFIT V40 Femoral Head Products Liability Litigation* (MDL No. 2768); and as co-chair of the Law & Briefing Committee for *In re Xarelto Products Liability Litigation* (MDL No. 2592). Additionally, Ms. Graham represents victims of the Paradise, California Wildfires (2018), victims of sexual assault, and families suffering as a result of environmental contamination and disasters.

Ms. Graham additionally represents a former female executive of dating app Tinder in her sexual assault and retaliation claims, including litigation of forced arbitration provisions.

Prior to joining G&E, Ms. Graham served on the Plaintiffs' Executive Committee and represented victims in the *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation* (California JCCP No. 4165). She has served as Lead Counsel on the Plaintiffs' Executive Committee in high profile class actions such as *Borman Automotive v. American Honda Motor Corp.* (MDL No. 1069), which resulted in a $435 million settlement; and litigation against Chrysler based on its Minivan Doorlatch failures and ABS brake defects. She has also

-10-

Exhibit 3
Page 199 of 264        Exhibit 5
                   Page 10 of 65

**G E** Grant & Eisenhofer

represented hundreds of families injured by environmental contaminants, including radon, arsenic and rocket fuel, resulting in confidential settlements in excess of $25 million. Ms. Graham also has vast experience as a consultant to other mass tort firms that seek her advice in structuring their cases.

Ms. Graham is an accomplished speaker, often presenting at educational programs sponsored by the American Association for Justice (AAJ); Mass Torts Made Perfect; Harris Martin; and Masters of Mass Tort. Additionally, Ms. Graham is Co-Chair of the AAJ Zofran Litigation Group, and is a member of AAJ's Publications Committee. She is the author of "Navigating Drug & Device Settlements," published in the May 2023 issue of *Trial* magazine, and co-author of "Medical Monitoring," published in the July 2018 issue of *Trial* as well as "Overcome the Clear Evidence Defense," published in *Trial*'s July 2016 issue.

Ms. Graham was named to Lawdragon's 2024 list of Lawdragon Legends, one of only 33 nationwide lawyers to be recognized for the honor that year. She has also been selected to the Lawdragon 500 Leading Plaintiff Consumers Lawyers Guide for the past five years. In 2023, Ms. Graham was granted attorney accreditation with the Department of Veterans Affairs. In 2021, Ms. Graham was named to Law360's annual "Titans of the Plaintiffs Bar." In 2018, Ms. Graham was selected to receive the Lifetime Achievement award by America's Top 100 Attorneys®.

Prior to her representation of injured individuals, Ms. Graham worked for large product liability defense firms as national defense counsel and was a partner at prominent San Francisco Bay area law firms.

### Olav A. Haazen

Olav Haazen, PhD, is a principal at Grant & Eisenhofer. His areas of practice include cross-border securities fraud and antitrust litigation.

Mr. Haazen has significant experience representing foreign and domestic plaintiffs in a variety of antitrust and fraud actions. Notably, he successfully represented a class of Fortis investors for whom he helped negotiate a record-high $1.5 billion settlement of all investment fraud claims in the Netherlands and Belgium. Other representations, past and present, include:

- nearly 300 institutional investors from around the world seeking recovery from Volkswagen in German court in connection with its well-publicized manipulation of emissions controls;
- a large group of Laiki and Bank of Cyprus bondholders and depositors with ICSID arbitration claims against Cyprus, whose interests were wiped as part of the 2013 Cyprus bank bail-out;
- foreign Madoff investors on fraud and negligence claims against feeder fund defendants and their auditors, custodians, and administrators;
- a French *qui tam* plaintiff in litigation arising out of the sale of Executive Life Insurance Company; and
- a large regional bakery in its successful monopolization suit against a competitor.

**G·E Grant & Eisenhofer**

Mr. Haazen has also represented two classes of professional fashion models in price-fixing and consumer fraud actions, which resulted in a virtually unprecedented 100% recovery of all claimants' losses, as well as substantial injunctive relief, which Justice Ramos of the New York Supreme Court lauded as a model for legislative reform.

Prior to joining G&E, Mr. Haazen was counsel at a prominent national law firm, where he successfully represented major corporate clients and individuals in several high-profile RICO, securities, and government investigation matters and commercial disputes, including a well-known playwright against a civil forfeiture claim arising out of Kenneth Starr's "Ponzi" scheme; a utilities company in a significant contract dispute with Enron; and one of the largest franchisors in professional sports in a $1.2 billion monopolization suit.  He has also represented several government entities and officials, including a Westchester County municipality in a $600 million lawsuit by Donald Trump's Seven Springs LLC, as well as the City and Mayor of Amsterdam, and a foreign country's former Secretary of State.

From 2010-2011, Mr. Haazen served on the American Bar Association's seven-member Standing Committee for Amicus Curiae briefs and the Third-Party Litigation Funding Study Group.  From 1996-2001, he served as a Country Reporter for the Netherlands for the European Restatement of Torts, and recently as a Netherlands Reporter to the 17th International Congress of Comparative Law. Mr. Haazen is a former professor of civil procedure and cross-border litigation at Leiden University in the Netherlands, and also previously taught at Harvard, Stanford, and Oxford.  He has written several books and over 40 articles and case notes. He is admitted as solicitor in England and Wales, and as arbitrator at the Netherlands Arbitration Institute and at the Center for Dispute Resolution (CEDIRES) in Belgium.

**Barbara Hart**

Barbara Hart is a principal at Grant & Eisenhofer and serves on the firm's Executive Committee. Ms. Hart has nearly three decades of experience as a leader in plaintiffs' litigation. She has represented institutional investors, including many public pension funds, in securities and antitrust litigation and served as lead counsel in 4 of the top 100 securities class action settlements. Ms. Hart has also achieved substantive antitrust and False Claims Act/*Qui Tam* settlements on behalf of her clients.

In addition, Ms. Hart currently represents approximately 45 adult survivors of sexual abuse who are bringing claims against the Roman Catholic Archdiocese of New York, Maryknoll, Rockefeller University Hospital and the Boy Scouts of America. Ms. Hart is pioneering these claims in light of a change in New York law known as The Child Victims Act.

Prior to joining G&E, Ms. Hart was President and CEO of a firm focusing on securities and antitrust litigation, and before that, she spent 17 years representing plaintiffs at the New York office of a complex financial litigation firm. Notably, Ms. Hart obtained a $219 million recovery for investors, including New York trade unions, who fell victim to the Madoff Ponzi scheme. Judge McMahon praised the "unprecedented global settlement" and recognized that Ms. Hart "carried the laboring oar." Judge McMahon continued: "Your clients – all of them – have been well served . . . rarely has there been a more transparent settlement negotiation. It could serve as a prototype."

**G·E   Grant & Eisenhofer**

Other representative casework includes a $457 million securities recovery serving the Office of the Treasurer of the State of Connecticut as lead plaintiff; a $285 million settlement in the El Paso securities litigation; a $169 million settlement in securities class litigation against Juniper Networks involving options backdating; a $53 million securities class action settlement on behalf of shareholders of Community Health Systems Inc.; and a $22.4 million settlement on behalf of a whistleblower who alleged false Medicaid billing, among many others.  Ms. Hart is also co-lead counsel in an antitrust class action representing a putative end-user class of indirect purchasers claiming that the county's major chemical manufacturers schemed to inflate the price of caustic soda.

Ms. Hart is a member of Thirty Percent Coalition, a group representing many trillions of dollars of assets under management advocating for diversity on corporate boards. In March 2020, Ms. Hart received the EPIQ award for the Coalition's advocacy for the advancement of women. Ms. Hart also currently serves, at the behest of the Westchester County Executive, on the Police Reform & Reinvention Task Force preparing a report due to the State of New York. She additionally serves as a director on the Westchester Medical Center Foundation Board.

Widely-spoken and published on various topics in securities and antitrust law, Ms. Hart also co-edited the "New York Antitrust and Consumer Protection Law" handbook. She is a Member of the New York State Bar Antitrust Executive Committee as to which she served as the 2014 Section Chair. Ms. Hart has also successfully represented institutional investor clients as *amici curiae* on various matters, including on New York's Martin Act.

Ms. Hart was selected to the Lawdragon 500 Leading Plaintiff Consumers Lawyers Guide for the last three years. She was also selected to the 2023 and 2024 Lawdragon 500 Leading Civil Rights & Plaintiff Employment Lawyers guide and the 2024 Lawdragon 500 Leading Plaintiff Financial Lawyers Guide for Securities & Commercial Litigation. She has been selected for inclusion to the list of New York *Super Lawyers* for nine years. She received her undergraduate degree from Vanderbilt University, her M.A. from University of North Carolina at Chapel Hill, and her J.D. from Fordham University School of Law where she was on the Dean's List and a member of the *Fordham Law Review*.

**Steven J. Kelly**

Steve Kelly is a principal at Grant & Eisenhofer who, over the past two decades, has developed a national reputation for effectively litigating and advocating on behalf of crime victims/survivors – children and adults – including those targeted by serial sexual predators.  He is widely considered by his peers as a pioneer for survivors in their civil claims for justice and also serving (*pro bono*) as their personal counsel/advocate throughout their perpetrator's criminal prosecution. Mr. Kelly's early work in this unique area of practice was instrumental in the formation of the National Crime Victim Law Institute. Prior to joining G&E, Mr. Kelly was a Partner for several years in the Baltimore office of a leading national law firm; there he founded and successfully led the firm's innovative Criminal/Sexual Violence Group.

**G&E** Grant & Eisenhofer

Passionate about his work, Mr. Kelly's lifelong commitment to crime prevention, victims' rights, and justice for survivors is rooted in his own tragic personal family experience; his sister was raped and murdered when he was a teenager and the perpetrator was never charged. Mr. Kelly's wide-ranging, often high-profile and highly-impactful outcomes on behalf of survivors/victims, includes:

- A $14 million landmark Title IX settlement against Dartmouth College on behalf of students who were sexually assaulted and/or harassed by a group of professors; besides monetary compensation, the agreement required Dartmouth implement new measures to protect students.

- A $14.25 million settlement for survivors of Rabbi Bernard 'Barry' Freundel, the disgraced former Kesher Israel Synagogue (Washington, D.C.) leader who was convicted of illicitly photographing women they prepared for their religious conversion in his temple's ritual bath.

- Overturning the exoneration of convicted Maryland murderer Adnan Syed, the focus of the Serial Podcast, on behalf of his victim's family who were given no opportunity to participate in the criminal proceedings.

- Leading the first mass action filing under the federal child pornography statute, Masha's Law, against more than 150 perpetrators who possessed, viewed, and distributed images of two very young girls being sexually abused by adult men

- Reaching a confidential settlement on behalf of a former student and resident at the prestigious St. Paul's (boarding) School, who was raped by a fellow student as part of a sex competition of which the school was aware

- Litigating on behalf of a group of families against the Glen Mar Early Learning Center, whose staff member sexually molested students under the age of five

- Achieving a confidential settlement on behalf of a student at a prestigious school who was sexually abused by the school's dean of students

- Negotiating to obtain a substantial settlement for a victim who was sexually abused while incarcerated in a juvenile facility

- Negotiating a confidential settlement on behalf of a middle school student who was sexually abused by her teacher at a DC Charter School

- Successfully arguing in the Connecticut Supreme Court on behalf of a missing - and presumed murdered - victim's family who was sued by the criminal suspect for posting missing person's posters. The court overturned the trial court's verdict against the family on First Amendment Grounds in a case with great significance groups devoted to finding missing persons

- Successfully litigating on behalf of survivors in criminal cases across the country including cases in the U.S. Court of Appeals for the Fourth Circuit, the U.S. Court of Appeals for the District of Columbia Circuit, and the Maryland Court of Appeals

Mr. Kelly has been lauded for his outstanding leadership, from courthouses to state houses, by peers, government officials, agencies and survivors advocacy organizations. The National Crime Victim Law Institute, American Bar Association, Network for Victim Recovery Center (NVRDC), Baltimore Child Abuse Center, Maryland Crime Victim's Resource Center, and the Maryland Office of the Governor, are among those recognizing his myriad accomplishments. He

**Grant & Eisenhofer**

has also been selected among Maryland Super Lawyers every year since 2003, and is a 2022 selection in the Lawdragon 500 Leading Plaintiff Employment & Civil Rights Lawyers.

Mr. Kelly has authored/co-authored articles that appear in: American Bar Association publications on representing child-victims and its guide on prosecutorial discretion; U.S. Justice Department Guidelines for representing victims of crime; U.S. Military training protocols for special victims' counsel; National Crime Victim Bar Association; National Institute of Justice and numerous state and local organizations. Mr. Kelly has presented at state and national conferences on crime victim rights in the criminal process, civil claims arising out of criminal acts, representing child-victims, criminal restitution, trauma-informed advocacy, and insurance coverage issues common in criminal/sexual violence cases.

He serves as the Chair of the Maryland State Board of Victim Services (appointed by Maryland Governor), is a member of the Conference of the U.S. Court of Appeals for the Fourth Circuit, the Advisory Board for the National Crime Victim Law Institute, the American Bar Association Victim Committee, the National Alliance for Crime Victim Rights Attorneys ("NAVRA"), National Crime Victim Bar Association, Maryland Association of Justice, Federal Bar Association, Maryland Bar Association and the Maryland Association for Justice.

Mr. Kelly earned his J.D. from Georgetown University Law Center in 2003, where he served on the *Journal of Law and Public Policy* and was recognized for his advocacy on behalf of victims by the Domestic Violence Clinic; and his B.A. from American University in 1997.

## Christine M. Mackintosh

Christine Mackintosh is a principal at Grant & Eisenhofer, practicing in the areas of corporate and securities litigation. She has represented institutional investors, both public and private, in corporate cases in the Delaware Court of Chancery and in securities fraud class actions in federal courts throughout the country.

Ms. Mackintosh's practice primarily focuses on litigation in the Delaware Court of Chancery, where she has played significant roles in several landmark actions challenging mergers and acquisitions (including *In re Del Monte Foods Company Shareholder Litigation*, which resulted in an $89.4 million recovery for the class, and *In re El Paso Corporation Shareholder Litigation*, which resulted in a $110 million recovery for the class) and in several successful shareholder derivative actions (including *In re American International Group, Inc. Consolidated Derivative Litigation*, which resulted in a $90 million recovery, one of the largest recoveries in a shareholder derivative action in the history of the Delaware Court of Chancery). Ms. Mackintosh's litigation successes include securing a $300 million settlement of a derivative action brought on behalf of Renren, Inc. relating to a spin-off transaction orchestrated by Renren's controlling stockholder, Joseph Chen, which is the largest-ever direct cash payment in a shareholder derivative action; a $175 million settlement of a derivative action brought on behalf of McKesson Corporation relating to the company's failure to adequately oversee its sales of opioid drugs in an action in the United States District Court for the Northern District of California; a $167.5 million settlement of a derivative and class action in *In re CBS Corporation Stockholder Class Action and Derivative Litigation* challenging CBS Corporation's acquisition of Viacom, Inc.; a $60 million partial settlement of a derivative and class action challenging the acquisition of SolarCity Corporation by Tesla Motors, Inc.; and a $48.5 million settlement of a

G&E Grant & Eisenhofer

class action in *In re MSG Networks, Inc. Stockholders Class Action Litigation* challenging Madison Square Garden Entertainment Corporation's acquisition of MSG Networks, Inc.

Ms. Mackintosh has extensive experience trying cases before the Court of Chancery.  In 2021, Ms. Mackintosh secured an injunction of an unduly restrictive poison pill in the highly publicized *The Williams Companies Stockholder Litigation* and was a leading member of trial teams in *In re BGC Partners, Inc. Derivative Litigation*, *Dieckman v. Regency Group LP*, and *In re Tesla Motors, Inc, Stockholder Litigation*.   Ms. Mackintosh has also tried a number of appraisal cases, including *In re Appraisal of Dell, Inc.*, *In re Appraisal of Solera Holdings, Inc.*, and *Verition Partners Master Fund Ltd. v. Aruba Networks, Inc.* Following a closely watched Delaware Supreme Court argument in the *Aruba* appraisal, Ms. Mackintosh obtained a reversal of the Chancery Court's decision that Aruba's fair value equaled its unaffected stock price.

Outside of the United States, Ms. Mackintosh recently represented a number of institutional investors pursuing their appraisal rights against Nord Anglia Education in the Grand Court of the Cayman Islands; following a three-week trial, the Grand Court of the Cayman Islands, Financial Services Division ruled in favor of G&E's client, finding that Nord Anglia's fair value was nearly 16% higher than the deal price.  Ms. Mackintosh is currently representing institutional investors pursuing appraisal rights against 58.com in the Grand Court of the Cayman Islands.

In addition to her Chancery Court practice, Ms. Mackintosh has played a significant role in a number of securities fraud class actions that have achieved substantial recoveries for classes of investors, including *In re JP Morgan Chase & Co. Securities Litigation* ($150 million recovery), *In re Refco Securities Litigation* ($400 million recovery), and *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* ($215 million recovery), and on behalf of individual and institutional investors who have opted out of class actions to pursue individual suits, including representation of investors who opted out of *In re Bank of America Corporation Securities, Derivative & ERISA Litigation*. Outside of the United States, Ms. Mackintosh was a member of the team that secured the historic $450 million pan-European settlement in the *Royal Dutch Shell* case in the Netherlands and the $1 billion settlement in the *Royal Bank of Scotland* case in the United Kingdom. She is currently representing institutional investors in connection with litigation against Volkswagen AG in Germany.

In 2022, Ms. Mackintosh was named to the list of Elite Women of the Plaintiffs' Bar by *The National Law Journal*—one of only 15 women who received this honor. She was also highly ranked by Chambers & Partners in the Delaware Chancery: Mainly Plaintiff category.  Ms. Mackintosh is a member of the Advisory Board of the John L. Weinberg Center for Corporate Governance.

A *magna cum laude* graduate of St. Joseph's University, Ms. Mackintosh earned her law degree at the University of Pennsylvania Law School.  She is the co-author of two articles published by the Practising Law Institute's *Corporate Law & Practice Course Handbook Series*. "Ethical Issues and Their Impact on Securities Litigation," published in September-October, 2003, was co-authored with Marc J. Sonnenfeld, Viveca D. Parker and Marisel Acosta. "Lessons From Sarbanes-Oxley: The Importance of Independence In Internal Corporate Investigations," published in July, 2003, was co-authored with Alfred J. Lechner, Jr.

**Kyle J. McGee**

**G&E**
Grant & Eisenhofer

Kyle McGee is a principal at Grant & Eisenhofer. Mr. McGee is the head of G&E's Environmental Litigation Group, focusing on sovereign and public entity representation. Mr. McGee also regularly represents state and municipal clients in consumer protection matters, as well as relators or whistleblowers in *qui tam* litigation. In addition to environmental litigation, Mr. McGee partners with state Attorneys General and municipalities pursuing consumer protection actions against manufacturers of dangerous products, including pharmaceuticals.

Mr. McGee currently serves as special counsel to several state Attorneys General and municipalities in actions against Monsanto Co. arising out of that company's production, marketing, and sale of toxic PCBs, which now contaminate natural resources throughout the nation, and against 3M Co., DuPont, Chemours, and other manufacturers of toxic PFAS chemicals and products containing PFAS, which now contaminate groundwater, drinking water, and other public resources. Mr. McGee also represents state agencies in hazardous site litigation arising out of historic disposal practices and emissions of contaminants such as lead and arsenic. Mr. McGee was named to the Environmental Trial Lawyers Association Top 10 for Delaware, and serves on the Executive Committee for the ETLA.

Mr. McGee also represents numerous relators in confidential whistleblower actions under the federal and various state False Claims Acts, pursuing misconduct in diverse fields including medical and mental healthcare, residential mortgage lending, defense contracting, retail, and finance, as well as the whistleblower programs managed by the Securities & Exchange Commission and Commodity Futures Trading Commission.

Representative actions in which Mr. McGee played a principal role include:

- *State of New Mexico v. Monsanto Co.* (1st Jud. Dist.), an environmental protection action on behalf of New Mexico against Monsanto for damages resulting from PCB contamination of state waters and other natural resources, resulting in a $23.6 million recovery.
- *District of Columbia v. Monsanto Co., et al.* (D.C. Super.), an environmental protection action on behalf of the D.C. government against Monsanto for damages resulting from PCB contamination of major waterways and other natural resources, resulting in a $52 million recovery.
- *State of Mississippi ex rel. Jim Hood, Attorney General v. GlaxoSmithKline LLC* (Miss. Ch.), a consumer protection action on behalf of Mississippi against pharmaceutical company GSK for allegedly unfair and deceptive marketing practices, resulting in a $25 million recovery.
- *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (D.N.J.), a major securities fraud action against pharmaceutical industry titan Merck & Co., Inc. that settled for $215 million, jointly prosecuted with a related action, *In re Schering-Plough Corp. ENHANCE Securities Litigation* (D.N.J.), resulting in a $688 million total recovery—together, the largest securities class action recovery against a pharmaceutical company at the time, and among the top securities settlements with any issuer.
- *In re JP Morgan Chase & Co. Securities Litigation* (S.D.N.Y.), a securities fraud action against investment bank JP Morgan and its leadership arising out of the "London Whale" scandal, resulting in a $150 million settlement.

Grant & Eisenhofer

- *Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC, et al.* (N.D. Ga.), a class action on behalf of small merchants against card processing companies Mercury Payment Systems and Global Payments Direct, which resulted in a settlement worth over $70 million.

- *In re MyFord Touch Consumer Litigation* (N.D. Cal.), a consumer class action on behalf of owners of Ford vehicles equipped with allegedly defective infotainment units, which resulted in monetary and other relief valued at over $33 million.

- *T.S. Kao, Inc. v. North American Bancard, LLC, et al.* (N.D. Ga.), a class action on behalf of small merchants against card processing companies North American Bancard and Global Payments Direct, which resulted in a settlement worth $15 million.

- *Des Roches, et al. v. Blue Shield of California, Inc., et al.* (N.D. Cal.), an ERISA class action brought by three parents of minors denied coverage for mental health and/or substance use disorder treatment by Blue Shield of California and its mental health services administrator, Human Affairs International of California (a subsidiary of Magellan Health, Inc.), based on allegedly faulty criteria, which resulted in the defendants' inability to resume use of the challenged criteria and other significant injunctive relief, as well as a $7 million fund for payment of allegedly improperly denied claims.

- *In re New Oriental Education & Technology Group Securities Litigation* (S.D.N.Y.), a securities fraud action against China-based New Oriental Education & Technology Group relating to alleged accounting manipulations, which settled for $4.5 million.

- *In re Miller Energy Resources, Inc. Securities Litigation* (E.D. Tenn.), a securities fraud action against oil and gas firm Miller Energy regarding alleged accounting manipulations, which settled for approximately $3 million.

- *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* (N.D. Cal.), a consumer class action against Volkswagen, Audi, Porsche, and Robert Bosch LLC, arising out of the "Dieselgate" scandal, which resulted in an unprecedented vehicle buyback program and other relief valued at approximately $15 billion.

- *British Coal Staff Superannuation Scheme, et al. v. American International Group, Inc.* (S.D.N.Y.), a securities fraud action brought by a number of public pension and retirement funds and other institutional investors against AIG in relation to its alleged concealment of toxic assets during the 2008 financial crisis, which resulted in a substantial investor recovery.

- *Stichting Pensioenfonds ABP, et al. v. Merck & Co., Inc., et al.* (D.N.J.), a securities fraud action brought by a number of public pension and retirement funds and other institutional investors against Merck & Co., Inc., and its former leadership, in relation to the company's allegedly false statements concerning Vioxx, which resulted in a substantial investor recovery.

Mr. McGee earned a postgraduate research degree, with honors, in the history and philosophy of law from the University of Edinburgh. In 2009, he received his J.D., *cum laude*, from Villanova University, where he was a Dean's Merit scholar. In 2005, he received a B.A. in philosophy as well as media technologies from the University of Scranton.



**Caitlin M. Moyna**

Caitlin Moyna is a principal at Grant & Eisenhofer, with over 15 years of experience in US and foreign securities fraud class action and opt-out litigation, shareholder derivative actions, merger litigation, and international arbitration. Ms. Moyna is also Co-Director of the Grant & Eisenhofer ESG Institute.

Currently, Ms. Moyna represents lead plaintiffs in securities class actions against General Electric, ProPetro, Block.one, Portland General Electric, and Exxon. She previously helped achieve significant recoveries against Santander Consumer USA, Camping World, Career Education and Miller Energy Resources, and prior to her time at G&E, against The Blackstone Group, among many others. She has also represented investors who opt out of securities class actions, including those against Valeant, Merck and Citigroup.

Ms. Moyna also has significant experience in litigating contractual disputes. She represented investors who challenged an early redemption of bonds issued by AgriBank and CoBank. She also represents textbook authors in an action against McGraw Hill challenging a new royalty payment plan which significantly reduces their royalty payments. Her experience also includes representing investors challenging mergers and other corporate actions in the Delaware Court of Chancery.

Additionally, Ms. Moyna has international arbitration experience, including achieving a landmark award on jurisdiction that allowed the claims of nearly 1,000 Greek investors to proceed in a single proceeding against Cyprus in an ICSID proceeding, and representing investors proceeding against Petrobras and Brazil before the Market Chamber.

With Managing Director Jay W. Eisenhofer, Ms. Moyna co-authored two articles concerning alternative entities: "What is the State of Delaware Law as It Relates to the Scope of Fiduciary Duties Owed to Investors in So-Called Alternative Entities?", *Bloomberg BNA*, Corporate Accountability Report (Dec. 5, 12, and 19, 2014); and "What Is the Current State of Delaware Law on the Scope of Fiduciary Duties Owed by Hedge Fund Managers to Their Funds and Investors?", *The Hedge Fund Law Report*, Vol. 6, Nos. 26 and 27 (Sept. 19 and 26, 2013).

Prior to joining G&E, Ms. Moyna was associated with Cravath, Swaine & Moore and Ropes and Gray, where she represented corporations in securities fraud class actions and government investigations, as well as a boutique litigation firm specializing in investor representation.

Ms. Moyna is a *cum laude graduate* of Northwestern University School of Law, where she was elected to the Order of the Coif and served on the *Journal of Criminal Law and Criminology*. Ms. Moyna received her A.B. from Dartmouth College.

**Rebecca A. Musarra**

Rebecca Musarra **i**s a principal at Grant & Eisenhofer. Ms. Musarra's practice focuses on corporate governance, securities, and consumer protection litigation, and other complex class actions.

Exhibit 3
Page 208 of 264        Exhibit 5
-19-                                     Page 19 of 65

**Grant & Eisenhofer**

Ms. Musarra has helped achieve significant recoveries for investors and consumers. In Delaware's Court of Chancery, Ms. Musarra represented institutional plaintiffs in achieving a $167.5 million settlement in *In re CBS Stockholders Litigation*, one of the largest derivative litigation recoveries in Chancery Court history.  She has helped advance and settle a number of other class action and derivative cases in Chancery Court, including *Morris v. Spectra Energy Partners (DE) GP, LP*, and *Sommers v. Lawal et al.*  Ms. Musarra's practice has also included appraisal actions in Chancery Court, including as a member of the trial team in *In re Appraisal of Dell Inc*.  In federal court, she has litigated stockholder securities cases and class action cases on behalf of investors and consumers.  Ms. Musarra assisted the trial team in *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreements Class Action Litigation*, obtaining a jury verdict in excess of $500 million.  Ms. Musarra also pursued securities fraud claims in *In re Synchronoss Technologies, Inc. Securities Litigation*, obtaining a meaningful settlement on behalf of investors.

Ms. Musarra has litigated ERISA claims on behalf of insurance beneficiaries against health insurers with respect to coverage for mental health and substance use disorders, obtaining an important settlement for individual members.  She also played a principal role in pursuing fiduciary claims against entities and individuals associated with Cantor Fitzgerald, L.P. on behalf of investors.

As part of her *pro bono* activities, Ms. Musarra represents juvenile immigrants in court and before federal agencies, and volunteers with the Medical Reserve Corps of Philadelphia and HIAS-PA.

Prior to joining G&E, Ms. Musarra worked as an appellate law clerk to the Chief Justice of the Supreme Court of the Virgin Islands in St. Thomas, Virgin Islands.

Ms. Musarra received her J.D. degree from American University Washington College of Law in 2009, where she served as a member of the *American University Law Review*, was elected to Order of the Coif, and graduated *summa cum laude*. She obtained a B.A. in international relations from the College of William and Mary in 2003. Between college and law school, Ms. Musarra served as a Peace Corps Volunteer in Chad, Central Africa.

**Gordon Z. Novod**

Gordon Novod heads Grant & Eisenhofer's bankruptcy and distressed litigation practice. He has more than 20 years of experience representing litigation trustees, *ad hoc* and official committees, distressed investors, lenders, indenture trustees, trade creditors, and other parties in some of the most complex landmark restructurings and in litigation matters.

Mr. Novod's practice focuses on representing litigation trustees as well as institutional investors in litigation matters involving, among other things, bankruptcy avoidance claims, as well as non-bankruptcy fraudulent transfer, fiduciary duty, unlawful dividend, and corporate governance claims. Mr. Novod is the author of Driving the Recovery Bus; Augmenting Creditor Recoveries Through Claims Brought by a Litigation Trustee, published by the American Bankruptcy Institute in April 2024.

Exhibit 3
Page 209 of 264     Exhibit 5
Page 20 of 65

**G|E Grant & Eisenhofer**

Mr. Novod has extensive experience litigating issues related to corporate debt securities in default and distressed situations, including exchange transactions, redemptions, and the Trust Indenture Act. In the bankruptcy context, he has litigated all aspects of Chapter 11 plans of reorganization, valuation, and plan confirmation proceedings, contested debtor-in-possession financing and cash collateral use, the pursuit of fraudulent transfer actions, and other matters involving bankruptcy-related litigation.

Mr. Novod prides himself on providing high quality advocacy to clients, keeping their business objectives in mind. He is able to grasp complex legal and business issues in order to craft and implement innovative yet practical solutions to maximize value for clients.

Mr. Novod has been acknowledged for his work as on numerous occasions, including:

- Named to the Lawdragon 500 Leading Global Bankruptcy & Restructuring Lawyers for 2024;
- Named to the Lawdragon 500 Leading Bankruptcy & Restructuring Lawyers for 2023;
- Named to the Lawdragon 500 Leading Plaintiff Financial Lawyers for the Financial Litigation, esp. Distressed category for 2023-2024;
- Selected to New York Metro *Super Lawyers'* list for Bankruptcy from 2013 to 2024;
- Recognized as a winner of the 40 Under 40 East M&A Advisor Recognition Awards in 2012;
- Selected to New York *Super Lawyers* list of "Rising Stars" for Bankruptcy in 2012;
- Named to Law360's "Rising Stars" in restructuring, recognizing him as "one of the five bankruptcy attorneys under 40 to watch" in 2011;
- Named a finalist in the M&A Advisor's "40 under 40" in 2011. In addition, he has served on the New York City Bar Association's Committee on Bankruptcy and Corporate Reorganization.

In addition, currently he is a member of the Federal Bar Counsel and its Bankruptcy Litigation Committee, the American Bankruptcy Institute, and previously he has served on the New York City Bar Association's Committee on Bankruptcy and Corporate Reorganization.

Mr. Novod's "first chair" trial and appellate work have resulted in opinions of high precedential value, including (among numerous others):

- *Halperin v. Richards, et al.*, 7 F.4th 534, Case No. 20-2793, 2021 WL 3184305 (7th Cir. July 28, 2021). Mr. Novod represented *Halperin and Gene Davis*, as the Co-Trustees of the Appvion Liquidating Trust, securing reversal of the District Court's dismissal of the liquidating trustee's claims against the Appvion debtors' former directors and officers. Significantly, the Seventh Circuit held that ERISA does not preempt claims asserted by a liquidating trustee against a debtor's former directors and officers for damages for harm to the debtor's corporate enterprise and its creditors.

- *AMCO Insurance Company, et al. v. CoBank, ACB*, No. 16-cv-4422-LTS-SLC, 2021 WL 4340540 (S.D.N.Y. Sept. 22, 2021). Mr. Novod secured a win on summary judgement as to liability in a breach of contract action brought by G&E's thirty-seven (37) institutional investor clients regarding their $304 million principal amount (constituting 75%) of 7.875% Subordinated Notes issued by CoBank following CoBank's

-21-

Exhibit 3
Page 210 of 264    Exhibit 5
Page 21 of 65

redemption of those notes prior to maturity. This victory is significant insofar as it permitted institutional investors to recover damages from a bond issuer that breached the contractual terms upon which the bonds were issued. Mr. Novod subsequently achieved a confidential resolution of the dispute on behalf of G&E's clients.

- ***Diverse Partners, LP and Troy Bank & Trust Company v. AgriBank, FCB***, No. 16-CV-9526, 2017 WL 4119649 (S.D.N.Y. Sept. 14, 2017). Mr. Novod secured the denial of AgriBank's motion to dismiss a breach of contract action brought by the proposed class plaintiff arising from AgriBank's redemption of $500 million principal amount of 9.125% Subordinated Notes issued by AgriBank following AgriBank's redemption of those notes prior to maturity. Mr. Novod ultimately achieved a confidential resolution of the dispute on behalf of the Plaintiffs as well as an *ad hoc* group collectively holding $329 million (constituting 66%) of the 9.125% Notes. This decision is significant insofar as the Court refused to dismiss the action because Plaintiffs were the beneficial owner of 9.125% Notes and not the holder of the Global Note.

Mr. Novod's bankruptcy and distressed litigation highlights include:

- ***In re Caesars Entertainment Operating Company, et al.; Danner v. Caesars Entertainment Corporation, et al.***, Mr. Novod represented the lead plaintiff in a proposed class action against Caesars Entertainment Corp., et al., relating to a series of transactions that attempted to eliminate a parent guarantee. Mr. Novod was deeply involved in the bankruptcy proceedings and related litigation in furtherance of the interests of its client and the class of noteholders. Mr. Novod ultimately achieved a settlement that provided improved bankruptcy plan treatment for the lead plaintiff and absent class members totaling between $14.7 million and $33 million.

- Mr. Novod also represented the litigation trustee of ***Refco Group Ltd.*** in litigation against Cantor Fitzgerald, LP, et al. That litigation involved allegations that Cantor Fitzgerald deprived Refco of assets under a partnership interest. G&E ultimately achieved a confidential settlement of the action.

- In ***In re Exco Resources, Inc., et al.***, Mr. Novod represented Highbridge Capital Management; MSF International Ltd. and 1992 Tactical Credit Master Fund, L.P. as 1.75 Lien Lenders and 2nd Lien Lenders in the Exco Resources bankruptcy cases. Mr. Novod represented Highbridge in the bankruptcy court in connection with plan of reorganization- related matters and at plan-related mediation. Highbridge ultimately supported Exco's plan of reorganization, resolving the dispute for Highbridge.

Mr. Novod's prominent engagements include:

- ***Appvion Liquidating Trust*** (in litigation against the debtors' former directors, officers & others);
- ***Loyalty Ventures Inc. Liquidating Trust*** (in litigation against the debtors' former parent company, director, & others);
- ***Bed Bath & Beyond, Inc.*** and the ***Plan Administrator*** (in litigation against the debtors' former directors & officers);
- ***GCX Limited Liquidating Trust*** (in litigation against the debtors' former directors & officers);
- ***High Ridge Brands Liquidating Trust*** (in litigation against the debtors' former directors,

Grant & Eisenhofer

sponsor, & sponsor-affiliated lender);

- *GBG USA Litigation Trust* (in litigation against the debtors' former directors, officers, & others);
- *Boxed Liquidation Trust* (in investigation of claims against certain of its former Ds&Os and third parties);
- *Casa Systems, Inc. Preserved Actions Administrator* (in investigation of claims against certain of its former Ds&Os and third parties);
- Debtors in *AN Global, LLC* (in investigation of claims against certain of its former Ds&Os and third parties);
- *Refco Litigation Trust*;
- *Synergy* Pharmaceuticals Litigation Trust (in investigation of claims against certain of its former Ds&Os and third parties);
- *Erin Energy Corp.* (state court litigant & special counsel to a Chapter 7 trustee);
- **Diverse Partners LP, et al. v. AgriBank, FCB** (plaintiffs & *ad hoc* noteholder committee);
- **AMCO Ins. Co., et al v. CoBank, ACB** (plaintiffs & *ad hoc* noteholder committee);
- *State of Vermont* (in fraudulent transfer litigation against The Chemours Company, E. I. du Pont de Nemours & Company, DuPont de Nemours, Inc. & Dow, Inc.);
- *State of Maine* (in fraudulent transfer litigation against The Chemours Company, E. I. du Pont de Nemours & Company, DuPont de Nemours, Inc. & Dow, Inc.);
- *State of Delaware* (in fraudulent transfer litigation against The Chemours Company, E. I. du Pont de Nemours & Company, DuPont de Nemours, Inc. & Dow, Inc.);
- *Kidde Inc.* (various states & municipal water providers);
- *BlockFi Inc.* (unsecured creditor);
- *Roman Catholic Archbishop of Baltimore* (sexual abuse victims);
- *Madison Square Boys & Girls Club, Inc.* (sexual abuse victim & member of the creditors' committee);
- *Caesars Entertainment Operating Company, Inc.* (unsecured noteholder & proposed class representative);
- *Exco Resources, Inc.* (secured lender);
- *ShengdaTech, Inc.* (*ad hoc* noteholder committee);
- *Chesapeake Energy Corp.* (unsecured noteholders & proposed class representatives);
- *Cliffs Natural Resources* (unsecured noteholders & proposed class representatives);
- *Vanguard Natural Resources* (unsecured noteholders & proposed class representatives);
- *Alpha Natural Resources, Inc.* (state court litigant);
- *CJ Holding, Co.* (state court litigant);
- *SunEdison, Inc.* (state court litigant);
- *Tribune Company*** (indenture trustee & member of the creditors' committee);
- *Central European Distribution Corporation*** (*ad hoc* committee of convertible noteholders);
- *Lyondell Chemical Company*** (creditors' committee);
- *Herbst Gaming, Inc.*** (creditors' committee);
- *Lehman Brothers*** (*ad hoc* consortium of claimholders of Lehman Brothers Special Financing, Inc.);

**G&E**
Grant & Eisenhofer

- *Green Valley Ranch Gaming, LLC*** (*ad hoc* committee of second lien lenders);
- *Palm Harbor Homes, Inc.*** (indenture trustee & member of the creditors' committee);
- *Equisearch Services, Inc.*** (trade creditor);
- *General Motors Corporation*** (n/k/a Motors Liquidation Company) (creditors' committee);
- *Charter Communications, Inc.*** (*ad hoc* first lien lenders);
- *Bridgeport Holdings, Inc.*** (f/k/a Micro Warehouse, Inc.) (debtors);
- *Midway Games, Inc.*** (secured lender);
- *Bethlehem Steel Corp.*** (creditors' committee);
- *WCI Steel, Inc.*** (*ad hoc* noteholders' committee & indenture trustee);
- *Delphi Corp.*** (trade creditor & member of the creditors' committee);
- *Grace Industries, Inc.*** (creditors' committee);
- *Wave Wireless Corp.*** (secured lender);
- *Diomed, Inc.*** (licensor & chairman of the creditors' committee);
- *TransCare Corp.*** (creditors' committee);
- *Buffets Holdings, Inc.*** (ad hoc noteholders' committee);
- *ASARCO LLC*** (majority noteholders); and,
- *WestPoint Stevens, Inc.*** (second lien agent).

** denotes Mr. Novod's representations prior to joining G&E

Mr. Novod has been a featured panelist and/or moderator on topics involving distressed situations, indenture litigation, indenture analysis, fraudulent conveyance litigation, and sexual abuse claims in bankruptcy, including:

- Panelist, "Making the Most of a Litigation Trust's Retained Causes of Action," American Bankruptcy Institute's Annual Winter Leadership Conference (December 9, 2022)
- Speaker, Bankruptcy and the Archdiocese of Baltimore Litigation, Maryland Association for Justice, Webinar (November 14, 2023)
- Speaker, Bankruptcy and the Archdiocese of Baltimore Litigation, Maryland Association for Justice, Webinar (April 4, 2024)
- Discussion Leader, "U.S. Insolvency Trends and the Offshore Impact" and "International Litigation Update," Institutional Investor Educational Foundation – Grand Cayman Roundtable (November 17, 2022)
- Presenter, "Decoding the Texas Two-Step from a Plaintiff's Perspective," Grant & Eisenhofer Webinar (May 3, 2022)
- Presenter, "Business Interruption Insurance Claims in Bankruptcy; An Unappreciated Asset Class for Debtors and Creditors," Grant & Eisenhofer Webinar (March 9, 2021)
- Presenter, "Current Issues in Fraudulent Transfer Law," Grant & Eisenhofer Webinar (October 14, 2020)
- Discussion Leader, "In Pari Delicto under U.S. Law," Institutional Investor Educational Foundation – Grand Cayman Roundtable (February 12, 2020)
- Discussion Leader, "Minority Rights: Strategies for Protecting your rights with respect to Loans, Bonds and Common Shares," Institutional Investor Educational Foundation –

Bankruptcy Litigation Roundtable (October 25, 2019)

- Discussion Leader, "In Pari Delicto," Institutional Investor Educational Foundation – Bankruptcy Litigation Roundtable (October 25, 2019)

- Discussion Leader, "Director Duties in Restructurings," Institutional Investor Educational Foundation – Bankruptcy Litigation Roundtable (November 30, 2018)

- Moderator, "Current Issues in Bankruptcy & Antitrust," Institutional Investor Educational Foundation – 17us Global Shareholder Activism Conference (November 30 - December 1, 2017)

- Speaker, "Out-of-Court Restructuring and the Trust Indenture Act," Institutional Investor Legal Forum Fall 2016 Roundtable (October 28, 2016)

- Discussion Leader, "E&P Restructurings - A Landscape Unlike Traditional Restructurings," Institutional Investor Educational Foundation - Bankruptcy Litigation Roundtable (October 6, 2016)

- Discussion Leader, "Fraudulent Conveyance Actions, the Trust Indenture Act and No Action Clauses - New Rights for Bondholders?" Institutional Investor Educational Foundation - Bankruptcy Litigation Roundtable (October 21, 2015)

Mr. Novod's select publications include:

- "ERISA Pre-Emption Does Not Offer a "Get Out of Jail Free Card" for an ESOP's D&Os," *American Bankruptcy Institute Journal*, November 2021
- "The Next Chapter; When a defendant files for bankruptcy, it triggers a unique set of procedures, standards, and deadlines. Here's an overview of how the bankruptcy system works and where your client's claim fits in," *Trial Magazine*, May 2021

Prior to joining G&E, Mr. Novod was a partner in the bankruptcy & corporate restructuring group at Brown Rudnick in New York. He also formerly practiced in the corporate restructuring and bankruptcy group at Kramer Levin Naftalis & Frankel LLP.

Mr. Novod received his J.D. from the Benjamin N. Cardozo School of Law at Yeshiva University, and his B.A. from Emory University.

**Kelly L. Tucker**

Kelly Tucker is a principal at Grant & Eisenhofer, where she focuses her practice on environmental, consumer, and securities litigation and corporate governance.

Ms. Tucker has played a significant role in G&E's corporate governance and appraisal practices, trying numerous cases in the Court of Chancery, including *In re Ebix, Inc. Stockholder Litigation*, challenging an alleged excessive executive compensation plan for the company's chief executive officer. Following trial, the parties settled including a renegotiation of the CEO's bonus plan, which the Court valued at over $53 million. Ms. Tucker also was an integral part of the trial team in *In re The Williams Companies, Inc. Stockholder Litigation*, which resulted in a landmark judgment following an expedited trial in favor of plaintiffs enjoining the company's poison pill. In *In re Tesla Motors, Inc. Stockholder Litigation*, Ms. Tucker represented institutional plaintiffs in achieving a $60 million partial settlement with several defendants in an

**Grant & Eisenhofer**

action on behalf of Tesla stockholders regarding the Company's acquisition of SolarCity Corporation.

Prior to joining G&E, Ms. Tucker worked at a Philadelphia area law firm practicing antitrust, consumer protection, and products liability litigation. She received her J.D. from Fordham University School of Law in 2010, where she was the Executive Notes and Articles Editor of the *Fordham Journal of Corporate and Financial Law* and a member of the Executive Board of Fordham Law Moot Court. She received her B.A. in international politics from American University in 2003.

**Viola Vetter**

Viola Vetter is a principal at Grant & Eisenhofer where she focuses on sovereign and public entity representation, primarily in matters seeking to redress environmental contamination.

Ms. Vetter currently represents several state Attorneys General and municipalities in environmental litigation. In that role, she is prosecuting claims against Monsanto Co. arising out of that company's production, marketing, and sale of toxic PCBs, which now contaminate natural resources throughout the nation, and against 3M Co., DuPont, Chemours, and other manufacturers of toxic PFAS chemicals and PFAS-laced products, which now contaminate groundwater, drinking water, and other public resources. Ms. Vetter is also involved in a number of site-specific investigations and litigations concerning the historic disposal and emissions of environmental contaminants.

Ms. Vetter also represents investors in corporate governance and securities litigation, including in cross-border disputes.

Prior to joining Grant & Eisenhofer, Ms. Vetter was an associate at an international law firm, resident in Philadelphia, representing corporate clients in complex commercial, consumer and qui tam matters in state and federal courts.

Ms. Vetter earned her J.D. from Temple University Beasley School of Law in 2007, where she was a member of the *Temple Political & Civil Rights Law Review*. She received her B.S. in International Business and Political Philosophy, *magna cum laude*, from Elizabethtown College in 2004.

Ms. Vetter was selected to the 2015-2016 Pennsylvania *Super Lawyers* Rising Stars list for Business Litigation. She is fluent in English and German.

**Lisa B. Weinstein**

Lisa Weinstein is a principal at Grant & Eisenhofer and leads the firm's birth injury litigation division. Her practice primarily focuses on representing women and children in birth injury and birth trauma litigation.

Prior to joining G&E, Ms. Weinstein founded The Weinstein Law Group, where she represented children who were victims of medical malpractice and birth injuries. In her practice as a plaintiffs' trial lawyer, Ms. Weinstein has successfully litigated personal injury, medical

Grant & Eisenhofer

malpractice and birth injury matters resulting in over $375 million in settlements and verdicts. Representative of Ms. Weinstein's work is a $12.5 million settlement in which her client's child suffered brain damage due to lack of oxygen during the labor and delivery process, and dozens of other seven-figure settlements.

Ms. Weinstein has been selected to The National Trial Lawyers Top 100 for four years. For the past five years, Ms. Weinstein was selected for inclusion to the Illinois *Super Lawyers* list. For eight years prior, she was selected to Illinois *Super Lawyers'* list of Rising Stars. Ms. Weinstein was also named to the National Law Journal's list of Plaintiffs' Lawyers Trailblazers for 2020. She was honored by The National Trial Lawyers in the "Top 40 Under 40" for seven years. In 2018, Ms. Weinstein was named to the list of Law360's Personal Injury & Medical Malpractice Rising Stars and was selected to receive the Lifetime Achievement award by America's Top 100 Attorneys®. In May 2017, Ms. Weinstein authored "Understanding Newborn Strokes," published in *Trial* magazine.

In 2018, Ms. Weinstein spoke at the American Association for Justice Annual Convention covering "The Initial Intake and Investigation of Birth Injury Cases - An Approach to Managing Risk," and presented at the American Conference Institute Obstetric Malpractice Claims forum speaking on "Induced Labor Malpractice: Exploring Pitocin Complications and Injuries." Ms. Weinstein spoke at the 2016 North American Brain Injury Society's annual conference, covering "Representing Children with Acquired TBI," and at the 2015 New Jersey Association for Justice seminar covering "When Medical Malpractice and Mass Tort Overlap."

Ms. Weinstein is a member of the Women's Bar Association of Illinois and Board Member of the Illinois Trial Lawyers Association. She is a member of the Million Dollar Advocates Forum as well as the Multi-Million Dollar Advocates Forum, recognized for her work in obtaining several notable settlements and verdicts. Additionally, she served as co-chair of the American Association for Justice Birth Trauma Litigation Group and an Arbitrator for the Circuit Court of Cook County.

Ms. Weinstein earned an undergraduate degree from the University of Michigan and graduated *cum laude* from DePaul University College of Law.

**Elizabeth A. Bailey**

Elizabeth Bailey is of counsel at Grant & Eisenhofer where she focuses on complex and mass tort litigation as well as catastrophic injury litigation.

Prior to joining G&E, Ms. Bailey was a partner in the Philadelphia office of a national catastrophic personal injury law firm. Many of her clients sustained life-altering physical and/or emotional injuries from corporate negligence, defective consumer and industrial products, and workplace injuries. She has also represented student sexual assault survivors and student-survivor organizations in cases of alleged sexual discrimination, harassment, and violence on campuses.

While in college, Ms. Bailey worked summers as a member of the local United Automobile Workers Union (UAW), on the third shift in an auto parts plant. This experience provides her a

**GE**

Grant & Eisenhofer

unique perspective—one few lawyers have—when representing workers injured in the workplace.

Ms. Bailey has been recognized on the Pennsylvania *Super Lawyers* Rising Stars list every year since 2017. She was also named one of the top ten female personal injury attorneys in Pennsylvania by the American Institute of Personal Injury Attorneys.

Ms. Bailey earned her LLM in trial advocacy and J.D. from Temple University James E. Beasley School of Law, and her B.S. from Penn State University. She is a member of the American Association for Justice (Vice Chair, Product Liability Section), the Pennsylvania Association for Justice, and Philadelphia Trial Lawyers.

**Cynthia A. Calder**

Cynthia Calder is of counsel at Grant & Eisenhofer. She concentrates her practice in the areas of corporate governance and securities litigation. She has represented shareholders in such seminal cases in the Delaware Court of Chancery as *UniSuper Ltd. v. News Corp.*, vindicating the shareholders' right to vote; *Carmody v. Toll Brothers*, finding the dead-hand poison pill defensive measure was illegal under Delaware law, *Jackson National Life Insurance Co. v. Kennedy*, breaking new ground in the interpretation of fiduciary duties owed to preferred shareholders; *Haft v. Dart Group Corp.*, resolving a contest for control of a significant public corporation; and *Paramount Communications Inc. v. QVC Network*, obtaining an injunction preventing the closing of a merger to force the board of directors to appropriately consider a competing bid for the corporation.  More recently, Ms. Calder prosecuted a derivative suit on behalf of American International Group, Inc. shareholders against the company's former CEO, Maurice Greenberg, and other former AIG executives.  The action was concluded for a settlement of $115 million – one of the largest such settlements in the history of the Delaware Court of Chancery.  Ms. Calder was also the Court-appointed representative on the shareholder counsel's committee in the *UnitedHealth Group* derivative litigation, which was settled for more than $900 million – the largest known derivative settlement in any court system.  Ms. Calder also prosecuted a shareholder class action, *In re ACS Shareholder Litigation*, which resulted in one of the largest class recoveries in the history of the Court of Chancery.

Ms. Calder has co-authored numerous articles on corporate governance and securities litigation, including "Options Backdating from the Shareholders' Perspective" *Wall Street Lawyer*, Vol. 11, No. 3;  "Securities Litigation Against Third Parties: Pre-Central Bank Aiders and Abettors Become Targeted Primary Defendants" *Securities Reform Act Litigation Reporter*, Vol. 16, No. 2; and "Pleading Scienter After Enron: Has the World Really Changed?" *Securities Regulation & Law*, Vol. 35, No. 45.

Ms. Calder graduated *cum laude* from the University of Delaware in 1987 and graduated from the Villanova University School of Law in 1991. Upon graduating from law school, Ms. Calder served as a Judicial Law Clerk in the Delaware Court of Chancery to the Honorable Maurice A. Hartnett, III. Prior to joining Grant & Eisenhofer, Ms. Calder was an associate at Blank, Rome, Comisky & McCauley.

**Karin E. Fisch**

**G|E**

Grant & Eisenhofer

Karin Fisch is of counsel at Grant & Eisenhofer, and has over 28 years of litigation experience. Prior to joining G&E, Ms. Fisch was a partner at the New York office of a national law firm where she focused on complex class action litigation, including securities, antitrust, ERISA and employment matters. Ms. Fisch also has significant experience representing individuals and funds, both domestic and foreign, seeking to recover investment losses.

Ms. Fisch earned her J.D. from Fordham University School of Law and received her undergraduate degree from Cornell University.

**Nadia Klein**

Nadia Klein is of counsel at Grant & Eisenhofer. Her practice focuses on representing investors and other plaintiffs in high-stakes commercial, complex financial products and securities litigation in state and federal court, as well as claimants in U.S. domestic and international arbitration. Based in London, England, she works with G&E's institutional investor clients in the U.K. and Europe.

Prior to joining Grant & Eisenhofer, Ms. Klein was of counsel at a U.S. litigation boutique. Prior to that, she was a senior associate at a leading New York litigation firm, where she spent almost seven years representing various plaintiffs in multiple residential mortgage-backed securities actions together seeking more than $6 billion.

Ms. Klein received her B.A. from Cornell University in 2003 and her J.D. from Fordham University School of Law in 2011. She also attended the London School of Economics & Political Science and the International Academy for Arbitration Law in Paris, France.

**Richard S. Schiffrin**

Richard S. Schiffrin is of counsel at Grant & Eisenhofer. He has represented institutional investors and consumers in securities and consumer class actions worldwide. In 2008, Mr. Schiffrin retired as a founding partner of Schiffrin Barroway Topaz & Kessler, LLP.

Mr. Schiffrin has been recognized for his expertise in many prominent cases, including *In re Tyco International Ltd. Securities Litigation*, the most complex securities class action in history, which resulted in a record $3.2 billion settlement. The $2.975 billion payment by Tyco represents the single largest securities class action recovery from a single corporate defendant in history, while the $225 million settlement with PricewaterhouseCoopers (PwC) represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history; *In re AremisSoft Corp. Securities Litigation*, a complex case involving litigation in four countries, resulting in a $250 million settlement providing shareholders with a majority of the equity in the reorganized company after embezzlement by former officers; *In re Tenet Healthcare Corp.*, resulting in a $216.5 million settlement and which led to several important corporate governance improvements; *Henry v. Sears, et al.*, one of the largest consumer class actions in history which resulted in a $156 million settlement distributed without the filing of a single proof of claim form by any class member; *Wanstrath v. Doctor R. Crants, et al.*, a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets to a private entity owned by company insiders, resulting in corporate governance reform in addition to the issuance of over 46

Exhibit 3
Page 218 of 264       Exhibit 5
Page 29 of 65

**G&E**
Grant & Eisenhofer

million shares to class members; *Jordan v. State Farm Insurance Company*, resulting in a $225 million settlement and other monetary benefits for current and former State Farm policy-holders; and *In re Sotheby's Holdings, Inc. Derivative Litigation*, resulting in a multi-million dollar settlement and significant governance changes.

Mr. Schiffrin is an internationally renowned speaker and lectures frequently on corporate governance and securities litigation. His lectures include: the MultiPensions Conference in Amsterdam, Netherlands; the Public Funds Symposium in Washington, D.C.; the European Pension

Symposium in Florence, Italy; and the Pennsylvania Public Employees Retirement Summit (PAPERS) in Harrisburg, Pennsylvania. Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and served as a faculty member at legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics - Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

Mr. Schiffrin is a graduate of DePaul Law School and received a Master's degree in Political Science from the University of Chicago. After protecting the civil rights of clients for seven years as an Assistant Public Defender with the Office of the Public Defender of Cook County, where he tried hundreds of cases, Mr. Schiffrin founded Schiffrin & Craig, Ltd., representing consumers and individual investors in actions brought against public companies. He is licensed to practice law in Pennsylvania and Illinois and has been admitted to practice before numerous United States District Courts.

**David Wissbroecker**

David Wissbroecker is of counsel at Grant & Eisenhofer where he focuses on corporate governance and securities litigation in Delaware Chancery Court.

Prior to joining G&E, Mr. Wissbroecker was a partner at national law firm where he practiced securities class action litigation concerning mergers and acquisitions, representing institutional investors as well as individual shareholders. His casework includes litigating several matters in Delaware and other jurisdictions, including shareholder class actions against Dole, Kinder Morgan, Del Monte Foods, Scana, Websense, Harman, Precision Castparts, Dollar General, Onyx, and Gardner Denver, among other high-profile matters.

Mr. Wissbroecker was recognized by *Lawdragon* as a Leading Plaintiff Financial Lawyer (2020-2021), honored by *The Legal 500* as a Recommended Lawyer (2019), and selected for inclusion to *SuperLawyers' list of* Rising Stars (2015).

Mr. Wissbroecker earned his J.D. from University of Illinois College of Law, and his B.A. from Arizona State University.

**Alice Cho Lee**

Alice Cho Lee is senior counsel at Grant & Eisenhofer, where she works on international securities fraud class actions and investment arbitrations.

Ms. Cho Lee is part of G&E's international litigation team that represents mainly institutional investor plaintiffs – but also individual consumers and investors – in litigation prosecuted in many countries around the world. Current cases include actions against:

- Danske Bank, in a securities litigation in Denmark based on Danske Bank's massive money-laundering scheme and subsequent cover-up
- Republic of Cyprus, in an international investment arbitration before the World Bank on behalf of almost one thousand Greek investors
- Google, in data privacy collective actions in the Netherlands and Portugal on behalf of thousands of Android users
- Two Dutch shipowners for human rights violations under Dutch and EU law (wage discrimination/unequal pay for Asian sailors based solely on their nationality)
- Petróleo Brasileiro ("Petrobras"), Vale S/A and IRB-Brasil Resseguros S.A., in separate international securities arbitrations before Brazil's leading arbitration chamber, the MC
- Volkswagen and Porsche, in securities actions in Germany
- Postbank, in a securities fraud action in Germany
- BHP, in an Australian securities class action in which our class/group includes the class representative
- Toshiba, in a securities litigation in Japan

At G&E, Ms. Cho Lee has been a member of the plaintiffs' counsel team for several of the largest securities class action settlements in the United States and internationally including:

- Steinhoff, a Dutch securities damages class action which settled for €1.4B (U.S. $1.6B) – the largest non-U.S. securities fraud settlement in history
- Marsh & McLennan, a U.S. securities class action, settled for $400M
- Merck (Vytorin), a U.S. securities class action that settled for $215M
- JP Morgan Chase & Co., a U.S. securities class action that settled for $150M

Ms. Cho Lee served on the board of the Korean American Lawyers Association of Greater New York (KALAGNY) for seven years and is an active member of the National Asian Pacific American Bar Association (NAPABA), the Asian American Bar Association of New York (AABANY), and KALAGNY. During law school, Ms. Cho Lee interned as a law clerk for The Honorable Frederic Block, U.S. District Court, Eastern District of New York. She has also worked at the New York City Human Rights Commission and the Asian American Legal Defense and Education Fund.

Ms. Cho Lee graduated from Brooklyn Law and received a B.A. in English from the University at Albany. Lee is senior counsel at Grant & Eisenhofer, where she works on securities fraud class actions and international litigation and arbitration cases.

**Jonathan Davenport**

Jonathan Davenport is senior counsel at Grant & Eisenhofer, focusing his practice on securities fraud class actions and international litigation and arbitration cases.

**Grant & Eisenhofer**

Prior to joining G&E, Mr. Davenport was counsel in the New York office of a large national law firm concentrating on complex commercial and regulatory litigation and investigations in the U.S. and internationally.

Prior to becoming an attorney, Mr. Davenport served as an Inspector in the Royal Hong Kong Police and served in the British Army.

Mr. Davenport earned his LLB from the University of London.  He took the Legal Practice Course at the College of Law and trained at one of the leading firms in London before qualifying as a Solicitor of the Supreme Court of England and Wales.

**Frank "T.J." Griffin**

TJ Griffin is senior counsel at Grant & Eisenhofer where he focuses his practice on bankruptcy litigation. Mr. Griffin has over 20 years of litigation experience in complex commercial litigation and government investigations. Prior to joining G&E, Mr. Griffin was counsel at the Philadelphia office of a national law firm, where he represented clients in bankruptcy litigation, and regularly advised clients on antitrust matters and international arbitrations. He also formerly practiced as a member of the commercial litigation group in the Washington D.C. office of another national law firm.

Mr. Griffin's practice focuses on the representation of litigation trustees in matters involving, among other things, fraudulent transfer (both within and outside of bankruptcy), fiduciary duty, unlawful dividend and related corporate governance claims, having litigated such claims through trial and appeal. His current representations include:

- The Appvion Liquidating Trust (in litigation against the debtors' former directors, officers and others);
- Loyalty Ventures Inc. Liquidating Trust (in litigation against the debtors' former parent company, director, & others);
- Bed Bath & Beyond, Inc. and the Plan Administrator (in litigation against the debtors' former directors & officers);
- The GCX Limited Liquidating Trust (in litigation against the debtors' former directors and officers);
- The High Ridge Brands Liquidating Trust (in litigation against the debtors' former directors, sponsor and sponsor-affiliated lender);
- The GBG USA Litigation Trust (in litigation against the debtors' former directors, officers & others); and
- Boxed Liquidation Trust (in investigation of claims against certain of its former Ds&Os and third parties);
- Casa Systems, Inc. Preserved Actions Administrator (in investigation of claims against certain of its former Ds&Os and third parties);
- Debtors in AN Global, LLC (in investigation of claims against certain of its former Ds&Os and third parties);
- State of Vermont (in fraudulent transfer litigation against The Chemours Company, E.I. du Pont de Nemours & Company, DuPont de Nemours, Inc & Dow, Inc.); and
- State of Maine (in fraudulent transfer litigation against The Chemours Company, E. I. du

-32-

Exhibit 3
Page 221 of 264        Exhibit 5
Page 32 of 65

Grant & Eisenhofer

Pont de Nemours & Company, DuPont de Nemours, Inc. & Dow, Inc.).

Mr. Griffin earned his J.D. from The George Washington University Law School, where he earned High Honors and was a member of *The George Washington Law Review*.  He received his B.S. in Biology from Washington and Lee University.

**Laina M. Herbert**

Laina Herbert is senior counsel at Grant & Eisenhofer focusing her practice on  sovereign and public entity representation, and consumer protection litigation.  She also provides litigation services to public entities to pursue actions concerning the marketing and sale of dangerous products, such as Zantac/ranitidine.

In addition, Ms. Herbert represents numerous relators in confidential whistleblower actions under the federal and various state False Claim Acts, pursuing misconduct in diverse fields including medical and mental healthcare, residential mortgage lending, defense contracting, retail, and other industries.

Prior to Joining G&E, Ms. Herbert was senior counsel practicing complex ligation at a Delaware law firm. Ms. Herbert also has extensive experience representing corporations, their directors and stockholders in corporate and commercial ligation relating to fiduciary duties, mergers and acquisitions, corporate governance, and other issues concerning Delaware law. Her experience also includes federal patent infringement and intellectual property litigation in the U.S. District Court for the District of Delaware.

Ms. Herbert is the Content Editor of *The Journal of The Delaware State Bar Association* and served on the ACLU of Delaware's Kandler Committee.

Ms. Herbert earned her J.D. *with honors* from the University of Maryland Francis King Carey School of Law in December 2004 where she served as an Associates Articles Editor of *The Business Lawyer*. She earned a B.S. in Biology, B.A. in Leadership Studies and minor in Women's Studies from the University of Richmond in 2000.

**Chad B. Holtzman**

Chad Holtzman is senior counsel at Grant & Eisenhofer, focusing his practice on recovering damages for businesses and consumers harmed by violations of the federal and state antitrust laws, including price-fixing and monopolization.

Currently, Chad is a member of leadership teams representing clients in high-profile antitrust cases in the pharmaceutical, financial services, and commodities industries, including:  *In re Blue Cross Blue Shield Antitrust Litigation*, *In re London Silver Fixing, Ltd. Antitrust Litigation*, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, *In re Novartis and Par Antitrust Litigation (Exforge)*, *In re: Humira (Adalimumab) Antitrust Litigation,* and *In re: Lipitor Antitrust Litigation*, among others.

**G|E** Grant & Eisenhofer

Prior to joining Grant & Eisenhofer, Mr. Holtzman worked as an associate at the Philadelphia office of a national Am Law 100 law firm where he defended corporate defendants in antitrust and other complex commercial litigation.

Mr. Holtzman is a member of the Committee to Support the Antitrust laws (COSAL), established to preserve and enhance the private enforcement of strong antitrust laws.  He is a member of the American Antitrust Institute and the American Bar Association's Antitrust Division.  Finally, Chad serves on the National Board for the Jewish National Fund Young Professionals Division as its Vice President.  He is also a Board Member of the International Alliance for Child Literacy, a non-profit charity that empowers children by establishing libraries at orphanages.

Mr. Holtzman earned his J.D., *cum laude*, from Villanova University School of Law in 2009 where he was the Associate Editor for the *Villanova Environmental Law Journal*. Mr. Holtzman earned his B.S. in economics from Hamilton College in 2006.

### Samantha R. Mertz

Samantha Mertz is senior counsel at Grant & Eisenhofer, where her primary area of practice is complex and mass tort litigation.  She handles all phases of mass tort and personal injury litigation from commencement through trial.

Ms. Mertz has focused much of her practice on manufacturers of pharmaceuticals and medical devices that have harmed women and children, including Risperdal, Zofran, Transvaginal Mesh, and Essure, and represents victims of the PG&E Camp Wildfire. She is adept at caring for clients who are at their most vulnerable. Ms. Mertz serves on the Law and Briefing Committee for the Plaintiffs' Steering Committee in the Gilead Tenofovir Cases, California Judicial Council Coordinated Proceeding (JCCP) No. 5043, and served on the Law and Briefing Committee and Discovery Committee for the Plaintiffs' Steering Committee in the Essure Cases, California Judicial Council Coordinated Proceeding (JCCP) No. 4887.

Ms. Mertz served as the mass tort law clerk for the Complex Litigation Center under the Honorable Judge Arnold New and the Honorable Judge Sandra Mazer Moss for the First Judicial District of Pennsylvania from 2010-2013. Prior to joining G&E, Ms. Mertz worked at a Philadelphia law firm as a pharmaceutical mass tort litigation attorney, and was selected for inclusion in the Pennsylvania *Super Lawyers* "Rising Star" list for 2014 and 2015.  Ms. Mertz earned her J.D. from Temple University Beasley School of Law in 2010 where she received awards for excellence in Constitutional Law and Outstanding Oral Advocacy in the Integrated Trial Advocacy Program and the Crossen Award at graduation.

Ms. Mertz is a member of and serves on the Executive Committee for the Louis D. Brandeis Law Society.

### James B. Puritz

James Puritz is senior counsel at Grant & Eisenhofer where he focuses on representing families and children in birth injury and birth trauma litigation.

**Grant & Eisenhofer**

Prior to joining G&E, he was a trial attorney focusing on medical malpractice and catastrophic loss litigation. He also was an Assistant District Attorney in Massachusetts and an Assistant Corporation Counsel for the City of Boston.

Mr. Puritz earned his J.D. from Albany Law School and his B.A. from Brandeis University.

**Suzanne Sangree**

Suzanne Sangree is senior counsel at Grant & Eisenhofer, focusing her practice on the representation of state and local governments in complex litigation matters stemming from environmental damage and consumer protection.

Prior to joining Grant & Eisenhofer, Ms. Sangree worked for the City of Baltimore Department of Law for 13 years. She served as the Director of Affirmative Litigation, pursuing environmental, False Claims Act, antitrust, products liability, and consumer-related cases, among other types of litigation. She also held roles as Senior Public Safety Counsel/Chief, Legal Affairs Division; and Chief Solicitor & Director of Training. She additionally served as a member of the Settlement Committee and Executive Committee for the Department of Law.

In 2020, *Bloomberg Law* recognized Ms. Sangree as a Key Player in 2020 Environmental Litigation. In 2015 the International Municipal Lawyers Association awarded Ms. Sangree its distinguished public service award, and she was named a Top 40 Maryland Lawyer in 2014. Ms. Sangree served as clerk for Judge Andre M. Davis, U.S. District Court, District of Maryland.

Ms. Sangree earned her LL.M. from Harvard Law School and her J.D. from City University of New York Law School at Queens. She received her B.A., *cum laude*, from Wesleyan University.

**Vivek Upadhya**

Vivek Upadhya is senior counsel at Grant & Eisenhofer, focusing on securities, appraisal, whistleblower/*qui tam* and complex pharmaceutical and medical device litigation.

Mr. Upadhya is currently representing clients in a derivative suit against Tesla's board of directors and has previously represented investors challenging mergers, including an action against Regency Energy Partners pending in the Delaware Court of Chancery. Mr. Upadhya was also involved in *In re JPMorgan Chase & Co Securities Litigation* (S.D.N.Y.), which resulted in a $150 million settlement. His other recent work includes Delaware Chancery Appraisal cases *In re Appraisal of Jarden Corporation* and *In re Appraisal of Solera Holdings, Inc*. Additionally, Mr. Upadhya worked on multi-district litigation involving prescription drugs such as Xarelto and Zofran.

Mr. Upadhya received his J.D. from Emory University School of Law, where he served as a managing editor for the *Emory Law Journal*. He received his B.A. in law and political science from the University of Utrecht in the Netherlands, and was born and raised in India.

**Jason H. Wilson**

**Grant & Eisenhofer**

Jason Wilson is senior counsel at Grant & Eisenhofer where he focuses on sovereign and public entity representation, primarily in matters to address the systemic environmental contamination of public resources. Currently, Mr. Wilson is prosecuting claims against Monsanto Co. arising out of that company's production, marketing, and sale of toxic PCBs, which now contaminate natural resources and municipal stormwater systems throughout the nation, and against 3M Co. and other manufacturers of toxic PFAS chemicals, which contaminate groundwater, drinking water, and other public resources. Mr. Wilson also represents investors and whistleblowers in corporate governance and securities litigation.

Prior to joining Grant & Eisenhofer, Mr. Wilson was an associate at an international law firm, resident in Philadelphia, defending shareholder disputes, consumer class actions, antitrust, bankruptcy, environmental litigation, and government investigations related to the False Claims Act, Anti-Kickback Act and Foreign Corrupt Practices Act. Regarding his experience in shareholder disputes, Mr. Wilson defended numerous securities class actions, derivative suits and various shareholder requests for books and records. Before that, he spent three years in the litigation department of a large New York law firm. Mr. Wilson also served as a law clerk to Judge William H. Walls of the US District Court for the District of New Jersey.

Mr. Wilson earned his J.D. from Columbia Law School in 2004 where he was a Harlan Fisk Stone Scholar, was awarded the Alfred S. Forsyth Prize for dedication to the advancement of environmental law, and served as Editor-in-Chief of the *Columbia Environmental Law Journal*. He received his B.A. in History and a concentration in Environmental Science from Williams College in 1999.

**Andrew N. Dodemaide**

Andrew Dodemaide is counsel at Grant & Eisenhofer. Prior to joining G&E, Mr. Dodemaide worked at a law firm in Philadelphia where he practiced domestic and international securities litigation. Mr. Dodemaide also worked for a large complex litigation firm as an associate on the new matter development team.

Mr. Dodemaide received his B.A. from Rutgers University and earned his J.D. from Rutgers University School of Law, where he was the Editor-in-Chief of the *Rutgers Journal of Law and Public Policy*. While a law student, Mr. Dodemaide taught Constitutional Law at a high school in Camden, New Jersey through the Marshall Brennan Constitutional Literacy Project. Upon graduation, Mr. Dodemaide clerked for the Honorable Jack M. Sabatino at the New Jersey Superior Court, Appellate Division.

**David Felderman**

David Felderman is counsel at Grant & Eisenhofer. Prior to joining G&E, Mr. Felderman worked at a New York-based law firm where he handled antitrust class action and *qui tam* litigation. Before that, he worked at a Philadelphia-based class action law firm where he handled securities and antitrust litigation and oversaw the operations of the firm's Global Portfolio Monitoring Platform. Mr. Felderman also has experience counseling clients with respect to international securities litigation and corporate governance.

G|E
Grant & Eisenhofer

Mr. Felderman earned his J.D., *cum laude*, from Temple University Beasley School of Law. He earned his B.A. in economics from the University of Pennsylvania, and is currently a member of the Penn Alumni Interview Program. Mr. Felderman previously served as President of the Penn Alumni Club of Philadelphia and as a member of the Board of Directors of Penn's Alumni Class Leadership Council.

**Ken S. Massey**

Ken Massey is counsel at Grant & Eisenhofer, focusing on corporate governance, securities, and civil rights litigation. Prior to joining G&E, Mr. Massey practiced consumer financial services, and commercial litigation at a leading financial services defense boutique and the Philadelphia office of a national law firm.

In 2023, Mr. Massey was named as National Legal Counsel to the Japanese American Citizens League, whose mission is to secure and maintain the civil rights of Japanese Americans. He additionally serves on the board of directors of the Asian Pacific American Bar Association of Pennsylvania and has previously served as its President. Mr. Massey has also previously served on the executive board of the Temple Law Alumni Association. He was selected for inclusion three times to the Pennsylvania Super Lawyers list of "Rising Stars" and listed on the Pro Bono Roll of Honor for the First Judicial District of Pennsylvania.

Mr. Massey earned his J.D. from Temple University Beasley School of Law in 2004 and his B.A. in History from the University of Pennsylvania in 1999.

**Islam Aly**

Islam Aly is an associate at Grant & Eisenhofer, where he focuses on international securities litigation and arbitration.

Prior to joining G&E, Mr. Aly represented the interests of institutional investors at a national law firm, with a particular focus on identifying and developing corporate fraud and oversight cases. Mr. Aly also completed a fellowship with a separate national law firm where he worked on a variety of securities, antitrust, and consumer protection cases.

Mr. Aly graduated from University of California, Los Angeles School of Law, where he was the Chief Managing Editor of the *Journal of Islamic and Near Eastern Law* and also served as Co-Chair of the Muslim Law Students Association. Mr. Aly received his B.A. from University of Wisconsin. He is fluent in Arabic.

**Kevin W. Boyle**

Kevin Boyle is an associate with Grant & Eisenhofer's environmental protection and consumer protection litigation groups.

Prior to joining Grant & Eisenhofer, Mr. Boyle worked as an associate attorney defending complex commercial litigations including class action claims, derivative lawsuits, and corporate governance and employment disputes.

Mr. Boyle earned his J.D. from Temple University Beasley School of Law, his M.H.S. from Johns Hopkins Bloomberg School of Public Health, and his B.A. from Johns Hopkins University.

**Samantha L. Breitner**

Samantha Breitner is an associate at Grant & Eisenhofer, where she focuses on civil rights litigation.

Prior to joining G&E, Ms. Breitner worked at a complex litigation law firm in New York practicing securities litigation and representing adult survivors of sexual abuse.

Ms. Breitner graduated from Benjamin N. Cardozo School of Law in 2015, where she was an active member of the *Journal of Law and Gender* and served as Articles Editor. Ms. Breitner received her B.A. from Syracuse University in 2011.

**Leanne P. Brown-Pasquarello**

Leanne Brown-Pasquarello is an associate at Grant & Eisenhofer where she focuses on sovereign and public entity representation, primarily in matters to redress systemic environmental contamination. She currently represents several state Attorneys General and municipalities in environmental litigation. In that role, she is prosecuting claims against Monsanto Co. arising out of that company's production, marketing, and sale of toxic PCBs, which now contaminate natural resources and municipal storm water systems throughout the nation; and against 3M Co. and other manufacturers of toxic firefighting foam laced with toxic PFAS chemicals, which now contaminate groundwater, drinking water, and other public resources. Mrs. Brown-Pasquarello also has experience in securities class actions, shareholder derivative actions, antitrust actions, and appraisal rights.

During her time with Grant & Eisenhofer, she has worked on litigation teams whose efforts resulted in significant awards for their clients, including the following:

- *In re Pfizer, Inc. Securities Litigation*, class action securities litigation, wherein it was alleged that Pfizer misrepresented the cardiovascular safety of its multi-billion-dollar arthritis drugs, and resulted in a $486 million recovery.
- *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, a major securities fraud action against pharmaceutical industry titan, Merck & Co., Inc., that settled for $215 million.
- *In re MyFord Touch Consumer Litigation*, a consumer class action on behalf of owners of Ford vehicles equipped with allegedly defective infotainment units, which resulted in relief valued at over $33 million.

Prior to joining Grant & Eisenhofer, Ms. Brown-Pasquarello worked at a Philadelphia law firm on mass tort and complex civil litigation matters. She received her law degree from Widener University School of Law, where she wrote on The Law Forum, and was a member of ATLA. She received her B.A. degree in Political Science from University of Delaware, where she was a member of *Phi Sigma Pi* National Honor Society, and *Pi Sigma Alpha* National Political Science Honor Society. She served as Vice President of a political organization on campus.



**Juliana Carter**

Juliana Carter is an associate in Grant & Eisenhofer's environmental protection and consumer protection litigation groups.

Ms. Carter focuses on sovereign and public entity representation, primarily in matters to address the systemic environmental contamination of public resources.  Currently, Ms. Carter is prosecuting claims against Monsanto arising out of that company's production, marketing, and sale of toxic PCBs, which now contaminate natural resources and municipal stormwater systems throughout the nation. In addition to environmental litigation, Ms. Carter partners with state Attorneys General and municipalities pursuing consumer protection actions against manufacturers of dangerous products.

Prior to joining G&E, Ms. Carter was a litigation associate at an Am Law 100 law firm headquartered in Philadelphia defending chemical and pharmaceutical manufacturers, financial institutions, universities, and other companies in connection with government investigations and civil actions filed in state and federal court. Ms. Carter also served as a judicial law clerk to the Honorable Paul S. Diamond of the U.S. District Court for the Eastern District of Pennsylvania.

Ms. Carter has been recognized on the Pennsylvania Super Lawyers Rising Stars list from 2020 to 2023.

Ms. Carter graduated *magna cum laude*, Order of the Coif, from Temple University Beasley School of Law, where she served as a staff editor of the *Temple Law Review* and as the Director of Advocacy of the School Discipline Advocacy Service, and was awarded the recognition of Fellow of the Rubin Public Interest Law Honor Society. She earned her B.A. in Law and Policy from Dickinson College.

**Mica Cocco**

Mica Cocco is an associate at Grant & Eisenhofer where she focuses on securities litigation. Ms. Cocco joined the firm as an intern, working with the G&E ESG Institute and the firm's corporate litigation practice groups.  Prior to joining G&E, Ms. Cocco was a legal intern at an immigration law firm in New York.

Ms. Cocco earned her J.D. from New York Law School and her B.S. in marketing and psychology from the University of Maryland. During law school, Ms. Cocco was the Treasurer of the Jewish Law Student Association.

**Daniel T. Craig**

Daniel Craig is an associate at Grant & Eisenhofer where he focuses his practice on complex and mass tort litigation.

Prior to joining G&E, Mr. Craig worked at a Philadelphia law firm representing clients in catastrophic personal injury, medical malpractice, and civil rights matters.

GE

Grant & Eisenhofer

Mr. Craig earned his J.D. from Temple University's Beasley School of Law in 2021, where he was a member of the school's nationally renowned trial team, and received his B.A. from Temple University in 2014.

**Timothy Clark B. Dauz**

Timothy Clark Dauz is an associate at Grant & Eisenhofer, where he focuses on securities litigation.

Prior to joining G&E, Mr. Dauz worked as an associate attorney managing arbitration and litigation matters, and he was also a securities litigation analyst at a New York law firm. He practiced law in the Philippines before moving to New York, and had served as the legal officer of a major financial institution. He also worked as an associate attorney at a law firm in Manila, where he litigated civil and commercial cases, and assisted in the resolution of corporate disputes.

Mr. Dauz earned his LL.M., *cum laude*, from the Fordham University School of Law, where he was the Fordham Blockchain Law Society's first publications director. He obtained his M.B.A. from the Asian Institute of Management in Makati City, Philippines, and his J.D. from the Ateneo de Manila University School of Law, also in Makati City. Having grown up in the Philippines, Mr. Dauz is fluent in Tagalog.

**Marc E. Davies**

Marc Davies is an associate at Grant & Eisenhofer. Prior to joining G&E, Mr. Davies was a shareholder at a Philadelphia law firm practicing environmental litigation involving PCBs.

He is currently an adjunct professor at Rutgers University School of Law, teaching environmental litigation, environmental business, and writing.

Mr. Davies earned his J.D. from Temple University's Beasley School of Law in 1997, where he was an Associate Member of *Temple Environmental Law and Technology Journal*. He received his M.A. in environmental science from University of Pennsylvania, where he also earned his B.A.

**Demetrius Davis**

Demetrius Davis is an associate at Grant & Eisenhofer, focusing his practice on corporate governance and securities litigation.

After graduating law school, Mr. Davis was an intern for G&E focusing on matters in the Delaware Court of Chancery.

Mr. Davis earned his J.D. from Widener University Delaware Law School and his B.S. from the University of Delaware.



## Caley DeGroote

Caley DeGroote is an associate at Grant & Eisenhofer, where her focus is on complex and mass tort litigation as well catastrophic personal injury litigation.  She handles matters from client intake through resolution, including trial.

Prior to joining G&E, Ms. DeGroote advocated for plaintiffs injured in personal injury and medical malpractice cases.  Ms. DeGroote also served as law clerk to the honorable Judge Frank K. Friedman on the Court of Appeals of Virginia and to the 23rd Judicial Circuit of Virginia.

Ms. DeGroote received her J.D. from Washington and Lee University School of Law, where she was the Executive Editor for the *Journal of Civil Rights and Social Justice*.  She received her B.A. from Furman University, where she majored in Political Science as well as Communication Studies and received a minor in Ancient Greek and Roman Studies.

## Caitlin M. Doermer

Caitlin Doermer is an associate at Grant & Eisenhofer, where her primary area of practice is representing children and families in birth injury and birth trauma litigation.

Prior to joining G&E, Ms. Doermer worked as an associate at a Chicago law firm practicing medical malpractice and personal injury litigation.

Ms. Doermer received her J.D. from Notre Dame Law School and her B.A. from Washington & Lee University.

## Gerald T. Edwards

Gerald Edwards is an associate at Grant & Eisenhofer. Prior to joining G&E, Mr. Edwards was a staff attorney at the New York office of a national complex litigation law firm, focusing on corporate and business law, as well as securities fraud matters. Previously, Mr. Edwards worked as an attorney and analyst for several years with various global investment firms in the areas of corporate and securities law, investment management and banking, securities trading, compliance, and investment fraud.

Mr. Edwards earned his J.D. and his M.A. in International Relations and Economics from Syracuse University in 1993. He earned a B.A. in History from Howard University in 1990. Mr. Edwards is a member of the New York State Bar, the American Arbitration Association, the New York City Bar Association, and the Syracuse University Maxwell Alumni Association of New York.

## Amy C. Eisenhofer

Amy Eisenhofer is an associate at Grant & Eisenhofer, where her focus is on complex and mass tort litigation. During law school, she was an intern at G&E in the complex and mass tort litigation practice.
Ms. Eisenhofer received her J.D. from New York Law School in 2023. She earned a B.A. in biology and a B.A. in American Studies from Brandeis University in 2018.

**G&E** Grant & Eisenhofer

**Tudor I. Farcas**

Tudor Farcas is an associate at Grant & Eisenhofer where he focuses his practice on complex and mass tort litigation. Prior to joining Grant & Eisenhofer, Mr. Farcas was an associate at the Philadelphia office of a national defense litigation law firm defending general liability claims including mass tort, products liability, and personal injury. He also was a law clerk to the Honorable Mark I. Bernstein, assisting with complex proceedings in national mass tort cases regarding pharmaceutical products and medical devices.

Mr. Farcas earned his J.D. from Drexel University Thomas R. Kline School of Law in 2013, where he was a member of the Drexel Transactional Law Team. Mr. Farcas received his B.A. from Pennsylvania State University in 2008.

**Alexandra Forgione**

Alex Forgione is an associate at Grant & Eisenhofer where she focuses her practice on securities litigation.

Ms. Forgione earned her J.D. from Fordham University School of Law, where she was a member of the *Fordham Urban Law Journal* and the Brendan Moore Trial Advocacy Center. She also practiced in the International Human Rights Clinic during her time at Fordham. Ms. Forgione earned her B.A. in English from Villanova University and was elected to Phi Beta Kappa

**Garrett A. Gittler**

Garrett Gittler is an associate at Grant & Eisenhofer where he focuses on complex and mass tort litigation. Prior to joining G&E, Mr. Gittler was an associate at the Philadelphia office of a national law firm where he focused on professional liability, catastrophic injury, and wrongful death claims. He also has prior experience litigating products liability, asbestos and property damage matters.

Mr. Gittler earned his J.D. from Villanova University Charles Widger School of Law, and his M.S. and B.S. degrees from West Chester University.

**Lisa K. Grumbine**

Lisa Grumbine is an associate at Grant & Eisenhofer where she focuses on sovereign and public entity representation, primarily in matters seeking to redress environmental contamination.  Ms. Grumbine currently represents several state Attorneys General and municipalities in environmental litigation.  In that role, she is prosecuting claims against 3M Co. and other manufacturers of toxic firefighting foam laced with toxic PFAS chemicals, which now contaminate groundwater, drinking water, and other public resources. Ms. Grumbine also handles a wide range of securities and commercial litigation actions on behalf of institutional investors and consumers.

**G E**
Grant & Eisenhofer

Prior to her legal career, Ms. Grumbine worked in the banking industry with a primary focus in ERISA and Defined Contribution Plan compliance and administration. Ms. Grumbine is a graduate of ABA National Employee Benefit Trust School.

Ms. Grumbine earned her J.D. from Temple University, Beasley School of Law in 1997 and her B.S. in Consumer Economics, *cum laude*, from University of Delaware in 1990.

**Kathryne L. Hemmings**

Kathryne Hemmings is an associate at Grant & Eisenhofer, where her focus is on civil rights litigation.

Prior to joining G&E, Ms. Hemmings worked as an associate at the Philadelphia office of a regional law firm practicing employment discrimination law. She also has over five years of experience representing plaintiffs in obtaining Social Security disability and veterans' disability benefits.

Ms. Hemmings clerked for The Hon. Linda L. Lawhun, P.J.S.C., in New Jersey. She was selected for inclusion to *Super Lawyers'* list of "Rising Stars" in New Jersey (2022) and Pennsylvania (2023).

Ms. Hemmings earned her J.D. from Drexel University School of Law and her B.A. from Clemson University.

**Maram M. Jafar**

Maram Jafar is an associate at Grant & Eisenhofer where her practice is focused on complex litigation matters.

Prior to joining G&E, Ms. Jafar had a solo practice in Bensalem, PA where she handled personal bankruptcies and immigration matters. Ms. Jafar also worked at a small boutique firm in Philadelphia, PA where she handled personal injury cases.

Ms. Jafar earned her J.D. from Widener University Delaware Law School and her B.A. in Political Science from Temple University.

**Lawrence P. Kempner**

Lawrence Kempner is an associate at Grant & Eisenhofer, focusing on litigation related to corporate governance, securities fraud and consumer protection. Prior to joining Grant & Eisenhofer, Mr. Kempner was engaged in private practice with a concentration in civil litigation.

Mr. Kempner's efforts at Grant & Eisenhofer have helped to achieve substantial recoveries in a number of class action cases, including *In re Tyco International, Ltd. Securities Litigation* ($3.2 billion recovery), *In re Refco Securities Litigation* ($422 million recovery), *In re Pfizer Inc. Securities Litigation* ($486 million recovery), *In re JP Morgan Chase & Co. Securities Litigation* ($150 million recovery) and *In re Starz Stockholder Litigation* ($92.5 million recovery).

**G&E** Grant & Eisenhofer

Mr. Kempner has also authored numerous legal publications, including books on evidence, discovery practice and consumer law.  He is a 1988 graduate of Lehigh University and received his J.D. from George Washington University in 1991.

**Jason W. Lawlor**

Jonathan Lawlor is an associate at Grant & Eisenhofer. Mr. Lawlor has over seven years of legal experience focusing on securities, mergers & acquisitions, product liability, and other complex litigation.

Mr. Lawlor earned his J.D. from Widener University School of Law and his B.A. from Gettysburg College.

**Edward M. Lilly**

Edward Lilly focuses on Chancery litigation and corporate governance matters, intellectual property litigation, and securities fraud and anti-trust class action litigation as an associate at Grant & Eisenhofer.  He has additional experience in consumer mass tort litigation, product liability litigation, and derivative class actions.

Mr. Lilly graduated in 1996 from Cornell Law School and served as an editor for the *LII Bulletin-NY* and *Cornell Journal of Law & Public Policy*.  He received his M.S. in social psychology in 1993 from Purdue University and graduated *magna cum laude* from DePauw University with a B.A. in economics.

Mr. Lilly served as a clerk for the Honorable Thomas J. McAvoy of the U.S. District Court in Binghamton, New York.

**Steven A. Medina**

Steven Medina is an associate at Grant & Eisenhofer where he focuses his practice on complex and mass tort litigation, medical malpractice, and environmental litigation. His experience extends to all phases of litigation, from initial consultation through trial.

Prior to joining G&E, Mr. Medina represented both plaintiffs and defendants in catastrophic personal injury matters at several Philadelphia-based litigation firms. He has helped recover numerous multi-million-dollar settlements and jury awards for clients.

Mr. Medina earned his J.D. from Temple University's Beasley School of Law in 2014, where he was a staff editor of the *Temple Political and Civil Rights Law Review*. Mr. Medina received his B.A. from the State University of New York at Albany in 2010.

**Jonathan C. Mills**

Jonathan Millis is an associate at Grant & Eisenhofer, focusing his practice on corporate governance and securities litigation.

Exhibit 3
Page 233 of 264        Exhibit 5
-44-                                  Page 44 of 65

# G&E
## Grant & Eisenhofer

Prior to joining G&E, Mr. Millis worked at a regional law firm based in Philadelphia, where he represented major insurance carriers in property damage matters.

After graduating law school, Mr. Millis clerked for the Honorable Nelson C. Johnson (ret.) in the Superior Court of New Jersey.

Mr. Millis earned his J.D. from Villanova University School of Law and his B.A. in History, *cum laude*, from the University of Massachusetts.

## William F. Moore

William Moore is an associate at Grant & Eisenhofer where he focuses on representing families and children in birth injury and birth trauma litigation. Prior to joining G&E, Mr. Moore was an associate attorney at a civil litigation firm practicing personal injury, wrongful death, and other liability claims.

From 2015-2018, Mr. Moore was selected for inclusion to *Leading Lawyers'* list of Emerging Lawyers. In 2010 and 2011, Mr. Moore was selected to Illinois *Super Lawyers'* list of Rising Stars. He is a member of the Chicago Bar Association and a Claims and Litigation Management Alliance Fellow.

Mr. Moore earned his J.D. from The John Marshall Law School and his B.S. from Northern Michigan University.

## Cindy Morgan

Cindy Morgan is an associate at Grant & Eisenhofer, where her focus is on civil rights litigation. Ms. Morgan is a zealous advocate for survivors of sexual assault and victims of sexual harassment, discrimination, and retaliation.  Ms. Morgan also litigates Title IX sexual assault and harassment actions and matters related to federal detention reform.

Prior to joining G&E, Ms. Morgan represented institutional and individual clients in complex litigation matters and employment disputes at a Pennsylvania law firm. She also worked as an Assistant District Attorney for the Chester County District Attorney's Office, where she prosecuted several jury trials to verdict, including homicides and sexual assaults.  Ms. Morgan also served as a law clerk for the Honorable Michael Erdos, Philadelphia Court of Common Pleas, from 2013-2014.

Ms. Morgan earned her J.D. from Temple University Beasley School of Law, where she was a member of both the *Temple Law Review* and the National Trial Team, for which she won several awards, including the *Andrew Gay Award for Excellence in Trial Advocacy*.  She also earned her undergraduate degree from Temple University, where she earned her B.A. in Political Science. In 2021, Ms. Morgan was selected for inclusion to *Super Lawyers*' list of Rising Stars.

## Kevin M. Nadolny

Kevin Nadolny is an associate at Grant & Eisenhofer, focusing on environmental law, securities litigation, antitrust matters, and consumer litigation.


Grant & Eisenhofer

Mr. Nadolny's casework includes representing shareholders in such actions as: *In re Pfizer Inc. Securities Litigation* ($486 million settlement); *In re News Corporation Shareholder Derivative Litigation* ($139 million settlement); *In re Kinder Morgan Energy Partners, L.P. Derivative Litigation* ($27.5 million settlement). He has also represented plaintiffs in antitrust matters such as: *In re Blue Cross Blue Shield Antitrust Litigation*, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, *In re Aggrenox Antitrust Litigation*; and *Alaska Electrical Pension Fund v. Bank of America* (concerning ISDA-fix price-fixing). Mr. Nadolny's consumer litigation experience includes working as a member of the team prosecuting consumer protection claims against General Motors in relation to its allegedly faulty ignition switches.

He is currently representing plaintiffs through the environmental practice group in *State of Vermont v. 3M Company, et al.* in a case related to PFAS contamination from sources other than Aqueous Film-Forming Foam (Non-AFFF).

Mr. Nadolny is a 1998 graduate of the University of Minnesota. He received his J.D. and LL.M. (Transnational Law) from Temple University, Beasley School of Law.

**William G. Passannante II**

Will Passannante is an associate at Grant & Eisenhofer, where his practice focuses on corporate governance litigation. Mr. Passannante researches, analyzes, and evaluates potential new stockholder litigation, with a focus on breaches of fiduciary duty and mergers and acquisitions. Mr. Passannante also litigates stockholder matters in the Delaware Court of Chancery.

Mr. Passannante previously worked as an associate in the Delaware office of a plaintiff's firm where he represented investors in corporate governance class action and derivative litigation matters in the Delaware Court of Chancery. Prior to that, Mr. Passannante clerked for the Hon. Jennifer Choe-Groves and the Hon. M. Miller Baker at the U.S. Court of International Trade, where he additionally supported sittings by designation on the United States Court of Appeals for the Ninth Circuit, the United States District Court for the Southern District of New York, and the United States District Court for the District of Idaho. Mr. Passannante began his legal career as a paralegal working on False Claims Act investigations and litigation at the United States Attorney's Office for the Southern District of New York.

Mr. Passannante earned his J.D. from Fordham University School of Law, where he was a member of the *Fordham Urban Law Journal*, the Fordham Moot Court Board, and the Brendan Moore Trial Advocacy Program as well as a Stein Scholar for the Public Interest. He received a bachelor's degree from Oberlin College.

**Vincent J. Pontrello**

Vincent Pontrello is an associate at Grant & Eisenhofer where he focuses on securities litigation.

Prior to joining G&E, Mr. Pontrello was an associate attorney at a New York firm practicing insurance fraud litigation.

Mr. Pontrello earned his J.D. from Brooklyn Law School, where he was a member of the Moot Couty Honor Society, Appellate Division and the Associate Managing Editor of the *Journal of Law & Policy*. Mr. Pontrello received his B.S. in finance and marketing from the University of Delaware.

**Nathan B. Reeder**

Nathan Reeder is an associate at Grant & Eisenhofer, focusing his practice on antitrust litigation.

Prior to joining G&E, Mr. Reeder was an associate at the Philadelphia office of an international law firm representing clients in antitrust and commercial matters.

Mr. Reeder earned his J.D. from University of Virginia School of Law where he was the Production Editor for *The Journal of Law and Politics*, and received his B.A. from Emory University.

**Hilary F. Rosenberg**

Hilary Rosenberg is an associate at Grant & Eisenhofer, where her focus is on complex and mass tort litigation.

Prior to joining G&E, Ms. Rosenberg was a Judicial Law Clerk for The Honorable Richard P. Haaz in the Montgomery County Court of Common Pleas.  Prior to her clerkship, Ms. Rosenberg was a Law Clerk, and formerly a paralegal, at the Philadelphia office of a personal injury law firm.

Ms. Rosenberg received her J.D. from Widener University Delaware Law School and her B.A. from Washington College.

**William C. Runzer**

William Runzer is an associate at Grant & Eisenhofer where his practice is focused on corporate governance, consumer protection, and other complex class actions.

Before joining G&E, Mr. Runzer worked with several major Philadelphia law firms on complex litigation matters including pharmaceutical class actions, securities litigation, and commercial contract disputes.  Prior to his legal career, Mr. Runzer worked in operations and construction management.

Mr. Runzer earned his J.D. from Temple University Beasley School of Law and his B.S. in Business Administration from Saint Joseph's University.

**Lauren J. Salamon**

Lauren Salamon is an associate at Grant & Eisenhofer where she practices securities litigation.

Prior to joining G&E, Ms. Salamon was an associate at a national law firm where she focused on class action securities litigation.  She also previously practiced international arbitration, intellectual property litigation, and other types of civil litigation at international firms.

Exhibit 3
Page 236 of 264    Exhibit 5
-47-    Page 47 of 65

Ms. Salamon is a member of the New York City Bar's Securities Litigation Committee. She was recognized in the list of Best Lawyers: Ones to Watch for 2024 in the area of Commercial Litigation.

Ms. Salamon graduated from Yale Law School where she was an editor at the *Yale Journal of International Law*. She earned her B.A. in Japanese from the University of Rochester and was elected to Phi Beta Kappa.

**Raymond F. Schuenemann III**

Raymond Schuenemann III is an associate at Grant & Eisenhofer. Representative of Mr. Schuenemann's casework includes participation in securities class action *In re Pfizer Inc. Securities Litigation*, alleging Pfizer misrepresented the cardiovascular safety of its multi-billion-dollar arthritis drugs, resulting in a $486 million settlement; and securities class action *In re Marsh & McLennan Consolidated Securities Litigation,* alleging that Marsh & McLennan and its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving bid-rigging and secret agreements to steer business to certain insurance companies in exchange for kick-back commissions, resulting in a $400 million settlement. Mr. Schuenemann was also involved in antitrust class action *In re Titanium Dioxide Antitrust Litigation,* where direct purchasers of Titanium Dioxide alleged that E.I. DuPont de Nemours and Company, Huntsman International and other defendants conspired to fix prices at which the chemical powder was sold in the United States, resulting in a series of settlements with defendants totaling $163 million.

After graduating from law school, Mr. Schuenemann was an associate attorney at a central Pennsylvania law firm where he worked on matters related to employment, real estate, tax, and healthcare law. Prior to his legal career, Mr. Schuenemann was an investment accountant in the mutual fund sector where he provided accounting services for numerous bond and equity funds. Mr. Schuenemann was also employed as an internal auditor in both the finance and banking sectors.

Mr. Schuenemann is active in his community and spent many years as a volunteer pro-bono attorney at Mid Penn Legal Services where he defended low-income clients from debt collection actions. Additionally, Mr. Schuenemann spent four years as the Chairman of the Board of the Reading Area Water Authority, two years as an Executive Board Member of the Reading Redevelopment Corporation, and two years as the Vice President of The City of Reading Charter Board.

Mr. Schuenemann received his J.D. from Widener University School of Law in 2005 and is a 1999 graduate of West Chester University where he earned a B.S. in Finance.

**Kimberly B. Schwarz**

Kimberly Schwarz is an associate at Grant & Eisenhofer. She focuses her practice on complex and mass tort litigation. Ms. Schwarz earned her law degree from Rutgers School of Law in 2010. She graduated with high honors from Rutgers University School of Business in 2002 where she received her B.S. in Business Management.

**Grant & Eisenhofer**

**Haadee M. Siddiqui**

Haadee Siddiqui is an associate at Grant & Eisenhofer, where his primary area of practice is representing children and families in birth injury and birth trauma litigation.

Prior to joining G&E, Mr. Siddiqui worked in the Chicago office of a personal injury law firm representing individuals in complex medical negligence matters.

Mr. Siddiqui received his J.D. from Chicago-Kent College of Law at the Illinois Institute of Technology and his B.A. from DePaul University. At Chicago-Kent, he helped establish the First-Generation Law Student Association as well as the organization's mentorship program. He is a member of the Illinois Trial Lawyers Association (ITLA), Chicago Bar Association (CBA), and Illinois State Bar Association (ISBA). He also coaches undergraduate students in DePaul University's Mock Trial Program.

**Shannon T. Somma**

Shannon Somma is an associate at Grant & Eisenhofer, focusing on securities litigation, appraisal rights, and antitrust litigation. Prior to joining Grant & Eisenhofer, Ms. Somma worked on cases in intellectual property, pharmaceutical, and environmental litigation.

Ms. Somma graduated in 1999 from the University of Delaware with a B.A. degree in psychology, and thereafter received her J.D. degree from Widener University School of Law in 2005.

**Cecilia E. Stein**

Cecilia Stein is an associate at Grant & Eisenhofer where she focuses her practice on securities litigation.

Prior to joining Grant & Eisenhofer, Ms. Stein interned for Legal Services NYC, the NYC Human Rights Commission and the G&E ESG institute.

Ms. Stein earned her J.D. from Benjamin N. Cardozo School of Law and B.A. in International Relations from State University of New York New Paltz.  During law school, she was a staff editor of the *Cardozo Arts & Entertainment Law Journal* and practiced in the Bet Tzedek Civil Litigation Clinic.

**Adam Stoltz**

Adam Stoltz is an associate at Grant & Eisenhofer where he focuses on complex and mass tort litigation as well as environmental litigation.   Prior to joining G&E, Mr. Stoltz was an associate at the New York office of a national litigation firm where he represented individuals and municipalities in products liability, personal injury, and civil rights litigation.

In addition to representing victims of human trafficking, Mr. Stoltz has also worked to hold corporate wrongdoers accountable for their role in the opioid epidemic, including conducting depositions of key corporate executives at the nation's fourth largest drug distributor.

**G E**
Grant & Eisenhofer

Mr. Stoltz earned his J.D. from Tulane University and B.A. in History as well as Languages and Cultures of Asia from University of Wisconsin-Madison.

**Casimir O. Szustak**

Casimir Szustak is an associate at Grant & Eisenhofer, where he focuses on corporate governance litigation in Delaware Chancery Court. Prior to joining G&E, Mr. Szustak was an associate at a national law firm representing investors in corporate governance class action and derivative litigation matters.

Mr. Szustak received his J.D. from Widener University Delaware Law School where he was a Staff Editor at the *Widener Law Review* and served on the Executive Board of the Delaware Law Student Bar Association. He earned his B.A. from West Chester University where he was a member of the West Chester University Pre-Law Society.

**Thomas Walsh**

Thomas Walsh is an associate at Grant & Eisenhofer where he focuses on securities, bankruptcy, and civil rights litigation.

Prior to joining G&E, Mr. Walsh was an intern for the Honorable Judge Casey at the Norfolk County Probate and Family Court located in Canton, Massachusetts.

Mr. Walsh earned his B.A. in Legal Studies from the University of Massachusetts, Amherst and his J.D. from Suffolk University Law School in 2019.

**Cheron D. Wardlaw**

Cheron Wardlaw focuses on securities, antitrust, and complex pharmaceutical and medical device litigation as an associate at Grant & Eisenhofer. Ms. Wardlaw is a 2007 graduate of the Widener University School of Law and a 2001 *magna cum laude* graduate from Temple University with a degree in journalism and public relations. She was a recipient of the Chadwick Memorial Scholarship and a Fred G. Dibona Moot Court participant.

Prior to joining Grant & Eisenhofer, Ms. Wardlaw's focus was on pharmaceutical and securities litigation as well as workmen's compensation.

**Deborah Scheinbach Weiss**

Deborah Scheinbach Weiss is an associate at Grant & Eisenhofer, focusing on securities and antitrust litigation. As a contract attorney with G&E for several years, Ms. Weiss was part of G&E teams whose efforts resulted in significant awards for clients, including *In re London Silver Fixing, Ltd. Antitrust Litigation*, a case involving the manipulation of currency markets; *In re Starz Stockholder Litigation,* a class action by stockholders of Starz against Starz directors alleging breach of fiduciary duty in negotiating and approving the sale of Starz to Lions Gate Entertainment Corp.; and the $1 billion settlement in the *Royal Bank of Scotland* case in the



United Kingdom, involving mortgage-backed securities that was a case of first impression in the UK.

Prior to joining G&E, Ms. Weiss practiced law in Philadelphia, where she worked on commercial litigation matters on behalf of national franchise systems and other clients, and provided operational counsel to various businesses. She has served as a lecturer to the Pennsylvania Bar Institute, speaking on franchise matters.

Ms. Weiss was graduated from Villanova Law School, where she was an Associate Editor of the *Villanova Law Review*, and from the State University of New York, College at Buffalo, where she received a B.A. in journalism.

**Ivan B. Woods**

Ivan Woods is an associate at Grant & Eisenhofer, focusing on securities, appraisal and environmental litigation. He was part of G&E teams whose efforts resulted in significant awards for their clients, including *In re JP Morgan Chase & Co. Securities Litigation* ($150 million recovery) and the $1 billion settlement in the *Royal Bank of Scotland* case in the United Kingdom.

Prior to joining Grant & Eisenhofer, Mr. Woods worked as a consultant for several national law firms and was on the claim management and legal staff of several New Jersey insurance companies where he supervised fraud and training divisions as well as focused on corporate law and regulatory compliance.

Mr. Woods earned his J.D. from Rutgers School of Law, Newark in 1997 and his B.S. in education from Auburn University in 1976. Mr. Woods is a member of the New Jersey State Bar Association.

**Grant & Eisenhofer**

**Selected Institutional Client Representations**

G&E has represented or is currently representing a number of institutional investors in major securities fraud actions, shareholder derivative suits, other breach-of-fiduciary-duty cases and related ancillary proceedings around the country.  Some of the Firm's cases include:

**(A)    In Securities Fraud Litigation:**

**(1)    CellStar**

In one of the earliest cases filed after the enactment of PSLRA, the State of Wisconsin Investment Board ("SWIB") was designated lead plaintiff and G&E was appointed lead counsel in *Gluck v. CellStar Corp.,* 976 F.Supp. 542 (N.D.Tex. 1997).  The cited opinion is widely considered the landmark on standards applicable to the lead plaintiff/lead counsel practice under PSLRA. (See, especially, *In re Cendant Corp. Litig*., 2001 WL 980469, at *40, *43 (3d Cir. Aug. 28, 2001), citing the CellStar case.)  After the CellStar defendants' motion to dismiss failed and a round of discovery was completed, the parties negotiated a $14.6 million settlement, coupled with undertakings on CellStar's part for significant corporate governance changes as well.  With SWIB's active lead in the case, the class recovery, gross before fees and expenses, was approximated to be 56% of the class' actual loss claims, about 4 times the historical 14% average gross recovery in securities fraud litigation.  Because of the competitive process that SWIB had undertaken in the selection of counsel, resulting in a contingent fee percentage significantly less than the average 31% seen historically, the net recovery to the class after all claims were submitted came to almost 50% of actual losses, or almost 5 times the average net recovery.

**(2)    Pfizer**

G&E was class counsel in a certified federal securities class action against Pfizer and certain of its former officers and directors. Plaintiffs alleged that Pfizer affirmatively misrepresented the cardiovascular safety of its multi-billion-dollar arthritis drugs, Celebrex and Bextra, and actively concealed adverse safety information concerning the products in order to win market share from Merck's competing Cox-2 drug, Vioxx. In 2004 and 2005, when the truth about the cardiovascular risks of Celebrex and Bextra was finally revealed, Pfizer shareholders collectively lost billions of dollars. Plaintiffs also alleged that certain former officers and directors of Pfizer illegally sold shares of Pfizer stock during the class period while in possession of material, non-public information concerning the drugs.

The case was extensively litigated for nearly 10 years, with millions of pages of documents produced and more than 50 depositions taken. Prior to the beginning of merits discovery, the parties engaged in a Daubert proceeding in which Pfizer argued that there was no scientific basis for a claim that Celebrex and Bextra were associated with adverse cardiovascular effects. Both sides submitted extensive

expert reports and, after a 5 day trial, the Court completely rejected Pfizer's challenges to Plaintiffs' expert testimony. Defendants' motion for summary judgment was denied in most respects, although the Court held that Pfizer could not be held liable for a few statements made by its co-promoters concerning the drugs.  In 2014, however, the Court granted Defendants' motion to exclude the testimony of Plaintiffs' expert concerning damages and causation, Professor Daniel Fischel, and thereafter granted summary judgment for Defendants because without Fischel's testimony, Plaintiffs could not prove damages or loss causation.  Plaintiffs appealed to the United States Court of Appeals for the Second Circuit, and on April 12, 2016, the Court of Appeals reversed.  The Court of Appeals held that the District Court abused its discretion in excluding Fischel's testimony and further held that the District Court's erred in granting summary judgment to Defendants concerning the statements made by Pfizer's co-promoter.  Defendants moved in the Court of Appeals for rehearing *en banc*.  While that motion was pending, the parties agreed on a settlement of the litigation providing for a cash payment by Pfizer of $486 million.  The parties then jointly moved, and the Court of Appeals agreed, to hold the rehearing petition in abeyance pending the District Court's consideration of the proposed settlement.  The District Court held a conference on September 13, 2016 to consider whether to grant preliminary approval to the settlement and authorize the transmission of notice of the settlement to class members. The settlement was preliminarily approved on September 16, 2016, and on December 21, 2016, final approval was obtained.  *In re Pfizer Inc. Securities Litigation,* SD-NY, No. 04-9866.

(3)    **DaimlerChrysler**

Florida State Board of Administration was appointed lead plaintiff and G&E co-lead counsel in the PSLRA class action on behalf of shareholders of the former Chrysler Corporation who exchanged their shares for stock in DaimlerChrysler in Chrysler's 1998 business combination with Daimler-Benz AG which was represented at the time as a "merger of equals."  Shortly before trial, the defendants agree to a $300 million cash settlement, among the largest securities class action settlements since the enactment of the PSLRA.  *In re DaimlerChrysler Securities Litigation,* D. Del., C.A. No. 00-0993.

(4)    **Oxford Health Plans**

Public Employees' Retirement Association of Colorado ("ColPERA") engaged G&E to represent it to seek the lead plaintiff designation in the numerous securities fraud actions that were consolidated into *In re Oxford Health Plans, Inc., Securities Litig.*, S.D.N.Y., MDL Docket No. 1222 (CLB).  The court ordered the appointment of ColPERA as a co-lead plaintiff and G&E as a co-lead counsel.  G&E and its co-leads filed the Consolidated Amended Complaint.  Memorandum opinions and orders were entered denying defendants' motions to dismiss (see 51 F.Supp. 2d 290 (May 28, 1999) (denying KPMG motion) and 187 F.R.D. 133 (June 8, 1999) (denying motion of Oxford and individual director

Grant & Eisenhofer

defendants)).  The case settled for $300 million, another settlement negotiated by G&E that is among the largest settlements since the enactment of the PSLRA.

**(5)    Dollar General**

The U.S. District Court for the Middle District of Tennessee ordered the appointment of Florida State Board of Administration and the Teachers' Retirement System of Louisiana as lead plaintiffs and G&E as co-lead counsel in a PSLRA and Rule 10b-5 case against the defendant company, its accountants, and individual insiders who allegedly issued false and misleading statements over an alleged 3-year Class Period and failed to disclose adverse facts about the company's financial results.  Settlements were approved involving a cash payment of $162 million from the company and the individual defendants, an additional $10.5 million from Deloitte & Touche, LLP (Dollar General's accountants), and beneficial governance reforms for Dollar General.  *In re Dollar General Securities Litigation*, M.D. Tenn., No. 3:01-0388, orders dated July 19, 2001 and September 29, 2003.

**(6)    Just For Feet**

G&E represented the State of Wisconsin Investment Board ("SWIB") in a federal securities class action against certain officers and directors of Just For Feet, Inc., and against Just For Feet's auditors, in the Northern District of Alabama.  That action arose out of the defendants' manipulation of the company's accounting practices to materially misstate the company's financial results.  Having been appointed co-lead plaintiff, SWIB, with G&E as its counsel, took primary responsibility for the case.  (*SWIB v. Ruttenberg, et al*., N.D. Ala., CV 99-BU-3097-S and 99-BU-3129-S, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)).  SWIB obtained a policy limits settlement with the individual defendants' D&O carrier and an additional $7.4 million from Just For Feet's auditor, for a recovery totaling approximately $32 million.

**(7)    Waste Management**

G&E filed a non-class federal securities action against Waste Management, Inc., its former and current directors, and the company's accountants in the Northern District of Florida, on behalf of Lens Investment Management, LLC and Ram Trust Services, Inc.  The complaint alleged that Waste Management had, over a five-year period, issued financial statements and other public statements that were materially false and misleading due to the defendants' fraudulent and improper accounting manipulations.  G&E also filed non-class actions in Illinois state court, asserting similar claims on behalf of the Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana.  After G&E successfully defeated the defendants' motions to dismiss FSBA's complaint in state court, FSBA's cause of action was transferred to the Northern District of Florida.  At the point where there were competing motions for summary judgment pending, G&E successfully negotiated a settlement pursuant to which each plaintiff received several times what it would have received in the class action.

**G** **E**

Grant & Eisenhofer

*Florida State Board of Administration, Ram Trust Services, Inc. and Lens Investment Management, LLC v. Waste Management, Inc., et al.*, N.D.Fla., No. 4:99CV66-WS, amended complaint filed June 21, 1999; and *Teachers' Retirement System of Louisiana v. Waste Management, Inc., et al.*, Circuit Ct., Cook Co. [Ill.], No. 98 L 06034, complaint filed May 18, 1999.

**(8)**    **Total Renal Care**

In June 1999, the Louisiana State Employees' Retirement System and Teachers' Retirement System of Louisiana were appointed as Lead Plaintiffs in a federal securities class action against Total Renal Care ("TRC") and certain of its officers and directors, in the U.S. District Court for the Central District of California. G&E served as Plaintiffs' Lead Counsel. Plaintiffs filed their Corrected Consolidated Amended Complaint against the defendants, alleging, *inter alia*, that the defendants manipulated TRC's financial statements so as to materially overstate TRC's revenues, income and assets and to artificially inflate TRC's stock price. G&E negotiated a settlement requiring TRC's payment of $25 million into a settlement fund for the class and the company's adoption of certain internal corporate governance policies and procedures designed to promote the future accountability of TRC's management to its stockholders. At the time of the settlement, this amount represented 33% of the value of the Company's shares. *In re Total Renal Care Securities Litigation*, C.D. Cal., Master File No. CV-99-01745 CBM.

**(9)**    **Safety-Kleen**

G&E was sole lead counsel for the plaintiffs in a federal securities class action and a series of related individual actions against former officers, directors, auditors and underwriters of Safety-Kleen Corporation, who are alleged to have made false and misleading statements in connection with the sale and issuance of Safety-Kleen bonds. *In re Safety-Kleen Corp. Bondholders Litig.*, D.S.C., No. 3:00-CV-1145-17, consolidated complaint filed January 23, 2001. In March of 2005, after a jury had been selected for trial, the auditor defendant settled with the class and individual claimants for $48 million. The trial then proceeded against the director and officer defendants. After seven weeks of trial, the director defendants settled for $36 million, and the court entered judgment as a matter of law in favor of the class and against the company's CEO and CFO, awarding damages of $192 million.

**(10)**    **Styling Technology Corporation**

G&E represented funds managed by Conseco Capital Management, Inc., Credit Suisse Asset Management, Pilgrim American Funds and Oppenheimer Funds, Inc. in a securities action brought in May 2001, asserting both federal (1933 Act) and state claims brought in the Superior Court of California. The suit alleged that certain former officers, as well as the independent auditors, of Styling Technology Corporation made false and misleading statements in connection with the sale and issuance of Styling Technology bonds. Styling Technology filed for bankruptcy

## Grant & Eisenhofer

protection under Chapter 11 in August 1999. In October 2000, discovery of accounting irregularities and improperly recognized revenue forced the Company to restate its financial statements for the years 1997 and 1998. Plaintiffs, owning $66.5 million of the total $100 million in bonds sold in the offering, settled the case for a recovery representing approximately 46% of the losses suffered by the client funds that they manage. *Franklin High Income Trust, et al. v. Richard R. Ross, et al.*, Cal. Super., San Mateo Co. [Calif.], Case No: 415057, complaint filed November 28, 2000.

**(11)    Tyco**

G&E served as co-lead counsel representing co-lead plaintiffs Teachers' Retirement System of Louisiana and Louisiana State Employees' Retirement System in a securities class action against Tyco International Ltd. and PricewaterhouseCoopers LLP. The complaint alleged that the defendants, including Tyco International, Dennis Kozlowski, and other former executives and directors of Tyco and PricewaterhouseCoopers, made false and misleading public statements and omitted material information about Tyco's finances in violation of Sections 10(b), 14, 20A and 20(a) of the Securities Exchange Act of 1934. Tyco agreed to fund $2.975 billion in cash to settle these claims, representing the single largest payment from any corporate defendant in the history of securities class action litigation. PricewaterhouseCoopers also agreed to pay $225 million to settle these claims, resulting in a total settlement fund in excess of $3.2 billion.

**(12)    Global Crossing**

Ohio Public Employees' Retirement System and the Ohio Teachers' Retirement System were appointed lead plaintiff and G&E was appointed sole lead counsel in a securities class action against Global Crossing, Ltd. and Asia Global Crossing, Ltd. *In re Global Crossing, Ltd. Securities & "ERISA" Litig.*, MDL Docket No. 1472. In November 2004, the Court approved a partial settlement with the Company's former officers and directors, and former outside counsel, valued at approximately $245 million. In July 2005, the Court approved a $75 million settlement with the Citigroup-related defendants (Salomon Smith Barney and Jack Grubman). In October 2005, the Court approved a settlement with Arthur Andersen LLP and all Andersen-related defendants for $25 million. In October 2006, the Court approved a $99 million settlement with various financial institutions. In total, G&E recovered $448 million for investors in Global Crossing.

**(13)    Telxon Corporation**

G&E filed a federal securities and common law action against Telxon Corporation, its former officers and directors and its accountants in the Northern District of Ohio on behalf of Wyser-Pratte Management Co., Inc., an investment management firm. Following mediation, G&E negotiated a settlement of all


Grant & Eisenhofer

claims. *Wyser-Pratte Management Co., Inc. v. Telxon Corp., et al.,* N.D. Ohio, Case No. 5:02CV1105.

**(14)  Hayes Lemmerz**

G&E served as lead counsel to plaintiffs and class members who purchased or acquired over $1 billion in bonds issued by Hayes Lemmerz International, Inc. G&E negotiated a settlement worth $51 million. *Pacholder High Yield Fund, Inc. et al. v. Ranko Cucoz et al.*, E.D. Mich., C.A. No. 02-71778.

**(15)  Asia Pulp and Paper**

On behalf of bondholders of various subsidiaries of Indonesian paper-making giant Asia Pulp and Paper ("APP"), G&E filed an action alleging that the bondholders were defrauded by APP's financial statements which were inflated by nearly $1 billion in fictitious sales. Defendants' motions to dismiss were denied. *Franklin High Income Trust, et al. v. APP Global Ltd., et al.,* N.Y. Sup. Ct., Trial Div., Index No. 02-602567. The matter was resolved through a confidential settlement.

**(16)  Alstom**

Louisiana State Employees' Retirement System was appointed as co-lead plaintiff and G&E was appointed co-lead counsel in a class action against Alstom SA, a French corporation engaged in power generation, transmission and distribution in France. The suit alleges that Alstom and other defendants made false and misleading statements concerning the growth and financial performance of its transportation subsidiary. G&E achieved a settlement in the amount of $6.95 million. *In re Alstom SA Sec. Litig.*, S.D.N.Y. 03-cv-6595.

**(17)  Parmalat**

G&E was co-lead counsel in this securities class action arising out of a multi-billion dollar fraud at Parmalat, which the SEC described as "one of the largest and most brazen corporate financial frauds in history." Settlements exceeding $110 million were reached. *In re Parmalat Sec. Litig.*, S.D.N.Y. 04-MDL-1653.

**(18)  Marsh & McLennan**

G&E was co-lead counsel for the class of former Marsh & McLennan shareholders in this federal securities class action alleging that the company, its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving, among other things, bid-rigging and secret agreements to steer business to certain insurance companies in exchange for "kick-back" commissions. After five years of litigation, G&E achieved a $400 million settlement on behalf of the class. *In re Marsh & McLennan Companies, Inc. Sec. Litig.,* S.D.N.Y. 04-cv-8144.


Grant & Eisenhofer

**(19)   Hollinger International**

G&E was co-lead counsel in this securities class action arising out of a company scandal at Hollinger International, Inc. which involves payment of millions of dollars to certain executives, including the company's former CEO, Lord Conrad Black, relating to sales of company assets.  G&E negotiated a settlement with Hollinger in the amount of $37.5 million.  *In re Hollinger International Inc. Securities Litigation*, N.D. Ill. 04-C-0834**.**

**(20)   General Motors**

G&E served as co-lead counsel in a securities class action against GM, arising from alleged false statements in GM's financial reports.  After about two and a half years of litigation, a settlement was reached with GM for $277 million, with GM's auditor, Deloitte & Touche contributing an additional $26 million.  The combined $303 million settlement ranked among the largest shareholder recoveries of 2008.  *In re General Motors Corp. Sec. Litig.*, E.D. Mich., MDL No. 1749.

**(21)   Delphi**

Delphi is an automotive company that was spun off of General Motors.  The company failed as a stand-alone entity, but concealed its failure from investors.  G&E's client, one of the largest pension funds in the world, served as a lead plaintiff, and G&E served as co-lead counsel in this securities class action, which produced settlements totaling $325 million from Delphi, its auditor and its director and officers liability insurer.  *In re Delphi Corporation Securities Derivative & ERISA Litigation*, E.D. Mich., MDL No. 1725.

**(22)   Refco**

A mere two months after going public, Refco admitted that its financials were unreliable because the company had concealed that hundreds of millions of dollars of uncollectible receivables were owed to the company by an off-balance sheet entity owned by the company's CEO.  G&E served as a co-lead counsel and G&E's client, PIMCO, was a co-lead plaintiff.  The case resulted in recoveries totaling $422 million for investors in Refco's stock and bonds (including $140 million from the company's private equity sponsor, over $50 million from the underwriters, and $25 million from the auditor).  *In re Refco, Inc. Securities Litigation*, S.D.N.Y., No. 05 Civ. 8626.

**(23)   Sprint**

G&E represented lead plaintiff institutional investor Carlson Capital, L.P. in this class action suit against Sprint Corporation and its former CEO and directors for breach of fiduciary duty in the consolidation of two separate tracking stocks.  In December 2007, a $57.5 million settlement was approved.  *In re Sprint Corporation Shareholder Litigation*, D. Kan., No. 04 CV 01714.

Exhibit 3
Page 247 of 264           Exhibit 5
-58-                                                    Page 58 of 65

**(B)     In Derivative and Other Corporate Litigation:**

**(1)     Digex**

This case resulted in a settlement of over $400 million, one of the largest reported settlements in the history of Delaware corporate litigation.  G&E represented the lead plaintiff, TCW Technology Limited Partnership, in alleging that Digex, Inc.'s directors and majority stockholder (Intermedia, Inc.) breached their fiduciary duties in connection with WorldCom's proposed $6 billion acquisition of Intermedia.  Among other issues, WorldCom was charged with attempting to usurp a corporate opportunity that belonged to Digex and improperly waiving on Digex's behalf the protections of Delaware's business combination statute. Following G&E's argument on a motion to preliminarily enjoin the merger, the Court issued an opinion declining to enjoin the transaction but acknowledging plaintiffs' likelihood of success on the merits. *In re Digex, Inc. Shareholders Litigation*, C.A. No. 18336, 2000 WL 1847679 (Del. Ch. Dec. 13, 2000).  The case settled soon thereafter.

**(2)     UnitedHealth Group**

G&E represented the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative and class action suit in which G&E successfully challenged $1.2 billion in back-dated options granted to William McGuire, then-CEO of health care provider UnitedHealth Group.  This was among the first – and most egregious – examples of options backdating.  G&E's case produced a settlement of $922 million, the largest settlement in the history of derivative litigation in any jurisdiction.  *In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, C.A. No. 06-cv-1216 (D. Minn.)

**(3)     AIG**

In what was, at the time, the largest settlement of derivative shareholder litigation in the history of the Delaware Chancery Court, G&E reached a $115 million

settlement in a suit against former executives of AIG for breach of fiduciary duty.  The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets. *Teachers' Retirement System of Louisiana v. Greenberg, et al.,* C. A. No. 20106-VCS (Del. Ch.).

**(4)     Genentech**

When Swiss healthcare company Roche offered to buy out biotech leader Genentech Inc. for $43.7 billion, or $89 per share, G&E filed a derivative claim on behalf of institutional investors opposed to the buyout. With the pressure of the pending litigation, G&E was able to reach a settlement that provided for Roche to pay $95 per share, representing an increase of approximately $3 billion for minority shareholders. *In re Genentech, Inc. Shareholders Litig.*, C.A. No. 3911-VCS (Del. Ch.).

### (5) Willamette

In January 2002, at the request of Wyser-Pratte Management Co., Inc. and others, G&E filed a shareholder derivative action in Oregon state court claiming that the board of Willamette Industries, Inc. breached its fiduciary duties by attempting to cause Willamette to acquire the asbestos-ridden building products division of Georgia-Pacific Company as part of a scorched-earth effort to defeat a hostile takeover of Willamette by its chief competitor, Weyerhaeuser Company. G&E obtained an expedited hearing on its motion for a preliminary injunction and obtained an agreement from Willamette at the hearing not to consummate any deal with Georgia-Pacific without providing prior notice to G&E. Almost immediately thereafter, and after years of fighting against Weyerhaeuser's take-over attempts, the Willamette board relented and agreed to sell the company to Weyerhaeuser. *Wyser-Pratte Management Co., Inc. & Franklin Mutual Advisors v. Swindells, et al.*, No. 0201-0085 (Ore. Cir. Ct.).

### (6) Medco Research

In January 2000, G&E filed a shareholder derivative action on behalf of State of Wisconsin Investment Board against the directors of Medco Research, Inc. in Delaware Chancery Court. The suit alleged breach of fiduciary duty in connection with the directors' approval of a proposed merger between Medco and King Pharmaceuticals, Inc. G&E was successful in obtaining a preliminary injunction requiring Medco to make supplemental and corrective disclosures. Because of G&E's efforts, the consideration to Medco's stockholders increased by $4.08 per share, or $48,061,755 on a class-wide basis. *State of Wisconsin Investment Board v. Bartlett, et al.,* C.A. No. 17727, 2000 WL 193115 (Del. Ch. Feb. 9, 2000).

### (7) Occidental Petroleum

G&E represented Teachers' Retirement System of Louisiana and served as co-counsel in a shareholders' derivative suit against the directors of Occidental Petroleum Corporation, challenging as corporate waste the company's excessive compensation arrangements with its top executives. Filed in California state court, the case settled when the company agreed to adopt California Public Employees' Retirement System's model principles of corporate governance and undertook to reconstitute its key committees so as to meet the tests of independence under those principles. *Teachers' Retirement System of Louisiana v. Irani et al.,* No. BC1850009 (Cal. Super.).

**G·E**
Grant & Eisenhofer

**(8)     Staples, Inc.**

On behalf of Teachers' Retirement System of Louisiana, G&E challenged Staples, Inc.'s proposed "recapitalization" plan to unwind a tracking stock, Staples.com, which it created in 1998.  G&E obtained a preliminary injunction against the deal and the deal terms were ultimately altered resulting in a $15-$20 million gain for shareholders. Additional disclosures were also required so that shareholders voted on the challenged transaction based on a new proxy statement with substantial additional disclosures. *In re Staples, Inc. Shareholders Litigation*, C.A. No. 18784, 2001 WL 640377 (Del. Ch. June 5, 2001).

**(9)     SFX/Clear Channel Merger**

G&E filed a class action on behalf of stockholders of SFX, challenging the merger between SFX and Clear Channel.  While the SFX charter required that in any acquisition of SFX  all classes of common stockholders be treated equally, the merger, as planned, provided for approximately $68 million more in consideration to the two Class B stockholders (who happened to be the senior executives of SFX) than to the public stockholders.  The merger was structured so that stockholders who voted for the merger also had to vote to amend the Charter to remove the non-discrimination provisions as a condition to the merger.  G&E negotiated a settlement whereby $34.5 million more was paid to the public stockholders upon closing of the merger.  This was more than half the damages alleged in the Complaint. *Franklin Advisers, Inc., et al. v. Sillerman, et al.*, C.A. No. 17878 (Del. Ch.).

**(10)    Lone Star Steakhouse & Saloon**

G&E filed a derivative lawsuit on behalf of California Public Employees' Retirement System ("CALPERS") against Lone Star's former CEO, Jamie Coulter, and six other Lone Star directors.  The suit alleged that the defendants violated their fiduciary duties in connection with their approval of the company's acquisition of CEI, one of Lone Star's service providers, from Coulter, as well as their approvals of certain employment and compensation arrangements and option repricing programs.  Before filing the suit, G&E had assisted in CALPERS in filing a demand for books and records pursuant to Section 220 of the Delaware General Corporation Law.  The company's response to that demand revealed the absence of any documentation that the board ever scrutinized transactions between Lone Star and CEI, that the board negotiated the purchase price for CEI, or that the board analyzed or discussed the repricing programs.  In August 2005, the Court approved a settlement negotiated by G&E whereby Lone Star agreed to a repricing of options granted to certain of its officers and directors, payments from certain of the officers and directors related to option grants, and a $3 million payment from Lone Star's director and officer insurance policy.  Lone Star further acknowledged that the lawsuit was one of the significant factors considered in its adoption of certain corporate governance reforms. *California Public Employees' Retirement System v. Coulter, et al.*, C.A. No. 19191 (Del. Ch.).

**G**&**E**

Grant & Eisenhofer

**(11)    Siebel**

The issue of excessive executive compensation has been of significant concern for investors, yet their concerns have remained largely unaddressed due to the wide discretion afforded corporate boards in establishing management's compensation. G&E effected a sea change in the compensation policies of Siebel Systems, a leading Silicon Valley-based software developer long considered to be an egregious example of executive compensation run amok, and caused Thomas Siebel, the company's founder and CEO, to cancel 26 million options with a potential value of $54 million.  Since the company's founding in 1996, Siebel Systems had paid Mr. Siebel nearly $1 billion in compensation, largely in the form of lavish stock options that violated the shareholder-approved stock option plan.  In addition, the company had paid its directors millions of dollars for their service on the board, also in the form of stock options, at levels exponentially higher than that paid to directors on the boards of similar companies.  G&E, on behalf of Teachers' Retirement System of Louisiana, commenced a derivative action challenging the company's compensation practices in September of 2002 even though a prior, similar lawsuit had been dismissed.  Following a hard-fought and acrimonious litigation, G&E successfully negotiated a settlement that, in addition to the options cancellation, included numerous corporate governance reforms.  The company agreed to, *inter alia*, restructure its compensation committee, disclose more information regarding its compensation policies and decisions, cause its outside auditor to audit its option plans as part of the company's annual audit, and limit the compensation that can be paid to directors.  The Siebel Systems settlement generated considerable favorable press in the industry, as investors and compensation experts anticipated that the reforms adopted by Siebel Systems could affect how other companies deal with compensation issues.  *Teachers' Retirement System of Louisiana v. Thomas M. Siebel, et al.,* C. A. No. 425796 (Cal. Super.).

**(12)    HealthSouth Corporation**

G&E filed a derivative and class action lawsuit on behalf of Teachers' Retirement System of Louisiana against HealthSouth Corporation, its auditors, certain individual defendants, and certain third parties seeking, *inter alia*, an order forcing the HealthSouth board of directors to hold an annual shareholder meeting for the purpose of electing directors, as no such meeting had been held for over thirteen months.  Following a trial, G&E negotiated a settlement of part of its claims, pursuant to which five of the defendant directors who were alleged to have engaged in improper self-dealing with the company agreed to resign and be replaced by directors selected by a committee comprised in part by institutional investors of HealthSouth.  *Teachers' Retirement System of Louisiana v. Scrushy*, Del. Ch., C.A. No. 20529 (March 2, 2004).

**(13)    NYSE/Archipelago**

G&E served as co-lead counsel in a class action in New York state court, brought on behalf of a class of seat holders of the New York Stock Exchange ("NYSE") challenging the proposed merger between the NYSE and Archipelago Holdings, LLC. The complaint alleged that the terms of the proposed merger were unfair to the NYSE seat holders, and that by approving the proposed merger, the NYSE board of directors had violated their fiduciary duties of care, loyalty and candor, because the transaction was the result of a process that was tainted by conflicts of interest and the directors failed adequately to inform themselves of the relevant facts. The court denied the defendants' motion to dismiss, and after expedited discovery, including over 30 depositions in a five week period, a preliminary injunction evidentiary hearing was held, in which plaintiffs sought to postpone the vote on the merger until a new, current fairness opinion was obtained from an independent financial advisor. On the second day of the hearing, the defendants agreed to the relief being sought, namely that they would obtain a new, current fairness opinion from an independent financial advisor. *In re New York Stock Exchange/Archipelago Merger Litig*., No. 601646/05 (Sup. Ct. N.Y. Co.)

**(14)    Caremark / CVS**

G&E represented institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as that board's decision to reject a competing proposal from a different suitor. Ultimately, through the litigation, G&E was able to force Caremark's board not only to provide substantial additional disclosures to the public shareholders, but also to renegotiate the terms of the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and to ensure Caremark's shareholders had statutory appraisal rights in the deal. *Louisiana Municipal Police Employees' Retirement System, et al. v. Crawford, et al*., C.A. No. 2635-N (Del. Ch.).

**(15)    AIG**

G&E achieved a settlement of derivative claims against former American International Group, Inc. ("AIG") CEO Hank Greenberg and other officers of the insurer in connection with a well-documented bid-rigging scheme used to inflate the company's income. The scheme ─ which included an array of wrongful activities, such as sham insurance transactions intended to deceive shareholders and illegal contingent commissions which amounted to kickbacks to obtain business ─ caused billions of dollars' worth of damage to AIG, and ultimately led to the restatement of years of financial statements.

In approving a settlement that returned $90 million to AIG, the Court said the settlement was "an incentive for real litigation" with "a lot of high-quality lawyering." *In re American International Group, Inc., Consolidated Derivative Litigation.* Delaware Chancery Court, 769-VCS

**(16)    Del Monte Foods**

Exhibit 3
Page 252 of 264    Exhibit 5
Page 63 of 65

Grant & Eisenhofer

G&E served as lead counsel in shareholder litigation in which the Firm obtained an $89.4 million settlement against Del Monte Foods Co. and Barclays Capital. On February 14, 2011, the Delaware Chancery Court issued a ground-breaking order enjoining not only the shareholder vote on the merger, but the merger agreement's termination fee and other mechanisms designed to deter competing bids. As a result of plaintiff's efforts, the Board was forced to conduct a further shopping process for the company. Moreover, the opinion issued in connection with the injunction has resulted in a complete change on Wall Street regarding investment banker conflicts of interests and company retention of investment bankers in such circumstances. *In re Del Monte Shareholder Litigation*, C.A. No. 6027-VCL (Del. Ch).

**(17)    Facebook**

G&E served as co-lead counsel for plaintiffs, alleging that Facebook Chairman and CEO Mark Zuckerberg, as well as other officers and directors, breached their fiduciary duties to the class by approving the reclassification of Facebook stock. The reclassification, if implemented, would have allowed Mark Zuckerberg to maintain majority voting control while reducing his economic stake in the Company by over 65%. Just days before the trial was set to begin with Mark Zuckerberg's testimony, the Facebook Board of Directors met and decided to abandon the reclassification. Because G&E was seeking to enjoin the reclassification, the Board's abandonment of it was a complete win for the plaintiffs and the class. *In re Facebook Class C Reclassification Litigation,* C.A. No. 12286 (Del Ch).

**(C)    In Securities Class Action Opt-Out Litigation**

**(1)    AOL Time Warner, Inc.**

G&E filed an opt-out action against AOL Time Warner, its officers and directors, auditors, investment bankers and business partners. The case challenged certain transactions entered by the company to improperly boost AOL Time Warner's financials. G&E was able to recover for its clients more than 6 times the amount that they would have received in the class case.

**(2)    BankAmerica Corp.**

G&E filed an individual action seeking to recover damages caused by the defendants' failure to disclose material information in connection with the September 30, 1998 merger of NationsBank Corporation and BankAmerica Corporation. G&E was preparing the case for trial when it achieved a settlement whereby the firm's client received more than 5 times what it would have received in the related class action. Those proceeds were also received approximately one year earlier than the proceeds from the class action settlement.

**(3)    Bristol-Myers Squibb**

G&E filed an opt-out action against Bristol-Myers Squibb, certain of its officers and directors, its auditor, and Imclone, Inc., alleging that Bristol-Myers had falsified billions of dollars of revenue as part of a scheme of earnings management.  While the federal class action was dismissed and eventually settled for only 3 cents on the dollar, G&E's action resulted in a total settlement representing approximately 10 times what the firm's clients likely would have received from the class action.

**(4)      Petrobras**

G&E filed securities fraud actions in Manhattan federal court on behalf of several U.S. and European public and private institutional investors against Petrobras, the Brazilian oil conglomerate, arising out of a decade-long bribery and kickback scheme that has been called the largest corruption scandal in Brazil's history.  The action alleged that Petrobras concealed bribes to senior officers and government officials and improperly capitalized these bribes as assets on its books in order to inflate the value of the company's refineries.  Many of these officers and officials have pled guilty before the Brazilian courts to charges stemming from their participation in the alleged scheme. G&E settled the action before the class action was resolved, and our clients received 2-3 times more than they would have had they stayed in the class, and received their share of the settlement at least two years before a class distribution.

**(5)      Qwest Communications**

G&E filed an individual action against Qwest, its accountant (Arthur Andersen LLP), Solomon Smith Barney, and current and former officers and directors of those companies. The case alleged that Qwest used "swap deals" to book fake revenue and defraud investors.  G&E was able to recover for its clients more than 10 times what they would have recovered had they remained members of the class.

**(6)      WorldCom**

G&E filed an opt-out action against former senior officers and directors of WorldCom, including former CEO Bernard Ebbers, and Arthur Andersen LLP (WorldCom's former auditor), among others.  The case stemmed from the widely-publicized WorldCom securities fraud scandal that involved false and misleading statements made by the defendants concerning WorldCom's financials, prospects and business operations.  G&E recovered for its clients more than 6 times what they would have received from the class action.

# EXHIBIT 6

Exhibit 3
Page 255 of 264



# Dilworth Paxson LLP

# Plaintiffs' Rights Practice Group (2024)

Contact:    Catherine Pratsinakis
Dilworth Paxson LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Direct: 215-575-7013
cpratsinakis@dilworthlaw.com

Exhibit 3
Page 256 of 264        Exhibit 6
Page 1 of 9

## ABOUT DILWORTH

Formed over 90 years ago, Dilworth is a multi-disciplinary law firm with over 120 attorneys headquartered in Philadelphia with satellite offices in Harrisburg, Pennsylvania; Cherry Hill, Freehold and Princeton, New Jersey; New York, New York; and Wilmington, Delaware. The Firm has a broad, diverse regional and national law practice representing a wide variety of clients including government entities, quasi-governmental entities, public pensions, institutional clients, Fortune 500 companies, start-ups, closely-held businesses, and individuals.

Dilworth prides itself on its rich history filled with landmark work that has sparked growth and progress in American society and business. For example, the plaintiff's briefing in the landmark *Brown v. Board of Education,* was largely Dilworth work product. Dilworth partner Harold Kohn was the pioneer of the modern-day class action, prosecuting the earliest anti-competition class actions. Presently Dilworth's Plaintiffs' Rights Practice Group (PRPG) has a team of experienced litigators with deep experience in complex commercial, class and representative litigation from building successful litigation strategies to obtaining class certification, securing discovery, negotiating settlements, conducting trials, and handling appeals. The PRPG has experience in: (1) unfair and deceptive business practices and antitrust violations; (2) breaches of fiduciary duty; (3) consumer fraud; (4) data breach; (5) environmental law; (6) ERISA; Qui Tam/whistleblower actions; (7) securities fraud; (8) shareholder disputes; and (9) technology and privacy suits.

Exhibit 3
Page 257 of 264                    Exhibit 6
                                   Page 2 of 9

## DILWORTH PLAINTIFFS' RIGHTS PRACTICE GROUP



**Catherine Pratsinakis**
Partner, Co-chair of Plaintiffs' Rights Group and
DEI Committee Member
Dilworth Paxson
1650 Market Street | Suite 1200
Philadelphia, PA 19103-7391
Tel: 215-575-7013
cpratsinakis@dilworthlaw.com

Catherine Pratsinakis is Co-chair of the Plaintiffs' Rights Practice Group. She has been litigating securities, corporate, antitrust, and consumer class and representative actions for over 23 years in varied industries. Her matters are nationwide in scope and significance. She has successfully litigated dozens of complex securities and investors actions and has recovered hundreds of millions of dollars for institutional and individual investors. Catherine has been a member of the Pennsylvania and New Jersey bars since 2001 and a member of the Delaware bar since 2004.

In addition to litigating class action lawsuits, Ms. Pratsinakis worked as a Director at Epiq Systems, Inc., where she handled the class settlement and claims administration needs of her firm clients, overseeing and helping develop settlement notice programs, drafting and reviewing class notices, developing and effectuating claims processes, troubleshooting special issues and issues related to large administrations, working with the SEC on improvements to the Fair Fund distribution process, responding to requests for proposals, handling contracts and pricing of administrations and notice programs, working with notice experts Lauren Schultz and Cameron Azari.

Ms. Pratsinakis received her B.S. from the University of Maryland, College Park, her J.D., with honors, from Rutgers University School of Law and her MBA from Rutgers University School of Business, with honors.

### Representative Experience

- *Verthelyi v. PNMAC Capital Management, LLC and PennyMac Mortgage Investment Trust*, 2:2024-cv-05028 (C.D. Cal.): Co-counsel in putative class action involving violations of the LIBOR Act.

- *CAPP, Inc. et al. v. Discover Financial Services et al.,* Case No. 1:23-cv-4676 (N.D. Ill.): Co-lead of nationwide settlement class of merchants alleging claims of RICO and statutory fraud violations against Discover; preliminarily approved settlement of $1.093 billion.

- *DeLuca, et al. v. GPB Auto. Portfolio, LP*, et al., No. 19-cv-10498-LAK (SDNY): Represented investors in a putative class action against GPB Capital Holdings, LLC and its affiliates in an action for fraud and breach of contract resulting from a $1.8 billion Ponzi scheme following a books and records investigation on behalf of defraud investors.

3

Exhibit 3
Page 258 of 264        Exhibit 6
Page 3 of 9

- *Dr. Travis Martin v. Harbor Diversified, Inc.*, No. 2018-0762-SG (Del. Ch.): successfully forced a dark company to resume annual stockholder meetings, removed two insiders from the Board, and used the tools at hand to provide basic financial disclosures to shareholders and launch a direct registration campaign forcing resumption of SEC reporting; this led to a liquid, efficient market with a market capitalization of nearly $50 million.

- *W2007 Grace Acquisition I, Inc., Preferred Stockholder Litig.*, No. 2:13-cv-2777 (W.D. Tenn.): representing preferred stockholders in a breach of fiduciary duty action against a real estate investment trust that was taken private and went "dark" on its stockholders for over five years; settlement valued at over $76 million for W2007 Grace preferred stockholders; a near 100% take rate for this settlement following aggressive class member outreach campaign.

- *Roth v. The Phoenix Companies*, No. 650634/2016 (N.Y. Sup. Ct.): represented bondholders against Phoenix Companies, a publicly-traded insurer that had entered into a going-private transaction and sought to amend the bond indenture to limit financial reporting obligations to bondholders. The settlement secured ongoing financial reporting akin to that of a public company for bondholders as well as third parties, such as prospective buyers, brokers, market makers and analysts. This preserved the liquidity of the bonds and enhanced the bonds' value by millions of dollars. The Court stated that the settlement was "outstanding" and provided "expeditious beneficial relief for the class that affords them material remedial disclosures…. Class counsel performed substantial work and obtained an extremely favorable result for the class."

- *TRSL v. Greenberg*, et al., No. 20106 (Del. Ch.): on the trial and litigation team that represent institutional stockholder in a derivative suit against the officers and directors of AIG for certain self-dealing transactions involving related party entities CV Starr, successfully challenged findings of a special litigation committee and securing a $115 million settlement on the eve of trial.

- *In re American International Group, Inc. Consolidated Derivative Litig.*, No. 769 (Del. Ch.): litigation team that represented an institutional investor in a derivative suit challenging officer and board conduct in connection with various accounting schemes, and recovering $90 million for AIG.

- *Delaware County Retirement Fund v. Portnoy*, No. 1:13-cv-10405 (D. Mass.): represented shareholders in an action to invalidate arbitration bylaw.

- *In re Parmalat Sec. Litig.*, MDL 04-1653 (S.D.N.Y.): prosecuted a cross-border securities fraud; succeeded in withdrawing the reference from U.S. Bankruptcy Court, which allowed stockholders to pursue debtor Parmalat in federal district court; and recovered over $100 million in connection with the most infamous securities frauds in Italy's history.

- *In re Hollinger Int'l Sec. Litig.*, No. 04-CV-0834 (N.D. Ill.): assisted in the recovery of $37.5 million settlement for defrauded investors.

- *In re Cigna-American Specialty Health Administrative Fee Litig.*, No. 2:16-cv-03967-NIQA (E.D. Pa.): represented insureds alleging that Cigna violated ERISA by

4

Exhibit 3
Page 259 of 264          Exhibit 6
Page 4 of 9

overcharging for services by the amount of administrative fees and hiding the fees from insureds. The matter settled for near full recovery of administrative fee overcharges.

- *In re 24 Hour Fitness Prepaid Memberships. Litig.*, No. 4:16-cv-01668-JS (N.D. Cal.): full-relief settlement providing over $8 million in refunds and an estimated minimum of $16 million in future rate reductions, for class of consumers who purchased prepaid gym memberships.

- *High Street Rehab., LLC, et al. v. American Specialty Health Inc., et al.*, No. 2:12-cv-07243 (E.D. Pa.): Co-lead counsel for medical professionals in class action alleging that insurers imposed utilization requirements on out-of-network providers to avoid paying benefits provided by employer-sponsored health benefits plans in violation of ERISA and terms of Cigna health plans; settled for $11.75 million.

- *Sturgeon, et al. v. PharMerica Corp.,* 15-cv-6829 (E.D. Pa.): Co-lead counsel in a nationwide *qui tam* action against PharMerica Corp. for alleged violations of the federal False Claims Act and corollary state statutes; settled in 2024.

- *Wakefern Food Corp. v. ASR Group International, Inc., et al.,* 1:24-cv-02840 (SDNY): Counsel for Wakefern, the largest food co-operative in the United States, in antitrust litigation alleging that the largest sugar producers were fixing U.S. sugar prices from at least 2019 forward.



**Jerry R. DeSiderato**
Partner, Executive Committee Member, and Co-chair Plaintiffs' Rights Practice Group Dilworth Paxson
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel: 215-575-7290
jdesiderato@dilworthlaw.com

Jerry DeSiderato represents clients in the prosecution and defense of claims in state and federal courts throughout the country. He is the Co-chair of the Plaintiffs' Rights Practice Group, which focuses on complex, high-profile litigation on behalf of corporate and governmental entities, and individuals, in the prosecution of claims seeking damages and injunctive relief derived from corporate malfeasance.

Mr. DeSiderato represents cities and counties in their proprietary capacities, as well as District Attorneys (often in collaboration with Attorneys General) in civil public law enforcement actions. Mr. DeSiderato also routinely litigates shareholder disputes, corporate fraud, and other business torts, including deceptive practices under Pennsylvania's Unfair Trade Practices Consumer Protection Law and New Jersey's Consumer Fraud Act.

Mr. DeSiderato received his J.D. from University of Pittsburgh School of law and his B.S., with honors, from the Syracuse University, Maxwell School of Citizenship & Public Affairs.

## Representative Experience

- Following a 5-day jury trial, successfully obtained a directed verdict on behalf of plaintiffs in a case alleging fraud, breach of contract, negligent misrepresentation, and violations of the Unfair Trade Practices Consumer Protection Law.

- Served as co-lead class counsel in a consumer class action against the Progressive Insurance entities derived from the unlawful issuance of health-first personal injury protection (PIP) policies to individuals covered by Medicare and Medicaid. The lawsuit resulted in a settlement of roughly $2.5 million, together with injunctive relief requiring changes to the business practices of defendants.

- Counsel for multiple class representatives in consumer antitrust litigation against 1-800 Contacts and other market participants, which litigation resulted in a $40 million class settlement and changes to the business practices of defendants

- Representation of the City of Philadelphia, Philadelphia District Attorney, and Allegheny County District Attorney in litigation against the manufacturers, distributors and dispensers of opioids.

- Successful representation of the City of Philadelphia in litigation defending the acceptance and use of private, non-partisan grant money awarded by The Center for Tech and Civic Life for the administration of the 2020 Presidential election. This representation culminated in the United States Supreme Court denying plaintiffs' Petition for Writ of Certiorari, which sought the review of a judgment entered in favor of the City by the Middle District of Pennsylvania and upheld by the Third Circuit. Press: Pennsylvania Record, PENN LIVE

- Representation of the City of Philadelphia in litigation commenced against JUUL seeking injunctive relief and abatement remedies to combat the e-cigarette epidemic among youth in Philadelphia. Media Alert: City Files Suit Against JUUL Labs, Inc.

- Lead counsel for multiple counties, local governments and District Attorneys in litigation against the manufacturers of Aqueous Film Forming Foam containing PFAS chemicals.

Exhibit 3
Page 261 of 264          Exhibit 6
                        Page 6 of 9



**Ira Neil Richards**
Partner
Dilworth Paxson
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel: 215-575-7061
irichards@dilworthlaw.com

Ira Richards practices nationally representing governments, funds, and private clients in high stakes litigation. He has decades of experience litigating complex, multiparty actions for businesses and government agencies on both sides of the "v". His class action experience spans a variety of substantive areas, including antitrust, securities, and consumer matters. He represents clients in matters involving obligations under leases for gas in the Marcellus Shale region, corporate governance disputes, and partnership and shareholder disputes. In addition, Mr. Richards represents government agencies in matters under state and federal law. As an appellate advocate, Mr. Richards has argued cutting-edge issues in federal and state appellate courts. Mr. Richards has represented Philadelphia and its elected officials and worked with the Law Department in a broad range of matters, including as counsel to Philadelphia in securities litigation. Mr. Richards is also actively involved in the community, having served on a variety of boards of organizations devoted to the needs of underserved communities. He presently serves as Chair of the Board of Pathways to Housing PA, which uses a "housing first" model to combat homelessness.

Mr. Richards received his J.D. from University of Pennsylvania School, *magna cum laude* and his B.S. in industrial and labor relations from Cornell University.

## Representative Experience

- *Koch v. Healthcare Services Group, Inc.*, No. 2:19-cv-01227 (E.D. Pa.): served as liaison counsel for the lead plaintiff in this class action that resulted in $16.8 million of recovery for a class of investors.

- *In re IndyMac Mortgage Backed Sec. Litig.*, Civ. No. 09-4583 (LAK) (S.D.N.Y.): served as counsel to a government pension fund in this investor class action that resulted in $364 million in recoveries.
- *In re KLA Tencor Sec. Litig.*, Civ. No. 06-04065-CRB (N.D. Cal.): served as co-lead counsel in this investor class action that resulted in a $65 million settlement for a class of investors.

- *Lucas v. Hill*, Civ. No. 20-12664-SAH (D.N.J.): served as co-lead counsel for plaintiffs in litigating claims relating to corporate governance and mergers and acquisitions involving TD Bank's acquisition of Commerce Bank.

- *In re Pillar Point Partners Patent and Antitrust Litig.*, MDL No. 1202 (D. Ariz.): served as co-lead counsel for plaintiffs in multidistrict litigation involving antitrust claims against

7

Exhibit 3
Page 262 of 264        Exhibit 6
                              Page 7 of 9

manufacturers of excimer lasers used in vision correction procedures. The litigation resulted in a $50 million recovery for a class of direct purchasers.

- *In re Pressure Sensitive Labelstock Antitrust Litig.*, MDL No. 1556 (M.D. Pa.): served as co-lead counsel in multidistrict litigation involving allegations of market allocation, output restriction, and price fixing; resulted in class settlements totaling over $46 million.

- *In re Airline Ticket Commission Antitrust Litig.*, MDL No. 1058 (D. Minn.): served as co-lead counsel and a member of the trial team in an antitrust action brought against major domestic airlines; resulted in an $86 million settlement for a class of travel agency owners.
- *In Meijer, Inc. v. 3M,* Civ. No. 04-5871 (E.D. Pa.): served as counsel in a class action brought on behalf of direct purchasers of private label tape, alleging monopolization of the tape market; resulted in a $28.8 million settlement for the class.

- *Boyle v. Progressive Specialty Ins. Co.,* Civ. No. 09-5515 (E.D. Pa.): served as lead counsel for plaintiffs in a class action brought on behalf of Pennsylvania insurance customers who did not receive a state-mandated 10% discount for passive anti-theft devices; resulted in a $2 million settlement for the class.



**Lisa J. Rodriguez**
Of Counsel
Dilworth Paxson
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel: 856-675-1926
ljrodriguez@dilworthlaw.com

Lisa Rodriguez is a member of the Plaintiffs' Rights and Antitrust practice groups. She has decades of experience litigating complex, multiparty class actions for business and government agencies on both the plaintiffs' and defendants' sides. Her class action experience spans a variety of substantive areas, including antitrust, securities, and consumer matters. She represents clients in matters involving intellectual property issues, corporate governance issues, and franchise. As an appellate advocate, Ms. Rodriguez frequently briefs and argues appeals in both state and federal appellate courts.

Ms. Rodriguez is actively involved in the Federal Bar of the United States District Court for the District of New Jersey. She is a Past President of the Association of the Federal Bar of the District of New Jersey, 2011-2012. She is currently a member the Lawyers Advisory Committee for the District of New Jersey, a committee that serves the District Court and among other things, serves as a liaison and a method of communication between the bench, bar, and the public.

Ms. Rodriguez was instrumental in developing the Brown Bag Lunch Series sponsored by the Association of the Federal Bar of New Jersey, in cooperation with the Judges of the District Court for the District of New Jersey. This is a lunch time continuing education program during which

a panel of District Court Judges and federal court practitioners address issues of federal practice and procedure.

Ms. Rodriguez is a frequent panel speaker. She has appeared for the Practicing Law Institute on Securities Regulation and the Philadelphia Bar Education Center on consumer and class action issues. She has spoken at a HarrisMartin Antitrust Pay-for-Delay Litigation Conference and the American Bar Association National Institute on Class Actions. She has also appeared for the New Jersey Institute for Continuing Education on a variety of topics, including best appellate practices and class actions practices and procedures.

She received her B.A. from George Washington University and her J.D., with honors, from George Washington University Law School.

## Representative Experience

- Served as co-lead counsel in class actions challenging the practices of some companies in the rent-to-own industry in New Jersey, obtaining summary judgment on liability and damages on behalf of three certified classes.

- Represented indirect purchasers of ductile pipe in antitrust litigation pending in the United States District Court for the District of New Jersey.

- Served as liaison counsel in a number of federal court actions in actions relating to the pricing of various name-brand and generic drugs.

- Court-appointed by United States District Court Judge to serve as a member of the steering committee in an MDL antitrust litigation in the United States District Court for the District of New Jersey,

- Appointed by the court to serve as class counsel on behalf of the inmates of the Camden County Correctional Facility in an unconstitutional overcrowding action. As a result of the parties' combined efforts in that case, the inmate processing through the entire Camden County criminal justice system was revamped, resulting in the substantial reduction of the inmate population. In connection with that case, Camden County became the first county in New Jersey to offer a pretrial services program to county and state inmates.

9

Exhibit 3
Page 264 of 264                Exhibit 6
Page 9 of 9