**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| KINNIE MA IRA, JEFFERY S. GRAMM IRA; STACY GREASOR IRA; VICTOR WADE IRA; KAZUE BELL; DEAN CROOKS, CORRI RENE EDEN; CATHERINE KOMINOS; KAREN LOCH; ROBERT A. STONE LIVING TRUST; SHIRLEY STONE LIVING TRUST; THE STANLEY S. AND MILLICENT R. BARASCH LIVING TRUST; AND LORETTA DEHAY, individually and on behalf of all others similarly situated, | CIVIL ACTION NO. 1:19-cv-01050-AA |
| Plaintiffs, | |
| v. | |
| ASCENDANT CAPITAL, LLC, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**
**OF SETTLEMENT WITH CERTAIN AUDITOR DEFENDANTS**

# TABLE OF CONTENTS

I.  BACKGROUND ........................................................................................................ 2

II.  PROCEDURAL HISTORY .................................................................................... 5

    A.  Texas Case (Kinnie Ma and Barasch) ......................................................... 5

    B.  New York Case (DeLuca) ............................................................................. 6

    C.  The Mediation .............................................................................................. 7

III.  SUMMARY OF SETTLEMENT TERMS ........................................................... 7

    A.  The Settlement Class .................................................................................... 7

    B.  Settlement Consideration .............................................................................. 8

    C.  The Class Notice Plan .................................................................................. 9

        1.  Direct Notice and Plan of Allocation ................................................. 9

        2.  Settlement Website and Press Release ............................................... 9

        3.  CAFA Notice ................................................................................... 11

    D.  Opportunity to Opt Out or Object and Appear at Hearing ........................ 11

    E.  Scope of Release ........................................................................................ 13

    F.  Payment of Notice and Administration Costs ............................................ 14

    G.  Class Representatives' Application for Incentive Award ........................... 15

    H.  Settlement Class Counsel's Application for Attorneys' Fees and Costs .................. 15

IV.  ARGUMENT AND AUTHORITIES .................................................................. 15

    A.  Standard for Preliminary Approval ............................................................ 15

    B.  The Proposed Settlement Satisfies the Requirements Under Rule 23(e)(1) ............. 17

        1.  The Settlement Is a Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel ................................................................. 17

        2.  The Settlement Is Sufficient Considering the Potential Risks and Delays ........ 18

        3.  The Litigation Is at a Point Suitable for Settlement........................... 19

        4.  The Litigation Should Be Preliminarily Approved Considering the Range of Possible Recovery ............................................................................. 20

        5.  The Opinion of Counsel Supports Approval .................................... 20

    C.  The Court Should Preliminarily Certify the Settlement Class ................... 21

        1.  Numerosity ....................................................................................... 22

        2.  Commonality ..................................................................................... 23

        3.  Plaintiffs' Claims Are Typical of the Class ...................................... 25

        4.   Adequacy of the Class Representatives ............................................. 26

        5.   Adequacy of Counsel ........................................................................ 27

        6.   Rule 23(b)(3): Predominance and Superiority ................................... 28

             a.   Predominance ........................................................................ 28

             b.   Superiority ............................................................................. 29

     D.   The Notice Plan Comports with Rule 23(e)(1) and Due Process ............................. 30

V.   PROPOSED SCHEDULE OF EVENTS .......................................................................... 33

VI.  CONCLUSION .................................................................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................28, 29, 30

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  281 F.R.D. 134 (S.D.N.Y. 2012) ..............................................................................23

*Berger v. Compaq Comput. Corp.*,
  257 F.3d 475 (5th Cir. 2001) ....................................................................................26

*Bridges v. Ridge Nat. Res., LLC*,
  No. 18-CV-00134-DC, 2020 WL 7495252 (W.D. Tex. Jan. 3, 2020) .......................15, 16, 32

*Brown v. Mid-America Apts., LP*,
  Case No. 1:17-cv-307, 2018 U.S. Dist. LEXIS 229823 (W.D. Tex. Oct. 22, 2018) ....................................................................................................................30, 32

*Cabot E. Broward 2 LLC v. Cabot*,
  No. 16-61218-CIV, 2018 WL 2006762 (S.D. Fla. Mar. 21, 2018) ...........................24

*Cooper v. Miller Johnson Steichen Kinnard, Inc.*,
  Case No. 02-1236, 2003 U.S. Dist. LEXIS 6946 (D. Minn. Apr. 21, 2003) ............28

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) .............................................................................14, 18

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ....................................................................................15

*In re Dell Inc.*,
  No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010) .....................18

*In re Del-Val Fin. Corp. Sec. Litig.*,
  162 F.R.D. 271 (S.D.N.Y. 1995) ...............................................................................10

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000) ...............................................................................28

*Dorsey v. Portfolio Equities Inc.*,
  540 F.3d 333 (5th Cir. 2008) ....................................................................................23

*In re Elec. Data Sys. Corp. Sec. Litig.*,
  226 F.R.D. 559 (E.D. Tex. 2005)...............................................................................25

iv

*In re Enron Corp.*,
    529 F. Supp. 2d 644 (S.D. Tex. 2006) ...................................................................25

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002) ..........................................................................23

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ...........................................................................25, 26

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) .................................................................................24

*Forbush v. J.C. Penney Co., Inc.*,
    994 F.2d 1101 (5th Cir. 1993) ...............................................................................23

*Fogarazzao v. Lehman Bros., Inc.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ...........................................................................23

*Frank v. Bear, Stearns & Co.*,
    11 S.W.3d 380 (Tex. App. 2001)......................................................................24, 28

*Garcia v. Gloor*,
    618 F.2d 264 (5th Cir. 1980) .................................................................................22

*Gonzales v. Lloyds TSB Bank*,
    No. CV 06-1433, 2007 WL 9711433 (C.D. Cal. May 2, 2007) ............................24

*James v. City of Dallas*,
    254 F.3d 551 (5th Cir. 2001) .................................................................................25

*Jones v. Singing River Health Servs. Found.*,
    865 F.3d 285, 2965 (5th Cir. 2017) .......................................................................16

*Lehocky v. Tidel Techs., Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004).........................................................................26

*Maher v. Zapata Corp.*,
    714 F.2d 436. 455 (5th Cir. 1983) .........................................................................18

*Manchacha v. Chater*,
    927 F. Supp. 962 (E.D. Tex. 1996).......................................................................19

*McNamara v. Bre-X Minerals Ltd.*,
    214 F.R.D. 424 (E.D. Tex. 2002).........................................................................32

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) .................................................................................16

*Newby v. Enron Corp.*,
   2006 U.S. Dist. LEXIS 39799 (S.D. Tex. June 14, 2006) ......................................................10

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) .........................................................................................20

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ...........................................................................................20

*Rensel v. Centra Tech, Inc.*,
   Case No. 17-24500, 2021 U.S. Dist. LEXIS 171801 (S.D. Fla. 2021)..................................28

*Robinson v. Texas Auto. Dealers Ass'n*,
   387 F.3d 416 (5th Cir. 2004) ...........................................................................................28

*Rougier v. Applied Optoelectronics, Inc.*,
   No. 4:17-CV-02399, 2019 WL 6111303 (S.D. Tex. Nov. 13, 2019), *report
   and recommendation adopted*, No. 4:17-CV-2399, 2019 WL 7020349 (S.D.
   Tex. Dec. 20, 2019)..........................................................................................................23

*Shipes v. Trinity Indus.*,
   987 F.2d 311 (5th Cir. 1993) ...........................................................................................25

*Sterling Tr. Co. v. Adderley*,
   168 S.W.3d 835 (Tex. 2005)..............................................................................................24

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) .....................................................................................25

*Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ...........................................................................................25

*Takiguchi v. MRI Int'l, Inc.*,
   No. 13-CV-1183, 2016 WL 1091090 (D. Nev. Mar. 21, 2016) ..........................................24

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007)...............................................................................18

*In re TWL Corp.*,
   712 F.3d 886 (5th Cir. 2013) ...........................................................................................22

*United States v. Tex. Educ. Agency*,
   679 F.2d 1104 (5th Cir. 1982) .........................................................................................20

*Vine v. PLS Fin. Servs., Inc.*,
   331 F.R.D. 325 (E.D. Tex. 2019)......................................................................................29

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................... 23

*In re Wilborn*,
    609 F.3d 748 (5th Cir. 2010) ............................................................................. 28

*Zeidman v. J. Ray McDermott Co., Inc.*,
    651 F.2d 1030 (5th Cir. 1981) ........................................................................... 22

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... 31

Fed. R. Civ. P. 23(a) .......................................................................................... 21, 22

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 22

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 26

Fed. R. Civ. P. 23(a)(4) .................................................................................... 26, 27

Fed. R. Civ. P. 23(b)(3) .................................................................................. *passim*

Fed. R. Civ. P. 23(b)(3)(A)-(D) ............................................................................ 29

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 30

Fed. R. Civ. P. 23(c)(3) ......................................................................................... 30

Fed. R. Civ. P. 23(e) .............................................................................................. 15

Fed. R. Civ. P. 23(e)(1) ........................................................................ 2, 15, 16, 30

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................... 15

Fed. R. Civ. P. 23(e)(1)(B)(i) ................................................................................ 33

Fed. R. Civ. P. 23(e)(1)(B)(ii) ............................................................................... 21

Fed. R. Civ. P. 23(e)(2) ....................................................................... 15, 16, 30, 33

Fed. R. Civ. P. 23(e)(3) ......................................................................................... 16

Fed. R. Civ. P. 23(g) .............................................................................................. 27

Fed. R. Civ. P. 23(g)(1) ......................................................................................... 26

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................. 26, 27

Fed. R. Civ. P. 23(g)(1)(B) ..........................................................................................................27

**Statutes**

28 U.S.C. § 1715 *et seq.*...........................................................................................................10

Plaintiffs in the consolidated putative class action pending before this Court in the case captioned *Kinnie Ma Individual Retirement Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP (W.D. Tex.) ("*Kinnie Ma* Plaintiffs") and Plaintiffs in a putative class action pending in the Southern District of New York in the case captioned, *DeLuca, et al. v. GPB Holdings, LP, et al.*, No. 1:19-CV-10498-LAK-JW (S.D.N.Y.) ("*DeLuca* Plaintiffs", and together with the *Kinnie Ma* Plaintiffs, the "Plaintiffs") have jointly reached a proposed class-wide Settlement with Auditor Defendants CohnReznick LLP; Crowe LLP; Margolin, Winer & Evens LLP; RSM US LLP; and WithumSmith+Brown, PC (collectively, the "Settling Defendants"), memorialized in Stipulation and Agreement of Settlement (the "Stipulation").[1] The Settlement reflects a settlement of Plaintiffs' claims against the Settling Defendants in the *Kinnie Ma* and *DeLuca* Actions. Settling Defendants do not oppose and support this Motion.

After nearly four years of vigorously litigating in two jurisdictions, each of the Settling Defendants has agreed to contribute to a total settlement payment of $46,000,000 (the "Settlement Fund"), which will be placed into a non-reversionary fund for the benefit of the Settlement Class. While Plaintiffs believe their auditor claims are meritorious, Settling Defendants raised various defenses and affirmative defenses that create the potential risk of no recovery. Given the risks to recovery, and the significant delays and costs associated with continued litigation through trial, this Settlement reflects an excellent outcome. For the reasons set forth herein, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement, order that notice

---

[1] A copy of the Stipulation, including the Exhibits thereto, is being filed concurrently herewith and attached as Ex. 1 of the Joint Declaration in Support of Plaintiffs' Motion for Preliminary Approval of the Settlement with Certain Defendants ("Jt. Decl."). Unless otherwise defined, capitalized terms appearing in this Motion shall be defined as provided for in the Stipulation.

be disseminated to the Settlement Class under Rule 23(e)(1) pursuant to the notice plan set forth in the Stipulation, and certify the Settlement Class for purposes of the Settlement only.[2]

## I.    **BACKGROUND**

In the Actions, Plaintiffs allege that GPB Capital Holdings, LLC ("GPB Capital"), working together with Austin, Texas-based Ascendant Capital, LLC and its affiliates ("Ascendant") and others, victimized approximately 15,000 unsuspecting investors with a $1.8 billion Ponzi-like investment scheme. The complaints in the Actions assert that many investors were retirees or lost their life savings.  The complaints further allege GPB Capital—the general partner, control person, manager, and majority owner of the GPB investment vehicles—orchestrated the offerings, and sold through various affiliates and broker-dealers units in its limited partnerships, including: (i) GPB Holdings, LP; (ii) GPB Holdings Qualified, LP; (iii) GPB Automotive Portfolio, LP; (iv) GPB Holdings II, LP; (v) GPB Waste Management, LP (also known as Armada Waste Management LP); (vi) GPB Cold Storage LP; (vii) GPB NYC Development, LP; and (viii) GPB Holdings III, LP (the "GPB Funds"). GPB Capital and the GPB Funds are collectively referred to herein as the "GPB Defendants."

The *Kinnie Ma* Plaintiffs (Kinnie Ma IRA, Jeffery S. Gramm IRA, Stacy Greasor IRA, Victor Wade IRA, Kazue Bell, Dean Crooks, Corri Rene Eden, Catherine Kominos, Karen Loch, Robert A. Stone Living Trust, Shirley Stone Living Trust, Stanley S. and Millicent R. Barasch Living Trust, and Loretta Dehay) and the *DeLuca* Plaintiffs (Barbara DeLuca, Drew R. Naylor, Peggy Rollo, Peter Beddia, Michael Oles, Robert Ricci, and James Staples, as Trustee of the 616

---

[2] A litigation stay previously entered in this case expired on its terms with the sentencing of Defendants Gentile and Schneider on May 9, 2025.  ECF 1181 at 18 ("The Court orders that this case remain stayed until Gentile and Schneider either are sentenced or acquitted or the charges against them are dismissed.").

Moved Trust) each invested in one or more GPB Funds during the proposed Settlement Class Period (January 1, 2013 through December 31, 2018, inclusive).

The GPB Funds are limited partnerships that invested in various industries, including automobile dealerships, waste management companies, real estate, and other industries. Among other things, the complaints in the Actions allege that GPB Defendants fraudulently induced investors to invest in the GPB Funds with promises of current or future distributions "from profits" of approximately 8% annualized, plus outsized total investment returns, beginning approximately 100 days after investing. The complaints charge that instead, in large part, distributions were paid from new investor cash in a Ponzi-like scheme, thereby hiding the Funds' poor performance and executives' embezzlement. They further allege that, rather than receiving distributions from profits, investors received other investors' monies. Ultimately, GPB Capital and the GPB Funds received regulatory scrutiny from State Attorneys General and the Securities and Exchange Commission ("SEC") and were unable to raise new monies to fund the alleged scheme, stopping its sales of units in the GPB Funds in late 2018. In February 2021, the U.S. Department of Justice ("DOJ") criminally indicted GPB Capital CEO David Gentile and Ascendant Capital's CEO Jeffry Schneider, the individuals behind the scheme for securities fraud and mail fraud. On August 1, 2024, a jury found both men guilty on all charges. Eight states have initiated regulatory actions against GPB Capital, Ascendant, and their principals, and, significantly, the SEC has initiated a regulatory action against them.

In February 2021, the Court overseeing the SEC action in the Eastern District of New York appointed a monitorship over GPB Capital and the GPB Funds, pursuant to which the Monitor, Joseph Gardemal III, was responsible for oversees overseeing all material transactions. *See SEC v. GPB Cap, Holdings, LLC*, No. 21-cv-00593-MKB-VMS, ECF 23 (E.D.N.Y. Feb. 12, 2021). On

December 7, 2023, Chief Judge Brodie ordered that the monitorship be converted into a receivership. *SEC v. GPB Cap. Holdings, LLC*, No. 21-cv-00593-MKB-VMS, ECF 187 (E.D.N.Y. Dec. 7, 2023). On December 4, 2024, the Second Circuit issued a Summary Order upholding the GPB receivership order and lifting the stay. *Securities and Exchange Commission v. GPB Capital Holdings, LLC*, No. 23-8035 ECF 59.1 (2d Cir. Dec 18, 2023). The district court recently approved the Receiver's distribution plan, which provides for: "(1) issuing an initial distribution of not more than $400,000,000 of Receivership Assets to investors in (a) APLP [Automotive Portfolio, LP]; (b) Holdings II; and (c) Cold Storage on a partnership-by-partnership basis in accordance with each Fund's Limited Partnership Agreement (the 'Initial Distribution'); (2) maintaining $719,000,000 in cash reserves (the 'Reserves'); (3) establishing a claims solicitation and resolution procedure for investors and claimholders against the Receivership (the 'Claims Resolution Procedures'); and (4) issuing subsequent distributions to the extent that funds are available for that purpose (the 'Subsequent Distributions')." *SEC v. GPB Capital Holdings, LLC*, No. 21-CV-583 (MKB), 2025 U.S. Dist. LEXIS 67087, *13–16, *35–39 (E.D.N.Y. Apr. 8, 2025).

In addition to bringing claims against GPB Capital, the GPB Funds, their principals, and various other parties alleged to have provided substantial assistance in the scheme, Plaintiffs brought claims against the six auditors who, at various points, provided auditing services to one or more of the GPB Funds. Plaintiffs alleged that Settling Defendants committed fraud and/or aided and abetted in a fraud by allowing the GPB Funds to use the auditors' reputations for marketing purposes and by providing unqualified audit opinions on GPB Funds' financial statements. The *Kinnie Ma* Plaintiffs also asserted that the Settling Defendants aided and abetted violations of the Texas Securities Act ("TSA"), for which there is joint and several liability. The Settling Defendants deny that they were or should have been aware of GPB's malfeasance and deny that

they committed any wrongdoing in connection with GPB Capital or the GPB Funds. By 2018, certain Settling Defendants withdrew certain audit opinions, and GPB Capital was forced to disclose that certain of the Funds' financial statements were not reliable and that the funds had material weaknesses in their internal controls.

## II.     <u>PROCEDURAL HISTORY</u>

### A.     <u>Texas Case (Kinnie Ma and Barasch)</u>

On October 25, 2019, the *Kinnie Ma* Plaintiffs filed the first of the putative class actions in federal court. *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Cap., LLC*, et al., No. 1:19-cv-01050-LY (W.D. Tex.). On November 6, 2019, the *Barasch* Plaintiffs filed their putative class action. *Barasch, et al. v. GPB Cap. Holdings, LLC, et al.*, No. 1:19-cv-01079-LY. In addition to suing GPB Capital, Ascendant and their affiliates, as well as the Auditor Defendants, Plaintiffs in *Kinnie Ma* and *Barasch* sued numerous additional parties alleging that they provided substantial assistance to the scheme and defeated 19 motions to dismiss, respectively, pursuant to the Court's Orders of August 25, 2021. On June 1, 2022, the court consolidated the *Kinnie Ma* and *Barasch* Actions (collectively, "*Kinnie Ma* Action"), and on July 1, 2022, a consolidated complaint was filed. Thereafter, the *Kinnie Ma* parties engaged in merits and class discovery throughout spring and summer of 2023, serving and responding to document requests and interrogatories. Counsel for the *Kinnie Ma* Plaintiffs retained experts, served extensive expert reports, and defended their experts at depositions. They also conducted the depositions of defendants' two proposed class certification expert witnesses. In all, the *Kinnie Ma* Plaintiffs obtained millions of pages of written discovery from GPB Capital and numerous other defendants, served expert reports, and defended or conducted 17 depositions of plaintiffs and experts relevant to class certification. Only days before the *Kinnie Ma* Plaintiffs were set to move for class certification, the Court stayed the case pending final resolution of the criminal proceeding against GPB officers in the District Court for

the Eastern District of New York. On August 1, 2024, the criminal proceeding concluded with guilty verdicts against each of the GPB officers. Defendants Gentile and Schneider were sentenced on May 9, 2025. Minute Orders, *United States v. Gentile*, No. 1:21-cr-54 (E.D.N.Y. May 13, 2025).

**B.    New York Case (DeLuca)**

In May 2018, the *DeLuca* Plaintiffs had initiated a books and records investigation, which later resulted in the *DeLuca* class action filed on November 12, 2019 in the Southern District of New York, where GPB Capital and the Funds were located. On December 14, 2020, the Court sustained the *DeLuca* Plaintiffs' claim against the GPB Defendants for fraud as it related to alleged misrepresentations about the source of distributions, and their breach of contract claim against GPB Capital for failing to disseminate financial statements in 2017 and beyond. The parties immediately commenced fact discovery. The GPB Defendants produced ***over 5.5 million documents***; Plaintiffs reviewed these documents which, in their view, raised questions about the conduct of the auditors. *DeLuca* Plaintiffs subpoenaed the GPB auditors and obtained work papers and other documents. This discovery led to additional allegations and claims of accounting fraud and/or aiding and abetting claims against CohnReznick LLP; Crowe LLP; Margolin, Winer & Evens LLP; and RSM US LLP (the "*DeLuca* Settling Defendants"). After receiving this substantial document production from GPB and the auditor defendants, and amending the complaint to include the auditors, the parties agreed to stay the *DeLuca* Action pending the criminal proceeding of three GPB officers. However, after a series of delays in the criminal proceeding, the *DeLuca* Plaintiffs grew concerned and successfully lifted the stay as to the *DeLuca* Settling Defendants and proceeded with fact and class discovery. After moving for class certification, the *DeLuca* Plaintiffs amended their complaint on September 20, 2023, to include additional named plaintiffs, and postponed class certification pending the Court's ruling on auditors' renewed motions to dismiss. The *DeLuca* Plaintiffs, however, succeeded in obtaining an Order requiring the auditors

to proceed with full blown fact discovery (ECF 328). The *DeLuca* Settling Defendants produced nearly 80,000 documents and were a month away from substantially completing their document discovery and commencing depositions, when the *DeLuca* parties agreed to stay this action and mediate the claims.

      **C.**    **The Mediation**

On June 13 and 14, 2024, counsel for the *Kinnie Ma* and *DeLuca* Plaintiffs participated in mediation with the Settling Defendants under the guidance of the Honorable Layn Phillips, a former U.S. District Court Judge and one of the premier mediators in the country for cases of this size and complexity. After extensive arm's-length negotiations spanning two full days, the Parties reached a settlement in principle in the Actions. Over the course of the next several months, the Parties continued to engage in arm's-length settlement negotiations, including drafts of settlement papers and exhibits. The Parties ultimately executed the Stipulation on December 3, 2024. Consistent with the terms of the Settlement, Plaintiffs now move this Court to approve the Settlement.

**III.**    **SUMMARY OF SETTLEMENT TERMS**

      **A.**    **The Settlement Class**

The Settlement Class means:

> All Persons who, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of the GPB Funds during the Class Period (January 1, 2013 through December 31, 2018, inclusive), and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (except for certain individuals and entities that have been excluded from the Settlement Class as follows). The Settlement Class does not include: (a) Defendants in the Actions or their affiliates; (b) present or former executive directors or officers of GPB Capital Holdings, LLC, the GPB Funds, Ascendant Capital, LLC, Ascendant Alternative Strategies, LLC or Axiom Capital Management, Inc.; (c) the legal representatives, heirs, successors-in-interest, or assigns of any Person within subsection (a) or (b) of this Paragraph; (d)

> members of the immediate family of any natural Person within subsection (a) or (b) of this Paragraph; (e) any entity in which any Person within subsection (a) or (b) of this Paragraph has, or had during the Class Period, a controlling interest; and (f) any affiliate of GPB Capital Holdings, LLC. For purposes of this definition, "immediate family" means a natural Person's parent, sibling, spouse, or child.

*See* Jt. Decl., Ex. 1, Stipulation, at ¶ 1(kk). As noted, "GPB Funds" means: GPB Holdings, LP; GPB Holdings Qualified, LP; GPB Automotive Portfolio, LP; GPB Holdings II, LP; GPB Waste Management, LP (also known as Armada Waste Management LP); GPB Cold Storage, LP; GPB NYC Development, LP; GPB Holdings III, LP; and each of their predecessors, successors, subsidiaries, and affiliates. *Id.* at ¶ 1(t).

As explained further below, any Settlement Class members who exclude themselves by submitting a request for exclusion that is accepted by the Court would also be excluded from the Settlement Class (Jt. Decl., Ex. 1, Stipulation at ¶¶ 1(nn) and 36) and shall have no right to object to the Settlement, shall forfeit any right to future class recovery (if any) against any non-settling Defendants, shall not participate in proceedings in the *Kinnie Ma* Action or be legally bound by any of the Court's orders or judgments in the *Kinnie Ma* Action. However, such Settlement Class Opt-Out(s) will retain any individual rights they may still have with respect to Settling Defendants and other non-settling Defendants related to matters alleged in the Actions.

## B. **Settlement Consideration**

Each of the Settling Defendants has agreed to contribute to a total settlement payment of $46,000,000, by placing their share of the settlement into an escrow account. This consideration, after deduction of any Taxes, costs of Administration of the Settlement, awards of attorneys' fees or expenses, and service awards, as provided for in the Stipulation and approved by the Court (the "Net Settlement Fund"), will be distributed among the Settlement Class Members who are not Settlement Class Opt-Outs.

### C.    The Class Notice Plan

#### 1.    Direct Notice and Plan of Allocation

Plaintiffs propose to retain Epiq Class Action & Claims Solutions, Inc. (the "Settlement Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims. Epiq is one of the largest and most respected class action administration firms, and has handled hundreds of similar cases in the past.

If the Court grants this Preliminary Approval Motion, within ten (10) business days of such order, counsel for Plaintiffs will provide Epiq in electronic format a list of names and mailing addresses of the record holders of partnership units in the GPB Funds during the Class Period (the "Settlement Class List").[3] Ten (10) business days after that, Epiq will mail a copy of the Notice and Claim Form to each record holder on the Settlement Class List. *See* Ex. 2 (Revised Notice); Stipulation, Ex. A (Claim Form). In addition, simultaneously with the mailing, Epiq will cause the Summary Notice to be published in Investor's Business Daily and transmitted over PR Newswire.

As proposed, to be eligible to receive a payment from the Net Settlement Fund, all Settlement Class Members are required to submit a timely Claim Form and must have suffered a "Net Loss" on their investment(s) in GPB Fund(s) under the Plan of Allocation. *See* Stipulation, Ex. F (Plan of Allocation). As part of the Notice, each Settlement Class Member will receive a Claim Form that will be pre-populated with information provided by GPB Capital to the Settlement Administrator. Settlement Class Members will be responsible for reviewing and confirming the accuracy of the pre-populated information provided by GPB Capital and providing any additional

---

[3] Plaintiffs obtained updated Settlement Class data from GPB Capital pursuant to an agreement with GPB Capital.  GPB Capital's disclosure of the Settlement Class List and certain investor data does not constitute a waiver, in whole or in part, of the litigation stays currently in place in the Actions.

information required by the Claim Form (*e.g*., information about any prior recoveries related to GPB Fund investments). *See* Stipulation, Ex. A (Claim Form) and Ex. F (Plan of Allocation). After a claimant reviews, signs and timely submits a Claim Form, the Settlement Administrator will determine whether the claimant has a Net Loss pursuant to the formula set forth in the Plan of Allocation, using the information provided and/or verified by the claimant on, or in conjunction with, the Claim Form. If the Settlement Administrator determines that there is a deficiency in the Claim Form (*e.g.*, it is not signed) or rejects the claim (*e.g..*, claimant is not a Settlement Class Member or has no Net Loss), the Settlement Administrator will send a letter notifying the claimant of the grounds for the deficiency and/or rejection and will provide the claimant thirty (30) days from the date of the deficiency or rejection letter to contest and/or cure the issue identified. Once all disputes are resolved, the Settlement Administrator will finalize the Net Loss amounts and calculate each claimant's individual share of the Net Settlement Fund as described in Section 9 of the Notice, at Ex. D of the Stipulation.

## 2. Settlement Website and Press Release

As proposed, at the same time that the Notice is mailed to Settlement Class Members, Epiq will initiate a settlement website, www.GPBSecuritiesSettlement.com. This website will post the Notice and Claim Form, as well as provide functionality for Class Members to submit their claims online and, if necessary, to upload documentation in support of their Claim Form. This website will also contain copies of the key documents from this Action and provide updates on upcoming hearings and proceedings.  The Settlement Administrator will also issue an informational press release through PR Newswire and Investor's Business Daily. *See* Summary Notice, at Ex. H of the Stipulation.

### 3.    CAFA Notice

Pursuant to the proposed Settlement, the Settling Defendants will serve state and federal officials the notice of a proposed class action settlement required under the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA"). If this Court were to grant this Preliminary Approval Motion, the Settling Defendants will, no later than seven (7) calendar days before the Final Approval Hearing, serve on Settlement Counsel and the Court proof, by affidavit or declaration, regarding compliance with 28 U.S.C. § 1715(b).

### D.    Opportunity to Opt Out or Object and Appear at Hearing

Settlement Class Members will be permitted to exclude themselves from (*i.e.*, opt out of) the Settlement or object to the Settlement.

If a Settlement Class Member excludes themselves from the Settlement Class, they will neither receive a settlement payment, nor participate in any future recoveries in the *Kinnie Ma* Action. *See Newby v. Enron Corp.*, 2006 U.S. Dist. LEXIS 39799, at *8 n.3 (S.D. Tex. June 14, 2006) (expressing approval of *In re Del-Val Fin. Corp. Sec. Litig.*, 162 F.R.D. 271, 275 (S.D.N.Y. 1995) (holding "[i]t is axiomatic that an individual who requests exclusion from a class certified for the purposes of litigation is opting out of the entire litigation" and "no precedent exists for permitting class members to opt out of a class, whether certified for purposes of settlement or otherwise, with respect to some defendants or claims but not others."). In addition, there will be no future recoveries in the *DeLuca* Action as Plaintiffs will seek to dismiss that Action in its entirety if and when this Settlement becomes Final.  Settlement Class Members who have excluded themselves should not submit a Claim Form to ask for any money if and when the Court approves the Plan of Allocation.  Further, an excluded Settlement Class Member will have no right to object to the Settlement.  A Settlement Class Member who has excluded themselves will retain only those rights they may have against the Settling Defendants for the matters alleged in

the Actions and will not be legally bound by the Court's orders or judgments regarding the Settlement.

As proposed, to opt out, a Settlement Class Member must request exclusion in writing within the time and in the manner set forth in the Notice, which shall provide that: any such request for exclusion from the Settlement Class (a) must be postmarked no later than twenty-five (25) calendar days prior to the Final Approval Hearing, and mailed to: **GPB Securities Settlement, EXCLUSIONS, P.O. Box 2916, Portland, OR 97208-2916;** and (b)(i) include the name, address, and signature of the person requesting exclusion; (ii) include the name of number of this case; and (iii) include a statement that the person requesting exclusion wishes to be excluded. The Settlement Claims Counsel or the Claims Administrator may, at their discretion, request from any person requesting exclusion documentation sufficient to prove his, her, their, or its purchases in limited partnership units in GPB Funds.

To object, a Settlement Class Member (a) must identify the case name and docket number of the case; (b) must state the name, address, and telephone number of the Person objecting and must be signed by the objector; (c) must state whether the objector is represented by counsel and, if so, the name, address, and telephone number of the objector's counsel; (d) must state with specificity the grounds for the Settlement Class Member's objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention and whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; and (e) must include documents sufficient to prove membership in the Settlement Class, including the partnership units in the GPB Funds that the objecting Settlement Class Member purchased or acquired during the Class Period. Settlement Class Members must file with the Court and mail or deliver their objection to the counsel specified in

Section 17 of the Notice so that it is received no later than twenty-one (21) days before the Final Approval Hearing.

To appear and speak at the Final Approval Hearing, a Settlement Class Member, with or without a lawyer, must include in their objection a statement saying that it is their "Notice of Intent to Appear at the Final Approval Hearing of *Kinnie Ma Individual Ret. Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP." This statement must include the Settlement Class Member's name, address, telephone number, and signature, as well as the name and address of the Settlement Class Member's lawyer, if one is appearing on their behalf.

### E.     Scope of Release

Upon entry of the Final Settlement Approval and Bar Order, Settlement Class Members who have not opted out of the Settlement will give up their right to sue Settling Defendants and certain related released parties, *i.e.*, the "Released Parties" (as defined below), for the claims resolved by this Settlement, and will be bound by all of the Court's orders concerning the Settling Defendants.

"Released Parties" means (i) each of the Settling Defendants; (ii) the predecessors, successors, assigns, direct or indirect parents, direct or indirect subsidiaries, and affiliates of each of the Settling Defendants (including, without limitation, current or former member firms or correspondent firms within the same network as a Settling Defendant, all entities that manage the network in which any Settling Defendant is a member, and Baker Tilly US, LLP and Baker Tilly Advisory Group, LP); and (iii) each of the foregoing's current and former partners, limited partners, general partners, officers, directors, employees, legal and equitable owners, trustees, shareholders, members, managers, principals, agents, attorneys, legal representatives, affiliated persons or entities, predecessors, successors, assigns, direct or indirect parents, direct or indirect

subsidiaries, affiliates, beneficiaries, assigns, heirs, executors, administrators, lenders, indemnitors, and insurers.

"Released Claims" means, to the fullest extent that the law permits their release, all past, present, and future claims against any and all of the Released Parties of any nature whatsoever in any way relating, arising from, or based upon either of the Actions, the allegations made or that could have been made in either of the Actions, the GPB Funds or GPB Capital Holdings, LLC, any investment in the GPB Funds, or any work performed by any Settling Defendant for or relating to any of the GPB Funds or GPB Capital Holdings, LLC, including, without limitation, all claims, suits, actions, allegations, damages (including, without limitation, compensatory, punitive, exemplary, rescissory, direct, consequential or special damages, restitution, and disgorgement), liabilities, causes of action, complaints, lawsuits, responsibilities, demands, rights, debts, penalties, costs, expenses, fees, injunctive relief, attorney's fees, expert or consulting fees, prejudgment interest, indemnities, duties, losses, and obligations of any kind, known or unknown, foreseen or unforeseen, whether -apparent or concealed, asserted or unasserted, existing or contingent, direct or indirect, anticipated or unanticipated, asserted or that could have been asserted by, on behalf of, for the benefit of, or in the name of any Settlement Class Members who are not Settlement Class Opt-Outs, whether legal, contractual, rescissory, statutory, or equitable in nature, whether arising under federal, state, common, or foreign law, that now exist or have ever existed from the beginning of time until the date of the Stipulation.

F.     **Payment of Notice and Administration Costs**

All costs of Notice and Administration of the Settlement in relation to the Settlement will be paid out of the Settlement Fund, subject to Court approval. These costs will be deducted prior to the awarding of Net Settlement Funds to Settlement Class Members.

### G.     Class Representatives' Application for Incentive Award

Settlement Class Counsel will request a service award of up to $10,000 for each of the proposed Settlement Class Representatives in the Actions. Between the two Actions, there are twenty (20) Settlement Class Representatives,[4] and thus the total requested service award to Settlement Class Representatives is up to $200,000. Any service awards approved by the Court will be deducted prior to the awarding of Net Settlement Funds to Settlement Class Members.

### H.     Settlement Class Counsel's Application for Attorneys' Fees and Costs

Settlement Class Counsel will request an award of attorneys' fees in an amount up to 30% of the Gross Settlement Fund, plus reimbursement of any costs incurred in the litigation and the Settlement. Any attorneys' fees and costs approved by the Court will be deducted prior to the award of Net Settlement Funds to Settlement Class Members.

## IV.     ARGUMENT AND AUTHORITIES

### A.     Standard for Preliminary Approval

In the Fifth Circuit, there is a strong policy in favor of voluntary settlement of litigation, and particularly so in class actions. *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (noting "overriding public interest in favor of settlement," "[p]articularly in class action suits"); *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (same).

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. The procedure for approval of a proposed class action settlement is a well-established, two-step process. First, the Court performs a preliminary review of the terms of the proposed settlement to

---

[4] Kinnie Ma IRA, Jeffery S. Gramm IRA, Stacy Greasor IRA, Victor Wade IRA, Kazue Bell, Dean Crooks, Corri Rene Eden, Catherine Kominos, Karen Loch, Robert A. Stone Living Trust, Shirley Stone Living Trust, Stanley S. and Millicent R. Barasch Living Trust, Loretta Dehay, Barbara DeLuca, Drew R. Naylor, Peggy Rollo, Peter Beddia, Michael Oles, Robert Ricci, and James Staples, as Trustee of the 616 Moved Trust.

determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); and second, after notice has been provided and a hearing has been held, the Court determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval to authorize notice of a settlement to the class upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement. Fed. R. Civ. P. 23(e)(1)(B). This codifies case law indicating that Courts should grant preliminary approval where "the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of a class representative or of segments of the class, or of excessive compensation for attorneys, and appears to fall within the range of possible approval[.]" *Bridges v. Ridge Nat. Res., LLC*, No. 18-CV-00134-DC, 2020 WL 7495252, at *4 (W.D. Tex. Jan. 3, 2020) (quotation and alteration omitted).

At final approval, the Court will have to determine whether the proposed Settlement is "fair, reasonable, and adequate." Rule 23(e)(2). In considering whether a settlement is fair, reasonable, and adequate, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, the Fifth Circuit has historically considered these six factors in evaluating the adequacy of a proposed class action settlement:

> (1) [whether there is] evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' [sic]

prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) ("The involvement of an experienced and well-known mediator is … a strong indicator of procedural fairness").

**B.    The Proposed Settlement Satisfies the Requirements Under Rule 23(e)(1)**

**1.    The Settlement Is a Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel**

There is no collusion or fraud behind the proposed Settlement, as evidenced by the process through which the Parties reached their agreement. The proposed Settlement was reached only after a lengthy process that involved a two-day mediation before a highly respected former U.S. District Court Judge, Layn Phillips, acting as mediator. In addition, Settlement Class Counsel have many years of experience litigating securities class actions and have negotiated scores of other class settlements which have been approved by courts throughout the country. Settlement Class Counsel enjoy well-deserved reputations for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters. *See* § III. C-5 Adequacy of Counsel, *infra*. Similarly, the Settling Defendants have, at all times, been represented by law firms with reputations for the tenacious defense of class actions and other complex civil matters. The proposed Settlement was negotiated by senior lawyers for Plaintiffs and Settling Defendants, who were assisted by Judge Phillips and his team.

The terms of the proposed Settlement likewise show that the Settlement Class was fairly and adequately represented in the course of these proceedings and the proposed Settlement is not collusive. With the exception of the potential for Plaintiffs to seek service awards, the terms of the proposed Settlement treat Plaintiffs exactly the same as other Settlement Class Members.

Additionally, the limits of proposed attorneys' fees and litigation expenses are well within the range of compensation and reimbursement amounts that courts frequently award in these types of cases. The first factor of the Fifth Circuit's test is therefore satisfied.

### 2.     The Settlement Is Sufficient Considering the Potential Risks and Delays

The proposed Settlement provides for a Settlement Amount of $46,000,000 in cash. This recovery is a substantial result for the Settlement Class, especially considering the current posture of the case and its future prospects. As a threshold matter, this Court has stayed the case pending the resolution of the criminal proceedings against GPB Capital principals. As such, there is no immediate prospect for *any* recovery for Settlement Class Members stemming from this litigation under any scenario. Furthermore, Settlement Class Members are facing years of further litigation, trial, and appeals if the case were to proceed, delaying relief even under the most favorable circumstances. Not to mention, Settlement Class Members run the risk of obtaining a smaller recovery or even no recovery at all should the litigation endure years into the future. As with every complex litigation of this kind, Plaintiffs face formidable obstacles to recovery at trial, both with respect to liability and damages.

In evaluating a proposed settlement in securities litigations, courts have frequently recognized that such cases are "notoriously difficult and unpredictable." *In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834 at *7 (W.D. Tex. June 11, 2010) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436. 455 (5th Cir. 1983)). "Thus, the complexity, expense, and likely duration of the suit weighs in favor of the settlement." *In re Dell*, 2010 WL 2371834, at *7; *see also Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843-44 (E.D. La. 2007) ("The public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocketing expenses.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Plaintiffs believe that if this case were to proceed to trial, the allegations in the Complaint would ultimately be borne out by the evidence. Nevertheless, Plaintiffs also recognize that there are significant hurdles to proving liability and damages at trial. The Settling Defendants have previously asserted formidable defenses in their motions to dismiss the Actions, primarily that they lacked knowledge or general awareness of the alleged malfeasance of the GPB Defendants, and/or that the Settling Defendants acted in a manner consistent with their professional responsibilities. If this Action does not settle, the Settling Defendants are likely to continue to make these and other arguments. In addition, Plaintiffs face the additional hurdle of having to certify the class in this action, and the Settling Defendants will no doubt try to assert substantial defenses and arguments in opposition to class certification.

By agreeing to the proposed Settlement, Plaintiffs ensure a significant recovery in the immediate future for the Settlement Class while avoiding the risks and delays of expensive and protracted litigation, which would be *in addition* to the Receiver's distribution and any future recoveries obtained from other Defendants. And, critically, Settlement Class Members continue to maintain their claims against the remaining defendants in the case. The proposed Settlement thus also satisfies the second and fourth factors of the Fifth Circuit's test.

### 3.    The Litigation Is at a Point Suitable for Settlement

Plaintiffs have conducted an extensive investigation, and the Parties have conducted extensive fact and expert discovery. Accordingly, the Plaintiffs and Settling Defendants "have arrived at a compromise with a full understanding of the legal and factual issues surrounding this case." *Manchacha v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996) (footnote omitted). Thus, the third factor of the Fifth Circuit's test likewise counsels in favor of preliminarily approving the proposed Settlement.

### 4. The Litigation Should Be Preliminarily Approved Considering the Range of Possible Recovery

Considering the range of all possible recoveries, including the possibility that Settlement Class Members recover nothing in this matter, the $46,000,000 recovery achieved by the proposed Settlement is significant.

The total value of all investments made into the GPB Funds is approximately $1.8 billion. The Receiver has identified $400 million that has been distributed to investors, with an additional $700 million to be held in reserve. *See SEC v. GPB Capital Holdings, LLC*, No. 21-CV-583 (MKB), 2025 U.S. Dist. LEXIS 67087, *13–16, *35–39 (E.D.N.Y. Apr. 8, 2025). Settling Defendants would argue that any final judgment in this matter would be offset by distributions made by the Receiver. As such, the proposed Settlement will return a very material portion of Settlement Class Members' maximum potential recovery in this case, net of the distribution from the monitor. This is a significant recovery considering the risks of continued litigation as well as the significant, multi-year delay inherent in getting to any final judgment in this matter. Moreover, the proposed Settlement is the beginning, rather than the end, of potential recovery for Settlement Class Members in connection with these Actions. The *Kinnie Ma* Plaintiffs will also continue to pursue claims against the remaining defendant.

The proposed Settlement provides an excellent recovery to Settlement Class Members, without risk and delay of further litigation and without compromising claims against other defendants. Accordingly, the proposed Settlement represents an excellent result for the Settlement Class, and thus meets the fifth factor of the Fifth Circuit's test.

### 5. The Opinion of Counsel Supports Approval

A strong initial presumption that the settlement is fair and reasonable is created where, as here, experienced counsel have negotiated a settlement at arm's length, with the assistance of a

20

mediator. *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). The Fifth Circuit has recognized that courts must rely to a large degree on the judgement of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Counsel acquired a thorough understanding of the *Kinnie Ma* and *DeLuca* Actions as a result of their (i) thorough investigations (including a pre-litigation books and records investigation), (ii) fact discovery and (iii) participation in mediation and extensive post-mediation negotiations with Settling Defendants. Jt. Decl. at ¶9-19. Counsel submits that the proposed Settlement is appropriate and should be approved. The views of counsel must be accorded great weight. *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978). At this stage, where other Settlement Class Members have not yet had the opportunity to provide their input, counsel's opinion is sufficient to satisfy the sixth factor of the Fifth Circuit's test.

For these and the foregoing reasons, the Court should grant preliminary approval of the Settlement and direct that notice of the Settlement be given to Settlement Class Members.

### C.    The Court Should Preliminarily Certify the Settlement Class

In connection with final approval, the Court will be asked to certify the Settlement Class— for settlement purposes only—pursuant to Rules 23(a) and 23(b)(3). At the preliminary approval stage, the Court should determine whether it "will likely be able to" grant certification to the Settlement Class at final approval. Fed. R. Civ. P. 23(e)(1)(B)(ii).

Certification of a settlement class is appropriate where the proposed class and proposed class representatives meet the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and the two requirements of Rule 23(b)(3): that questions of law or fact common to the members of the class predominate over any individual issues of rule or law, and that a class action is superior to other available methods to adjudicate the controversy.

Pursuant to the proposed Settlement, Plaintiffs request the Court certify the following class:

> all Persons who, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of GPB Holdings, LP; GPB Holdings Qualified, LP; GPB Automotive Portfolio, LP; GPB Holdings II, LP; GPB Waste Management, LP (also known as Armada Waste Management LP); GPB Cold Storage, LP; GPB NYC Development, LP; GPB Holdings III, LP; and each of their predecessors, successors, subsidiaries, and affiliates (collectively, the "GPB Funds") during the period of January 1, 2013 through December 31, 2018 (the "Class Period") and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (except for certain individuals and entities that have been excluded from the Settlement Class . . . .)

Stipulation, at ¶ 1(kk); *see also* Stipulation at ¶ 1(t).

> The Settlement Class does not include: (a) Defendants in the Actions or their affiliates; (b) present or former executive directors or officers of GPB Capital Holdings, LLC, the GPB Funds, Ascendant Capital, LLC, Ascendant Alternative Strategies, LLC or Axiom Capital Management, Inc.; (c) the legal representatives, heirs, successors-in-interest, or assigns of any Person within subsection (a) or (b) of this Paragraph; (d) members of the immediate family of any natural Person within subsection (a) or (b) of this Paragraph; (e) any entity in which any Person within subsection (a) or (b) of this Paragraph has, or had during the Class Period, a controlling interest; and (f) any affiliate of GPB Capital Holdings, LLC. For purposes of this definition, "immediate family" means a natural Person's parent, sibling, spouse, or child.

Stipulation, at ¶ 1(kk).

Here, the proposed Settlement Class meets the requirements of and satisfies for settlement purposes Rule 23(a) and 23(b)(3).[5]

### 1. Numerosity

To meet the requirements of Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." *Zeidman v. J. Ray McDermott Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (citation omitted) ("[A] plaintiff must ordinarily demonstrate some evidence or

---

[5] While the Settlement Defendants agree that class certification for settlement purposes is appropriate, the Settling Defendants opposed class certification in the Actions, and would continue to object to class certification should the Settlement not become Final.

reasonable estimate of the number of purported class members."). Nevertheless, there is no magic number for which the numerosity requirement is satisfied. *See In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013). The critical inquiry is not whether there are a sufficient number of class members, but whether joinder is impracticable. To make this determination, courts consider several factors, including "size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980).

Here, limited partnership units in the GPB Funds were sold across the United States with purchasers in numerous different states. In the aggregate, approximately 15,000 individuals or entities purchased GPB units. As such, numerosity is satisfied. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624–25 (5th Cir. 1999) (holding that a class between 100 to 150 members met the requirements for numerosity); *Zeidman*, 651 F.2d at 1039 (collecting cases where courts have found the numerosity requirement to have been met when thousands of shareholders were part of the purported class).

### 2. Commonality

Commonality is an undemanding test satisfied by showing that there are genuine issues of law or fact common to the class and that resolution of at least one such issue will affect all or a significant number of class members. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993); *Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-CV-02399, 2019 WL 6111303, at *6 (S.D. Tex. Nov. 13, 2019), *report and recommendation adopted*, No. 4:17-CV-2399, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019) (commonality is satisfied where the claims of class members "hinge on common contentions that are capable of being resolved class-wide").

23

"The commonality requirement has been applied permissively in securities fraud litigation. In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig*., 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (quoting *Fogarazzao v. Lehman Bros., Inc*., 232 F.R.D. 176, 180 (S.D.N.Y. 2005)). *See also In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 445 (S.D. Tex. 2002) (citation omitted) ("When plaintiffs have alleged such a common course of conduct, courts consistently have found no bar to class certification, even though members of a class may have purchased different types of securities or interests.").

With regard to the claims raised against the Settling Defendants, Plaintiffs' aider and abettor claims create classic commonality issues. The Texas Security Act ("TSA") creates "causes of action for securities fraud against various parties, including sellers of securities and aiders and abettors." *Dorsey v. Portfolio Equities Inc.*, 540 F.3d 333, 343 (5th Cir. 2008). Section 33(F)(2) of the TSA rests upon secondary liability of aiders and abettors:

> A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C, jointly and severally with the seller . . . and to the same extent as if he were the seller . . . .

The elements of a TSA aider and abettor claim are: (1) the primary violator committed the primary violation of securities laws; (2) the aider and abettor had general awareness of its role in this violation; (3) the aider and abettor rendered substantial assistance in the violation; and (4) the aider and abettor intended to deceive plaintiffs or acted with reckless disregard for the truth of the representations made by the primary violator. *Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 384 (Tex. App. 2001); *Sterling Tr. Co. v. Adderley*, 168 S.W.3d 835, 842 (Tex. 2005).

Courts have consistently found the commonality requirement satisfied with respect to aiders and abettors of alleged fraudulent schemes, including Ponzi schemes. *See, e.g.*, *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006) (favoring "class treatment of fraud claims stemming from a common course of conduct"); *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 2006762, at *5 (S.D. Fla. Mar. 21, 2018) ("[W]hether Defendants aided and abetted each other in perpetrating the fraud, are all common questions involving common proof, which may be resolved efficiently on a class [basis]."); *Gonzales v. Lloyds TSB Bank*, No. CV 06-1433, 2007 WL 9711433, at *4 (C.D. Cal. May 2, 2007) (holding commonality was satisfied as to aiding and abetting claims against banks participating in fraud schemes); *Takiguchi v. MRI Int'l, Inc.*, No. 13-CV-1183, 2016 WL 1091090, at *3–5 (D. Nev. Mar. 21, 2016) (finding commonality with respect to defendants who aided and abetted fraud scheme).

Since the claims of each Settlement Class Member against the Settling Defendants are subject to common proof, the commonality requirement is satisfied.

### 3. Plaintiffs' Claims Are Typical of the Class

The test for typicality "is also not demanding," and is satisfied if the class representatives' claims are typical of—though not necessarily identical to—the class's claims. *In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 565 (E.D. Tex. 2005) (citing *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839–41 (5th Cir. 2012)), *aff'd sub nom. Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005); *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993) ("The threshold requirements of commonality and typicality are not high[.]"). Mere "[f]actual differences" do not defeat typicality, so long as "the claims arise from a similar course of conduct and share the same legal theories." *In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. at 565 (citation omitted); *see also, e.g.*, *In re Enron Corp.*, 529 F. Supp. 2d 644, 674 (S.D. Tex. 2006) ("[T]he claims of the

25

proposed class representatives are typical because they arise from the same alleged Ponzi scheme . . . course of conduct to defraud investors . . . and they are grounded in the same legal theory . . . ."); *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 325 (N.D. Tex. 2011) (holding that plaintiffs' securities claims were typical of a class of investors who purchased securities in what turned out to be a Ponzi scheme, as "each class member's claims would involve proving similar facts about… [the defendant entity's] actions in selling those securities and making statements or omissions concerning those securities").

The *Kinnie Ma* and *DeLuca* Plaintiffs' claims arise from a common course of alleged conduct and common legal theories, respectively: as alleged in the complaints in the Actions, GPB Funds were sold using offering materials that contained material misrepresentations and omissions. In addition, the complaints charge that the GPB Funds consisted of unregistered securities which were, by law, required to be registered. As set forth in the complaints, the offering materials' misrepresentations and omissions, and GPB's failure to register the GPB Funds that should have been registered, are common to each class member, and Plaintiffs' claims are typical thereof. Because each Settlement Class Member's claims arise from the same course of alleged conduct, and each Settlement Class Member makes the same legal arguments to prove liability, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.    Adequacy of the Class Representatives

Rule 23(a)(4) requires that the representative parties will "fairly and adequately protect the interests of the class." To meet this requirement, the named class representatives must possess the same interests as the absent class members and not have conflicting interests with the class. *See Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 480, 482 (5th Cir. 2001); *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005); *see, e.g.*, *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 502-03 (S.D. Tex. 2004) (citation omitted) ("[A]s long as all class members are united in

asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.").

Here, Plaintiffs have already spent substantial time responding to document requests and interrogatories from many Defendants. Additionally, Plaintiffs in the consolidated *Kinnie Ma* Action have all been deposed. Given the magnitude of this case, the amount and size of the pleadings in this case, and the number of Defendants, each of the Plaintiffs has performed admirably to date. No conflicts of interest exist between Plaintiffs and the Settlement Class Members.

## 5.     Adequacy of Counsel

Likewise, Settlement Class Counsel satisfies the adequacy requirement under Rules 23(a)(4) and 23(g)(1). Pursuant to Rule 23(g)(1)(A), in appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Rule 23(g)(1)(A). Further, the Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(1)(B).

Settlement Class Counsel are Timothy S. DeJong of Stoll Stoll Berne Lokting & Shlachter, P.C.; Daniel L. Berger of Grant & Eisenhofer P.A.; and Catherine Pratsinakis of Dilworth Paxson LLP. *See* Jt. Decl., Ex. 1, Stipulation at ¶ 1(ll).[6] Counsel unquestionably have the qualifications, experience, and resources necessary to prosecute this case to a successful resolution. *See* Jt. Decl.,

---

[6] Peter S. Linden of Kaplan Fox & Kilsheimer LLP and Richard L. Stone of the Law Offices of Richard L. Stone are additional settlement counsel for Plaintiffs.

at Exs. 3-5 (firm resumes of Settlement Class Counsel). Considering counsel's extensive experience in class actions and securities litigation, and their zealous prosecution of Plaintiffs' claims to date, there can be no question that they are adequate. This Court previously found that *Kinnie Ma* Counsel satisfied the criteria of Fed. R. Civ. P. 23(g) given the work done in identifying and investigating the potential claims in the *Kinnie Ma* Action, their experience in handling class actions, other complex litigation and the types of claims asserted in this Action, their knowledge of the applicable law, the resources they have to commit to representing the Class, and their ability to fairly and adequately represent the class. *See Kinnie Ma* Order at ECF 918.

Accordingly, the Rule 23(a)(4) adequacy requirement is satisfied.

### 6.    Rule 23(b)(3): Predominance and Superiority

Plaintiffs must also demonstrate compliance with Rule 23(b)(3), which provides that a class may be certified if "the court finds that questions of law and fact common to class members predominate over any questions affecting only individual members," and that a class action is superior to other methods. Plaintiffs readily satisfy these elements.

### a.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The court must "assess how the matter will be tried on the merits, which entails 'identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.'" *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010) (citation omitted). In examining the predominance requirement, the Court should "inquire into the substance and structure of the underlying claims without passing judgments on their merits." *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 421 (5th Cir. 2004).

Courts have consistently held that the predominance requirement is "readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625. Indeed, it is black letter law that predominance is found in connection with registration claims under states' securities laws, such as that pled here under TSA Section 33. *Cooper v. Miller Johnson Steichen Kinnard, Inc.*, Case No. 02-1236, 2003 U.S. Dist. LEXIS 6946, at \*14-15 (D. Minn. Apr. 21, 2003) (finding predominance involving claims for the sale of unregistered securities is "easily" met); *Rensel v. Centra Tech, Inc.*, Case No. 17-24500, 2021 U.S. Dist. LEXIS 171801, at \*28 (S.D. Fla. 2021) (same); *Dietrich v. Bauer*, 192 F.R.D. 119, 127 (S.D.N.Y. 2000) (same).

The same applies here. For liability on the aider and abettor claims under the TSA, each plaintiff would need to establish (1) the primary securities law violation; (2) the aider and abettor's general awareness of its role in the violation; (3) the aider and abettor's substantial assistance in the violation; and (4) the aider and abettor's intent to deceive plaintiffs, or that the aider and abettor acted with reckless disregard for the truth of the representations made by the primary violator. *Frank*, 11 S.W.3d at 384. To the extent Plaintiffs can prove each of these elements, they would be using evidence that relates to activities directed at the GPB Funds as a whole, and not as to particular Settlement Class Members.

### b.    Superiority

When certifying a proposed class in accordance with Rule 23(b)(3), courts must consider whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement requests a court to balance, in terms of fairness and efficiency, the advantages of a class action against purported alternative available methods of adjudication. Rule 23(b)(3) identifies these factors to consider in determining whether a class action is in fact "superior to other available methods for fairly and efficiently adjudicating the controversy:"

(A)   the class members' interests in individually controlling the prosecution or
      defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already
      begun by or against class members;

(C)   the desirability or undesirability concentrating the litigation of the claims in
      the particular forum; and

(D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325, 341 (E.D. Tex. 2019).

Class treatment is generally superior because it will "achieve economies of time, effort, and expense, and promote. . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citation omitted). Here, given the large number of joint and severally liable Defendants, the complexity and length of the alleged Ponzi scheme, and the fact that there are approximately 15,000 class members, class treatment is the only method of adjudicating these claims effectively and efficiently.

### D.    The Notice Plan Comports with Rule 23(e)(1) and Due Process

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. *Id*. "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. Due process requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617. Notice must state in plain,

easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B); *see also Brown v. Mid-America Apts., LP*, Case No. 1:17-cv-307, 2018 U.S. Dist. LEXIS 229823, at *4 (W.D. Tex. Oct. 22, 2018).

This Settlement and proposed Preliminary Approval Order provide for a Notice plan that will include direct mail notice to all identifiable Settlement Class Members. Prior to sending any direct notices by mail, Epiq will run all mailing addresses against the National Change of Address ("NCOA") database maintained by the USPS to ensure Settlement Class Member address information is up-to-date and accurately formatted for mailing.[7] In addition, the addresses will be certified via the Coding Accuracy Support System (CASS) to ensure the quality of the zip codes, and will be verified through Delivery Point Validation (DPV) to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today. For any mailed direct notices returned as undeliverable, Epiq will make one additional attempt to deliver the notice to (a) a different address provided by the USPS on returned notices for which the automatic forwarding order has expired (if any); (b) a potentially more current or valid address, as determined by Epiq based on a search of its own

---

[7] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery point coded addresses, for matches made to the NCOA file for individual, family, and business moves.

proprietary databases; and/or (c) the next best address that may be found using a third-party lookup service. For any direct mail notices that are returned and deemed undeliverable, despite these efforts, Epiq will email notice packets to Settlement Class Members using the email address on file, to the extent it was provided by the GPB Defendants and deemed reliable. In addition, Epiq will send an email reminder notice to all Settlement Class Members for whom an email address has been provided and for whom no Claim Form has been received no more than fifteen (15) days before the deadline for the filing of the Claim Form and no fewer than five (5) calendar days before such deadline. In addition, the Settlement Administrator will maintain a Settlement Website with detailed information about the Settlement. The Notice and Summary Notice attached as Exhibits D and H to the Stipulation (Jt. Decl. at Ex. 1), are drafted in plain English, so they will be easy to understand. They include key information about the Settlement, including a description of the method for calculating the service award to Settlement Class Members under the Settlement, the process for challenging that calculation, the deadline to request exclusion from or object to the Settlement, and the date of the Final Approval Hearing (and that the hearing date may change without further notice). The Notice and Summary Notice state the amount of the fee award Settlement Class Counsel will request and the amount of the service award that Settlement Class Representatives will request. The Notices disclose that, by participating in the Settlement, Settlement Class Members give up the right to sue. They direct Settlement Class Members to the Settlement website for further information about copies of the Notice, Stipulation, and important case documents.

The manner and content of the proposed Notice plan complies with Rule 23 and due process. Similar notice plans are common in class actions like this one and constitute the best notice practicable under the circumstances. *See, e.g.*, *Brown*, 2018 U.S. Dist. LEXIS 229823, at

*5 (approving notice plan); *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 432 (E.D. Tex. 2002) (approving notice plan in a securities action); *Bridges*, 2020 WL 7495252, at *6 (approving the form of notice but requiring details regarding the final fairness hearing).

## V.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose that the Court adopt the schedule for Settlement-related events as set forth in the proposed Preliminary Approval Order. Jt. Decl., Ex. 1, Stipulation at Ex. G. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the Court need only schedule a date for the Final Approval Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Final Approval Hearing is scheduled.

## VI.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement as embodied in the Stipulation, and find, pursuant to Rule 23(e)(1)(B)(i) of the Federal Rules of Civil Procedure, that it will likely be able to finally approve the Settlement under Rule 23(e)(2) as being fair, reasonable, and adequate to the Settlement Class; (ii) approve the selection of the Settlement Administrator, and the proposed form and manner of notice to putative Settlement Class Members; (iii) schedule a date and time for the Final Approval Hearing to consider final approval of the Settlement and related matters; and (iv) preliminarily certify the proposed Settlement Class, appointing Plaintiffs as Settlement Class Representatives, and appoint Plaintiffs' lawyers as Settlement Class Counsel.

Dated: May 13, 2025                          Respectfully submitted,

**GRANT & EISENHOFER P.A.**               **STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**

Daniel L. Berger                             Timothy S. DeJong (*pro hac vice*)
485 Lexington Avenue                          Steven D. Larson (*pro hac vice*)
New York, NY 10017                            Cody Berne (*pro hac vice*)
Telephone: (646) 722-8500                     Elizabeth B. Kinsman (*pro hac vice*)
                                             209 SW Oak Street, Suite 500
**DILWORTH PAXSON LLP**                      Portland, OR 97204
                                             T: (503) 227-1600
Catherine Pratsinakis                        F: (503) 227-6840
1650 Market Street, Suite 1200               tdejong@stollberne.com
Philadelphia, PA 19103-7391                  slarson@stollberne.com
T: (215) 575-7013                            cberne@stollberne.com
                                             ekinsman@stollberne.com
*Counsel for DeLuca Plaintiffs*
*and the Proposed Settlement Class Counsel*  *Lead Counsel for Kinnie Ma Plaintiffs on*
                                             *Claims Against Auditors and the Proposed*
                                             *Settlement Class Counsel*

                                             **MEYER WILSON CO., LPA**


                                             By: */s/ Matthew R. Wilson*_____

                                             David P. Meyer (*pro hac vice*)
                                             Matthew R. Wilson (*pro hac vice*)
                                             Courtney M. Werning (*pro hac vice*)
                                             305 West Nationwide Boulevard
                                             Columbus, Ohio 43215
                                             T: (614) 224-6000
                                             F: (614) 224-6066
                                             dmeyer@meyerwilson.com
                                             mwilson@meyerwilson.com
                                             cwerning@meyerwilson.com


                                             **PEIFFER WOLF CARR AND KANE, APLC**

                                             Joseph Peiffer (*pro hac vice*)
                                             Email: jpeiffer@pwcklegal.com
                                             Jason Kane (*pro hac vice*)
                                             Email: jkane@pwcklegal.com
                                             201 St. Charles Avenue, Suite 4314
                                             New Orleans, LA 70170
                                             Telephone: (504) 523-2434
                                             Facsimile: (504) 523-2464

                                             *Counsel for Plaintiffs*

**KAPLAN FOX & KILSHEIMER LLP**

Peter S. Linden (*pro hac vice*)
Jason A. Uris (*pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
T: (212) 687-1980
F: (212) 687-7714
plinden@kaplanfox.com
juris@kaplanfox.com

**LAW OFFICES OF RICHARD L.
STONE, PLLC**
Richard L. Stone (*pro hac vice*)
11 East 44th Street, Suite 1900
New York, NY 10017
T: (561) 358-4800
rstoneesq@rstoneesq.com

*Additional Settlement Counsel for Plaintiffs*

35

**<u>CERTIFICATE OF SERVICE</u>**

I do hereby certify that a true and correct copy of the above and foregoing instrument and exhibits attached hereto have been served on all counsel of record via the CM/ECF system this thirteenth day of May, 2025.

/s/ Matthew R. Wilson
Matthew R. Wilson