UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KINNIE MA INDIVIDUAL RETIREMENT ACCOUNT, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ASCENDANT CAPITAL, LLC, *et al.*, <br><br> *Defendants*. | Case No. 1:19-CV-01050-ADA (W.D. Tex.) |

JOINT DECLARATION IN SUPPORT OF: (I) MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION,
AND FINAL CERTIFICATION OF SETTLEMENT CLASS; AND (II) SETTLEMENT
CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION
EXPENSES AND PLAINTIFFS' MOTION FOR AWARDS

We, Timothy DeJong, Catherine Pratsinakis, and Caitlin Moyna hereby declare and state

the following:

## I.     INTRODUCTION

1.      I, Timothy S. DeJong, am an attorney at Stoll Stoll Berne Lokting & Shlachter, P.C.

I am the Court-appointed Settlement Class Counsel and counsel for plaintiffs in the putative class

action captioned *Kinnie Ma Individual Retirement Acct., et al. v. Ascendant Capital, LLC, et al*.,

No. 1:19-CV-1050-RP (W.D. Tex.) ("Kinnie Ma Action"). I have been admitted *pro hac vice* in

this matter. I am a member of the Bars of the States of Oregon and Washington.

2.      I, Catherine Pratsinakis, am an attorney at Dilworth Paxson LLP. I am the Court-

appointed Settlement Class Counsel and counsel for plaintiffs in the putative class action captioned

*DeLuca, et al. v. GPB Holdings, LP, et al*., No. 1:19-CV-10498-LAK-JW (S.D.N.Y.) ("DeLuca

Action"). I entered my appearance in the *Kinnie Ma* Action and was admitted *pro hac vice* in this matter. I am a member of the bars of Delaware, Pennsylvania and New Jersey.

3.      I, Caitlin Moyna, am an attorney at Grant & Eisenhofer P.A. I am counsel for the Plaintiffs in the *DeLuca* Action. I have also been admitted *pro hac vice* in this matter. I am a member of the bar of the State of New York.

4.      We are over the age of eighteen, competent to make this declaration, and have personal knowledge of the following based on our active supervision of and participation in the prosecution and settlement of the actions described below.

5.      We make this declaration in support of the Motion for Final Approval of Settlement with Certain Auditor Defendants and Approval of Plan of Allocation filed simultaneously herewith by Plaintiffs Kinnie Ma IRA, Jeffery S. Gramm IRA, Stacy Greasor IRA, Victor Wade IRA, Kazue Bell, Dean Crooks, Corri Rene Eden, Catherine Kominos, Karen Loch, Robert A. Stone Living Trust, Shirley Stone Living Trust, Stanley S. and Millicent R. Barasch Living Trust, and Loretta Dehay (collectively, the "*Kinnie Ma* Plaintiffs"), and Barbara DeLuca, Drew R. Naylor, Peggy Rollo, Peter Beddia, Michael Oles, Robert Ricci, and James Staples, as Trustee of the 616 Moved Trust (collectively, the "*DeLuca* Plaintiffs," and together with the *Kinnie Ma* Plaintiffs, "Plaintiffs" or "Settlement Class Representatives"), individually and on behalf of all others similarly situated. The Settlement resolves Plaintiffs' and the Settlement Class Members' claims against Defendants Crowe LLP, Withum Smith+Brown, PC, Margolin Winer & Evens LLP, CohnReznick LLP, and RSM US LLP (collectively, the "Auditor Defendants" and collectively with Plaintiffs, the "Parties"). The Joint Declaration is also offered in support of Settlement Class Counsel's contemporaneously filed Motion for Attorneys' Fees and Litigation Expenses and Plaintiffs' Motion for Awards, dated October 20, 2025 ("Fee and Expense Motion").

6.     The Stipulation and Agreement of Settlement between Plaintiffs and Auditor Defendants, dated December 3, 2024 (the "Stipulation"), was previously filed at ECF No. 1218-1.[1]

7.     The Settlement provides for payment of $46 million in cash ("Settlement Payment") by the Auditor Defendants, in exchange for a full release and dismissal of all claims against the Auditor Defendants. This Settlement was achieved as a direct result of Plaintiffs' and Settlement Class Counsel's efforts to diligently investigate, prosecute, and negotiate a settlement of the Actions (defined below) against five sets of highly skilled opposing defense counsel.

8.     As discussed in more detail below, the Settlement was reached after five years of vigorous litigation in two jurisdictions. Settlement Class Counsel completed an extensive pre-suit investigation; prepared lengthy and detailed complaints; survived significant motion practice; participated in extensive documentary discovery that encompassed the review of millions of pages of documents produced by the Auditor Defendants, GPB Defendants, and third parties; worked with Plaintiffs to produce hundreds of thousands of pages of documents; prepared for and/or defended depositions of Plaintiffs in both Actions; retained expert witnesses and worked with those witnesses to prepare expert reports; prepared for, defended, and took depositions of numerous expert witnesses; navigated complex issues created by the GPB principals' criminal proceedings and the installation of a monitor and, eventually, a receiver to oversee the winddown of the GPB Funds; and finally, participated in a multi-day mediation attended by multiple parties with a world-renowned mediator and continued settlement negotiations thereafter.

---

[1] All capitalized terms herein shall have the same meanings as those set forth in the Stipulation, unless otherwise defined.

9.      Plaintiffs and Settlement Class Counsel believe that the proposed $46 million Settlement represents a very favorable result for the Settlement Class. While Plaintiffs and Settlement Class Counsel believe their claims against Defendants are meritorious, they also recognize that, in the absence of settlement, they faced significant risks, including that continued litigation might have resulted in no recovery.

10.     The close attention paid and oversight provided by Plaintiffs throughout this case is another factor in favor of the reasonableness of the Settlement. Plaintiffs were actively involved in overseeing the litigation and settlement negotiations and have endorsed the Settlement as fair and reasonable. The Declarations of Settlement Class Representatives are attached hereto as Exhibits A-1 through A-20.

11.     In addition to seeking final approval of the Settlement, Plaintiffs seek approval of the proposed Plan of Allocation as fair and reasonable. The Plan of Allocation, which was developed in consultation with Plaintiffs' damages consultant, provides for the distribution of the Net Settlement Fund on a *pro rata* basis to Settlement Class Members who submit Claim Forms that are approved for payment by the Court. Each Claimant's share of the Net Settlement Fund will be calculated based on his, her, or its losses suffered in the GPB Funds.

12.     The Court preliminarily approved the Order Preliminarily Approving Class Action Settlement, dated August 11, 2025, ECF No. 1256 ("Preliminary Approval Order"). The Preliminary Approval Order appointed the undersigned as Settlement Class Counsel for purposes of effecting this Settlement, and appointed Epiq Class Action & Claims Solutions, Inc. as the Claims Administrator. A Final Approval hearing is set for November 24, 2025 at 3:30 p.m. Central Time.

13. For all of the reasons discussed in this Joint Declaration, its Exhibits, and the accompanying Memoranda of Law, Plaintiffs and Settlement Class Counsel respectfully submit that the Settlement, Plan of Allocation, and Settlement Class Counsel's requests for fees, expenses, and service awards for the Plaintiffs are fair, reasonable, and adequate in all respects and that the Court should approve them under Federal Rule of Civil Procedure 23(e)(2).

## II. PROSECUTION OF THE ACTION

### A. BACKGROUND OF PLAINTIFFS' ALLEGATIONS

14. Plaintiffs in the consolidated putative class action pending before this Court in the case captioned *Kinnie Ma Individual Retirement Acct., et al. v. Ascendant Capital, LLC, et al.*, No. 1:19-CV-1050-RP (W.D. Tex.) ("*Kinnie Ma* Action") and Plaintiffs in a putative class action pending in the Southern District of New York in the case captioned *DeLuca, et al. v. GPB Holdings, LP, et al.*, No. 1:19-CV-10498-LAK-JW (S.D.N.Y.) ("*DeLuca Action*", and together with the *Kinnie Ma* Action, the "Actions"), allege that GPB Capital Holdings, LLC ("GPB Capital"), working together with Austin, Texas-based Ascendant Capital, LLC and its affiliates ("Ascendant") and others, victimized approximately 15,000 unsuspecting investors with a $1.8 billion Ponzi-like investment scheme carried out from January 1, 2013 through December 31, 2018, inclusive. The complaints in the Actions assert that many investors were retirees and others who lost their life savings. The complaints further allege that GPB Capital—the general partner, control person, manager, and majority owner of the GPB investment vehicles—orchestrated the offerings and through various affiliates and broker-dealers sold units in its limited partnerships, including: (i) GPB Holdings, LP; (ii) GPB Holdings Qualified, LP; (iii) GPB Automotive Portfolio, LP; (iv) GPB Holdings II, LP; (v) GPB Waste Management, LP (also known as Armada Waste Management LP); (vi) GPB Cold Storage LP; (vii) GPB NYC Development, LP; and (viii)

GPB Holdings III, LP (the "GPB Funds"). GPB Capital and the GPB Funds are collectively referred to herein as the "GPB Defendants."

15.     The GPB Funds are limited partnerships that invested in various industries, including automobile dealerships, waste management companies, real estate, and other industries. Among other things, the complaints in the Actions allege that GPB Defendants fraudulently induced investors to invest in the GPB Funds with promises of outsized total investment returns in the amount of 8% annualized, paid as current or future distributions "from profits" beginning approximately 100 days after investing. The complaints charge that distributions were in large part paid from new investor cash in a Ponzi-like scheme, thereby hiding the Funds' poor performance and executives' embezzlement. They further allege that, rather than receiving distributions from profits, investors received other investors' monies.

16.     Ultimately, GPB Capital and the GPB Funds received regulatory scrutiny from State Attorneys General and the Securities and Exchange Commission ("SEC") and were unable to raise new monies to fund the alleged scheme, stopping sales of units in the GPB Funds in late 2018. In February 2021, the U.S. Department of Justice ("DOJ") criminally indicted GPB Capital CEO David Gentile and Ascendant Capital's CEO Jeffry Schneider, the individuals behind the scheme for securities fraud and mail fraud. On August 1, 2024, a jury found both men guilty on all charges. Eight states have initiated regulatory actions against GPB Capital, Ascendant, and their principals, and, significantly, the SEC has initiated a regulatory action against them.

17.     In February 2021, the Court overseeing the SEC action in the Eastern District of New York appointed a monitorship over GPB Capital and the GPB Funds, pursuant to which the Monitor, Joseph Gardemal III, was responsible for overseeing all material transactions. *See SEC v. GPB Cap, Holdings, LLC*, No. 21-cv-00593-MKB-VMS, ECF 23 (E.D.N.Y. Feb. 12, 2021). On

December 7, 2023, Chief Judge Brodie ordered that the monitorship be converted into a receivership and appointed Mr. Gardemal as the Receiver. *SEC v. GPB Cap. Holdings, LLC*, No. 21-cv-00593-MKB-VMS, ECF 187 (E.D.N.Y. Dec. 7, 2023) (hereafter, "Receivership"). On December 4, 2024, the Second Circuit issued a Summary Order upholding the GPB receivership order and lifting the stay. *Securities and Exchange Commission v. GPB Capital Holdings, LLC*, No. 23-8035 ECF 59.1 (2d Cir. Dec 18, 2023).

18.     The district court recently approved the Receiver's distribution plan, which provides for: "(1) issuing an initial distribution of not more than $400,000,000 of Receivership Assets to investors in (a) APLP [Automotive Portfolio, LP]; (b) Holdings II; and (c) Cold Storage on a partnership-by-partnership basis in accordance with each Fund's Limited Partnership Agreement (the 'Initial Distribution'); (2) maintaining $719,000,000 in cash reserves (the 'Reserves'); (3) establishing a claims solicitation and resolution procedure for investors and claimholders against the Receivership (the 'Claims Resolution Procedures'); and (4) issuing subsequent distributions to the extent that funds are available for that purpose (the 'Subsequent Distributions')." *SEC v. GPB Capital Holdings, LLC*, No. 21-CV-583 (MKB), 2025 U.S. Dist. LEXIS 67087, *13–16, *35–39 (E.D.N.Y. Apr. 8, 2025).

19.     In addition to bringing claims against GPB Capital, the GPB Funds, their principals, and various other parties alleged to have provided substantial assistance in the scheme, Plaintiffs brought claims against the Auditor Defendants that, at various points, provided auditing services to one or more of the GPB Funds. Plaintiffs alleged that Auditor Defendants committed fraud and/or aided and abetted in a fraud by allowing the GPB Funds to use the auditors' reputations for marketing purposes and by providing unqualified audit opinions on GPB Funds' financial statements. By 2018, certain Auditor Defendants withdrew certain audit opinions, and GPB Capital

was forced to disclose that certain of the Funds' financial statements were not reliable and that the funds had material weaknesses in their internal controls. The *Kinnie Ma* Plaintiffs also asserted that the Auditor Defendants aided and abetted violations of the Texas Securities Act ("TSA"), for which there is joint and several liability. The Auditor Defendants deny that they were or should have been aware of GPB's malfeasance and deny that they committed any wrongdoing in connection with GPB Capital or the GPB Funds.

### B.  THE KINNIE MA ACTION

20.     The *Kinnie Ma* Action was filed on October 25, 2019 as a putative class action.

21.     The matter *Barasch, et al. v. GPB Cap. Holdings, LLC, et al*., No. 1:19-cv-01079-LY (W.D. Tex.) ("*Barasch* Action") was filed on November 6, 2019 as a putative class action.

22.     In addition to suing GPB Capital, Ascendant and their affiliates, as well as the Auditor Defendants, Plaintiffs sued numerous additional parties alleging that they provided substantial assistance to the scheme. GPB Capital, the Auditor Defendants, and others all moved to dismiss Plaintiffs' complaint.

23.     For their part, the Auditor Defendants challenged, *inter alia*, personal jurisdiction, venue, application of the Texas Securities Act, and whether Plaintiffs had adequately alleged actual knowledge, participation, and other required elements of their claims.

24.     The *Kinnie Ma* Plaintiffs and the *Barasch* Plaintiffs defeated 19 motions to dismiss, respectively, including the Auditor Defendants' motions, pursuant to the Court's Orders of August 25, 2021.

25.     The *Barasch* and *Kinnie Ma* Actions were consolidated on June 1, 2022, and one month later, the Plaintiffs filed an amended consolidated complaint.

26.     Following Plaintiffs' surviving motions to dismiss, *Kinnie Ma* Counsel engaged in class and written merits discovery throughout spring and summer of 2023 with Auditor Defendants and others, receiving millions of pages of discovery.

27.     *Kinnie Ma* Counsel also retained two experts, served extensive expert reports, and defended those experts' depositions. They also conducted the depositions of the Auditor Defendants' two proposed class certification experts. Thirteen Class representatives were also deposed.

28.     In all, *Kinnie Ma* Counsel defended or conducted 17 depositions of plaintiffs and experts, all relevant to class certification.

29.     This Action was stayed immediately prior to Plaintiffs' moving for class certification, pending final resolution of the criminal proceedings against Defendants David Gentile and Jeffry Schneider, which concluded on August 1, 2024 with guilty verdicts for each of the defendants. Gentile and Schneider were finally sentenced on May 9, 2025, and Plaintiffs' Motion for Preliminary Approval was filed on May 13, 2025.

## C.  THE *DELUCA* ACTION

30.     *DeLuca* Plaintiffs' Counsel conducted a robust investigation, including a pre-suit books and records investigation that started in May 2018. The case was subsequently filed as a putative class action in the Southern District of New York on November 12, 2019.

31.     *DeLuca* Plaintiffs opposed (and survived) the first round of motions to dismiss, submitting a 70-page omnibus opposition (*DeLuca* ECF No. 77) and 15 pages sur-reply (*DeLuca* ECF No. 90), to Defendants' motions challenging the sufficiency of the pleadings and venue, as well as a stay motion. (*DeLuca* ECF No. 96)

32.    Thereafter, Counsel for *DeLuca* Plaintiffs procured and housed over 5 million documents from the GPB Defendants. Upon review of these documents, the *DeLuca* Plaintiffs were concerned about the actions of the Auditor Defendants in their audits of the GPB Funds.

33.    The *DeLuca* Plaintiffs used the subpoena process to obtain auditor work papers and other materials, which allowed the *DeLuca* Plaintiffs to amend their complaint on October 1, 2021 to add particularized allegations regarding accounting fraud and aiding and abetting accounting fraud against the Auditor Defendants. (*Deluca* ECF No. 132).

34.    Following this extensive document production and complaint amendment, the *DeLuca* Plaintiffs agreed to stay the action as to all parties pending the criminal proceeding against three GPB insiders.

35.    The criminal proceedings faced ongoing delays. In light of these delays, on November 18, 2022, the *DeLuca* Plaintiffs moved to lift the stay as to the Auditor Defendants. (*DeLuca* ECF No. 151).

36.    On January 5, 2023, the SDNY court granted the *DeLuca* Plaintiffs' motion, lifting the stay as to the Auditor Defendants and allowing the case to proceed with fact discovery and class certification.  (*DeLuca* ECF No. 171).

37.    Once the stay was lifted as to the Auditor Defendants, counsel for the *DeLuca* Plaintiffs served renewed document discovery requests pursuant to Fed. R. Civ. P. 26 and eighteen months of discovery ensued between the *DeLuca* Plaintiffs and the five Auditor Defendants, resulting in the production of nearly 80,000 additional documents by the Auditor Defendants. Counsel collected and reviewed thousands of the *DeLuca* Plaintiffs' documents: Barbara DeLuca (13,365 documents), Drew R. Naylor (5,651), Peggy Rollo (6,582), Peter Beddia (1,247), Michael Oles (1,273), Robert Ricci (1,383), and James Staples, as Trustee of the 616 Moved Trust (1,373).

In addition, the *DeLuca* Plaintiffs themselves produced many documents.  In particular, DeLuca produced 328 documents totaling 3,096 pages; Naylor produced 280 documents totaling 14,400 pages; and Rollo produced 1,269 documents totaling 19,828 pages.

38.     While engaged in significant discovery efforts, *DeLuca* Plaintiffs had to simultaneously move for class certification and respond to two separate rounds of auditor motions to dismiss.

39.     Specifically, on March 6, 2023, the Auditor Defendants each filed their first round of separate motions to dismiss seeking to dismiss the claims against them and/or stay the case. Auditor Defendants' briefing of these motions totaled ***193 pages***. (*DeLuca* ECF Nos. 188-205). *DeLuca* Plaintiffs opposed these motions with an omnibus repose totaling 65 pages. (*Id.*, 219).

40.     On July 28, 2023, the *DeLuca* Plaintiffs filed a Motion for Class Certification and a 27-page Memorandum of Law and a robust Joint Declaration attaching 26 different exhibits including Declarations of the *DeLuca* Plaintiffs and the Declaration of Benjamin Sacks which set forth an expert opinion relating to ascertainability of damages. (*DeLuca* ECF Nos. 243-47).

41.     On September 19, 2023, the *DeLuca* Plaintiffs filed their Second Amended Class Action Complaint. (*Id.*, 265).

42.     On November 2, 2023, the Auditor Defendants each filed separate, renewed motions to dismiss the claims asserted against them. (*DeLuca* ECF Nos. 278-294).  The briefing for these second wave of motions totaled 210 pages.  (*Id.*, 278-294 & 315-31). The *DeLuca* Plaintiffs had to file five separate responses on December 15, 2023, with response briefing totaling 178 pages (*Id.*, 299-307) and supporting Joint Declaration (*Id.*, 308).

43.     By mid-April 2024, *DeLuca* Plaintiffs had nearly completed document discovery and were on the verge of commencing depositions when the parties agreed to stay the *DeLuca*

Action pending completion of the mediation process, which the Court ordered on April 24, 2024. (*DeLuca* ECF No. 328).

### III.    MEDIATION, NEGOTIATIONS, AND EXPERTS' INVOLVEMENT

44.    The *Kinnie Ma* and *DeLuca* Plaintiffs' Counsel took part in a two-day mediation with the Auditor Defendants on June 13 and 14, 2024, under the guidance of the Honorable Layn Phillips, a world-renowned mediator whose biography is available here: https://phillipsadr.com/our-team/layn-phillips/.

45.    Prior to the mediation, Counsel prepared detailed, fact-intensive mediation briefs and responded to pointed follow up questions posed by Mr. Phillips and his team.

46.    The mediation resulted in a settlement in principle of both Actions whereby the Auditor Defendants agreed to pay a total of $46 million in full and final settlement of the Class's claims.

47.    Following the mediation, the Parties continued to engage in arm's-length settlement negotiations, which included drafts of settlement papers and exhibits thereto.

48.    The Parties executed the Stipulation on December 3, 2024, after months of extensive, arms' length negotiations.

49.    The *Kinnie Ma* and *DeLuca* Plaintiffs' Counsel engaged experts at multiple stages in the litigation process, including with class certification and damages issues prior to settlement.

50.    Settlement Class Counsel also engaged experts to develop the Plan of Allocation for the Settlement Funds.

51.    Considering the obstacles the Settlement Class faces in obtaining a judgment at trial, we believe the proposed Settlement to be fair, reasonable, adequate, and in the best interests of the Settlement Class. We also believe the Settlement was the product of serious, informed, non-

collusive negotiations. Accordingly, we recommend the proposed Settlement to Settlement Class Members.

## IV.    RISKS OF CONTINUED LITIGATION

52.    The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a $46 million cash payment, which has already been funded and is currently sitting escrow pending Court approval of the Settlement. Plaintiffs and Settlement Class Counsel believe that the proposed Settlement is a fair and favorable result for the Settlement Class.

53.    As explained below, Plaintiffs believe that their claims would ultimately be borne out by the evidence; however, they also understand that they would face formidable obstacles prior to any recovery at trial. The principal claims in the Actions are based on violations of the Texas Securities Act and aiding and abetting common law fraud, among others. Plaintiffs allege that the Auditor Defendants facilitated numerous violations of law committed by GPB, thus allowing GPB Capital to carry out a Ponzi-like scheme over a multi-year period. Claims against auditors for aiding and abetting fraud and violations of the securities laws often face significant challenges, and this matter was no exception. The Auditor Defendants have adamantly denied liability and would continue to do so absent the Settlement. The Auditor Defendants would have vigorously contested class certification, as well as the amount of damages suffered by Plaintiffs and the Settlement Class. Continued litigation would take years, with the only guarantee being the expenditure of substantial additional time and funding.

### A.  General Risks in Prosecuting Investor Fraud Class Actions

54.    In recent years, investor class actions have faced greater risks than in prior years, and it is not uncommon for district courts to dismiss investor class actions at the summary judgment stage. *See, e.g.*, *Murphy v. Precision Castparts Corp.*, No. 3:16-cv-00521-SB, 2021 WL

2080016, at *1 (D. Or. May 24, 2021), *aff'd sub nom. AMF Pensionsforsakring AB v. Precision Castparts Corp.*, No. 21-35516, 2022 WL 2800825 (9th Cir. July 18, 2022); *Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-0076-APG-GWF, 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017), *aff'd sub. nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th. Cir. 2018); *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554-55 (S.D.N.Y. 2008), *aff'd* 597 F.3d 501 (2d Cir. 2010); *In re Xerox Corp. Sec. Litig.*, 935 F. Supp. 2d 448, 496 (D. Conn. 2013), *aff'd sub. nom. Dalberth v. Xerox*, 766 F.3d 172 (2d Cir. 2014).

55.    And even cases that have survived summary judgment can be dismissed prior to trial in connection with *Daubert* motions, such as those likely to be filed by Defendants here. *See, e.g.*, *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston*, 853 F. Supp. 2d 181, 197-98 (D. Mass. 2012), *aff'd*, 752 F.3d 82 (1st Cir. 2014) (granting summary judgment *sua sponte* in favor of the defendants after finding that the loss study offered by plaintiffs' expert was unreliable and that there was accordingly no evidence that the market reacted negatively to disclosures).

56.    Even when investor class action plaintiffs successfully overcome multiple substantive and procedural hurdles pre-trial, there remain significant risks that a jury will not find the defendants liable or award expected damages. For instance, a jury recently found in an analogous case, *In re Tesla Inc. Securities Litigation*, that none of the defendants had violated the federal securities laws, even though the plaintiffs had previously obtained summary judgment on the critical elements of falsity and scienter. *See* Verdict Form, *In re Tesla., Inc. Sec. Litig.*, No. 3:18-cv-04865 (N.D. Cal. Feb. 2, 2023), ECF No. 671.

57.    Further, post-trial motions, based on a complete record, also present substantial risks. For example, in *In re BankAtlantic Bancorp, Inc.*, following a jury verdict in the plaintiffs'

favor, the district court granted the defendants' motion for judgment as a matter of law and entered judgment in favor of the defendants on all claims. 2011 WL 1585605, at *14-22 (S.D. Fla. Apr. 25, 2011), *aff 'd*, 688 F.3d 713 (11th Cir. 2012) (holding that there was insufficient trial evidence to support a finding of causation).

58.     Intervening changes in the law may also impact a successful trial verdict. For example, a district court in Oregon reconsidered its order denying defendants' motion for summary judgment and granted the motion more than a year later based on a new decision by the Ninth Circuit. *See Precision Castparts*, 2021 WL 2080016, at *6.

59.     The risk that even a successful trial verdict could be overturned by a later appeal is very real in investor fraud class actions. There are numerous instances across the country where jury verdicts for plaintiffs in investor class actions were overturned after appeal. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation); *In re Oracle Corp. Sec. Litig.*, No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict after 19-day trial and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *In re Apple Comp. Sec. Litig.*, No. C-84-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

60.     Investor fraud class actions face serious risks of dismissal and non-recovery at every stage of litigation.

**B.  Specific Risks Concerning This Action**

61.    Plaintiffs and Settlement Class Counsel believe the claims asserted against the Auditor Defendants in the *DeLuca* and *Kinnie Ma* Actions are meritorious. They recognize, however, Auditor Defendants would have mounted numerous challenges that presented serious risks to recovery.

62.    Auditor Defendants would have mounted vigorous challenges to class certification, highlighting their differing conduct over differing time periods as to different GPB Funds. If some or all of these arguments were successful, Plaintiffs and the Class Members would have been forced to pursue their claims on an individualized or group basis, which many of them would likely have not been able to do, resulting in a near total diminution of the settlement value of Plaintiffs' claims.

63.    Likewise,  Auditor Defendants surely would have renewed their prior challenges to, *inter alia*, Plaintiffs' claims of actual knowledge and substantial assistance at the summary judgment stage, and would have advanced similar defenses at trial. Disputes regarding investors' reliance on the  Auditor Defendants' work product would likely have arisen as well.

64.    Even if Plaintiffs prevail at class certification and establish liability at trial, they would face substantial challenges proving damages. Auditor Defendants would likely challenge Plaintiffs' claims that Settlement Class Members were damaged by their conduct. These issues would likely come down to an inherently unpredictable and hotly disputed "battle of the experts" attempting to parse these issues on an auditor-by-auditor, fund-by-fund basis over a period of several years. The  Auditor Defendants would likewise have mounted *Daubert* challenges seeking to exclude or limit Plaintiffs' expert's ability to offer opinions on key issues in the case. Finally, there would have been significant offset for recoveries made by investors through the Receivership

(*see* details below) and/or any recovery from forfeiture in the criminal proceeding (amount not yet known).

65.     Each of the foregoing poses the risk that Plaintiffs' claims will not succeed, or would significantly reduce damages—and these risks are magnified by the fact that Plaintiffs would have had to prove their claims five times over, *i.e.*, as to each of the Auditor Defendants based on differing conduct over differing time periods as to different GPB Funds.

66.     Accordingly, in the absence of the Settlement, there was a very real risk that the Settlement Class would have recovered an amount significantly less than the Settlement Amount—or nothing at all. Thus, the payment of $46 million, particularly when viewed in the context of the significant risks and uncertainties involved in proving both liability and damages and the potentially significant offsets, weighs strongly in favor of approving the Settlement.

67.     In sum, Plaintiffs recognize that, had the case proceeded to trial, it may have been very difficult to recover all or even most of the damages claimed. Therefore, and based on all of the factors summarized above, Plaintiffs and Settlement Class Counsel believe that the $46 million Settlement represents an excellent result for the Settlement Class. This Settlement Amount has already been funded and is awaiting final approval by the Court to distribute. The Settlement Class's receipt of this immediate and substantial benefit now, as opposed to incurring the significant risk that the Settlement Class would recover a lesser amount, or nothing at all, after many more years of litigation and a trial, is in the Settlement Class Members' best interests. Indeed, the Parties were deeply divided on several key factual issues central to the litigation, and there was no guarantee that Plaintiffs' positions on these issues would prevail at class certification, summary judgment, or trial. If Auditor Defendants had succeeded on any of their substantial defenses,

Plaintiffs and the Settlement Class would have recovered nothing at all or, at best, would likely have recovered far less than the Settlement Amount.

## V.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE IN LIGHT OF THE POTENTIAL RECOVERY IN THE ACTION

68.    The Settlement is also reasonable when considered in relation to the range of potential recoveries that might be obtained if Plaintiffs prevailed at trial, which was far from certain for all the reasons noted above.

69.    One of Plaintiffs' retained experts issued a report providing a detailed legal and analytical framework for calculating the Class Members' damages, and the receiver appointed to oversee the unwinding and liquidation of the GPB Funds has provided data on a fund-by-fund basis detailing the amounts raised by each fund, the amounts previously distributed to investors, and the amounts the receiver has distributed to date and anticipates distributing to investors in the future.[2]

70.    The Receiver's data indicates that Settlement Class Members' losses will fall between $238 million and $366.6 million, meaning that the Settlement Amount of $46 million represents a recovery of between 12.5% and 19.3% of the total estimated maximum damages that could be established for the Settlement Class. This result is well in excess of other recoveries in the Fifth Circuit. *See* Securities Class Action Settlements: 2021 Review and Analysis, at 19 (Cornerstone                Research                2022),                avail.                at

---

[2] Receiver's Motion For Entry of an Order Approving  (I) the Distribution Plan (II) Initial And Subsequent Distributions, (III) the Form And Manner of the Claims Determination and Solicitation Process, (Iv) The Proof Of Claim Form, (V) the Claims Procedures, and (VI) Granting Related Relief Report, filed in the action *SEC v. GPB Capital Holdings et al.*, 1:21-cv-00583-MKB-VMS    (E.D.N.Y),    at    ECF    No.    228-1,    at    4,    *available at* https://document.epiq11.com/document/getdocumentbycode?docId=4486434&projectCode=GPB&source=DM.

https://www.cornerstone.com/wpcontent/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf (the median settlement in investor class actions in the Fifth Circuit from 2012 to 2021 was 5% of damages).

71.     Given the risks and costs of further litigation as discussed above, the $46 million recovery achieved by Plaintiffs represents a very good result for the Settlement Class that is well-within the range of reasonableness supporting final approval.

## VI.    ISSUANCE OF NOTICE TO THE SETTLEMENT CLASS AND THE REACTION OF THE SETTLEMENT CLASS TO DATE

72.     The Parties have stipulated to certification of the Settlement Class for purposes of the Settlement only. The Settlement Class consists of "[a]ll Persons who, directly or through an intermediary, purchased or otherwise acquired limited partnership units in any of the GPB Funds during the Class Period (January 1, 2013 through December 31, 2018, inclusive), and suffered a loss thereby, as well as any Persons who are transferees of such limited partnership units (except for certain individuals and entities that have been excluded from the Settlement Class). Stipulation at ¶ 1(kk).

73.     In its Preliminary Approval Order, the Court found, pursuant to Rule 23(e)(1)(B)(ii) of the Federal Rules of Civil Procedure:

> "that it will likely be able to certify the Settlement Class for purposes of the proposed Settlement because the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) have been or likely will be satisfied, as follows: (a) the members of the Settlement Class are so numerous that their joinder would be impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of Plaintiffs in the action are typical of the claims of the Settlement Class; (d) Plaintiffs and Settlement Class Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the action for purposes of the proposed Settlement."

Preliminary Approval Order at ¶ 2. In connection with final approval of the Settlement, the Court will be asked to finally certify the Settlement Class and finally approve the appointment of Plaintiffs as Class Representatives for the Settlement Class and the appointment of Timothy S. DeJong of Stoll Stoll Berne Lokting & Shlachter, P.C., Daniel L. Berger of Grant & Eisenhofer P.A., and Catherine Pratsinakis of Dilworth Paxson LLP, as Settlement Class Counsel for purposes of effectuating the Stipulation and this Settlement. *Id*. ¶ 4.

74.     The Court's Preliminary Approval Order also approved Plaintiffs' proposed Notice and Summary Notice and directed the Claims Administrator to carry out Plaintiffs' proposed notice plan, which the Court concluded was designed to accomplish the best notice practicable under the circumstances; reasonably calculated to apprise Settlement Class Members of the pendency of this Action, the Settlement, and theirs right in connection with same; and satisfied the requirements of Fed. R. Civ. P. 23, the United States Constitution (including the Due Process Clause), and all other applicable laws and rules. *Id*. ¶¶ 9-10.

75.     That plan required Settlement Class Counsel to provide a list (consisting of names, mailing addresses, and e-mail addresses) to the Claims Administrator in electronic format of the Persons who purchased or otherwise acquired limited partnership interests in the GPB Funds during the Class Period, as well as any subsequent transferees of such limited partnership units. Within 20 business days after the Court's entry of the Preliminary Approval Order, the Claims Administrator was to mail a copy of the approved Notice and the Proof of Claim and Release Form by first-class mail to Settlement Class Members at the addresses set forth in the above-referenced list. Contemporaneously therewith, the Claims Administrator would post copies of the Notice, Claim Form and other important case documents on a website developed for the Settlement. *See id*. ¶ 9(a)-(d).

76.     The Court's Preliminary Approval Order also directed that not later than ten (10) business days after the mail notice deadline, the Claims Administrator was cause the approved Summary Notice to be published once in *Investor's Business Daily* and transmitted once over *PR Newswire*. *Id.* ¶ 9(d).

77.     Pursuant to the Preliminary Approval Order, Settlement Class Counsel instructed the Claims Administrator to begin disseminating copies of the Notice and Claim Form (together, "Notice Packet") by mail. ¶ 9(b). To disseminate the Notice Packet, Settlement Class Counsel obtained Settlement Class data from GPB Capital in 2024, as well as updated Settlement Class data from the Receiver in 2025.

78.     The Notice contains, among other things, descriptions of the *DeLuca* and *Kinnie Ma* Actions, the Settlement, the proposed Plan of Allocation, the Settlement Class Members' rights to participate in the Settlement, their right to object to the Settlement, the Plan of Allocation, and/or the fee and expense application, and their rights to exclude themselves from the Settlement Class. The Notice also informs Settlement Class Members of Settlement Class Counsel's intent to apply for attorneys' fees not to exceed 30% of the Settlement Fund and for payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Actions, which amounts may include reasonable costs and expenses incurred by Plaintiffs in connection to the representation of the Settlement Class.

79.     The Claims Administrator mailed copies of the Notice Packet to Settlement Class Members on September 9, 2025 (the "Notice Date"). *See* Declaration of Alexander P. Villanova on Implementation of Notice Plan and Settlement Administration, dated October 16, 2025, attached hereto as Exhibit B ("Epiq Decl."), at ¶¶ 13, 16; Epiq Decl. Ex. 2. As of October 14, 2025, the Claims Administrator has mailed out 16,427 Notice Packets. *Id*. at ¶ 18.

21

80.     Settlement Class Counsel worked with the Claims Administrator to publish the required website, www.GPBSecuritiesSettlement.com, on September 9, 2025. *Id*. at ¶ 19. As of October 14, 2025, the settlement website has received 37,570 hits. *Id*. at ¶ 20. The Claims Administrator also maintains a toll-free telephone number that Settlement Class Members may call with inquiries about the Settlement, which as of October 14, 2025, has handled 1,550 phone calls. *Id*. at ¶ 22.

81.     In addition to the above, the Claims Administrator caused the Summary Notice to be published in *Investor's Business Daily* and by *PR Newswire* on September 22, 2025. *Id*. at ¶ 8 & Epiq Decl. Ex. 1.

82.     As set forth above, the deadline to request exclusion from the Settlement Class is October 30, 2025, while the deadline for Settlement Class Members to file objections to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application is November 3, 2025. To date, no objections have been filed or otherwise received and only five requests for exclusion from the Settlement Class have been received. *Id*. ¶¶ 23-24.  Meanwhile, over 5,000 claims have been received to date, for a current claims rate of 34%. *Id*. at ¶ 25.

## VII.    PROPOSED ALLOCATION OF THE PROCEEDS OF THE SETTLEMENT

83.     Pursuant to the Preliminary Approval Order and as set forth in the Notice, all Settlement Class Members who want to participate in the Distribution of the Net Settlement Fund (*i.e.*, the Settlement Amount, less deduction of any Taxes, costs of Administration of the Settlement, awards of attorneys' fees or expenses, and service awards, as provided for in the Stipulation and approved by the Court) are required to submit a timely Claim Form and must have suffered a "Net Loss" on their investment(s) in GPB Fund(s) as that term is defined in the Plan of

Allocation. The Plan of Allocation is described in the Notice and is also filed into the record at ECF No. 1218-1 at 96.

84.    The Plan of Allocation defines "Net Loss" as:

> the total principal amount that a claimant invested in any GPB Fund(s) during the Class Period, minus any prior amounts received by that claimant on account of his or her investment(s) (including any amounts previously received as redemptions or from sales ("Total Sales/Redemption Proceeds"), dividends or distributions received from GPB ("Total Distribution Amounts"), or the sum of gross distributions received from the GPB Funds' appointed monitor or receiver, and/or from any other source as a result of any actual or threatened litigation or arbitration concerning the GPB Funds ("Total Other Recoveries").

85.    Each Settlement Class Member has received a Claim Form pre-populated with data informing the Settlement Class Members' Net Loss, as provided by GPB Capital to the Claims Administrator. Settlement Class Members are responsible for reviewing and confirming the accuracy of the pre-populated information provided by GPB Capital and providing any additional information required by the Claim Form (*e.g.*, information about any prior recoveries related to GPB Fund investments). After a claimant reviews, signs and timely submits a Claim Form, the Claims Administrator will determine whether the claimant has a Net Loss pursuant to the formula set forth in the Plan of Allocation, using the information provided and/or verified by the claimant on, or in conjunction with, the Claim Form. If the Claims Administrator determines that there is a deficiency in the Claim Form (*e.g.*, it is not signed) or rejects the claim (*e.g.*, claimant is not a Settlement Class Member or has no Net Loss), the Claims Administrator will send a letter notifying the claimant of the grounds for the deficiency and/or rejection and will provide the claimant thirty (30) days from the date of the deficiency or rejection letter to contest and/or cure the issue identified. Once all disputes are resolved, the Claims Administrator will finalize the Net Loss amounts and calculate each claimant's individual share of the Net Settlement Fund.

86.     Each claimant who is eligible for payment will receive their share of the Net Settlement Fund to be paid on a proportional, or "pro rata", basis based on each claimant's "Net Loss" as a percentage of all Authorized Claimants' aggregate Net Losses.

87.     The Settlement Fund is non-reversionary. Any monies that remain in the fund at least nine (9) months after distribution will be re-distributed to Authorized Claimants if cost-effective. If re-distribution is not cost-effective, any remaining balance shall be contributed to non-sectarian, not-for-profit organizations as recommended by Settlement Class Counsel and approved the Court.

88.     Settlement Class Counsel prepared the Plan of Allocation in consultation with a damages expert after careful consideration and analysis, and, in light of the Ponzi-like nature of the GPB Funds, without preference to any particular GPB Fund. The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered economic losses as a result of the violations of the Plaintiffs have alleged in the Actions. Settlement Class Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Amount among Settlement Class Members, taking into account the damages each Settlement Class Member suffered as a result of Defendants' alleged misconduct.

## VIII.   THE FEE AND LITIGATION EXPENSE APPLICATION

### A.  Settlement Class Counsel's Application for Attorneys' Fees

89.     Settlement Class Counsel is applying to the Court for an award of attorneys' fees in the amount of 30% of the Gross Settlement Fund, including any interest earned. Settlement Class Counsel also request payment from the Settlement Fund for expenses incurred in connection with the prosecution of the Actions.

90.     Settlement Class Counsel are applying for a fee award to be paid from the Settlement Fund on a percentage basis. As set forth in the accompanying *Motion for Attorneys' Fees and Litigation Expenses and Plaintiffs' Motion for Awards* filed concurrently herewith ("Fee Motion"), the percentage method is an appropriate method of fee recovery because it aligns the lawyers' interest in being paid a fair fee with the interest of the Settlement Class in achieving the maximum recovery in the shortest amount of time required under the circumstances, and has been recognized as appropriate by the U.S. Supreme Court and the Fifth Circuit Court of Appeals for cases of this nature. The legal authorities supporting the requested fees and expenses are set forth in the Fee Motion. The primary factual bases for the requested fees and expenses are summarized below.

91.     Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Settlement Class Counsel respectfully submit that the requested fee award is reasonable and should be approved. As discussed in the Fee Motion, a 30% of the Gross Settlement Fund fee award is fair and reasonable for attorneys' fees in common fund cases such as this, particularly given the facts and circumstances of this case, and is within the range of percentages awarded in securities class actions in this Circuit with comparable settlements.

92.     For more than five years, Settlement Class Counsel devoted substantial time to the prosecution of the Actions. As described above in greater detail, the work that Settlement Class Counsel performed included an extensive pre-suit investigation; preparation of lengthy and detailed complaints; significant motion practice (in the *DeLuca* Action, there were two rounds of motions to dismiss); extensive documentary discovery that encompassed the review of millions of pages of documents produced by the Auditor Defendants, GPB Capital, and other third parties;

Plaintiffs' production of hundreds of thousands of pages of documents; depositions of several Plaintiffs in connection with Plaintiffs' motion for class certification; motions for class certification filed in both Actions; retention and depositions of expert witnesses; navigation of complex issues created by the GPB principals' criminal proceedings and the installation of a monitor and, eventually, a receiver to oversee the winddown of the GPB Funds; preparing for a multi-day mediation attended by multiple parties with a world-renowned mediator; engaging in months of arms'-length negotiations thereafter; and preparing the necessary documentation to effectuate the Settlement and facilitate the Court's approval of that Settlement.

93.     Throughout the litigation, Settlement Class Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of the Actions. As the lead attorneys on the case, we personally monitored and maintained control of the work performed by other lawyers at our firms and at other firms throughout the litigation. Other experienced attorneys were also involved in the drafting of pleadings, motion papers, and in the settlement negotiations, and more junior attorneys and paralegals worked on matters appropriate to their skill and experience level.

94.     Attached are declarations submitted in support of Plaintiffs' Motion for Final Approval of Settlement with Certain Auditor Defendants and Plan of Allocation by Settlement Class Counsel. *See* Exhibit C-1: *DeLuca* Counsel Fee and Expense Declarations; Exhibit C-2: *Kinnie Ma* Counsel Fee and Expense Declarations.

95.     As set forth in Exhibit C-1, *DeLuca* Counsel expended a total of 11,340 hours in the investigation and prosecution of the *DeLuca* Action from inception through October 20, 2025. The resulting lodestar for the *DeLuca* Counsel is $8,073,919.50.

96.    As set forth in Exhibit C-2, *Kinnie Ma* Counsel expended a total of 9,153 hours in the investigation and prosecution of the *Kinnie Ma* Action from inception through October 20, 2025. The resulting lodestar for *Kinnie Ma* Counsel is $7,526,440.  The total lodestar reflected for all *DeLuca* and *Kinnie Ma* Counsel is **$15,600,360.**

97.    The requested fee of 30% of the Gross Settlement Fund is $13,800,000, plus interest accrued at the same rate as the Settlement Fund (estimated at approximately $85,000 from October 1, 2025 through November 30, 2025), and therefore represents a "negative" multiplier of 0.89. As discussed in further detail in the Fee Motion, the requested multiplier cross-check is within the range of fee multipliers typically awarded in comparable securities class actions and in other class actions involving significant contingency fee risk, in this Circuit and elsewhere.

98.    Additional factors support the requested fees as well.

99.    The prosecution of the Actions was undertaken on an entirely contingent basis. From the outset of their retention, Settlement Class Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Settlement Class Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Actions, and that funds were available to compensate staff and to cover the considerable litigation costs that a case such as the Actions require.

100.    With an average lag time of several years for such cases to conclude, the financial burden on contingent fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Settlement Class Counsel received no compensation during the course of the Actions and have collectively incurred $2,801,500 in litigation expenses in prosecuting the Actions for the benefit of the Settlement Class.

101.    Settlement Class Counsel also bore the risk that no recovery would be achieved. Despite the most vigorous and competent of efforts, success in contingent-fee litigation is never assured. As discussed herein, from the outset, this case presented multiple risks and uncertainties that could have resulted in no recovery whatsoever.

102.    As demonstrated by the firm resumes for Stoll Berne, Grant & Eisenhofer, and Dilworth Paxson previously filed into the record at ECF Nos. 1239-4, 1239-5, and 1239-6, respectively, Settlement Class Counsel are affiliated with the most experienced and skilled law firms in the securities litigation field, with a long and successful track record representing investors in such cases, and are consistently ranked among the top plaintiffs' firms in the country. We believe Settlement Class Counsels' extensive experience in the field and the ability of our attorneys added valuable leverage during the settlement negotiations.

103.    Settlement Class Counsel knew from experience that the commencement and ongoing prosecution of a class action did not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and legal arguments that are needed to sustain a complaint or win at class certification, summary judgment, and trial, or on appeal, or to cause sophisticated defendants to engage in serious settlement negotiations at meaningful levels. Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies.

104.    The quality of the work performed by Settlement Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. Here, Defendants were represented by experienced and extremely able counsel who vigorously represented their clients. In the face of this skillful and well-financed opposition, Settlement Class Counsel were

nonetheless able to negotiate with the Auditor Defendants to settle the case on terms that are favorable to the Settlement Class.

105.    Plaintiffs, who have closely supervised, monitored, and actively participated in the prosecution and settlement of the Actions, have evaluated Settlement Class Counsel's application for fees and fully support the fees requested. *See* Declarations of Settlement Class Representatives, attached hereto as Exhibits A-1 through A-20. Each of the Plaintiffs entered into retainer agreements at the outset of this litigation, and the 30% of the Gross Settlement Fund fee now requested is consistent with or lower than the permissible rate under those retainer agreements. After the Settlement was reached, Plaintiffs again reviewed and approved the requested fee and believe it is fair and reasonable in light of the result obtained for the Settlement Class, the substantial risks associated with the prosecution of the Actions, and the work performed by Settlement Class Counsel to date. *See id.* Plaintiffs' endorsement of Settlement Class Counsel's fee request further demonstrates its reasonableness and should be given weight in the Court's consideration of the fee award.

106.    The reaction of the Settlement Class Members likewise supports Settlement Class Counsel's fee request  as more than 16,000 Settlement Class Members were notified that Settlement Class Counsel would be making an application for an award of attorneys' fees in an amount not to exceed 30% of the Gross Settlement Fund. Ex. B, Epiq Decl., at ¶ 16. Notice of the fee application was also published in *Investor's Business Daily* and *PR Newswire* on September 22, 2025. *Id.* at ¶ 8.

107.    To date, there has been no objections to the Settlement or to Settlement Class Counsel's fee request.

108.    Settlement Class Counsel accepted this case on a contingency basis, committed significant resources to it, and prosecuted it without any compensation or guarantee of success and in the face of substantial risks and uncertainties. Their efforts have resulted in a significant recovery for the benefit of the Settlement Class. In circumstances such as these, and in consideration of the hard work and the excellent result achieved, we believe the requested continent fee of 30%, representing a collective "negative" multiplier of 0.89 when checked against counsel's lodestar, is fair, reasonable, consistent with awards that have been granted by other courts in this Circuit, and should be approved here as well.

**B.  The Litigation Expense Application**

109.    Settlement Class Counsel also seek payment from the Settlement Fund in the amount of $2,801,500 as reimbursement for litigation expenses that were reasonably incurred in connection with commencing, litigating, and settling the Actions.

110.    From the outset of the Actions, Settlement Class Counsel were aware that they might not recover any of their expenses and, even in the event of a recovery, would not recover any of their out-of-pocket expenditures until such time as the Actions might be successfully resolved. Settlement Class Counsel also understood that, even assuming that the case was ultimately successful, a subsequent award of expenses would not compensate them for the lost use of the funds advanced by them to prosecute the Actions. Accordingly, Settlement Class Counsel were motivated to and did take appropriate steps to avoid incurring unnecessary expenses and to minimize costs without compromising the vigorous and efficient prosecution of the case.

111.    Settlement Class Counsel have incurred a total of $2,801,500 in litigation expenses in connection with the prosecution of the Actions. These expenses are summarized in Exhibits C-1 and C-2 and identify each category of expense, *e.g.*, expert/consultant fees, mediation costs, and

online research, and the amount incurred for each category. These expense items are billed separately by Settlement Class Counsel, and such charges are not duplicated in Settlement Class Counsel's hourly rates.

112.    The largest category of expenses was Settlement Class Counsel's electronic discovery platform and associated charges, which were necessary to house the millions of pages of documents produced in discovery in this case in an orderly fashion that permitted meaningful review.

113.    Another significant category of expenses related to the retention of experts and consultants. Settlement Class Counsel consulted with experts in the fields of liability and damages during their investigation and the preparation of the complaints, in preparation for mediation, as part of the motions for class certification filed in the Kinnie Ma and DeLuca Actions, and in connection with the development of the proposed Plan of Allocation.

114.    The other expenses for which Settlement Class Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, mediation fees by Phillips ADR, court fees, travel costs, telephone costs, copying, and postage and delivery expenses.

115.    All of the litigation expenses incurred by Settlement Class Counsel were reasonable and necessary to the successful litigation of the Actions, and have been approved by Plaintiffs.

### C. Motion for Awards to Settlement Class Representatives

116.    Settlement Class Representatives seek modest service awards in the amount of $10,000 each, as reimbursement for the time and reasonable costs incurred in connection with their representation of the Settlement Class. *See* Exhibits A-1 through A-20.

117.    Settlement Class Representatives' intent to apply for services awards for Settlement Class Representatives was disclosed in the Notice. As of this filing, no objections have been received.

118.    Plaintiffs closely supervised, monitored, and actively participated in the prosecution and settlement of the Actions throughout their duration. As set forth in their respective declarations, Plaintiffs took active roles in prosecuting the Actions, including (1) overseeing Settlement Class Counsel with regard to issues and developments in the Actions; (2) reviewing draft filings and other important documents and materials related to the Actions; (3) consulting with Settlement Class Counsel on litigation and settlement strategy; and (4) responding to Defendants' discovery requests, including expending great effort obtaining and reviewing documents for production. *See id.*

119.    Additionally, several Plaintiffs were deposed in connection with Plaintiffs' anticipated motion for class certification, which required extensive, multi-day preparation sessions and grueling depositions conducted by vigorous defense counsel.

120.    Based on our experience and expertise in the prosecution of securities matters, we believe that the Plaintiffs' time and efforts were instrumental in securing the excellent result obtained for the Settlement Class Members through this $46 million Settlement. Courts in this District routinely grant service awards under such circumstances. *See e.g., Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-912-FB, 2016 WL 4419472, at *16 (W.D. Tex. May 26, 2016) (granting $10,000 service award for the class representative); *Grigson v. Farmers Group, Inc.*, No. 17-cv-88-LY, 2020 WL 13598801, at *5 (W.D. Tex. May 22, 2020 (granting service awards to three class representatives to "compensate them for their effort and commitment on behalf of the Settlement Class").

121.    The awards sought by Plaintiffs here are reasonable and justified and should be approved.

**IX.    EXHIBITS**

122.    Attached hereto are true and correct copies of the following documents previously cited in this Declaration:

**Exhibit A-1 through A-20:**   Declarations of Settlement Class Representatives;

**Exhibit B:**    Declaration of Administrator Alexander P. Villanova on Implementation of Notice Plan and Settlement Administration, dated October 20, 2025;

**Exhibit C-1:** *DeLuca* Counsel Fee and Expense Declarations; and

**Exhibit C-2:** *Kinnie Ma* Counsel Fee and Expense Declarations.

**X.    CONCLUSION**

123.    For all the reasons set forth above, Settlement Class Representatives and Settlement Class Counsel respectfully submit that the Settlement and the Plan of Allocation should be approved as fair, reasonable and adequate. Settlement Class Counsel further submit that the requested fee in the amount of 30% of the Gross Settlement Fund, plus interest earned, should be approved as fair and reasonable, the request for reimbursement of litigation expenses in the amount of $2,801,500 should be approved as fair and reasonable, and the service award of $10,000 to each of Plaintiff should be approved as fair and reasonable.

We declare under penalty of perjury that the foregoing is true and correct.

Executed on October 20, 2025.

*/s/ Timothy S. DeJong*
Timothy S. DeJong

*/s/ Catherine Pratsinakis*
Catherine Pratsinakis

*/s/ Caitlin M. Moyna*
Caitlin M. Moyna