**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| KINNIE MA IRA, JEFFERY S. GRAMM IRA, STACY GREASOR IRA, VICTOR WADE IRA, KAZUE BELL, DEAN CROOKS, CORRI RENE EDEN, CATHERINE KOMINOS, KAREN LOCH, ROBERT A. STONE LIVING TRUST, SHIRLEY STONE LIVING TRUST, THE STANLEY S. AND MILLICENT R. BARASCH LIVING TRUST, AND LORETTA DEHAY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ASCENDANT CAPITAL, LLC, *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 1:19-cv-01050-ADA |

**PLAINTIFFS' REPLY TO BROKER DEFENDANTS' RESPONSES (DKTS. 1296, 1298 AND 1299) TO, AND IN FURTHER SUPPORT OF, PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT WITH GPB CAPITAL, GPB AFFILIATED ENTITIES AND PAFSI**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ ii

I. INTRODUCTION ........................................................................................ 1

II. STANDARD OF REVIEW ........................................................................................ 3

III. ARGUMENT ........................................................................................ 3

A. Defendants Lack Standing. ........................................................................................ 3

B. The Broker Defendants' Baseless Attack on the General Fairness of the Settlement Falls Flat. ........................................................................................ 7

C. The Proposed Bar Order Is Well Grounded in Law. ........................................................................................ 9

D. The Broker Defendants' Self-Interested Delay Tactics Should Be Rejected. ........................................................................................ 14

E. No Modification to the Class Certification Provisions Are Necessary................ 15

IV. CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agretti v. Freight Sys., Inc.*,
982 F.2d 242 (7th Cir. 1992) ........................................................................................ 6

*Anderson v. Davis Wright Tremaine LLP*,
2023 WL 6003862 (D. Or. Sept. 5, 2023) ............................................................... 10, 13

*Chao v. Slutsky*,
2009 WL 3174711 (E.D.N.Y. Oct. 2, 2009)................................................................... 13

*City Bank v. Compass Bank*,
717 F.Supp.2d 599 (W.D. Tex. 2010)............................................................................. 5

*Ciuffitelli v. Deloitte & Touche LLP*,
2019 WL 1441634 (D. Or. Mar. 19, 2019),
*report and recommendation adopted*, 2019 WL 2288432 (D. Or. May 29, 2019) ............ 10, 13

*Del Carmen v. R.A. Rogers, Inc.*,
2018 WL 4701824 (W.D. Tex. Apr. 25, 2018)................................................................. 3

*Harden v. Raffensperger, Hughes & Co., Inc.*,
933 F. Supp. 763 (S.D. Ind. 1996) ............................................................................... 10

*In re Chinese-Manufactured Drywall Prods. Litig.*,
424 F. Supp. 2d 456 (E.D. La. 2020) ............................................................................. 4

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
228 F.R.D. 541 (S.D. Tex. 2005)......................................................................... 10, 12, 13

*In re Granada Partnership Sec. Litig.*,
803 F. Supp. 1236 (S.D. Tex. 1992) ........................................................................... 9, 12

*In re HealthSouth Corp. Sec. Litig.*,
572 F.3d 854 (11th Cir. 2009) ...................................................................................... 14

*In re Integra Realty Res. Inc.*,
262 F.3d 1089 (10th Cir. 2001) ...................................................................................... 6

*In re Texas Gen'l Petroleum Corp.*,
52 F.3d 1330 (5th Cir. 1995) ........................................................................................ 5

*LeBlanc v. Texas Brine Co., LLC*,
989 F.3d 359 (5th Cir. 2021) ........................................................................................ 4

*In re Moore*,
608 F.3d 253 (5th Cir. 2010) .......... 5

*SEC v. Stanford Int'l Bank, Ltd.*,
927 F.3d 830 (5th Cir. 2019) .......... 11

*Skinner v. Hunt Military Communities Mgmt., LLC*,
2023 WL 6532670 (W.D. Tex. Jan. 23, 2023) .......... 3

*Thomas v. Hughes*,
2017 WL 8161010 (W.D. Tex. Apr. 24, 2017) .......... 5

*TransAmerican Ref. Corp. v. Dravo Corp.*,
952 F.2d 898 (5th Cir. 1992) .......... 4

**Statutes**

Tex. Bus. & Comm. Code § 24.005 .......... 2, 5

Tex. Rev. Civ. Stat. Ann. Art. 581-33 .......... 4, 9, 10, 11

## I. INTRODUCTION

Nothing in the Broker Defendants' Responses comes close to making the required showing for this Court not to provide preliminary approval of the Settlement Agreement, which was heavily negotiated at arm's length between Plaintiffs, the Settling Defendants, and the court-appointed Receiver for the GPB Receivership Estate.[1] To the contrary, their responses only serve to confirm that the Broker Defendants lack standing to object and seek to advance ***their own interests*** rather than the interests of class members by delaying or derailing this Settlement.

The Broker Defendants also fail to seriously address this Court's Preliminary Approval (on August 11, 2025) of the Plaintiffs' class-wide settlement with the Auditor Defendants, wherein these Defendants made almost identical objections, all of which the Court rejected out of hand when it granted preliminary approval of that settlement. Dkt. 1256 (Court's Preliminary Approval Order). Rather than addressing that result, the Broker Defendants take the unique tactic of re-arguing the same rejected legal positions without any substantive discussion of the Court's prior order or Plaintiffs' Class Counsel's prior successful argument. Broker Defendants' failure to address the Court's prior order, and the failure of the virtually identical objections in connection with the Auditor Settlement, demonstrate that the Broker Defendants' objections are not based upon sound, factual, or legal grounds, but instead are merely a disguise for delay and negotiating leverage.

The GPB Settlement not only represents a significant monetary settlement for the Settlement Class in the amount of $67.5 million. It also represents an effective realignment of the claims asserted by the Settlement Class and the GPB Receivership litigation on a going forward

[1] The Broker Defendants' Responses refer to the oppositions filed by Concorde Investment Services, LLC (Dkt. 1296), Axiom Capital Management, Inc. (Dkt. 1298), and various Broker Defendants (Dkt. 1299). All other capitalized terms have the same definitions set forth in Plaintiffs' Motion for Preliminary Approval unless otherwise specified.

basis. Contrary to the Broker Defendants' complaints about the assignment of claims (Dkt. 1299 at 7-8), this realignment will allow litigation by both the Settlement Class and the GPB Receivership Estate to proceed effectively and economically as against, respectively, the remaining Defendants: by the Plaintiffs and the Settlement Class against the Broker Defendants (the Settlement authorizes the Plaintiff Class with exclusive right to pursue claims for fraudulent conveyances as against them); and by the Receivership against the GPB insiders (including, among others, Defendants Gentile, Schneider, Ascendant and AAS). The Settling Parties' apportionment of responsibility for such claims, respectively, against these groups of Defendants is a more effective, economical, and efficient litigation strategy than having the Settlement Class and the Receiver both pursue all such litigation claims. The Settlement authorizes the Plaintiff Class with the exclusive right to pursue claims under Texas Uniform Fraudulent Transfer Act ("TUFTA") and other similar state statutes (*i.e.*, the fraudulent conveyance claims) as against the Broker Defendants (except for certain insiders/lead brokers whose claims are being assigned *in toto* to the Receivership Estate), and assigns claims against GPB insiders to the Receivership. This realignment of litigation interests and the parties' continued litigation cooperation will effectively serve the interests of both the GPB Receivership Estate and the Settlement Class, and are an important part of the GPB Settlement not considered or addressed in the Broker Defendants' Responses.

Finally, this Court should not countenance the Broker Defendants' effort to delay for many months or years the distribution of valuable settlement compensation to thousands of Settlement Class Members, mostly senior or retired persons, who already have been waiting over seven years for return of the money they lost in the GPB scheme in which the Broker Defendants played a significant part. This Court should reject Broker Defendants' Responses, allow Plaintiffs to

provide class notice to the investors who were the real victims of this scheme (and who *actually do* have real interests in the Settlement) and proceed quickly to consider whether the Settlement may be finally approved.

## II. STANDARD OF REVIEW

"The preliminary fairness evaluation is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Del Carmen v. R.A. Rogers, Inc*., 2018 WL 4701824, at *6 (W.D. Tex. Apr. 25, 2018). This is not a high bar, as courts are "not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Id.* The focus of preliminary approval is whether or not "the [S]ettlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Skinner v. Hunt Military Communities Mgmt., LLC*, 2023 WL 6532670, at *2 (W.D. Tex. Jan. 23, 2023).

## III. ARGUMENT

The Settlement Agreement easily clears the bar for preliminary approval. At most, the Broker Defendants show that the Settlement Agreement causes them personalized angst. But angst is not a legally cognizable interest, and it certainly does not give the Broker Defendants standing to keep valuable funds out of the hands of their victims. As explained below, the Broker Defendants lack standing to object, and their objections—which appear to argue that Settlement Class Members did ***too well*** (Dkt. 1299 at 13-14)—lack merit, particularly at the preliminary approval stage.

### A. Defendants Lack Standing.

As previously argued with respect to the Auditor Settlement, the Broker Defendants lack standing to raise objections to issues such as the amount of the Settlement, the terms of the

Settlement, and the Plan of Distribution. It is black letter law that "non-Settling Parties generally lack standing to object to a settlement agreement." *LeBlanc v. Texas Brine Company, LLC,* 989 F.3d 359, 364 (5th Cir. 2021); *TransAmerican Ref. Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992) (same). Thus, the Broker Defendants lack standing to object to anything, with the only possible exception being the bar order and judgment reduction provisions.

The Broker Defendants, for example, lack standing to object that the Settlement Class definition is somehow "unfair" because it excludes them from the Settlement Class. ECF No. 1299 at 18-19. Tellingly, the Broker Defendants cite no case in which a court ordered that a Defendant should be allowed to participate in a Settlement as a plaintiff-class member. That is because the law provides for the exact opposite result. *See In re Chinese-Manufactured Drywall Prods. Litig.*, 424 F. Supp. 3d 456, 479-80 (E.D. La. 2020) (noting that complaints about exclusion from the settlement class "do not challenge the fairness, reasonableness, or adequacy" of the settlement and therefore are not addressed as part of the Court's approval analysis).

This broad principle applies with special force here because the Broker Defendants lack standing to pursue a Texas Securities Act ("TSA") claim in the first place. Under the TSA, Tex. Rev. Civ. Stat. Ann. Art. 581-33(A)(1), (2), the only parties with standing to pursue a TSA claim are those who have "***purchased***" securities from the Offeror who violated the registration requirements or made a material statement or omission in connection with the sale of such securities. None of the Broker Defendants contend that they were purchasers of such securities from the Offeror (GPB) who violated Section 33 of the TSA and, therefore, lack standing to be Class Members.[2]

[2] It is not enough as a matter of law for the Broker Defendants to contend that they were transferees of shares from actual GPB investors. Even if that were the case, the Broker Defendants have not provided any evidence that Settlement Class Member limited partnership interests were actually transferred to them. Their unprecedented theory thus fails many times over.

The real reason the Broker Defendants are purporting to object is that they fear the Settlement will make it easier for the Class to seek further recoveries against them—which, if true, would be a reason ***to approve*** the Settlement as beneficial to class members, not to derail it. A good example of this is the Broker Defendants' objection to the Settlement Agreement provision authorizing Plaintiffs to continue pursuing fraudulent transfer claims against them under TUFTA. Dkt. 1299 at 17-18.

The TUFTA claims possessed by the Receivership Estate, and the TUFTA claims possessed by the Settlement Class, are identical and seek the same damages. Under Texas law (*i.e.*, TUFTA, Tex. Bus. & Comm. Code § 24.005(a)), an individual creditor of a debtor (here GPB), which made a fraudulent conveyance, has standing to assert a fraudulent conveyance for all fraudulent conveyances made by such debtor. *See In re Texas Gen'l Petroleum Corp.*, 52 F.3d 1330, 1335 (5th Cir. 1995); *In re Moore*, 608 F.3d 253, 260-61 (5th Cir. 2010) ("the right to recoup a fraudulent conveyance [ ] may be invoked by a creditor…"). Here, the Plaintiffs (the creditors) have asserted fraudulent conveyance claims and have already survived a motion to dismiss. Consolidated Complaint (Dkt. 916, Count IX); Order Denying Broker Defs.' MTDs (Dkt. 813) at 12-13. Under Texas law, *both* the Plaintiff-creditors and the Receivership may pursue fraudulent transfer claims. *See Thomas v. Hughes*, 2017 WL 8161010, at *6-7 (W.D. Tex. Apr. 24, 2017) (applicable state law "has been interpreted by the Fifth Circuit to mean a creditor and a trustee can bring TUFTA fraudulent transfer claims"), citing *In re Moore*, 608 F.3d 253, 260 (5th Cir. 2010). Broker Defendants' argument to the contrary is baseless. Dkt. 1299 at 18.[3] Thus, the Broker

[3] The single case the Broker Defendants cite – *City Bank v. Compass Bank*, 717 F.Supp.2d 599 (W.D. Tex. 2010) – does not hold otherwise. Instead, it provides that a receiver/trustee and a creditor may pursue such claims when there is consent by the Receiver and it is in the best interest of the Estate. This is the entire point of the Settlement Stipulation as it addresses the TUFTA claims. *Id.* at 609. The Receiver and Plaintiffs' Co-Lead Settlement Counsel have concluded,

Defendants are not impacted by this part of the Settlement. Nor do they offer any reason why a Settlement between other parties should give them a "get out of jail free" card with respect to these claims. The opposite is true.

Indeed, the Broker Defendants' gambit to profit from the Settlement is the opposite of fair. To state the obvious, the Broker Defendants are named Defendants that Plaintiffs have alleged aided and abetted the GPB scheme. They have unclean hands and cannot participate as class members. Plaintiffs' Settlement Counsel, as fiduciaries to the Settlement Class, have correctly exercised their judgment in excluding these Non-Settling Defendants from the Settlement Class. In fact, the Auditor Settlement, which this Court preliminarily (and ultimately finally) approved, also excluded the Broker Defendants from the Settlement Class. Dkt. 1256 at ¶ 1 ("The Settlement Class does not include … Defendants in the Actions); Dkt. 1271 at ¶ 3 (same). Although it is not surprising that the Broker Defendants would want to share in the substantial success that Plaintiffs' counsel have achieved, they are not entitled to take money that is intended for their victims and have no standing to complain about it.[4] *Agretti v. Freight Sys., Inc.,* 982 F.2d 242, 247 (7th Cir. 1992) (holding that "mere allegations" that a settlement may result in harm to non-class members "do not rise to the level" necessary to establish standing."); *see also In re Integra Realty Resources Inc*., 262 F.3d 1089, 1103 (10th Cir. 2001) ("[I]t is not sufficient for [objectors] to show merely the loss of some practical or strategic advantage in litigating their case.").

---

through negotiation of this Settlement, that it would be in the best interests of the Receivership Estate and the Class, to assert this claim.

[4] To the extent the Broker Defendants pursue their own strategic interests by taking issue with the bar order included in the proposed final approval order, preliminary approval is not the correct time to raise such objections, which are meritless in any event, as discussed below. *See infra* at Section III (C).

### B. The Broker Defendants' Baseless Attack on the General Fairness of the Settlement Falls Flat.

The Broker Defendants have no basis for their general attack on the fairness of the $67.75 million Settlement itself and the negotiated fee of 26% (4% less than the fee requested and approved by this Court in connection with Auditor Settlement). They do not dispute, for example, that the negotiations took place over many months between highly sophisticated parties, Plaintiffs' Settlement Counsel and the court-appointed Receiver for the GPB entities through his counsel from Hogan Lovells. *SEC v. GPB*, 1:21-cv-00583-MKB (EDNY), Dkt. 326-2 (Declaration Of Joseph T. Gardemal III, Receiver, In Support of His Motion for Entry of an Order Authorizing a Settlement Agreement Resolving Related Civil Litigation) (Ex. 1 hereto). Nor could they impugn anything about the settlement process. The Receiver, after all, is a court-appointed fiduciary of GPB investors, who has described the Settlement at issue as a "big win" and a "fantastic result." *See SEC v.* GPB, No. 1:21-cv-00583-MKB (EDNY), Dkt. 334 (Receiver's Reply in Support of Motion for Order Authorizing Settlement) (Ex. 2, hereto) at 1.

Rather than tackle these inconvenient facts, the Broker Defendants appear to argue that the GPB Receivership Estate should not settle with the Plaintiffs at all and should not have paid *any* monies in settlement of the Class claims; nor should the Receiver have assigned or been assigned litigation claims making continuing litigation effective and efficient. This is nonsense. As an initial matter, the task of this Court is to assess whether there is probable cause that the Settlement is fair and reasonable ***to the Class***, not whether it is reasonable from the perspective of the Receivership Estate. Naturally, it is the Receiver and the Receivership Court that are tasked with protecting the interests of the Receivership Estate, and, as explained in Plaintiffs' motion for preliminary approval (Dkt. 1284 at 7), the Receiver has already sought that Court's authorization to enter into this Settlement. Thus, the issue of whether this Settlement was a reasonable exercise

of the Receiver's discretion is currently pending before the Receivership Court. *SEC v. GPB*, 1:21-cv-00583-MKB (EDNY), Dkt. 326. In any event, the GPB Settlement results from multiple years of litigation, saves the Receivership Estate millions of dollars of legal fees in ongoing litigation (which would drain Estate funds *available to investors, the Class members here*), alleviates the possibility of a substantial judgment against the Estate after the stay is lifted, permits the Estate to effectively pursue claims against insiders as it is best positioned to do so, and provides that only the Plaintiffs' Class will pursue the Broker Defendants for fraudulent conveyance, rather than both the Estate and the Plaintiffs' Class. Clearly, this is a substantial settlement negotiated in good faith providing a firm, efficient, and effective good-faith method of pursuit of the valuable litigation claims on behalf of investors and the Estate.

Further, the Broker Defendants—again purporting to represent the interests of the GPB Limited Partners whom they defrauded—also argue that the GPB Settlement could result in a "windfall" for some GPB Limited Partners and "unfair" distribution to others. Dkt. 1299 at 13. This too is nonsense. The Plan of Allocation was heavily negotiated between Plaintiffs' Counsel and the Receiver and is, in substance, economically the same as the Plan of Allocation that was preliminarily approved by this Court in connection with the Auditor Settlement. The Plan of Allocation reduces the amount of each GPB Limited Partner's claim by any monies it receives or received in connection with arbitrations, litigation, class action litigation, and Receivership distributions. Each Class member is subject to the same Plan of Allocation, and any Class member who, in the aggregate, receives his/her basis (initial investment) from any source will get no distribution in this Settlement. It is therefore an impossibility that any GPB Limited Partner (Settlement Class Member) under the Settlement Agreement would receive a windfall. Moreover, Broker Defendants conveniently ignore that each Settlement Class Member lost not only the

amount of money they invested, but also the use (the "time value") of their money and, therefore, the interest on the amounts invested, over at least a seven-year period. Broker Defendants also ignore that the Receiver's distribution plan does not compensate for the hundreds of millions of dollars in selling fees and commissions (with prejudgment interest), which loss is included in the Plan of Allocation once all Settlement Class Members have been made whole on their initial investment.[5] Finally, the same arguments have already been made and rejected in connection with the preliminary approval of the Auditor Settlement. In short, Broker Defendants raise allocation concerns that are baseless in order to perpetuate their own delay agenda.[6]

**C. The Proposed Bar Order Is Well Grounded in Law.**

The Broker Defendants contend that preliminary approval should be denied because the Settlement includes an order barring contribution and indemnification claims against the GPB Defendants with a *pro tanto* (or dollar for dollar) judgment reduction. Dkts. 1299 at 19-21; 1298 at 3-4; 1296 at 1,6-7. Defendants voiced the exact same objection to the bar order and judgment reduction in connection with the Auditor Settlement. Dkt. 1245. Their objection was rejected out of hand as the Court approved that settlement. Dkt. 1256 (Preliminary Approval Order); Dkt. 1271 (Final Settlement Approval & Bar Order). The Court should do the same here.

As an initial matter, the bar order is not generally considered at the preliminary approval stage. Only at the final approval stage will the Broker Defendants have an opportunity—after notice to Class members—to address the issue. *See In re Granada P'ship Sec. Litig.*, 803 F. Supp. 1236 (S.D. Tex. 1992) (addressing the fairness of the proposed bar order only in connection with

[5] The Broker Defendants wrongly assert that Plaintiffs' damages are limited to actual loss (Dkt. 1299 at 7), conveniently ignoring the Settlement Class' right to prejudgment interest on the TSA damages and fraudulent transfers.

[6] The Broker Defendants' hypothetical concerns with respect to the Plan of Allocation are nothing more than their attempt to delay this proceeding, thereby gaining leverage in the ongoing mediation.

final approval, not preliminary approval).

In any event, as previously argued in connection with the Auditor Settlement, the *pro tanto* reduction provision is appropriate and must be considered in the context of the fact that under the TSA there is joint and several liability for aiders and abettors, like the Broker Defendants. TSA, § 581-33 (F). In this context, the most appropriate type of bar order (and the only one which makes economic sense) is *pro tanto* judgment reduction. This was expressly addressed by the court in *Harden v. Raffensperger, Hughes & Co., Inc*., 933 F. Supp. 763, 772 (S.D. Ind. 1996). In *Harden*, the court noted that in cases involving joint and several liability claims, relative fault judgment reduction (*i.e.*, proportionate liability) makes no sense because each party is liable for the full amount of any potential judgment). Indeed, addressing a Section 11 claim, which provides for joint and several liability, the *Harden* court concluded "it makes no sense to force the parties to agree to a setoff method that depends on a determination of relative fault" and applied *pro tanto* judgment reduction. *Id.* Thus, *pro tanto* judgment reduction is the only economically sensible judgment reduction form to be used in connection with joint and several liability cases. Additionally, *pro tanto* judgment reduction has been applied in the only other large Texas securities class action settlement involving joint and several liability. *See In re Enron Corp. Secs., Derivative & ERISA Litig.*, 228 F.R.D. 541, 566-67 (S.D. Tex. 2005) (finding that "extinguishing whatever contribution rights that may exist in favor of the non-settling Defendants is not unfair, given the fact that there is a pro tanto settlement credit.").[7]

[7] Courts outside of Texas have also applied *pro tanto* judgment reduction in connection with securities class actions where the underlying rule of liability was joint and several. *See Anderson v. Davis Wright Tremaine LLP*, 2023 WL 6003862 at *7-8 (D. Or. Sept. 5, 2023); *see also Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634 at *10 (D. Or. Mar. 19, 2019), *report and recommendation adopted*, No. 3:16-CV-00580-AC, 2019 WL 2288432 (D. Or. May 29, 2019)(considering both approaches and approving a *pro tanto* reduction as it provides the maximum possible recovery for plaintiffs).

The Broker Defendants appear to offer two arguments in support of their challenge to the bar order, and neither is persuasive. First, they argue that they have certain contractual indemnification rights contained in underwriting agreements with GPB that cannot be extinguished pursuant to a bar order.[8] The Broker Defendants offer no support whatsoever for this argument. Nor do they explain why contractual indemnity should be distinguished from contribution rights under the TSA.

Defendant Concorde relies upon a single case – *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 846-47 (5th Cir. 2019) – for the proposition that contractual claims for indemnification cannot be subject to a bar order. Dkt. 1296 (Concorde Response) at 5. *Stanford* is inapposite. Indeed, it *supports* the notion that a bar order can extinguish any claims seeking a receivership's assets or claims that the receivership estate has. This is clearly the case here as the Broker Defendants seek to obtain Receivership assets in connection with their indemnification claims.

*Stanford* ***does not*** distinguish between contractual claims for indemnification and claims which arise under the TSA or common law. Instead, *Stanford* addresses a completely different issue, whether or not a bar order in a receivership or similar proceeding may bar *non-settling parties* from pursuing claims against third parties (*i.e.*, not the receivership estate). *Id.* at 844. In *Stanford*, certain purported receivership creditors pursued claims against an insurance company which insured them and the Stanford receivership estate. These claims arose under the insurance policy and under tort law (*i.e.*, claims for bad faith and failure to cover). The court held that these third-party claims, which sought assets from a third party (*i.e.*, the insurer), could not be barred

[8] The bar order also will not affect the vast majority of Broker Defendants. Plaintiffs currently understand, based on Broker Defendants' submissions here, that only two Broker Defendants have filed proofs of claim attempting to preserve their indemnification claims. *See* Dkt. 1296 (Concorde) at 1; Dkt. 1298 (Axiom) at 2. Other Broker Defendants that did *not* submit proofs of claims have therefore waived their indemnification rights, independent of the bar order.

pursuant to the receivership's proposed bar order, concluding that the co-insured's portion of insurance proceeds was not property of the receivership estate. Thus, the court found that it lacked jurisdiction to enjoin these third parties' claims. Here, in contrast, the Broker Defendants are seeking to take money from the Receivership and from creditors who would otherwise receive the receivership funds these Broker Defendants seek as indemnification. The bar order prevents this. Every bar order does exactly that. In sum, the scope of the bar order is appropriate and consistent with the law in this Circuit.

In addition, the Broker Defendants cannot evade this conclusion by relying on the 35-year-old decision in *In re Granada*. That case addressed a non-settling third party's claims against an insurance company, not a settling party like GPB, and applied Sixth and Ninth Circuit law. *See In re Granada,* 803 F. Supp. at1238, 1241. And there, the defendants argued that plaintiff's proposed *pro tanto* judgment reduction was so unfair and unreasonable that the proposed settlement in its entirety should be rejected. The court approved the settlement with pro rata judgment reduction, applying other circuit law on that issue.[9]

Finally, and most significantly, the very same Texas federal judge (Judge Harmon) that decided *Granada* later issued a ruling in connection with the Enron fraud scheme where she specifically addressed the issue of judgment reduction in connection with claims that—like here—***provided for joint and several liability***. In that case, Judge Harmon found that *pro tanto* judgment reduction was appropriate and that it was fair, reasonable and adequate in connection with the overall settlement. *In re Enron, supra,* 228 F.R.D. at 566-67. Under those circumstances, the court reasoned, "extinguishing whatever contribution rights that may exist in favor of the non-settling

[9] The decision in *Granada, supra,* also does not indicate whether or not the underlying liability at issue was joint and several. The parties in that case did not request a specific type of judgment reduction in their Settlement Agreement, and there is no evidence that the underlying case involved joint and several liability, as is the case here.

Defendants is not unfair, given the fact that there is a pro tanto settlement credit ."[10] *Id*. at 566-67. Defendants cite no actual contrary authority. Here, as in connection with the Auditor Settlement, the contribution and indemnification bar order is necessary to incentivize the GPB Defendants to settle this complex litigation and to allow the Receivership to move towards completion. Given all of these factors, the Broker Defendants come nowhere near showing that the Settlement is unfair under the applicable *Enron* standard.

Broker Defendants' reliance on *Chao v. Slutsky*, 2009 WL 3174711 at *4 (E.D.N.Y. Oct. 2, 2009), is also misplaced. First, in *Chao*, the court noted that "it is well established that 'a district court may properly bar claims of non-settling defendants against settling defendants for contribution and indemnity.'" (internal cites omitted). Second, the *Chao* court considered whether a non-settling defendant could be barred from suing a non-party. *Chao*, at *4-5 ("This case is unique because the Bar Order extinguishes a claim… against a non-party."). Here by contrast, the Broker Defendants object to the settlement because they wish to pursue related claims against other settling defendants. The reasoning in *Chao* does not extend that far. Moreover, *Chao* did not consider the effects of a bar order in a case with joint and several liability. *Id.*

Axiom, which worked hand in glove with the self-styled "Indicted Defendants" group (two of whom would be more accurately referred to as "Convicted Defendants") expressly "does not oppose approval of the proposed settlement … in principle." Dkt. 1298 at 3. Axiom objects only to the extent the GPB Settlement does not preserve Axiom's right to assert its indemnification and contribution claims and provide it with a judgment reduction credit. Like the other Broker Defendants, under the terms of the GPB Settlement and the proposed bar order, Axiom cannot

---

[10] *See e.g.*, *Anderson, supra*, 2023 WL 6003862, at *7; *see also Ciuffitelli,* 2019 WL 1441634 at *10 (D. Or. Mar. 19, 2019) (recognizing that "dollar-for-dollar reductions are preferable where there is joint and several liability and there are limited fund concerns.").

proceed on any indemnification or contribution claims against Settling Defendants. But, contrary to its assertion, Axiom *will* get the benefit of a judgment reduction credit. *See SEC v. GPB*, Dkt. 334 (Receiver's Reply Brief responding to Axiom in the Receivership Court) at 6-7. Further, Axiom suggests that its "contractual indemnification claims for amounts unrelated to the GPB Funds' liability to the Kinnie Ma Plaintiffs," which were incurred in connection with arbitrations, should be carved out of the Settlement. Dkt. 1298 at 3, 6. But Axiom has not explained how such claims are "unrelated" or why they did not arise out of the GPB scheme that is the basis for this Action. While Axiom has not shared the specifics of the arbitration claims against it, the Receiver has observed that such claims are inextricably intertwined with Axiom's liability to the Plaintiffs in this Action and have been or will be incurred "on account of liability to the underlying plaintiffs or the risk thereof." *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 864 (11th Cir. 2009). *SEC v. GPB*, Dkt. 334 at 7.

**D. The Broker Defendants' Self-Interested Delay Tactics Should Be Rejected.**

Broker Defendants contend that the Court should "postpone approval of the proposed settlement until the Broker-Dealer Defendants have had their opportunity to contest liability in this action" or "until a more appropriate phase in this litigation." Dkt. 1299 at 19, 24. The notion that Class members should wait around for the claims against the Broker Defendants to resolve is preposterous. Class members, most of whom are elderly or retired, have already been *waiting for their GPB funds for well over seven years*.

Broker Defendants' objection plays entirely into its strategy which is to delay the preliminary approval here, as leverage in the mediation with Plaintiffs in connection with the resolution of the Broker Defendants' liability. The preliminary approval of the Auditor Settlement has created no management problems whatsoever. Instead, it has been effected smoothly and

efficiently, and money will soon be distributed to Class members. The Broker Defendants lack standing to object to the prompt consideration of the Bar Order, and their alternative motive of "delay" is not a legitimate basis for their objection.

**E. No Modification to the Class Certification Provisions Are Necessary.**

Following the lead of Indicted Defendants' limited objection (Dkt. 1293 at 7-8), the Broker Defendants ask the Court to modify the GPB Settlement with language limiting the scope and use of any class certification ruling made by this Court in connection with the GPB Settlement. Specifically, they ask this Court to rule that its own order "shall have no effect on any subsequent motion to certify any class or decide any question or issue on the merits addressed in approval of the Settlement Class or the Proposed Settlement in this Action or any other action." Dkt. 1299 at 23. This is unnecessary and improper for the same reasons that Plaintiffs identified in their Reply in response to the Indicted Defendants' Opposition (Dkt. 1302 at 8-10), which Plaintiffs incorporate herein by reference.

## IV. CONCLUSION

For the foregoing reasons, this Court should reject the Broker Defendants' arguments and preliminarily approve the GPB Settlement.

Dated: March 6, 2026

Respectfully submitted,
By: _/s/ Jesse Z. Weiss_

Jesse Z. Weiss
Ryan Shelton
**EDMUNDSON SHELTON WEISS PLLC**
3005 S Lamar Blvd, Ste D109 #376
Austin, TX 78704-8864
T: (512) 596-3058
F: (512) 532-6637
jesse@eswpllc.com
ryan@eswpllc.com

***Liaison Counsel for the Plaintiffs***

By: */s/ Peter S. Linden*
Peter S. Linden (*pro hac vice*)
Matt Lindenmuth (*pro hac vice*)
Clara Abramson (*pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, New York 10022
T: (212) 687-1980
F: (212) 687-7714
plinden@kaplanfox.com
mlindenmuth@kaplanfox.com
cabramson@kaplanfox.com

Richard L. Stone (*pro hac vice*)
**LAW OFFICES OF RICHARD L. STONE, PLLC**
11 East 44th Street, Suite 1001
New York, New York 10017
T: (561) 358-4800
rstoneesq@rstoneesq.com

***Plaintiffs' Co-Lead Settlement Counsel***

Timothy DeJong (*pro hac vice*)
Steve Larson (*pro hac vice*)
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
T: (503) 227-1600
tdejong@stollberne.com
slarson@stollberne.com

***Additional Settlement Counsel***

**CERTIFICATE OF SERVICE**

I do hereby certify that on March 6, 2026, a true and correct copy of the above and foregoing document (with exhibits) was filed electronically through the Court's CM/ECF system, which will give notice of this filing to all parties.

*/s/Peter S. Linden*
Peter S. Linden